Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Mahru Madjidi Esq., State Bar No. 297906
MMadjidi@Shegerianlaw.com
John David, Esq., State Bar No. 341707
JDavid@Shegerianlaw.com
Yesenia Cardoza, Esq., State Bar No. 309694
YCardoza@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number:  (310) 860-0770
Facsimile Number:   (310) 860-0771

Attorneys for Plaintiff,
ALEX VILLANUEVA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX VILLANUEVA,<br><br>        Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100 inclusive,<br><br>        Defendants. | Case No.:  2:24-cv-04979 SVW (JC)<br><br>**The Honorable Stephen V. Wilson and Magistrate Judge Jacqueline Chooljian**<br><br>**PLAINTIFF ALEX VILLANUEVA'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    September 9, 2024<br>Time:    1:30 p.m.<br>Dept.:   10A and Courtroom 750<br><br><br>Trial Date:    [TBD]<br>Action Filed:  June 13, 2024 |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................ 4

II.  BACKGROUND/RELEVANT FACTS ............................................. 5

III.  STANDARD OF REVIEW ............................................................... 8

IV.  ARGUMENT .................................................................................... 9

    A.  Plaintiff's Complaint Alleges Facts Sufficient to Support His Constitutional Due Process Claim. .......................................... 9

        (1)  Defendants Failed to Adhere to Their Own Policies and Procedures Designed to Ensure Due Process .................. 10

        (2)  Liberty Interest. ............................................................... 11

        (3)  Property Interest. ............................................................. 13

    B.  Plaintiff Has Sufficiently Plead Facts in Support of a Violation of Government Code Section 3060 ............................ 14

    C.  Plaintiff Has Established Article III Standing .......................... 14

    D.  Plaintiff has Sufficiently Plead Facts for *Monell* Liability Purposes at this Pleading Stage ............................................... 15

    E.  Plaintiff Sufficiently Pleads Facts to Support his First Amendment Claim at this Pleading Stage. ............................... 17

    F.  Plaintiff has Rightfully Named the Defendants in This Action ... 18

    G.  Plaintiff Sufficiently Pleads an IIED Claim. ........................... 19

    H.  Plaintiff Sufficiently States Claims for Defamation and Compelled Self-Defamation. .................................................... 20

        (1)  Plaintiff Sufficiently Pleads a Defamation Claim. ......... 20

        (2)  The Late Discovery Rule Applies to Defamation. .......... 21

        (3)  The Defamatory Statements at Issue Were Made with Actual Malice and Are Not Privileged. ........................... 22

        (4)  Plaintiff Sufficiently Pleads a Compelled Self-Defamation Claim. ......................................................... 23

    I.  Plaintiff Sufficiently Pleads a Claim for Negligent Hiring, Supervision and Retention. ..................................................... 24

    J.  In the Alternative, Plaintiff Requests Leave to Amend. ......... 25

V.  CONCLUSION ................................................................................ 26

# TABLE OF AUTHORITIES

**Page**

## Cases

" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007 ........................... 8

*Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493 (1970) .......................... 19

*Arno v. Stewart* (1966) 245 Cal.App.2d ................................................ 20

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ............................. 8

*Bernson*, supra, 7 Cal. 4th ................................................................. 22

*Billmeyer v. Plaza Bank of Commerce,* 42 Cal.App.4th 1086 (1996) .......... 20

*Cameron v. Wernick* (1967) 251 Cal.App.2d .......................................... 20

*Carey v. Piphus*, 435 U.S. 247, 259, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) ... 9

*Cauchi v. Brown,* 51 F.Supp.2d 1014 (E.D. Ca. 1999) .............................. 9

*Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683 (9th Cir. 2001) *(en banc)* ... 19

*Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) ... 10

*Kelly v. Gen. Tel.* (1982) 136 Cal.App.3d ............................................. 21

*Kiseskey v. Carpenters' Trust for So. California,* 114 Cal.App.3d 222 (1983) ... 19

*Live Oak Publishing Co. v. Cohagan,* 234 Cal.App.3d 1277 (1991) ............. 24

*Lundquist v. Reusser* (1994) 7 Cal.4th ................................................. 20

*MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d .............................. 20

*Manguso v. Oceanside Unified School District* (1979) 88 Cal.App.3d .......... 22

*Mathews v. Eldridge*, 424 U.S. 319, 333 .............................................. 11

*McKinney v. County of Santa Clara,* 110 Cal.App.3d 787 (1980) ............... 24

*Mendoza v. City of Los Angeles* (1998) 66 Cal.App.4th 1333 .................... 25

*Murphy v. Allstate Ins. Co.,* 83 Cal.App.3d 38 (1978) ............................ 20

*OSU Student Alliance v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012). ........... 8

*Peloza v. Capistrano United School Dist.,* 37 F.3d 517 (9th Cir. 1994) ........ 9

*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133 .................... 24

*Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). ........................................... 8

*Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993) ...................... 10

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012); ........ 8

*Starr v. Baca* (9th Cir. 2011) 652 F.3d 1202, 1217 ............................................... 9

*Taus v. Loftus,* 40 Cal.4th 683 (2007) ................................................................. 20

*Twombly*, *supra*, 550 U.S. at 556 ......................................................................... 9

*United States v. Redwood City,* 640 F.2d 96 (9th Cir. 1981) ................................ 9

*Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ......................... 8

**Statutes**

42 United States Code § 2000e, *et seq.* ............................................................... 7

Government Code §§ 12900-12996 ............................................................. passim

Labor Code § 230 ............................................................................................. 1, 14

Labor Code § 1102.5 .................................................................................. 1, 2, 7, 8

Labor Code § 1198.5 ......................................................................................... 9, 10

**Rules**

Fed. R. Civ. P. 8(a)(2 ........................................................................................... 8

Federal Rules of Civil Procedure, Rule 15(a) ................................................. 5, 25

Rule 12(b)(6), .................................................................................................... 8

**Constitutional Provisions**

California Constitution, Article I, § 1 ................................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Alex Villanueva ("Villanueva" or "Plaintiff") has plead sufficient facts to establish the causes of action raised in his Complaint at this pleading stage and, therefore, Defendants' motion to dismiss should be denied for several reasons.

