UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

Paul M. Cruz                                              N/A

Attorneys Present for Plaintiff:                Attorneys Present for Defendants:

N/A                                                          N/A

**Proceedings:**   ORDER DENYING DEFENDANTS' MOTION TO DISMISS [48]

## I.  Introduction

Before the Court is a motion to dismiss brought by the County of Los Angeles, the County of Los Angeles Sheriff's Department, the Los Angeles Board of Supervisors, the Country Equity Oversight Panel, the Los Angeles County Office of Inspector General, Constance Komoroski, Mercedes Cruz, Roberta Yang, Laura Lecrivain, Sergio V. Escobedo, Ron Kopperud, Robert G. Luna, Max-Gustaf Huntsman, and Esther Lim (collectively, "Defendants"). ECF No. 48. Defendants seek to dismiss the First Amended Complaint ("FAC") filed by Plaintiff Alex Villanueva. For the following reasons, the motion is DENIED.

## II.  Factual and Procedural Background

Plaintiff Alex Villanueva was elected as sheriff of Los Angeles County in 2018. FAC ¶ 10, ECF No. 46. While sheriff, Plaintiff publicly spoke out against the Los Angeles Board of Supervisors on numerous occasions. *Id.* ¶¶ 11-13. For example, Plaintiff publicly opposed several of the ballot measures proposed by the Los Angeles Board of Supervisors. *Id.* ¶ 11. Similarly, Plaintiff vocally opposed COVID-19 vaccine mandates implemented by the County. *Id.* ¶ 12. He also publicly raised concerns regarding the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

County's contracts with the companies running the County's COVID testing and registration programs. *Id.* ¶ 13.

In 2022, two of Plaintiff's employees filed complaints alleging Plaintiff violated the County's Policy of Equity ("CPOE"). *Id.* Ex. 1 at 37-42, 123. Specifically, the complainants alleged that Plaintiff discriminated against them. *Id.*

The first complainant was Board of Supervisors member Esther Lim. On March 8, 2022, Esther Lim filed a CPOE complaint alleging that Plaintiff discriminated against her on the basis of gender, ethnicity, and national origin. *Id.* Ex. 1 at 37-42, 45-46. Lim's allegations center around three incidents in which Plaintiff critiques Lim's competence. For example, Lim alleged that Plaintiff referred to her as a "20-something, woke individual" whose writing "doesn't pass legal muster at all." *Id.* Ex. 1 at 41. Lim also alleged that Plaintiff referred to her as a "25-year-old" who is right out of college and a "flunky." *Id.* Lim contended that Plaintiff was targeting her because of her gender and race (Lim is Asian). *Id.* In support, Lim alleged that Plaintiff made misogynistic comments about the County Board of Supervisors, used a racist sexist slur against a Latina employee, disparaged a Black female Board member, and intimidated and harassed a female Asian employee. *Id.* Ex. 1. at 25-26.

In response to Lim's allegations, the Department opened an investigation into six potential CPOE violations: discrimination, sexual harassment, discriminatory harassment, third-person harassment, inappropriate conduct toward others, and retaliation. *Id.* Ex. 1 at 56. The County interviewed Ms. Lim on July 28, 2022.

The second complainant was County Inspector General Max Hunstman. *Id.* Ex. 1 at 123. On March 9, 2022, he alleged that Plaintiff targeted him in a "racially biased attack." *Id.* Specifically, Huntsman alleged that Plaintiff called him "Gustaf" with the intent of taunting Huntsman for his German heritage. *Id.* ¶ 19. "Gustaf" is part of Huntsman's previous first name, which he had changed in years prior. *Id.* Ex. 1 at 101-102. At the time of his allegations, "Max-Gustoff" was still listed as Huntsman's name on his desk plaque and several internet publications such as californitatoplawyers.com. *Id.* ¶ 19.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

In addition to alleging that Plaintiff used his old name to target his heritage, Huntsman alleged that Plaintiff accused him of being a holocaust denier to the LA Times. *Id*. Ex. 1 at 104. He further alleged that Plaintiff discriminated against the first complainant, Esther Lim. *Id*. ¶ 19(b).

