LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
STEVEN G. WILLIAMSON (State Bar No. 343842)
swilliamson@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX VILLANUEVA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100, inclusive,<br><br>Defendants. | **CASE NO. 2:24-cv-04979 SVW (JCx)**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[*Filed Concurrently with Notice of Motion; Declarations in Support; Separate Statement; Notice of Lodging; and [Proposed] Order*]<br><br>Date:    May 19, 2025<br>Time:    1:30 p.m.<br>Crtrm.:  10A<br><br>Assigned to the Hon. Stephen V. Wilson and Magistrate Judge Jacqueline Chooljian<br><br>Trial Date:    June 3, 2025 |

716692

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX (310) 552-8400

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   UNDISPUTED FACTS ........................................................................ 2

   A.    POE Complaints Filed Against Plaintiff In March 2022 ...................... 2

      1.    The Lim Complaint ............................................................. 2

      2.    The Huntsman Complaint ..................................................... 3

   B.    Sanders Roberts Investigations .............................................. 4

      1.    The Lim Investigation ......................................................... 5

      2.    The Huntsman Investigation .............................................. 6

   C.    Plaintiff Refuses To Be Interviewed By Sanders Roberts ................... 7

   D.    The IAB Case Files .......................................................... 7

   E.    The CEOP Concludes The Charges Against Plaintiff Were
         "Founded" And Recommends File Notation ............................... 8

   F.    The Los Angeles Times ...................................................... 9

   G.    Plaintiff Continues To Harass Lim And Huntsman ........................ 9

   H.    Procedural Background ...................................................... 9

III.  SUMMARY JUDGMENT STANDARD .............................................. 10

IV.   PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS ........................... 10

   A.    Plaintiff Has The Burden To Establish His Claim ....................... 10

   B.    There Is No Adverse Action As A Matter Of Law ........................ 11

      1.    The "Do Not Rehire" Notation is Not an Adverse Action ........ 12

      2.    Plaintiff's Speech Was Not "Chilled" ................................ 15

   C.    There Is No Substantial Causal Relationship ............................ 15

   D.    No "But-For" Causation ...................................................... 17

V.    PLAINTIFF CANNOT ESTABLISH SECTION 1983 LIABILITY ............ 18

VI.   PLAINTIFF LACKS ARTICLE III STANDING .................................. 19

VII.  THE COUNTY IS THE ONLY PROPER DEFENDANT ......................... 20

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

716692

i

VIII.  CONCLUSION ..................................................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Anthoine v. N. Cent. Counties Consortium,*
605 F.3d 740 (9th Cir. 2010)...............................................................16

*Blair v. Bethel Sch. Dist.,*
608 F.3d 540 (9th Cir. 2010)..........................................................passim

*Boquist v. Courtney,*
32 F.4th 764 (9th Cir. 2022)................................................11, 14, 17

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ...........................................................................10

*Cetacean Cmty. v. Bush,*
386 F.3d 1169 (9th Cir. 2004) ...........................................................19

*Garcia v. County of Riverside,*
2013 WL 12167913 (C.D. Cal. Aug. 1, 2013) ..................................21

*Gordon v. County of Orange,*
2019 WL 4279036 (C.D. Cal. Aug. 5, 2019) .....................................21

*Hartzell v. Marana Unified Sch. Dist.,*
130 F.4th 722 (9th Cir. 2025) ......................................................18, 19

*Hensley v. City of Port Huememe,*
2019 WL 3035057 (C.D. Cal. May 7, 2019) .....................................12

*Houston Cmty. Coll. Sys. v. Wilson,*
595 U.S. 468 (2022) ...........................................................12, 14, 15

*Huskey v. City of San Jose,*
204 F.3d 893 (9th Cir. 2000).............................................................16

*Kentucky v. Graham,*
473 U.S. 159 (1985) ...........................................................................20

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...........................................................................19

*Mattox v. City of Forest Park,*
183 F.3d 515 (6th Cir. 1999).............................................................11

*Monell v. Dep't of Soc. Servs. of City of New York,*
436 U.S. 658 (1978) ..................................................................2, 18, 19

*Navarro v. Block,*
250 F.3d 729 (9th Cir. 2001).............................................................18

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

*Navarro v. Block*,
    72 F.3d 712 (9th Cir. 1995) ........................................................................ 18

*Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*,
    235 F.3d 1243 (10th Cir. 2000) ...................................... 11, 13, 14, 15

*Probodanu v. Sessions*,
    387 F. Supp. 3d 1031 (C.D. Cal. 2019) .................................................. 20

*Quiroz v. Horel*,
    85 F. Supp. 3d 1115 (N.D. Cal. 2015) ................................................... 16

*Solesbee v. County of Inyo*,
    2014 WL 3890680 (E.D. Cal. Aug. 7, 2014) ........................................ 21

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .................................................................................. 19

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ................................................................ 18, 19

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ................................................................... 1

*Westfall v. City of Crescent City*,
    2011 WL 4024663 (N.D. Cal. Sept. 9, 2011) ....................................... 12

*Williams v. Seniff*,
    342 F.3d 774 (7th Cir. 2003) .................................................................... 17

*Zilich v. Longo*,
    34 F.3d 359 (6th Cir. 1994) ............................................................... 13, 14


**STATE CASES**

*Pierce v. San Mateo Cnty. Sheriff's Dep't*,
    232 Cal. App. 4th 995 (2014) .................................................................. 20


**FEDERAL STATUTES**

42 U.S.C. § 1983 ............................................................................................ 18, 21


**FEDERAL RULES**

Fed. R. Civ. P. 56(a) ....................................................................................... 1, 10

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

716692

iv

# I.    <u>INTRODUCTION</u>

In March 2022, two personnel complaints were filed against Plaintiff—who was then the elected Sheriff of the County of Los Angeles ("County")—alleging he violated the Policy of Equality ("POE") prohibiting harassment and discrimination within the County's ranks.  An outside law firm investigated those complaints.  The investigations and their outcomes—including a notation in Plaintiff's personnel file—were dictated by the evidence and independent decisions of the oversight panel.  These facts are beyond dispute.