*First,* Plaintiff has adequately pleaded sufficient facts to support his due process claim, demonstrating a violation of his constitutional rights under the Fourteenth Amendment. Furthermore, Plaintiff has substantiated his First Amendment claim by providing facts supporting retaliation for engaging in free speech, thereby establishing a plausible cause of action. Plaintiff has further provided a factual basis suggesting that Defendants' policymakers either ratified and/or were involved in the decisions that led to the constitutional violations and that Plaintiff has and will continue to suffer injury. Lastly, Plaintiff's related tort claims are supported by well-pleaded facts that align with the requisite legal standards, ensuring that these claims are viable at this pleading stage.

*Second,* Plaintiff Alex Villanueva's ("Villanueva" or "Plaintiff") 35+ year career with the Los Angeles County Sherrif's Department was permanently terminated by Defendants without notice or opportunity of a hearing in violation of his due process rights, and in retaliation for engaging in free speech.

*Third,* Plaintiff's tort claims alleged in the Complaint were properly presented and pleaded sufficiently. Plaintiff states a viable claim for defamation as the Complaint alleges a series of non-privileged defamatory statements made by Defendants, including Max-

Gustaf Huntsman and Esther Lim. Notwithstanding the false and damaging nature of these *per se* defamatory statements, Defendants' relied on these accounts to strategically revive these complaints, following his announcement that he would run for Los Angeles County's Board of Supervisors, for the purpose of damaging Plaintiffs' reputation and ruining his career prospects.

*Fourth,* plaintiff seeks leave to amend his First Amendment claim to rightfully raise the claim under Section 1983. Furthermore, with respect to any other claim the Court deems insufficient, plaintiff respectfully requests leave to amend any such claim and to file an amended Complaint. Leave to amend should be granted freely in the interests of justice. Federal Rules of Civil Procedure, Rule 15(a). In the present case, defendants have not even argued, let alone established, that plaintiff could not allege more facts in support of his causes of action. Permission to amend is therefore respectfully requested.

For all the forgoing reasons, Defendants' motion should be denied.

## II.   BACKGROUND/RELEVANT FACTS

Plaintiff Villanueva joined the Los Angeles County Sheriff's Department in 1986, and, after completing the Sheriff's Academy, plaintiff was assigned to the Inmate Reception Center. (Complaint at ¶ 8.) Villanueva diligently served his community and was promoted to the ranks of deputy sheriff (1986-2000), sergeant (2000-2011), and lieutenant (2011-2018). (Id.) On or around June 28, 2017, plaintiff Villanueva announced his campaign for Sheriff of Los Angeles County, and on or around December 3, 2018, Villanueva won the general election and became the first person in 104 years to unseat a sitting sheriff of Los Angeles County. (Complaint at ¶¶ 9-10.)

On or about June 29, 2022, Villanueva received two separate documents, both of which were titled "Office Correspondence," from the Captain of the Internal Affairs Bureau, defendant Ron Kopperud ("Kopperud"). (Complaint at ¶ 11.) Each stated that he was the subject of an administrative investigation. (Id.) Villanueva was not provided with any further information regarding these allegations, either orally or in writing. (Complaint

at ¶ 12.) Specifically, Villanueva did not learn the specifics of the allegations or the identities of the complainants. (Id.) While investigator Christine Diaz-Herrera, Plaintiff in fact reached out to the investigator after receiving interview requests. (Defendants' Exhibit B to Motion to Dismiss.) However, despite ongoing communications, between January 9, 2023, and March 10, 2023, the investigator and Plaintiff were unable to reach an agreement that would allow the interview to proceed. (Id.) There was no further contact from the investigator after Plaintiff requested to be informed of the subject matter of the interview questions. (Id.)

On or about September 13, 2023, Villanueva announced his candidacy for the Los Angeles County Board of Supervisors. (Complaint at ¶ 15.) On or around January 31, 2024, Villanueva—for the very first time—learned of the findings of defendants' investigation of the aforementioned complaints through a hit piece in the *Los Angeles Times* titled "'Do Not Rehire': Panel finds Villanueva violated county discrimination, harassment policies" on the eve of ballots' dropping for the 2024 primary. (Complaint at ¶ 16.)

It was not until Villanueva received the heavily redacted investigation file that he learned what happened with the allegations against him. (Complaint at ¶ 18.) Complainants were interviewed on or about July 21, 2022 and July 28, 2022—while Villanueva was still in office. (Id.) On or about September 20, 2023—a week after Villanueva announced his candidacy for the Los Angeles County Board of Supervisors— the Sheriff's Department reopened the investigation of the aforementioned allegations. (Id.) On or about October 17, 2023, the Equity Investigations Unit ("EIU") forwarded its findings on the allegations to the County Equity Oversight Panel ("CEOP"), which consisted of defendants Constance Komoroski, Mercedes Cruz, and Roberta Yang, who met and rendered their findings. (Id.) Specifically, Acting Commander of the Professional Standards Division defendant Sergio V. Escobedo sent correspondence to the CEOP regarding the charges that were made against Villanueva and disciplinary action recommendation: "Panel Recommends 'Do not Rehire.'" (Id.)

On or about October 23, 2023, the complainants received from defendant Sheriff Robert G. Luna ("Luna") and Captain of the Internal Affairs Bureau ("IAB"), defendant Kopperud, correspondence titled "Notification Letter," notifying them of the findings. (Id.) Villanueva never received similar correspondence or any other notice.

Villanueva further alleges that the complaints' allegations prompting defendants' investigation of Villanueva are marked by speculation, contention and falsehood, which underscore the breakdown in due process. (Complaint at ¶ 19.) Nevertheless, Villanueva was not given the opportunity to rebut the allegations. Instead, it is believed that defendants, without any notice, held and/or conducted secretive, closed sessions and one-sided proceedings *ex parte,* without providing Villanueva the opportunity to appear, testify, present any evidence in any manner, or have representation on his behalf.