In response to Huntsman's allegations, the Los Angeles County Sheriff's Department (the "Department") opened an investigation into Plaintiff for potential violations of the CPOE. *Id*. Ex. 1 at 128. Specifically, the Department investigated Plaintiff for discrimination, discriminatory harassment, third-person harassment, and retaliation. *Id*.

On June 29, 2022, Plaintiff received two separate notices from the Captain of the Internal Affairs Bureau that he was the subject of administrative investigations. *Id*. ¶ 11. These notices did not describe the specifics of the allegations nor the identities of the complainants. *Id*. ¶ 12.

On July 21, 2022, the Los Angeles County (the "County") interviewed Mr. Huntsman, who described his allegations against Plaintiff. *Id*. Ex. 1 at 80, 95-96, 104-105. On July 28, 2022, the County interviewed Ms. Lim, who likewise described her allegations. *Id*. Ex. 1 at 13, 17, 25-26. According to Eddie Alvarez, the Chief of Professional Standards Division during this time, after these interviews, the Internal Affairs Bureau determined that no policy violation had occurred, and the complaints were put in a suspense file. *Id*. ¶ 17.

On December 5, 2022, Plaintiff lost his bid for re-election as sheriff of Los Angeles County. *Id*. ¶ 13. Nine months later, on September 13, 2023, Plaintiff announced his candidacy for the Los Angeles County Board of Supervisors. *Id*. ¶ 15.

One week after that, on September 20, 2023, the Department reopened the investigation into Plaintiff. *Id*. ¶ 18(d). The Equity Investigations Unit evaluated the complainants' interviews, the County Policy of Equity notification forms, Facebook Live and radio recordings containing statements by Plaintiff, articles from the Los Angeles Times where Plaintiff discussed Mr. Huntsman, the complainants' requests for internal investigation, and the Manual of Policy and Procedures. *Id*. Ex. 1 3, 70. The Equity

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

Investigations Unit then forwarded their findings to the County Equity Oversight Panel (the "Panel"). *Id.* ¶ 18(c).

The Panel reviewed the evidence and concluded that all but one of the charges was founded. *Id.* Ex. 1 64-67, 145-48. As a result, the Panel recommended that Plaintiff be placed on the County's "Do Not Rehire" list (the "List"). *Id.* Ex. 1 at 66, 147.

On January 24, 2024, the Los Angeles Times published a story regarding the outcome of the County's investigation into Plaintiff. *Id.* ¶ 16. The article summarized some of the evidence from the investigation into Mr. Huntsman's allegations, as well as the Panel's recommendation to place Plaintiff on the "Do Not Rehire List." *Id.* Ex. 2. The article did not mention the investigation into Ms. Lim's allegations. *Id.* The County did not provide any comment for the article, but it did confirm to the Times that it upheld the Panel's recommendation. *Id.*

Plaintiff has a genuine desire to become employed again with the Los Angeles Sheriff's Department as a consultant. *Id.* at 6:14-15. Alternatively, he desires to be considered for employment as a Justice Deputy by the present or future Sheriff. He also would like to apply for the Chief of Police position should the Community Safety Police Department be established. *Id.* at 6:15-18. Plaintiff has not applied for these positions because he feels that any application would be futile given his placement on the County's "Do Not Rehire" list. *Id.* at 6:18-19.

On June 13, 2024, Plaintiff brought claims against Defendants, alleging seven different causes of action: (1) violation of Constitutional Due Process; (2) violation of the First Amendment; (3) violation of California Government Code section 3060; (4) defamation, libel, and slander; (5) coerced self-defamation; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress. *Id.* at 1, ECF No. 1. Defendants moved to dismiss. ECF No. 30. The Court granted Defendants' motion without prejudice on September 20, 2024. ECF No. 45.

Plaintiff filed his First Amended Complaint on September 30, 2024. ECF No. 46. Defendants moved to dismiss. ECF No. 48.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

### III.    Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

### IV. Discussion

#### A. Standing

"The question of whether a party has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023) (citing *Horne v. Flores*, 557 U.S. 433, 445 (2009)). "When assessing a party's standing at the pleading stage, we accept all facts alleged in the complaint as true." *Id.* at 408 (citing *Vaughn v. Bay Env't Mgmt. Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009)).

Standing requires three elements: an "injury in fact," a causal connection between the injury and the defendant's conduct, and the "likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).