Plaintiff's theory rests on sweeping allegations of conspiracy orchestrated by the County's Board of Supervisors ("Board") to retaliate against him for exercising his First Amendment free speech rights while he was Sheriff.  But *no evidence* supports that theory.  Instead, after extensive discovery, including thousands of pages of documents and depositions from everyone involved, the undisputed evidence definitively *forecloses* this theory.  The Board had no involvement in the POE complaints, investigations, or resulting file notation; and those independent processes were wholly unrelated to Plaintiff's public opposition to the Board.

This is exactly the kind of case that warrants summary judgment, because no evidence creates a genuine issue of fact for trial.  Speculation and unsupported claims of conspiracy are legally insufficient to avoid summary judgment.  *See*, *e.g.*, *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1061 (9th Cir. 2011)* ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.").

The Court should grant summary judgment under Rule 56 for several reasons:

*First*, Plaintiff cannot meet his burden to establish a *prima facie* case of First Amendment retaliation.  He cannot show a material adverse action that prevented him from performing his job as Sheriff or that chilled his speech.  The voters, not Defendants, ended Plaintiff's tenure in office; and Plaintiff has continued to freely air his views—and oppose the Board—on public issues.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

The POE investigations, and resulting file notation (which is a notation to the file about a finding, not an edict not to hire), are insufficient to support a First Amendment claim.  They do not preclude Plaintiff's ability to seek employment with the County and have no bearing on his ability to seek employment elsewhere. And it was Plaintiff, *not Defendants*, who made the investigations public; the First Amendment does not "immunize" Plaintiff from "political fallout" of his own making.  *See, e.g.*, *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 542 (9th Cir. 2010).

Moreover, no evidence supports any "substantial causal relationship" between Plaintiff's protected speech and the file notation.  Nor is Plaintiff's speech the "but-for" cause for the notation.  Plaintiff's founded violations of the POE indisputably are the cause.

*Second*, Plaintiff cannot satisfy *Monell*.  Plaintiff does not identify a County policy, custom, or practice that caused him harm.  To the contrary, he alleges that he was targeted by the Board in an "*unprecedented*" way.

*Third*, Plaintiff lacks standing because he has not been injured.  Plaintiff has not even attempted to seek employment with the County.  Nor is there any evidence that he applied for and was denied a job with anyone because of the file notation.

## II.    UNDISPUTED FACTS

### A.    POE Complaints Filed Against Plaintiff In March 2022

#### 1.    The Lim Complaint

Lim was a Justice Deputy to Board Supervisor Hilda Solis.  Justice Deputies engage in oversight of the Department.  (Decl. of Esther Lim ¶ 3.)

On March 8, 2022, Lim filed a complaint alleging that Plaintiff had violated the POE.  (Statement of Uncontroverted Facts ("SUF") 1.)  Lim alleged, among other things, that Plaintiff engaged in a pattern of harassment by repeatedly disparaging her in public forums, including on Facebook Live, going back to February 2021.  (Lim Decl. ¶¶ 5–16.)

She alleged that, as recently as March 2, 2022, Plaintiff referred to her and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

fellow Justice Deputies as "all women" and "woke flunkies" "right out of college." (*Id.* at 10 & COE Ex. 18 at 415.)  Lim also alleged that Plaintiff "targeted, intimidated, and harassed another Asian woman," former County CEO Sachi Hamai.  (*Id.* ¶ 16.)  Lim stated her belief that Plaintiff made these statements to "discredit her character, education, and experience" and that they were "linked to her age, sex, and race."  (COE Ex. 21 at 430.)

The County Intake Specialist Unit ("CISU") determined that it did not have jurisdiction because Plaintiff was a Department member.  (SUF 2.)  Accordingly, it recommended that the Department investigate the matter.  (*Id.* 3–5.)

The Lim complaint was then sent to the Department on March 17, 2022 and fielded by its Intake Specialist Unit ("ISU").  The ISU interviewed Lim and gathered evidence.  (*See* COE Ex. 21 at 430–35.)  The ISU determined that the conduct alleged warranted further investigation by the Department.  (SUF 6.)

The Department admonished Plaintiff on March 23, 2022.  (*Id.* 9.)  The Department did not ever conclude that Plaintiff had not committed a policy violation or place Lim's complaint into a "suspense file."  (*Id.* 7-8.)

Neither the Board nor Sheriff Luna had any involvement in Lim's complaint or its assessment.  (*Id.* 52–53.)  The Lim complaint had nothing to do with Plaintiff's opposition to ballot measures, vaccine mandates, or the County's Covid testing contract with Fulgent Genetics ("Fulgent").  (*Id.* 54.)

All of these facts are undisputed.

## 2.    **The Huntsman Complaint**

Huntsman is the County Inspector General.  The Inspector General's office oversees the Department.  (Decl. of Max Huntsman ¶ 3.)

On March 8, 2022, Huntsman filed a complaint alleging that Plaintiff had violated the POE.  (SUMF 18.)  Huntsman reported that Plaintiff had sent a Department email that was a "racially biased attack."  (COE Ex. 32 at 560.)  He also reported that Plaintiff had "repeatedly" referred to him as "Max-Gustaf"—a name

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    he had changed years ago—"in public attacks" to cause "extremists" that Plaintiff

2    "caters to" to view to him as either German or Jewish.  (*Id.*)  Plaintiff admitted

3    knowing he did not go by "Max-Gustaf" and that Plaintiff "intentionally misnamed

4    [him] for the purpose of benefiting from the racial animosity that could trigger"

5    extremists in Plaintiff's "audience."  (*Id.*)

6        CISU determined that it did not have jurisdiction because Plaintiff was a

7    Department member. (SUF 19.)  Accordingly, it recommended that the Department

8    investigate the matter.  (SUF 20–21.)

9        The Huntsman complaint was then sent to the Department on March 17, 2022

10   and fielded by its ISU.  ISU interviewed Huntsman and gathered evidence.  (*See*

11   COE Ex. 34.)  ISU determined that the conduct alleged warranted further

12   investigation by the Department.  (SUF 22.)