Additionally, defendant Huntsman and his Los Angeles County Office of Inspector General have been permitted to defame Villanueva continuously and publicly on their County web site, claiming: "The Sheriff's Department, particularly under former Sheriff Alex Villanueva, has gone to great lengths to keep its conduct secret. (Complaint at ¶ 19.) The unlawful acts and potentially unlawful acts enumerated," generally referring to its own report. (Id.)

Ironically, the October 23, 2023 Notification Letters addressed to the complainants acknowledge Villanueva's due process protections afforded by the Department, providing in part: ***"You should be aware that Alex Villanueva has the right to grieve and/or otherwise appeal this recommended determination."*** (Complaint at ¶ 20.) However, Villanueva himself was never notified of either his grievance and/or his appeal rights. (Id.)

Furthermore, although the CEOP is required to "meet bi-monthly, or more frequently if necessary, to discuss and review the EIU investigation," the CEOP did not meet until more than a year after the investigation interviews on "October 17, 2023," "to render its finding," in violation of its own policies and procedures. The Policy of Equality and Procedures further dictates:

> *EIU investigations shall be immediate, thorough, objective, and complete.*

After discussion, the CEOP shall determine appropriate dispositions and discipline, if discipline is warranted. The CEOP immediately shall cause to be forwarded to the Sheriff for review all cases where its final recommended discipline determination exceeds 15 days suspension. . . .

The CEOP shall communicate its recommendations to the EIU, which **shall notify the appropriate parties. The EIU shall issue a Letter of Intent to Impose Discipline to the subject or, where appropriate, inform the subject that the complaint was unfounded or unresolved. At the same time, the EIU shall issue a letter to the complainant indicating that the complaint was either founded, unfounded, or unresolved and that if founded, appropriate corrective action was determined.**

While the CEOP did send notification of its findings to the complainants, Villanueva was *never* served with a Letter of Intent to Impose Discipline and, as such, was deprived of his due process rights to contest or appeal the CEOP's findings before they became final. (Complaint at ¶ 20.)

## III.    STANDARD OF REVIEW

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) merely requires that a plaintiff provide a short and plain statement showing that he is entitled to relief to give a defendant fair notice of the claims and the grounds for the claims. Fed. R. Civ. P. 8(a)(2). At this stage in the proceedings, district courts are required to accept "all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012). Moreover, a court must "draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The plaintiff "'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (quoting *Sanjuan v. American Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994)).

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 553, 555 (2007), requires merely that a plaintiff's complaint be "plausible." "The standard at this stage of the litigation is not

that plaintiff's explanation must be *true or even probable*. The factual allegations of the complaint *need only 'plausibly suggest an entitlement to relief*.'" (Emphasis added.) *Starr v. Baca* (9th Cir. 2011) 652 F.3d 1202, 1217; *Twombly, supra,* 550 U.S. at 556 (The Rule "does not impose a probability requirement at the pleading stage; *it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence*" to support the allegations. (Emphasis added.)) In fact, a complaint survives a 12(b)(6) motion to dismiss even "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible." *Baca, supra,* 652 F.3d at 1216. "[A] complaint is not to be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief,' and under this rule "it is only the extraordinary case in which dismissal is proper." *United States v. Redwood City,* 640 F.2d 963 (9th Cir. 1981); *Cauchi v. Brown,* 51 F.Supp.2d 1014, 1016 (E.D. Ca. 1999). This case presents no "extraordinary" reasons for a ruling on plaintiff's claims at issue. The pleading in the operative complaint "embrace[s] whatever specific facts might be necessary to support them." *Peloza v. Capistrano United School Dist.,* 37 F.3d 517, 521 (9th Cir. 1994).

## IV.  ARGUMENT

### A.  Plaintiff's Complaint Alleges Facts Sufficient to Support His Constitutional Due Process Claim.

The Fourteenth Amendment provides that no state shall deprive any person of life, liberty, or property, without due process. U.S. Const. amend. XIV, § 1. Procedural due process focuses on the procedures involved when a state effectuates a deprivation of protected interests. *Carey v. Piphus,* 435 U.S. 247, 259, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.") To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of "(1) a liberty or property interest protected by the Constitution;

(2) a deprivation of the interest by the government; [and] (3) lack of process." *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (quoting *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

Here, Plaintiff has both a property and liberty interest in his career and has been deprived of those interests by Defendants' decision to place him as a "no rehire" without due process.

### (1) Defendants Failed to Adhere to Their Own Policies and Procedures Designed to Ensure Due Process

Contrary to Defendants' claims, Plaintiff attempted to participate in the LASD investigation that ultimately resulted in the decision to place him on a "do not rehire." As demonstrated by the email correspondence with investigator Christine Diaz-Herrera, Plaintiff in fact reached out to the investigator after receiving interview requests. (Defendants' Exhibit B to Motion to Dismiss.) However, despite ongoing communications, between January 9, 2023 and March 10, 2023, the investigator and Plaintiff were unable to reach an agreement that would allow the interview to proceed. (Id.) There was no further contact from the investigator after Plaintiff requested to be informed of the subject matter of the interview questions. (Id.)

More importantly, Defendants admittedly failed to adhere to their own policies and procedures designed to ensure due process, including their obligation to give Plaintiff an opportunity to appeal and or file for grievance before the decision to place him as "no-rehire" became final. As outlined in the complaint, Defendants had clear policies and procedures that they wrongfully bypassed when it came to Plaintiff. (Complaint at ¶¶ 20-22.) While Defendants themselves admit in a letter to the investigation complainants that Plaintiff "has the right to grieve and/or otherwise appeal this recommended determination," Plaintiff himself was never notified of either his grievance and/or appeal rights, nor was he given the opportunity to engage in those proceedings before the final decision to end his 35+ year career with the Department. (Id. at ¶ 20.)