An injury in fact must be concrete and particularized, . . . actual or imminent, [and] not conjectural or hypothetical." *Steel Co.*, 523 U.S. at 102. To be concrete and particularized, the injury must be real and must affect the plaintiff in a personal way. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339–40 (2016). An injury in fact is not limited to physical or monetary harms. "[V]arious intangible harms including . . . reputational harm" suffice as an injury in fact. *TransUnion LLC v. Ramirez*, 549 U.S. 413, 417 (2021). The second element, that there be a causal connection between the injury and the defendant's conduct, requires that the plaintiff "demonstrate[e] that her injury-in-fact is . . . fairly traceable to the challenged action." *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018).

Here, the potential injury to Plaintiff is Defendants' placement of him on its "Do Not Rehire" list. In the Court's previous order dismissing Plaintiff's claims, the Court held that this placement did not constitute a concrete and particularized injury because Plaintiff did "not allege that he has attempted to obtain employment with the County or that he even desires to seek future employment with the County." Order Granting Defendants' Motion to Dismiss ("MTD Order") at 6.

Plaintiff remedies that deficiency in his First Amended Complaint by alleging that he wants to be

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

employed by the County again. Specifically, he alleges that he desires to apply for at least two different County positions but does not do so because his placement on the Do Not Rehire list renders any potential employment applications futile. FAC at 6. In other words, Defendant's placement of Plaintiff on the "Do Not Rehire" list has deprived Plaintiff of employment opportunities. Loss of employment opportunities is undoubtedly an injury sufficient to confer standing. *See Breiner v. Nevada Dep't of Corr.*, 610 F.3d 1202, 1206 (9th Cir. 2010) (holding that the plaintiff had standing to challenge the Defendant's practices because "he would have applied for the job had it not been for [the employer's discriminatory] practices") (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 368 (1977)).

That Plaintiff has not actually applied for any jobs with the County does not change the Court's conclusion. To obtain standing, "a plaintiff need not apply for a job if the application would have been futile." *Gutowski v. Cnty of Placer*, 108 F.3d 256, 260 (9th Cir. 1977) (citing *Int'l Bhd. of Teamsters*, 431, U.S. at 368). "In such an instance, the plaintiff must show that he or she 'was a potential victim of unlawful discrimination' and, to that end, the plaintiff must establish that he or she 'would have applied for the job had it not been for those [discriminatory] practices.'" *Int'l Bhd. of Teamsters*, 431 U.S. at 367-68. That is exactly what Plaintiff does here—he alleges that he would have applied for jobs with the County had it not been for the County's decision to place him on the Do Not Rehire list. *See id.*

That *Teamsters* and *Gutowski* are discrimination cases, and this case involves a Do Not Rehire list is a distinction without a difference. Nothing in those opinions limits their application to discrimination cases. Indeed, there is no reason why being barred from a job due to your race is any less injurious than being barred from a job due to your identity—the result is the same: deprivation of a job opportunity that the plaintiff desires to pursue.

In sum, the Court holds that Defendants placement of Plaintiff on the Do Not Rehire list constitutes a concrete injury sufficient to confer standing because placement on the list bars Plaintiff from pursuing jobs he wishes to apply for. The Court therefore turns to the merits of Plaintiff's claims.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

### B. First Amendment Retaliation

Plaintiff brings claims for retaliation in violation of the First Amendment under 42 U.S.C. § 1983. At a broad level, his theory of the retaliation is that Defendants placed Plaintiff on the Do Not Rehire list in retaliation for publicly critiquing the Board of Supervisors, and that the findings of the Huntsman and Lim investigations were merely pretextual.

"To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in a constitutionally protected activity; (2) as a result, he was subject to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

#### 1. Constitutionally Protected Activity

The first step in establishing a retaliation claim is showing that the plaintiff engaged in constitutionally protected activity. *Id.* Here, Plaintiff publicly critiqued the policies of the Board of Supervisors. For example, he vocally criticized the County's decision to impose vaccine mandates. FAC ¶ 12. This is certainly a constitutionally protected activity. Indeed, "expressing [ones] views on matters of great public importance . . . is precisely one of the types of activity envisioned by the Founders in presenting the First Amendment for ratification." *See Wood v. Georgia*, 370 U.S. 375, 388 (1962) (holding that a letter from a county sheriff to a local newspaper that critiqued a county judge fell within the scope of the First Amendment).