13       The Department admonished Plaintiff on March 23, 2022.  (*Id.* 25.)  The

14   Department did not ever conclude that Plaintiff had not committed a policy violation

15   or place Huntsman's complaint into a "suspense file."  (*Id.* 23-24.)

16       A week later, on April 1, 2022, Plaintiff told the Los Angeles Times that

17   Huntsman had filed a complaint against him and Plaintiff accused Huntsman of

18   being a Holocaust denier.  (*Id.* 27.)

19       Neither the Board nor Sheriff Luna had any involvement in the Huntsman

20   complaint or its assessment.  (*Id.* 56–57.)  The Huntsman complaint had nothing to

21   do with Plaintiff's protected speech.  (*Id.* 58.)

22       Again, after extensive discovery, none of these facts are, or can be, disputed.

23   **B.    Sanders Roberts Investigations**

24       Sanders Roberts was retained to investigate the complaints.  (SUF 13, 30.)

25   On June 29, 2022, Plaintiff was notified by the Department that he was the subject

26   of two administrative investigations involving allegations of discrimination,

27   harassment, and retaliation in violation of the POE.  (*Id.* 12, 29.)

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

1.    **The Lim Investigation**

On July 28, 2022, the attorney-investigator with Sanders Roberts, Christine Diaz-Herrera ("Diaz"), interviewed Lim. (SUF 14.) Lim detailed a pattern of harassment by Plaintiff against Lim and her fellow female Justice Deputies. (COE Ex. 25 at 488–509.) On multiple occasions, he referred to them as being all women and "flunkies." (*Id.* at 502.) He also described them as "twenty-five-year-olds" who were "right out of college" and did not know what they were doing, despite the fact that Lim and several others were in their forties, with decades of experience and advanced degrees. (*Id.* at 498, 502.) Lim said that Plaintiff stated he wanted to take the all-women Board "to a shed and beat them." (*Id.* at 500.)

Lim detailed an instance where Plaintiff referred to Supervisor Solis as "La Malinche," a racist and sexist slur.[1] (*Id.* at 500–01.) He also harassed former CEO Hamai for being Asian-American. (*Id.* at 501.) Lim also told Diaz about two letters that Plaintiff had sent to the Board, CEO's Office, Human Resources, and County Counsel, demanding that Supervisor Solis take appropriate administrative action. (*Id.* at 501–02.) Lim viewed these as Plaintiff trying to get her fired. (*Id.* at 505.)

Lim explained that she was concerned about Plaintiff's public attacks because he made them as Sheriff, in uniform, using Department platforms, and that they could be heard by "violent or dangerous" people. (*Id.* at 472.) Lim expressed her safety concerns and fear that listeners could retaliate against the Justice Deputies based on Plaintiff's statements. (*Id.*)

On August 11, 2022, Diaz interviewed Justice Deputy Veronica Pawlowski ("Pawlowski"). (SUF 14.) Pawlowski corroborated Lim's account. (SUF 16, COE Ex. 25 at 480–83.) She also provided additional examples of Plaintiff's harassment,

---

[1] "La Malinche" was an indigenous female consort of Hernan Cortes, who was enslaved and bore his child. She was seen as a race traitor, and a pejorative symbol of female deceit and betrayal. Supervisor Solis is Hispanic. (COE Ex. 25 at 500.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

1   such as calling the Justice Deputies "young twenty something woke and dumb

2   women." (COE Ex. 25 at 481.)  Pawlowski objected to Plaintiff's unsubstantiated

3   claims that the Board was corrupt and being criminally investigated.  (*Id.* at 482.)

4   Pawloski also expressed safety concerns.  (COE Ex. 6 at 128–129.)

5          On August 4, 2022, Diaz interviewed Justice Deputy Kyla Coates ("Coates").

6   (SUF 14.)  Coates provided similar accounts of how Plaintiff used his platform as

7   Sheriff to harass the Board and its Justice Deputies.  (SUF 16, COE Ex. 25 at 477–

8   79.)  She identified instances where Plaintiff referred to the Justice Deputies as

9   unqualified women.  (COE Ex. 25 at 477.)  Coates also described an instance where

10  Plaintiff said to her directly that she "worships at the altar of wokeness, hates the

11  police and wants to defund the police." (*Id.* at 478.)

12         Pawlowski and Coates did not file complaints against Plaintiff because they

13  feared he would retaliate against them, like he had with Lim.  (Pawlowski Decl.

14  ¶ 17, Coates Decl. ¶ 16.)  Diaz also collected evidence, including recordings of

15  Plaintiff's statements on Facebook Live and the KFI radio show.  (SUF 17.)

16         Neither the Board nor Sheriff Luna was involved in Diaz's investigation.  (*Id.*

17  52–53.)  And the investigation had nothing to do with Plaintiff's speech.  (*Id.* 54.)

18         None of the foregoing is in dispute.  It is exactly what happened.

19              **2.    The Huntsman Investigation**

20         On July 21, 2022, Diaz interviewed Huntsman.  (SUF 31.)  Huntsman

21  detailed a pattern of harassment by Plaintiff.  (COE Ex. 38 at 612–48.)  He

22  explained that he met with Plaintiff in June 2019, during which Plaintiff told him, in

23  a "significant way," that if his office issued a report, there "would be

24  consequences." (*Id.* at 622.)  Huntsman took this to be a threat.  (*Id.* at 622–25.)

25  Huntsman's office issued the report and shortly thereafter Plaintiff announced on a

26  podcast that Huntsman was under criminal investigation.  (*Id.* at 622–23.)

27         Huntsman believed Plaintiff's sudden use of "Max-Gustaf" starting in late

28  2021 was an attempt to "dog-whistle" to Plaintiff's extremist followers by stirring

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

1  up anti-Semitic sentiment.  (*Id.* at 628–29.)  Huntsman never used "Max-Gustaf"

2  professionally and had changed it years before Plaintiff took office.  (*Id.* at 632–33.)

3  And Plaintiff acknowledged knowing it was not his name.  (*Id.* at 634–36.)

4        After Huntsman filed his POE complaint, Plaintiff went further and called

5  him a Holocaust denier.  (*Id.* at 635, 637–39.)  Huntsman expressed his belief that

6  this was another attempt to reach Plaintiff's extremist supporters.  (*Id.* at 628–29.)