Further, prior to the "no rehire" recommended determination, there was a suspicious

delay by the CEOP in rendering the recommendation following the investigation despite the CEOPs clear rules that they are required to "meet bi-monthly, or more frequently if necessary, to discuss and review the EIU investigation." (Id. at ¶ 21.) Additionally, Defendants further failed to adhere to the *notice requirement* delineated in their own Policy of Equality and Procedures which required the EIU to "issue a Letter of Intent to Impose Discipline" to Plaintiff to afford him the opportunity to contest the recommendation before the "do not rehire" decision became final. (Id. at ¶ 22.) "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)); *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 920 (9th Cir. 2013) ("Before the state deprives someone of a protected property interest, the right to some kind of prior hearing is paramount.") Therefore, these are clear violations of Plaintiff's due process rights.

**(2) Liberty Interest.**

At this pleading stage, Plaintiff has sufficiently demonstrated a liberty interest concerning his employment opportunities. The Fourteenth Amendment protects against the deprivation of liberty, which "encompasses the right of persons 'to engage in any of the common occupations of life.'" *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)); see also *Bollow v. Fed. Rsrv. Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981) ("The liberty protected by the due process clause of the fifth and fourteenth amendments encompasses an individual's freedom to work and earn a living."). Here, Defendants deprived Plaintiff of his liberty when they ended his 35+ year career with the Los Angeles Sheriff's Department ("LASD") by placing him as a "Do Not Rehire" without due process.

A liberty interest is further implicated (1) when the employer "makes a charge that *might* seriously damage [the terminated employee's] standing and associations in h[er] community" or (2) the employer "impose[s] on [a terminated employee] a stigma or other

disability that foreclose[s] h[er] freedom to take advantage of other opportunities." *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 365 (9th Cir. 1976). These due process protections will apply if 1) the accuracy of the charge is contested; 2) there is some public disclosure of the charge; and 3) it is made in connection with the termination of employment or the alteration of some right or status recognized by state law. *Board of Regents of State Coll. v. Roth*, 408 U.S. 564, 573.

In his Complaint, Plaintiff presents facts supporting his challenge to the accuracy of the charges leading to his designation as a "non-hire," including the falsity of the charges made against him. (Compliant at ¶19). There has further been a public disclosure of the charge, and the charge was made in connection with the termination of his long-standing career with the Department. Furthermore, there is more than the plausibility that the charges made about Plaintiff have damaged his standing and associations in his community given his status within the community. As a the former Sheriff with a negative "do not rehire" mark, Villanueva has experienced humiliation, embarrassment, ridicule within the community, and his associations within the community have undoubtedly been drastically affected.

Additionally, the charge has imposed a stigma that has foreclosed opportunities, including Plaintiff's ability to run for the Los Angeles County Board of Supervisors without a reputational hindrance. (Compliant ¶¶ 15-16; *Fikre v. Fed. Bureau of Investigation*, 35 F.4th 762, 776 (9th Cir. 2022) (A plaintiff who has suffered "reputational harm at the hands of the government may assert a cognizable liberty interest for procedural due process purposes if the plaintiff suffers stigma from governmental action plus alteration or extinguishment of a right or status previously recognized by state law."); *Clemente v. United States* (1985) 766 F.2d 1358, 1360 ("the reasons for dismissal must be sufficiently serious to "stigmatize" or otherwise burden the individual so that he is not able to take advantage of other employment opportunities.") Such stigmatization has been shown here. Plaintiff's freedom to proceed with his career at the LASD effectively precludes him from his chosen career not only within the department but within the public

service industry at large due to the heavy negative stigma he carries as a "do not rehire" former employee. Such is the type of stigmatization that sufficiently demonstrates a liberty interest at this pleading stage. *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs., 727 F.3d 917, 925 (9th Cir. 2013)* (To implicate a constitutional liberty interest, "the government's stigmatizing statements [must] effectively exclude the employee completely from her chosen profession.") Here, there is no doubt that the stigmatizing statements have significantly harmed the Plaintiff's future employment prospects in his chosen career, placing him in a disadvantage in this competitive industry.

   **(3) Property Interest.**

   A party may be able to show a property interest from the facts and circumstances of his or her case. *Perry v. Sindermann, 408 U.S. 593, 602; Thomas v. Los Angeles, 676 F. Supp. 976, 981* (Property interest analysis determined by the totality of the circumstances and the particular facts of each case.) Here, Plaintiff had a property interest in his career with the Department that was deserving of due process protection given his long-standing 35+ year career with the Department, as well as the Departments' own policies of affording grievance and/or appeal proceedings prior to a final determination of placing Plaintiff on a "do not rehire" list. *Thomas 676 F. Supp. at 980* ("Failure . . . to afford . . . a hearing could violate procedural due process." "[A] party must be given an opportunity to prove the legitimacy of his claim of entitlement in light of the policies and practices of an institution.") "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Thomas 676 F. Supp. at 981* (citing *Perry, 408 U.S. at 601*.) Here, Plaintiff had a reasonable expectation of a due process hearing based on his 35+ year career with the Department as well as the Departments' own policies and procedures, including the grievance and appeal rights process discussed above. Property interests "'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

entitlement to those benefits." *Thomas* 676 F. Supp. at 980*f*. Having once established these procedures, they must be followed or plaintiff's due process rights will be violated. *Vitarelli v. Seaton* (1959) 359 U.S. 535. As such, Plaintiff has sufficiently established a property interest.

## B.  Plaintiff Has Sufficiently Plead Facts in Support of a Violation of Government Code Section 3060

Government Code Section 3060 offers yet an additional layer of due process for the removal of an elected or appointed public officer. Cal. Govt. Code § 3060. Despite this, Plaintiff alleges that defendants opted to bypass these well-established statutory procedures, again, denying Plaintiff of the opportunity to be heard while he was still in office. As such, Plaintiff has made a sufficient showing of a Section 3060 violation at this pleading stage.