#### 2. Adverse Action

The second element of the retaliation test is whether Plaintiff "was subject to adverse action by the defendant that would chill a person of ordinary fitness from continuing to engage in the protected activity." *Blair*, 608 F.3d at 543. The "relevant inquiry is whether the state [has] taken 'action designed to retaliate against and chill political expression.'" *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003).

| | : |
|---|---|
| Initials of Preparer | PMC |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

(quotations omitted). Or, put differently, "'whether the exercise of the first amendment rights was deterred' by the government employer's action." *Id.* (quotations omitted).

"The most familiar adverse actions are 'exercise[s] of governmental power' that are 'regulatory, proscriptive, or compulsory in nature' and have the effect of punishing someone for his or her speech." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010). "The prototypical plaintiff in these cases is a government worker who loses his job as a result of some public communication critical of the government entity for whom he works." *Id.* But that is not the only circumstance in which courts will find an adverse action. Indeed, "[t]o constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind." *Coszalter*, 320 F.3d at 975.

Here, Defendants' placing Plaintiff on a "Do Not Rehire" list suffices an adverse action, as the prospect of being permanently banned from working for the County would certainly "chill a person of ordinary fitness from continuing to engage in" critique of the County's leadership. *See Coszalter*, 320 F.3d at 975. This is especially true for an individual in Plaintiff's position—i.e., a career public servant who has worked for the County for decades and thus plausibly desires to work for the County again.

Defendant is incorrect to describe Defendants' placing Plaintiff on a Do Not Rehire list as a de minimis action. Quite the contrary, placement on a Do Not Rehire list is far more severe and likely to chill speech than other actions courts have found sufficient to plead retaliation. For example, in *Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir. 1989), the Ninth Circuit held that the defendant banning the plaintiff from attending meetings and participating as an evaluator in training exercises sufficed as retaliation for political activity. A defendant barring a plaintiff from attending meetings and participating as an evaluator is a far less severe punishment than Defendants in this case barring Plaintiff from all future employment with the County of Los Angeles. *See id.* Accordingly, since the action of the defendant in *Thomas* suffices to plead retaliation, so too does the action of Defendants.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

### 3. Substantial Causal Relationship Between the Protected Speech and the Adverse Action

"Finally, to establish the third prong of the prima facie case for First Amendment retaliation—which requires the plaintiff to show a causal relationship between the protected conduct and the material adverse action—the plaintiff must show that the 'protected conduct played a part, substantial or otherwise,' in the defendant's wrongdoing.'" *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019)). "In many cases, establishing the causal connection between a defendant's animus and a plaintiff's injury is straightforward, and courts may take the evidence of motive and the [defendant's wrongdoing] as sufficient for a circumstantial demonstration that one caused the other." *Id.* "In assessing whether this causal element is met, courts have also given weight to circumstantial evidence such as" (1) "proximity in time between the protected speech and the adverse action," (2) "the defendant's expression of opposition to the protected speech," and (3) "evidence that the defendant proffered false or pretextual explanations for the adverse action." *Id.*

In this case, Plaintiff does not allege any facts that directly shed light on the motivations of the Panel when recommending that Plaintiff be placed on the Do Not Rehire list. Plaintiff does, however, allege sufficient circumstantial evidence to plausibly establish a substantial causal relationship between Plaintiff's public critique of the Board of Supervisors and his placement on the Do Not Rehire list.

First, common sense renders it plausible that Defendants opposed Plaintiff's protected speech. After all, the protected speech in question is a public and vocal critique of various Board of Supervisors' policies. It is safe to assume that Defendants supported their own policies and were opposed to Plaintiff's critique of those policies.