7  Huntsman noted that Plaintiff's similar public attacks against other County officials

8  had caused them to be targeted by Plaintiff's supporters, to the point where they

9  needed to retain security.  (*Id.*)

10        Pawlowski said that Plaintiff would comment about Huntsman "nonstop" and

11  that she believed Plaintiff was attempting to paint Huntsman as "some kind of

12  Nazi."  (*Id.* at 476.)  Diaz also collected evidence, including recordings of Plaintiff's

13  statements, social media posts, and press articles.  (SUF 34.)

14        Neither the Board nor Sheriff Luna was involved in any way in Diaz's

15  investigation.  (*Id.* 56–57.)  And it had nothing to do with Plaintiff's protected

16  speech.  (*Id.* 58.)  Again, none of this is in dispute.

17        **C.    Plaintiff Refuses To Be Interviewed By Sanders Roberts**

18        Diaz attempted to interview Plaintiff but was not able to.  (SUF 35–36.)  Diaz

19  tried to interview Plaintiff while he was still in office but he didn't return her

20  messages.  (Diaz Decl. ¶ 31–34)  Diaz tried to interview Plaintiff in 2023 after he

21  lost reelection, but Plaintiff insisted that she send him the questions in advance.  (*Id.*

22  ¶ 35 & COE Ex. 24.)  Plaintiff said, if he was going to be interviewed, it was going

23  to be "on my terms."  (COE Ex. 24.)  Diaz explained that sending him the questions

24  would go against standard practice, but she did give him a summary of the alleged

25  POE violations.  (*Id.*)  Plaintiff still refused.  (*Id.*)  Hence, Plaintiff stonewalled and

26  thereby delayed the investigation.

27        **D.    The IAB Case Files**

28        Sanders Roberts completed its investigations in June 2023 and provided them

716692                                                7

to the Department.  (SUF 37.) The Department finalized its case files in October 2023.  (*Id.* 38.)  Neither the Board nor Sheriff Luna was involved.  (*Id.* 52–53, 56–57.)  It had nothing to do with Plaintiff's protected speech.  (*Id.* 54, 58.)  The Department did not reopen the Lim or Huntsman investigations in September 2023—they were never "suspended" or "closed."  (*Id.* 40, 42–44.)

### E.      The CEOP Concludes The Charges Against Plaintiff Were "Founded" And Recommends File Notation

Due to the fact that Lim and Huntsman alleged POE violations by Plaintiff, the complaints were presented to the County Equity Oversight Panel ("CEOP") for review.  (SUF 39, 41, 45–50.)  The CEOP is comprised of employment law experts that review POE complaints and recommend discipline.  (*See, e.g.,* Cruz Decl. ¶ 2.)  The purpose of the CEOP is to ensure that an independent, impartial body makes recommendations based on the facts, without any outside influence or interference.  (*See id.*)

The Lim and Huntsman complaints were assigned to a CEOP panel consisting of Roberta Yang, Mercedes Cruz, and Constance Komoroski (the "Panel").  (*See, e.g.,* Cruz Decl. ¶ 3.)  The Panel met on October 17, 2023 and recommended that all but one of the alleged POE violations by Plaintiff be deemed "founded."  (SUF 46, 48.)  The Panel also recommended that a "Do Not Rehire" notation be placed on Plaintiff's County personnel file.  (*Id.* 47, 49.)  The notation is one of the tools that County departments have at their disposal where the "subject" is no longer at the County and therefore cannot be disciplined.  (Cruz Decl. ¶¶ 5–6.)

It does not *per se* prevent an individual from being rehired by the County.  (SUF 50.)  It is used as a notation or "flag" in the file that alerts the department to review the personnel file before making any hiring decision.  (Cruz Decl. ¶¶ 5–6.)  It is, in effect, an alert if the person applies for County employment (which did not ever happen here).

The Department concurred in the Panel's recommendations.  (SUF 51.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

1  Plaintiff was not the first member of the Department to receive the notation—it was

2  not created for him.  (COE Ex. 4 at 136:10–20)

3      Neither the Board nor Sheriff Luna had any involvement in the CEOP's

4  recommendations or the Department's concurrence.  (SUF 52–53, 56–57.)  The

5  outcome did not have anything to with Plaintiff's protected speech.  (*Id.* 54, 58.)

6  Nor did it have anything to do with Plaintiff running for the Board.  (*Id.* 55, 59.)

7  Again, this is all undisputed.

8      **F.    The Los Angeles Times**

9      In November 2023, the Times served a Public Records Act request for the

10  investigation files.  (COE Ex. 63.)  The Department provided redacted files as it was

11  required to do by law.  (COE Ex. 64.)  On January 31, 2024, the Times published a

12  story about the Huntsman complaint and outcome.  (Decl. of Jason Tokoro ¶ 104.)

13      **G.    Plaintiff Continues To Harass Lim And Huntsman**

14      Plaintiff's attacks against Huntsman, Lim, the Board, the Department, and

15  Sheriff Luna have not ceased.  (*See* SUF 10, 26–27, 60–61.)  He has not been

16  dissuaded.  His speech has not been chilled.

17      For example, on May 17, 2023, Plaintiff accused Huntsman of "ethnic

18  cleansing," and that "[h]is family has a long history about persecution, and he

19  knows what I'm talking about."  (COE Ex. 67 at 45:00.)  On September 25, 2024—

20  three months *after* filing this lawsuit—Plaintiff called Lim a "disgruntled former

21  employee" and questioned her qualifications to work for the County.  (*Id.* Ex. 68 at

22  17:00.)  On December 4, 2024, Plaintiff falsely claimed Lim had been "kicked out"

23  by Supervisor Solis and that it was "good" she was fired.  (*Id.* Ex. 69 at 13:00.)