## C.  Plaintiff Has Established Article III Standing

For purposes of standing under Article III of the Constitution, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins* (2016) 578 U.S. 330, 339, 136, as revised (May 24, 2016). The second element requires the plaintiff to "demonstrat[e] that her injury-in-fact is . . . fairly traceable to the challenged action." *Daniel v. Nat'l Park Serv.* (9th Cir. 2018) 891 F.3d 762, 767 (quoting *Davidson v. Kimberly-Clark Corp.* (9th Cir. 2018) 889 F.3d 956, 967). Whether a plaintiff's injury is "fairly traceable" to the defendant's conduct requires less than a showing of proximate cause. See *Bennett v. Spear* (1997) 520 U.S. 154, 168, (noting that proximate cause is not equivalent to whether an injury is "fairly traceable" to the defendant); *Maya v. Centex Corp.* (9th Cir. 2011) 658 F.3d 1060,1070 (noting that to establish causation for Article III standing, the plaintiff is not required to bear the "heavy . . . burden" of demonstrating proximate cause); *Canyon Cnty. v. Syngenta Seeds, Inc.* (9th Cir. 2008) 519 F.3d 969, 975 n.7 (noting that, while the plaintiff could not show proximate cause, the plaintiff adequately alleged causation for Article III standing).

Here, as discussed above, Plaintiff has been harmed by the stigma he carries, which has burdened him to the point of being unable to take advantage of other employment opportunities in his chosen career. The stigma he carries is heavy and has significantly limited his professional prospects making it difficult for him to compete on equal footing with others in the field. This is the type of reputational harm sufficient to establish standing. *TransUnion LLC v. Ramirez* (2021) 141 S. Ct. 2190, 210 L. Ed. 2d 568 (the Supreme Court explained that "various intangible harms," such as reputational harm, can qualify as concrete injuries for standing purposes. see also *Meese v. Keene*  (1987) 481 U.S. 465, 479 n.14, 107 S. Ct. 1862, 95 L. Ed. 2d 415 ("[T]he risk of this reputational harm, as we have held earlier in this opinion, is sufficient to establish appellee's standing to litigate the claim on the merits."). Additionally, such intangible harms which can also be "concrete," may also include harms specified by the Constitution itself. See, e.g. *Spokeo,* 578 U. S. at 340, (citing *Pleasant Grove City v. Summum* (2009) 555 U. S. 46 0 (*abridgment of free speech*), and *Church of Lukumi Babalu Aye, Inc. v. Hialeah* (1993) 508 U. S. 520 (infringement of free exercise). Here, it is also arguable that because Plaintiff's disciplinary action stems from his exercise of his First Amendment right to free speech, thus resulting in an abridgment of his rights, such is sufficient to demonstrate actual injury. *Benjamin v. Fraser,* 264 F.3d 175, 184 (2d Cir. 2001) (holding that where the right at issue is provided directly by the Constitution or federal law, a prisoner has standing to assert that right even if the denial of that right has not produced an "actual injury.").

### D.  Plaintiff has Sufficiently Plead Facts for *Monell* Liability Purposes at this Pleading Stage

The Ninth Circuit set out three ways for a plaintiff to establish municipal liability: (1) "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.'" *Gillette v. Delmore* 979 F.2d 1342, 1346-47 (9th Cir. 1992). (2) "[T]he plaintiff may

establish that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy." (Id.) When there is such "final policy-making" authority, a "single decision" by a municipal policymaker may be enough for Monell liability, "even though the decision is not intended to govern future situations." *Pembaur v. City of Cincinnati* (1986) 475 U.S. 469, 480-81. (3) "[T]he plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette* 949 F.2d at 1347. "The word 'policy' generally implies a course of action consciously chosen from among various alternatives." Id. (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823.)

A governmental policy may be inferred from "widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Nadell v. Las Vegas Metro. Police Dep't,* 268 F.3d 924, 929 (9th Cir. 2001).) Furthermore, discovery may uncover evidence of ratification by an official with policy-making authority. *Goodell v. Columbia Cnty. Pub. Transp.,* 2021 U.S. Dist. LEXIS 263887 (Holding plaintiff's theory of Monell liability survives motion to dismiss concluding the "Plaintiff, through discovery, could uncover evidence showing this authority.") Similarly, here, through discovery, it is more than plausible that Plaintiff will be able to show that an official with final policy-making authority was involved either by ratifying or as a final decision maker when Defendants made the decision to circumvent well-established procedures and deprived plaintiff of his right to due process. Significant employment actions such as a "no rehire" status are known to be subject to multiple levels of review within the Department, including by Defendants' Board of Supervisors who have policy-making authority. Furthermore, Plaintiff names additional entities and individuals with policy making authority, including Sheriff Robert G. Luna, Acting Commander of the Professional Standards Division Sergio V. Escobedo, the EIU and CEOP, as being involved in the decision or ratification at issue. (Complaint at ¶ 18, 34; *St.*

*Louis v. Praprotnik* (1988) 485 U.S. 112, 114 (the determination of where policymaking authority actually resides is ultimately a question for the factfinder.) Therefore, the motion to dismiss should be denied, and Plaintiff's claims implicating *Monell* liability should not be dismissed at this pleading stage.

### E. Plaintiff Sufficiently Pleads Facts to Support his First Amendment Claim at this Pleading Stage.

"A First Amendment retaliation claim against a government employer involves a sequential five-step series of questions: (1) whether a plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; [and then shifts the burden on the defendant to demonstrate] (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Desrochers v. City of San Bernardino* (9th Cir. 2009) 572 F.3d 703, 705.