Second, Plaintiff's allegations render it plausible that Ms. Lim and Mr. Huntsman's complaints against Plaintiff were a pretextual explanation for placing Plaintiff on the Do Not Rehire list. Most damning is Plaintiff's allegation that the Internal Affairs Board investigated Ms. Lim and Mr. Huntsman's complaints in 2022 and concluded that "no policy violation had occurred." FAC ¶ 17. Defendants accordingly closed the investigation into Ms. Lim and Mr. Huntsman's complaints and placed the

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

complaints in a "suspense file." *Id.* Then, without explanation, Defendants reopened the investigation into those complaints in September 2023, just one week after Plaintiff publicly announced his intent to run for the Board of Supervisors. *Id.* ¶ 18. If Plaintiff's harassment of Ms. Lim and Mr. Huntsman were truly the reason for placing Plaintiff on the Do Not Rehire list, then why conclude in 2022 that no harassment occurred? Why wait until more than a year after the interviews of Ms. Lim and Mr. Huntsman to come to a final decision? Why reopen the investigation into Plaintiff just one week after he announced he was running for Board of Supervisors?

The plausibility of Plaintiff's assertion that his placement on the List was retaliation by the County is supported by apparent holes in Ms. Lim and Mr. Huntsman's complaints. For example, Ms. Lim's complaint that Plaintiff discriminated against her on the basis of gender and race by describing her work on the Board of Supervisors as that of a twenty-something-year-old. FAC ¶ 19. But even if Plaintiff did denigrate Ms. Lim's age and challenge her competence, such remarks do not facially constitute discrimination on the basis of gender and race.

Mr. Huntsman's complaints contain similar flaws. His main contention was that Plaintiff harassed him through the use of his old name "Max-Gustoff." But in contrast to Mr. Huntsman's contention that he does not condone the use of his old name, the name on his office plaque reads "Max-Gustoff." FAC ¶ 19.

The flaws in Ms. Lim and Mr. Huntsman's allegations are consistent with the Internal Affairs Bureau's 2022 conclusion that "no policy violation had occurred." *See id.* This reinforces the plausibility that the complaints against Plaintiff were mere pretexts for placing him on the Do Not Rehire list, and that the real reason for placement on the list was Defendants' desire to retaliate against Plaintiff for his public critiques of their policies.

This is not to conclusively say that Ms. Lim and Mr. Huntsman's complaints are fraudulent or that Defendants retaliated against Plaintiff. Further evidence beyond Plaintiff's allegations may yet show that Plaintiff harassed and discriminated against both individuals. Not only that, but just as Defendants' theory of the case raises questions, so does Plaintiff's. For example, if Defendants desired to retaliate against Plaintiff for his public critique of the Board of Supervisors' policies, why not do so immediately after Ms.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

Lim and Mr. Huntsman filed their complaints in 2022? And if Defendants desired to sabotage Plaintiff's electoral prospects, why not place Plaintiff on the Do Not Rehire list before his run for re-election as sheriff in late 2022? Why wait until Plaintiff ran for Board of Supervisors in 2023?

Whether Plaintiff or Defendants' theory of the case is correct, however, is a question of fact that is not before the Court. Rather, the question before the Court is whether Plaintiff's claims are plausible. The Court finds that the answer is yes, Plaintiff has sufficiently alleged facts to make it plausible that the Panel's findings of discrimination and harassment by Plaintiff were pretextual. This, in combination with Plaintiff's public critique of Defendants' policies and the timing of the reopening of the investigation into Plaintiff, is sufficient circumstantial evidence to plausibly establish a substantial causal relationship between Plaintiff's protected speech and his placement on the Do Not Rehire list.

In sum, Plaintiff has plausibly alleged the three elements of retaliation under the First Amendment. Defendants' motion to dismiss this claim is therefore denied.

### C. State Law Claims

In addition to his First Amendment claims, Plaintiff brings various state law tort claims. Specifically, Plaintiff alleges defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress.

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, . . . or of any separate issue." Fed. R. Civ. P. 42(b). In this case, for the purposes of effective and efficient court management, the Court will exercise its "broad discretion" to "bifurcate claims" and will bifurcate Plaintiff's state law claims from his federal First Amendment claims. *Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*, No. 08-cv-0547-FCD, 2009 WL 3246462, at *1 (E.D. Cal. Oct. 7, 2009) (citing *M2 Software, Inc. v. Madacy*, 421 F.3d 1073, 1088 (9th Cir. 2005)).

Relatedly, Plaintiff's state law claims are stayed until resolution of Plaintiff's federal claims are

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | November 27, 2024 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

complete. The Court accordingly defers issuing an order on Defendants' motion to strike portions of Plaintiff's First Amended Complaint.

### V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | PMC |