24      **H.    Procedural Background**

25      Plaintiff filed his Tort Claim on May 15, 2024.  (Dkt No. 46, Exs 7–8.)  There

26  was nothing in it about ballot measures, vaccine mandates, or Fulgent.  (*See id.*)

27      Plaintiff filed his Complaint on June 13, 2024.  (Dkt No. 1.)  There was

28  nothing in it about ballot measures, vaccine mandates, or Fulgent.  (*See id.*)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

Plaintiff filed his First Amended Complaint ("FAC") on September 30, 2024 and, for the first time, alleged that the "protected speech" he engaged in was his opposition to Ballot Measures A, J, and R, the County's Covid vaccine mandate, and the County's Fulgent contract. (Dkt No. 46.)  The FAC further alleges a sweeping conspiracy headed by the Board to retaliate against Plaintiff for his views on these issues. (*Id.*)

Plaintiff deposed every person involved in the POE complaints. (Tokoro Decl. ¶ 5.)  He also served documents requests, interrogatories, and requests for admission. (*Id.* ¶ 9.)  Defendants responded and produced thousands of pages of documents. (*Id.* ¶10.)  Fact discovery is closed.

No evidence supports Plaintiff's claims.  Every witness testified that Plaintiff's protected speech had nothing to do with the outcome of the complaints.  Nor did Plaintiff's running for the Board.  Put simply, there is no genuine dispute of material fact here—undisputed evidence shows none of the Defendants' actions were retaliation for Plaintiff's speech.  And nothing Plaintiff claims to have endured is materially adverse under settled law.

## III.    SUMMARY JUDGMENT STANDARD

A court grants summary judgment where the moving party shows there is no dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The material facts here are not in dispute.

## IV.    PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS

### A.    Plaintiff Has The Burden To Establish His Claim

Plaintiff alleges that he "engaged in protected First Amendment activities as an ***elected official***." (FAC at 2:1 (emphasis added).)  To establish a First Amendment claim, Plaintiff must show (1) he engaged in protected activity; (2) as a result, he was subject to adverse action by the defendant that would chill or silence an ordinary person from continuing to engage in the protected activity; and (3) there

Miller Barondess, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

716692

10

was a substantial causal relationship between the protected activity and the adverse action. *Blair*, 608 F.3d at 543. It is Plaintiff's burden to make a *prima facie* showing of these elements. *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022) (quoting Blair and noting "the elected official bringing such a legal action has the initial burden of pleading and proving" all three elements).

If that *prima facie* showing is made, the burden shifts to Defendants to show that they would have taken the same adverse action even in the absence of animus or retaliatory motive. *Boquist*, 32 F.4th at 778. "If there is a finding that retaliation was not the but-for cause of the [adverse action], the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." *Id.*

Plaintiff cannot meet his burden. He cannot show an adverse action. His speech was not chilled. Nor can he show that there was a substantial causal relationship between his speech and the file notation. Even if he could, the undisputed evidence shows the County would have taken the same actions even in the absence of retaliatory motive.

**B.   There Is No Adverse Action As A Matter Of Law**

The standard for what constitutes an "adverse action" is heightened in cases involving elected officials. "[I]t is more difficult for elected officials to establish that they were subjected to an adverse action that offends the First Amendment because 'more is fair in electoral politics than in other contexts' . . . and the First Amendment therefore 'doesn't shield public figures from the give-and-take of the political process.'" *Boquist*, 32 F.4th at 776 (citations omitted). Courts dismiss, or grant summary judgment on, First Amendment claims that do not meet this standard. *E.g.*, *Blair*, 608 F.3d at 542 (affirming summary judgment); *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*, 235 F.3d 1243, 1245 (10th Cir. 2000) (same); *Mattox v. City of Forest Park*, 183 F.3d 515, 523 (6th Cir. 1999) (reversing order denying summary judgment); *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 479

Miller Barondess, LLP
Attorneys at Law
2121 Avenue of the Stars, Suite 2600  Los Angeles, California 90067
Tel: (310) 552-4400    Fax: (310) 552-8400

1   (2022) (affirming dismissal).[2]

2   **1.    The "Do Not Rehire" Notation is Not an Adverse Action**

3   "[M]inor indignit[ies]" and "de minimis deprivations  of benefits and

4   privileges" are insufficient to establish an adverse action when it comes to elected

5   officials.  *Blair*, 608 F.3d at 544.  The plaintiff must show that the adverse action

6   prevents them from doing their job or exercising the authority enjoyed by virtue of

7   his or her popular election.  *Wilson*, 595 U.S. at 479.  Actions that are part of the

8   governmental process, including public reprimands, are not enough.  *See id.*; *Blair*,

9   608 F.3d at 544.

10   In *Wilson*, the plaintiff, an elected board member of a public entity, waged a

11   public campaign against fellow board members.  595 U.S. at 471–72.  In interviews,

12   he claimed the board was unethical; he hired a private investigator to follow a board

13   member; and he arranged robocalls to constituents publicizing his views.  *Id.*

14   Plaintiff was twice publicly reprimanded by the board for "inappropriate" and

15   "reprehensible" conduct, but he vowed to, and did, continue his conduct.  *Id.*  He

16   sued the board, alleging, among other things, that its censure was unlawful

17   retaliation in violation of his First Amendment rights.  *Id.*

18   The Supreme Court held that the board's public censure was not a material

19   adverse action and was legally insufficient to support the First Amended retaliation

20   claim.  *Wilson*, 595 U.S. at 479.  The censure was not actionable because it did not

21   prevent the plaintiff from doing his job as a board member, deny him any privilege

22   of office, or abridge his right to speech.  *Id.* at 478–79.  The Court instructed that the

23   First Amendment may not be used as a weapon to "silence" the board's legitimate

24   act "concern[ing] the conduct of public office."  *Id.*

25

26   [2] *See also Hensley v. City of Port Hueneme*, No. 2:17-cv-08422-AB(Ex), 2019 WL

27   3035057, at *3–4 (C.D. Cal. May 7, 2019) (granting city summary judgment);
     *Westfall v. City of Crescent City*, No. CV 10-5222 NJV, 2011 WL 4024663, at *3–4

28   (N.D. Cal. Sept. 9, 2011) (granting city's motion to dismiss).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Phelan*, 235 F.3d 1243 and *Zilich v. Longo*, 34 F.3d 359, 361 (6th Cir. 1994), confirm that Plaintiff's First Amendment claim fails as a matter of law.  In *Phelan*, the plaintiff was a member of the county board of trustees.  She publicly opposed a funding measure that was put to the voters.  235 F.3d at 1245.  The board concluded the plaintiff's statements, which contained false information, violated the ethics policy, and it censured her.  *Id.* at 1245–46.  She filed a First Amendment retaliation case, alleging the board's censure tarnished her reputation and violated her constitutional rights.  *Id.* at 1246.