The courts have defined the "scope of the public concern element . . . broadly," and adopted a "liberal construction of what an issue 'of public concern' is under the First Amendment. *Ulrich v. City & County of S.F.* (9th Cir. 2002) 308 F.3d 968, 978; *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir. 2011); *Roe v. City & County of S.F.* (9th Cir. 1997) 109 F.3d 578, 586. Here, Plaintiff was retaliated against when the decision was made to end his career entirely within the department without due process for engaging in protected speech. Specifically, Plaintiff openly criticized a Board of Supervisors' motion on social media that was written by Justice Deputy, Esther Lim, and he further engaged in protected activity by raising concerns of potential ethical violations involving Lim. (Complaint ¶ 19c-d, Exhibit 1 and 4.) From the preliminary evidence obtained, Lim appears to have taken issue with some of the comments made by Villanueva related to a motion entitled "Taking Action For The Protection For Surviving Families From Law Enforcement Harassment and Retaliation". (Id.) Considering Plaintiff's role as

Sheriff at the time, as well as Lim's position, along with the subject matter of the motion, there is no doubt that Villanueva was speaking on matters of public concern. *Desrochers v. City of San Bernardino* (9th Cir. 2009) 572 F.3d 703 ("The plaintiffs 'bear[] the burden or snowing [sic] that the[ir] speech addressed an issue of public concern," Eng, 552 F.3d at 1070, based on "the content, form, and context of a given statement, as revealed by the whole record [citation]."; *Simpson v. City of Upland*, 2019 U.S. Dist. LEXIS 228279, *17-18 ("Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'")

Furthermore, "whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." *Ellins v. City of Sierra Madre* (9th Cir. 2013) 710 F.3d 1049, 1053. Plaintiff has thus satisfied the requirements to show a claim under the First Amendment at this pleading stage.[1]

### F.   Plaintiff has Rightfully Named the Defendants in This Action

Where the plaintiff is seeking damages against a state official, a strong presumption is created in favor of a personal-capacity suit because an official-capacity suit for damages would be barred. See *Mitchell v. Washington* (9th Cir. 2016) 818 F.3d 436, 442; *Romano v. Bible* (9th Cir. 1999) 169 F.3d 1182, 1186; *Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho* (9th Cir. 1994) 42 F.3d 1278, 1284; *Cerrato v. S.F. Cmty. Coll. Dist.* (9th Cir. 1994) 26 F.3d 968, 973 n.16; Price, 928 F.2d at 828. "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Kentucky v. Graham* (1985) 473 U.S. 159, 165. Liability in a personal-capacity suit can be demonstrated by showing that the official caused the alleged constitutional injury. Id. at 166. While the official in a personal-capacity suit may, depending upon the facts, be able to establish immunity from claims for damages, the

---

[1] Plaintiff seeks leave to amend the complaint as to his First Amendment Claim to allege this claim under 42 U.S.C. § 1983.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

individual defendants should not be dismissed at this pleading stage. *Murchinson v. City of Sierra Madre*, 2023 U.S. Dist. LEXIS 173922 (While qualified immunity may ultimately be available to individual defendants Shaw and Cadzow based on the evidence uncovered in discovery, it is not appropriate to dismiss on that basis at this stage.) See *Morley v. Walker* (9th Cir. 1999) 175 F.3d 756, 761 ("Our determination that qualified immunity may be available *does not assist [Defendant] at this stage. [Defendant] filed a motion to dismiss, not a summary judgment motion*. We must regard all of the allegations in [Plaintiff's] complaint as true. Through that lens, the complaint withstands a motion to dismiss."). Accordingly, the individual defendants name in this action should not be dismissed.

### G.  Plaintiff Sufficiently Pleads an IIED Claim.

The law provides that, for a plaintiff to allege a claim for intentional infliction of emotional distress:

> Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.

*Kiseskey v. Carpenters' Trust for So. California,* 114 Cal.App.3d 222, 228 (1983).

"Illegal conduct [is] *per se* outrageous," satisfying the standard for an IIED claim. Chin, *et al., Employment Litigation,* § 5:280 (The Rutter Group, 2005), *citing Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683, 697 (9th Cir. 2001) *(en banc)*.  Defendants' alleged constitutional violations are all individually illegal, giving rise to the IIED claim. California case law is in accord.

Furthermore, under California law, humiliation and anguish, according to proof, may satisfy the "severe" emotional distress element of IIED.  *Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 498 (1970).  Where reasonable minds differ, the trier of fact should determine whether the emotional distress rises to the level of "severe."  *Id.*

Therefore, defendants' contention that Plaintiff's IIED allegations are entirely

conclusory is patently false. Indeed, through his Complaint, Plaintiff made numerous detailed remarks as to how defendants' conduct constituted intentional infliction of emotional distress. For example, Plaintiff alleged that defendants' defamatory statements were not "merely negligent or careless, but were made with the intent to harm plaintiff's reputation, profession, and emotional well-being." (Complaint, ¶ 55.) To further support his assertion, Plaintiff re-alleged and incorporated by reference any and all prior instances of IIED identified in the Complaint. (*Id.,* ¶ 53.) Additionally, any dispute as to whether defendants' conduct is outrageous is a question for the jury, not for the court at the pleading stage. *Murphy v. Allstate Ins. Co.,* 83 Cal.App.3d 38, 51 (1978); *Billmeyer v. Plaza Bank of Commerce,* 42 Cal.App.4th 1086, 1097 (1996).

Furthermore, Plaintiff's intentional infliction of emotional distress claim alleges that defendants acted "intentionally" and/or with "reckless disregard" in taking the above actions. The Complaint alleges that defendants' conduct caused plaintiff to suffer severe emotional distress, including mental anguish, as a result of the conduct. (Complaint, ¶ 57.)

## H. Plaintiff Sufficiently States Claims for Defamation and Compelled Self-Defamation.

### (1) Plaintiff Sufficiently Pleads a Defamation Claim.

In order to plead a defamation claim sufficiently, plaintiff must show that defendants published to an individual other than plaintiff a false and defamatory statement. *Taus v. Loftus,* 40 Cal.4th 683, 720 (2007). Civil Code section 46(3) broadly defines slander to include any language with a tendency to injure a person's reputation. This includes "what is insinuated as well as what is stated explicitly." (*MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 547; *Cameron v. Wernick* (1967) 251 Cal.App.2d 890, 893.) Under this paradigm, charges of dishonesty or ethical/legal violations are defamatory per se. *Cameron,* 251 Cal.App.2d at 893. The plaintiff need not even show that anyone believed the statements. (*Arno v. Stewart* (1966) 245 Cal.App.2d 955, 963.) To be defamation, publication need only be to a single person other than the plaintiff. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1203.) Even publications that were completely internal, such as

those made by and received by employees may constitute actionable defamation against an entity employer. (*Kelly v. Gen. Tel.* (1982) 136 Cal.App.3d 278, 284.) Plaintiff pleads more than enough specific facts to make a clear and concise defamation claim.