The Tenth Circuit affirmed summary judgment for the board, concluding the censure was not an adverse action because it did not infringe the plaintiff's free speech rights.  *Id.* at 1248.  It noted the board's statement that plaintiff violated the ethics policy did not prevent her from performing any official duties, speaking out, or voting; she "remained free to express her views publicly and to criticize the ethics policy and the [b]oard's censure."  *Id.*  The court also rejected the plaintiff's argument that the censure "tarnished her reputation," holding such conduct could not support a First Amendment claim by an elected official given the countervailing interests in robust debate on public issues.  *Id.*

In *Zilich*, the plaintiff was a former city council member who won political office despite the fact that he did not satisfy the city's residency requirement.  34 F.3d at 361.  During his tenure, the plaintiff "was a thorn in the side of the mayor and his administration" and "challenged the city's fiscal policies, its contract bidding procedures and the actions of the police and law departments, among other issues."  *Id.*  After his term ended, the city council passed a resolution and ordinance stating that plaintiff was never qualified to hold office to begin with due to the residency requirement, and instructed the city law director to claw back his salary.  *Id.* at 361–62.  Plaintiff sued, claiming First Amendment retaliation and alleging that "the resolution was part of the ongoing conspiracy to harass and intimidate him, and was meant to threaten him and ruin his political career."  *Id.*  The Sixth Circuit held

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

that, even if the city's actions were driven by "political spite or for partisan, political or ideological reasons," it was not an actionable adverse action. *Id.* at 363.

The Ninth Circuit has cited *Wilson*, *Phelan*, and *Zilich* with approval. *See Blair*, 608 F.3d at 546 (citing *Phelan* and *Zilich*); *Boquist*, 32 F.4th at 775–76 (citing all three). These cases require that summary judgment be entered for Defendants.

There is no genuine dispute of material fact that the Lim and Huntsman complaints did not prevent Plaintiff from doing his job or exercising his authority as Sheriff, nor did the complaints prevent Plaintiff from exercising his free speech at Board meetings or with the public. To the contrary, Plaintiff continued to speak out against Lim, Huntsman, and the Board after the complaints were filed. (*See* SUF 10, 26–27, 60–61.) There is also no genuine dispute of material fact that the file notation did not impact Plaintiff not being re-elected in November 2022, since it had not happened yet. (SUF 45–49.) Nor did it prevent him for running for the Board in 2024. (*Id.* 55, 59.)

The Department's conclusion that Plaintiff violated the POE and accordingly was given a file notation is less severe than the public censures in *Wilson*, *Phelan*, and *Zilich*. Indeed, those facts were not public during Plaintiff's term as Sheriff. (*See* SUF 45–49.) And they never would have become public had *Plaintiff* not told the Times about the Huntsman complaint in April 2022. (*See id.* 27.)

The Department's acts did not prevent Plaintiff from doing his job, or from exercising his rights and enjoying his privileges as an elected official. *See Wilson*, 595 U.S. at 481 (discipline falling short of exclusion from office is insufficient); *accord*, *Boquist*, 32 F.4th at 775–76. The Department was entitled to state that Plaintiff violated the POE. *See Wilson*, 595 U.S. at 479. Even assuming it was intended to "tarnish [his] reputation," as Plaintiff alleges (albeit without any evidentiary support), that is not enough to support a First Amendment retaliation claim by an elected official. *See Zilich*, 34 F.3d at 363; *Phelan*, 235 F.3d at 1248 ("In the First Amendment context, however, injury to one's reputation is not

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

1  enough."); *Blair*, 608 F.3d at 542 (the First Amendment "does not, however,

2  immunize [an official] from the political fallout of what he says").[3]

### 2.    Plaintiff's Speech Was Not "Chilled"

4      When looking at whether the alleged adverse action would chill an ordinary

5  person from continuing to engage in the protected activity, courts consider whether

6  the plaintiff's speech was in fact chilled. *See Wilson*, 595 U.S. at 471, 479 (plaintiff

7  responded to reprimand by saying it would "never … stop me" and "did not exactly

8  cower silently"); *Phelan*, 235 F.3d at 1248 (noting the plaintiff was not chilled).

9      There is no genuine dispute of material fact that the complaints did not chill

10  Plaintiff's speech. To the contrary, Plaintiff continued to speak out publicly against

11  Lim, Huntsman, and the Board after he learned about the complaints in March 2022.

12  Plaintiff sent letters to the Board about issues before it. (COE Exs. 54–59.) Plaintiff

13  also conducted weekly Facebook Live sessions. (*Id.* Exs. 60–61, 65–66, 67–70.)

14  And Plaintiff spoke out via various media outlets. (Tokoro Decl. ¶¶ 91–99, 116–

15  26–31, COE Ex. 62.) In fact, some of Plaintiff's protected activity, such as Ballot

16  Measure A, post-date the complaints. (COE Ex. 5 at 132:14–133:25.)

17      There is also no genuine dispute of material fact that the file notation has not

18  "chilled" Plaintiff's speech. Plaintiff has continued to do weekly Facebook Live

19  sessions and speak out against Lim, Huntsman, and the Board. (Tokoro Decl.

20  ¶¶ 108–15, 132–37.) Plaintiff has also continued to speak out via various media

21  outlets. (*Id.* ¶¶ 116–26.)

### C.    There Is No Substantial Causal Relationship

23      Plaintiff cannot meet his burden to show a causal relationship between his

24  alleged protected activity and any action taken by any of the Defendants. There is

25  no genuine dispute of material fact that Plaintiff's speech played no part in the Lim

---

3 Plaintiff claims the file notation was intended to hurt his chances of being elected to the Board in 2024, but that election was decided by the voters, not Defendants.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    or Huntsman complaints, investigations, or outcome.  (*See* SUF 54, 58.)