Plaintiff alleges that defendants made false defamatory statements regarding his professional reputation. The Complaint alleges that defendant Huntsman and his Los Angeles County Office of Inspector General have been permitted to defame Villanueva continuously by falsely suggesting that Plaintiff engaged in unlawful and potentially unlawful acts during his time as Sheriff. (Complaint, ¶ 19 (f)). Moreover, the Complaint alleges that Defendant Huntsman—though unknown to Plaintiff until after October 2023—made false statements regarding Villanueva that were *per se* defamatory. (Complaint ¶ 19.) Such false statements by Huntsman include allegations that Villanueva's staff is "very anti-Chinese," that Villanueva targeted Esther Lim "because she's Chinese" (even though she identifies as Korean American), and that Villanueva was allegedly harassing Huntsman by calling Huntsman by a name he did "not use"—despite numerous public uses of this name (Max-Gustaf Hunstman) by Defendant Huntsman, including Huntsman's own desk plaque. (Complaint, ¶ 19 (a-d)). Further, the Complaint alleges that Defendant's branded him as unqualified to work within the County, disseminating this information to the public shortly after Plaintiff announced his candidacy. (Complaint, page 7.) These statements were published to, amongst others, The Los Angeles Times, which later published a hit-piece article titled "Do Not Rehire" thereby further disseminating defendants defamatory remarks to the general public. (*Id.,* ¶16.) The information was disseminated after Plaintiff announced his candidacy for the Los Angeles County Board of Supervisors, before ballots for the 2024 primary were released. (*Id.*) Plaintiff further alleges that these statements were made with actual malice—that is, that Defendants knew or should have known that the statements were false or acted with reckless disregard as to their truth. (*Id.,* ¶ 44.)

### (2) The Late Discovery Rule Applies to Defamation.

The "rule of discovery" applies to defamation, therefore, the one-year statute of

limitations for defamation does not begin to run until the defamation is discovered. (See *Manguso v. Oceanside Unified School District* (1979) 88 Cal.App.3d 725, 728-731 (Plaintiff's action, filed within one year of discovery of defamation placed in her confidential personnel file 16 years before she discovered the defamation, survived a statute of limitations attack.); see also *Schneider v. United Airlines, Inc.* (1989) 208 Cal.App.3d71, 77.) Furthermore, in *Bernson v. Browning-Ferris Industries* (1994) 7 Cal. 4th 926, the plaintiff knew of the publication of defamation but was unable to discover who published it until four years after publication. The trial court granted summary judgment holding plaintiff's claim was barred under the one-year statute of limitations. (*Id.*) The Supreme Court said reversed and explained:

> The statute of limitations usually commences when a cause of action "accrues," and it is generally said that "an action accrues on the date of injury." (Cite omitted.) Alternatively, it is often stated that the statute commences "upon the occurrence of the last element essential to the cause of action."(Cite omitted.) These general principles have been significantly modified by the common law "discovery rule," which provides that the accrual date may be "delayed until the plaintiff is aware of her injury and its negligent cause. (Cite omitted.)
>
> A close cousin of the discovery rule is the "well accepted principle . . . of fraudulent concealment. (Cite omitted.)" It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." (*Ibid.*) Like the discovery rule, the rule of fraudulent concealment is an equitable principle designed to effect substantial justice between the parties; its rationale "is that the culpable defendant should be estopped from profiting by his own wrong to the extent that it hindered an 'otherwise diligent' plaintiff in discovering his cause of action." (*Bernson*, supra, 7 Cal. 4th at 931.)

In this case, the late discovery rule applies. Indeed, the Complaint alleges that Plaintiff was unaware until after he announced his candidacy for Los Angeles County Board of Supervisors in September 2023 that he was purportedly ineligible for re-hire. (Complaint ¶¶ 15-16.) It was not until January 2024 that Plaintiff discovered false and malicious statements by Huntsman made in or around June 2022. (Complaint ¶¶ 16-18.) Therefore, plaintiff sufficiently pleads more than enough specific facts to show each of the elements of defamation.

**(3) The Defamatory Statements at Issue Were Made with Actual**

**Malice and Are Not Privileged.**

Defendants' attempts to characterize the above-described statements as absolutely privileged is unavailing. As discussed above, the statements at issue are not protected by a litigation privilege or mandated official acts. Indeed, the protections of Civ. Code § 47 (b) do not apply to "any communication between a person and a law enforcement agency **in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act** or is engaged in an activity requiring law enforcement intervention, **knowing that the report is false, or with reckless disregard for the truth or falsity of the report**." (Civ. Code § 47 (b) (5).)

Here, the defamatory statements as alleged in the Complaint incontrovertibly are not privileged as they plainly include false reports that [Plaintiff] has committed or is in the act of committing a criminal act. For example, Huntsman's campaign of reporting *falsely* that Plaintiff targeted Lim "because she is Chinese" and continuously suggesting that Plaintiff engaged in unlawful acts fall far beyond the protections afforded by Civ. Code § 47 it argued in its motion.

At best, Defendants assert a privilege per Civ. Code § 47 (c). However, the privilege afforded by Civil Code section 47(c) is a *conditional* privilege which is lost if the privilege is abused, or if the publication was motivated by malice. (*Deaile v. General Tel. Co. of Calif.* (1974) 40 Cal.App.3d 841, 847; *McMann v. Wadler* (1961) 189 Cal.App.2d 124, 129.) Thus, in order to overcome or eliminate any conditional privilege, a plaintiff need only show some evidence of either malice or abuse of privilege. The existence or nonexistence of malice is a question of fact for the jury. (*Agarwal v. Johnson, supra,* 25 Cal.3d at 944-945 (factual issue whether publication was motivated by hatred or ill will towards the plaintiff); *Larrick v. Gilloon* (1959) 176 Cal.App.2d 408, 416, disapproved on other grounds by *Field Research Corp. v. Superior Court* (1969) 71 Cal.2d 110, 114 ["the question of whether a publication was inspired by actual malice is essentially and peculiarly a question of fact."])