2        There is no evidence that Plaintiff's opposition to ballot measures, vaccine

3    mandates, or Fulgent played any role.  (*See id.*)  The undisputed evidence is to the

4    contrary.  Lim and Huntsman testified that Plaintiff's political positions were not the

5    reason for their complaints.  (COE Ex. 11 at 251:25–253:25; Ex. 9 at 187:10–24.)

6    And it played no role in Diaz's independent investigation.  (Diaz Decl. ¶¶ 53–58.)

7    The Panel confirmed that Plaintiff's opposition to Board actions were not discussed

8    or considered in making its recommendations.  (COE Ex. 4 at 141:22–146:1, Ex. 10

9    at 128:21–130:20, Ex. 14 at 141:6–144:1.)  The same goes for the Department.  (*Id.*

10   Ex. 16 at 62:8–65:16., Ex. 12 at 139:23–142:11, Ex. 75 at 131:15–134:1, Devane

11   Decl. ¶¶ 37–42, Kopperud Decl. ¶¶ 32–37.)

12       Plaintiff has nothing more than conspiracy theories and baseless speculation.

13   That is not enough to avoid summary judgment.  The fact that the allegedly adverse

14   action post-dated the protected activity is also not enough to show retaliation—more

15   is required.  *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) ("To

16   conclude that Greene was aware of Huskey's statements to Gallo and that Greene

17   retaliated against Huskey because of them would be to engage in the logical fallacy

18   of *post hoc, ergo propter hoc,* literally, 'after this, therefore because of this.'");

19   *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1140 (N.D. Cal. 2015) ("However, without

20   more, suspect timing is insufficient to lead to a reasonable inference of retaliatory

21   motive."); *see also Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 753

22   (9th Cir. 2010) (when a plaintiff relies on circumstantial evidence, "that evidence

23   must be specific and substantial to defeat" summary judgment).

24       Plaintiff tries to satisfy causal connection by alleging that the Lim and

25   Huntsman investigations were "put in a suspense file without further action" after

26   "IAB had determined that no policy violation occurred," but that on "September 20,

27   2023—a week after Villanueva announced his candidacy for the [Board]—the

28   Sheriff's Department reopened the investigation."  (FAC ¶¶ 17, 18.b.)  None of this

716692

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

is true and no evidence supports Plaintiff's claims.

*First*, IAB never determines policy violations.  IAB's role is to investigate the allegations and ascertain the facts.  (COE Ex. 8 at 22:7–21; Kopperud Decl. ¶¶ 7–8, Devane Decl. ¶¶ 6–7.)  Here, there is no genuine dispute of material fact that IAB did not make any determinations regarding the Lim or Huntsman complaints.  (SUF 38, 40.)  *Second*, POE complaints are not decided by IAB—they are submitted to the CEOP.  (Kopperud Decl. ¶¶ 7–8, Devane Decl. ¶¶ 6–7.)  *Third*, there is no such thing as a "suspense file" with the Department.  (SUF 40, 42.)   *Fourth*, as set forth above, the undisputed evidence shows that the Lim and Huntsman complaints were filed in March 2022, investigated by Sanders Roberts, and reviewed by the Panel in October 2023.  (*Id.* 1, 18, 13, 30, 45.)  They were never "suspended."

### D.    No "But-For" Causation

Summary judgment is also proper because any alleged retaliatory animus by Defendants was not the but-for cause for the file notation.  *Boquist*, 32 F.4th at 778.

Plaintiff was alleged to have violated the POE by harassing Lim and Huntsman based on protected characteristics, including gender, race, and ethnicity. (SUF 1, 18.)  Plaintiff's statements were made during Facebook Live sessions, Board meetings, press conferences, and media interviews.  (COE Exs. 25, 38.) These statements were recorded and are undisputed.  (*Id.*)  Plaintiff also harassed Lim and Huntsman through social media and communications with the Board and the Department.  (*Id.*)  The Panel reviewed the investigation files and determined that Plaintiff violated several provisions of the POE.  (SUF 46, 48.)

There is simply no dispute of material fact that the outcome would have been the same no matter what.  The Panel would have recommended the "founded" charges and file notation on the record before it regardless of retaliatory animus, because the independent investigation compelled those outcomes.  Plaintiff's contrary theory rests solely on "unsupported conjecture" that is insufficient to create an issue of fact.  *See, e.g.*, *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)

M iller  B aroness, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  (conclusory statements and "unsupported conjecture [are] not competent evidence"

2  to rebut a defendant's showing that a decision was based on legitimate factors).

3  **V.    PLAINTIFF CANNOT ESTABLISH SECTION 1983 LIABILITY**

4        Plaintiff brings his First Amendment claim pursuant to 42 U.S.C. § 1983.

5  (FAC ¶¶ 20–30.)  Summary judgment should be granted for the governmental entity

6  defendants (County, Department, Board, CEOP, and Office of the Inspector

7  General) because Plaintiff cannot satisfy the well-established *Monell* standard that

8  applies to § 1983 claims.

9        "A government entity may not be held liable under 42 U.S.C. § 1983, unless a

10  policy, practice, or custom of the entity can be shown to be a moving force behind a

11  violation of constitutional rights." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th

12  722, 734 (9th Cir. 2025); *Monell v. Dep't of Soc. Servs. of City of New York*, 436

13  U.S. 658, 691 (1978) ("a municipality cannot be held liable *solely* because it

14  employs a tortfeasor—or, in other words, a municipality cannot be held liable under

15  § 1983 on a *respondeat superior* theory").

16        The Ninth Circuit has recognized three ways to satisfy *Monell*: (1) the

17  government entity acted "pursuant to an expressly adopted official policy"; (2) the

18  government entity acted pursuant to a "longstanding practice or custom"; or (3) the

19  individual who committed the constitutional tort was an "official with final policy-

20  making authority." *Hartzell*, 130 F.4th at 734.  "Proof of random acts or isolated

21  events is insufficient to establish custom." *Navarro v. Block*, 72 F.3d 712, 714 (9th

22  Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1996).  Liability "may not be

23  predicated on isolated or sporadic incidents; it must be founded upon practices of

24  sufficient duration, frequency and consistency that the conduct has become a

25  traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th

26  Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).