**(4)  Plaintiff Sufficiently Pleads a Compelled Self-Defamation Claim.**

In order to plead a claim for compelled self-defamation, a plaintiff must show that:

> [T]he person defamed republishes the statement, provided that the originator "has reason to believe that the person defamed will be under a strong compulsion to disclose the contents of the defamatory statement to a third person after he has read it or been informed of its contents."

_McKinney v. County of Santa Clara,_ 110 Cal.App.3d 787, 796 (1980).  However, this rule "has been limited to a narrow class of cases, usually where a plaintiff is compelled to republish the statements in aid of disproving them."  _Live Oak Publishing Co. v. Cohagan,_ 234 Cal.App.3d 1277, 1285 (1991).

Plaintiff has alleged more than enough facts to support a claim for compelled self-defamation.  Plaintiff specifically alleges the exact defamatory statements that were made, that defendants unjustifiably and recklessly labeled Plaintiff with a "Do Not Rehire" designation and that the County continuously and publicly suggests that he engaged in unlawful acts as Sheriff. (Complaint, ¶¶ 16, 19(f).) Defendants' basis for labeling Plaintiff with such a designation was based on false testimony and improper internal procedure. (Id., ¶¶16, 19, 20.)  Defendants knew when they labeled Plaintiff with a "Do Not Rehire" designation that he would be forced to repeat the designation and discuss the false and injurious allegations in order to adequately defend himself in the court of public opinion. Therefore, Plaintiff has alleged more than enough facts to show what the exact defamatory statements were and why he would be forced to repeat those comments to other prospective employers.  Therefore, this claim should be upheld.

## I.  Plaintiff Sufficiently Pleads a Claim for Negligent Hiring, Supervision and Retention.

Negligence liability will be imposed on an employer if it knew or should have known that **_hiring or retaining_** the employee created a particular risk or hazard and that particular harm materializes. _Phillips v. TLC Plumbing, Inc._ (2009) 172 Cal.App.4th 1133, 1139. Liability for negligent hiring and supervision is based upon the reasoning that if an enterprise hires, supervises, or retains individuals with characteristics which might pose a danger to customed or other employees, the enterprise should bear the loss cause by the

wrongdoing of its incompetent or unfit employees. *Id.* The tort has developed in California in factual settings where the plaintiff's injury occurred in the workplace, or the contract between the plaintiff and the employee was generated by the employment relationship." *Mendoza v. City of Los Angeles* (1998) 66 Cal.App.4th 1333, 1339-1340.

Here, contrary to Defendants' contentions, Plaintiff has pled sufficient facts to support this claim. Specifically, Plaintiff alleges that Defendants owed a duty of care to plaintiff to supervise their managers, officials, and other employees to ensure they complied with due process requirements. (Complaint ¶ 59.) The Complaint further alleges that Defendants' breached said duty resulting in harm to Plaintiff. (*Id.*) As discussed extensively above, Plaintiff's due process rights were violated notwithstanding said duty.

**J.  In the Alternative, Plaintiff Requests Leave to Amend.**

Should this Court be inclined to grant defendants' Motion to Dismiss, Plaintiff should be granted leave to amend.  Leave to amend should be freely granted in the interests of justice.  F.R.C.P. 15(a).  In the present case, defendants have not even argued, let alone established, that plaintiff could not allege more facts in support of his causes of action.

In the event Defendants argue that the filing of their California anti-SLAPP motion prevents Plaintiff from amending his complaint, that argument should swiftly be disregarded. In *Verizon Del., Inc v. Covad Communications, Co.* (2004), the Nineth Circuit Court of Appeals held, "[a]s Vess implicitly suggests, granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting plaintiff leave to amend would collide with Fed. R. Civ. P. 15(a)." 377 F.3d 1081, 1091. The Court further stated, "Moreover, the purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint. If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants." *Id*. As such, because an amendment to the complaint would serve defendants' interests by eliminating offending claims and because F.R.C.P. 15(a) requires leave to amend to be freely granted, in the event this Court should grant defendants' motion to strike, Plaintiff requests this court grant Plaintiff leave to

amend its complaint, despite the existence of defendants' anti-SLAPP motion.

## V.  CONCLUSION

Plaintiff, Villanueva, requests that defendants' Motion to Dismiss be denied or, in the alternative, that plaintiff be given leave to amend.

Dated:  August 19, 2024          SHEGERIAN & ASSOCIATES, INC.


By:   */s/ Carney Shegerian*

Carney Shegerian, Esq.
John David, Esq.
Yesenia Cardoza, Esq.

Attorneys for Plaintiff,
ALEX VILLANUEVA

**VILLANUEVA v. COUNTY OF LOS ANGELES, et al. USDC Case No. 2:24-cv-04979 SVW (JC)**

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

I am an employee in the County of Riverside, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3764 Elizabeth Street, Riverside, California 92506.

On August 19, 2024, I served the foregoing document, described as **"PLAINTIFF ALEX VILLANUEVA'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES,"** on all interested parties in this action as follows:

**LOUIS R. MILLER (State Bar No. 54141)**
**smiller@millerbarondess.com**
**JASON H. TOKORO (State Bar No. 252345)**
**jtokoro@millerbarondess.com**
**STEVEN G. WILLIAMSON (State Bar No. 343842)**
**swilliamson@millerbarondess.com**
**MILLER BARONDESS, LLP**
**2121 Avenue of the Stars, Suite 2600**
**Los Angeles, California 90067**

☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒    **(FEDERAL)**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 19, 2024, at Riverside, California.

_Delmy Garcia_
Delmy Garcia