27        Plaintiff cannot satisfy *Monell*:

28        *First*, Plaintiff does not allege his constitutional rights were violated by a

County policy, custom or practice.  To the contrary, Plaintiff alleges that the County deviated from standard procedures in an attempt to tarnish his reputation.  (*See* FAC 3:23–4:2, 4:12–14.)  Specifically, Plaintiff alleges that the "decision by the Board" to assign him the notation was "unprecedented."  (*See id.* at 3:23–24, 4:4, 6:22–23.)  This is the polar opposite of *Monell*.  In addition, there is no dispute of material fact that the Plaintiff is the only elected County official this has happened to.  This is the type of "isolated or sporadic incident" that the Ninth Circuit has recognized cannot establish a practice or custom.  *E.g.*, *Trevino*, 99 F.3d at 918.

    *Second*, there are no "official[s] with final policy-making authority" here. *Hartzell*, 130 F.4th at 734.  Plaintiff must identify specific proof regarding "a specific person or persons, their authority, their knowledge, and what they said and did on a specific occasion to ratify a specific decision." *Id.* at 735.  Plaintiff cannot. The Board was not involved.  (*See* SUF 52, 56.)  Sheriff Luna was not involved. (*See id.* 53, 57.)  The CEOP does not make policy.  (*Id.* 62.)  Nor does Chief Lecrivain.  (*Id.* 63.)

## VI.  PLAINTIFF LACKS ARTICLE III STANDING

    Article III standing is a jurisdictional requirement.  *E.g.*, *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  A plaintiff must show (i) an injury in fact that is concrete and particularized; (ii) that the injury was caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 578 (1992) (holding that respondents lacked standing).  The plaintiff bears the burden of establishing standing.  TransUnion LLC v. Ramirez, 594 U.S. 431, 423 (2021).

    The "concrete-harm requirement" is "essential to the Constitution's separation of powers."  *TransUnion*, 594 U.S. at 429.  To satisfy the requirement, a plaintiff must show an injury that is "real, and not abstract."  *Id.* at 424 (citation omitted).  A hypothetical injury that may or could occur does not suffice, because the "mere risk of future harm" is not a concrete harm.  *Id.* at 436; *Probodanu v.*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  *Sessions*, 387 F. Supp. 3d 1031, 1039 (C.D. Cal. 2019) ("Fear of some hypothetical,

2  future harm is insufficient to satisfy standing's injury-in-fact requirement.").

3      Plaintiff has not suffered any actual or imminent injury. The County did not

4  end Plaintiff's career as Sheriff—the voters did. He then ran for, and lost, a race for

5  a position on the Board. There is no evidence that Plaintiff's election losses had

6  anything to do with the "Do Not Rehire" notation.

7      It is also undisputed that Plaintiff has not sought employment with the County

8  at any time since the file notation. (COE Ex. 5 at 258:11–13.) While Plaintiff

9  alleged that applying for a job with the County would be futile because the "'Do Not

10 Hire' list precludes these opportunities" (FAC at 6:18–19), the undisputed evidence

11 is to the contrary. (SUF 50.) The notation does not "preclude" Plaintiff from being

12 re-hired by the County or the Department. (*Id*.)

13     The only job Plaintiff has applied for in the past year-and-a-half is for Chief

14 of Police with LA Metro. (COE Ex. 5 at 256:22–257:6.) It is undisputed that

15 Plaintiff's application was considered and he was interviewed as part of the process.

16 (*Id.* at 257:21–258:4.)

17 **VII.  THE COUNTY IS THE ONLY PROPER DEFENDANT**

18     The County is the only proper defendant. Plaintiff sued the County and 13

19 other defendants, which are either County subdivisions or employees or contractors

20 acting in their official capacity.

21     The FAC does not allege that any individual defendant was acting in their

22 personal capacity. On the contrary, it alleges that the misconduct complained of

23 was done as employees or contractors of the County. (*See* FAC ¶ 6.)

24     There are also no facts to show that individual defendants were not acting in

25 their official capacity. Official capacity claims can only be brought against a county

26 entity. *See, e.g.*, *Pierce v. San Mateo Cnty. Sheriff's Dep't*, 232 Cal. App. 4th 995,

27 1018 (2014); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The individual

28 defendants should be dismissed.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

The same is true for the County subdivision defendants.  This Court has recognized on numerous occasions that subdivisions should be dismissed where, as here, a party asserts claims that are identical to those asserted against the entity. *See, e.g.*, *Garcia v. County of Riverside*, No. EDCV 13–00616–JGB (SPX), 2013 WL 12167913, at *8 (C.D. Cal. Aug. 1, 2013).  Furthermore, "[a] subsidiary of a public entity is not a proper defendant on a § 1983 claim."  *Gordon v. County of Orange*, No. SACV 14-01050-CJC(DFMx), 2019 WL 4279036, at *8 (C.D. Cal. Aug. 5, 2019), *aff'd in part, rev'd in part and remanded*, 6 F.4th 961 (9th Cir. 2021); *see also Solesbee v. County of Inyo*, No. 1:13-CV-1548 AWI JLT, 2014 WL 3890680, at *2 (E.D. Cal. Aug. 7, 2014) ("When a subdivision of a county is sued, the suit is construed as being against the county; the subdivision is not a proper party defendant.").  The FAC alleges identical claims against the County and its various subdivisions.  (*See* FAC ¶¶ 20–49.)  Thus, the entity defendants are redundant and should be dismissed.

In addition, there is no genuine dispute of material fact that Sheriff Luna and the Board were not involved in the complaints.  (*See* SUF 52–53, 56–57.)  They should be dismissed.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion and enter judgment in their favor.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

716692

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  DATED:  April 21, 2025          Respectfully Submitted,

2                                  MILLER BARONDESS, LLP

3

4

5                                  By:  _____/s/ *Jason H. Tokoro*_____

6                                       JASON H. TOKORO
                                        Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,935 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: April 21, 2024

_____
JASON H. TOKORO

23

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400