LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
STEVEN G. WILLIAMSON (State Bar No. 343842)
swilliamson@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX VILLANUEVA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100, inclusive,<br><br>Defendants. | **CASE NO. 2:24-cv-04979 SVW (JCx)**<br><br>**OMNIBUS DECLARATION OF JASON H. TOKORO IN SUPPORT OF DEFENDANTS' MOTIONS IN *LIMINE* NOS. 1-5**<br><br>[*Filed Concurrently with Notices of Motion in Limine Nos., 1-5; Memorandum of Point and Authorities Nos. 1-5; and [Proposed] Orders*]<br><br>Date:     May 26, 2025<br>Time:     1:30 p.m.<br>Crtrm.:   10A<br><br>Assigned to the Hon. Stephen V. Wilson, Crtrm. 10A and Magistrate Judge Jacqueline Chooljian, Crtrm. 750<br><br>Trial Date:     June 3, 2025 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX (310) 552-8400

## <u>DECLARATION OF JASON H. TOKORO</u>

I, Jason H. Tokoro, declare as follows:

1.    I am an attorney duly admitted to practice before this Court.  I am a partner with Miller Barondess, LLP, counsel of record for Defendants.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify to all of said facts.  I make this omnibus declaration in support of Defendants' Motions *in Limine* Nos. 1–5.

**<u>The Parties' Meet and Confer Efforts</u>**

2.    On April 17, 2025, the parties exchanged meet and confer correspondence regarding their intended motions *in limine*.  A true and correct copy of the parties' exchange is attached hereto as **Exhibit 1**.

3.    On April 18, 2025, my colleague, Brian Neach, and I met and conferred with Plaintiff's counsel, Alex DiBona.  We were unable to reach agreement as to certain of the parties' respective motions *in limine*.

4.    On April 24, 2025, my colleague, Steven Williamson, sent Mr. DiBona an email in an effort to meet and confer about two additional motions *in limine*, which were raised due to testimony given by Plaintiff's wife, Vivian Villanueva, during her April 23, 2025 deposition.  A true and correct copy of Mr. Williamson's email is attached hereto as **Exhibit 2**.

5.    To date, Mr. DiBona did not respond to Mr. Williamson's email.

**<u>MIL No. 1—Motion to Exclude Plaintiff's Cumulative Experts</u>**

6.    On March 21, 2025, Plaintiff served his Rule 26 Expert Disclosure.  In it, he identified one expert on the issue of economic damages and three doctors on the issue of emotional distress.  Plaintiff used identical language to describe the testimony and expert opinions of Drs. Jessica Rowe, Rebecca Udell, and Nigel Kennedy.  A true and correct copy of the disclosure (without exhibits) is attached hereto as **Exhibit 3**.

7.    Plaintiff included with his disclosure reports prepared by Drs. Rowe,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

1  Udell, and Kennedy.  The reports are all based on the same evidence, including
2  interviews with Plaintiff, his wife, and his son.  The reports also all come to the
3  same opinion—that Plaintiff suffers from an amorphous condition know as
4  "adjustment disorder with mixed anxiety and depressed mood.  True and correct
5  copies of these expert reports are attached hereto as **Exhibits 4–6.**

6      8.    During their depositions, Plaintiff's experts acknowledged that each of
7  them and the other experts were qualified to and did give the same opinions in this
8  case.  A true and correct copy of relevant excerpts from the April 15, 2025
9  deposition of Nigel Kennedy is attached hereto as **Exhibit 7**.  A true and correct
10  copy of relevant excerpts from the April 17, 2025 deposition of Rebecca Udell is
11  attached hereto as **Exhibit 8**.

12  **MIL No. 2—Motion to Exclude Plaintiff's Expert Sandra White**

13      9.    Plaintiff included with his March 21, 2025 Rule 26 Expert Disclosure a
14  report prepared by his economic damages expert Sandra White.  A true and correct
15  copy of the March 20, 2025 Sandra White expert report is attached hereto as
16  **Exhibit 9.**

17      10.    Ms. White provided a "lost earnings" analysis based on two scenarios:
18  (1) Plaintiff's lost earnings as a police chief of an unspecified city from May 5, 2024
19  through retirement ages of 67, 72, or 75; or (2) Plaintiff's lost earnings as "MTA
20  Chief of Police" from May 5, 2024 through retirement ages of 67, 72, or 75.  (*Id.* at
21  WHITE 000004-05.)  For the "police chief" scenario, Ms. White calculated a range
22  of damages from $1.95 to $4.44 million.  (*Id.* at WHITE 00004.)  For the "MTA"
23  scenario, she calculated a range from $2.18 to $5.02 million.  (*Id.* at WHITE 00005.)

24      11.    Ms. White was deposed on April 16, 2025.  A true and correct copy of
25  relevant excerpts from her deposition is attached hereto as **Exhibit 10**.

26      12.    A true and correct copy of Sandra White's Phone Notes, authenticated
27  as Exhibit 4 to the April 16, 2025 deposition of Sandra White, is attached hereto as
28  **Exhibit 11**.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400   FAX (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**MIL No. 3—Motion to Exclude Hearsay Statements**

**Plaintiff's Accusation That Huntsman Is A "Holocaust Denier"**

13. In March 2022, two personnel complaints were filed against Plaintiff alleging he violated the Policy of Equality prohibiting harassment and discrimination. One of the complaints was filed by Inspector General Max Huntsman.

14. Plaintiff was admonished on March 23, 2022 in connection with the allegations made by Mr. Huntsman.

15. A week later, on April 1, 2022, Plaintiff told the Los Angeles Times Editorial Board that Mr. Huntsman had filed a complaint against him and accused Mr. Huntsman of being a "Holocaust denier." Plaintiff said he had this information from "two separate sources" but refused to tell the Times who those sources were.

16. Plaintiff was asked about his claim in discovery and responded: "Sometime prior to April 2022 Plaintiff had a conversation with Mark Lilienfeld. John Satterfield and Tim Murakami were present." A true and correct copy of Plaintiff's Objections and Second Supplemental Responses to Defendants' First Set of Special Interrogatories is attached hereto as **Exhibit 12**.

17. Plaintiff was asked about this at deposition and testified that he had a conversation with Mr. Lillienfeld in 2022 during which Mr. Lillienfeld told him that he had interviewed Mr. Huntsman's former "housekeeper" and that said Mr. Huntsman denied the Holocaust. A true and correct copy of relevant excerpts from the February 28, 2025 deposition of Plaintiff is attached hereto as **Exhibit 13**.

18. None of the other people Plaintiff identified as being a part of this "conversation" remembers it the same way:

19. Mr. Satterfield testified at deposition that he "had heard the rumor" but that he could not say "definitively" whether it was true or not. Mr. Satterfield went on to say he recalled a meeting in the "sheriff's library," but could *not* "remember exactly what was said" and that "[i]t wasn't the main focus of the meeting. *It was*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*kind of a millisecond of a statement*, and then we moved on in the meeting."  A true and correct copy of relevant excerpts from the April 1, 2025 deposition of Mr. Satterfield is attached hereto as **Exhibit 14**.

20.    Mr. Murakami testified at deposition that he recalled "initial reporting" from Mr. Lillienfeld but that he "couldn't tell you" who was part of that discussion, he *never* discussed it with Mr. Satterfield, and Mr. Lillienfeld *never* told him where he got the information about Mr. Huntsman.  In fact, when asked whether anyone ever told him the information came from Mr. Huntsman's "housekeeper," Mr. Murakami responded, "*No, sir*."  A true and correct copy of relevant excerpts from the April 7, 2025 deposition of Mr. Murakami is attached hereto as **Exhibit 15**.

21.    Mr. Lillienfeld testified at deposition that he "*truly [could] not recall*" having a conversation with Plaintiff, Mr. Satterfield, and Mr. Murakami as a group about Mr. Huntsman being a Holocaust denier.  Mr. Lillienfeld went further and said that he "would very much intentionally … keep [Plaintiff] out of the loop.  And the gist of our conversations … were quite frankly about dogs and baseball and, you know, happenings in, you know, the news and stuff like that."  He also stated that he "*never spoke to [Plaintiff] about the criminal investigations on purpose*…."  Mr. Lillienfeld also testified that he "*just didn't deal with those people* [Plaintiff, Satterfield, and Murakami] of that rank that often," because he was "the lowest rank on the department."  A true and correct copy of relevant excerpts from the April 14, 2025 deposition of Mr. Lillienfeld is attached hereto as **Exhibit 16**.

**The Investigations Were Not Reopened**

22.    Plaintiff alleges that at some point after January 31, 2024, he was told by retired deputy Ed Alvarez that "two complainants had been interviewed in July of 2022, *that the IAB had determined that no policy violation occurred*, and that the complaints were put in a suspense file without further action."  (FAC ¶ 17.) Based on this purported conversation, Plaintiff alleges that the investigations were closed or suspended in July 2022 but "reopened" a week after he announced he was

1   running for the Board in September 2023.  (*Id.* ¶ 18.b.)

2       23.    Plaintiff testified at deposition that he spoke to Mr. Alvarez after the

3   Los Angeles Times article was published on January 31, 2024 about the "Do Not

4   Rehire" notation.  He claimed that during that conversation, Mr. Alvarez told him

5   that the investigations "concluded" in summer 2022 with no findings of misconduct

6   and were placed in a "suspense file."  (Ex 13 at 241:10-242:7.)

7       24.    Plaintiff also claimed ***for the first time*** that he had a conversation with

8   Mr. Satterfield in 2022 during which Satterfield told him the investigations

9   concluded with a finding of "no misconduct."  (Ex. 13 at 242:8-15).)

10      25.    Mr. Satterfield was asked at deposition about what he purportedly told

11  Plaintiff in 2022 about the investigations and he testified that Mr. Alvarez "told me,

12  or he may have told me in the presence of [Plaintiff]" that the investigations had

13  "concluded with no finding of misconduct."  Mr. Satterfield, however, could not

14  recall the details of this "in-person" meeting.  (Ex. 14 at 108:17-112:2).)

15      26.    At his second deposition, Plaintiff testified that the information relayed

16  to him by Mr. Satterfield or Mr. Alvarez may have come from Commander Jason

17  Wolak.  A true and correct copy of relevant excerpts from the April 22, 2025

18  deposition of Plaintiff is attached hereto as **Exhibit 17**.

19  **MIL No. 4—Motion to Exclude Testimony of Vivian Villanueva**

20      27.    Plaintiff served his initial Rule 26 Disclosures on January 29, 2025.

21  Despite claiming that he suffered emotional distress damages "believed to be at least

22  $25,000,000," Plaintiff did not identify any witnesses with knowledge of his alleged

23  emotional distress.  A true and correct copy of Plaintiff's Rule 26 Initial Disclosures

24  is attached hereto as **Exhibit 18**.

25      28.    Plaintiff supplemented his Rule 26 Disclosures on February 12, 2025.

26  In it, he identified his wife, Vivian Villanueva, as someone with knowledge of his

27  emotional distress damages.  A true and correct copy of Plaintiff's Supplemental

28  Rule 26 Disclosures is attached hereto as **Exhibit 19**.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

29.     Plaintiff agreed to accept service on Mrs. Villanueva's behalf and provided dates on which she was available for deposition.  The parties agreed Mrs. Villanueva would be deposed on March 20, 2025.  A true and correct copy of the deposition subpoena for Mrs. Villanueva is attached hereto as **Exhibit 20**.

30.     On March 12, 2025, Mr. DiBona emailed our office and stated that Mrs. Villanueva was no longer available on March 20, 2025.  No reason was given.  A true and correct copy of Mr. DiBona's email is attached hereto as **Exhibit 21**.

31.     The parties then agreed that Mrs. Villanueva would be deposed on March 27, 2025.  A true and correct copy of the amended deposition subpoena for Mrs. Villanueva is attached hereto as **Exhibit 22**.

32.     On March 27, 2025, just hours before the deposition, Mr. DiBona notified us that Mrs. Villanueva would not be showing up.  A true and correct copy of Mr. DiBona's email is attached hereto as **Exhibit 23**.

33.     The parties again agreed to reschedule and selected April 23, 2025.  A true and correct copy of the second amended deposition subpoena for Mrs. Villanueva is attached hereto as **Exhibit 24**.

34.     Mrs. Villanueva never objected or responded to any of the deposition subpoenas served on her by Defendants.  This includes never objecting or responding to the documents requests included with the subpoenas, or producing any documents.

35.     On April 17, 2025, the day before the close of fact discovery, Plaintiff produced certain text messages between himself and Mrs. Villanueva.  A true and correct copy of these text messages is attached hereto as **Exhibit 25**.

36.     Plaintiff also served a privilege log listing hundreds of text messages between himself and Mrs. Villanueva that he withheld on grounds of the "spousal privilege."  A true and correct copy of the log is attached hereto as **Exhibit 26**.

37.     Mrs. Villanueva was deposed on April 23, 2025 but refused to answer questions regarding Plaintiff's alleged emotional distress on grounds of the "Spousal

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  privilege."  A true and correct copy of relevant excerpts from the April 23, 2025

2  deposition of Mrs. Villanueva is attached hereto as **Exhibit 27**.

3  **MIL No. 5—Motion to Exclude Evidence Related to POST**

4      38.    Plaintiff and other witnesses have made passing references to letters

5  that Plaintiff received from California Commission on Peace Officer Standards and

6  Training ("POST").

7      39.    POST is an independent California government entity that is not

8  controlled by, or affiliated with, any of the Defendants in this case.

9      40.    POST is not a named defendant in this case.

10     41.    No discovery has been conducted in this case regarding the letters

11  Plaintiff received from POST.

12     42.    POST was never subpoenaed in this case to produce documents.

13     43.    No one from POST has been deposed.

14     44.    Plaintiff's economic damages expert, Ms. White, did not rely on the

15  POST letters in forming her opinion.  (*See* Ex. 9.)

16     45.    Plaintiff was asked in discovery to identify the bases for his damages

17  claims in connection with his First Amendment claim.  Plaintiff did not identify the

18  POST letters.  Instead, Plaintiff identified the "Do Not Rehire" notation as the sole

19  basis for his damages.  (*See* Ex. 12, Response to SROG Nos. 7–8.)

20     I declare under penalty of perjury under the laws of the United States of

21  America that the foregoing is true and correct.

22     Executed on this 28th day of April, 2025, at Los Angeles, California.

23

24                                                  _____

25                                                  Jason H. Tokoro

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

## INDEX OF EXHIBITS TO THE DECLARATION OF JASON H. TOKORO

| Exhibit No. | Description | Pg. No. |
|---|---|---|
| 1. | April 17, 2025 email to Mr. DiBona attached letter from Jason H. Tokoro regarding Defendants' intended motions *in limine* | 11-15 |
| 2. | April 24, 2025 email from Steven Williamson to Alex DiBona | 16-18 |
| 3. | Plaintiff's March 21, 2025 Disclosure of Experts Pursuant to F.R.C.P. 26(a) (2), without exhibits | 19-23 |
| 4. | March 18, 2025 Jessica Rowe expert report | 24-45 |
| 5. | March 21, 2025 Rebecca Udell expert report | 46-55 |
| 6. | March 20, 2025 Nigel Kennedy expert report | 56-74 |
| 7. | Relevant excerpts from the April 15, 2025 deposition of Nigel Kennedy | 75-83 |
| 8. | Relevant excerpts from the April 17, 2025 deposition of Rebecca Udell | 84-94 |
| 9. | March 20, 2025 Sandra White expert report | 95-115 |
| 10. | Relevant excerpts from the April 16, 2025 deposition of Sandra White | 116-126 |
| 11. | Sandra White's Phone Notes, authenticated as Exhibit 4 to the April 16, 2025 deposition of Sandra White | 127-128 |
| 12. | February 28, 2025 Plaintiff's Objections and Second Supplemental Responses to Defendants' First Set of Special Interrogatories | 129-178 |
| 13. | Relevant excerpts from the February 28, 2025 deposition of Plaintiff | 179-195 |
| 14. | Relevant excerpts from the April 1, 2025 deposition of Mr. Satterfield | 196-211 |
| 15. | Relevant excerpts from the April 7, 2025 deposition of Mr. Murakami | 212-219 |
| 16. | Relevant excerpts from the April 14, 2025 deposition of Mr. Lillienfeld | 220-231 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

| Exhibit No. | Description | Pg. No. |
|---|---|---|
| 17. | Relevant excerpts from the April 22, 2025 deposition of Plaintiff | 232-247 |
| 18. | January 29, 2025 Plaintiff's Rule 26 Initial Disclosures | 248-254 |
| 19. | February 12, 2025 Plaintiff's Supplemental Rule 26 Disclosures | 255-261 |
| 20. | Deposition subpoena for Mrs. Villanueva (March 20, 2025) | 262-270 |
| 21. | March 12, 2025 email from Alex DiBona | 271-272 |
| 22. | Amended deposition subpoena for Mrs. Villanueva (March 27, 2025) | 273-281 |
| 23. | March 27, 2025 email from Alex DiBona | 282-283 |
| 24. | Second amended deposition subpoena for Mrs. Villanueva (April 23, 2025) | 284-292 |
| 25. | Text messages between Plaintiff and Mrs. Villanueva | 293-299 |
| 26. | April 17, 2025 privilege log | 300-313 |
| 27. | Relevant excerpts from the April 23, 2025 deposition of Mrs. Villanueva | 314-331 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# EXHIBIT 1

EXHIBIT 01 - Page 11

# MILLER BARONDESS, LLP

ATTORNEYS AT LAW
2121 AVENUE OF THE STARS
26TH FLOOR
LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400
FAX: (310) 552-8400
WWW.MILLERBARONDESS.COM

April 17, 2025

JASON H. TOKORO
DIRECT DIAL: (310) 552-5226
JTOKORO@MILLERBARONDESS.COM

*VIA ELECTRONIC MAIL ONLY*

Alex DiBona
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, CA  90049
Email: ADiBona@shegerianlaw.com

  Re: *Alex Villanueva v. County of Los Angeles, et al.*
    USDC Case No. 2:24-cv-04979
    **Meet-and-Confer Re: Defendants' Motions in Limine**

Dear Mr. DiBona:

  The letter is sent as a precursor to our April 18, 2025 meet and confer about the County's forthcoming motions *in limine*.  As discussed below, the County intends to file three motions *in limine*.

## I.  <u>Motion *In Limine* to Exclude Multiple Experts On a Single Issue</u>

  Plaintiff designated three different experts—Dr. Rowe, Dr. Kennedy, and Dr. Udell—to all opine on the following identical issue:

> [T]he psychological impact of defendants' actions on plaintiff. [The expert] will testify as to whether Plaintiff has experienced emotional distress as a result of [Defendants'] actions, the cause of the emotional distress, the prognosis, and treatment.

  (Plaintiff's Disclosure of Experts Pursuant to F.R.C.P. 26(a)(2) at 2:20-24 (Dr. Rowe); *id.* at 3:7-10 (Dr. Udell); *id.* at 3:21-24 (Dr. Kennedy).)  Each of the three experts provides an opinion that Plaintiff is diagnosed with "Adjustment Disorder with mixed anxiety and depressed mood."  (UDELL 000001; KENNEDY 000010; ROWE 000011.)

  The depositions of the three experts further confirm that they all share the same opinions on the same issues.  In fact, each expert candidly admitted that their opinions overlapped with one another.

729868.1

**EXHIBIT 01 - Page 12**

# MILLER BARONDESS, LLP

Alex DiBona
April 17, 2025
Page 2

This is not proper.  Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The court has discretion to exclude such evidence, including by limiting expert testimony. *In re Hanford Nuclear Reservation Litigation*, 534 F.3d 986, 1016 (9th Cir. 2008); *Ruud v. United States*, 256 F.2d 460, 463 (9th Cir. 1958) (inherent power to limit the number of experts at trial has long been recognized).

As many courts have recognized, expert testimony from more than one expert should be precluded when there is substantial overlap. *Engman v. City of Ontario*, No. 10-CV-284 CAS PLAX, 2011 WL 2463178, at *8 (C.D. Cal. June 20, 2011) (excluding cumulative testimony from two experts that "overlap[ped] substantially"); *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-21511-CIV, 2010 WL 4225947, at *2 (S.D. Fla. Oct. 21, 2010) ("Expert testimony may be needlessly cumulative where there is 'substantial overlap' between the areas on which two experts will testify."); *Price v. Fox Entm't Grp., Inc.*, 499 F. Supp. 2d 382, 390 (S.D.N.Y. 2007) (precluding second expert to testify because of "substantial overlap" with the testimony of another expert).

The reasons for the limitation of duplicative expert testimony are apparent.  For one, it ensures that a litigant cannot "make its case through the sheer weight of successive expert testimony by even two experts as to their identical conclusions on identical issues, let alone . . . three experts." *United States v. Walker*, 910 F. Supp. 861, 863 (N.D.N.Y. 1995).  Second, not only is "[m]ultiple expert witnesses expressing the same opinions on a subject ... a waste of time and needlessly cumulative," but "[i]t also raises the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony." *Sunstar, Inc. v. Alberto-Culver Co.*, Nos. 01-C-0736 & 01-C-5825, 2004 WL 1899927, at *25 (N.D. Ill. Aug. 23, 2004).

If Plaintiff is unwilling to select a single expert to testify on the issue of emotional distress, Defendants will proceed with their motion *in limine*.

## II.    Motion *In Limine* to Exclude Plaintiff from Testifying About or Referencing Specific Hearsay Statements

As you know, Plaintiff testified at deposition and supported assertions he had made in discovery responses and elsewhere by referring to statements from third parties.  Specifically, the statements include:

- A purported conversation with Mark Lillienfeld in March 2022 during which he told Plaintiff that Max Huntsman was a "Holocaust" denier.  (*See* A. Villanueva Depo. at 267:6-269:12.)

EXHIBIT 01 - Page 13

# MILLER BARONDESS, LLP

Alex DiBona
April 17, 2025
Page 3

- A purported statement by John Satterfield in 2022 that the investigations into the claims against Plaintiff made by Max Huntsman and Esther Lim had concluded with a finding of "no misconduct."  (*See* A Villanueva Depo. at 242:8-15.)

- A purported statement by Ed Alvarez at some point after January 31, 2024 that the same investigations "concluded" in summer of 2022 with no findings os misconduct and were placed in a "suspense file."  (*See* A. Villanueva Depo. at 241:10-242:7; *see also* FAC ¶ 17.)

Each of the above statements is undoubtedly hearsay and generally barred from being disclosed to the jury.  Fed. R. Evid. 801(c), 802.  There is no applicable exception for admission of these statements, nor can the "residual" exception under Federal Rule of Evidence 807 be used, as none of Satterfield, Lillienfeld, or Alvarez could recall the statements referenced by Plaintiff.  (*See, e.g.*, Satterfield Depo. at 108:17-111:4.)

Based on the foregoing, Defendants will move *in limine* for an order excluding any testimony regarding, or referencing, the above-referenced hearsay statements.

## III.    <u>Motion *In Limine* to Exclude Testimony of Sandra White</u>

Ms. White provided a "lost earnings" analysis based on two scenarios:  (1) Plaintiff lost earnings as a police chief of an unspecified city from May 5, 2024 through retirement ages of 67, 72, or 75; or (2) Plaintiff lost earnings as "MTA Chief of Police" from May 5, 2024 through retirement ages of 67, 72, or 75.  (WHITE 000004-05.)  The calculations are riddled with "assumptions" that are so far removed from the facts that there is no basis for Ms. White to testify at trial.

It is well-settled that the Ninth Circuit has precluded as unreliable the testimony of experts whose analysis "rests on unsupported assumptions," particularly those later contradicted by discovery. *See, e.g., McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988); *see also Junk v. Terminix Int'l Co.*, 628 F.3d 439, 448 (8th Cir. 2010) (affirming district court's exclusion of expert where "[the expert]'s comparative analysis depended on unsupported assumptions"); *Neb. Plastics, Inc. v. Holland Colors Am., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) (affirming district court's exclusion of expert whose assumptions were disproven by discovery because "expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported"); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all.").

Ms. White's opinions and report must be excluded under the above-stated authorities.  As she testified, Ms. White never spoke with Plaintiff and never read his deposition testimony.  In fact, Ms. White did not read a single deposition in the transcript in the case.  Rather, Ms. White

**EXHIBIT 01 - Page 14**

MILLER BARONDESS, LLP

Alex DiBona
April 17, 2025
Page 4

relied on unsupported "assumptions" provided to her by Plaintiff's attorneys.  These unsupported assumptions included, but were not limited to, the following: (1) Ms. White "assumed" that the "Do Not Rehire" designation "precluded him from the ~117,000 county jobs and effectively prevented his hiring for any law enforcement position," (WHITE 000007); (2) Ms. White was instructed by Plaintiff's counsel that "Mr. Villanueva's career in law enforcement is over," (WHITE 000050); (3) Ms. White was instructed by Plaintiff's counsel on March 18, 2025, contrary to fact, that "Mr. Villanueva did not get the MTA job he applied for," (*id.*); and (4) that Plaintiff would have worked at the "police chief" or MTA position through age 67, 72, or 75.

These "assumptions" are entirely unsupported.  The deposition testimony in this case established that the "Do Not Rehire" designation is ***not*** any kind of blanket denial of a job with the County.  Likewise, there is no basis for assuming Plaintiff's career in law enforcement is "over," when he admitted the ***only*** job he has applied for since losing the board of supervisor election is the MTA job.  Further, as Plaintiff testified at deposition, he received an interview for the MTA job and a decision is still pending.  Finally, as she testified at deposition, Ms. White had done ***no*** analysis or research of the average retirement ages of police chiefs or MTA chiefs, so there is no basis for her to select a retirement age of ***any*** kind, much less 67, 72, or 75.

For the above reasons, Ms. White's testimony and analysis must be excluded. *McGlinchy*, 845 F.2d at 807.

\* \* \* \*

We look forward to discussing these issues, and reserve the right to make additional arguments in support of the above motions as necessary.

Sincerely,

Jason H. Tokoro

BN

EXHIBIT 01 - Page 15

# EXHIBIT 2

EXHIBIT 02 - Page 16

| | |
|---|---|
| **From:** | Steven Williamson |
| **Sent:** | Thursday, April 24, 2025 12:56 PM |
| **To:** | Alex DiBona |
| **Cc:** | Jason H. Tokoro; Brian Neach |
| **Subject:** | Villanueva v. COLA--Motions in Limine |

Alex,

Following Ms. Villanueva's deposition yesterday, we intend to file two additional motions *in limine*:

1. A motion to exclude Ms. Villanueva's testimony in whole or in part.  Ms. Villanueva was identified as a witness with knowledge Plaintiff's emotional distress.  But Plaintiff and Ms. Villanueva have selectively denied Defendants with information regarding those damages.  For example, Ms. Villanueva was subpoenaed and requested to provide documents; at her deposition she stated she had not even seen a copy of the subpoena that was accepted on her behalf by your firm per agreement.  And she produced no documents.  Apart from that, last week, Plaintiff produced a privilege log containing hundreds of communications between Plaintiff and Ms. Villanueva, all of which were withheld by Plaintiff pursuant to the spousal privilege, or other privileges.

    At her deposition, Ms. Villanueva refused to answer any questions regarding those messages on the grounds of spousal privilege.  She refused to answer questions about this lawsuit on similar grounds.  And at the end of the day, she invoked the privilege to refuse to answer questions regarding her conversations with Plaintiff about his claimed emotional distress, or how he feels about the Do Not Rehire notification.  This is improper.  The spousal privilege cannot be wielded as a sword and shield to prevent Defendants from obtaining the very information that Plaintiff's disclosures identified Ms. Villanueva as possessing.  We intend to move to exclude her testimony on that basis in its entirety.

    Separately, to the extent she is permitted to testify, we intend to exclude any testimony from Ms. Villanueva regarding the distress she claims to have experienced in connection with this case.  Ms. Villanueva is not a plaintiff.  Presenting any information regarding her claimed distress is irrelevant, confusing, misleading, and prejudicial.

2. Any testimony regarding letters Plaintiff has received from POST.  These letters are not the basis of Plaintiff's complaint and have nothing to do with the "Do Not Rehire" notification or similar issues.  Also, POST is not a defendant in this case, nor could it be.  Introduction of such evidence will only serve to mislead and confuse the jury.

We are available to meet and confer tomorrow.  Please let us know if you agree to stipulate to either of these motions.

Thanks,
Steve

**Steven Williamson**
M I L L E R  |  B A R O N D E S S LLP
2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5253
Fax: 310-552-8400
Mobile: 732-589-8187

EXHIBIT 02 - Page 17

swilliamson@millerbarondess.com
www.millerbarondess.com
Biography

Please consider the environment – do you really need to print this email?

2

EXHIBIT 02 - Page 18

# EXHIBIT 3

EXHIBIT 03 - Page 19

1  Carney R. Shegerian, Esq., State Bar No. 150461
   CShegerian@Shegerianlaw.com
2  Anthony Nguyen, Esq., State Bar No. 259154
   ANguyen@Shegerianlaw.com
3  Alex DiBona, Esq., State Bar No. 265744
   ADiBona@shegerianlaw.com
4  SHEGERIAN & ASSOCIATES, INC.
   11520 San Vicente Boulevard
5  Los Angeles, California 90049
   Telephone Number:      (310) 860 0770
6  Facsimile Number:      (310) 860 0771

7  Attorneys for Plaintiff,
   ALEX VILLANUEVA

8
                    **UNITED STATES DISTRICT COURT**
9
        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
10

11
   ALEX VILLANUEVA,                    Case No.:  2:24  cv 04979 SVW (JC)
12
            Plaintiff,                 **The Honorable Stephen V. Wilson**
13
   vs.                                 **PLAINTIFF ALEX VILLANUEVA'S**
14                                     **DISCLOSURE OF EXPERTS**
   COUNTY OF LOS ANGELES,              **PURSUANT TO F.R.C.P. 26(a) (2)**
15 COUNTY OF LOS ANGELES
   SHERIFF'S DEPARTMENT, LOS           Trial:   June 3, 2025
16 ANGELES COUNTY BOARD OF             Time:   9:00 a.m.
   SUPERVISORS, COUNTY EQUITY          Ctrm.:  10A
17 OVERSIGHT PANEL, LOS
   ANGELES COUNTY OFFICE OF
18 INSPECTOR GENERAL,                  Action Filed:  June 13, 2024
   CONSTANCE KOMOROSKI,
19 MERCEDES CRUZ, ROBERTA
   YANG, LAURA LECRIVAIN,
20 SERGIO V. ESCOBEDO, RON
   KOPPERUD, ROBERT G. LUNA,
21 MAX-GUSTAF HUNTSMAN,
   ESTHER LIM, and DOES 1 to 100,
22 inclusive,

23          Defendants.

24

25

26

27

28

**EXHIBIT 03 - Page 20**

TO ALL PARTIES AND THE HONORABLE COURT:

PLEASE TAKE NOTICE that plaintiff, Alex Villanueva, discloses his list of expert witnesses expected to be called during the trial of the above case, including the following, pursuant to F.R.C.P. 26(a) (2):

(1)   Sandra White, Formuzis, Hunt, & Lanning Inc., 1851 East First Street #1160, Santa Ana, California 92705, (714) 542-8853 (retained expert).  The full opinions of this expert will be included in her written report. This expert will testify under Federal Rules of Evidence 702, 703, and 705 about the financial impact of defendant's actions on plaintiff, including Plaintiff's lost earnings, with future losses reduced to present value. This opinion will be based on the review of records, including government sources, recruiting documents and appropriate data. This expert has agreed to testify at trial and will be sufficiently familiar with the pending action to submit to meaningful oral depositions concerning the testimony she is expected to give at trial, including any opinion and its basis. Ms. White will also offer opinions on any expert defendant retains and opinions such expert offers with regards to the same expertise area. Ms. White's consulting, deposition, and trial testimony fee is $575.00 per hour. Attached hereto as **Exhibit 1** is a true and correct copy of this expert's Rule 26 Disclosure;

(2)   Dr. Jessica Rowe, Dr. Jess' Mind Care Center, 750 Oak Avenue Parkway Suite #160, Folsom, CA 95630, (916) 500-4054 (retained expert). The full opinions of Dr. Rowe will be included in her written report. She is expected to offer opinions under Federal Rules of Evidence 702, 703, and 705, relating to the psychological impact of defendants' actions on plaintiff. She will testify as to whether Plaintiff has experienced emotional distress as a result of Plaintiff's actions, the cause of the emotional distress, the prognosis, and treatment. The opinions will be based on the evaluation of Plaintiff, appropriate records review and her experience and education. Dr. Rowe will also offer opinions on any expert defendant retains and opinions such expert offers with regards to the same expertise area. Dr. Rowe has agreed to testify at trial and will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the testimony that

**EXHIBIT 03 - Page 21**

she is expected to give at trial, including any opinion and its basis. Her consulting fee is $750.00 per hour. Her deposition fee is $900.00 per hour. Her trial testimony fees are $4,750.00 per half-day and $8,500.00 per full day of trial testimony. Attached hereto as **Exhibit 2** is a true and correct copy of this expert's Rule 26 Disclosure;

(3)   Dr. Rebecca Udell, 1112 Montana Ave Suite C #853, Santa Monica, CA 90403, (310) 402-6385 (retained expert). The full opinions of Dr. Udell will be included in her written report. She is expected to offer opinions under Federal Rules of Evidence 702, 703, and 705, relating to the psychological impact of defendants' actions on plaintiff. She will testify as to whether Plaintiff has experienced emotional distress as a result of Plaintiff's actions, the cause of the emotional distress, the prognosis, and treatment.  The opinions will be based on an evaluation of Plaintiff and appropriate records reviewed and her experience and education. Dr. Udell will also offer opinions on any expert defendant retains and opinions such experts offer with regards to the same expertise area. Dr. Udell has agreed to testify at trial and will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the testimony that she is expected to give at trial, including any opinion and its basis. Her consulting fee is $200.00 per hour. Her deposition and trial testimony fee is $400.00 per hour. Attached hereto as **Exhibit 3** is a true and correct copy of this expert's Rule 26 Disclosure;

(4)   Dr. Nigel Kennedy, 116 N Robertson Blvd #908, Los Angeles, CA, 90048, (929) 505-0504 (retained expert). The full opinions of Dr. Kennedy will be included in his written report. He is expected to offer opinions under Federal Rules of Evidence 702, 703, and 705, relating to the psychological impact of defendants' actions on plaintiff. He will testify to whether Plaintiff has experienced emotional distress as a result of Plaintiff's actions, the cause of the emotional distress, the prognosis, and treatment. The opinions will be based on the evaluation of Plaintiff, appropriate records review, and his experience and education. Dr. Kennedy has agreed to testify at trial and will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the testimony that he is expected to give at trial, including any opinion and its basis. Dr. Kennedy will

**EXHIBIT 03 - Page 22**

also offer opinions on any expert defendant retains and opinions such expert offers with regards to the same expertise area.  His consulting fee is $750.00 per hour. His deposition and trial testimony fee is $1,100.00 per hour. Attached hereto as **Exhibit 4** is a true and correct copy of this expert's Rule 26 Disclosure;

(5)   Any other non-retained treating doctor or other health care provider not yet discovered by counsel;

(6)   Any other expert witness disclosed by defendants; *and*

(7)   Any rebuttal expert.


Dated:  March 21, 2025              SHEGERIAN & ASSOCIATES, INC.


                                   By:  _____
                                        Carney R. Shegerian, Esq.

                                        Attorney for Plaintiff,
                                        ALEX VILLANUEVA

PLAINTIFF'S DISCLOSURE OF EXPERTS PURSUANT TO F.R.C.P. 26(a) (2)

**EXHIBIT 03 - Page 23**

# EXHIBIT 4

EXHIBIT 04 - Page 24



**Dr. Jessica Rowe, Psy.D.**
**Dr. Jess' Mind Care Center**
Ph: 916.500.4054 / Fax: 916.260.5837
License # PSY 30803
www.drjessmindcarecenter.com

_____

### Rule 26 Report

<u>**March 18, 2025**</u>

**Re:** Alex Villanueva v. COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100, inclusive.

Mr. Villanueva was administered a thorough structured clinical interview and examination to determine if he experienced emotional distress/psychiatric illnesses from LA County events and mistreatment, and if major life areas were negatively impacted.

Note* A psychiatric illness is a combination and constellation of symptoms that tend to be ongoing after a particular stressor occurs. For example, depression that is ongoing and that keeps occurring over a long period positions a person to be at high risk for future mental illnesses.

The examinee was told the evaluation was not confidential.

**Examiner Relevant Experience and Qualifications:**

The examiner is a licensed California clinical psychologist. She attended a university accredited by the American Psychological Association (APA). Attending an APA accredited institution is the gold standard in the field of psychology (John F. Kennedy University).

Dr. Rowe has been treating patients and conducting psych evaluations from approximately 2010 to the present time, while working for the state of California, for counties in California, in private practice, and in clinics and hospital settings. Experience includes treating: trauma victims, first responders, medical staff, individuals who have experienced sexual assaults, as well as sex offenders, those with traumatic brain injuries, and individuals with severe mental disorders, and psychosis. Individuals with depression, mood disorders, anxiety disorders, trauma-related disorders, and post-traumatic stress disorder are also treated by the examiner.

ROWE 000001

EXHIBIT 04 - Page 25

Villaneuva, A.: DR. ROWE\March 2025

2

Post-graduation in 2016, the examiner worked in a California state prison as a clinician for over two years, treating a variety of severe mental and personality disorders seen in the inmate population. She was licensed while working at Mule Creek State Prison. Shortly after licensure the examiner began a private practice.

The examiner is contracted with various worker's compensation medical provider networks, conducting mental health treatment and psychological/neuropsychological evaluations for individuals who have filed a worker's compensation claim. She assists employers and worker's compensation insurance companies by treating injured workers with the goal of returning to work as soon as possible.

The examiner often treats those who have been harassed, experienced work distress, been mistreated, been sexually abused, terminated, have endured wage discrimination, and those individuals who have been slandered. She is consistently assessing the impact of traumatization and mental disorders caused by work conditions, creating treatment plans, and determining proper diagnoses. She also assists those with chronic pain from work related injuries by conducting pain management treatment mechanisms.

She is a member of the American Psychological Association, the California Psychological Association, and the American Psychology Law Society. The Examiner abides by guidelines set forth by these organizations when conducting treatment, testimony, and consultation.

The examiner assisted in the development of the first multidisciplinary program for the Native American Health Center, aiding the Native American population in the Bay Area obtain wholistic health care. The examiner presented her research about the development of an anti-bullying curriculum designed for the needs of diverse youth to help decrease suicidal ideation, depression, and suicide attempts. She also designed material to train teachers of adolescent age groups how to appropriately intervene in and decrease bullying, thereby decreasing suicidal ideation.

She conducted research with the City of San Francisco to determine the most effective evidenced-based practice and quality assurance for their community mental health treatment program. The goal was to find the best methods to reduce length of time in treatment as well as the most effective way to impact mental health conditions.

The examiner often conducts disability evaluations for military veterans on behalf of the Department of Veterans Affairs.

The examiner performs as a litigation consultant and provides expert testimony as well as forensic psychological evaluations for attorneys in California. She assists attorneys with their cases by reviewing documentation of treating doctors and therapists and using appropriate evaluative methods to provide accurate forensic results and quality reports.

The examiner has assisted in several employment litigation cases. Not only does she conduct forensic and psych evaluations, but she also conducts treatment with attorney clients who have endured defamation, wrongful termination, harassment, wage discrimination, retaliation and/or other work stress and issues. She consults with attorneys to ensure psychological evaluations conducted by other

Folsom, CA  95630
(916) 500-4054

3

psychologists are completed properly and in an ethical manner.

**Claims:**
1.RETALIATION IN VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. § 1983); (2) DEFAMATION, LIBEL, AND SLANDER; (3) COERCED SELF-DEFAMATION; (4) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; (5) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

**Material Reviewed:**

1.  Medical Records:

    AV010241-AV010304

2.  Plaintiff Depo Transcript:

    Alex Villanueva - 02-28-2025

3.  Pleadings:

    COMPLAINT--FAC (A VILLANUEVA)

**Processes:**

A.  Structured clinical interview/psychological examination. This helps confirm or deny the examinee's alleged complaints.
B.  Observation/tracking emotions during the evaluation. Example- what made the person sad, agitated, uncomfortable, etc.?
C.  Determining if there is evidence for a psychiatric illness.
D.  Determining when serious symptoms began.
E.  Is there causation? What life events caused psychiatric illnesses, if applicable.
F.  Review of all available records.

**<u>Alleged Deleterious Work Events:</u>**

The examinee confirmed the following occurred:

"Villanueva was honored to serve as Sheriff of Los Angeles County.  His tenure was driven by a desire to ensure Los Angeles County is a safer place to live.  As a law enforcement officer, Villanueva complied with all laws to which he was subject and was tasked with enforcing.  As a person of Puerto Rican descent, Villanueva has upheld and enforced laws against discrimination and harassment throughout his law enforcement career, including his service as the elected Sheriff of Los Angeles County. Defendants in this lawsuit did not try to compete in the "marketplace of ideas"; instead, the County of Los Angeles retaliated against Villanueva for his First Amendment activities and defamed him with near surgical precision to inflict maximum damage to his reputation, run for elected office, and future employment prospects. Villanueva is proud of his record as Sheriff of Los Angeles County. Under his leadership, the Department implemented the policy and practice of wearing body cameras for the first time.  Villanueva refused to cooperate with Immigration and Customs Enforcement

Villanueva, A.: DR. ROWE\March 2025

4

("ICE") and prevented ICE from operating in Los Angeles County jails.  He fulfilled his campaign promise to remove ICE from Los Angeles jails and became the first Los Angeles Sheriff to reject "SCAAP"1 funding, thereby preventing millions of dollars from being used to facilitate federal deportations directly from jails.  Additionally, Villanueva launched "Operation Homebound," in which the Sheriff's Department assisted in bringing vaccinations to vulnerable populations, including adults with disabilities, in Los Angeles County. Villanueva engaged in protected First Amendment activities as an elected official, frequently speaking out on critical issues and opposing measures that he believed would undermine public safety and law enforcement.  This First Amendment activity brought him into direct conflict with the Board of Supervisors and led to the Board's retaliation against and defamation of him. Ballot Measure A:  Villanueva publicly opposed this measure, which for the first time would allow the Los Angeles County Board of Supervisors to remove an elected Sheriff. Villanueva publicly condemned the measure, stating that it would "allow corrupt Board members to intimidate sheriffs from carrying out their duties to investigate crime," and further declared that the Board's actions would be found "unconstitutional." Ballot Measure R:  Villanueva publicly opposed Measure R, which granted unprecedented subpoena powers to a civilian oversight panel.  He stated, Since the Board of Supervisors has already spent over million dollars suing itself and their own sheriff, Measure R will open the floodgates for many more ill-advised lawsuits designed to seek documents that are not legally available for public release.  This is simply weaponizing oversight as a way to politically bash the LASD. The Board of Supervisors, the Inspector General, and the Civilian Oversight Commission would better serve the community by working collaboratively with the Sheriff's Department, not against us, as we work tirelessly for a safer Los Angeles County." Ballot Measure J:  Villanueva criticized Measure J, which proposed reallocating funding ostensibly for social justice purposes, arguing that it was, in effect, an effort to defund law enforcement.  While Villanueva publicly stated his support for funding mental health and substance abuse programs, he emphasized that the proposal was "actually out to defund law enforcement." During the pandemic, Villanueva was a vocal opponent of vaccine mandates, expressing concern over the impact such mandates would have on the already understaffed Sheriff's Department.  Villanueva stated, "I have 1,600 potential people that have 28 years or more of service.  They could just walk away and not lose a penny and not even look back, and that is a huge threat to the department which is already severely understaffed."  He further explained, "To replace a veteran thirty-year expert in whatever capacity—for example, homicide investigator, those are decades it takes to replace somebody like that, and you cannot quantify the impact that it has on public safety.  I guarantee you, homicides will go up.  A lot of things will go up, and response times are going to get longer and longer."  Villanueva also noted, "I've received support from members across the political spectrum, except for one group—the woke left who somehow has embraced this idea like it's another cultural war to fight." Villanueva also raised significant concerns about a no-bid contract awarded to Fulgent, a company tasked with running the County's COVID-19 testing and registration program.  On the basis of information provided by the FBI, Villanueva publicly asserted that Fulgent could potentially send genetic data to China, highlighting the security risks posed by such agreements. Villanueva's vocal opposition to these measures and his criticism of the Board of Supervisors' actions reflect his dedication to his role as Sheriff and his commitment to protecting the rights and safety of Los Angeles County residents. The Board of Supervisors was well aware of Villanueva's protected speech above.  Villanueva repeated the statements to the Board directly in meetings, both public and private.  Further, the Board of Supervisors informed Villanueva directly that they were aware of his public statements on the ballot measure, the vaccine mandate, and the Fulgent controversy.-Villanueva's opposition to the Board of

5

Supervisors' actions led to retaliatory measures designed to harm his reputation and political prospects. The unprecedented decision by the Board to place Villanueva on a "Do Not Hire" list was retaliatory, given that no similar action had been taken against other public officials with more serious allegations or convictions, including former Los Angeles County Assessor John Noguez, former Council Member Mark Ridley Thomas, and former Sheriff Lee Baca. Noguez, Thomas, and Baca were all charged with and/or convicted of felonies, but this did not warrant a "Do Not Hire" label on any of them. Further, the County opened eleven (11) separate investigations of Sheriff Villanueva after he was no longer Sheriff. The County used these investigations to try to get Villanueva decertified as a law enforcement officer in California and to remove his concealed carry permit. This was unprecedented because the general practice is that investigations are not opened on officials after they no longer occupy those positions. Villanueva was placed on the County's "Do Not Hire" list, ostensibly for harassment and discrimination against defendants Ester Lim and Max Huntsman. This action was undertaken with actual malice. Defendant County of Los Angeles's own investigation in 2022 determined that Villanueva had not discriminated against or harassed Huntsman or Lim. Without any explanation, defendant County of Los Angeles did a 180-degree turn and rubber-stamped the statement that the accusations were founded. This was done purely to retaliate against political speech that the County did not like and to hurt Villanueva's political prospects.-Villanueva did not harass defendant Huntsman or defendant Lim, and the County of Los Angeles, as well as Huntsman and Lim themselves, knew this.-This lawsuit is Villanueva's attempt to clear his name, vindicate his reputation, and be made whole for the emotional distress defendants' actions have caused him. Defendants' acts of retaliation, prohibited under the First Amendment, are placing Villanueva on the "Do Not Hire" list and then publicly revealing this fact. Defendants' defamation of Villanueva consists of the statements that he committed harassment and discrimination. These statements were made by Huntsman and Lim internally with malice and republished by the County of Los Angeles to the Los Angeles Times. Finally, Villanueva himself was forced to republish the statements in order to defend himself against the accusations. The statements against Villanueva were made with actual malice for a number of reasons. Max-Gustaf Huntsman himself admitted that "he could be incorrect" that Villanueva was harassing him on the basis of ethnicity. This is an admission that defendant Huntsman either knew that the statements were false when he made them or seriously doubted their veracity. Further, calling someone by his or her given name simply cannot, as a matter of law, be harassment. As is explained further below, defendant Huntsman used the name Max-Gustaf Huntsman on his own office plaque, and the County of Los Angeles's own employee database referred to him by that name; this further underscores the fact that defendant Huntsman and the County of Los Angeles knew that any allegation of discrimination and harassment was false. Ester Lim's accusations of harassment and discrimination were also made with actual malice. Defendant Lim did not produce one shred of evidence that Alex Villanueva targeted her because of her race or ethnicity or protected class. Instead, defendant Lim stated that her work product was that of someone in her 20s and otherwise did not appreciate her work product. People in their 20s are not a protected class, and, in any event, this is a statement that reflects Villanueva's opinion of the quality of the work product, which opinion is not harassment or discrimination as a matter of law. Defendant Lim knew at the time these statements were made that race or ethnicity or protected class was not a factor. Instead, defendant Lim weaponized a charge of harassment and discrimination, and defendant County of Los Angeles adopted it wholesale to retaliate against a political opponent. Finally, the County of Los Angeles acted with actual malice in saying that Villanueva had committed harassment and discrimination because its own initial investigation in 2022 determined the accusations to be unfounded. This shows that the County

Villaneuva, A.: DR. ROWE\March 2025

6

either knew they were false or, at a minimum, had serious doubts about their validity. Defendant Los Angeles County placed Villanueva on the "Do Not Hire" list in an impermissible act of First Amendment retaliation. Defendant, literally to add insult to injury, defamed Villanueva by telling the Los Angeles Times that Villanueva committed harassment and discrimination. These statements were made with actual malice because Defendants knew they were untrue when they were made or, at a minimum, entertained serious doubts about their falsity. The timing of the Los Angeles Times story was designed to cause maximum damage to Villanueva's reputation and to cause maximum emotional damage. The placement on the "Do Not Hire" list severely affects, limits, and otherwise precludes Villanueva's employment opportunities in the County government, as well as directly and indirectly detrimentally affecting Villanueva's employment prospects across the board, and damaged Villanueva's reputation. Plaintiff brings this action against defendants for economic, non-economic, and compensatory damages, pre-judgment interest (Memphis Community School District v. Stachura, 477 U.S. 299 (1986)), attorneys' fees subject to 42 U.S.C. section 1988(b) and Government Code section 800, and injunctive relief. Specifically, Villanueva requests that this Court order that the placement of Villanueva on the "Do Not Hire" list be undone and have it declared to have been an act of impermissible retaliation. Villanueva also seeks, at a minimum, nominal damages for defendants' violation of his constitutional rights and such other relief as this Court deems appropriate. Villanueva has standing to bring this lawsuit because he seeks to restore his reputation, pursue future employment opportunities, and redress the harm caused by defendants' retaliatory actions. Villanueva has a genuine desire to become employed again with the Los Angeles Sheriff's Department as a consultant. Additionally, he wishes to be considered for employment as a Justice Deputy by the present or future Sheriff and to apply for the Chief of Police position should the Community Safety Police Department be established. However, Villanueva's placement on the County's "Do Not Hire" list precludes these opportunities, rendering any application for employment futile. The "Do Not Hire" designation directly affects Villanueva's ability to secure employment in Los Angeles County government and related positions, effectively blocking him from pursuing these roles. The County's decision to place Villanueva on this list without precedent for similarly situated public officials underscores its retaliatory nature and lack of legal basis. Villanueva's standing is further grounded in the actual controversy between him and defendants over whether his constitutional rights were violated. He seeks injunctive relief to rescind his placement on the "Do Not Hire" list, which relief this Court is empowered to grant. Villanueva has also suffered significant emotional distress as a result of defendants' actions and seeks legal damages to compensate for this harm. At a minimum, Villanueva is entitled to nominal damages for the violation of his constitutional rights, underscoring his right to bring this suit and seek appropriate judicial redress."

**Repercussions of Alleged Events:**

1. Lost a sense of accomplishment and pride
2. Less joy in life
3. Lost purpose
4. Loss of direction in life
5. Simple tasks have become hard
6. Less fulfilled
7. He second guesses the simple things or decisions
8. Feels less competent

Dr. Jessica Rowe, PSYD

Folsom, CA 95630
(916) 500-4054

Villaneuva, A.: DR. ROWE\March 2025

7

9.   Doubts his value
10. Doubt his abilities
11. Feels inferior
12. Fearful around others
13. Scared in certain situations that remind him of events
14. Trouble trusting others
15. Increase in headaches, they occur weekly
16.  Increase in blood pressure and resting heart rate
17. He feels flawed and damaged now
18. He eats poorly at times because he does not care
19. His wife says he has lost patience; he is inattentive, quick to anger, and disinterested in daily activities
20. Ongoing feelings of depression and feeling downtrodden
21. Ongoing feelings of anxiety that lead to physical discomfort and symptomology
22. He is tired more quickly and easily
23. He has energy for what he must do, but lacks energy for other things
24. He takes more naps now because he has trouble sleeping or he feels exhausted
25. He is more sensitive to critique or others' comments
26. He feels others often see that there is something wrong with him and that he is flawed
27. He struggles to clean or do other ADLs because he lacks energy
28. He feels at a loss for how to help himself
29. Feeling very disturbed and traumatized
30. He gets angry or irritated with others quickly, which leads to guilt
31. He gets nervous around others or in crowds
32. He scans places for the presence of persons who could hurt him or his family
33. When someone is behind him, he often turns around to see who's there
34. Certain triggers remind him of the disturbing events that he experienced at the County
35. He feels that something bad could happen easily
36. He begins to feel anxious or disturbed when he sees bad guys strutting in public, continuing bad behaviors
37. He snaps at others easily
38. He says mean things when he does not mean to
39. It can be difficult finishing projects or goals because he does not have the motivation
40. I can be hard to talk to family and friends, run errands, clean, take a shower because he is too exhausted or is not motivated
41. He is in a state of consistent state of hypervigilance
42. He feels the only time he can really relax is by himself
43. He feels he will have a foreshortened future because of the egregious work events he experienced
44. He feels having a normal life won't occur
45. Particular triggers upset him because they remind him of what happened at work - seeing derogatory comments on social media and in the news based on the false narrative of the board of supervisors
46. He avoids places because he thinks something bad could happen there or he could be in danger
47. He often scans rooms because he is vigilant to his surroundings

Villaneuva, A.: DR. ROWE\March 2025

8

48. Projects can pile up because he just does not have the motivation anymore
49. He is less active now and does much more sitting and laying down
50. He feels that he is not good enough now
51. His view of the world and others has changed for the negative
52. He tends to see the negative in others or situation
53. He has more road rage or is very impatient with others
54. He does not read or play guitar because he no longer has the desire since the events
55. He struggles to see the positive in others
56. He only enjoys socializing with a small circle of friends
57. He rarely feels happy or content
58. He gets bored or uninterested even when there are plenty of things to do
59. He is more forgetful, and it can take him a while to figure out who/what is being discussed in a group setting because he is thinking about how he was mistreated and undermined
60. He experiences interrupted sleep, worrying about county corruption and the impact on his family
61. He has increased body pain and tension, especially in his shoulders
62. He has trouble stopping thoughts about the egregious work events
63. He has felt quite downtrodden
64. He is more emotional and experiences anxiety. He has trouble breathing, his heart races, he feels he is being shot with adrenaline, he feels a sense of despair, and feels that several people are trying to harm him and his family
65. He feels a surge of panic and gets a bitter taste in his mouth
66. He is fearful regarding what the County and those that dislike him will do next
67. He endures more acid in his stomach related to work stress and repercussions
68. He consistently checks his security cameras, and he looks for people who drive into his driveway and in the back area of his home
69. He said, "there is concern about the Board. If they are willing to lie what else are they willing to do to me and my family."
70. For protection, he carries a firearm when he travels or is out. He is scared because of the lies the Board and County have spread. The public believes what they hear, and he feels something bad could happen
71. He said, "the LA government weaponized and dehumanized me and made me into a monster to control the office of sheriff."
72. He rates anxiety as severe
73. He rates difficulty controlling worry as severe
74. He rates feeling restless or on edge as severe
75. He is very easily fatigued, has trouble concentrating, he is quite irritable, and experiences worrying too much and trouble relaxing
76. He experiences muscle tension in relation to constant worry and anxiety
77. He rated feeling downtrodden and loss of pleasure as severe.
78. He stress eats, eating carbs and sugars and he rates this as severe
79. He rates sleep problems as severe
80. Loses track of conversation because he is worrying.
81. He becomes aloof and stops paying attention and he gets spacey, and it is hard to stay present. His wife will stomp on his foot and say, "pay attention!"

Dr. Jessica Rowe, PSYD

Folsom, CA  95630
(916) 500-4054

Villaneuva, A.: DR. ROWE\March 2025

9

82. He feels a sense of worthlessness. He said, "they have invalidated who I am."
83. He feels bad about himself since the County has participated in alleged egregious acts
84. He and his wife are on a fixed income since he was forced to lose his career
85. Losing his career has been devastating. He spent so much of his life trying to become sheriff and lead the County in a positive manner. Losing this has been horrible for the examinee
86. His wife has endured panic attacks because of his career loss and the county smearing his reputation, placing him and his family in danger. For example, it was said that he is part of a gang
87. He has not worked since Dec. 2022, and this has been incredibly difficult
88. He is the first sheriff to be sued by people who were promoted (Jennifer S., Vanessa C., Angela W., Lina P.). He is the first in county history.  The County and/or Board recruited people to sue the examinee on purpose
89. Bad and incorrect information in LA Time's articles about Mr. Villanueva has led to ongoing concern, fear, and has destroyed his reputation as an ethical individual. This has placed him in danger, but has also placed his wife in danger

**Mrs. Villanueva's Interview Results:**

Mrs. Villanueva indicated that she has observed the following regarding her husband since losing a long-term career and enduring slander: She said crying right away, "he is less tolerant of others, and he drifts away and is not present. He stops listening. He is out of it. He gets really upset when he reads something about the City, the fires, and other things. He gets flustered and upset. He is not as patient. The only thing that ever affected his mood was if he was really hungry, but this has been bad. He cannot stand bullies. He is not that monster that people portrayed him to be. He would take off his shirt for anyone and stand shoulder to shoulder. To see the attacks on him, forcing me to testify, his name dragged through the mud, and the things they have done to him...he is a really good man. He was called a gangster by a community person. It has been terrible. The man has done what it right to his own detriment."

Mrs. Villanueva also noted that the County has tried to decertify him from POST around seventeen times. She said she believes they use law number 1721 to try and accomplish the latter. Trying to decertify him means they have accused him of malicious conduct so he cannot be a peace officer in the state of CA ever again, and so that he cannot be rehired.  She said, for example, he was accused of inappropriate use of force when he was not even in the field.

His wife also said, "he gets very emotional when things are discussed. I have been under stress. I get bad headaches, stomach pain, I binge eat, and at times I feel unsafe. My guard goes up when I see people in public recognize him and if he is asked if he was the sheriff.  I hear people say "he is such a nice guy, he does not seem like what they say on TV."

She noted her husband as more angry, and she must tell him to calm down. She said, "I have to discuss it with him. You know he learned he was not hirable through the LA times and not before. It is so sad." She said that her husband would help people who need it and that he does not discriminate. She has seen him cry and at other times he tries to hold in his tears. She awakes in the middle of the night to him awake and covering his face with his hand. She asks him what is wrong because he looks

Villaneuva, A.: DR. ROWE\March 2025

10

pensive and upset. She said, "we had no idea the powerful force we would be against. The day he was sworn in he was told by Janice Hahn, "just remember who manages your budget." We were so naïve and had no idea that people were so unethical. I had no idea the political corruption was so bad."

**Results of the Interview with Mr. Villaneuva's Son, Jerod:**

Jerod indicated the following since his father lost his career and was slandered: "He dedicated his whole life to this and at the expense of family. He used to be enthusiastic about making change. His life was about the department and how it has been taken away is disheartening, nor is it right or fair. His purpose has been wasted. I am asked a lot if he will run again or if he is coming back. I am told almost daily that people feel bad for him and that it is not fair. I have seen him sad and angry. He needs purpose. I have seen him cry around family. He has been frustrated and I can tell it affects him. This job was everything to him."

Mr. Villaneuva's sons' career has been affected by the slander. He said, "I have been called a predisposed peace of shit. The LA times wrote articles about me. My wife works for the department too. Supervisors told her not to change her last name so she does not alert anyone to who she is. She has been told it could impact her and have negative consequences. I have also been called The Prince, a piece of shit, and brass baby." Him and his wife are genuinely thinking about leaving the department to get a fresh start. He said the agency is not the best place to be right now.

Jerod has witnessed his stepmom being affected by what has happened to Mr. Villaneuva. Jerod said, "she has sacrificed a great deal. I have seen her depressed and crying several times. It has affected her life considerably. The department was also her life. She retired early to support him because his job was 24/7. It was taken away after he worked so hard to get where he was and to do right by others."

**Other Life Circumstances:**

-medical issues. He was diagnosed with cancer. It required surgical procedure. He is in remission. He also had about three knee surgeries. There was a great deal of improvement regarding knee issues from the surgeries.
-his father died in 2015. He feels he has grieved his death.
-as a deputy he remembers the death of children who died in a car accident. He noted this as a memory that comes up sometimes. He was also involved in taking a family to view and identify their family remains. This is another memory that comes up at times. He does not meet criteria for PTSD based on these memories and experiences.
-he grew up poor in Puerto Rico. This taught him to work extremely hard in his life and to keep pushing forward to accomplish his goals.

Based on an extensive and comprehensive examination of the examinee, other life circumstances other than County events, did not cause psychiatric illnesses.

**Clinical Exam Observations:**

Dr. Jessica Rowe, PSYD

Folsom, CA  95630
(916) 500-4054

11

During our meeting Mr. Villanueva was cooperative and alert. He appeared groomed. He was tired and downtrodden. Affect was blunted indicative of depression. Eye contact was fair. He exhibited upset when discussing work events. He had trouble expressing emotion during the exam. He exhibited satisfactory conversational skills. Hallucinations and delusions were not present. He denied suicidal ideation and homicidal ideation. Insight and judgment were adequate. Speech was generally fluid.

**Summary:**

A constellation of symptoms developed during the harmful work events, and work events were the 'precipitating' stressor and cause (the stressor that causes significant mental or physical issues to commence or exacerbate symptoms). Stress escalated to actual disorders.

Based on the evidence, the work events alone caused development of symptoms of depression and anxiety as well as difficulty adjusting and acclimating under stress.

The examinee's symptoms have not fully remitted, even though he has been separated from the employer for some time. Because he is still reactive to reminders and still experiences psychological concerns and sequelae, his mental health has deteriorated. In addition, his wife's mental health has deteriorated since having to deal with the County's behaviors and seeing her husband in pain on a consistent basis since the deleterious work events.

He also developed headaches, an increase in acid reflux, high blood pressure, and muscle tension related to the actions of the defendants and the loss of a 30 plus year career.

Evidence shows that work events intensely disturbed Mr. Villanueva, which led to psychiatric illnesses of adjustment disorder with mixed anxiety and depressed mood.

The examinee developed a significant course of psychiatric problems and symptoms, not just stress, when he began experiencing disturbing actions while working for the previous employer.

In developing opinions, the examiner considered the various facts of the case, records, evidence, and that the examinee experienced disturbing work events. He was forced to continuously deal with what is called "peer victimization," which is a deliberate attempt to inflict emotional harm to someone perceived as less powerful (NCTSN, 2021). When work memories occur or the subject is brought up or he is reminded, he gets upset, obsesses about what happened, becomes reactive, and it is a huge challenge to remain collected and calm.

Diagnoses:

Evidence, when corroborated with the *Diagnostic Statistical Manual-5-Text Revision* (DSM-5-TR), criteria for psychiatric illnesses, confirms remarkable symptoms; symptom corroboration with the DSM-5-TR is underlined required to make diagnoses.

Mr. Villanueva meets criteria for adjustment disorder with mixed anxiety and depressed mood (F43.23). The illness has caused impairment in major life areas, especially with his ability to find

Villaneuva, A.: DR. ROWE\March 2025

12

work, the relationship with his wife, he lost several colleagues and friendships and no longer has mega health care benefits. He and his wife are on a fixed income.

Rule Outs or Ins:

The examinee was asked about stressors in his life that he could remember.

The examiner addressed other life circumstances. There are no other circumstances that have caused such psychiatric issues leading to mental illnesses.
Malingering:

An evaluation in litigation also requires consideration of alternate causes of the examinee's psychiatric condition, such as malingering.

Malingering is defined as the intentional production of <u>false or grossly</u> exaggerated physical or psychological symptoms to obtain external incentives.

One could qualify for malingering by the standards of the DSM-5-TR if there is a combination of the following:

    a.  Medical-legal context of presentation. For example, the individual self-refers while litigation or criminal charges are pending, or if one is referred to obtain an evaluation for litigation.
    b.  Marked discrepancy between the individual's claimed stress or disability and the objective findings and observations.
    c.  Lack of cooperation during the diagnostic evaluation and in complying with the prescribed treatment regimen.
    d.  The presence of antisocial personality disorder.

The examinee was referred to a forensic evaluation for litigation purposes, however, he meets NO other criteria. Thus, malingering is ruled out. There must be a combination of the above criteria for malingering to be present.

There were no indications of falsifying information, overreporting, or intentionally trying to manipulate the outcome in his favor. He also does not meet criteria for a personality disorder as clearly defined by the clinical exam. Individuals with personality disorders often jump from job to job, go through extreme highs and lows, are in and out of relationships, use people for gain, and can have continuous legal problems (such as arrests) etc. These individuals also have enduring patterns of inner experience and behavior that affect perception and interpretation. These disorders substantially affect the perception of self, others, events, interpersonal functioning, and decrease impulse control. These patterns are generally pervasive across interpersonal and social situations and lead to clinically significant impairment. The pattern is generally recognizable by adolescence or early adulthood and is not expected to change significantly over time. The presence of a personality disorder can impact and exacerbate other mental health diagnosis, symptoms, and conditions. Having a personality disorder can trigger a mood disorder but the reverse cannot occur as the foundation of personality is established in childhood.

Dr. Jessica Rowe, PSYD

Folsom, CA  95630
(916) 500-4054

13

The examinee does not meet criteria for a psychotic disorder (one who is severely disturbed by delusions and hallucinations). The clinical exam would indicate if he was psychotic.

Treatment Recommendations and Prognosis :

Based on the findings of the exam, and from today onward, provisions should be made for him to receive at least 175 sessions of psychological treatment. Provisions should be made for him to get psychiatry services to obtain medications if symptoms worsen over time. These recommendations do not include all doctor visits and medications for worsening physical problems (example, shoulder pain, high blood pressure, acid reflux, etc) caused by defendant's actions.

Cognitive behavioral therapy is the preferred method as this modality is an evidence-based practice that has been well researched for treating symptoms of depression and high anxiety. He could utilize CBT to help process what happened to him while working for the employer, to reduce anxiety and sadness, to improve self-confidence, and help him address any thoughts or behaviors that are leading to increased symptomology.

Regarding prognosis, the Diagnostic Statistical Manual 5 psychologists use to diagnose, treat, and rule out disorders, notes there is no guarantee the examinee will fully recover from mental illness, especially when there is a constellation of persistent symptoms and more than one diagnosis. It is harder to overcome mental illness when the pain and symptomology is consistent over several years, as it has been for the examinee. Because he has multiple symptoms his illnesses could be more resistant to treatment. Brain functioning can be altered when exposed to events that lead to tremendous stress, causing one to be unable to fully recover (Boyle et al., Brain, Behavior, and Immunity, 2020, 83).

Research from Have et al., 2021 (Depress & Anx), determined that over 30% of those with anxiety issues did not heal or fully recover after 3 years. A longer duration of symptoms stems from older age, poor physical functioning, and/or emotional problems. The examinee has emotional problems at present according to the evidence, is older in age, struggles with sleep often, and has a diagnosis of medical conditions making him more vulnerable to severe illness.

Additional research has found that people who are in remission from anxiety disorders are still at risk in the future. It was found that 15% of people developed an anxiety disorder after 6 years in remission. There was recurrence of anxiety disorders at 10 years post remission (about 11%), at 20 years post remission (over 16%), and at 30 years post remission (about 21%). Predictors of recurring anxiety is experiencing symptoms of depression (Scholten et al., 2023, Psychol Med, 4).

In addition to the above, when opining about an examinee's condition it is very important to determine when symptoms began to dramatically increase over the course of one's life as well as the symptoms' trajectory to establish the course of symptomology. The available data and evidence indicate that the examinee's serious mental problems leading to actual diagnosable and psychiatric illnesses did not occur until after he was forced to allegedly deal with slander, retaliation, and the like.

Villaneuva, A.: DR. ROWE\March 2025

14

The examinee's mental problems and symptoms are aligned with job loss research and are what we would expect to see from such circumstances after being forced to give up a highly valued career that made up a substantial amount of Mr. Villanueva's identity as a human being. The course of his symptoms, in order to meet psychiatric illness status, must be persistent and ongoing and impact a major life area or more than one. He also meets these criteria.

Evidence indicates he experienced mental pain, resulting in emotional repercussions. As a result of working conditions being harmful and intolerable, the evidence shows that the examinee was mentally harmed.

The harm that the examinee endured is more than remote and trivial. His mental and physical health, according to evidence, has been jeopardized and impaired. The research indicates that it is common that individuals who experience such treatment in the workplace and job loss can develop longstanding mental and health issues.

With a reasonable degree of probability, the examinee has experienced mental harm from defendant's actions that developed into a psychiatric illness. The actions of the defendants caused a psychiatric illness to develop.

The Examiner completed this evaluation and testing. Any conclusions in this report may be altered if new material becomes available. I will review any additional records and or deposition testimony.

**As a precaution, the examinee should not be shown this report.**

If testimony is needed, please contact our office.

I declare under penalty of lying under oath that the information contained in this report that have been forwarded, and their attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated that I have received from others, or due to typographical error. As to the information obtained from others, I declare under penalty of lying under oath that the information referenced herein accurately represents the data provided to me to the best of my interpretation and, except as noted, that I believe it to be true. I declare under penalty for lying under oath that there has been no violation of the provision of the California Labor Code 139.3 and/or the laws and regulations governing the professional practice of Psychology.

**Sincerely,**

3/19/25

**Jessica M. Rowe, PsyD.**

Dr. Jessica Rowe, PSYD

Folsom, CA  95630
(916) 500-4054

Villaneuva, A.: DR. ROWE\March 2025

15

**Licensed Clinical Psychologist**
**CA License # PSY30803**
**Dr. Jess Rowe's Mind Care Ctr**

## *APPENDIX*

Research evidence showing the deleterious effects of psychiatric illnesses and job loss:

## JOB LOSS

Research evidences that individuals who suffer with mental problems are more at risk of employment termination. Individual's impact of mental struggles affects an individual's ability to maintain employment (Nelson, Kim, Jo Me Hea Pol Eco, 2011).

Research denoted that those who feel there was injustice involved with job loss, subsequently they experienced greater emotional distress than those who were not (Walster et al. 1978; Sprecher, 1986).

Evidence indicates that employment can improve an individual's well-being, but that job loss has a detrimental effect (Nelson, Kim, Jo Me Hea Pol Eco, 2011).

Research by Karsten Paul, PhD, and Klaus Moser, PhD, both in the department of organizational and social psychology at the Friedrich-Alexander University of Erlangen-Nürnberg in Germany, found that across 87 longitudinal studies, unemployed people were more distressed; less satisfied with their lives, marriages and families; and more likely to report psychological problems than the employed (*Journal of Vocational Behavior*, Vol. 74, No. 3, 2009).

People who lose their jobs have higher symptoms of depression and greater risk of conditions than those with consistent work (Catalan, Dooley, 1983; Gallo, Bradley, Siegel, and Kasl, 2000).

Financial threat is defined as fearful-anxiety, uncertainty regarding one's current and future financial situation. Termination can lead to financial threat. Financial threat is positively associated with depression, anxiety, mood disturbances, burnout, and suicidal ideation (Fiksenbaum et al., 2017, Jo Beh Ex Eco).

There is a relationship between economic hardship and psychological well-being (Tamayo-Fonseca et al., 2018, Int Jo Env Res Pub Hea; Cuellar, Sharfstein, Huskamp, 2020, Psy Ser). Research found that in six different countries financial loss is related to symptoms of depression (Witteveen, Velthorst, 2020). Several studies have found that in the US and South Africa, that there is a direct link between unemployment and higher symptoms of mental  health problems, anxiety, and depression (Ganson et al., 2021, McDowell et al., 2021).

## DEPRESSION EFFECTS

In the cerebrospinal fluid of depressed patients, GABA (GABA calms the brain and helps decrease excitability related to anxiety, stress, and fear) levels have been repeatedly reported to be lowered (Sanacora, 2010). There is decreased density of specific GABA neurons in prefrontal and occipital cortical regions of people with depression (Maciag et al., 2010; Rajkowska et al., 2007) and magnetic resonance spectroscopy studies have showed a decrease in GABA in occipital and anterior cingulate areas (Cowen, 2015; Sanacora et al., 1999).

Villaneuva, A.: DR. ROWE\March 2025

17

Depression negatively affects quality of life, outstanding job potential, educational, professional, or academic success, sleep and eating behaviors and health (Gilmour & Patten, 2007, Hea Rep).

Depression can increase behavioral repetition of trauma experiences, and decline in social and occupational functioning (Van der Kolk, 2000, Dia Clin Neur).

Likely irreversible hippocampus shrinkage occurs in recurrent depression (Sheline Yl., Sanghavi M., Mintun MA., Gado MH).  Depression duration predicts hippocampal volume loss in medically healthy women with recurrent major depression (*Jo Neurosci*. 1999;19).

Serious depression represents significant changes such as decreased self-esteem, loss of interest and pleasure in things once enjoyed, reduced energy, motivation difficulty, and pain without clear cause (Patten et al., 2009, CANMAT). The above symptoms are based on dysfunctional neural networks and affect the plasticity (properly function or recover after strain or injury) of the brain (Trifu et al., 2020, Jo Morp Embry).

Functional problems in the prefrontal cortex because of depression, leads to ruminating, impaired sex drive and functioning, and leads to irrational thoughts (Kupfer, Frank, and Phillips, Lanc, 2012).

CT scans show enlarged ventricles (because of atrophy of brain tissue) and global cortical atrophy is caused by serious depression. Prefrontal volume abnormalities occur with serious depression (Meisteremst et al., 2017, Plo On). The above changes can lead to behavioral deficits.

The limbic system, which helps people process emotions, is also impacted by depression. Depression leads to hyperactivity in the limbic system (Trifu et al., 2020, Jo Morp Embry).

**ANXIETY EFFECTS**

fMRI imaging and scans shows that anxiety and stress-related disorders are whole brain conditions, implicating several brain areas (Duval, Liberzon, 2015, Ther Cli Ri Man).

Presentation of threatening words in fMRI studies, activate the left frontal cortex and left cingulate when a person has an anxiety disorder (Maddock, Buonocore, Kile, Neurore, 2003).

Symptoms of anxiety disorders can be detrimental to the emotional processing center in the brain. The brain's limbic system, comprised of the hippocampus, amygdala, hypothalamus and thalamus, is responsible for the majority of emotional processing. An anxiety disorder leads to heightened activity in these areas (Northwestern University, 2024).

"Anxiety disorders are associated with alterations in fear neurocircuitry…in the amygdala which respond to threat are exaggerated, and regulation of these processes by the prefrontal cortex (PFC) and hippocampus is impaired. Chronic stress exposure similarly alters fear neurocircuitry by enhancing amygdala functioning while causing structural degeneration in the prefrontal cortex and hippocampus

Villaneuva, A.: DR. ROWE\March 2025

18

thereby inhibiting prefrontal cortex/hippocampus control over the stress response'' (Mah, Fiocco, & Szabuniewicz, 2016, Curr Opi Psych).

Mood and anxiety disorders are characterized by a variety of neuroendocrine, neurotransmitter, and neuroanatomical disruptions (Martin et al., 2009, Psy Clin Nor Amer).

Single-photon emission computed tomography (SPECT) identified lower metabolism in the left inferior parietal lobe and overall decreased bilateral cerebral blood flow (CBF) in patients who had PD as compared with control subjects, and this decrease corresponded with symptom severity (Lee, Hwang, & Kim, Jo Psy Resp, 2006).

## SLANDER EFFECTS

Slander creates bias in the community so that the victim is perceived as negative regardless of the true facts. The slandered victim must constantly move within a hostile environment, which can cause a great deal of emotional and psychological damage. One develops knots of negative emotion and thoughts of oneself. Depression, anxiety, self-destruction, and internalization of abuse from the abuser occurs. Slander often leads to destructive self-criticism, and low self-esteem that leads to serious mental health problems, somatization of emotional pain, suicidal ideation or attempts, and feeling that one is unable to protect themselves (so helpless and hopeless can develop)  (Petric, 2019).

Emotional issues can develop into serious psychological symptoms that are diagnosable (Shiraev & Makhovskaya, 2019, Tra Psy Imp of Char Att on Tar).

The psychological developments that result from character attacks include a range of negative emotional reactions or emotional states (which are usually long-term and persistent, such as a depressed mood). Emotional problems from the attacks influence an individual's mood and his or her immediate decisions. The attacks affect the individual's reputation, meaningful relationships, and quality of life (Shiraev & Makhovskaya, 2019, Tra Psy Imp of Char Att on Tar).

Character attacks can be a contributing factor to mental disorders, a cluster of persistent symptoms associated with significant distress, one can be unable to cope with major life stressors, and attacks can exacerbate preexisting conditions. This is connected to rumors, innuendo, slander, or other forms of direct and indirect attacks. Disorders that can develop are persistent depressed mood, anxiety problems, irritability, sleep problems, and feelings of helplessness etc.(American Psychological Association, 2021).

Dr. Jessica Rowe, PSYD

Folsom, CA  95630
(916) 500-4054

ROWE 000018

**EXHIBIT 04 - Page 42**

Villaneuva, A.: DR. ROWE\March 2025

19

**Dr. Jessica Rowe's Case List:**

MEGAN YAWS, Plaintiff, v. COUNTY OF PLACER; PLACER COUNTY SHERIFF'S DEPARTMENT, a government entity employer; and DOES 1-25, inclusive, Defendants. Case No. S-CV-0042328

MARIA OLGA TAHARA, Plaintiff, v. SUTTER COUNTY, SUTTER COUNTY SHERIFF'S DEPARTMENT, a government entity employer, and DOES 1-25, inclusive, Defendants. Case No. CVCS19-0000737

ANTHONY MORRIS, Plaintiff, v. CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, a California Agency; and DOES 1-25, inclusive, Defendants. Case No. 34-2018-00244680

HOSSEIN KHATAMI, Plaintiff, v. ROSEVILLE JOINT UNION HIGH SCHOOL DISTRICT; JENNIFER LEIGHTON, an individual; JEFF EVANS, an individual; and DOES 1-25, inclusive, Defendants. Case No.: S CV 0044602

LINDSEY FAUCETTE, Plaintiff, vs. PACIFIC CENTRAL COAST HEALTH CENTERS, a California Corporation; DIGITY HEALTH, a California Corporation; WILLARD CHUNG, M.D. an individual; and DOES -25, inclusive, Defendants. Case No. 21CV01555

Ricky Hendricks, Claimant, vs. Landsea Holdings Corporation, A Delaware Corporation; Sherry Nunziata, an individual; and/or DOES 1-25, inclusive, Respondents. REFERENCE NO.: 1130009204

Dusty Stahl vs. Robert C. Klotz et al. Case No. 2: l 9-cv-00496-KJM-CKD

JENNIFER RYDALL, an individual, Plaintiff, vs. RICHARD QUARESMA, an individual; SARAH QUARESMA, an individual; and DOES 1 through 10. Defendants. Case No. STK-CV-UCR-2021-0005768

ANDREA PICART, an individual, Plaintiff, vs. HORRIGAN COLE ENTERPRISES, INC., a California corporation, dba Cole Vocational Services, NATIONAL MENTOR HEALTHCARE, LLC, a Delaware limited liability company, and DOES 1 through 20, inclusive, Defendants. Case No.: RG21090479

BRENNA JORDAN, an individual, Plaintiff, vs. CHA HOLLYWOOD MEDICAL CENTER, L.P., a Delaware Corporation; CHA HEALTH SYSTEMS, INC., a California Corporation; and DOES 1-50, inclusive, Defendant. Case No. 21STCV42895

KRISTEEN KLAAS, Plaintiff, v. ALAMEDA HEALTH SYSTEM, and DOES 1 through 50, inclusive, Defendants. CASE NO. RG19010536

KRISTY WRIGHT, Plaintiff, v. SUTTER VALLEY HOSPITALS dba MEMORIAL MEDICAL CENTER; RAYMOND OVRAHIM, an individual; and DOES 1 through 50, inclusive, Defendants. CASE NO.: CV-18-002049

Dr. Jessica Rowe, PSYD

Folsom, CA  95630
(916) 500-4054

Villaneuva, A.: DR. ROWE\March 2025

20

ANDREW ANDERSON & DAVID J. MOORE, Plaintiff, v. CITY OF FONTANA and DOES 1-100, inclusive, Defendants. Case No. CIVDS1610471

Stuart James, Plaintiff, v. Sutter Health: and DOES 1 through 50, inclusive, Defendants. Case No.: 34-2019-00260686

LOURDES DEL RIO VALDES, an individual, Plaintiff, v. MEDIMPACT HEALTHCARE SYSTEMS, INC.; a California Corporation; VERONA L. MACDONELL, an individual; and DOES 1-50, inclusive, Defendant. Case No. 37-2020-00045266-CU-WT-CTL

DANITA DALEY, DNP, MBA, RN, HACP, Plaintiff, v. HENRY MAYO NEWHALL MEMORIAL HOSPITAL; and DOES 1-50, inclusive, Defendants. Case No. 18STCV08791

MELANIE HEAD, an individual, Plaintiff, v. LAKESIDE UNION SCHOOL DISTRICT; and DOES 1 through 50, inclusive, Defendants. Case No. 37-2018-00028618-CU-WT-CTL

BRENDA BRIDGEFORD, an individual, Plaintiff, v. CITY OF CORONADO, a municipal corporation; and DOES 1 to 10, inclusive, Defendants. Case No.: 37-2018-00051939-CU-WT-CTL

CYNDI BAILEY, Plaintiff, v. SUTTER VALLEY HOSPITALS dba MEMORIAL MEDICAL CENTER; RAYMOND OVRAHIM, an individual; and DOES 1 through 50, inclusive, Defendants. Case No. 2026940

JESS HERRERA, an individual, SUSAN HERRERA, an individual; Plaintiffs, vs. B & S PLASTICS, INC., a California corporation doing business as WATERWAY PLASTICS; AQUA IMAGE POOL CARE AND CONSULTING, corporate form unknown; BOBBY RAUCH, an individual, doing business as AQUA IMAGE POOL CARE AND CONSULTING; and DOES 1 through 100, inclusive, Defendants. Case No. STK-CV-UPI-2020-0004342

SHASHI NARAYAN, Plaintiff, v. DIGNITY COMMUNITY CARE, dba METHODIST HOSPITAL OF SACRAMENTO, a California Corporation; and DOES 1-10, inclusive, Defendants. Case No. 34-2020-00279250

PATRICIA TOSCANO, Plaintiff, v. THE CITY OF OAKLAND, FRANK KNIGHT, and DOES 1-10, inclusive, Defendants. Case No. RG21094864

EMMA GONZALEZ, Plaintiff, vs. HEALTHCARE SERVICES GROUP, INC.; AND DOES 1 THROUGH 50, INCLUSIVE, Defendants. Case No. 2:23-CV-07060-FMO-MAA

STEVE SANSON, Plaintiff, v. AEROJET ROCKETDYNE, INC., STEVE HILL, and DOES 1 through 50, inclusive, Defendants. Case No.: 34-2015-00175120

LATONYA BANKETT, Plaintiff, v. CALIFORNIA FRANCHISE TAX BOARD, Defendants. Case No. 34-2018-00241074-CU-OE-GDS

CASSANDRA VIGNIERI, Plaintiff, vs. MINTED, LLC, VINEET GUPTA, CARLY SMITH, and DOES 1 to 100, inclusive, Defendants. Case No. CGC-22-600181

Dr. Jessica Rowe, PSYD

Folsom, CA 95630
(916) 500-4054

21

BRITTANY JACKSON, Plaintiff, vs. CAST & CREW PAYROLL, LLC; CAST & CREW ENTERTAINMENT SERVICES, LLC; DONNA DEANGELIS; and DOES 1 to 100, inclusive, Defendants. Case No.: 21STCV43573

MARCUS WEBSTER, an individual, Plaintiff, vs. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a public corporation; SASHA YOUNG, an individual; JASMINE BRIONES, an individual; SCOTT KARAS, an individual; BRENDA QUIROGA, an individual; and DOES 1-5-, inclusive, Defendants. CASE NO. 22STCV30740

TRACY TAYLOR, Plaintiff, vs. PBK ARCHITECTS, INC, a Texas Corporation; GARY J. GERY, an individual, DC CAPITAL PARTNERS, a Virginia Limited Partnership, and Does 1-20, Defendants. Case No: 34-2022-00313977

# EXHIBIT 5

EXHIBIT 05 - Page 46

| | |
|---|---|
| **Client:** | Alex Villanueva |
| **Provider:** | Dr. Rebecca Udell |
| **Provider License:** | LMFT #53808 |

| | |
|---|---|
| **Diagnosis:** | F43.23 - Adjustment disorder with mixed anxiety and depressed mood |

# Biopsychosocial Assessment

### 1. Presenting Problem:

The patient is a 62-year-old Hispanic cis-gender heterosexual male. The patient is being assessed on behalf of Shegerian and Associates. The patient was appropriately dressed and well-groomed. The patient's affect was subdued and slightly guarded, as evidenced by folded arms, which he eventually sat with hands folded. The patient spoke with normal prosody and tone. The patient appeared dysthymic, as evidenced by his shoulders turned in, sadness in his face as evidenced by a forlorn look, and lack of positive affect (no smile, soft voice at times, and furrowed brow). The patient reports feelings of dismay, stress, isolation, difficulty sleeping, "running thoughts, I can't shut down my mind," and longing for "comfort food." The patient reported feelings of anger, hopelessness, and, at times, fear for his life due to death threats. The patient reports that his work in law enforcement has always been rewarding. However, stress began in 2019 after winning the election as LA County Sherrif and progressed as he experienced a personal attack on his integrity and character. The patient reported when he was sworn in, Jannis Hahn (LA Board of Supervisors member) stated, "Don't forget who writes the checks." The patient reported a smear campaign by the Board of Supervisors began almost instantly. The patient reports he made several positive changes to the department, including pivoting a 100 million deficit into a 74 million surplus. The patient reports that Sherrifs' felt supported, and many who had left the department or retired returned to work under his command. The patient reported that his nickname in the department in the early years was "Fletcha" meaning Arrow in Spanish, implying he was a straight arrow and he worked diligently to reform the department. The patient reported that he "always spoke the truth to those in power," and overnight, he became the "Bad guy" for wanting to make changes. The patient stated the stress, not of the job but the attacks on his reputation and his advocating for those under his command, intensified. The patient reported anxiety, stress, worry, and humiliation as the work he loved became a "war room" with the Board of Supervisors and other entities.

### 2. Signs and Symptoms (DSM-V-TR based) resulting in impairment(s):

### (Include current examples for treatment planning, e.g., social, occupational, affective, cognitive, physical)

The patient reported levels of anxiety, stress, rumination, "running thoughts, can't shut down mind, reliving what happened." intermittent sleeping, "anger, irritability, isolating" from others. "I don't cry; we learn to compartmentalize." Stress concerning the ability for future employment in public policy. The patient revealed feelings of "humiliation" while in office and reports feelings of humiliation have continued due to the attack on his integrity and name. The patient experienced emotional abuse, specifically, an attack on integrity, insults as evidenced in an attack on his reputation, and threats to his life and his career by media and public persons and entities.

### 3. History of Presenting Problem

### (Events, precipitating factors, or incidents leading to need for services):

The patient reports 40 years of public service and receiving much satisfaction from his work. He revealed that his line of work requires that "We (law enforcement) provide service above self and integrity." The patient reports the incidents that led to his symptoms began the day he took office and was attacked by different entities. In a telephonic conversation on 3/20/25 with Mrs. Villanueva, a former deputy for 25 years herself, she described her husband as a "tough and resilient guy" however, "he has been bullied and beaten down so much. She further stated, "Public Service has been his whole life and career." She further described him as sad, preoccupied with thoughts, and serious. She further confirmed his report of insomnia, often seeing him wide awake with his hand over his face, preoccupied with thought more often than not.

### Frequency/duration/severity/cycling of symptoms:

The patient reports symptoms of humiliation, anxiety, irritability, worry, and having his integrity questioned and attacked, which began immediately after the election. The patient reports feelings of dismay, discouragement, and disbelief that a political system could be so corrupt. The patient reports increased rumination of thoughts, irritability, isolation, "a pariah" anger, intermittent sleep, anxious eating, and "seeking comfort food." Mrs. Villanueva confirmed symptoms and his "seeking of comfort food to quell anxiety.

### Was there a clear time when Sx worsened?

Created on Mar 19, 2025 at 9:36 pm. Last updated on Mar 21, 2025 at 1:04 pm.                    Page 1 of 3
Locked and Signed by Rebecca Udell on Mar 21, 2025 at 1:04 pm.

UDELL 000001

**EXHIBIT 05 - Page 47**

Client:    Alex Villanueva

The patient reports symptoms worsened when the Board of Supervisors instituted a "Do not Rehire" blocking his ability to work in law enforcement and public policy. In a telephonic conversation with Mr. Villanueva's son, Deputy JJ Villanueva, on 3/20/25. Deputy Villanueva described his father as tough and resilient. However, he saw a change in his behavior after taking office. Deputy Villanueva revealed his father had been beaten down so much by the attacks on his integrity and character by media and members of the Board of Supervisors he became quiet and serious. Deputy JJ Villanueva reported, "My dad had a sense of humor, he was funny, and he is serious now. "His whole life has been public service; he is passionate about making a difference, and I see him now as a man without a sense of purpose."

**Family mental health history:**

The patient reports a cousin was diagnosed with Schizophrenia approximately during his late teens. No reported mental health issues in the immediate family of origin.

**4. Current Family and Significant Relationships**

Strengths/support: Patient reports his "wife and a few close friends are my support and my believe in God."

Stressors/problems: The family has been defamed, his reputation shattered by mistruths and 'smear campaign." Wife current struggling with gastro intestinal issues related to stress.

Recent changes: None reported

Changes desired: " I want my name cleared and I want the Do Not Rehire removed." "I want my family name and my family to feel whole again."

Comment on family circumstances: "This has affected my family and especially my wife, she is having her own health issues from the stress and anxiety."

**5. Childhood/Adolescent History**

**(Developmental milestones, past behavioral concerns, environment, abuse, school, social, mental**

**health)**

The patient was born in Chicago, then the family moved to New York and finally moved to Puerto Rico when he was four years old. He reports, "We were a poor family, but we got by. The patient attended 2 years of college before joining the US Air Force in 1983.

**6. Social Relationships**

Strengths/support: Patient reports small group of close friends. Patient reports he has isolated from many.

Stressors/problems: Patient was often invited to speak at events or his alma mater; however opportunities and connections ceased after defmation in media and by public servents began.

Recent changes: Patient reports he has taught as an adjunct professor in the past, often asked to speak publicy, attend Gala fundraisers, and those opportunities have ceased.

Changes desired: "I want the Do Not Rehire removed, I want my name cleared;"

**7. Cultural/Ethnic**

Strengths/support: Patient identifies with the his Puerto Rican hertiage, and a people that faced many colonisers. Like his heritage, "I am reslilant, survivor."

Stressors/problems: N/A

Beliefs/practices to incorporate into therapy: N/A Assessment only

**8. Spiritual/Religious**

Strengths/support: Patient reports a belief in God and finds his religious belief to be a source of personal support.

Stressors/problems: N/A

Beliefs/practices to incorporate into therapy: Assessment only

Recent changes: None reported

Changes desired: N/A

**9. Legal**

UDELL 000002
**EXHIBIT 05 - Page 48**

**Client:**    Alex Villanueva

History: Patient reports only other personal legal matter was a tenant/landlord dispute.

Status/impact/stressors: none reported

**10. Education**

Strengths: Patient is a veteren of the Air Force, he attended the University of LaVerne obtained a PhD in Public Adminstration.

Weaknesses: "I'm too trusting."

**11. Employment/Vocational**

Strengths/support: Patient has aproximately 40 years in the public service.

Stressors/problems: Current "Do not Rehire" order in place. attack of integrity and character.

**12. Military**

Current impact: Patient entered the Air Force in 1983.

**13. Leisure/Recreational**

Strengths/support: Walking with his wife and dog. Using gym equipment at home.

**14. Physical Health**

Summary of health: No medications reported at this time. After election, he had knee replacement surgery. Minor allergies, treated for Melanoma in the past and continues surveillance with Dr.

Physical factors affecting mental condition: None reported

**15. Chemical Use History**

Summary of use: None reported

Patient's perception of problem: N/A

**16. Counseling/Prior Treatment History**

Summary of prior treatment: None reported

Benefits of previous treatment: N/A

Setbacks of previous treatment: N/A

**Provider**

*Rebecca Udell*

Signed by Rebecca Udell
PhD, LMFT, CSAT
March 21, 2025 at 1:04 pm
IP address: 75.84.223.50

UDELL 000003
**EXHIBIT 05 - Page 49**

# Rebecca M. Udell, PhD, LMFT

1112 Montana Ave Suite C #853 Santa Monica, CA 90403
310-402-6385 | udellrebecca@yahoo.com

## Experience

■ Private Practice, Santa Monica, CA, <u>Consulting, Supervision, Psychotherapist</u>
July 2013 – Present

Working from a Psychodynamic paradigm, providing Individual, Young Adult, and Couples therapy. My work with couples includes pre-marital, and marital counseling, helping couples gain resourceful communication skills, insight and the confluence of family of origin in the current relationship. I work with same sex and heterosexual couples for the purpose of engaging the couple in healthful dialogue to target self-defeating and relationship sabotaging behaviors, to enrich their marital satisfaction. I draw from attachment theory and object relations. I Provide consultation and supervision services, and currently oversee the internships of 3 AMFT interns.

■ The Haven at College at USC, Los Angeles, CA, <u>Clinical Director</u>
June 2017 – May 2020

Collaborated with executive leadership to meet financial goals, Forecast staffing needs based on census and academic calendar and excute the mission of the company to provide excellant addiction and dual diagnosis treatment. Designed and developed the SUD Harm Reduction and Mental Health Curiculum tailored to the collegiate population. Trained and supervised MFT interns and MSW interns meeting the best practices and standards of BBS and academic requirements of Master's degree programs. As leader of the Clinical staff, directed the weekly Clinical staff meetings, to encourage, support and lead staff in best clinical practices. Procured continuing education and training to keep staff abreast of company policy, HIPPA requirements, crisis intervention, and various therapeutic modalities. Provided Clinical outreach to educate various university leaders on the stigma of addiction and sustance use and abuse on college campuses.

■ CAST Centers, Los Angeles, CA, <u>Director of Clinical Services</u>
May 2015 – May 2017

Initially hired as the Manager of Clinical Services executing psychological assessments, client treatment plans and assignment of staff and independent contractors to provide a milieu of Intensive Out Patient therapies. Completed all assessments and provided diagnosis in accordance with DSMV and ICD-10 codes. In addition, facilitated two weekly group therapy sessions that included off site programming. Maintained a client load of 10 clients and provided CBT, Narrative, and Trauma Resilience Therapy in the treatment of dual diagnosis, addiction, and PTSD. Assisted clients to improve communication and relational dynamics through psycho-education, family therapy, and or couple therapy. Designed and developed a relapse prevention plan, and Crisis intervention plan for

families, listing various resources for families following completion of treatment. Promoted to Director of Clinical Services in January 2017.  Daily interaction with the Executive Director to improve outpatient treatment programs, services, and maintains organizational goals and objectives.  Available for 24- hour communication with Transitional living staff in order to maintain highest level of care for clients living at the Transitional living apartments.  Facilitated weekly staff meetings with staff from IOP, Transitional living, Administration and Executive director to maintain company JCAHO Accreditation standards, communicate treatment goals and client treatment protocols. With the execution of ROI's, communicated with Physicians, Psychiatrist, and former treatment providers to provide client with the utmost quality of care. Lastly, as the representative of the company, attended organizational, and community functions to promote the CAST brand.

■  Loyola Marymount University Counseling Center, Los Angeles, CA, <u>Clinical Therapist</u> August 2015 –May 2016

Responsible for administering psychological assessments for students seeking psychotherapy, addiction treatment, and crisis intervention.  Provided individual and couple therapy when requested, and maintained a base of 35 clients per week. Initiated treatment plans for all clients, and worked cohesively with staff to provide quality psychological care and crisis intervention.  Engaged with professors and coaches when necessary to meet the needs of students and student athletes.

■  Pepperdine University Counseling Center, Malibu, CA, <u>Clinical Therapist</u> March 2014 – May 2016

Employed as a part-time clinician in the treatment of university undergraduate and graduate students.  As a Clinician, implemented a short-term Cognitive Behavioral Approach for the of treatment students seeking therapy.  Responsible for psycho-social assessments, developed treatment plans and interacted with parents, and various academic departments to support students during times of crisis, mental illness, addiction, stress, and trauma.  Worked collaboratively with staff and Director to provide students with clinical services and crisis intervention. When necessary communicated with staff psychiatrist to ensure best practices and quality of care.

■  Vista Del Mar Child and Family Services, Los Angeles, CA, <u>MAT Assessor</u> July 2012-March 2014

Working in conjunction with the Department of Child and Family Services and the Department of Mental Health, as a MAT Assessor (Multi-disciplinary Assessment Team) providing crisis intervention when necessary to help stabilize family and children, as well as conduct psychological diagnostic assessments from infancy to 18 years of age.  Meeting face to face with children often in crisis after recent trauma requiring the ability to connect,

UDELL 000005
EXHIBIT 05 - Page 51

provide safety, and empathy while completing the DMH diagnostic assessment. The position requires the ability to utilize knowledge and intuition to assess the current situation, to facilitate expression of feelings, concerning traumatic events. The position requires prompt completion of diagnosis, and mental health assessments in order to provide mental resources, educational resources and medical recourses. Communicating with parents, family members, foster parents, teachers, counselors, physicians, ER social workers, and law enforcement to determine the most appropriate mental health treatment, medical resources and educational resources available. Completion of 13 page DMH ICARE infant assessment report, or the DMH 9-child adolescent report and the 11 page DCFS summary of findings report which must within 45 days and presented to the DCFS MAT coordinator, CSW, Public Health nurse, foster caregivers, and family members. After completion of the summary of findings meeting, the finalized copy of the SOF report is presented to the family court judge for review and disposition. The position required extensive travel, excellent communication skills, and diplomacy working with government agencies, foster family agencies, families, and children.

■ The One 80 Treatment Center, Beverly Hills, CA <u>Group Facilitator/Therapist Intern</u>

Collaboration with the One80 Center began as an off-site therapist for patients in various stages of recovery. Working closely with the Clinical director, Psychiatrists, sober Companions, and Case managers to provide a web of emotional and therapeutic support for patients. Duties required excellent communication, with staff while maintaining confidentiality for high profile patients. As patients became mentally and physically stronger in their sobriety, patients left the treatment center and remain as private practice patients. In January, 2012, given the opportunity to organize and facilitate the <u>Emotional Recovery Group</u>. As the facilitator of this group, duties include preparing and facilitating a weekly process and Psycho-educational program on anxiety and depression for dual diagnosis patients. Utilizing a psychodynamic and dialectical model, patients are given the opportunity to explore their anxiety and depression in a group setting and incorporate healthy coping strategies.

■ The Maple Counseling Center, Beverly Hills, CA, <u>Intern</u>
May 2007- June 2010

Selected as a trainee at the Esteemed Maple Counseling Center under the clinical direction of Dr. Harold Young. Training commenced in the Intake and assessment program in addition to the treatment of clients at the center. During the second year of training successfully maintained a client load of 15 clients, whilst teaching Peer Counseling at Beverly Hills high school to Junior and Senior students. In addition to maintaining a client load at the center, and teaching at the high school, successfully facilitated weekly group therapy sessions at Moreno Continuation School in the BHUSD.

Education

**LAISPS,** Brentwood, CA                                    October 2022 - June 2023

Accepted into the advanced training program in Psychoanalytic Psychotherapy.  A 9 –month intensive training program with various LAIPS faculty members focusing on the relevance of transference, counter-transference and dream analysis.

**Pacifica Graduate Institute**, Santa Barbara, CA          September 2008 – May 2015

Successful completion of all required coursework in the PhD Depth Psychology program, with PhD awarded in May 2015.  Dr. Allan Bishop as Dissertation Chair, and Dr. Don Marcus M.D., external reader.

**Antioch University**, Los Angeles, CA                     September 2006 - June 2008

Successful completion of the Master of Arts program in Clinical Psychology, with a Master of Arts in Psychology conferred in 2008.

**California State University Los Angeles**, Los Angeles, CA     September 1988 -

MA program Industrial Psychology.

**University of Southern California**, Los Angeles, CA          September 1985 - June 1987

Awarded The Ojai Valley Mexican-American Educational Scholarship award, and the Retired Teachers Association of Ventura County scholarship award and conferred with a Bachelor of Arts degree in Psychology.

- ■ **Continuing Education certifications**:

CSAT Certification through the International Institute of Trauma and Addiction Therapy (IITAP) Sex Addiction Therapist.
ICARE 0-5 Assessment and interventions.
Trauma based interventions for children and adolescents.
Borderline Adolescents and the Use of Mentalization-Based Therapy.
RISE:  A project of the L.A. Gay & Lesbian Center educating clinicians on strategies to facilitate a safe and meaningful environment to discuss sex, gender and sexuality.
Trauma and Development: Bessel Van Der Kolk M.D.

**Activities, trainings, memberships, volunteer work**

Volunteer Clinical Supervisor, The Maple Counseling Center, Beverly Hills, Ca.

Trained for two years in the <u>Psycho-neurobiological approach to couples therapy</u> under the direction of Dr. Stan Tatkin.

 Case Consultation group member with Dr. Marion Solomon with emphasis on early childhood attachment and the psychotherapeutic relationship.

A member of CAMFT, and GPALA, NAMI, IITAP

A member of LA Leggers marathon training group since 1993.

Pro Bono work:  For the past 10 years facilitating a support group for divorced and separated Catholics at the Good Shepherd Catholic Church, Beverly Hills, Ca.  In addition, assistance with pre-marital counseling for couples who schedule their nuptials at Good Shepherd Parish.

References:

Dr. Roberta Rinaldi LMFT.

Victoria Curea LMFT, Training Analyst at LAISPS, Adjunct Professor Antioch University.

Father Edward Benioff Pastor, Good Shepherd Catholic Church, Beverly Hills, CA.

Dr. Jessica Herzog PsyD. Former Psychology Intern Supervisor.

UDELL 000008

EXHIBIT 05 - Page 54



Rebecca M. Udell, PhD LMFT #53808
12401 Wilshire Blvd Suite 300
Los Angeles, CA 90025

03/21/25

Shegerian and Associates
Attn: Iris Michaelson

Re: Alex Villanueva
Assessment

Ms. Michaelson,

I am writing this letter to confirm that I have provided expert testimony in the legal matter of Barroso vs Dignity Health, case #202000544090CUWT. This is the first and only time I have provided expert testimony.

In addition to completing a Biopsychosocial assessment for Mr. Villanueva, I also reviewed the Complaint, medical records, and the Deposition of Mr. Villanueva.

Should you require additional information, please feel free to contact me.

Thank you,

Rebecca M. Udell
Ph.D., LMFT, CSAT

CC: sent via email.

# EXHIBIT 6

EXHIBIT 06 - Page 56

# Expert Witness Report

Villanueva v County of LA

March 20th 2025

Shegerian & Associates

6205 Lusk Blvd
Suite 200
San Diego, CA
92121



Dr. Nigel Kennedy MB BS, PhD

Kennedy Psychiatric PC

Email: nigel.kennedy@kennedypsychiatric.com

Web: https://kennedypsychiatric.com

Office: (929) 505-0504

Fax: (929) 299-1651

*CONFIDENTIAL*
*The information in this report is intended solely for the individual or entity to which it is addressed and may be privileged, confidential and/or protected by law.*

KENNEDY 000001

**EXHIBIT 06 - Page 57**

**Expert Witness Report**

**Date:** 3/20/2025

**Re: Villanueva v County of LA**

**Prepared by:**

Nigel Kennedy, MB BS, PhD

116 N Robertson Blvd, #908
Los Angeles, CA 90048
Phone: 929-505-0504
Fax: 929-299-1651

## I. Introduction

I, Dr. Nigel Kennedy, am a board-certified psychiatrist with ten years of experience in the field. I am board certified by the American Board of Psychiatry and Neurology (ABPN) in Psychiatry.  I am licensed to practice medicine in New York and California. Prior to starting my private practice in 2022, I served as the Unit Chief for Unit 7S at the Mount Sinai Hospital in New York, NY. I remain on faculty at the Icahn School of Medicine at Mount Sinai as Assistant Professor in Psychiatry. I previously served as an inpatient psychiatrist for the New York Office of Mental Health at Rockland Psychiatric Center, Orangeburg, NY. My qualifications include a Bachelor of Medicine and Bachelor of Surgery (MBBS) from St George's, University of London, a Doctorate in Philosophy (Ph.D.) in Neurogenetics from Imperial College London. I also hold a Master's degree (M.Sc.) in Neuroscience and a Bachelor's degree (B.Sc.) in Biochemistry, both from the University of Manchester.  I completed my residency training at the Icahn School of Medicine at Mount Sinai in New York where I served as Chief Resident for Research. I also received the Resident of the Year award from the James J Peters VA Medical Center in New York.  My research work has been published in journals and peer reviewed textbooks on topics pertaining to psychiatry and clinical neuroscience.

KENNEDY 000002
**EXHIBIT 06 - Page 58**

During my time as a state psychiatrist and as an inpatient psychiatrist at Mount Sinai, I have testified in numerous cases regarding petitions for release and treatment over objection. In my private practice I have served as a consulting expert witness in legal cases.

A copy of my current curriculum vitae is attached to this report as Appendix A.

I have been retained as an expert witness by Shegerian & Associates to provide an evaluation of Alex Villanueva for emotional distress.

My rate of compensation is $750 per hour for all preparation work and $1100 per hour for deposition and testifying in court.

## II. Methodology

The psychiatric evaluation was conducted on 3/20/2025.  The methodology included:

- A comprehensive clinical interview with Alex Villanueva over Zoom lasting approximately 1 ½ hours.
- Review of records:
    - Medical records from the office of Dr. Mary Wahbah MD
    - Plaintiff deposition 02-28-25
- Collateral interview with Vivian Villanueva over Zoom.
- Collateral interview with JJ Villanueva by telephone.

## III. Statement of Non-Confidentiality

Mr. Villanueva was informed today's independent medical examination (IME) was to evaluate conditions pertinent to the claim in question, and to answer the client's questions in a report; hence information provided would not be confidential. He was further informed the IME would not

KENNEDY 000003
**EXHIBIT 06 - Page 59**

constitute a comprehensive medical examination, provide advice or treatment, substitute for evaluation and treatment by his own physician(s), or establish a patient-physician relationship.


## IV. Background Information

Alejandro (Alex) Villanueva is a 62yo male, domiciled with wife, a former Sheriff, no past psychiatric history, past medical history of melanoma, R total knee replacement, esophagitis, hyperlipidemia,  allergies to penicillin and erythromycin derivatives.

Born in Chicago, Alex and his family moved to Rochester, NY when he was small and lived there until he was 9. The family moved to Puerto Rico and Alex stayed there until college. He initially attended University of Puerto Rico, Miami West Campus for 2 years prior to joining the air force in 1983. During this period, he was stationed in San Bernadino, Nellis and Pope bases but was not deployed overseas and was not in an active combat zone. Alex has three brothers and two sisters. Hs eldest brother lives in Atlanta and works for the US Center for Disease Control & Prevention (CDC). His elder sister is a retired teacher in Florida. His older brother is a retired Commander in Coast Guard in Puerto Rico. His younger brother is CMO for tech firm in Taiwan.

Alex has one son who currently serves as deputy Sheriff. Alex's Mother died in 1989 and his Father died in 2015.

Alex attended San Bernadino Valley College, Cal Poly Pomona, Excelsior and Cal. State Northridge. He was awarded his Bachelors in Liberal Studies from Excelsior University, his Masters from Cal State Northridge and Doctorate in Public Administration from University of La Verne.

Alex joined the Los Angeles County Sheriff's department in 1986 as a deputy trainee. He was activated by the National Guard to Fort Sill, OK, training in the artillery, and returned in October 1990. In February 1991 he was assigned to East LA patrol station. In 1997 he was assigned as a staff instructor at the academy until December 2000.  After being promoted to Sergeant he was transferred to Lennox Station. In 2004 he transferred to Carson station and then on to Community College Bureau. He returned to the Advanced Officer Training Unit in February 2007 and

Villanueva v LA County                    Expert Witness Report                    Dr. Nigel Kennedy

remained there until being promoted to Lieutenant in 2011 and transferring to Century Regional Detention Facility (CRDF), where he remained until May 2013. He then transferred to Pico Rivera where he remined until retirement. Subsequently, Alex Villanueva was elected Sheriff in November 2018, taking office in December of that year.


## V. Psychiatric Interview

Alex Villanueva remained calm throughout the interview.  He describes having to "be on alert" when he is in public, citing a history of direct threats to himself and his family. He also describes being recognized and secretly filmed by strangers when he is in public places. He maintains a calm demeanor when describing these events. He denies feeling compelled to avoid public spaces or social situations and remains willing to talk to members of the public.

Through the course of the interview, Alex's reality testing remains intact. He describes situations with examples and evidence which is easily corroborated by others.  He expresses frustration at "the narrative" of articles written about him in the press, the LA Times in particular, which he feels do not evenly represent him.  However, he at no point demonstrates paranoid ideation or delusional thought.

He states that the worst stressors he has endured have been death threats made to himself and his family. He also describes an incident in which his name and home address were written on a banner placed across the freeway.

He denies any past history of depressive episodes. He reports that at the present time he sometimes feels 'low", but he denies anergia, amotivation or anhedonia, suggestive of major depressive disorder, and he denies that these feelings have ever impeded his social or occupational functioning. It is possible that he minimizes these symptoms on interview.

Alex reports appropriate levels of worry about specific circumstances and reacts appropriately to potential dangers. He denies any history of panic attacks.

KENNEDY 000005
**EXHIBIT 06 - Page 61**

Alex describes a history of poor quality sleep over the past 3 years, characterized by waking in the night unable to return to sleep due to ruminative thought. This is corroborated by his wife who notes that often when she wakes in the night, she observes her husband to be lying awake, "thinking about things". These symptoms are chronic but appear to have worsened in the past 3 years.

He describes exercising several times per week, either in the gym or at home. Frequently walks the dog. Reports a varied, healthy diet. Reports occasional, rare alcohol use. Denies any other substance use.

Gives a history of being exposed to traumatic experiences through the line of duty. Denies any intrusive thoughts. Denies any dissociative symptoms.

No safety concerns were elicited in the session. Alex denied suicidal and homicidal ideation at the time of interview and denied any history of deliberate self harm.

## VI. Collateral History

### A. Collateral History from Vivian Villanueva

Mrs. Vivian Villanueva describes her husband, Alex, as experiencing visible signs of stress over the last "2-3years", impacting his sleep making him visibly sad. She reports that reading articles written about him in the press and comments on social media is a specific trigger for him.

She describes that in these situations her husband will appear "very quiet". She describes her husband to be "very insightful" and he does not demonstrate emotional outbursts or anger and she finds him to "show a lot of strength and resilience" despite the emotional toll these events have taken on him. Observing Alex in his private moments, she describes him as "hurting inside right now" and describes his personality as "more subdued" than at his baseline. Mrs. Villanueva stated she has never had safety concerns about her husband being a danger to himself or others. She has not found him to be paranoid. She reports that he has been vigilant to potential threats and describes an incident in which an individual was arrested after making threats of violence towards her and

KENNEDY 000006

**EXHIBIT 06 - Page 62**

her grandchildren.  Mrs. Villanueva reports that she herself has developed migraines and stomach issues since the election in response to these events.

### B. Collateral History from JJ Villanueva

JJ stated that his Father, Alex, had "dedicated his whole life to his career" and was always "trying to help people and improve things".  JJ described Alex as "a very stoic individual".

JJ reported a change in his Father's demeanor over the past few years, describing him as "quiet" and this being different to his usual happy, funny personality at baseline. He reports his father to appear resilient outwardly, continuing to fulfil his responsibilities but is aware of the emotional distress he is experiencing.  JJ cites the events surrounding the Do Not Rehire order as a trigger for these changes. "His credibility goes a long way and that has been taken away from him."

JJ denied any safety concerns. Stated that his father continues to cope by working hard for the health and wellbeing of the officers previously under him. He stated "in law enforcement, the best attribute you can have is to be calm. Does that mean he is happy? No."

## VII. Past Psychiatric History

Alex Villanueva has no past history of psychiatric illness. He has no history of inpatient or outpatient treatment. He has no history of taking psychiatric medications.

## VIII. Clinical Findings

### A. Mental Status Examination:

- **Appearance:** Adult male, appears stated age, casually dressed, well groomed

- **Behavior:** Comfortable at rest. Attentive. Fully engaged with interview. Polite and well related.
- **Speech:** Spontaneous, fluent, coherent speech. Tone and volume appropriate to setting. Gives appropriate responses to questions. Normal prosody.
- **Mood and Affect:** "I'm OK". Reactive. Slightly dysphoric.
- **Thought Process and Content:** Logical and linear. No paranoid ideation or delusions elicited during interview
- **Cognition:** Grossly intact. Alert and oriented.
- **Insight and Judgment:** Intact.

### B. Diagnosis

Based on a reasonable degree of medical certainty from the available information and clinical evaluation, Alex Villanueva meets criteria for an Adjustment Disorder with Mixed Anxiety and Depressed Mood (F43.32), as defined by the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, Text Revision (DSM-5-TR).

## IX. Opinion

It is my opinion that Alex Villanueva has experienced low mood and anxiety symptoms. It is my opinion that these symptoms are a direct response to psychosocial stressors and that the distress he is experiencing is disproportional to the stressors encountered.

The DSM-5-TR defines an adjustment disorder as:

"A. The development of emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within 3 months of the onset of the stressor(s).

B. These symptoms or behaviors are clinically significant, as evidenced by one or both of the following:

    1. Marked distress that is out of proportion to the severity or intensity of the stressor, taking into account the external context and the cultural factors that might influence symptom severity and presentation.

    2. Significant impairment in social, occupational, or other important areas of functioning.

KENNEDY 000008

**EXHIBIT 06 - Page 64**

Villanueva v LA County                    Expert Witness Report                    Dr. Nigel Kennedy

C. The stress-related disturbance does not meet the criteria for another mental disorder and is not merely an exacerbation of a preexisting mental disorder.

D. The symptoms do not represent normal bereavement and are not better explained by prolonged grief disorder."

Alex describes ruminative thought, sleep disturbance, feelings of sadness which are triggered specifically by events related to this case, notably articles written about him in the media and the public response to such articles on social media and in the community. Alex has received credible death threats which have led to arrests. Experiencing feelings of sadness and worry in these circumstances would be expected. However, as observed by his wife and son, Alex has marked distress due to excessive ruminative worry and persistent low mood, beyond that which would be expected in these circumstances. Alex has maintained his social and occupational functioning despite these stressors. He has no preexisting mental illness and these symptoms are not due to normal bereavement.

Alex expressed his motivation to continue to serve the public in some capacity and that being placed on a "Do Not Rehire" list has prevented this. He remains highly motivated to return to work and expresses concern that being unable to work is impacting his overall wellbeing. He stated "I'm too young to retire. If you don't work, you start to decay".

Irrespective of future prospects, Alex feels embarrassment about the Do Not Hire order and feels that this has been placed unjustly in a way that disparages his past forty years of public service. The order is public knowledge which has led to Alex being the subject of abuse, in person and online, damaging his relationship with his community. He expresses concern that there may also be retaliation against his wife and son from within the department in future. These worries are symptomatic of his condition and the external stressors are a perpetuating factor.

Alex has developed constructive coping strategies through exercise and has used his strong relationship with friends and family as an important source of support. These coping strategies have allowed him to maintain his natural resilience to stress. Despite being exposed to significant stressors through the course of his work, he did not develop symptoms of emotional distress until 3 years ago.

KENNEDY 000009
**EXHIBIT 06 - Page 65**

Villanueva v LA County                    Expert Witness Report                    Dr. Nigel Kennedy

## X. Limitations

This report is based on the information provided at the time of the evaluation. My opinion is subject to change if additional relevant information becomes available.

## XI. Conclusion

In conclusion, based on a reasonable degree of medical certainty from the available information and clinical evaluation, Alex Villanueva meets criteria for an Adjustment Disorder with Mixed Anxiety and Depressed Mood (F43.32), as defined by the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, Text Revision (DSM-5-TR).

I am available for further consultation or to provide testimony as needed.

## IX. Signature

Dr. Nigel Kennedy MB BS, PhD

Psychiatrist

KENNEDY 000010

**EXHIBIT 06 - Page 66**

APPENDIX A: CURRICULUM VITAE

Curriculum Vitae: March 2025

# Nigel Iain KENNEDY
## MBBS, PhD (DIC), MSc, BSc (Hons)

## PERSONAL INFORMATION

| | |
|---|---|
| Work address: | 116 N Robertson Blvd, #908, Los Angeles, CA, 90048 |
| Telephone: | Office:   929-505-0504 |
| | Cell:       929-434-0724 |
| Email: | nigel.kennedy@kennedypsychiatric.com |
| | nigel.kennedy@mountsinai.org |

## EDUCATION & PROFESSIONAL APPOINTMENTS

### Education

Sep 2005 – Jun 2009    **Bachelor of Medicine, Bachelor of Surgery (MB BS)**
St George's, University of London,
Cranmer Terrace, London, United Kingdom, SW17 0RE

Oct 2001 – Apr 2006    **Doctor of Philosophy (Ph. D) – Neurogenetics**
Imperial College London
University of London, London, United Kingdom, SW7 2AZ

Sep 2000 – Feb 2002    **Master of Science (M. Sc) – Neuroscience**
University of Manchester
Oxford Road, Manchester, United Kingdom, M13 9PL

Sep 1995 – Jun 1999    **Bachelor of Science (B. Sc Hons) Biochemistry**
University of Manchester
Oxford Road, Manchester M13 9PL

### Training

Jul 2014 – Jul 2018    **Residency Training in Psychiatry: Physician-Scientist Track**
Department of Psychiatry, Icahn School of Medicine at Mount Sinai
1. Gustave L. Levy Place, New York, NY 10029

| Aug 2012 – Aug 2013 | **Neurosurgery – Specialist Training Registrar Level 1** |
|---|---|
| | NHS England South West Deanery |
| | Frenchay Hospital, Bristol, United Kingdom, BS16 1LE |
| Aug 2010 – Aug 2011 | **Foundation Training Year 2 (FY2) Doctor** |
| | Central Middlesex Hospital, |
| | London, United Kingdom, NW10 7NS |
| Aug 2009 – Aug 2010 | **Foundation Training Year 1 (FY1) Doctor** |
| | West Middlesex University Hospital, |
| | London, United Kingdom, TW7 6AF |

## Academic Appointments

| May 2019 – Present | **Assistant Professor in Psychiatry** |
|---|---|
| | Department of Psychiatry |
| | Icahn School of Medicine at Mount Sinai |
| July 2018 – May 2019 | **Instructor in Psychiatry** |
| | Vagelos College of Physicians and Surgeons |
| | Columbia University in the City of New York |

## Clinical Appointments

| July 2022 – Present | **Psychiatrist in Private Practice** |
|---|---|
| | Kennedy Psychiatric PC |
| | 116 N. Robertson Blvd, #908, Los Angeles, CA, 90048 |
| May 2019 – July 2022 | **Unit Chief Psychiatrist, Mount Sinai Medical Center** |
| | Klingenstein Clinical Center, 1450 Madison Avenue, New York, NY |
| July 2018 – May 2019 | **Psychiatrist – Special Communications Unit** |
| | New York State Office of Mental Health, Rockland Psychiatric Center, |
| | 140 Old Orangeburg Road, Orangeburg NY, 10962 |

## Administrative Appointments

| May 2019 – Jul 2022 | **Unit Chief Psychiatrist, Mount Sinai Medical Center** |
|---|---|
| | Klingenstein Clinical Center, 1450 Madison Avenue, New York, NY |

As unit chief I coordinated day to day running of the unit, which involved the management of clinical staff across multiple disciplines. I acted as the primary interface between unit staff and senior medical and nursing leadership within the Mount Sinai Hospital. I held responsibilities for ensuring the unit remained in compliance with standards laid out by Joint Commission, OMH and other regulatory bodies and worked

KENNEDY 000012

**EXHIBIT 06 - Page 68**

with psychiatry leadership and risk management on specific issues affecting patients and staff. In addition, I held responsibilities for the teaching and training of medical students, residents, fellows and psychology interns, coordinating their rotations with respective schools and supervisors.

July 2017 – July 2018 **Chief Resident for Research**

Department of Psychiatry, Icahn School of Medicine at Mount Sinai

1 Gustave L. Levy Place, New York, NY 10029

As research chief, I held responsibilities for teaching and mentorship of junior research track residents, helping to identify research projects and potential supervisors. I also worked directly with the program directors in recruitment of newly qualified physician-scientists to the research and clinical tracks of the residency program.

## LICENSURE

| | |
|---|---|
| 2022 - present | **California State Medical License** |
| 2018 - present | **New York State Medical License** |
| 2018 - present | **DEA Registration (NY & CA)** |
| 2009 - present | **General Medical Council of the United Kingdom** |

## BOARD CERTIFICATION

2018            **Diplomate of the American Board of Neurology and Psychiatry (ABPN)**

## HONORS & AWARDS

Feb 2015            **James J. Peters VA Physician of the Year Awards - Resident Award**

James J. Peters VA Medical Center,

130 West Kingsbridge Road, Bronx, NY 10468

## TEACHING

**Didactic Teaching**

2019 – Present            **Neurotransmitters in Psychiatry.**

Icahn School of Medicine at Mount Sinai. 3 class course for PGY-2 Psychiatry residents

2019 – Present            **Bipolar Disorder: Diagnosis and Treatment.**

Icahn School of Medicine at Mount Sinai. 3 class course for PGY-2 Psychiatry residents

2015 – 2018            **Clinical interpretation of a Network meta-analysis: Comparative Safety and Efficacy of Antipsychotic Medication**

Icahn School of Medicine at Mount Sinai. 3 class course for PGY-2 Psychiatry residents

KENNEDY 000013

EXHIBIT 06 - Page 69

| | |
|---|---|
| 2017 | **Neuroimaging for the Study of Auditory Hallucinations** |
| | Icahn School of Medicine at Mount Sinai. Graduate school teaching for Neuroscience MS students |
| 2015 – 2018 | **Neuromodulation: A clinician's guide to Transcranial Direct Current Stimulation (tDCS) and Transcranial magnetic Stimulation (TMS)** |
| | Icahn School of Medicine at Mount Sinai. Graduate school teaching for Neuroscience MS students |
| 2016 - 2018 | **Critical appraisal of scientific literature** |
| | Icahn School of Medicine at Mount Sinai. Didactic teaching for PGY-2 Psychiatry residents |
| 2017 | **Treating Voices: Auditory Verbal Hallucinations** |
| | Icahn School of Medicine at Mount Sinai. Didactic teaching for PGY-3 Psychiatry residents |
| 2013 | **Intracerebral Bleeding: Differential Diagnosis and Management** |
| | Frenchay Hospital, UK. Teaching seminar for PGY 1 & 2 physicians |
| 2013 | **The Neurological Examination** |
| | Frenchay Hospital, UK. Teaching seminar for MS3 students |

**Educational Meetings**

| | |
|---|---|
| 2014 | **tDCS for the Treatment of Auditory Hallucinations** |
| | Icahn School of Medicine at Mount Sinai, Department of Psychiatry, Chairman's Journal Club Presentation |
| 2013 | **The Human Connectome in the Anatomy of Brain Disorders** |
| | Icahn School of Medicine at Mount Sinai, Department of Psychiatry, Chairman's Journal Club Presentation |

**Supervision**

| | |
|---|---|
| 2018 – 2022 | **Psychiatric Nurse Practitioner Supervision** |
| | Icahn School of Medicine at Mount Sinai, Department of Psychiatry |
| | Weekly teaching and daily supervision for Psychiatric Nurse Practitioners providing inpatient care. |
| 2019 – 2022 | **Medical Student Supervisor** |
| | Icahn School of Medicine at Mount Sinai, Department of Psychiatry |
| | Daily supervision and tuition for medical students from Mount Sinai. Appraisal of student presentations. Assessment of learning. Completion of end of rotation student evaluations. |
| 2018 – 2019 | **Medical Student Supervisor** |
| | Columbia University/Rockland Psychiatric Center |
| | Daily supervision and tuition for medical students from Columbia. Appraisal of student presentations. Assessment of learning. Completion of end of rotation student evaluations. |

KENNEDY 000014

EXHIBIT 06 - Page 70

## SERVICE

### Department Service

| | | |
|---|---|---|
| 2017 – 2018, 2019 – 2022 | **Educational Executive Committee** | |
| | Department of Psychiatry, Icahn School of Medicine at Mount Sinai | |
| 2019 – 2022 | **Interviewer** | |
| | Department of Psychiatry, Icahn School of Medicine at Mount Sinai | |
| | Interviews and evaluations for medical students applying to the residency program at Mount Sinai. | |

2017 – 2018        **Co-Director - Chairman's Journal Club**
                   Department of Psychiatry, Icahn School of Medicine at Mount Sinai

2017 - 2018        **Chief Resident for Research**
                   Department of Psychiatry, Icahn School of Medicine at Mount Sinai

2017 - 2018        **Telemedicine Supervision & Outreach Consulting for a Psychiatry Service in Liberia.**
                   Department of Psychiatry, Icahn School of Medicine at Mount Sinai

                   A Global Mental Health Outreach Project. Email and videoconference supervision for mental health providers at a clinic in Liberia.

2006 – 2009        **Problem Based Learning/Cased Based Learning Tutor**
                   St George's, University of London. London, United Kingdom, SW17 0RE

                   Preceptor/Faciliator for problem-based learning groups for MS1-3

### Professional Society Memberships

2014 - Present        American Psychiatric Association
2016 - Present        American Medical Association
2021 – Present        New York Academy of Sciences

## RESEARCH & SCHOLARSHIP

### Manuscript Review

2021        British Journal of Psychiatry Advances
2020        Journal of Emergency Medicine, Trauma and Acute Care.
2019        Schizophrenia Research

KENNEDY 000015

**EXHIBIT 06 - Page 71**

**Major Areas of Research Interest**

1. Neuromodulation for the treatment of psychiatric illness
2. Schizophrenia: Pathogenesis and Clinical Treatment

**Thesis**

2005    Ph. D (DIC)    Trinucleotide Repeat Expansions in the Pathogenesis of Schizophrenia

Imperial College, University of London

**Invited Lectures**

Sep 2021    **Invited Speaker, Clinical Services Panel. Symposium for Mental Health Equity.**

Morehouse School of Medicine, Kennedy-Satcher Center for Mental Health, Satcher Health Leadership Institute, Atlanta, GA

May 2018    **Seeing Voices – Transcranial Direct Current Stimulation for the Study of Auditory Hallucinations. Invited Grand Rounds.**

Department of Psychiatry. Icahn School of Medicine at Mount Sinai. New York, NY, 10029

**Presentations**

Kennedy NI, Lee WH (2016) Identification of Brain Regions Implicated in Auditory Hallucinations as Potential Targets for Neuromodulation. Poster. *6th Annual Translational and Molecular Imaging Institute (TMII) Symposium*. Icahn School of Medicine at Mount Sinai, New York, NY

Kennedy NI, Borkowski J (2010) Patient CP: Rapid Progression of Steven Johnson Syndrome. *Morbidity & Mortality Meeting: Department of Intensive Care.* Central Middlesex Hospital, London, NW10 7NS

Kennedy NI, Smith P (2007) The Role of Catechol-O-methyl Transferase (COMT) in the Pathogenesis of Schizophrenia: A Meta-analysis of Association Studies. Poster. *St. George's Undergraduate Research Day*. St George's, University of London

Kennedy NI, Morris AG. (2004) A Novel RecA-based Method for the Capture and Cloning of Large Trinucleotide Repeat Expansions. Data from Two Populations of Schizophrenia Patients. *Imperial College Young Scientist Day*. Imperial College, University of London

KENNEDY 000016

**EXHIBIT 06 - Page 72**

## Publications

Kennedy NI (2023) Neurosurgical interventions for psychiatric illness – an underutilised option in treatment? BRJPsych Advances pp. 1 – 3. doi.org/10.1192/bja.2023.4

Kennedy NI, Lee WH, Frangou S (2018) Efficacy of non-invasive brain stimulation on the symptom dimensions of schizophrenia: A meta-analysis of randomized controlled trials. Eur Psychiatry 49: 69-77. doi: 10.1016/j.eurpsy.2017.12.025

Lee WH, Frangou S, Bikson, M, Kennedy NI (2017) A Computational Assessment of Target Engagement in the Treatment of Auditory Hallucinations with Transcranial Direct Current Stimulation. Front. Psychiatry. 2018. Feb 22; 9: 48. doi 10.3389/fpsyt.2018.00048

Kennedy NI, Kopell B, Goodman WK (2017) Deep Brain Stimulation for Intractable Obsessive Compulsive Disorder.  Obsessive Compulsive Disorder: Phenomenology, Pathophysiology and Treatment. C. Pittenger (ed.) Oxford University Press. ISBN 978-0-19-022816-3

Lapidus K, Kennedy NI, Goodman WK, Kellner CH (2016) Non-Psychopharmacological Somatic Treatments. Mount Sinai Expert Guides: Psychiatry. Wiley & Sons Ltd. ISBN 978-1-118-65428-6

Nicholas AR, Scott MJ, Kennedy NI, Jones MN. (2000) Effect of grafted polyethylene glycol (PEG) on the size, encapsulation efficiency and permeability of vesicles. Biochim Biophys Acta 1463(1): 167-78

KENNEDY 000017

EXHIBIT 06 - Page 73

Dr. Nigel Kennedy Case List:


No trial or deposition testimony.

KENNEDY 000018

EXHIBIT 06 - Page 74

# EXHIBIT 7

**EXHIBIT 07 - Page 75**

```
 1                   UNITED STATES DISTRICT COURT
 2          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3
 4
 5
       ALEX VILLANUEVA,                    )
 6                                         )
                    PLAINTIFF,             )
 7                                         ) CASE NO.
                    VS.                    ) 2:24-cv-04979
 8                                         ) SVW (JCx)
       COUNTY OF LOS ANGELES, COUNTY       )
 9     OF LOS ANGELES SHERIFF'S            )
       DEPARTMENT, LOS ANGELES COUNTY      )
10     BOARD OF SUPERVISORS, COUNTY        )
       EQUITY OVERSIGHT PANEL,             )
11     LOS ANGELES COUNTY OFFICE OF        )
       INSPECTOR GENERAL, CONSTANCE        )
12     KOMOROSKI, MERCEDES CRUZ,           )
       ROBERT A. YANG, LAURA LECRIVAIN,)
13     SERGIO V. ESCOBEDO, RON             )
       KOPPERUD, ROBERT G. LUNA,           )
14     MAX-GUSTAF HUNTSMAN, ESTHER LIM,)
       AND DOES 1 TO 100, INCLUSIVE,      )
15                                         )
                    DEFENDANTS.            )
16     _____)
17
18
19
20        VIDEOTAPED DEPOSITION OF NIGEL KENNEDY, M.D., Ph.D.
21                   TUESDAY, APRIL 15, 2024
22
23
       JOB NO.  7298357
24     REPORTED BY KIMBERLY EDELEN,
       CSR. NO. 9042, CRR, RPR.
25     PAGES 1 - 103
```

Page 1

```
1      VIDEOTAPED DEPOSITION OF NIGEL KENNEDY, M.D., Ph.D.,
2      TAKEN ON BEHALF OF THE DEFENDANTS, AT 9:13 A.M. PDT,
3      TUESDAY, APRIL 15, 2024, AT 2121 AVENUE OF THE
4      STARS, SUITE 2600, LOS ANGELES, CALIFORNIA, BEFORE
5      KIMBERLY A. EDELEN, CSR NO. 9042, CRR, RPR.
6
7      APPEARANCES OF COUNSEL
8
9      FOR THE PLAINTIFF:
10                       SHEGERIAN & ASSOCIATES
                         BY:  KATE WILLIS, ESQ.
11                       11520 SAN VICENTE BOULEVARD
                         LOS ANGELES, CALIFORNIA 90049
12                       310.860.0770
                         KWILLIS@SHEGERIANLAW.COM
13
14
15     FOR THE DEFENDANTS:
16                       MILLER BARONDESS, LLP
                         BY:  BRIAN NEACH, ESQ.
17                       2121 AVENUE OF THE STARS
                         SUITE 2600
18                       LOS ANGELES, CALIFORNIA 90067
                         310.552.4400
19                       BNEACH@MILLERBARONDESS.COM
20
21
22
23     ALSO PRESENT:  TRISTAN KNUDSEN, VIDEOGRAPHER
24                    MARC COHEN
25
```

Page 2

EXHIBIT 07 - Page 77

```
 1      the emotional distress, the prognosis and          09:49:46

 2      treatment."                                        09:49:48

 3            I'm not going to belabor the point because   09:49:49

 4      right down there is -- your name is next?          09:49:52

 5         A    Yes.                                       09:49:54

 6         Q    Would you agree with me that they          09:49:55

 7      identified you to give the same exact opinions that 09:49:56

 8      were being given by Drs. Udell and Rowe?           09:49:58

 9         A    Yes.                                       09:50:02

10         Q    Okay.  Did anybody explain to you or talk  09:50:02

11      to you about the reasons why there were three      09:50:04

12      different experts giving the same opinions about   09:50:06

13      emotional distress?                                09:50:10

14         A    They did not, no.                          09:50:11

15         Q    Okay.  You read the reports of the other   09:50:12

16      two doctors.                                       09:50:18

17            Now, did they give a diagnosis of            09:50:18

18      Mr. Villanueva?                                    09:50:21

19         A    The -- Dr. Udell and Dr. Rowe, I believe,  09:50:23

20      both gave the same diagnosis as me of adjustment   09:50:28

21      disorder.                                          09:50:34

22         Q    Yeah.                                      09:50:34

23            You know Dr. Udell, right?                   09:50:35

24         A    I wouldn't say I know her.  I've spoke to  09:50:37

25      her a couple of times.                             09:50:39
```

Page 35

```
 1        Q    Okay.  Are you familiar with her        09:50:40

 2   background?                                        09:50:41

 3        A    Not hugely.  I know that she's a         09:50:42

 4   psychologist practicing in the city and runs a small   09:50:44

 5   group, but beyond that, not really.                09:50:46

 6        Q    Okay.  Do you have any reason to believe   09:50:49

 7   that she's unable to render the diagnosis that she   09:50:50

 8   gave in her report?                                09:50:52

 9        A    I have no reason to think that.          09:50:53

10        Q    And you haven't done any investigation into   09:50:55

11   Dr. Rowe's background, right?                      09:50:56

12        A    Not at all, no.                          09:50:58

13        Q    So, to your knowledge, there's nothing --   09:51:00

14   there's nothing, to your knowledge, that would -- to   09:51:02

15   your knowledge, Dr. Rowe lacks -- or isn't lacking   09:51:06

16   in the background and education, experience to      09:51:10

17   render the diagnosis that she gave, right?         09:51:13

18        A    Yeah, I have no concerns, no.            09:51:15

19        Q    To your knowledge, what are you bringing to   09:51:21

20   this case as an expert that Dr. Udell is not        09:51:24

21   bringing?                                          09:51:27

22        A    Okay.  Well, the first thing I would say   09:51:28

23   I'm a medical doctor, so I am a clinician.  I'm a   09:51:30

24   practicing psychiatrist, so my training is         09:51:34

25   different.                                         09:51:36
```

Page 36

```
 1    STATE OF CALIFORNIA        )

 2    COUNTY OF LOS ANGELES      )   ss.

 3

 4

 5

 6           I, the undersigned, hereby certify under

 7    penalty of perjury under the laws of the State of

 8    California that the foregoing testimony is true and

 9    correct.

10           Executed this _____ day of

11    _____, 20_____, at _____,

12    California.

13

14

                          _____

15

                          NIGEL KENNEDY, M.D., Ph.D.

16

17

18

19                        SIGNATURE WAIVED**

20

21

22

23

24

25

                                        Page 100
```

1    STATE OF CALIFORNIA        )

2    COUNTY OF LOS ANGELES      )    ss.

3

4        I, Kimberly A. Edelen, C.S.R. No. 9042, in and

5    for the State of California, do hereby certify:

6        That prior to being examined, the witness named

7    in the foregoing deposition was by me duly sworn to

8    testify the truth, the whole truth and nothing but

9    the truth;

10       That said deposition was taken down by me in

11   shorthand at the time and place therein named, and

12   thereafter reduced to typewriting under my

13   direction, and the same is a true, correct and

14   complete transcript of said proceedings;

15       That if the foregoing pertains to the original

16   transcript of a deposition in a Federal Case, before

17   completion of the proceedings, review of the

18   transcript { } was {X} was not requested.

19       I further certify that I am not interested in

20   the event of the action.

21       Witness my hand this April 17, 2025.

22

23

24

         KIMBERLY A. EDELEN, C.S.R. NO. 9042

25

                                        Page 101

```
 1

 2

 3                                        April 17, 2025

 4    RE: Villanueva, Alex v. County Of Los Angeles, Et Al.

 5    4/15/2025, Nigel Kennedy, M.D., Ph.D., (#7298357).

 6    The above-referenced transcript has been

 7    completed by Veritext Legal Solutions and

 8    review of the transcript is being handled as follows:

 9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10        to schedule a time to review the original transcript at

11        a Veritext office.

12    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13        Transcript - The witness should review the transcript and

14        make any necessary corrections on the errata pages included

15        below, noting the page and line number of the corrections.

16        The witness should then sign and date the errata and penalty

17        of perjury pages and return the completed pages to all

18        appearing counsel within the period of time determined at

19        the deposition or provided by the Code of Civil Procedure.

20        Contact Veritext when the sealed original is required.

21    __ Waiving the CA Code of Civil Procedure per Stipulation of

22        Counsel - Original transcript to be released for signature

23        as determined at the deposition.

24    XX Signature Waived - Reading & Signature was waived at the

25        time of the deposition.

                                                    Page 102
```

1    __ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2       Transcript – The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested – Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 07 - Page 83

# EXHIBIT 8

EXHIBIT 08 - Page 84

```
 1              UNITED STATES DISTRICT COURT
 2             CENTRAL DISTRICT OF CALIFORNIA
 3                   WESTERN DIVISION
 4
 5   ALEX VILLANUEVA,                    No. 2:24-CV-04979
                                         SVW (JCx)
 6          Plaintiff,
 7        vs.
 8   COUNTY OF LOS ANGELES, COUNTY OF
     LOS ANGELES SHERIFF'S DEPARTMENT,
 9   LOS ANGELES COUNTY BOARD OF
     SUPERVISORS, COUNTY EQUITY OVERSIGHT
10   PANEL, LOS ANGELES COUNTY OFFICE OF
     INSPECTOR GENERAL, CONSTANCE
11   KOMOROSKI, MERCEDES CRUZ, ROBERT A.
     YANG, LAURA LECRIVAIN, SERGIO V.
12   ESCOBEDO, RON KOPPERUD, ROBERT G.
     LUNA, MAX-GUSTAF HUNTSMAN, ESTHER
13   LIM, and DOES 1 to 100, inclusive,
14
                Defendants.
15
     _____
16
17
18        VIDEOTAPED DEPOSITION of REBECCA UDELL
19             LOS ANGELES, CALIFORNIA
20            THURSDAY, APRIL 17, 2025
21                  VOLUME 1
22
23   Reported by
     Daryl Baucum, RPR, CRR, RMR, CSR No. 10356
24
25   Job No. 7298349,  PAGES 1 - 95
```

                                                    Page 1

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                   WESTERN DIVISION

 4

 5   ALEX VILLANUEVA,                    No. 2:24-CV-04979

                                             SVW (JCx)

 6        Plaintiff,

 7      vs.

 8   COUNTY OF LOS ANGELES, COUNTY OF

     LOS ANGELES SHERIFF'S DEPARTMENT,

 9   LOS ANGELES COUNTY BOARD OF

     SUPERVISORS, COUNTY EQUITY OVERSIGHT

10   PANEL, LOS ANGELES COUNTY OFFICE OF

     INSPECTOR GENERAL, CONSTANCE

11   KOMOROSKI, MERCEDES CRUZ, ROBERT A.

     YANG, LAURA LECRIVAIN, SERGIO V.

12   ESCOBEDO, RON KOPPERUD, ROBERT G.

     LUNA, MAX-GUSTAF HUNTSMAN, ESTHER

13   LIM, and DOES 1 to 100, inclusive,

14

         Defendants.

15

     _____

16

17

18        VIDEOTAPED DEPOSITION of REBECCA UDELL, at

19      Miller, Barondess, 2121 Avenue of the Stars,

20      Suite 2600, Los Angeles, California, beginning

21      at 9:03 a.m., and ending at 10:45 a.m., on

22      Thursday, April 17, 2025, before Daryl Baucum,

23      RPR, CRR, RMR, CSR No. 10356.

24

25
```

Page 2

EXHIBIT 08 - Page 86

```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR THE PLAINTIFF:

 4

 5            SHEGERIAN & ASSOCIATES

 6            BY:  JACOB SANANDAJI, ATTORNEY AT LAW

 7            11520 San Vicente Boulevard

 8            Los Angeles, California  90049

 9            310.860.0770

10            JSanandaji@ShegerianLaw.com

11

12

13        FOR THE DEFENDANTS:

14

15            MILLER, BARONDESS

16            BY:  BRIAN NEACH, ATTORNEY AT LAW

17            2121 Avenue of the Stars

18            Suite 2600

19            Los Angeles, California  90067

20            310.552.4400

21            BNeach@MillerBarondess.com

22

23

24

25

                                          Page 3
```

```
 1     APPEARANCES OF COUNSEL (CONTINUED):

 2


 3


 4          ALSO PRESENT:

 5               JULIO PENA, Videographer

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 4
```

```
 1    yes.
 2         Q    And then the second sentence, I agree it's
 3    not word for word because one says "she" and one
 4    says "he," but other that than that it appears to be
 5    the same, yes?
 6         A    Okay.
 7         Q    And then the next sentence says,
 8              "He will testify to whether
 9              Plaintiff has experienced emotional
10              distress as a result of
11              Plaintiff's" -- again, I think it
12              means Defendants" -- actions, the
13              cause of the emotional distress,
14              the prognosis and treatment."
15              Again, that is nearly word for word the
16    same as yours, right?
17         A    Yes.
18         Q    Do you have any reason to believe that
19    Dr. Kennedy isn't qualified to give that kind of
20    testimony.
21         A    Isn't qualified?
22         Q    Is not qualified.
23         A    No.
24         Q    In fact, you believe he is very qualified.
25         A    Absolutely.
```

Page 49

```
1       Q     And so now we can go back to page 2, the
2    section about Dr. Rowe, and it says,
3                "She is expected to offer opinions
4                under Federal Rules of Evidence
5                702, 703, 705 relating to the
6                psychological impact on defendants'
7                actions on plaintiff."
8                That's the same thing we saw --
9       A     Yes.
10      Q     -- for you and Dr. Kennedy?
11      A     Yes.
12      Q     And it says,
13               "She will testify as to whether
14               Plaintiff has experienced emotional
15               distress as a result of Plaintiff's
16               actions" -- again, I think it means
17               defendants'; it's the scourge of
18               the copy and paste -- "the cause of
19               the emotional distress, the
20               prognosis, and treatment."
21               That's the same language, yes?
22      A     Yes.
23      Q     And you have you looked at Dr. Rowe's
24   qualifications?
25      A     I don't recall looking at her
```

Page 50

EXHIBIT 08 - Page 90

```
 1    qualifications.
 2         Q    So you don't have any personal knowledge
 3    of whether she is qualified to render the opinions
 4    that are stated here, right?
 5         A    Repeat that again.  Am I qualified?
 6         Q    Let me -- I was talking about her
 7    qualifications?
 8         A    Her qualifications.
 9         Q    Let me rephrase it.
10              Do you have any reason to believe she
11    isn't qualified to give --
12         A    No.
13         Q    Let me finish my question just for the
14    record.
15              Do you have any reason to believe she is
16    not qualified to give the testimony that is
17    described here?
18         A    No.
19         Q    Have you -- I can't remember.
20              Have you read her report?
21         A    I read her report.  I don't recall where
22    she went to school or her education -- oh, yeah, I
23    don't remember.
24         Q    I'm not asking you to memorize it.  I am
25    just -- I am just wondering.  What you remember is
```

                                            Page 51

EXHIBIT 08 - Page 91

1    STATE OF _____)
                                              )  Ss.
2    COUNTY OF _____)

3

4          I, DARYL BAUCUM, a Certified Shorthand

5    Reporter of the State of California, do hereby

6    certify;

7          That the foregoing proceedings were taken

8    before me at the time and place herein set forth,

9    at which time the witness named in the foregoing

10   proceeding was placed under oath; that a record

11   of the proceedings was made by me using machine

12   shorthand which was thereafter transcribed under my

13   direction; and that the foregoing pages contain a

14   full, true and accurate record of all proceedings

15   and testimony to the best of my skill and ability.

16         I further certify that I am neither

17   financially interested in the outcome nor a relative

18   or employee of any attorney or any party to this

19   action.

20         IN WITNESS WHEREOF, I have subscribed my

21   name this 20th day of April 2025.

22

23

24   _____

     DARYL BAUCUM, CSR No. 10356

25

Page 92

1      JACOB SANANDAJI

2     JSanandaji@ShegerianLaw.com

3                         April 21, 2025

4 RE: Villanueva, Alex v. County Of Los Angeles, Et Al.

5 4/17/2025, Rebecca Udell, (#7298349).

6 The above-referenced transcript has been

7 completed by Veritext Legal Solutions and

8 review of the transcript is being handled as follows:

9 __ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext

10    to schedule a time to review the original transcript at

11    a Veritext office.

12 _XX_ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF

13    Transcript - The witness should review the transcript and

14    make any necessary corrections on the errata pages included

15    below, noting the page and line number of the corrections.

16    The witness should then sign and date the errata and penalty

17    of perjury pages and return the completed pages to all

18    appearing counsel within the period of time determined at

19    the deposition or provided by the Code of Civil Procedure.

20    Contact Veritext when the sealed original is required.

21 __ Waiving the CA Code of Civil Procedure per Stipulation of

22    Counsel - Original transcript to be released for signature

23    as determined at the deposition.

24 __ Signature Waived – Reading & Signature was waived at the

25    time of the deposition.

                                   Page 93

1    __ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**EXHIBIT 08 - Page 94**

# EXHIBIT 9

EXHIBIT 09 - Page 95

# FORMUZIS HUNT & LANNING INC

## ECONOMIC CONSULTANTS

March 20, 2025

Carney Shegerian, Esq.
Shegerian & Associates, Inc.
145 S. Spring Street, Suite 400
Los Angeles, CA 90012

**Re: Alex Villanueva v. County of Los Angeles**

Dear Mr. Shegerian,

This report is written to comply with Federal Rules of Civil Procedure Rule 26. I hereby certify that this report is a complete and accurate statement of my opinions, and the basis and reasons for them, to which I will testify under oath.

I will testify regarding the calculations in Exhibit "A" detailing the plaintiff's economic loss.

Exhibit "B" cites the sources reviewed in forming my opinions.

Exhibit "C" is my curriculum vita and qualifications.

Exhibit "D" lists other cases in which I have testified as an expert within the past four years.

The report attached as Exhibit A is subject to change given additional information.

My fee for testimony is $575.00 per hour.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

If you should have any questions, please contact our office.

Sincerely,

*Sandra White*

Sandra White
For the Firm of
Formuzis, Hunt & Lanning, Inc.

SW:rd
Enclosures

Peter Formuzis . Tamorah Hunt . Timothy Lanning . Sandra White . Justin Klinkenberg

Robert Donald . Alex Wong . Erika Hashimoto . Charmaine Lansangan . Paige Bodine

1851 E. First Street, Suite 1160, Santa Ana, CA 92705 • FHLeconomics.com • **714-542-8853** • Fax 714-836-6910

# EXHIBIT "A"

WHITE 000002
**EXHIBIT 09 - Page 97**

# FORMUZIS HUNT & LANNING INC

ECONOMIC CONSULTANTS

ECONOMIC LOSS REPORT

## ALEX VILLANUEVA

MARCH 20, 2025

Peter Formuzis · Tamorah Hunt · Timothy Lanning · Sandra White · Justin Klinkenberg
Robert Donald · Alexander Wong · Erika Hashimoto · Charmaine Labuzon · Paige Bodine · Miles Gabelich

1851 E. First Street, Suite 1160, Santa Ana, CA 92705  •  FHLeconomics.com   **714-542-8853**  •   Fax 714-836-6910

PRELIMINARY REPORT - SUBJECT TO CHANGE                           3/20/2025

**FORMUZIS, HUNT & LANNING, INC.**
SUMMARY OF THE ANALYSIS
ECONOMIC LOSSES SUSTAINED BY
**ALEX VILLANUEVA**

<u>PRESENT VALUE</u>

*OPTION A: AVERAGE POLICE CHIEF*

**I. LOSS OF PROJECTED EARNINGS**

    **A. PAST LOSS**　　　　( 05/05/2024 - 06/30/2025 )

      1. PROJECTED EARNINGS

        A. WAGES/SALARY　　　　　　　　　　　　　　$369,021

        B. HEALTH BENEFITS　　　　　　　　　　　　　　23,456

                                            $392,477

    **B. FUTURE LOSS**　　　　( 07/01/2025 - 02/28/2038 )

| | OPTION 1:<br>RETIRE AT<br>AGE 67 ON<br>02/28/2030 | OPTION 2:<br>RETIRE AT<br>AGE 72 PM<br>02/28/2035 | OPTION 3:<br>RETIRE AT<br>AGE 75 ON<br>02/28/2038 |
|---|---|---|---|
| 1. PROJECTED EARNINGS | | | |
| A. WAGES/SALARY | $1,453,301 | $2,937,316 | $3,792,924 |
| B. HEALTH BENEFITS | 92,405 | 186,763 | 241,165 |
| | $1,545,706 | $3,124,079 | $4,034,089 |

    **C. TOTAL EARNINGS LOSS (PAST AND FUTURE)**　　$1,938,183　　$3,516,556　　$4,426,566

**II. STATUTORY INTEREST**　　　　　　　　　　　　　　　$14,774

**III. TOTAL ECONOMIC LOSS (PAST AND FUTURE)**　　$1,952,957　　$3,531,330　　$4,441,340

**FORMUZIS, HUNT & LANNING, INC.**
SUMMARY OF THE ANALYSIS
ECONOMIC LOSSES SUSTAINED BY
**ALEX VILLANUEVA**

PAGE 2

<u>PRESENT VALUE</u>

*OPTION B: MTA CHIEF OF POLICE*

**I. LOSS OF PROJECTED EARNINGS**

**A. PAST LOSS**    ( 05/05/2024 - 06/30/2025 )

   1. PROJECTED EARNINGS

     A. WAGES/SALARY    $376,955

     B. HEALTH BENEFITS    23,456

          $400,411

**B. FUTURE LOSS**    ( 07/01/2025 - 02/28/2038 )

| | OPTION 1:<br>RETIRE AT<br>AGE 67 ON<br>02/28/2030 | OPTION 2:<br>RETIRE AT<br>AGE 72 PM<br>02/28/2035 | OPTION 3:<br>RETIRE AT<br>AGE 75 ON<br>02/28/2038 |
|---|---|---|---|
| 1. PROJECTED EARNINGS | | | |
| A. WAGES/SALARY | $1,670,465 | $3,376,231 | $4,359,691 |
| B. HEALTH BENEFITS | 92,405 | 186,763 | 241,165 |
| | $1,762,870 | $3,562,994 | $4,600,856 |
| **C. TOTAL EARNINGS LOSS (PAST AND FUTURE)** | $2,163,281 | $3,963,405 | $5,001,267 |

**II. STATUTORY INTEREST**    $14,798

**III. TOTAL ECONOMIC LOSS (PAST AND FUTURE)**    $2,178,079    $3,978,203    $5,016,065

WHITE 000005
**EXHIBIT 09 - Page 100**

**FORMUZIS, HUNT & LANNING, INC.**
SUMMARY OF THE ANALYSIS
ECONOMIC LOSSES SUSTAINED BY
**ALEX VILLANUEVA**

PAGE 3

**PRESENT VALUE START DATE**                                                                 07/01/2025

    DATE OF BIRTH                                                             02/25/1963

    DATE OF LOSS ONSET                                                        05/04/2024

    AGE AT DATE OF LOSS ONSET                        61.2        YEARS

    CURRENT AGE                                              62.3        YEARS

    OPTION 1: PROJECTED RETIREMENT AGE               67.0 [1]    YEARS IN       02/28/2030
    REMAINING YEARS TO RETIREMENT                     4.7        YEARS

    OPTION 2: PROJECTED RETIREMENT AGE               72.0 [1]    YEARS IN       02/28/2035
    REMAINING YEARS TO RETIREMENT                     9.7        YEARS

    OPTION 3: PROJECTED RETIREMENT AGE               75.0 [1]    YEARS IN       02/28/2038
    REMAINING YEARS TO RETIREMENT                     12.7       YEARS

FOOTNOTE:
[1] PER COUNSEL.

PRELIMINARY REPORT - SUBJECT TO CHANGE

3/20/2025

WHITE 000006
**EXHIBIT 09 - Page 101**

ALEX VILLANUEVA
PROJECTED EARNINGS

PAGE 4

IN JANUARY 2024, WHILE RUNNING FOR COUNTY SUPERVISOR, MR. VILLANUEVA LEARNED THROUGH A LOS ANGELES TIMES ARTICLE THAT HE HAD BEEN PLACED ON THE COUNTY'S "DO NOT REHIRE" LIST. IT WAS ASSUMED THAT THIS PRECLUDED HIM FROM THE ~117,000 COUNTY JOBS AND EFFECTIVELY PREVENTED HIS HIRING FOR ANY LAW ENFORCEMENT POSITION.

USING INFORMATION PROVIDED BY THE CALIFORNIA STATE CONTROLLER'S GOVERNMENT COMPENSATION IN CALIFORNIA WEBSITE, BEGINNING 60 DAYS AFTER HE LOST THE PRIMARY ELECTION FOR COUNTY SUPERVISOR, MR. VILLANUEVA'S LOSS OF EARNINGS WAS CALCULATED USING THE AVERAGE EARNINGS FOR POLICE CHIEFS OF THE 47 CITIES IN CALIFORNIA WITH POPULATIONS OVER 100,000 WHO ONLY HAD ONE POLICE CHIEF IN 2023.

BEGINNING MAY 1, 2025 A SECOND OPTION WAS CALCULATED USING THE MID-POINT SALARY FOR THE CHIEF OF POLICE AND EMERGENCY MANAGEMENT FOR THE LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY.

*OPTION A: AVERAGE POLICE CHIEF*

**1. PROJECTED PAST EARNINGS**

| TIME PERIOD | ANNUAL PERCENTAGE INCREASE [1] | ANNUAL EARNINGS | NUMBER OF MONTHS | TOTAL EARNINGS |
|---|---|---|---|---|
| 2023 | | $309,300 | | |
| 05/04/2024 - 06/30/2025 | 3.0% | $318,579 | 13.9 | $369,021 |
| | | | 13.9 | $369,021 |

**2. PRESENT VALUE OF THE PROJECTED FUTURE EARNINGS [1]**

NOMINAL GROWTH RATE:     3.00% INITIAL 10 YEARS
NOMINAL DISCOUNT RATE:   4.00% INITIAL 10 YEARS
NET DISCOUNT RATE:       1.00% THEREAFTER
NUMBER OF MONTHS:          56 OPTION 1
                          116 OPTION 2
                          152 OPTION 3

| TIME PERIOD | ANNUAL EARNINGS | MONTHLY EARNINGS |
|---|---|---|
| 07/01/2025 - 02/28/2030 | $318,579 | $26,548 |
| 03/01/2030 - 02/28/2035 | $318,579 | $26,548 |
| 03/01/2035 - 02/28/2038 | $318,579 | $26,548 |

OPTION 1: PRESENT VALUE OF RETIREMENT AT AGE 67.0 ON 02/28/2030 : $1,453,301

OPTION 2: PRESENT VALUE OF RETIREMENT AT AGE 72.0 ON 02/28/2035 : $2,937,316

OPTION 3: PRESENT VALUE OF RETIREMENT AT AGE 75.0 ON 02/28/2038 : $3,792,924

FOOTNOTE:

[1] THE U.S. BUREAU OF LABOR STATISTICS' INDEX OF HOURLY COMPENSATION. INTEREST RATES ON U.S. TREASURY SECURITIES REPORTED BY THE TREASURY DEPARTMENT AND THE CONGRESSIONAL BUDGET OFFICE SEMI-ANNUAL REPORT ON THE BUDGET AND ECONOMIC OUTLOOK.

PRELIMINARY REPORT - SUBJECT TO CHANGE

3/20/2025

WHITE 000007
**EXHIBIT 09 - Page 102**

**ALEX VILLANUEVA**
**PROJECTED EARNINGS (CONTINUED)**                                             PAGE 5

*OPTION B: MTA CHIEF OF POLICE*

**1. PROJECTED PAST EARNINGS**

| TIME PERIOD | ANNUAL PERCENTAGE INCREASE [1] | ANNUAL EARNINGS | NUMBER OF MONTHS | TOTAL EARNINGS |
|---|---|---|---|---|
| 2023 | | $309,300 | | |
| 05/04/2024 - 04/30/2025 | 3.0% | $318,579 | 11.9 | $315,924 |
| 05/01/2025 - 06/30/2025 | | $366,184 | 2.0 | 61,031 |
| | | | 13.9 | $376,955 |

**2. PRESENT VALUE OF THE PROJECTED FUTURE EARNINGS [1]**

| | | |
|---|---|---|
| NOMINAL GROWTH RATE: | 3.00% | INITIAL 10 YEARS |
| NOMINAL DISCOUNT RATE: | 4.00% | INITIAL 10 YEARS |
| NET DISCOUNT RATE: | 1.00% | THEREAFTER |
| NUMBER OF MONTHS: | 56 | OPTION 1 |
| | 116 | OPTION 2 |
| | 152 | OPTION 3 |

| TIME PERIOD | ANNUAL EARNINGS | MONTHLY EARNINGS |
|---|---|---|
| 07/01/2025 - 02/28/2030 | $366,184 | $30,515 |
| 03/01/2030 - 02/28/2035 | $366,184 | $30,515 |
| 03/01/2035 - 02/28/2038 | $366,184 | $30,515 |

OPTION 1: PRESENT VALUE OF RETIREMENT AT AGE 67.0 ON  02/28/2030      $1,670,465

OPTION 2: PRESENT VALUE OF RETIREMENT AT AGE 72.0 ON  02/28/2035  :   $3,376,231

OPTION 3: PRESENT VALUE OF RETIREMENT AT AGE 75.0 ON  02/28/2038      $4,359,691

FOOTNOTE
[1] THE U.S. BUREAU OF LABOR STATISTICS' INDEX OF HOURLY COMPENSATION. INTEREST RATES ON U.S. TREASURY SECURITIES REPORTED BY THE TREASURY DEPARTMENT AND THE CONGRESSIONAL BUDGET OFFICE SEMI-ANNUAL REPORT ON THE BUDGET AND ECONOMIC OUTLOOK.

**ALEX VILLANUEVA**
**PROJECTED HEALTH BENEFITS**

PAGE 6

USING INFORMATION PROVIDED BY THE CALIFORNIA STATE CONTROLLER'S GOVERNMENT COMPENSATION IN CALIFORNIA WEBSITE, MR. VILLANUEVA'S HEALTH BENEFITS WERE CALCULATED USING THE AVERAGE CONTRIBUTIONS TO MEDICAL, DENTAL AND VISION BENEFITS FOR POLICE CHIEFS OF THE 47 CITIES IN CALIFORNIA WITH POPULATIONS OVER 100,000 WHO ONLY HAD ONE POLICE CHIEF IN 2023. THIS FIGURE WAS ADJUSTED IN 2024 BY THE CHANGE IN THE AVERAGE EMPLOYER CONTRIBUTIONS TO EMPLOYEE HEALTH BENEFITS.

**1. PAST HEALTH BENEFIT**

| TIME PERIOD | ANNUAL PERCENTAGE INCREASE [1] | ANNUAL BENEFIT | MONTHLY BENEFIT | NUMBER OF MONTHS | TOTAL BENEFIT |
|---|---|---|---|---|---|
| 2023 | | $18,272 | | | |
| 05/04/2024 - 06/30/2025 | 10.8% | $20,250 | $1,688 | 13.9 | $23,456 |
| | | | | 13.9 | $23,456 |

**2. PRESENT VALUE OF THE FUTURE HEALTH BENEFIT [2]**

NOMINAL GROWTH RATE:     3.00% INITIAL 10 YEARS
NOMINAL DISCOUNT RATE:   4.00% INITIAL 10 YEARS
NET DISCOUNT RATE:       1.00% THEREAFTER
NUMBER OF MONTHS:      56 OPTION 1
                    116 OPTION 2
                    152 OPTION 3

| TIME PERIOD | ANNUAL BENEFIT | MONTHLY BENEFIT |
|---|---|---|
| 07/01/2025 - 02/28/2030 | $20,250 | $1,688 |
| 03/01/2030 - 02/28/2035 | $20,250 | $1,688 |
| 03/01/2035 - 02/28/2038 | $20,250 | $1,688 |

OPTION 1: PRESENT VALUE OF RETIREMENT AT AGE 67.0 ON 02/28/2030 :   $92,405

OPTION 2: PRESENT VALUE OF RETIREMENT AT AGE 72.0 ON 02/28/2035 :   $186,763

OPTION 3: PRESENT VALUE OF RETIREMENT AT AGE 75.0 ON 02/28/2038 :   $241,165

FOOTNOTES
[1] THE KAISER FAMILY FOUNDATION  EMPLOYER BENEFITS 2024 ANNUAL SURVEY
[2] THE U.S. BUREAU OF LABOR STATISTICS' INDEX OF HOURLY COMPENSATION, INTEREST RATES ON U.S. TREASURY SECURITIES REPORTED BY THE TREASURY DEPARTMENT AND THE CONGRESSIONAL BUDGET OFFICE SEMI-ANNUAL REPORT ON THE BUDGET AND ECONOMIC OUTLOOK.

PRELIMINARY REPORT - SUBJECT TO CHANGE

3/20/2025

**ALEX VILLANUEVA**
**STATUTORY INTEREST CALCULATION (PROJECTED)**                                    PAGE 7

STATUTORY INTEREST OF 7.0 PERCENT SIMPLE WAS CALCULATED BELOW ON THE PAST PROJECTED EARNINGS.

*OPTION A: AVERAGE POLICE CHIEF*

| MONTH ENDING | PROJECTED EARNINGS | HEALTH BENEFITS | MONTHLY AMOUNT | NUMBER OF MONTHS | SIMPLE INTEREST AT 7.0% |
|---|---|---|---|---|---|
| 05/31/2024 | $23,893 | $1,519 | $25,412 | 13 | $1,927 |
| 06/30/2024 | $26,548 | $1,688 | $28,236 | 12 | $1,977 |
| 07/31/2024 | $26,548 | $1,688 | $28,236 | 11 | $1,812 |
| 08/31/2024 | $26,548 | $1,688 | $28,236 | 10 | $1,647 |
| 09/30/2024 | $26,548 | $1,688 | $28,236 | 9 | $1,482 |
| 10/31/2024 | $26,548 | $1,688 | $28,236 | 8 | $1,318 |
| 11/30/2024 | $26,548 | $1,688 | $28,236 | 7 | $1,153 |
| 12/31/2024 | $26,548 | $1,688 | $28,236 | 6 | $988 |
| 01/31/2025 | $26,548 | $1,688 | $28,236 | 5 | $824 |
| 02/28/2025 | $26,548 | $1,688 | $28,236 | 4 | $659 |
| 03/31/2025 | $26,548 | $1,688 | $28,236 | 3 | $494 |
| 04/30/2025 | $26,548 | $1,688 | $28,236 | 2 | $329 |
| 05/31/2025 | $26,548 | $1,688 | $28,236 | 1 | $165 |
| 06/30/2025 | $26,548 | $1,688 | $28,236 | 0 | $0 |
| | **$369,021** | **$23,456** | **$392,477** | | $14,774 |

*OPTION B: MTA CHIEF OF POLICE*

| MONTH ENDING | PROJECTED EARNINGS | HEALTH BENEFITS | MONTHLY AMOUNT | NUMBER OF MONTHS | SIMPLE INTEREST AT 7.0% |
|---|---|---|---|---|---|
| 05/31/2024 | $23,893 | $1,519 | $25,413 | 13 | $1,927 |
| 06/30/2024 | $26,548 | $1,688 | $28,236 | 12 | $1,977 |
| 07/31/2024 | $26,548 | $1,688 | $28,236 | 11 | $1,812 |
| 08/31/2024 | $26,548 | $1,688 | $28,236 | 10 | $1,647 |
| 09/30/2024 | $26,548 | $1,688 | $28,236 | 9 | $1,482 |
| 10/31/2024 | $26,548 | $1,688 | $28,236 | 8 | $1,318 |
| 11/30/2024 | $26,548 | $1,688 | $28,236 | 7 | $1,153 |
| 12/31/2024 | $26,548 | $1,688 | $28,236 | 6 | $988 |
| 01/31/2025 | $26,548 | $1,688 | $28,236 | 5 | $824 |
| 02/28/2025 | $26,548 | $1,688 | $28,236 | 4 | $659 |
| 03/31/2025 | $26,548 | $1,688 | $28,236 | 3 | $494 |
| 04/30/2025 | $26,548 | $1,688 | $28,236 | 2 | $329 |
| 05/31/2025 | $30,515 | $1,688 | $32,203 | 1 | $188 |
| 06/30/2025 | $30,515 | $1,688 | $32,203 | 0 | $0 |
| | **$376,955** | **$23,463** | **$400,418** | | $14,798 |

WHITE 000010
**EXHIBIT 09 - Page 105**

**ALEX VILLANUEVA**
**TAX CONSEQUENCE**

PAGE 8

DUE TO THE PROGRESSIVE NATURE OF INCOME TAXES, THERE IS TYPICALLY AN ADVERSE TAX CONSEQUENCE TO RECEIVING A LUMP-SUM AWARD FOR SEVERAL YEARS OF EARNINGS IN ONE CALENDAR YEAR. NO CALCULATION OF THIS POTENTIAL ECONOMIC DAMAGE HAS BEEN MADE AT THIS TIME.

WHITE 000011
**EXHIBIT 09 - Page 106**

# EXHIBIT "B"

WHITE 000012
**EXHIBIT 09 - Page 107**

**EXHIBIT "B"**

**SOURCES AND SUPPORTING DOCUMENTS**

1. LOS ANGELES COUNTY WEBSITE: https://lacounty.gov/by-the-numbers/

2. CALIFORNIA STATE CONTROLLER'S GOVERNMENT COMPENSATION IN CALIFORNIA WEBSITE: https://publicpay.ca.gov/

3. PUBLIC SECTOR SEARCH & CONSULTING, LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, CHIEF OF POLICE & EMERGENCY MANAGEMENT.

4. HISTORICAL INTEREST RATES, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM.

5. CURRENT INTEREST RATES ON U.S. TREASURY BONDS AND NOTES BY MATURITY PER THE U.S. TREASURY DEPARTMENT.

6. CONGRESS OF THE UNITED STATES, CONGRESSIONAL BUDGET OFFICE, "THE BUDGET AND ECONOMIC OUTLOOK: 2025-2035."

7. U.S. DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, HOURLY COMPENSATION INDEX AND CONSUMER PRICE INDEX.

8. KAISER FAMILY FOUNDATION, EMPLOYER HEALTH BENEFITS, 2024 ANNUAL SURVEY.

# EXHIBIT "C"

WHITE 000014
**EXHIBIT 09 - Page 109**

# FORMUZIS HUNT & LANNING INC
## ECONOMIC CONSULTANTS

### SANDRA WHITE

#### EMPLOYMENT

Managing Senior Economist, Formuzis, Hunt and Lanning, August 2022 – Present

Senior Associate Economist, Formuzis, Hunt and Lanning, July 2012 – August 2022

Research/ Associate Economist, Formuzis, Pickersgill and Hunt, January 1998 – June 2012

Research Assistant, Formuzis, Pickersgill and Hunt, June 1997 – December 1997

#### EDUCATION

B.A., Economics: California State University, Fullerton, 1998

M.B.A., Finance: California State University, Fullerton, 2021

#### HONORS

Beta Gamma Sigma, California State University, Fullerton, 2018

#### PROFESSIONAL ASSOCIATIONS

National Association of Forensic Economists

Western Economic Association

#### FORENSIC ECONOMIC PRESENTATIONS

"Calculating Economic Damages," Economics 490, California State University, Fullerton, 2018

"Calculation of Economic Damages," Economics 490, California State University, Fullerton, 2019

"Working with an Economist," American Association of Nurse Life Care Planners Conference, March 2020

WHITE 000015
**EXHIBIT 09 - Page 110**

# EXHIBIT "D"

WHITE 000016
**EXHIBIT 09 - Page 111**

# SANDRA WHITE

## 2025

| DATE | EVENT | CASE | CASE # | ATTORNEY | LOCATION | DEPT |
|------|-------|------|--------|----------|----------|------|
| 01/29/25 | DEPOSITION | HUGYETZ V. EQUINOX HOLDINGS, INC. | 22STCV26384 | SHEGERIAN, CARNEY | VIRTUAL | |
| 02/04/25 | DEPOSITION | QUESADA, RAMON V. MARTEN TRANSPORT | 2:23-CV00311-DAD-KJN | SHEGERIAN, CARNEY | VIRTUAL | |
| 02/28/25 | DEPOSITION | DI BARI, DANIELLE V. WOODLINE PARTNERS | CGC-23-608127 | SHEGERIAN, CARNEY | VIRTUAL | |
| 03/11/25 | DEPOSITION | BARROSO, PATRICIA V. DIGNITY HEALTH; ET AL. | 56-2020-00544090-CU-WT-VTA | SHEGERIAN, CARNEY | VIRTUAL | |
| 03/17/25 | DEPOSITION | DELGADO, ERLINDA V. PETCO ANIMAL SUPPLIES, ET AL. | 23STCV09207 | SHEGERIAN, CARNEY | VIRTUAL | |
| 03/19/25 | DEPOSITION | LINSKEY, MARK V. REGENTS OF THE UNIVERSITY OF CALIFORNIA | 30-2020-01147285-CU-OE-CJC | QUIGLEY, MARK | VIRTUAL | |

WHITE 000017

EXHIBIT 09 - Page 112

# SANDRA WHITE

## 2024

| DATE | EVENT | CASE | CASE # | ATTORNEY | LOCATION | DEPT |
|------|-------|------|--------|----------|----------|------|
| 02/14/24 | DEPOSITION | KHOURY, MARIA V. HALPIN, ET AL. | 19CIV03994 | LEONARDO, MARK | VIRTUAL | |
| 02/26/24 | DEPOSITION | PARRISH, SEQUOIA V. GEI | RG19007369 | SHEGERIAN, CARNEY | VIRTUAL | |
| 03/04/24 | DEPOSITION | PINTER-BROWN, LAUREN (M.D.) V. REGENTS OF THE UNIVERSITY O | BC624838 | SHEGERIAN, CARNEY | VIRTUAL | |
| 03/20/24 | DEPOSITION | SERAFIN, JONATHAN V. THE REGENTS OF THE UNIVERSITY OF CALI | 19STCV23159 | COLLINS, WILL | VIRTUAL | |
| 04/08/24 | TESTIMONY | PINTER-BROWN, LAUREN (M.D.) V. REGENTS OF THE UNIVERSITY O | BC624838 | SHEGERIAN, CARNEY | LOS ANGELES | 72 |
| 04/16/24 | DEPOSITION | RISK, ANDREW V. UNITED AIRLINES | 22STCV37268 | SHEGERIAN, CARNEY | IRVINE | |
| 04/17/24 | DEPOSITION | SAKELLIS V. CEDARS SINAI MEDICAL CENTER, ET AL. | BC653918 | SHEGERIAN, CARNEY | VIRTUAL | |
| 04/30/24 | DEPOSITION | TRINITY, FIONA V. LIFE INSURANCE COMPANY OF NORTH AMERICA, | 20STCV10051 | SHEGERIAN, CARNEY | VIRTUAL | |
| 05/02/24 | DEPOSITION | SHAATH, NADA V. LAUSD | 21STCV22706 | KEARNS, TIMOTHY | VIRTUAL | |
| 05/08/24 | TESTIMONY | SCIPIONE, PABLO V. KINKISHARYO | MC027686 | PARRIS, KHAIL | LOS ANGELES | 4 |
| 06/25/24 | DEPOSITION | FISHER, LYNETTE V. GRANITE ROCK COMPANY | 22CV399529 | DANOFF, JESSE | VIRTUAL | |
| 07/17/24 | DEPOSITION | VALENTINES, ADRIANA V. DEDICATION AND EVERLASTING LOVE TO | 21STCV01322 | NALBANDYAN, JACOB | VIRTUAL | |
| 07/22/24 | DEPOSITION | TESLER, SHARON V. UNITED AIRLINES | 22-CIV-05205 | SHEGERIAN, CARNEY | VIRTUAL | |
| 08/13/24 | DEPOSITION | X.M., A MINOR V. GONGCO FOODS | CVRI2304396 | RUDORFER, DAVID | VIRTUAL | |
| 08/26/24 | TESTIMONY | FELD, DANIEL V. ROMY FRANK, SOULSTICE, INC., ET AL. | 37-2020-00024406-CU-PO-CTL | MORRIS, SHAWN | SAN DIEGO | C-64 |
| 09/13/24 | TESTIMONY | SHAATH, NADA V. LAUSD | 21STCV22706 | KEARNS, TIMOTHY | LOS ANGELES | 47 |
| 09/18/24 | TESTIMONY | X.M., A MINOR V. GONGCO FOODS | CVRI2304396 | RUDORFER, DAVID | VIRTUAL | |
| 12/10/24 | DEPOSITION | LOO, MILDRED & FRED V. COSTCO WHOLESALE CORP. | 24-CIV-02119 | ROSE, VALERIE | VIRTUAL | |
| 12/16/24 | DEPOSITION | RAYMUNDO-LAZARO, ERNESTO V. AUTOZONE OPERATIONS | A-23-870727-C | RAVIPUDI, RAHUL | VIRTUAL | |

WHITE 000018

EXHIBIT 09 - Page 113

# SANDRA WHITE

## 2023

| DATE | EVENT | CASE | CASE # | ATTORNEY | LOCATION | DEPT |
|------|-------|------|--------|----------|----------|------|
| 01/06/23 | DEPOSITION | LOPEZ ESPARZA, VICTOR V. GREYHOUND LINES | 19STCV42769 | JOY, MATTHEW | VIRTUAL | |
| 01/17/23 | DEPOSITION | SLAUGHTER, BRYSON V. KAISER | ARB16960 | DENOVE, JOHN | VIRTUAL | |
| 01/23/23 | ARBITRATION | SLAUGHTER, BRYSON V. KAISER | ARB16960 | DENOVE, JOHN | VIRTUAL | |
| 03/16/23 | DEPOSITION | STEINHAUSER, MARSHA V. HICKERSON | BC710849 | CARASSO, KIM | VIRTUAL | |
| 04/28/23 | TESTIMONY | STEINHAUSER, MARSHA V. HICKERSON | BC710849 | CARASSO, KIM | TORRANCE | |
| 05/25/23 | DEPOSITION | CONTRERAS, PRESCILIANO V. KELLY PIPE CO., LLC, ET AL. | 21STCV17933 | SHEGERIAN, CARNEY | VIRTUAL | |
| 05/26/23 | DEPOSITION | FITZPATRICK, LIDA V. BARSTOW TOWING, INC., ET AL. | CIVSB2029064 | TELLER, JONATHAN COREY | VIRTUAL | |
| 06/15/23 | TESTIMONY | CONTRERAS, PRESCILIANO V. KELLY PIPE CO., LLC, ET AL. | 21STCV17933 | SHEGERIAN, CARNEY | LOS ANGELES | |
| 06/16/23 | DEPOSITION | GAMBOA, DAVID | CVMV2200078 | KIMES, SHAPLEIGH | VIRTUAL | |
| 06/26/23 | ARBITRATION | GAMBOA, DAVID | CVMV2200078 | KIMES, SHAPLEIGH | SANTA ANA | |
| 08/04/23 | DEPOSITION | FELD, DANIEL V. ROMY FRANK, SOULSTICE, INC., ET AL. | 37-2020-00024406-CU-PO-CTL | MORRIS, SHAWN | VIRTUAL | |
| 08/08/23 | DEPOSITION | CORTEZ, SANDRA V. OMNI HOTELS & RESORTS, ET AL. | 20STCV20883 | SHEGERIAN, CARNEY | VIRTUAL | |
| 09/08/23 | DEPOSITION | CORTEZ, SANDRA V. OMNI HOTELS & RESORTS, ET AL. | 20STCV20883 | SHEGERIAN, CARNEY | VIRTUAL | |
| 10/23/23 | ARBITRATION | CORTEZ, SANDRA V. OMNI HOTELS & RESORTS, ET AL. | 20STCV20883 | SHEGERIAN, CARNEY | LOS ANGELES | |
| 10/25/23 | DEPOSITION | ARNOLD, KEVIN LATRICE V. GENARO FRANK DUARTE; LAZER SPOT | RIC2001799 | TELLER, JONATHAN COREY | VIRTUAL | |
| 11/02/23 | DEPOSITION | MARIACA, JOSE AND MONIQUE CRUZ V. BNSF RAILWAY COMPANY; | 21STCV09377 | KATNIK, KURT | VIRTUAL | |

WHITE 000019

EXHIBIT 09 - Page 114

## SANDRA WHITE

### 2022

| DATE | EVENT | CASE | CASE # | ATTORNEY | LOCATION | DEPT |
|------|-------|------|--------|----------|----------|------|
| 08/03/22 | DEPOSITION | VIVANCO V. ABM INDUSTRY GROUP | BC706752 | RUTTENBERG, KENNETH | VIRTUAL | |
| 12/19/22 | DEPOSITION | MIRZA, GAYNETH V. TRADER VIC'S, ET AL. | 22CV006445 | ROSE, VALERIE N. | VIRTUAL | |

WHITE 000020

EXHIBIT 09 - Page 115

# EXHIBIT 10

EXHIBIT 10 - Page 116

1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                  WESTERN DIVISION

4

5    ALEX VILLANUEVA,                    No. 2:24-CV-04979
                                              SVW (JCx)

6           Plaintiff,

7        vs.

8    COUNTY OF LOS ANGELES, COUNTY OF
     LOS ANGELES SHERIFF'S DEPARTMENT,

9    LOS ANGELES COUNTY BOARD OF
     SUPERVISORS, COUNTY EQUITY OVERSIGHT

10   PANEL, LOS ANGELES COUNTY OFFICE OF
     INSPECTOR GENERAL, CONSTANCE

11   KOMOROSKI, MERCEDES CRUZ, ROBERT A.
     YANG, LAURA LECRIVAIN, SERGIO V.

12   ESCOBEDO, RON KOPPERUD, ROBERT G.
     LUNA, MAX-GUSTAF HUNTSMAN, ESTHER

13   LIM, and DOES 1 to 100, inclusive,

14

           Defendants.

15

     _____

16

17

18       VIDEOTAPED DEPOSITION of SANDRA WHITE

19            LOS ANGELES, CALIFORNIA

20           WEDNESDAY, APRIL 16, 2025

21                  VOLUME 1

22

23   Reported by
     Daryl Baucum, RPR, CRR, RMR, CSR No. 10356

24

25   Job No. 7298348,  PAGES 1 - 63

                                              Page 1

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                  WESTERN DIVISION

 4

 5    ALEX VILLANUEVA,                    No. 2:24-CV-04979

                                          SVW (JCx)

 6          Plaintiff,

 7         vs.

 8    COUNTY OF LOS ANGELES, COUNTY OF

      LOS ANGELES SHERIFF'S DEPARTMENT,

 9    LOS ANGELES COUNTY BOARD OF

      SUPERVISORS, COUNTY EQUITY OVERSIGHT

10    PANEL, LOS ANGELES COUNTY OFFICE OF

      INSPECTOR GENERAL, CONSTANCE

11    KOMOROSKI, MERCEDES CRUZ, ROBERT A.

      YANG, LAURA LECRIVAIN, SERGIO V.

12    ESCOBEDO, RON KOPPERUD, ROBERT G.

      LUNA, MAX-GUSTAF HUNTSMAN, ESTHER

13    LIM, and DOES 1 to 100, inclusive,

14

             Defendants.

15

      _____

16

17

18          VIDEOTAPED DEPOSITION of SANDRA WHITE, at

19       Miller, Barondess, 2121 Avenue of the Stars,

20       Suite 2600, Los Angeles, California, beginning

21       at 9:03 a.m., and ending at 10:14 a.m., on

22       Wednesday, April 16, 2025, before Daryl Baucum,

23       RPR, CRR, RMR, CSR No. 10356.

24

25

                                                Page 2
```

```
 1   APPEARANCES OF COUNSEL:

 2

 3        FOR THE PLAINTIFF:

 4

 5             SHEGERIAN & ASSOCIATES

 6             BY:  ALEEN SOREJIAN, ATTORNEY AT LAW

 7             11520 San Vicente Boulevard

 8             Los Angeles, California  90049

 9             310.860.0770

10             ASorejian@ShegerianLaw.com

11

12

13        FOR THE DEFENDANTS:

14

15             MILLER, BARONDESS

16             BY:  BRIAN NEACH, ATTORNEY AT LAW.

17             2121 Avenue of the Stars

18             Suite 2600

19             Los Angeles, California  90067

20             310.552.4400

21             BNeach@MillerBarondess.com

22

23

24

25
```

Page 3

1     APPEARANCES OF COUNSEL (CONTINUED):

2

3

4          ALSO PRESENT:

5                TRISTAN KNUDSON, Videographer

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                            Page 4

```
 1        A    Not that I am aware of.

 2        Q    So in terms of -- I mean just we will look

 3   at your report in a little more detail, not a whole

 4   lot, but you have one scenario where it's based upon

 5   he lost earnings from being a chief of particular

 6   kinds of cities, right?

 7        A    Yes.

 8        Q    Police chiefs of particular cities, right?

 9        A    Yes.

10        Q    And then there is option B which is the

11   MTA job loss, correct?

12        A    Correct.

13        Q    And do you do analysis to determine, for

14   example, the average retirement age of somebody who

15   serves in that MTA role that he was applying for?

16        A    No.

17        Q    Did you do any analysis of the average

18   retirement ages of police chiefs in the cities that

19   you used for your analysis?

20        A    No.

21        Q    You were just asked to assume that age,

22   right?

23        A    Correct.

24        Q    And you have never talked to

25   Mr. Villanueva, so you don't have any knowledge from
```

Page 40

```
 1    him about his retirement plans, right?
 2         A    Correct.  My understanding was he liked
 3    working and wanted to keep working.
 4         Q    Right.  You were told that, right?
 5         A    Yes.
```

```
 6         Q    And then the next -- there is the third
 7    note in this -- in the conversation with Mr. DiBona
 8    on March 18 says,
 9              "We have pulled the average
10              earnings for police chiefs in
11              California in 2023.  Is it okay."
12              Is that your question to him?
13         A    Well, it continues on the next sentence --
14    or the next line,
15              "Is it okay to use cities with a
16              population over 100,000 people?"
17              And he said yes.
18         Q    This is just -- okay.
19              So this two -- two lines is your questions
20    to him.
21         A    Correct.
22         Q    Or maybe one question but two concepts.
23         A    Yes.
24         Q    And then why did you ask about 100,000 --
25    populations of 100,000 as opposed to any other city?
```

                                        Page 41

```
 1                "Plaintiff's deposition?  Will

 2                check with attorney regarding

 3                sending me his deposition."

 4                That is you were calling Iris to request a

 5      deposition of Mr. Villanueva?

 6           A    Yes, I was asking if they wanted me to

 7      review his deposition as I had not yet received it.

 8           Q    Had you requested it?

 9           A    I was just asking if they would want me to

10      review it and they -- when I spoke to Mr. DiBona

11      yesterday, he said if they didn't send it to me, I

12      didn't need to review it.

13           Q    When you spoke to him yesterday?

14           A    Yes.  That is not on here.

15           Q    So you have never received the deposition

16      of Mr. Villanueva.

17           A    Correct.

18           Q    Excuse me.  Must be getting near

19      lunchtime.

20                No, it's not anywhere near lunch time.

21                "They will be producing my file next

22      week."

23                So you have -- you haven't reviewed any

24      depositions in this case, right?

25           A    Correct.
```

Page 48

1   STATE OF _____)
                                             )  Ss.
2   COUNTY OF _____)

3

4            I, DARYL BAUCUM, a Certified Shorthand

5   Reporter of the State of California, do hereby

6   certify;

7            That the foregoing proceedings were taken

8   before me at the time and place herein set forth,

9   at which time the witness named in the foregoing

10  proceeding was placed under oath; that a record

11  of the proceedings was made by me using machine

12  shorthand which was thereafter transcribed under my

13  direction; and that the foregoing pages contain a

14  full, true and accurate record of all proceedings

15  and testimony to the best of my skill and ability.

16           I further certify that I am neither

17  financially interested in the outcome nor a relative

18  or employee of any attorney or any party to this

19  action.

20           IN WITNESS WHEREOF, I have subscribed my

21  name this 18th day of April 2025.

22

23

24  _____

    DARYL BAUCUM, CSR No. 10356

25

Page 60

1       ALEEN SOREJIAN

2      ASorejian@ShegerianLaw.com

3                                      April 21, 2025

4    RE: Villanueva, Alex v. County Of Los Angeles, Et Al.

5    4/16/2025, Sandra White, (#7298348).

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   _XX_ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20      Contact Veritext when the sealed original is required.

21   __ Waiving the CA Code of Civil Procedure per Stipulation of

22      Counsel - Original transcript to be released for signature

23      as determined at the deposition.

24   __ Signature Waived - Reading & Signature was waived at the

25      time of the deposition.

                                              Page 61

```
 1    __ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

 2       Transcript - The witness should review the transcript and

 3       make any necessary corrections on the errata pages included

 4       below, noting the page and line number of the corrections.

 5       The witness should then sign and date the errata and penalty

 6       of perjury pages and return the completed pages to all

 7       appearing counsel within the period of time determined at

 8       the deposition or provided by the Federal Rules.

 9    __ Federal R&S Not Requested - Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 62

# EXHIBIT 11

EXHIBIT 11 - Page 127

**ALEX VILLANUEVA**
PHONE NOTES

3/18/2025 PER IRIS MICHELSEN AT SHEGERIAN & ASSOCIATES

WILL SEND OVER INFORMATION FOR AN ALTERNATIVE SCENARIO BASED ON A JOB THAT MR.
VILLANUEVA APPLIED FOR.
FEDERAL RULE 26 PACKAGE DUE ON 03/21/2025.

3/18/2025 PER MAHRU MADJIDI AT SHEGERIAN & ASSOCIATES

DOB: 2/25/1963
MR. VILLANUEVA APPLIED FOR A CHIEF OF POLICE POSITION FOR THE MTA.
WHEN TO START LOSS? WILL DISCUSS WITH MR. DIBONA.
LET HER KNOW MR. DIBONA CAN CALL ME ON MY CELL PHONE TONIGHT.

3/18/2025 PER ALEX DIBONA AT SHEGERIAN & ASSOCIATES

START LOSS 60 DAYS AFTER 03/05/2024.
CALCULATE LOSS TO AGES 67, 72 AND 75.
WE HAVE PULLED THE AVERAGE EARNINGS FOR POLICE CHIEFS IN CALIFORNIA IN 2023. IS IT OKAY
TO USE CITIES WITH A POPULATION OVER 100,000 PEOPLE?
    YES
MR. VILLANUEVA'S CAREER IN LAW ENFORCEMENT IS OVER.
MR. VILLANUEVA DID NOT GET THE MTA JOB HE APPLIED FOR.
INCLUDE LOSS OF HEALTH BENEFITS.
WOULD LIKE FEDERAL RULE 26 PACKAGE ON 03/20/2025.

3/20/2025 PER ALEX DIBONA AT SHEGERIAN & ASSOCIATES

SHOULD WE USE AVERAGE POLICE CHIEF EARNINGS FROM 05/04/2024 UNTIL THE PLAINTIFF COULD
HAVE BECOME THE CHIEF OF POLICE AND EMERGENCY MANAGEMENT FOR THE LA COUNTY MTA IN
MAY OF 2025?
    YES
SHOULD WE USE THE AVERAGE OF THE COMPENSATION RANGE FOR THE CHIEF OF POLICE AND
EMERGENCY MANAGEMENT FOR THE LA COUNTY MTA?
    YES
ASSUME BEING ON THE "DO NOT REHIRE" LIST PRECLUDES THE PLAINTIFF FROM BEING HIRED FOR
ANY LA COUNTY JOBS.

4/10/2025 PER IRIS AT SHEGERIAN & ASSOCIATES

ARE THEY OBJECTING TO ITEMS 16 AND 17 IN THE DEPOSITION NOTICE AND THE NATIVE FORM OF
MY REPORT?
    YES
SHE WILL CHECK WITH THE ATTORNEYS REGARDING WHEN THEY WILL BE PRODUCING MY FILE AND
LET ME KNOW.

4/10/2025 PER IRIS AT SHEGERIAN & ASSOCIATES

PLAINTIFF'S DEPOSITION? WILL CHECK WITH ATTORNEY REGARDING SENDING ME HIS DEPOSITION.
THEY WILL BE PRODUCING MY FILE NEXT WEEK.



EXHIBIT
4

WHITE 000050

EXHIBIT 11 - Page 128

# EXHIBIT 12

EXHIBIT 12 - Page 129

1  Carney R. Shegerian, Esq., State Bar No. 150461
   CShegerian@Shegerianlaw.com
2  Mahru Madjidi Esq., State Bar No. 297906
   MMadjidi@Shegerianlaw.com
3  Alex DiBona. State Bar No. 265744
   ADiBona@shegerianlaw.com
4  SHEGERIAN & ASSOCIATES, INC.
   11520 San Vicente Boulevard
5  Los Angeles, California 90049
   Telephone Number:  (310) 860-0770
6  Facsimile Number:  (310) 860-0771

7  Attorneys for Plaintiff,
   ALEX VILLANUEVA

8

9              UNITED STATES DISTRICT COURT

10    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  ALEX VILLANUEVA,                    Case No.:  2:24-cv-04979 SVW (JC)

13         Plaintiff,                   **The Honorable Stephen V. Wilson and**
                                        **Magistrate Judge Jacqueline Chooljian**
14  vs.
                                        **PLAINTIFF ALEX VILLANUEVA'S**
15  COUNTY OF LOS ANGELES,              **SECOND SUPPLEMENTAL**
    COUNTY OF LOS ANGELES              **OBJECTIONS AND RESPONSES TO**
16  SHERIFF'S DEPARTMENT, LOS           **SPECIAL INTERROGATORIES**
    ANGELES COUNTY BOARD OF
17  SUPERVISORS, COUNTY EQUITY          Trial Date:    June 3, 2004
    OVERSIGHT PANEL, LOS                Action Filed:  June 13, 2024
18  ANGELES COUNTY OFFICE OF
    INSPECTOR GENERAL,
19  CONSTANCE KOMOROSKI,
    MERCEDES CRUZ, ROBERTA
20  YANG, LAURA LECRIVAIN,
    SERGIO V. ESCOBEDO, RON
21  KOPPERUD, ROBERT G. LUNA,
    MAX-GUSTAF HUNTSMAN,
22  ESTHER LIM, and DOES 1 to 100
    inclusive,
23
           Defendants.
24

25

26

27

28

---

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 130**

**INTERROGATORY NO. 1**

Describe each and every occasion, including the date, subject matter, and identity of the individuals present, where you discussed any alleged PROTECTED ACTIVITY with a member of the Los Angeles County Board of Supervisors. As used in these Interrogatories, PROTECTED ACTIVITY means the "First Amendment Activities" alleged in Paragraphs 11–13 of Your First Amended Complaint.

**RESPONSE:**

Plaintiff objects that this special interrogatory is premature, overbroad, burdensome, call for attorney work product/attorney client privilege information and calls for information outside of Plaintiff's personal knowledge. Plaintiff further objects that this interrogatory is phrased in a manner to circumvent the limit of 25 interrogatories allowed, including subparts, under the FRCP. Subject to and without waiving these objections, Plaintiff on or around July 12, 2022, sent a letter to the entire Board of Supervisors stating in part that Ballot Measure A would "allow corrupt Board members to intimidate sheriffs from carrying out their duties to investigate crime" and that the measure was unconstitutional and illegal. Villanueva's re-election campaign the prior week gave a public statement that the Board of Supervisors had "no business" seeking authority to remove a Sherriff.

On or around February 10, 2020, Plaintiff, through the Los Angeles County's Sherrif's office emailed Ballotpedia regarding Ballot Measure R. "Since the Board of Supervisors has already spent over million dollars suing itself and their own sheriff, Measure R will open the floodgates for many more ill-advised lawsuits designed to seek documents that are not legally available for public release. This is simply weaponizing oversight as a way to politically bash the LASD. ... The Board of Supervisors, the Inspector General and the Civilian Oversight Commission would better serve the community by working collaboratively with the Sheriff's Department, not against us, as we work tirelessly

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 131

1    for a safer Los Angeles County."

2         On or around July 22, 2020, Plaintiff stated on social media a warning that if the

3    Ballot Measure J passes, the measure would lead to de facto cuts to law enforcement

4    budgets, resulting in patrol station closures, officer layoffs, and a dystopian future in which

5    the streets of LA would look "like a scene from Mad Max." On or around August 5, 2020,

6    Villanueva public stated has said that while he supports providing mental health and

7    substance abuse programs, the proposal is "actually out to defund law enforcement."

8         On or around November 29, 2021, Villanueva sent a letter to the entire Board of

9    Supervisors stating that the Los Angeles Sherrif's Department would not use Fulgent

10    Genetics Corporation because the DNA data obtained is not guaranteed and will likely be

11    shared with the Republic of China.

12         On or around October 21, 2021, Villanueva publicly stated on the most watched

13    cable news program in the country that he would not enforce the Board of Supervisors

14    vaccine mandate. Villanueva gave his reasoning that he would lose thousands of staff

15    should he enforce the mandate. Plaintiff stated: "It takes me almost a year and a half to

16    replace an entry-level worker. To replace a veteran 30-year expert in whatever capacity —

17    for example, homicide investigator — those are decades it takes to replace someone like

18    that, and you cannot quantify the impact that is on public safety. But I guarantee you,

19    homicides will go up. A lot of things will go up and response times are going to get longer

20    and longer."

21         Villanueva also directed stated the above to the board of supervisors during their

22    weekly Tuesday meetings. During the pandemic, these were held by zoom and Plaintiff

23    was given three minutes to speak like every other citizen of Los Angeles. The entire board

24    of supervisors was present as well as many members of the general public.

25         Villanueva regularly gave public statements and letters to the board of supervisors

26    and directly stated to the board of supervisors in their public meetings his opposition to

27    Ballot Measure A, R and J, fulgent and opposition to vaccine mandates. Villanueva cannot

28    recall each and every such instance and who was present. The transcripts of Board of

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 132

Supervisor Meetings are publicly available online. Plaintiff engaged in Protected Activity on the following occasions:

**12/18/2018 Transcript**

- BS: Page 42, Lines 15-19
- VS: Pages 42, Lines: 21-25
- VS: Page 43, Lines 1-5, 19-25
- BS: Page 43, Lines 7-8, 17
- VS: Page 44, Lines 1-3
- BS: Page 44, Lines 5-8
- BS: Page 85, Lines 14-18
- BS: Page 94, Lines 4-7
- BS: Page 95, Lines 13-15
- BS: Page 98, Lines 6-9
- BS: Page 98, Lines 1-2
- BS: Page 103, Lines 9-12
- BS: Page 141, Lines 24-25
- BS: Page 142, Lines 1-3

**01/08/2019**

- BS: Page 94, Lines 5-9
- BS: Page 97, Lines 5-9

01/29/2019

- BS: Page 43, Lines 6-7, 9-19
- BS: Page 44, Lines 6-12
- BS: Page 46, Lines 10-17
- BS: Page 49, 2-10
- BS: Pg. 48, Lines 5-10
- VS: pg. 48, Lines 12-13
- VS: Pg. 49, Lines 17-23
- BS: Pg. 49, Lines 24-25
- BS: Pg. 50, Lines 1-9, 11-16
- BS: Pg. 51, Lines 1-2
- VS: Pg. 51, Lines 14-25

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 133

- VS: Pg 52, Lines 1-25
- VS: Pg. 53, Lines 1-25
- VS: Pg. 54, Lines 1-25
- VS: Pg. 55, Lines 1-25
- VS: Pg.. 56, Lines 1-25
- VS: Pg. 57, Lines 1-8
- BS: Pg. 57, Lines 13-16
- VS: Pg. 57, Lines 18
- VS: Pg. 59, Lines 14-25
- VS: Pg. 60, Lines 1-25
- VS: Pg.61, Lines 1-7
- VS: Pg. 62, Lines 1-5, 14-16,
- VS: Pg. 63, Lines 4-5, 16-24
- VS: Pg. 64, Lines 6,
- BS: Pg. 66, Lines 7-12
- VS: Pg. 68, Lines 1-25
- VS: Pg. 69, Lines 1-25
- VS: Pg. 70, Lines 1-5
- BS: Pg. 71, Lines 5-6
- VS: Pg. 71, Lines 12, 18-23
- VS: Pg. 72, Lines 6-8, 12, 17, 24-25
- VS: Pg. 73, Lines 11-12, 16-23
- VS: Pg. 74, Lines 5-10, 16-17, 21-25
- VS: Pg. 75, Lines 1-7, 12-14, 20, 25
- VS: Pg. 76, Lines 12-13, 19,
- VS: Pg. 77, Lines 7-8, 14-15, 23
- VS: Pg. 78, Lines 2,6
- BS: Pg. 94, Lines 1-8, 13-19

02/12/19

- BS: Pg. 39, Lines 8-16
- BS: Pg. 40, Lines25
- BS: Pg. 45, Lines 1-12
- BS: Pg. 73, Lines 1-5

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 134**

- BS: Pg. 80, Lines 2-6
- BS: Pg. 196, Lines 11-15

03/12/19

- BS: PG.71, LINES 10-12,21-22
- VS: Pg. 71, Lines 24-25
- BS: Pg. 75, Lines 16-17
- BS: Pg. 76, Lines 8-11
- BS: Pg. 79, Lines 10-11
- VS: Pg. 79, Lines 13-25
- VS: Pg. 80, Lines 1-25
- VS: Pg. 81, Lines 1-25
- VS: Pg. 82, Lines 1-25
- VS: Pg. 83, Lines 1-25
- VS: Pgs. 84-85, Lines 1-25
- VS: Pg. 86, Lines 1-21
- BS: Pg. 86, Lines 23
- BS: Pg. 87, Lines 1-3
- VS: Pg. 87, Lines 5-25
- VS: Pg. 88, Lines 1-2, 8, 13-14,
- VS: Pg. 89, Lines 2-4
- BS: Pg. 89, Lines 14-20
- BS: Pg. 90, Lines 7-12
- VS: Pg. 91, Lines 12-13
- VS: Pg. 92, Lines 7-24
- VS: Pg. 93, Lines 1-2, 7-10, 20-24
- VS: Pg. 94, Lines 6-21
- BS: Pg. 96 Lines 9-12
- BS: Pg. 98, Lines 1-4
- VS: Pg. 98, Lines 11-12, 21-25
- BS: Pg. 99, Lines 4-5, 14-24
- VS: Pg. 99, Lines 1-2, 7-12
- BS: Pg. 100, Lines 1-5
- VS: Pg. 100, Lines 8-25

-6-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 135

- VS: Pg. 101, Lines 1-10, 15-19, 23-24
- VS: Pg. 102, Lines 1-2
- BS: Pg. 102, Lines 8-11
- BS: Pg. 103, Lines 2-13
- BS: Pg. 105, Lines 18-23
- BS: Pg. 106, Lines 6-7
- BS: Pg. 109, Lines 4-7
- BS: pg. 110, lines 25
- BS: pg. 111, lines 1-2
- VS: pg. 111, lines 4-25
- VS: pg. 112, lines 1-17, 21-25
- VS: pg. 113, lines 1-10
- VS: pg. 193: lines 5-16
- VS: Pg. 194, lines 21-25
- VS: Pg. 195, lines 1-5
- BS: Pg. 197, lines 4-8
- VS: pg. 197, lines 10-17, 21-25
- VS: pg. 198, lines 1-2, 7-8,20-25
- VS: pg. 199, lines 1-2, 10-11, 19-20, 25
- VS: Pg. 200, lines 5-10,
- BS: Pg. 215, lines 16-18, 22-25
- BS: Pg. 216, lines 1-5
- BS: pg. 217, lines 8-13
- BS: pg. 221, lines 9-10
- BS: pg 222, lines 21-23
- BS: pg 223, lines 4-5
- VS: pg. 223, lines 7-25
- VS: pg. 224 lines 1-12
- BS: pg. 224, lines 14-15
- BS: pg. 227, lines 1-2, 11-15, 25
- VS: pg. 227, lines 19-21
- VS: pg. 228, lines 2-14, 23-24
- VS: pg. 229, lines 1-2
- VS: pg. 231, lines 1-15, 22-25,

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 136**

- VS: pg. 232, lines 9
- BS: pg. 232, lines 11-14
- BS: pg. 237, lines 12-13, 17-19
- VS: pg. 237, lines 23-25
- VS: pg. 238, line 1-25
- VS: pg. 239, lines 1-7, 12-15, 22-25
- VS: pg. 240, lines 1-6, 15-25
- BS: pg. 240, lines 8-10
- VS: pg. 241, lines 1-12, 20-21
- VS: pg. 242, lines 4
- BS: pg. 244, lines 9-13
- VS: pg. 244, lines 15-25
- VS: pg. 245, lines 1-10
- BS: pg 245, lines 20-25
- BS: pg. 246, lines 12-14
- BS: pg, 247, lines 8-11
- VS: pg. 247, lines 14
- VS: pg. 248, lines 11-18

04/30/19

- BS: pg. 150, lines 6-13

06/24/19

- BS: pg. 33, lines 4-6
- BS: pg. 49, lines 8-13

07/16/19

- BS: pg. 97, lines 17-20
- BS: pg. 110, lines 17-20

08/13/19

- BS: pg. 59, lines 12-13
- BS: pg. 67, lines 22-25
- BS: pg. 68, lines 1-2, 11-12
- BS: pg. 69, line 25
- BS: pg. 70, lines 1-10

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 137

- BS: pg. 72, lines 18-23
- BS: pg. 73, lines 23-24
- BS: pg. 74, lines 1-5
- BS: pg. 76, lines 9-12
- BS: pg. 77, lines 16-24
- VS: pg. 78-83, all lines
- VS: pg. 84, lines 1-23
- BS: pg. 84, line 25
- VS: pg. 85, lines 2-5,9, 13, 17-25
- VS: pg. 86, lines 1-21
- VS: pg. 87, lines 2-25
- VS: pg. 88, lines 1-3
- BS: pg. 87, lines 5-9, 14-16
- BS: pg. 112, lines 6-7

10-01-19

- BS: pg. 66, lines 9-12
- BS: pg. 79, lines 14-16
- BS: pg. 84, lines 14-19
- BS: pg. 85, lines 2-8, 13-15, 18-21
- BS: pg 87, lines 18-21
- BS. Pg. 89, lines, 8-10
- BS: Pg. 90, lines 11-18
- BS: Pg. 91, lines 10-14,
- BS: pg. 92, lines 18-22
- BS: pg. 93, lines 1-2
- BS: pg. 95, lines 21-25
- BS: pg. 96, lines 2-6
- BS: pg. 97, lines 24-25
- BS: pg. 98, lines 1-3
- BS: pg. 99, lines 24-25
- BS: pg. 100, lines 1-4, 18-24
- BS: pg. 101, lines 1-6, 13-15
- BS: pg. 103, lines 19-22

-9-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 138

- BS: pg. 107, lines 12-18
- BS: pg. 109, lines 13-14
- BS: pg. 110, lines 6-8
- BS: pg. 113, lines 4-8, 13-25
- BS: pg. 117, lines 7-9
- BS: pg. 118, lines 15
- VS: pg. 118, lines 17-25
- VS: pg. 119, lines 1-25
- VS: pg. 120, lines 1-14
- BS: pg. 120, lines 16
- BS: pg. 123, lines 8-13
- BS: pg. 126, lines 6-13, 16-25
- BS: pg. 130, lines 22-25
- BS: pg. 131, lines 1-4

10/15/19

- BS: pg. 92, lines 12-16
- BS: pg. 93, lines 16-22
- BS: pg. 95, lines 4-7, 12-21
- BS: pg. 96, lines 1-10,17-19,
- BS: pg. 98, lines 1-7,
- BS: pg. 99, lines 13-17,
- BS: pg. 100, lines 13-17
- BS: pg. 106, lines 6-10
- BS: pg. 109, lines 20-25,
- BS: pg. 111, lines 1-9, 18-24
- BS: pg. 112, lines 5-9, 19-22
- BS: pg. 113, lines 2-8

01/21/20

- BS: pg. 63, lines 24-25,
- BS: pg. 64, lines 1-4
- BS: pg. 125, lines 5-8
- BS: pg. 164, lines 5-9, 13-15, 22-24
- BS: pg. 165, lines 1-2

-10-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 139

- BS: pg. 166, lines 24-25
- BS: pg. 167, lines 1-4

01/28/20

- BS: pg. 122, lines 20-21
- VS: pg 122, lines 23-24
- VS: pg 123, lines 4, 8-10, 14-25
- VS: pg. 124-126, all lines except 23-24 on pg. 126
- VS: pg. 127, lines 1-13, 22-23
- VS: pg. 128, lines 7-10,
- BS: pg. 128, lines 21-25
- BS: pg. 131, lines 8-12
- BS: pg. 132, lines 17-22
- BS: pg. 133, lines 6-10, 17-21
- BS: pg. 134, lines 1-7
- VS: pg. 135, lines 12-24
- BS: pg. 140, lines 2-7
- BS: pg. 141, lines 12-13
- VS: pg. 141, lines 15-25
- VS: pg. 142, lines 1-6
- BS: pg. 143, lines 1-3
- VS: pg. 143, lines 5-13
- BS: pg. 144, lines 2-24
- VS: pg. 145, lines 10-13
- BS: pg. 145, lines 15-18
- BS: pg. 147, lines 4-8
- VS: pg. 147, lines 24-25
- VS: pg. 148, lines 1-14, 19-25
- VS: pg. 149, lines 1-5
- BS: pg. 152, lines 5-9

03/04/20

- BS: Pg. 151, lines 14-18
- BS: pg. 156, lines 10-13

03/31/30

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 140

1   • BS: pg. 17, lines 15-20
2   • BS: pg. 18, lines 3-8
3   • BS: pg. 20, lines 3-13, 14-16,
4   • BS: pg. 31, lines 23-24
    • BS: pg. 32, lines 1-2, 6
5   • VS: pg. 32, lines 4, 8-25
6   • VS: pg. 33-36, all lines
7   • BS: pg. 37, lines 2-5, 7-14, 16-20, 24-25,
8   • BS: pg. 38, lines 5-16, 24-25
    • BS: pg. 39, lines 1-6, 10-16, 25
9   • BS: pg. 40, lines 1-6, 8-14, 18-21
10  • BS: pg. 41, lines 1-4, 9-16, 18-23,
11  • BS: pg. 42, lines 21-22
12  • BS: pg. 43, lines 8-13, 14-21
    • BS: pg. 44, lines 1-9, 15-21
13  • BS: pg. 45, lines 23-25
14  • BS: pg. 46, lines 1-5
15  04/28/20

16  • BS: pg. 102, lines 1-15
17  • BS: pg. 103, lines 6-13, 16-18
18  • BS: pg. 105, lines 6-8
19  • BS: pg. 109, lines 1-3
    • VS: pg. 109, lines 5-25
20  • VS: pg. 110-119
21  • BS: pg. 120, lines 2-7
22  • BS: pg. 123, lines 20-25
23  • BS: pg. 124, lines 1-13
    • BS: pg. 125, lines 19-25
24  • BS: pg 126, lines 9-11, 15-25
25  • BS: pg. 127, lines 4-23, 25
26  • BS: pg. 128, lines 1-4, 10-17, 18-25
27  • BS: pg. 129, lines 1-8, 11-14
28  06/23/20

-12-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 141

- BS: pg. 137, lines 14-16
- BS: pg. 140, lines 18-20
- BS: pg. 146, lines 16-20
- VS: pg. 146, lines 22-25
- VS: pg. 147-150, all lines
- VS: pg. 151, lines 1-5, 10, 14-15, 20,
- BS: pg. 151, lines 22-24
- BS: pg. 152, lines 3-8
- BS: pg. 162, lines 11-14
- BS: pg. 166, lines 8-11
- BS: pg. 167, lines 3-6, 10-25
- BS: pg. 168, lines 2-13

06/29/20

- BS: pg. 81, lines 11-14
- VS: pg. 81, lines 16-25
- VS: pg. 82-84, all lines
- VS: pg. 85, lines 1-14
- BS: pg. 85, lines 16-18
- BS: pg. 86, lines 9-12, 17-22
- BS: pg. 88, lines 6-8
- BS: pg. 90, lines 10-12
- BS: pg. 94, lines 16-19
- BS: pg. 95, lines 18-25
- BS: pg. 96, lines 1-7, 13-19
- BS: pg. 97, lines 23-24
- BS: pg. 98, lines 1-2, 10-19
- BS: pg. 101, lines 21-25
- BS: pg. 102, lines 1-6, 17-25
- BS: pg. 103, lines 1-4

07/07/20

- BS: Pg. 57, lines 2-5
- VS: pg. 57, lines 7-25
- VS: Pg. 58-60, all lines

-13-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 142

- VS: pg. 61, lines 4-5, 11-25
- VS: pg. 62, lines 1-18
- BS: pg. 62, lines 20-22
- BS: pg. 75, lines 1-6
- BS: pg. 84, lines 1-3
- BS: pg. 128, lines 1-20, 20-23
- BS: pg. 131, lines 17-19

07/21/20

- BS: pg. 4, lines 22-25
- BS: pg. 5, lines 1
- BS: pg. 57, lines 22-25
- VS: pg 58, lines 2-3, 7-25
- VS: pg. 59-61 all lines
- VS: pg. 62, lines 1-2
- BS: pg. 62, lines 4-5
- BS: pg. 170, lines 14-17,
- BS: pg. 172, lines 3-7
- BS: pg. 189, lines 21-25

07/28/20

- BS: pg. 56, lines 24-25
- BS: pg. 57, lines 1-2
- VS: pg. 57, lines 4-25
- VS: pg. 58-59, all lines
- BS: pg. 60, lines 7-8
- VS: pg. 60, lines 1-25
- VS: pg. 61, lines 1-4
- BS: pg. 61, lines 6-7
- BS: pg. 76, lines 11-16

08/04/20

- BS: pg. 56, lines 22-24
- VS: pg. 57, lines 1-25
- VS: pg. 58, lines 1-6,10-11, 17-18, 22-25
- VS: pg. 59, lines 7-25

-14-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 143

- VS: pg. 60, lines 1-16
- BS: pg. 60, line 18
- BS: pg. 220, lines 23-25
- BS: pg. 222, lines 2-5,

09/01/20

- BS: pg. 58, lines 24-25
- BS: pg. 59, lines 1-2
- VS: pg. 59, lines 4-25. 60-61
- BS: pg. 62, lines 6
- VS: pg. 62, lines 8-15
- BS: pg. 81, lines 5-8
- BS: pg. 97, lines 2-14
- BS: pg. 98, lines 5-8
- BS: pg. 154, lines 17-20, 25
- BS: pg. 155, lines 1-6, 9-16
- BS: pg. 158, lines 20-23
- BS: pg. 159, lines 7-10
- BS: pg. 160, lines 4-9, 12-15, 18--20

09/15/20

- BS: pg. 56, lines 9-12
- VS: pg. 56, lines 14-25
- VS: pg. 57, all lines
- VS: pg. 58, lines 1-18, 23-24
- BS: pg. 58, lines 20-21
- VS: pg. 59, lines 1-2, 11
- BS: pg. 59, lines 4-9
- BS: pg. 136, lines 11-13
- BS: pg. 137, lines 21-25
- BS: pg. 138, lines 1-6
- BS: pg. 149, lines 6-11
- BS: pg. 200, lines 3-6

10/13/20

- BS: pg. 54, lines 8-10

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 144

- VS: pg. 54, lines 12-25
- VS: pg. 55-56, all lines
- VS: pg. 57, lines 1-6, 11-13, 17-24
- BS: pg. 57, lines 8-9, 15
- BS: pg. 105, lines 5-13, 20-22
- BS: pg. 106, lines 3-8, 11-16
- BS: pg. 107, lines 2-10, 16-20,
- BS: pg. 108, lines 12-25
- BS: pg. 109, lines 10-23,
- BS: 110, lines 5-6
- BS: pg. 111, lines 22-23
- BS: pg. 112, lines 17-25

10/27/20

- BS: pg. 53, lines 17-20
- VS: pg. 53, lines 22-25
- VS: pg. 54-55, all lines
- BS: pg. 56, lines 1-3
- BS: pg. 107, lines 4-8, 15-24
- BS: pg. 110, lines 10-14
- BS: pg. 111, lines 7-20

11/10/20

- BS: pg. 53, lines 14-16
- VS: pg. 53, lines 18-25,
- VS: pg. 54-56
- BS: pg. 57, lines 2-4
- BS: pg. 151, lines 1-6
- BS: pg. 153, lines 24-25
- BS: pg. 154, lines 1-2
- BS: pg. 156, lines 10-11, 17-22
- BS: pg. 157, lines 11-14,
- BS: pg. 158, lines 7-11
- BS: pg. 159, lines 13-18
- BS: pg. 160, lines 3-13, 19-25

-16-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 145

- BS: pg. 161, lines 4-17
- BS: pg. 162, lines 8-9, 11-13, 16-20, 22-23
- BS: pg. 163, lines 3-5, 11-13, 16-18
- BS: pg. 164, lines 2-4, 7-10, 17-18
- BS: pg. 166, lines 1-5
- BS: pg. 167, lines 20-25
- BS: pg. 168, lines 2-6, 12-16, 21-25
- BS: pg.169, lines 1-5

01/05/21

- BS: pg. 85, lines 6-8

01/26/21

- BS: pg. 57, lines 7-10, 14-16,18-19
- VS: pg. 57, lines 21-22
- VS: pg. 58, lines 1, 5-25
- VS: pg. 59, all lines
- VS: pg. 60, lines 1-9
- BS: pg. 60, lines 11-12
- BS: pg. 182, lines 21-22
- BS: pg. 188, lines 5-14, 16-17
- BS: pg. 190, lines 19-21
- BS: pg. 191, lines 14-25
- BS: pg. 192, lines 1-2, 25
- BS: pg. 193, lines 1-2, 16,
- BS: pg. 194, lines 11-14
- BS: pg. 195, lines 1-12, 15-17
- BS: pg. 196, lines 1-4

03/09/21

- BS: pg. 10, lines 11-15
- BS: pg. 156, lines 8-16

04/06/21

- BS: pg. 144, lines 23-24
- BS: pg. 146, lines 2-4

-17-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 146

- BS: pg. 152, lines 9-11

05/04/21

- BS: pg. 6, lines 4=7
- VS: pg. 6, lines 14-25
- VS: pg. 7, all lines
- VS: pg. 8, lines 1-17
- BS: pg. 117, lines 7-10
- BS: pg. 121, lines 16-20
- BS: pg. 124, lines 10-12,19-25
- BS: pg. 125, lines 1-5

05/18/21

- BS: pg. 6, lines 23-24
- BS: pg 7, lines 1-2
- VS: pg, 7, lines 4-25
- VS: pg. 8, all lines,
- BS: pg. 9, lines 1
- BS: pg. 119, lines 24-25
- BS: pg. 120, lines 1-4
- BS: pg. 123, lines 18-24
- BS: pg. 126, lines 14-20
- BS: pg. 127, lines 1-3

05/19/21

- BS: pg. 41, lines 6-8
- VS: pg. 41, lines 10-25
- VS: pg. 42, all lines
- VS: pg. 43, lines 1-4

06/08/21

- BS: pg. 118, lines 10-12, 16-17, 22-24
- BS: pg. 131, lines 7-9, 16-17
- BS: pg. 132, lines 16-23
- BS: pg. 134, lines 18-23
- BS: pg. 135, lines 10-16, 21-25

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 147

- BS: pg. 186, lines 7-11, 18-25
- BS: pg. 187, lines 1-2, 7-25
- BS: pg. 188, lines 4-13, 18-22
- BS: pg. 189, lines 3-5, 16-21
- BS: pg. 191, lines 18-21, 23-25
- BS: pg. 192, lines 3-6, 23-25
- BS: pg. 195, lines 1-2
- BS: pg. 196, lines 5-11
- BS: pg. 201, lines 8-14
- BS: pg. 225, lines 10-12
- BS: pg. 226, lines 12-17

06/22/21

- BS: pg. 7, lines 1-4
- BS: pg. 56, lines 2-4
- VS: pg. 56, lines 6-25
- VS: pg. 57, lines 57
- VS: pg. 58, lines 1-2
- BS: pg. 164, lines 16-22
- BS: pg. 201, lines 6-10
- BS: pg. 203, lines 15-18
- BS: pg. 205, lines 1-4
- BS: pg. 211, lines 9-14
- BS: pg. 232, lines 5-10

07/27/21

- BS: pg. 6, lines 17-20
- VS: pg. 6, lines 22-25
- VS: pg. 7-8
- BS: 119, lines 20-23
- BS: pg. 120, lines 9-14
- BS: pg. 162, lines 5-12, 21-23
- BS: pg. 163, lines 13-17
- BS: pg. 164, lines 14-16
- BS: pg. 165, lines 12-14

-19-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 148

- BS: pg. 166, lines 8-13, 15-18
- BS: pg. 168, lines 6-10
- BS: pg. 170, lines 7-9, 18-20

08/10/21

- BS: pg. 7, lines 4-7
- VS: pg. 7, lines 9-25
- VS: pg 8, all lines
- VS: pg. 9, lines 1-5
- BS: pg. 9, lines 7-8
- BS: pg. 198, lines 7-11

09/28/21

- BS: pg. 8, lines 15-18
- VS: pg. 8, lines 20-25
- VS: pg. 9-10
- BS: pg. 10, lines 22-23
- BS: pg. 164, lines 7-13
- BS: pg. 166, lines 7-10
- BS: pg. 167, lines 6-7
- BS: pg. 169, lines 2-6
- BS: pg. 171, lines 17-19, 22-24
- BS: pg. 172, lines 1-12
- BS: pg. 218, lines 2-6
- BS: pg. 221, lines 11-18
- BS: pg. 224, lines 4-9
- BS: pg. 225, lines 20-25
- BS: pg. 226, lines 1-3
- BS: pg. 228, lines 8-10, 20-24
- BS: pg. 229, lines 1-2
- BS: pg. 230, lines 5-8
- BS: pg. 234, lines 12-16
- BS: pg. 235, lines 10-15
- BS: pg. 239, lines 1-4

12-07-21

-20-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 149

- BS: pg. 116, lines 17-19
- BS: pg. 118, lines 3-5, 14-18
- BS: pg. 119, lines 8-16
- BS: pg. 120, lines 19-22
- BS: pg. 121, lines 14-17
- BS: pg. 123, lines 14-16
- BS: pg. 125, lines 18-19
- BS: pg. 126, lines 4-7
- BS: pg. 128, lines 24-25
- BS: pg. 129, lines 1-4, 5-7
- BS: pg. 137, lines 21-25
- BS; pg. 141, lines 14-25
- BS: pg. 144, lines 16-18
- BS: pg. 152, lines 5-12
- BS: pg. 155, lines 24-24
- BS: pg. 156, lines 1-8

02/02/22

- BS: pg. 7, lines 23-24
- BS: pg. 8, lines 1-2
- VS: pg. 8, lines 4-25
- VS: pg. 9, lines 1-18
- BS: pg. 170, lines 12-17
- BS: pg. 177, lines 2-10
- BS: 179, lines 1-12
- BS: pg. 180, lines 17-23
- BS: pg. 185, lines 4-9
- BS: pg. 191, lines 15-23

02/15/22

- BS: pg. 193, lines 7-10
- BS: pg. 196, lines 22-24
- BS: pg. 197, lines 2-5
- BS: pg. 198, lines 12-14
- BS: pg. 199, lines 9-13

-21-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 150**

03/01/22

- BS: pg. 171, lines 14-16
- BS: pg. 193, lines 4-6
- BS: pg. 195, lines 12-13
- BS: pg. 201, lines 11-13, 17-23

07/12/22:

- BS: pg. 162, lines 20-25
- BS: pg. 163, lines 1-12
- BS: pg. 164, lines 7-10
- BS: pg. 165, lines 11-12, 24-25
- BS: pg. 166, lines 15-21
- BS: pg. 167, lines 6-16, 22-25
- BS: pg. 168, lines 1-5
- BS: pg. 169, lines 11-19
- BS: pg. 171, lines 19-20
- BS: pg. 172, lines 7-23
- BS: pg. 173, lines 21-25
- BS: pg. 174, lines 15-18
- BS: pg. 175, lines 2-25
- BS: pg. 176, lines 7
- BS: pg. 188, lines 16-22
- BS: pg. 190, lines 12-19
- BS: pg. 192, lines 19-23
- BS: pg. 193, lines 4-7
- BS: pg. 194, lines 13-15
- BS: pg. 196, lines 3-7
- BS: pg. 234, lines 19-23

Discovery is continuing.

**INTERROGATORY NO. 2**

Describe each and every occasion, including the date, subject matter, and identity of the individuals present, where you discussed any alleged PROTECTED ACTIVITY with

-22-

1   a member of the Los Angeles County Equity Oversight Panel.

2   **RESPONSE:**

3     Plaintiff objects that this special interrogatory is premature, overbroad, burdensome,

4   call for attorney work product/attorney client privilege information and calls for

5   information outside of Plaintiff's personal knowledge. Plaintiff further objects that this

6   interrogatory is phrased in a manner to circumvent the limit of 25 interrogatories allowed,

7   including subparts, under the FRCP. Subject to and without waiving these objections,

8   Plaintiff cannot recall any direct and/or in person communication with the Los Angeles

9   County Equity Oversight Panel but, as a public body, Plaintiff believes they were aware of

10  his public statements regarding Protected Activity as Defined in these interrogatories.

11  Plaintiff on or around July 12, 2022, sent a letter to the entire Board of Supervisors stating

12  in part that Ballot Measure A would "allow corrupt Board members to intimidate sheriffs

13  from carrying out their duties to investigate crime" and that the measure was

14  unconstitutional and illegal. Villanueva's re-election campaign gave a public statement that

15  the Board of Supervisors had "no business" seeking authority to remove a Sheriff.

16    On or around February 10, 2020, Plaintiff, through the Los Angeles County's

17  Sherrif's office emailed Ballotpedia regarding Ballot Measure R. "Since the Board of

18  Supervisors has already spent over million dollars suing itself and their own sheriff,

19  Measure R will open the floodgates for many more ill-advised lawsuits designed to seek

20  documents that are not legally available for public release. This is simply weaponizing

21  oversight as a way to politically bash the LASD. ... The Board of Supervisors, the Inspector

22  General and the Civilian Oversight Commission would better serve the community by

23  working collaboratively with the Sheriff's Department, not against us, as we work tirelessly

24  for a safer Los Angeles County."

25    On or around July 22, 2020, Plaintiff stated on social media a warning that if the

26  Ballot Measure J passes, the measure would lead to de facto cuts to law enforcement

27  budgets, resulting in patrol station closures, officer layoffs, and a dystopian future in which

28  the streets of LA would look "like a scene from Mad Max." On or around August 5, 2020,

Villanueva public stated has said that while he supports providing mental health and substance abuse programs, the proposal is actually out to defund law enforcement.

On or around November 29, 2021, Villanueva sent a letter to the Board of Supervisors stating that the Los Angeles Sherrif's Department would not use Fulgent Genetics Corporation because the DNA data obtained is not guaranteed and will likely be shared with the Republic of China.

On or around 10/21/2021 Villanueva publicly stated on the most watched cable news program in the country that he would not enforce the Board of Supervisors vaccine mandate. Villanueva gave his reasoning that he would lose thousands of staff should he enforce the mandate. Plaintiff stated: "It takes me almost a year and a half to replace an entry-level worker. To replace a veteran 30-year expert in whatever capacity — for example, homicide investigator — those are decades it takes to replace someone like that, and you cannot quantify the impact that is on public safety. But I guarantee you, homicides will go up. A lot of things will go up and response times are going to get longer and longer."

Villanueva also directed stated the above to the board of supervisors during their weekly Tuesday meetings. During the pandemic, these were held by zoom and Plaintiff was given three minutes to speak like every other citizen of Los Angeles. The entire board of supervisors was present.

Villanueva regularly gave public statements and letters to the board of supervisors and directly stated to the board of supervisors in their public meetings his opposition to Ballot Measure A, R and J, fulgent and opposition to vaccine mandates. Villanueva cannot recall each and every such instance and who was present. The transcripts of Board of Supervisor Meetings are publicly available online. Plaintiff engaged in Protected Activity on the following occasions:

**12/18/2018 Transcript**

- BS: Page 42, Lines 15-19
- VS: Pages 42, Lines: 21-25
- VS: Page 43, Lines 1-5, 19-25

- BS: Page 43, Lines 7-8, 17
- VS: Page 44, Lines 1-3
- BS: Page 44, Lines 5-8
- BS: Page 85, Lines 14-18
- BS: Page 94, Lines 4-7
- BS: Page 95, Lines 13-15
- BS: Page 98, Lines 6-9
- BS: Page 98, Lines 1-2
- BS: Page 103, Lines 9-12
- BS: Page 141, Lines 24-25
- BS: Page 142, Lines 1-3

**01/08/2019**

- BS: Page 94, Lines 5-9
- BS: Page 97, Lines 5-9

01/29/2019

- BS: Page 43, Lines 6-7, 9-19
- BS: Page 44, Lines 6-12
- BS: Page 46, Lines 10-17
- BS: Page 49, 2-10
- BS: Pg. 48, Lines 5-10
- VS: pg. 48, Lines 12-13
- VS: Pg. 49, Lines 17-23
- BS: Pg. 49, Lines 24-25
- BS: Pg. 50, Lines 1-9, 11-16
- BS: Pg. 51, Lines 1-2
- VS: Pg. 51, Lines 14-25
- VS: Pg 52, Lines 1-25
- VS: Pg. 53, Lines 1-25
- VS: Pg. 54, Lines 1-25
- VS: Pg. 55, Lines 1-25
- VS: Pg.. 56, Lines 1-25
- VS: Pg. 57, Lines 1-8
- BS: Pg. 57, Lines 13-16

-25-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 154**

- VS: Pg. 57, Lines 18
- VS: Pg. 59, Lines 14-25
- VS: Pg. 60, Lines 1-25
- VS: Pg.61, Lines 1-7
- VS: Pg. 62, Lines 1-5, 14-16,
- VS: Pg. 63, Lines 4-5, 16-24
- VS: Pg. 64, Lines 6,
- BS: Pg. 66, Lines 7-12
- VS: Pg. 68, Lines 1-25
- VS: Pg. 69, Lines 1-25
- VS: Pg. 70, Lines 1-5
- BS: Pg. 71, Lines 5-6
- VS: Pg. 71, Lines 12, 18-23
- VS: Pg. 72, Lines 6-8, 12, 17, 24-25
- VS: Pg. 73, Lines 11-12, 16-23
- VS: Pg. 74, Lines 5-10, 16-17, 21-25
- VS: Pg. 75, Lines 1-7, 12-14, 20, 25
- VS: Pg. 76, Lines 12-13, 19,
- VS: Pg. 77, Lines 7-8, 14-15, 23
- VS: Pg. 78, Lines 2,6
- BS: Pg. 94, Lines 1-8, 13-19

02/12/19

- BS: Pg. 39, Lines 8-16
- BS: Pg. 40, Lines25
- BS: Pg. 45, Lines 1-12
- BS: Pg. 73, Lines 1-5
- BS: Pg. 80, Lines 2-6
- BS: Pg. 196, Lines 11-15

03/12/19

- BS: PG.71, LINES 10-12,21-22
- VS: Pg. 71, Lines 24-25
- BS: Pg. 75, Lines 16-17
- BS: Pg. 76, Lines 8-11

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 155**

- BS: Pg. 79, Lines 10-11
- VS: Pg. 79, Lines 13-25
- VS: Pg. 80, Lines 1-25
- VS: Pg. 81, Lines 1-25
- VS: Pg. 82, Lines 1-25
- VS: Pg. 83, Lines 1-25
- VS: Pgs. 84-85, Lines 1-25
- VS: Pg. 86, Lines 1-21
- BS: Pg. 86, Lines 23
- BS: Pg. 87, Lines 1-3
- VS: Pg. 87, Lines 5-25
- VS: Pg. 88, Lines 1-2, 8, 13-14,
- VS: Pg. 89, Lines 2-4
- BS: Pg. 89, Lines 14-20
- BS: Pg. 90, Lines 7-12
- VS: Pg. 91, Lines 12-13
- VS: Pg. 92, Lines 7-24
- VS: Pg. 93, Lines 1-2, 7-10, 20-24
- VS: Pg. 94, Lines 6-21
- BS: Pg. 96 Lines 9-12
- BS: Pg. 98, Lines 1-4
- VS: Pg. 98, Lines 11-12, 21-25
- BS: Pg. 99, Lines 4-5, 14-24
- VS: Pg. 99, Lines 1-2, 7-12
- BS: Pg. 100, Lines 1-5
- VS: Pg. 100, Lines 8-25
- VS: Pg. 101, Lines 1-10, 15-19, 23-24
- VS: Pg. 102, Lines 1-2
- BS: Pg. 102, Lines 8-11
- BS: Pg. 103, Lines 2-13
- BS: Pg. 105, Lines 18-23
- BS: Pg. 106, Lines 6-7
- BS: Pg. 109, Lines 4-7
- BS: pg. 110, lines 25

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 156**

- BS: pg. 111, lines 1-2
- VS: pg. 111, lines 4-25
- VS: pg. 112, lines 1-17, 21-25
- VS: pg. 113, lines 1-10
- VS: pg. 193: lines 5-16
- VS: Pg. 194, lines 21-25
- VS: Pg. 195, lines 1-5
- BS: Pg. 197, lines 4-8
- VS: pg. 197, lines 10-17, 21-25
- VS: pg. 198, lines 1-2, 7-8,20-25
- VS: pg. 199, lines 1-2, 10-11, 19-20, 25
- VS: Pg. 200, lines 5-10,
- BS: Pg. 215, lines 16-18, 22-25
- BS: Pg. 216, lines 1-5
- BS: pg. 217, lines 8-13
- BS: pg. 221, lines 9-10
- BS: pg 222, lines 21-23
- BS: pg 223, lines 4-5
- VS: pg. 223, lines 7-25
- VS: pg. 224 lines 1-12
- BS: pg. 224, lines 14-15
- BS: pg. 227, lines 1-2, 11-15, 25
- VS: pg. 227, lines 19-21
- VS: pg. 228, lines 2-14, 23-24
- VS: pg. 229, lines 1-2
- VS: pg. 231, lines 1-15, 22-25,
- VS: pg. 232, lines 9
- BS: pg. 232, lines 11-14
- BS: pg. 237, lines 12-13, 17-19
- VS: pg. 237, lines 23-25
- VS: pg. 238, line 1-25
- VS: pg. 239, lines 1-7, 12-15, 22-25
- VS: pg. 240, lines 1-6, 15-25
- BS: pg. 240, lines 8-10

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 157**

- VS: pg. 241, lines 1-12, 20-21
- VS: pg. 242, lines 4
- BS: pg. 244, lines 9-13
- VS: pg. 244, lines 15-25
- VS: pg. 245, lines 1-10
- BS: pg 245, lines 20-25
- BS: pg. 246, lines 12-14
- BS: pg, 247, lines 8-11
- VS: pg. 247, lines 14
- VS: pg. 248, lines 11-18

04/30/19

- BS: pg. 150, lines 6-13

06/24/19

- BS: pg. 33, lines 4-6
- BS: pg. 49, lines 8-13

07/16/19

- BS: pg. 97, lines 17-20
- BS: pg. 110, lines 17-20

08/13/19

- BS: pg. 59, lines 12-13
- BS: pg. 67, lines 22-25
- BS: pg. 68, lines 1-2, 11-12
- BS: pg. 69, line 25
- BS: pg. 70, lines 1-10
- BS: pg. 72, lines 18-23
- BS: pg. 73, lines 23-24
- BS: pg. 74, lines 1-5
- BS: pg. 76, lines 9-12
- BS: pg. 77, lines 16-24
- VS: pg. 78-83, all lines
- VS: pg. 84, lines 1-23
- BS: pg. 84, line 25

-29-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 158

- VS: pg. 85, lines 2-5,9, 13, 17-25
- VS: pg. 86, lines 1-21
- VS: pg. 87, lines 2-25
- VS: pg. 88, lines 1-3
- BS: pg. 87, lines 5-9, 14-16
- BS: pg. 112, lines 6-7

10-01-19

- BS: pg. 66, lines 9-12
- BS: pg. 79, lines 14-16
- BS: pg. 84, lines 14-19
- BS: pg. 85, lines 2-8, 13-15, 18-21
- BS: pg 87, lines 18-21
- BS. Pg. 89, lines, 8-10
- BS: Pg. 90, lines 11-18
- BS: Pg. 91, lines 10-14,
- BS: pg. 92, lines 18-22
- BS: pg. 93, lines 1-2
- BS: pg. 95, lines 21-25
- BS: pg. 96, lines 2-6
- BS: pg. 97, lines 24-25
- BS: pg. 98, lines 1-3
- BS: pg. 99, lines 24-25
- BS: pg. 100, lines 1-4, 18-24
- BS: pg. 101, lines 1-6, 13-15
- BS: pg. 103, lines 19-22
- BS: pg. 107, lines 12-18
- BS: pg. 109, lines 13-14
- BS: pg. 110, lines 6-8
- BS: pg. 113, lines 4-8, 13-25
- BS: pg. 117, lines 7-9
- BS: pg. 118, lines 15
- VS: pg. 118, lines 17-25
- VS: pg. 119, lines 1-25

-30-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 159

- VS: pg. 120, lines 1-14
- BS: pg. 120, lines 16
- BS: pg. 123, lines 8-13
- BS: pg. 126, lines 6-13, 16-25
- BS: pg. 130, lines 22-25
- BS: pg. 131, lines 1-4

10/15/19

- BS: pg. 92, lines 12-16
- BS: pg. 93, lines 16-22
- BS: pg. 95, lines 4-7, 12-21
- BS: pg. 96, lines 1-10,17-19,
- BS: pg. 98, lines 1-7,
- BS: pg. 99, lines 13-17,
- BS: pg. 100, lines 13-17
- BS: pg. 106, lines 6-10
- BS: pg. 109, lines 20-25,
- BS: pg. 111, lines 1-9, 18-24
- BS: pg. 112, lines 5-9, 19-22
- BS: pg. 113, lines 2-8

01/21/20

- BS: pg. 63, lines 24-25,
- BS: pg. 64, lines 1-4
- BS: pg. 125, lines 5-8
- BS: pg. 164, lines 5-9, 13-15, 22-24
- BS: pg. 165, lines 1-2
- BS: pg. 166, lines 24-25
- BS: pg. 167, lines 1-4

01/28/20

- BS: pg. 122, lines 20-21
- VS: pg 122, lines 23-24
- VS: pg 123, lines 4, 8-10, 14-25
- VS: pg. 124-126, all lines except 23-24 on pg. 126
- VS: pg. 127, lines 1-13, 22-23

-31-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 160

- VS: pg. 128, lines 7-10,
- BS: pg. 128, lines 21-25
- BS: pg. 131, lines 8-12
- BS: pg. 132, lines 17-22
- BS: pg. 133, lines 6-10, 17-21
- BS: pg. 134, lines 1-7
- VS: pg. 135, lines 12-24
- BS: pg. 140, lines 2-7
- BS: pg. 141, lines 12-13
- VS: pg. 141, lines 15-25
- VS: pg. 142, lines 1-6
- BS: pg. 143, lines 1-3
- VS: pg. 143, lines 5-13
- BS: pg. 144, lines 2-24
- VS: pg. 145, lines 10-13
- BS: pg. 145, lines 15-18
- BS: pg. 147, lines 4-8
- VS: pg. 147, lines 24-25
- VS: pg. 148, lines 1-14, 19-25
- VS: pg. 149, lines 1-5
- BS: pg. 152, lines 5-9

03/04/20

- BS: Pg. 151, lines 14-18
- BS: pg. 156, lines 10-13

03/31/30

- BS: pg. 17, lines 15-20
- BS: pg. 18, lines 3-8
- BS: pg. 20, lines 3-13, 14-16,
- BS: pg. 31, lines 23-24
- BS: pg. 32, lines 1-2, 6
- VS: pg. 32, lines 4, 8-25
- VS: pg. 33-36, all lines
- BS: pg. 37, lines 2-5, 7-14, 16-20, 24-25,

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 161

- BS: pg. 38, lines 5-16, 24-25
- BS: pg. 39, lines 1-6, 10-16, 25
- BS: pg. 40, lines 1-6, 8-14, 18-21
- BS: pg. 41, lines 1-4, 9-16, 18-23,
- BS: pg. 42, lines 21-22
- BS: pg. 43, lines 8-13, 14-21
- BS: pg. 44, lines 1-9, 15-21
- BS: pg. 45, lines 23-25
- BS: pg. 46, lines 1-5

04/28/20

- BS: pg. 102, lines 1-15
- BS: pg. 103, lines 6-13, 16-18
- BS: pg. 105, lines 6-8
- BS: pg. 109, lines 1-3
- VS: pg. 109, lines 5-25
- VS: pg. 110-119
- BS: pg. 120, lines 2-7
- BS: pg. 123, lines 20-25
- BS: pg. 124, lines 1-13
- BS: pg. 125, lines 19-25
- BS: pg 126, lines 9-11, 15-25
- BS: pg. 127, lines 4-23, 25
- BS: pg. 128, lines 1-4, 10-17, 18-25
- BS: pg. 129, lines 1-8, 11-14

06/23/20

- BS: pg. 137, lines 14-16
- BS: pg. 140, lines 18-20
- BS: pg. 146, lines 16-20
- VS: pg. 146, lines 22-25
- VS: pg. 147-150, all lines
- VS: pg. 151, lines 1-5, 10, 14-15, 20,
- BS: pg. 151, lines 22-24
- BS: pg. 152, lines 3-8

-33-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 162**

- BS: pg. 162, lines 11-14
- BS: pg. 166, lines 8-11
- BS: pg. 167, lines 3-6, 10-25
- BS: pg. 168, lines 2-13

06/29/20

- BS: pg. 81, lines 11-14
- VS: pg. 81, lines 16-25
- VS: pg. 82-84, all lines
- VS: pg. 85, lines 1-14
- BS: pg. 85, lines 16-18
- BS: pg. 86, lines 9-12, 17-22
- BS: pg. 88, lines 6-8
- BS: pg. 90, lines 10-12
- BS: pg. 94, lines 16-19
- BS: pg. 95, lines 18-25
- BS: pg. 96, lines 1-7, 13-19
- BS: pg. 97, lines 23-24
- BS: pg. 98, lines 1-2, 10-19
- BS: pg. 101, lines 21-25
- BS: pg. 102, lines 1-6, 17-25
- BS: pg. 103, lines 1-4

07/07/20

- BS: Pg. 57, lines 2-5
- VS: pg. 57, lines 7-25
- VS: Pg. 58-60, all lines
- VS: pg. 61, lines 4-5, 11-25
- VS: pg. 62, lines 1-18
- BS: pg. 62, lines 20-22
- BS: pg. 75, lines 1-6
- BS: pg. 84, lines 1-3
- BS: pg. 128, lines 1-20, 20-23
- BS: pg. 131, lines 17-19

07/21/20

-34-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 163

- BS: pg. 4, lines 22-25
- BS: pg. 5, lines 1
- BS: pg. 57, lines 22-25
- VS: pg 58, lines 2-3, 7-25
- VS: pg. 59-61 all lines
- VS: pg. 62, lines 1-2
- BS: pg. 62, lines 4-5
- BS: pg. 170, lines 14-17,
- BS: pg. 172, lines 3-7
- BS: pg. 189, lines 21-25

07/28/20

- BS: pg. 56, lines 24-25
- BS: pg. 57, lines 1-2
- VS: pg. 57, lines 4-25
- VS: pg. 58-59, all lines
- BS: pg. 60, lines 7-8
- VS: pg. 60, lines 1-25
- VS: pg. 61, lines 1-4
- BS: pg. 61, lines 6-7
- BS: pg. 76, lines 11-16

08/04/20

- BS: pg. 56, lines 22-24
- VS: pg. 57, lines 1-25
- VS: pg. 58, lines 1-6,10-11, 17-18, 22-25
- VS: pg. 59, lines 7-25
- VS: pg. 60, lines 1-16
- BS: pg. 60, line 18
- BS: pg. 220, lines 23-25
- BS: pg. 222, lines 2-5,

09/01/20

- BS: pg. 58, lines 24-25
- BS: pg. 59, lines 1-2
- VS: pg. 59, lines 4-25. 60-61

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 164**

- BS: pg. 62, lines 6
- VS: pg. 62, lines 8-15
- BS: pg. 81, lines 5-8
- BS: pg. 97, lines 2-14
- BS: pg. 98, lines 5-8
- BS: pg. 154, lines 17-20, 25
- BS: pg. 155, lines 1-6, 9-16
- BS: pg. 158, lines 20-23
- BS: pg. 159, lines 7-10
- BS: pg. 160, lines 4-9, 12-15, 18--20

09/15/20

- BS: pg. 56, lines 9-12
- VS: pg. 56, lines 14-25
- VS: pg. 57, all lines
- VS: pg. 58, lines 1-18, 23-24
- BS: pg. 58, lines 20-21
- VS: pg. 59, lines 1-2, 11
- BS: pg. 59, lines 4-9
- BS: pg. 136, lines 11-13
- BS: pg. 137, lines 21-25
- BS: pg. 138, lines 1-6
- BS: pg. 149, lines 6-11
- BS: pg. 200, lines 3-6

10/13/20

- BS: pg. 54, lines 8-10
- VS: pg. 54, lines 12-25
- VS: pg. 55-56, all lines
- VS: pg. 57, lines 1-6, 11-13, 17-24
- BS: pg. 57, lines 8-9, 15
- BS: pg. 105, lines 5-13, 20-22
- BS: pg. 106, lines 3-8, 11-16
- BS: pg. 107, lines 2-10, 16-20,
- BS: pg. 108, lines 12-25

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 165

- BS: pg. 109, lines 10-23,
- BS: 110, lines 5-6
- BS: pg. 111, lines 22-23
- BS: pg. 112, lines 17-25

10/27/20

- BS: pg. 53, lines 17-20
- VS: pg. 53, lines 22-25
- VS: pg. 54-55, all lines
- BS: pg. 56, lines 1-3
- BS: pg. 107, lines 4-8, 15-24
- BS: pg. 110, lines 10-14
- BS: pg. 111, lines 7-20

11/10/20

- BS: pg. 53, lines 14-16
- VS: pg. 53, lines 18-25,
- VS: pg. 54-56
- BS: pg. 57, lines 2-4
- BS: pg. 151, lines 1-6
- BS: pg. 153, lines 24-25
- BS: pg. 154, lines 1-2
- BS: pg. 156, lines 10-11, 17-22
- BS: pg. 157, lines 11-14,
- BS: pg. 158, lines 7-11
- BS: pg. 159, lines 13-18
- BS: pg. 160, lines 3-13, 19-25
- BS: pg. 161, lines 4-17
- BS: pg. 162, lines 8-9, 11-13, 16-20, 22-23
- BS: pg. 163, lines 3-5, 11-13, 16-18
- BS: pg. 164, lines 2-4, 7-10, 17-18
- BS: pg. 166, lines 1-5
- BS: pg. 167, lines 20-25
- BS: pg. 168, lines 2-6, 12-16, 21-25
- BS: pg.169, lines 1-5

-37-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTERROGATORIES

EXHIBIT 12 - Page 166

01/05/21

- BS: pg. 85, lines 6-8

01/26/21

- BS: pg. 57, lines 7-10, 14-16,18-19
- VS: pg. 57, lines 21-22
- VS: pg. 58, lines 1, 5-25
- VS: pg. 59, all lines
- VS: pg. 60, lines 1-9
- BS: pg. 60, lines 11-12
- BS: pg. 182, lines 21-22
- BS: pg. 188, lines 5-14, 16-17
- BS: pg. 190, lines 19-21
- BS: pg. 191, lines 14-25
- BS: pg. 192, lines 1-2, 25
- BS: pg. 193, lines 1-2, 16,
- BS: pg. 194, lines 11-14
- BS: pg. 195, lines 1-12, 15-17
- BS: pg. 196, lines 1-4

03/09/21

- BS: pg. 10, lines 11-15
- BS: pg. 156, lines 8-16

04/06/21

- BS: pg. 144, lines 23-24
- BS: pg. 146, lines 2-4
- BS: pg. 152, lines 9-11

05/04/21

- BS: pg. 6, lines 4=7
- VS: pg. 6, lines 14-25
- VS: pg. 7, all lines
- VS: pg. 8, lines 1-17
- BS: pg. 117, lines 7-10
- BS: pg. 121, lines 16-20

- BS: pg. 124, lines 10-12,19-25
- BS: pg. 125, lines 1-5

05/18/21

- BS: pg. 6, lines 23-24
- BS: pg 7, lines 1-2
- VS: pg, 7, lines 4-25
- VS: pg. 8, all lines,
- BS: pg. 9, lines 1
- BS: pg. 119, lines 24-25
- BS: pg. 120, lines 1-4
- BS: pg. 123, lines 18-24
- BS: pg. 126, lines 14-20
- BS: pg. 127, lines 1-3

05/19/21

- BS: pg. 41, lines 6-8
- VS: pg. 41, lines 10-25
- VS: pg. 42, all lines
- VS: pg. 43, lines 1-4

06/08/21

- BS: pg. 118, lines 10-12, 16-17, 22-24
- BS: pg. 131, lines 7-9, 16-17
- BS: pg. 132, lines 16-23
- BS: pg. 134, lines 18-23
- BS: pg. 135, lines 10-16, 21-25
- BS: pg. 186, lines 7-11, 18-25
- BS: pg. 187, lines 1-2, 7-25
- BS: pg. 188, lines 4-13, 18-22
- BS: pg. 189, lines 3-5, 16-21
- BS: pg. 191, lines 18-21, 23-25
- BS: pg. 192, lines 3-6, 23-25
- BS: pg. 195, lines 1-2
- BS: pg. 196, lines 5-11
- BS: pg. 201, lines 8-14

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 168

- BS: pg. 225, lines 10-12
- BS: pg. 226, lines 12-17

06/22/21

- BS: pg. 7, lines 1-4
- BS: pg. 56, lines 2-4
- VS: pg. 56, lines 6-25
- VS: pg. 57, lines 57
- VS: pg. 58, lines 1-2
- BS: pg. 164, lines 16-22
- BS: pg. 201, lines 6-10
- BS: pg. 203, lines 15-18
- BS: pg. 205, lines 1-4
- BS: pg. 211, lines 9-14
- BS: pg. 232, lines 5-10

07/27/21

- BS: pg. 6, lines 17-20
- VS: pg. 6, lines 22-25
- VS: pg. 7-8
- BS: 119, lines 20-23
- BS: pg. 120, lines 9-14
- BS: pg. 162, lines 5-12, 21-23
- BS: pg. 163, lines 13-17
- BS: pg. 164, lines 14-16
- BS: pg. 165, lines 12-14
- BS: pg. 166, lines 8-13, 15-18
- BS: pg. 168, lines 6-10
- BS: pg. 170, lines 7-9, 18-20

08/10/21

- BS: pg. 7, lines 4-7
- VS: pg. 7, lines 9-25
- VS: pg 8, all lines
- VS: pg. 9, lines 1-5
- BS: pg. 9, lines 7-8

-40-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

EXHIBIT 12 - Page 169

- BS: pg. 198, lines 7-11

09/28/21

- BS: pg. 8, lines 15-18
- VS: pg. 8, lines 20-25
- VS: pg. 9-10
- BS: pg. 10, lines 22-23
- BS: pg. 164, lines 7-13
- BS: pg. 166, lines 7-10
- BS: pg. 167, lines 6-7
- BS: pg. 169, lines 2-6
- BS: pg. 171, lines 17-19, 22-24
- BS: pg. 172, lines 1-12
- BS: pg. 218, lines 2-6
- BS: pg. 221, lines 11-18
- BS: pg. 224, lines 4-9
- BS: pg. 225, lines 20-25
- BS: pg. 226, lines 1-3
- BS: pg. 228, lines 8-10, 20-24
- BS: pg. 229, lines 1-2
- BS: pg. 230, lines 5-8
- BS; pg. 234, lines 12-16
- BS: pg. 235, lines 10-15
- BS: pg. 239, lines 1-4

12-07-21

- BS: pg. 116, lines 17-19
- BS: pg. 118, lines 3-5, 14-18
- BS: pg. 119, lines 8-16
- BS: pg. 120, lines 19-22
- BS: pg. 121, lines 14-17
- BS: pg. 123, lines 14-16
- BS: pg. 125, lines 18-19
- BS: pg. 126, lines 4-7
- BS: pg. 128, lines 24-25

-41-

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTERROGATORIES

EXHIBIT 12 - Page 170

- BS: pg. 129, lines 1-4, 5-7
- BS: pg. 137, lines 21-25
- BS; pg. 141, lines 14-25
- BS: pg. 144, lines 16-18
- BS: pg. 152, lines 5-12
- BS: pg. 155, lines 24-24
- BS: pg. 156, lines 1-8

02/02/22

- BS: pg. 7, lines 23-24
- BS: pg. 8, lines 1-2
- VS: pg. 8, lines 4-25
- VS: pg. 9, lines 1-18
- BS: pg. 170, lines 12-17
- BS: pg. 177, lines 2-10
- BS: 179, lines 1-12
- BS: pg. 180, lines 17-23
- BS: pg. 185, lines 4-9
- BS: pg. 191, lines 15-23

02/15/22

- BS: pg. 193, lines 7-10
- BS: pg. 196, lines 22-24
- BS: pg. 197, lines 2-5
- BS: pg. 198, lines 12-14
- BS: pg. 199, lines 9-13

03/01/22

- BS: pg. 171, lines 14-16
- BS: pg. 193, lines 4-6
- BS: pg. 195, lines 12-13
- BS: pg. 201, lines 11-13, 17-23

07/12/22:

- BS: pg. 162, lines 20-25
- BS: pg. 163, lines 1-12

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 171**

- BS: pg. 164, lines 7-10
- BS: pg. 165, lines 11-12, 24-25
- BS: pg. 166, lines 15-21
- BS: pg. 167, lines 6-16, 22-25
- BS: pg. 168, lines 1-5
- BS: pg. 169, lines 11-19
- BS: pg. 171, lines 19-20
- BS: pg. 172, lines 7-23
- BS: pg. 173, lines 21-25
- BS: pg. 174, lines 15-18
- BS: pg. 175, lines 2-25
- BS: pg. 176, lines 7
- BS: pg. 188, lines 16-22
- BS: pg. 190, lines 12-19
- BS: pg. 192, lines 19-23
- BS: pg. 193, lines 4-7
- BS: pg. 194, lines 13-15
- BS: pg. 196, lines 3-7
- BS: pg. 234, lines 19-23

Discovery is continuing.

**INTERROGATORY NO. 3**

Describe each and every conversation, including the date and identity of the individuals present, between you and the Federal Bureau of Investigation that led you to publicly assert that Fulgent could potentially send genetic data to China, highlighting the security risks posed by such agreements, as alleged in your First Amended Complaint.

**SUPPLEMENTAL RESPONSE:** Plaintiff objects that this special interrogatory is premature, overbroad, burdensome, call for attorney work product/attorney client privilege information and calls for information outside of Plaintiff's personal knowledge. Plaintiff further objects that this interrogatory is phrased in a manner to circumvent the limit of 25 interrogatories allowed, including subparts under the FRCP. Subject to and without waiving these objections, Plaintiff responds as follows: November 24, 2021 at the FBI Los

-43-

Angeles Filed Office, Plaintiff, Los Angeles County Counsel Rodrigo A. Castro-Silva and Chief Executive Office Fesia Davenport were present as well as FBI agents. Plaintiff cannot recall the names of the FBI Agents or anyone else present beyond who is listed in this response and the letter described herein. On November 29, 2021, Plaintiff wrote a letter to the Board of Supervisors concerning Fulgent and the fact DNA data shared with them is not subject and likely to be shared with foreign governments. This letter, which will be produced, is incorporated herein by reference as further responsive to this interrogatory.

**INTERROGATORY NO. 4**

Describe each and every conversation, including the date and identity of the individuals present, between you and any other person regarding claims you have made that Max Huntsman is a Holocaust denier.

**RESPONSE:**

Plaintiff objects that this special interrogatory is premature, overbroad, burdensome, call for attorney work product/attorney client privilege information and calls for information outside of Plaintiff's personal knowledge. Plaintiff further objects that this interrogatory is phrased in a manner to circumvent the limit of 25 interrogatories allowed, including subparts under the FRCP. Plaintiff further objects this is irrelevant. Subject to and without waiving these objections, Sometime prior to April 2022 Plaintiff had a conversation with Mark Lilienfeld. John Satterfield and Tim Murakami were present. On or around April 1, 2022, Plaintiff and members of the Los Angeles Times Editorial Board, Robert Greene, Mariel Garza, Terry Tang, Carla Hall, Laura Rosenthal

**INTERROGATORY NO. 5**

Describe in detail the emotional distress, severe or otherwise, that you claim to have suffered as a result of defendants' alleged conduct as described in your First Amended Complaint.

**RESPONSE:**

Plaintiff objects that this special interrogatory is premature, overbroad, burdensome, call for attorney work product/attorney client privilege information and calls for

EXHIBIT 12 - Page 173

information outside of Plaintiff's personal knowledge. Plaintiff further objects that this interrogatory is phrased in a manner to circumvent the limit of 25 interrogatories allowed, including subparts under the FRCP. Plaintiff further objects this calls for expert testimony. Subject to and without waiving these objections. Responding party has experienced the following emotional reactions to the adverse employment actions at issue: shock, disbelief, embarrassment, distress, hurt, dejection, depression, stress, diminished confidence, anxiety, anger, fear, isolation, insomnia, fatigue, rejection, bleakness, lack of joy, grief, emotional blocking, disappointment, sadness, despair, isolation, numbness, and insomnia.

**INTERROGATORY NO. 6**

Identify by name, address, and telephone number all medical or mental health treatment providers from whom you have received treatment from January 2022 to present, including dates of treatment.

**RESPONSE:**

Plaintiff objects that this special interrogatory is premature, overbroad, burdensome, call for attorney work product/attorney client privilege information and calls for information outside of Plaintiff's personal knowledge. Plaintiff further objects that this interrogatory is phrased in a manner to circumvent the limit of 25 interrogatories allowed, including subparts under the FRCP. Plaintiff further objects this is irrelevant. Plaintiff further objects this information is protected by privacy and would violate the privacy rights of Plaintiff and third parties if disclosed. Subject to and without waiving these objections, Plaintiff has not sought mental health treatment at any time from January 2022 until the present. Plaintiff has sought orthopedic treatment from Daniel Kharrazi, MD 310-665-7200 6801 Park Terrace, Los Angeles, CA 90045 and treatment for high blood pressure from Mary WahBah, MD, 15725 Whittier Blvd, Whittier, CA

PLAINTIFF'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO INTEROGATORIES

**EXHIBIT 12 - Page 174**

90603, 562) 947-3307 and Lubomira Scherschun MD, as a dermatologist. 562.789.5429

12462 Putnam St #501, Whittier, CA 90602

**INTERROGATORY NO. 7**

     Describe in detail all losses of earnings and other employment benefits you claim to have suffered as a result of defendants' alleged conduct as described in your First Amended Complaint.

**RESPONSE:**

     Plaintiff objects that this special interrogatory is premature, overbroad, burdensome, call for attorney work product/attorney client privilege information and calls for information outside of Plaintiff's personal knowledge. Plaintiff further objects that this interrogatory is phrased in a manner to circumvent the limit of 25 interrogatories allowed, including subparts under the FRCP. Plaintiff further objects this is irrelevant. Plaintiff further objects this calls for expert testimony. Subject to and without waiving these objections. Plaintiff wishes to return to employment with the County but being placed on the "do not rehire" list has prevented him from doing so. Villanueva wishes to be employed again with the Los Angeles Sheriff's Department as a consultant. Additionally, he wishes to apply as a Justice Deputy and to apply for the Chief of Police position should the Community Safety Police Department be established. Plaintiff does not have personal knowledge at this time of the compensation for these positions. Plaintiff also has been prevented from seeking Chief of police positions with other law enforcement agencies in California due to him being accused of harassment and discrimination. Chiefs of police may make up to $400,000 per year in compensation, including benefits and retirement. Plaintiff has further applied for the Chief of Police &Emergency Management for the Los Angeles Metropolitan Transportation Authority (LAMetro).

**INTERROGATORY NO. 8**

     Describe in detail all harm to your reputation, profession, and emotional well-being

-46-

you claim to have suffered as a result of defendants' alleged conduct as described in your First Amended Complaint.

**RESPONSE:** Plaintiff objects that this special interrogatory is premature, overbroad, burdensome, call for attorney work product/attorney client privilege information and calls for information outside of Plaintiff's personal knowledge. Plaintiff further objects that this interrogatory is phrased in a manner to circumvent the limit of 25 interrogatories allowed, including subparts under the FRCP. Plaintiff further objects this is irrelevant. Plaintiff further objects this calls for expert testimony. Subject to and without waiving these objections. Plaintiff wishes to return to employment with the County but being placed on the "do not rehire" list has prevented him from doing so. Villanueva wishes to be employed again with the Los Angeles Sheriff's Department as a consultant. Additionally, he wishes to apply as a Justice Deputy and to apply for the Chief of Police position should the Community Safety Police Department be established. Plaintiff does not have personal knowledge at this time of the compensation for these positions. Plaintiff also has been prevented from seeking Chief of police positions with other law enforcement agencies in California due to him being accused of harassment and discrimination. Chiefs of police may make up to $400,000 per year in compensation, including benefits and retirement. Plaintiff has further applied for the Chief of Police &Emergency Management for the Los Angeles Metropolitan Transportation Authority (LAMetro).

Dated: February 28, 2025            SHEGERIAN & ASSOCIATES, INC.


                                    By: _Alex DiBona_____
                                        Alex DiBona, Esq.

                                        Attorneys for Plaintiff,
                                        ALEX VILLANUEVA

**VERIFICATION**

State of California, County of Los Angeles

I am the plaintiff, in the above-captioned matter.  I am familiar with the contents of the foregoing PLAINTIFF ALEX VILLANUEVA'S SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO SPECIAL INTERROGATORIES. The information supplied therein is based on my own personal knowledge and/or has been supplied by my attorneys or other agents and/or compiled from available documents and is therefore provided as required by law.

The information contained in the foregoing document is true, except as to the matters which were provided by my attorneys or other agents or compiled from available documents, including all contentions and opinions, and, as to those matters, I am informed and believe that they are true.

Executed on February 27, 2025 at La Habra Heights, California.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Alex Villanueva (Feb 27, 2025 15:15 PST)
ALEX VILLANUEVA

**EXHIBIT 12 - Page 177**

1    VILLANUEVA v. COUNTY OF LOS ANGELES, et al. USDC Case No. 2:24-cv-04979 SVW (JC)

2                              **PROOF OF SERVICE**

3              **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

4         I am an employee in the County of Los Angeles, State of California.  I am over the
     age of 18 and not a party to the within action; my business address is 11520 San Vicente
5    Boulevard Los Angeles, California 90049.

6         On February 28, 2025, I served the foregoing document, described as **"PLAINTIFF
     ALEX   VILLANUEVA'S   EVIDENTIARY   OBJECTIONS   TO   THE**
7    **DECLARATION OF JASON H. TOKORO SUBMITTED IN SUPPORT OF**
     **DEFENDANTS' MOTION TO DISMISS,"** on all interested parties in this action as
8    follows:

9    **LOUIS R. MILLER**
     smiller@millerbarondess.com
10   **JASON H. TOKORO**
     jtokoro@millerbarondess.com
11   **STEVEN G. WILLIAMSON**
     swilliamson@millerbarondess.com
12   **MILLER BARONDESS, LLP**
     **2121 Avenue of the Stars, Suite 2600**
13   **Los Angeles, California 90067**

14
     ☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the
15        document(s) with the Clerk of the Court by using the CM/ECF system. Participants
          in the case who are registered CM/ECF users will be served by the CM/ECF system.
16        Participants in the case who are not registered CM/ECF users will be served by mail
          or by other means permitted by the court rules.

17
     ☒    **(FEDERAL)**  I declare that I am employed in the office of a member of the bar of
18        this Court at whose direction the service was made.

19        Executed on February 28, 2025, at Los Angeles, California.

20                                          _Amelia Sanchez_
21                                          Amelia Sanchez

22

23

24

25

26

27

28

**EXHIBIT 12 - Page 178**

# EXHIBIT 13

EXHIBIT 13 - Page 179

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                  WESTERN DIVISION

 4

 5    ALEX VILLANUEVA,                    No. 2:24-CV-04979
                                             SVW (JCx)
 6            Plaintiff,

 7         vs.

 8    COUNTY OF LOS ANGELES, COUNTY OF
      LOS ANGELES SHERIFF'S DEPARTMENT,
 9    LOS ANGELES COUNTY BOARD OF
      SUPERVISORS, COUNTY EQUITY OVERSIGHT
10    PANEL, LOS ANGELES COUNTY OFFICE OF
      INSPECTOR GENERAL, CONSTANCE
11    KOMOROSKI, MERCEDES CRUZ, ROBERT A.
      YANG, LAURA LECRIVAIN, SERGIO V.
12    ESCOBEDO, RON KOPPERUD, ROBERT G.
      LUNA, MAX-GUSTAF HUNTSMAN, ESTHER
13    LIM, and DOES 1 to 100, inclusive,

14

15            Defendants.


      _____
16

17

18        VIDEOTAPED DEPOSITION of ALEX VILLANUEVA

19              LOS ANGELES, CALIFORNIA

20             FRIDAY, FEBRUARY 28, 2025

21                    VOLUME 1

22

23    Reported by
      Daryl Baucum, RPR, CRR, RMR, CSR No. 10356
24

25    Job No. 7184228,  PAGES 1 - 334


                                             Page 1
```

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                  WESTERN DIVISION

 4

 5   ALEX VILLANUEVA,                      No. 2:24-CV-04979

                                           SVW (JCx)

 6         Plaintiff,

 7       vs.

 8   COUNTY OF LOS ANGELES, COUNTY OF

     LOS ANGELES SHERIFF'S DEPARTMENT,

 9   LOS ANGELES COUNTY BOARD OF

     SUPERVISORS, COUNTY EQUITY OVERSIGHT

10   PANEL, LOS ANGELES COUNTY OFFICE OF

     INSPECTOR GENERAL, CONSTANCE

11   KOMOROSKI, MERCEDES CRUZ, ROBERT A.

     YANG, LAURA LECRIVAIN, SERGIO V.

12   ESCOBEDO, RON KOPPERUD, ROBERT G.

     LUNA, MAX-GUSTAF HUNTSMAN, ESTHER

13   LIM, and DOES 1 to 100, inclusive,

14

            Defendants.

15

     _____

16

17

18         VIDEOTAPED DEPOSITION of ALEX VILLANUEVA,

19      at Miller, Barondess, 2121 Avenue of the Stars,

20      Suite 2600, Los Angeles, California, beginning

21      at 10:05 a.m., and ending at 5:16 p.m., on

22      Friday, February 28, 2025, before Daryl Baucum,

23      RPR, CRR, RMR, CSR No. 10356.

24

25

                                                Page 2
```

```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR THE PLAINTIFF:

 4

 5            SHEGERIAN & ASSOCIATES

 6            BY:  ALEX DI BONA, ATTORNEY AT LAW

 7            11520 San Vicente Boulevard

 8            Los Angeles, California  90049

 9            310.860.0770

10            ADiBona@ShegerianLaw.com

11

12

13        FOR THE DEFENDANTS:

14

15            MILLER, BARONDESS

16            BY:  JASON H. TOKORO, ATTORNEY AT LAW

17                 STEVEN G. WILLIAMSON, ATTORNEY AT LAW

18            2121 Avenue of the Stars

19            Suite 2600

20            Los Angeles, California  90067

21            310.552.4400

22            JTokoro@MillerBarondess.com

23            SWilliamson@MillerBarondess.com

24

25
```

Page 3

```
 1      APPEARANCES OF COUNSEL (CONTINUED):

 2


 3


 4          ALSO PRESENT:

 5              JON MANUEL, Videographer

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```

Page 4

```
 1          A    Yes.

     15:35:18

 2          Q    So you believe rather than trying to get

 3     the information directly from you, there were other

 4     less intrusive ways of getting that same

 5     information.

     15:35:25

 6          A    Yes.

 7          Q    And the same would apply to all elected

 8     officials, you would say?

 9          A    Uh-huh.

10          Q    Now, I want to circle back and talk to you

     15:35:32

11     about this purported conversation that you had with

12     Ed Alvarez where he told you that the investigations

13     had concluded, I think is what you said.

14          A    Yes.

15          Q    When did this conversation happen?

     15:35:49

16          A    This happened, I think, after we -- I got

17     that response from the PRA request on the two

18     investigations.

19          Q    So your belief that these investigations

20     concluded with no finding of misconduct was

     15:36:06

21     developed during a conversation with Ed Alvarez post

22     January of 2024?

23          A    No, I knew of it before in -- before I

24     left office, and I think the phrase is 212.  In

25     other words, there was no -- no findings.          15:36:24
```

                                                  Page 241

```
 1              Q    So now, I am confused because I thought
        15:36:26
 2         you had just said it was a conversation that you had
 3         with Ed Alvarez after you got the PRA materials.
 4              A    That's what I heard in '22, but fast
 5         forward to this do not hire, the PRA request, and
        15:36:39
 6         then I got specific.  So I went to the source, Eddie
 7         Alvarez, and he told me the details.
 8              Q    So who told you in 2022 when you were
 9         still in office that the investigation ended without
10         any findings of misconduct?
        15:36:56
11              A    I believe that was Satterfield.
12              Q    John Satterfield.
13              A    Yes.
14              Q    Your Chief of Staff.
15              A    Yes.
        15:37:08
16              Q    He doesn't work in IAB, correct?
17              A    No.
18              Q    He doesn't work at Sanders, Roberts,
19         correct?
20              A    What?
        15:37:13
21              Q    Sanders, Roberts, the law firm that was
22         hired --
23              A    No.
24              Q    -- to do the independent investigation,
25         correct?                                    15:37:18
```

Page 242

```
 1        $25 million, correct?

   15:50:47

 2              MR. DI BONA:  Objection; form.

 3              You may answer that question.

 4              THE WITNESS:  Yes.

 5     BY MR. TOKORO:

   15:50:52

 6        Q    That is for emotional distress that you

 7     are claiming, correct?

 8        A    Yes.

 9        Q    So let's talk about those economic damages

10     first.

   15:50:58

11              You say that you're seeking at least

12     $1 million.

13              What is the exact amount that you are

14     seeking?

15              MR. DI BONA:  Objection; calls for expert

   15:51:06

16     testimony, attorney-client privilege and work

17     product.

18              On that basis, I instruct you not to

19     answer that question.

20              MR. TOKORO:  Add that.

   15:51:17

21     BY MR. TOKORO:

22        Q    So now, I know you produced a document --

23     you recently applied to work at the L.A. Metro,

24     correct?

25        A    Yes.                            15:51:28

                                            Page 256
```

```
 1            Q    L.A. Metro is a County entity, correct?
      15:51:29
 2            A    No, it's a separate entity.
 3            Q    L.A. Metro, you are saying is not a County
 4       department?
 5            A    It's its own standalone department.  It's
      15:51:39
 6       not part of County government.
 7            Q    It's not funded by the County?
 8            A    It's a combination of county, city, and
 9       what do they call those -- joint powers?
10            Q    Right.
      15:51:52
11            But it's like the Sheriff's Department and
12       it falls under the umbrella of the County, correct?
13            A    Actually, the Board of Directors of the
14       MTA includes the Mayor of L.A.; four Councilmen, I
15       think, from L.A.; the five Supervisors; two other
      15:52:02
16       City Councilmen from other cities like Whittier, for
17       example.
18            Q    And you have been asked to come in for an
19       interview, right?
20            A    Yes.
      15:52:13
21            Q    So this allegation that you have made that
22       the do-not-rehire prevents you from seeking
23       employment with other government entities, the Metro
24       is willing to interview you, correct?
25            MR. DI BONA:  Objection; form.          15:52:25
```

Page 257

```
 1              You may answer.

        15:52:26

 2              THE WITNESS:  I did a preliminary

 3       screening with the headhunting firm and am waiting

 4       for a call back.

 5       BY MR. TOKORO:

        15:52:35

 6          Q    Great.  Good luck.

 7              And the other thing -- and just to be very

 8       clear, other than applying to L.A. Metro, have you

 9       applied to any other jobs?

10          A    No.

        15:52:48

11          Q    You haven't applied to any jobs with the

12       County, correct?

13          A    Not yet.

14          Q    And you haven't applied for any other jobs

15       with other law enforcement agencies, correct?

        15:52:56

16          A    That's the first.

17          Q    Now, in your -- well, actually, let's go

18       back to Trial Exhibit -- sorry, Depo Exhibit 13.

19              This is your discovery responses.

20          A    13.  Got it.

        15:53:12

21          Q    So in this discovery response -- well, the

22       discovery request was to describe in detail all

23       losses of earnings and other employment benefits you

24       claim to have suffered as a result of Defendants'

25       alleged conduct as described in your First Amended    15:53:41
```

Page 258

1          A    This is with the MTA, yes.

15:58:47

2          Q    And what is the salary range for that

3      position?

4          A    That one has a range, I think, from like

5      280 to -- is it 440, I think?  I don't recall off

15:58:54

       the top of my head.

7          Q    And if you got that job, would you receive

8      benefits?

9          A    Yes, that comes with all the benefits.

10         Q    And so you applied through the -- and you

15:59:10

11     did this initial screening.

12              Is there anything else that is involved in

13     the job application process?

14         A    Well, now, they got to go to the MTA board

15     and tell them, I guess, all the people who they

15:59:23

16     screened and which one do they want to do the

17     interview and take it to the next level.

18         Q    Do you have to take any tests or any

19     fitness for duty, anything like that?

20         A    No, this is strictly interviews.

15:59:37

21         Q    And who did you do that initial interview

22     with?

23         A    A guy named Greg Johnson.

24         Q    And he -- where -- where does Greg works?

25         A    He works for the headhunting firm that is          15:59:55

                                                        Page 264

```
1        cover this when we were talking about Mr. Huntsman.

     16:03:15

2               Your interrogatory response -- and this is

3       what reminded me -- if you can go to page 44,

4       interrogatory response number 4.

5          A    Okay.

     16:03:34

6          Q    Now, this requested that you,

7               "Describe each and every

8               conversation, including the date

9               and identity of the individuals

10              present, between you and any other

     16:03:42

11              person regarding claims you have

12              made that Max Huntsman is a

13              Holocaust denier."

14              Do you see that?

15         A    Yes.

     16:03:52

16         Q    And in this second supplemental response,

17      you stated,

18              "Sometime prior to April of 2022

19              Plaintiff had a conversation with

20              Mark Lillienfeld."

     16:04:01

21              Do you see that?

22         A    Yes.

23         Q    And it says,

24              "John Satterfield and Tim Murakami

25              were present."                          16:04:07

                                                    Page 267
```

```
 1              Right?

    16:04:07

 2         A    Yes.

 3         Q    And then you say,

 4              "On or around April 1 of 2022,

 5              Plaintiff and members of the

    16:04:12

 6              Los Angeles Times Editorial Board."

 7              correct?

 8         A    Yes.

 9         Q    So this conversation that you had with

10    Mark Lillienfeld, is that where he told you that

    16:04:21

11    Mr. Huntsman was a Holocaust denier?

12         A    Yes.

13         Q    And what, basically, did he say to you?

14         A    During the course of his investigation of

15    the data breach that he came across that

    16:04:34

16    information.

17         Q    And what, specifically, did he come

18    across?

19         A    I believe it came from the -- from

20    Max Huntsman's housekeeper.

    16:04:51

21         Q    His housekeeper, what do you mean by that?

22         A    A conversation with a housekeeper.

23         Q    His housekeeper, you mean his personal

24    housekeeper?

25         A    Is there only one kind?          16:05:04
```

                                                    Page 268

```
1          Q     Some people have housekeepers come to
   16:05:06
2      their office and clean their office, so . . .
3          A     This, I think, was the traditional
4      housekeeper.
5          Q     So your -- your recollection of this
   16:05:14
6      conversation that you with Lillienfeld was that he
7      told you he had interviewed Mr. Huntsman's personal
8      housekeeper?
9          A     They had spoken to her, yes.
10         Q     And his personal housekeeper said that he
   16:05:29
11     had denied the Holocaust?
12         A     That's what I understood.
13         Q     Now, when you were interviewed or when you
14     were talking to the "L.A. Times" on April 1 of
15     2022 -- we looked at that interview -- do you recall
   16:05:44
16     telling him that you had received this from two
17     credible sources?
18         A     Yes.
19         Q     So who was the second source?
20         A     Right now, I don't remember who the second
   16:05:54
21     one was.  I remember the first.
22         Q     Now, Mark Lillienfeld, he has got a little
23     bit of baggage that comes with him, right?
24              MR. DI BONA:  Objection; form.
25              THE WITNESS:  You mean he is the subject      16:06:15
```

Page 269

```
 1   STATE OF _____)
                                              )  Ss.
 2   COUNTY OF _____)

 3

 4            I, DARYL BAUCUM, a Certified Shorthand

 5   Reporter of the State of California, do hereby

 6   certify;

 7            That the foregoing proceedings were taken

 8   before me at the time and place herein set forth,

 9   at which time the witness named in the foregoing

10   proceeding was placed under oath; that a record

11   of the proceedings was made by me using machine

12   shorthand which was thereafter transcribed under my

13   direction; and that the foregoing pages contain a

14   full, true and accurate record of all proceedings

15   and testimony to the best of my skill and ability.

16            I further certify that I am neither

17   financially interested in the outcome nor a relative

18   or employee of any attorney or any party to this

19   action.

20            IN WITNESS WHEREOF, I have subscribed my

21   name this 5th day of March 2025.

22

23

24

25   DARYL BAUCUM, CSR No. 10356
```

Page 334

1   JASON H. TOKORO, ESQ.

2   JTokoro@MillerBarondess.com

3                                      March 5, 2025

4   RE: Villanueva, Alex v. County Of Los Angeles

5   2/28/2025, Alex Villanueva , Volume 1, (#7184228).

6   The above-referenced transcript has been

7   completed by Veritext Legal Solutions and

8   review of the transcript is being handled as follows:

9   __ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12  __ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20      Contact Veritext when the sealed original is required.

21  __ Waiving the CA Code of Civil Procedure per Stipulation of

22      Counsel - Original transcript to be released for signature

23      as determined at the deposition.

24  __ Signature Waived – Reading & Signature was waived at the

25      time of the deposition.

                                              Page 335

1    __ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    _X_ Federal R&S Not Requested - Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page  336

# EXHIBIT 14

EXHIBIT 14 - Page 196

```
1              UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4    ALEX VILLANUEVA,              Case No.:

5             Plaintiff,          2:24-cv-04979 SVW (JCx)

6          vs.

7    COUNTY OF LOS ANGELES, COUNTY

8    OF LOS ANGELES SHERIFF'S

9    DEPARTMENT, LOS ANGELES COUNTY

10   BOARD OF SUPERVISORS, et al.,

11             Defendants.

12   _____/

13

14   VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED DEPOSITION OF

15                  JOHN SATTERFIELD

16              TUESDAY, APRIL 1, 2025

17      Remotely testifying from Whittier, California

18

19

20   Reported remotely and stenographically by:

21   Ashala Tylor, CRR, RPR, California CSR 2436, Oregon

22   CSR 22-0118, Washington CSR 23032768

23   JOB NO.: 7246468

24

25   PAGES 1 - 117
```

                                              Page 1

1                UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

4    ALEX VILLANUEVA,                Case No.:

5              Plaintiff,            2:24-cv-04979 SVW (JCx)

6          vs.

7    COUNTY OF LOS ANGELES, COUNTY

8    OF LOS ANGELES SHERIFF'S

9    DEPARTMENT, LOS ANGELES COUNTY

10   BOARD OF SUPERVISORS, et al.,

11              Defendants.

12   _____/

13

14

15

16       Remote videotaped deposition of JOHN SATTERFIELD,

17   taken via virtual Zoom, commencing at 9:03 a.m. and

18   ending at 12:51 p.m., on Tuesday, April 1, 2025, before

19   Ashala Tylor, Certified Shorthand Reporter.

20

21

22

23

24

25

                                              Page 2

```
 1              REMOTE  APPEARANCES  OF  COUNSEL:
 2      FOR  THE  PLAINTIFF:
 3              SHEGERIAN  &  ASSOCIATES
 4              BY:  ALEX  DIBONA,  ESQ.
 5              11520  San  Vicente  Boulevard
 6              Los  Angeles,  California  90049
 7              310.860.0770
 8              ADiBona@ShegerianLaw.com
 9
10      FOR  THE  DEFENDANTS:
11              MILLER,  BARONDESS,  LLP
12              BY:  BRIAN  NEACH,  ESQ.
13                  JASON  H.  TOKORO,  ESQ.
14              2121  Avenue  of  the  Stars
15              Suite  2600
16              Los  Angeles,  California  90067
17              310.552.4400
18              BNeach@MillerBarondess.com
19              JTokoro@MillerBarondess.com
20
21      Also  Present:
22              Kevin  Del  Cid,  Videographer
23
24
25
```

Page 3

```
 1                         destructive."                    12:27

 2        Q.   You can kind of see, it's a little light,

 3   but the date is there is April 2022.  So the article

 4   goes on, I'm sure.

 5           Did you help the sheriff prepare for this    12:27

 6   interview?

 7        A.   This wasn't an interview.  It was -- well,

 8   I mean, anything when you sit down and talk would be

 9   an interview.

10           But this was -- the L.A. Times Editorial     12:27

11   Board had requested the sheriff meet with them

12   regarding endorsement for reelection.  That's what

13   this meeting was.  It was him sitting with them.  I

14   believe it was done over Zoom or Skype or something.

15           And it was him meeting with them being       12:28

16   asked questions by the Editorial Board in hopes that

17   they would either endorse him or not endorse any

18   candidate.  So that's what it was about.

19           I'm sure that I did help him prepare

20   because, as I previously stated, he's my friend.  In  12:28

21   my personal life, when I'm not doing official county

22   business, then yeah, I'm happy to volunteer my time

23   to help him.

24        Q.   Did anyone ever tell that you that

25   Mr. Huntsman was a Holocaust denier?                 12:29

                                           Page 103
```

```
 1        A.   I had heard the rumor.  I can't say          12:29
 2   definitively whether he is or not.  That's his
 3   business.  I have heard that there were -- that
 4   there was information that -- that that was a
 5   possibility.                                            12:29
 6        Q.   Who did you hear the rumor from?
 7        A.   I believe -- I believe that was
 8   information that -- you know, I -- I don't know.
 9   I'm not going to try to guess an answer.  I heard
10   it.  I don't know exactly where it came from.          12:29
11        Q.   Okay.  Do you recall when you might have
12   heard it?
13        A.   I don't -- well, it would have been prior
14   to this, prior to the date on this interview or
15   whatever we decided that it was.                        12:30
16        Q.   At the top of this exhibit, previously
17   admitted Exhibit 20 from Mr. Villanueva's
18   deposition, it says that it was a letter that was
19   "received during our interview with him at 9 a.m.
20   conducted via Zoom."  So that seems to be consistent   12:30
21   with your memory, right?
22        A.   It does.
23        Q.   Were you ever in a meeting with the
24   sheriff and Mark Lillienfeld, L-I-L-L-I-E-N-F-E-L-D,
25   when Mr. Lillienfeld said that about Mr. Huntsman,      12:30
```

                                        Page 104

```
 1    that he was a Holocaust denier?                      12:31
 2         A.   I do remember being in a meeting, and I do
 3    remember something being said of that subject.  I
 4    don't remember exactly what was said or that.  And I
 5    really can't tell you exactly what I learned from     12:31
 6    that.  It wasn't the main focus of the meeting.  It
 7    was kind of a little side millisecond of a
 8    statement, and then we moved on in the meeting.  I
 9    don't remember all the details of it.
10         But I do remember that there was a meeting       12:31
11    in what was referred to as the sheriff's library,
12    which was the sheriff's conference room attached to
13    his office.  I was present.  And I do remember
14    Detective Lillienfeld saying something about it.  I
15    don't remember exactly what all was said.            12:32
16         Q.   Okay.  Do you recall when that was?
17         A.   No.
18         Q.   Do you know if it was before the
19    complaints were filed on March 16 -- March 17, '22,
20    before, after; do you recall?                        12:32
21         A.   I don't know.  The only thing I can say
22    definitively is I know it was before this interview
23    with the L.A. Times Editorial Board that this
24    article came from.  I know it was before that.
25         Q.   Do you recall -- I think his name is Tim    12:32
```

Page 105

```
1    Murakami, M-U-R-A-K-A-M-I.  Was he at this meeting?       12:32

2         A.   I believe he was.

3         Q.   Do you recall anybody else who was?

4         A.   No, I can't recall offhand who was there

5    and who wasn't.  I do remember that Tim Murakami was     12:33

6    there, and I remember that I was there.  I remember

7    the sheriff was there, Alex Villanueva.  And I

8    remember that the detective was there, Lillienfeld.
```

```
9         Q.   Were you -- I know you gave me the long

10   list of the many things you've done at the            12:33

11   department.  Were you ever in IAB?

12        A.   It's a nuanced answer.  Yes and no.

13             So no, I was never officially assigned to

14   either IAB or ICIB, but I was what we refer to as an

15   adjunct member.  And here's why.                       12:34

16             Your -- your more skilled lieutenants will

17   go to training, IAB training, and then they will

18   conduct IAB investigations for the unit they're

19   assigned to.  And I did that on numerous occasions.

20             So there's -- there's no way that the        12:34

21   Internal Affairs Bureau can handle the number of

22   investigations that are generated in an

23   18,000-person department.  It just -- it doesn't

24   make fiscal sense to have that many people getting a

25   40-hour-a-week paycheck when the work comes and the    12:34
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

EXHIBIT 14 - Page 203

1    yes, I've conducted many IAB investigations, but no,        12:36

2    I've never officially been assigned to IAB.

3        Q.   You weren't part of any IAB investigation

4    regarding the complaints by Mr. Huntsman and Ms. Lim

5    against the sheriff, right?                                   12:36

6        A.   That's correct, I was not.

7        Q.   Did you have any role in investigating

8    those allegations in any way?

9        A.   Not to my knowledge other than

10   providing -- I remember providing the letters the            12:36

11   Board of Supervisors received in regards to Esther

12   Lim's behavior.

13       Q.   But you weren't doing an investigation

14   regarding those allegations, right?

15       A.   No.  I believe the extent of my                     12:37

16   involvement was some document production.

17       Q.   Okay.  At any point in time -- well, let's

18   start with 2022.  At any point in 2022, did you tell

19   the sheriff that the investigation of Mr. Huntsman's

20   allegations was concluded with the finding of no             12:37

21   misconduct?

22       A.   I don't know if those are the exact terms

23   I used, but I do remember something to that effect,

24   being told by Chief Alvarez that -- I believe he

25   told me directly, or he may have told me in the              12:37

Page 108

```
 1    presence of the sheriff.  I do believe -- I don't      12:37

 2    remember all the details around it, but I do believe

 3    something like that was said.

 4        Q.   So Chief Alvarez told you, and he may have

 5    even told the sheriff at the same time, that the        12:38

 6    allegations -- the investigation into the

 7    allegations of Mr. Huntsman were concluded with the

 8    finding no misconduct, right?  Is that what you

 9    said?

10        A.   You know what, I'm going to have to            12:38

11    restate.  I don't remember if it was Mr. Huntsman,

12    Ms. Lim, or both.  I really can't recall at this

13    moment exactly who it was, if it was one, if it was

14    the other, or if it was both.  But yes, I do

15    remember something being said to that effect about     12:38

16    the situation.

17        Q.   Okay.  So regardless whether it was one or

18    the both, the information came from Chief Alvarez,

19    as far as you know, right?

20        A.   I believe so, yes.                            12:38

21        Q.   And how was it conveyed to you?  Was it an

22    in-person meeting?

23        A.   Yes, I believe it was an in-person

24    meeting.

25        Q.   Do you know where it was?                     12:39
```

Page 109

EXHIBIT 14 - Page 205

```
 1        A.   Well, I think it was either in my office      12:39
 2   or in the library.  It would have been -- which my
 3   office and the library, the sheriff's library, the
 4   sheriff's meeting room are maybe 10, 20 feet apart.
 5   So it's all that same general area.                     12:39
 6        But I -- I seem to recall sitting here
 7   right now that it was right in that area.  Either it
 8   was my office or it was the library.  I want to say
 9   I'm leaning more towards my office is where -- where
10   my memory is pointing me right now.                     12:39
11        Q.   Okay.  And you're not positive whether or
12   not the sheriff was present?
13        A.   I'm not.  I -- I -- he may or may not have
14   been.  I don't remember.  A lot of times --
15        Q.   And --I'm sorry.                              12:40
16        A.   A lot of times information would be passed
17   to me as the chief of staff, and then I would just
18   make sure to relay it to the sheriff.  Because as
19   the chief of staff, I was fully empowered to receive
20   information, make decisions, pass on orders.  So       12:40
21   it's hard to remember exactly because we were just
22   always so busy, and there was such a high volume of
23   things happening all the time.
24        It was like that episode, that "I Love
25   Lucy" episode where her and Ethel are grabbing the     12:40
```

Page 110

```
 1    chocolates off of the conveyor belt.  That's how        12:40

 2    every day was going to work.  So it's hard to

 3    remember exactly.  I had a thousand situations like

 4    that.  It's hard to recall it.

 5        Q.   Okay.  I understand.  And lawyers are          12:40

 6    often asking you about things that happened, like,

 7    three years like everybody remembers.  But you never

 8    know.  So that's why -- but we do have to kind of

 9    test your memory, or at least see if something

10    sparks your memory.                                     12:41

11            So I was just going to ask, would it be

12    unusual for the sheriff to come to your office for a

13    meeting, or was that pretty regular?

14        A.   The sheriff met in my office more than I

15    met in his.  For whatever reason, you'd have to ask    12:41

16    him, but he liked walking out of his office and kind

17    of getting a change of scenery in my office.

18            He'd come in, sit down at my conference

19    table, and then we'd talk or chat, or a meeting

20    would happen in there.  But yeah, it was pretty        12:41

21    commonplace that he would be in my office for

22    meetings.

23        Q.   Okay.  And then in terms of this, again,

24    this meeting, the one with Chief Alvarez, do you

25    have any recollection of when it occurred?  Like can   12:41
```

Page 111

```
 1      you narrow it down to a year?                        12:42

 2           A.   I do not.

 3           Q.   Okay.  Give me five minutes just to kind

 4      of look in my notes.  I might be done.

 5           A.   I'm sorry, you know what, before you stop,  12:42

 6      I don't think I processed, when you said, "Can you

 7      give me a year," before I started to formulate my

 8      answer.

 9                I'm pretty confident it was in 2022.

10           Q.   Okay.  And then beyond that, do you         12:42

11      recall, was it the summer?  Was it the winter?  Was

12      it any particular time in 2022?

13           A.   I don't remember now.  But I know it

14      wasn't '23 and I know it wasn't '21.  So I can with

15      100 percent certainty say it was 2022.               12:42

16                I didn't want to let that one to go into

17      the record books without correcting it.

18           Q.   Okay.  Thanks.  Again, I might be done

19      here, so give me -- we'll come back in five minutes,

20      and if I have any follow-up, we'll get it done.      12:43

21                THE VIDEOGRAPHER:  All right.  I'll get us

22      off.  The time is now 12:43 p.m.  This is the end of

23      media 4.  We are off the record.

24                (Recess.)

25                THE VIDEOGRAPHER:  Okay.  The time is now   12:50
```

Page 112

```
 1              CERTIFICATE OF REPORTER

 2        I, ASHALA TYLOR, CSR No. 2436, in and for the State

 3    of California, do hereby certify:

 4        That the foregoing proceedings were taken before me

 5    at the time and place herein set forth; that any

 6    witnesses in the foregoing proceedings, prior to

 7    testifying, were placed under oath; that a verbatim

 8    record of the proceedings were made by me using machine

 9    shorthand which was thereafter transcribed under my

10    direction; further that the foregoing is an accurate

11    transcription thereof.

12        That before the completion of the deposition,

13    review of the transcript was not requested.

14        I further certify that I am neither financially

15    interested in this action nor a relative or employee of

16    any attorney or any of the parties hereto.

17        In compliance with Section 8016 of the Business and

18    Professions Code, I certify under penalty of perjury

19    that I am a Certified Shorthand Reporter with

20    California License No. 2436 in full force and effect.

21    WITNESS my hand this 2nd day of April 2025.

22

23

24

25        Ashala Tylor, CSR #2436, RPR, CRR, CLR
```

Page 115

```
 1   BRIAN NEACH, ESQ.

 2   BNeach@MillerBarondess.com

 3                                       April 4, 2025

 4   RE: Villanueva v. County Of Los Angeles, Et Al.

 5   4/1/2025, John Satterfield, (#7246468).

 6   The above-referenced transcript has been

 7   completed by Veritext Legal Solutions and

 8   review of the transcript is being handled as follows:

 9   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20      Contact Veritext when the sealed original is required.

21   __ Waiving the CA Code of Civil Procedure per Stipulation of

22      Counsel - Original transcript to be released for signature

23      as determined at the deposition.

24   __ Signature Waived - Reading & Signature was waived at the

25      time of the deposition.
```

<div align="right">Page 116</div>

```
 1    __ Federal R&S Requested (FRCP 30(e)(1)(B) - Locked .PDF

 2       Transcript - The witness should review the transcript and

 3       make any necessary corrections on the errata pages included

 4       below, noting the page and line number of the corrections.

 5       The witness should then sign and date the errata and penalty

 6       of perjury pages and return the completed pages to all

 7       appearing counsel within the period of time determined at

 8       the deposition or provided by the Federal Rules.

 9

10    xx Federal R&S Not Requested - Reading & Signature was not

11       requested before the completion of the deposition.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

EXHIBIT 14 - Page 211

# EXHIBIT 15

EXHIBIT 15 - Page 212

```
 1              UNITED STATES DISTRICT COURT
 2       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3
     ALEX VILLANUEVA,                  )
 4                                     )
             Plaintiff,                )
 5   v.                                )
                                       ) CASE NO.
 6   COUNTY OF LOS ANGELES,            ) 2:24-cv-04979 SVW
     COUNTY OF LOS ANGELES             ) (JCx)
 7   SHERIFF'S DEPARTMENT,             )
     LOS ANGELES COUNTY BOARD OF       )
 8   SUPERVISORS, COUNTY EQUITY        )
     OVERSIGHT PANEL, LOS ANGELES      )
 9   COUNTY OFFICE OF INSPECTOR        )
     GENERAL, CONSTANCE KOMOROSKI,     )
10   MERCEDES CRUZ, ROBERTA YANG,      )
     LAURA LECRIVAIN, SERGIO V.        )
11   ESCOBEDO, RON KOPPERUD,           )
     ROBERT G. LUNA, MAX-GUSTAF        )
12   HUNTSMAN, ESTHER LIM, and         )
     DOES 1 to 100, inclusive,         )
13                                     )
             Defendants.               )
14                                     )
                                       )
15
16
17          REMOTE VIDEO-RECORDED DEPOSITION
18                       OF
19                 TIMOTHY MURAKAMI
20             MONDAY, APRIL 7, 2025
21
22
23
     Stenographically Reported By:
24   JENNIFER L. SMITH, CA CSR NO. 10358, RMR, CRR, CRC
25   Job Number: 7246481
```

                                        Page 1

```
 1                    A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFF:

 4         SHEGERIAN & ASSOCIATES, INC.
           By: Alex DiBona, Esq.
 5         11520 San Vicente Boulevard
           Los Angeles, CA 90049
 6         (310) 860-0770
           adibona@shegerianlaw.com
 7

 8   FOR THE DEFENDANTS:

 9         MILLER BARONDESS, LLP
           BY: Brian Neach, Esq.
10              Jason H. Tokoro, Esq.
           2121 Avenue of the Stars, Suite 2600
11         Los Angeles, CA 90067
           (310) 552-4400
12         bneach@millerbarondess.com
           jtokoro@millerbarondess.com
13

14   ALSO PRESENT:

15         Tristan Knudsen, Videographer

16

17

18

19

20

21

22

23

24

25

                                         Page 2
```

```
 1   about the Sheriff?                                  11:00:47

 2       A.  Yes, sir.                                   11:00:49

 3       Q.  You just don't recall this one specifically?  11:00:52

 4       A.  No, sir.                                    11:00:54

 5       Q.  So April 1 -- or April of 2022, that was   11:00:58

 6   the -- that was an election year, right, 2022?     11:01:03

 7       A.  Yes, sir.                                   11:01:08

 8       Q.  And you can read it, but I'm -- the second  11:01:13

 9   page, there's a sentence that says -- it's talking  11:01:17

10   about a Zoom interview that the Sheriff was giving,  11:01:21

11   and it said, "The interview itself was even odder,  11:01:24

12   most notably for the out-of-nowhere evidence-free  11:01:27

13   assertion that County Inspector General Max Huntsman  11:01:31

14   is a Holocaust denier."                            11:01:34

15           Do you recall any discussions with the     11:01:39

16   Sheriff about Max Huntsman being a Holocaust denier?  11:01:40

17       A.  Possibly, sir.                             11:01:50

18       Q.  What do you recollect?                     11:01:51

19       A.  There might have been a comment about      11:01:52

20   Mr. Huntsman being a Holocaust denier, but the     11:01:57

21   details, I couldn't tell you, sir.                 11:01:59

22       Q.  Do you recall who made that comment?       11:02:01

23       A.  The initial reporting came from Detective  11:02:06

24   Lillienfeld.                                       11:02:10

25       Q.  And at that time, what was -- well, do you  11:02:15
```

Page 47

EXHIBIT 15 - Page 215

```
 1    recall when that was?                          11:02:17

 2        A.  No, sir.                               11:02:18

 3        Q.  And were you present when Detective    11:02:20

 4    Lillienfeld indicated that Max Huntsman might be a  11:02:23

 5    Holocaust denier?                              11:02:26

 6        A.  I've heard it from him.  Who was part of the  11:02:29

 7    discussion, I couldn't tell you, sir.          11:02:33

 8        Q.  Did you ever discuss Max Huntsman being  11:02:38

 9    potentially a Holocaust denier with John Satterfield?  11:02:41

10        A.  The comment, sir, but not discussion, sir.  11:02:44

11        Q.  Did -- did Detective Lillienfeld explain to  11:02:55

12    you or ever tell you where he got the information  11:02:57

13    about Max Huntsman being a Holocaust denier?    11:02:59

14        A.  No, sir.                               11:03:01

15        Q.  Did anyone ever indicate to you that -- the  11:03:07

16    information about Huntsman being a Holocaust denier  11:03:09

17    came from his housekeeper?                      11:03:12

18        A.  No, sir.                               11:03:16

19            MR. NEACH:  I need some water.  So I was  11:03:20

20    thinking maybe, like, a ten-minute break.  Is that  11:03:23

21    okay?                                          11:03:25

22            THE WITNESS:  Okay.  I'm good.          11:03:26

23            MR. DIBONA:  That's fine.              11:03:26

24            MR. NEACH:  Okay.  Thanks.             11:03:27

25            THE VIDEOGRAPHER:  Do you want to go off  11:03:28

                                              Page 48
```

1                  REPORTER'S CERTIFICATE

2

3          I, JENNIFER L. SMITH, California CSR No.

4    10358, Washington CCR No. 3101, RMR, CRR, CRC, do

5    hereby certify that previous to the commencement of

6    the examination, the witness was duly sworn by me to

7    testify the truth in relation to matters in

8    controversy between the said parties; that the said

9    deposition was taken in stenotype by me at the time

10   and place aforesaid and was thereafter reduced to

11   typewritten form by me; and that the foregoing is a

12   true and correct transcript of my stenotype notes

13   thereof.

14          That I am not an attorney nor counsel nor in

15   any way connected with any attorney or counsel for

16   any of the parties to said action nor otherwise

17   interested in the outcome of this action.

18          _Jennifer L. Smith_

19

20          JENNIFER L. SMITH
            CA CSR NO. 10358

21          WA CCR NO. 3101
            RMR, CRR, CRC

22

23

24

25

                                              Page 85

1    Timothy Murakami

2    idtcop@yahoo.com

3                                          April 9, 2025

4    RE: Villanueva, Alex v. County Of Los Angeles, Et Al.

5    4/7/2025, Timothy Murakami, (#7246481).

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20      Contact Veritext when the sealed original is required.

21   __ Waiving the CA Code of Civil Procedure per Stipulation of

22      Counsel - Original transcript to be released for signature

23      as determined at the deposition.

24   __ Signature Waived - Reading & Signature was waived at the

25      time of the deposition.

                                              Page 86

1    _X_ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2       Transcript – The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, noting the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested – Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 87

EXHIBIT 15 - Page 219

# EXHIBIT 16

EXHIBIT 16 - Page 220

```
 1              UNITED STATES DISTRICT COURT

         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

 2

         ALEX VILLANUEVA,                )

 3                 PLAINTIFF,            ) CASE NO.

                   VS.                   ) 2:24-cv-04979

 4       COUNTY OF LOS ANGELES, COUNTY   ) SVW (JCx)

 5       OF LOS ANGELES SHERIFF'S        )

 6       DEPARTMENT, LOS ANGELES COUNTY  )

 7       BOARD OF SUPERVISORS, COUNTY    )

 8       EQUITY OVERSIGHT PANEL,         )

 9       LOS ANGELES COUNTY OFFICE OF    )

10       INSPECTOR GENERAL, CONSTANCE    )

11       KOMOROSKI, MERCEDES CRUZ,       )

12       ROBERT A. YANG, LAURA LECRIVAIN,)

13       SERGIO V. ESCOBEDO, RON         )

14       KOPPERUD, ROBERT G. LUNA,       )

15       MAX-GUSTAF HUNTSMAN, ESTHER LIM,)

16       AND DOES 1 TO 100, INCLUSIVE,   )

17                 DEFENDANTS.           )

18       _____)

19            VIDEOTAPED DEPOSITION OF MARK LILLIENFELD

20                   MONDAY, APRIL 14, 2024

21

22       REPORTED BY

23       KIMBERLY EDELEN, CSR. NO. 9042, CRR, RPR.

24       JOB NO.  7246491

25       PAGES 1 - 72
```

                                                    Page 1

```
 1      VIDEOTAPED DEPOSITION OF MARK LILLIENFELD, TAKEN

 2      ON BEHALF OF THE DEFENDANTS, AT 10:01 A.M. PDT,

 3      MONDAY, APRIL 14, 2024, AT 2121 AVENUE OF THE STARS,

 4      SUITE 2600, LOS ANGELES, CALIFORNIA, BEFORE

 5      KIMBERLY A. EDELEN, CSR NO. 9042, CRR, RPR.

 6

 7      APPEARANCES OF COUNSEL

 8

 9      FOR THE PLAINTIFF:

10                      SHEGERIAN & ASSOCIATES

11                      BY:  ALEX DI BONA, ESQ.

12                      11520 SAN VICENTE BOULEVARD

13                      LOS ANGELES, CALIFORNIA 90049

                        310.860.0770

14                      ADIBONA@SHEGERIANLAW.COM

15

16      FOR THE DEFENDANTS:

17                      MILLER BARONDESS, LLP

18                      BY:  BRIAN NEACH, ESQ.

19                      2121 AVENUE OF THE STARS

20                      SUITE 2600

21                      LOS ANGELES, CALIFORNIA 90067

22                      310.552.4400

23                      BNEACH@MILLERBARONDESS.COM

24

25      ALSO PRESENT:  TRISTAN KNUDSEN, VIDEOGRAPHER
```

Page 2

```
 1    there were?                                    10:18:13

 2        A    The highest number, I believe, was eight   10:18:15

 3    detectives and a lieutenant.                    10:18:18

 4        Q    And is this just one of the things you were  10:18:31

 5    doing, or was this the only thing you were doing?  10:18:32

 6        A    That was primarily the only thing I was   10:18:35

 7    doing.                                          10:18:36

 8        Q    And how much time was that taking?       10:18:37

 9        A    Again, it was -- you know, I was limited to  10:18:39

10    20 hours a week or 960 hours in a 12-month period,  10:18:42

11    so it varied.  I mean, some weeks I would work 40 or  10:18:47

12    50 hours and then not work for a couple weeks.  So  10:18:51

13    it varied so that I could fulfill those time     10:18:53

14    limitations.                                    10:18:56

15        Q    Right.                                 10:18:56

16             Were you the head of this unit?        10:19:01

17        A    I was not.                             10:19:03

18        Q    Who was the head of the unit?          10:19:04

19        A    The lieutenant in charge of the unit.  10:19:06

20        Q    And who was that?                      10:19:09

21        A    There were two of them.  The first     10:19:10

22    lieutenant was Glenn Walsh.  Glenn is G-l-e-n-n.  10:19:12

23    And the second lieutenant was Andy Myers.  And Myers  10:19:21

24    is M-e-y-e-r-s.                                 10:19:27

25        Q    So were you reporting to the lieutenants?  10:19:40
```

Page 19

```
 1        A    Yes.                                      10:19:43

 2        Q    Did you have direct reports to you?        10:19:45

 3        A    I'm sorry?                                 10:19:48

 4        Q    Did you have direct -- did you have people 10:19:49

 5   directly reporting to you?                           10:19:51

 6        A    No.  Not reporting to me, no.              10:19:52
```

```
 7        Q    And then how long were you on this -- part 10:20:15

 8   of this unit?                                        10:20:18

 9        A    From July of 2019 until January of 202' -- 10:20:20

10   give me one second -- '23.                           10:20:33

11        Q    And why did you leave?                     10:20:40

12        A    A new sheriff was elected and he disbanded 10:20:43

13   the unit.  Because I was a hire-back employee, I was 10:20:45

14   an at-will employee, so he thanked me for my service 10:20:49

15   and told me it was no longer needed.                 10:20:53

16        Q    Sheriff Luna?                              10:20:56

17        A    That is correct.                           10:20:58

18        Q    Uh-huh.                                    10:20:59

19             While you were a part of this unit, do you 10:21:00

20   recall any -- well, what did you call -- anybody who 10:21:07

21   was being investigated, what did you call them?      10:21:11

22   Subject?                                             10:21:13

23        A    No.  If there was an allegation of criminal 10:21:15

24   conduct against a particular person, they're         10:21:18

25   suspects of a crime.                                 10:21:22
```

Page 20

| | | |
|---|---|---|
| 1 | You're entitled to read the whole thing if | 10:43:01 |
| 2 | you like. | 10:43:03 |
| 3 | A    Thank you. | 10:43:04 |
| 4 | Q    But do you recognize this article at all? | 10:43:04 |
| 5 | A    I don't. | 10:43:08 |
| 6 | Q    Okay.  And just for the record, it's an | 10:43:09 |
| 7 | April 1st, 2022 L.A. Times article. | 10:43:11 |
| 8 | And on the second page, there's a second | 10:43:17 |
| 9 | paragraph. | 10:43:20 |
| 10 | A    Yes, sir. | 10:43:22 |
| 11 | MR. NEACH:  Do you want a copy, Alex? | 10:43:23 |
| 12 | MR. DI BONA:  Yes, please. | 10:43:25 |
| 13 | MR. NEACH:  Okay. | 10:43:29 |
| 14 | I've lost track of it. | 10:43:29 |
| 15 | BY MR. NEACH: | 10:43:35 |
| 16 | Q    The second page, second paragraph, it | 10:43:35 |
| 17 | says -- it's talking about an interview with the | 10:43:37 |
| 18 | sheriff.  And it said "The interview itself was even | 10:43:39 |
| 19 | odder, most notably for the out-of-nowhere | 10:43:42 |
| 20 | evidence-free assertion that county Inspector | 10:43:44 |
| 21 | General Max Huntsman is a Holocaust denier." | 10:43:46 |
| 22 | Did you have any discussions at the time | 10:43:51 |
| 23 | with the sheriff or anybody else about Max Huntsman | 10:43:52 |
| 24 | being an Holocaust denier? | 10:43:55 |
| 25 | A    I truly do not recall that. | 10:43:59 |

Page 37

```
 1              I would very much intentionally, like      10:44:06

 2     I just testified to previously, keep him out of the  10:44:09

 3     loop.  And the gist of our conversations, "our"     10:44:12

 4     meaning mine and Villanueva's conversations, were   10:44:15

 5     quite frequently about dogs and baseball and, you   10:44:18

 6     know, happenings in, you know, the news and stuff   10:44:21

 7     like that.                                           10:44:24

 8              I never spoke to him about the criminal    10:44:25

 9     investigations on purpose so that if and when the   10:44:27

10     time came that I was under oath during a criminal   10:44:30

11     proceeding, I could truthfully testify that he      10:44:33

12     didn't direct me to do anything and he had no       10:44:36

13     bearing on the decision-making.                     10:44:39

14              And hopefully this will save you some      10:44:43

15     questions here.  It's possible -- and, again,       10:44:45

16     I don't have a clear memory of it -- that in some   10:44:49

17     setting I had mentioned that directly to him.       10:44:52

18              I don't have a clear recollection of doing 10:44:57

19     that.  It is -- it is my memory -- and I could be   10:44:58

20     wrong, but it is my memory that I mentioned this to 10:45:04

21     the undersheriff, Timothy Murakami, and/or the chief 10:45:09

22     of staff --                                         10:45:13

23              Now I'm drawing a blank.                   10:45:16

24        Q     John Satterfield.                          10:45:19

25        A     Thank you.  Yes.                           10:45:20
```

Page 38

```
 1        Q    Satterfield, S-a-t-t-e-r --              10:45:20

 2        A    And that they then imparted it to the    10:45:21

 3   sheriff.                                            10:45:24

 4            It is also possible -- because this       10:45:24

 5   information has zero bearing on a criminal inquiry, 10:45:28

 6   or at least on my criminal inquiry, it is possible  10:45:31

 7   that I mentioned it directly to the sheriff as a    10:45:33

 8   thing of interest or -- or a thing of in passing    10:45:37

 9   type thing, because it had no bearing on any        10:45:42

10   elements of a crime being committed.                10:45:44

11            I simply do not have a clear recollection  10:45:46

12   of actually having that direct conversation with the 10:45:50

13   sheriff.  And in the subpoena, there's a reference  10:45:53

14   to one of the -- here, I'm rambling, not answering  10:45:57

15   your question directly.                             10:46:03

16            But in the subpoena, there's a reference   10:46:04

17   to -- to an actual meeting between the sheriff,     10:46:05

18   myself, the undersheriff, Murakami, and Satterfield. 10:46:09

19   And I don't have a clear recollection of that.      10:46:17

20            There were occasions when the four of us   10:46:19

21   would be together in a room.  It was pretty rare,   10:46:21

22   pretty unusual.  Again, I am the lowest rank on the 10:46:24

23   department and you're talking about the No. 1, the  10:46:27

24   No. 2 and then the No. 1's aide, who was a five or a 10:46:29

25   six rank above me.  And I just didn't deal with     10:46:35
```

Page 39

| 1 | those people of that rank that often. | 10:46:38 |
|---|---|---|
| 2 | Q    Uh-huh. | 10:46:41 |
| 3 | A    And I hope that helps you frame some other | 10:46:41 |
| 4 | questions. | 10:46:44 |
| 5 | Q    It does. | 10:46:45 |
| 6 | A    Good. | 10:46:45 |
| 7 | Q    I just want to make sure I -- because, you | 10:46:47 |
| 8 | know, what we always got to make sure is that we | 10:46:48 |
| 9 | cover kind of all the pieces, because if it comes | 10:46:51 |
| 10 | back at trial and if you have to testify at trial, | 10:46:54 |
| 11 | we don't hear something that's going to surprise us. | 10:46:56 |
| 12 | A    I understand. | 10:46:58 |
| 13 | Q    So let me just start that -- so to the | 10:46:59 |
| 14 | extent you have any kind of memory of a conversation | 10:47:02 |
| 15 | with any one of those three individuals, the | 10:47:06 |
| 16 | sheriff, undersheriff or chief of staff, do you | 10:47:09 |
| 17 | recall at all where that conversation may have | 10:47:11 |
| 18 | happened? | 10:47:14 |
| 19 | A    I don't.  I don't.  I'm sorry. | 10:47:19 |
| 20 | Q    You don't have to apologize, sir.  Just to | 10:47:24 |
| 21 | the best of your recollection. | 10:47:26 |
| 22 | And -- well, let me ask it this way:  To | 10:47:27 |
| 23 | the extent you met with any of those three | 10:47:30 |
| 24 | individuals, whether it was one or at any particular | 10:47:32 |
| 25 | time, it sounds like it wasn't that much, but where | 10:47:37 |

Page 40

```
 1    STATE OF CALIFORNIA        )

 2    COUNTY OF LOS ANGELES      )   ss.

 3

 4         I, Kimberly A. Edelen, C.S.R. No. 9042, in and

 5    for the State of California, do hereby certify:

 6         That prior to being examined, the witness named

 7    in the foregoing deposition was by me duly sworn to

 8    testify the truth, the whole truth and nothing but

 9    the truth;

10         That said deposition was taken down by me in

11    shorthand at the time and place therein named, and

12    thereafter reduced to typewriting under my

13    direction, and the same is a true, correct and

14    complete transcript of said proceedings;

15         That if the foregoing pertains to the original

16    transcript of a deposition in a Federal Case, before

17    completion of the proceedings, review of the

18    transcript { } was {X} was not requested.

19         I further certify that I am not interested in

20    the event of the action.

21         Witness my hand this 17th day of April, 2025.

22

23

24

25         KIMBERLY A. EDELEN, C.S.R. NO. 9042
```

Page 70

```
 1   BRIAN NEACH, ESQ.

 2   BNEACH@MILLERBARONDESS.COM

 3                                    April 17, 2025

 4   RE: Villanueva, Alex v. County Of Los Angeles, Et Al.

 5   4/14/2025, Mark Lillienfeld, (#7246491).

 6   The above-referenced transcript has been

 7   completed by Veritext Legal Solutions and

 8   review of the transcript is being handled as follows:

 9   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20      Contact Veritext when the sealed original is required.

21   __ Waiving the CA Code of Civil Procedure per Stipulation of

22      Counsel - Original transcript to be released for signature

23      as determined at the deposition.

24   __ Signature Waived - Reading & Signature was waived at the

25      time of the deposition.
```

Page 71

1    __ Federal R&S Requested (FRCP 30(e)(1)(B) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9

10   xx Federal R&S Not Requested - Reading & Signature was not

11       requested before the completion of the deposition.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<div align="right">Page 72</div>

# EXHIBIT 17

EXHIBIT 17 - Page 232

CONFIDENTIAL

```
 1                  UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

 3

 4

 5      ALEX VILLANUEVA,                    )
                                            )
 6                   Plaintiff,             )
                                            ) Case No.
 7           vs.                            ) 2:24-cv004979
                                            ) SVW (JCx)
 8      COUNTY OF LOS ANGELES, COUNTY       )
        OF LOS ANGELES SHERIFF'S            )
 9      DEPARTMENT, et al.,                 )
                                            )
10                   Defendants.            )
        _____)

11

12

13                      CONFIDENTIAL

14                      VOLUME II

15          VIDEOTAPED VIDEOCONFERENCE DEPOSITION

16                  OF ALEX VILLANUEVA

17               TUESDAY, APRIL 22, 2025

18

19

20

21

22

23      JOB NO.:  7333573

24

25      REPORTED BY TARA SANDFORD, CSR NO. 3374, RPR
```

Page 335

CONFIDENTIAL

```
 1        VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF ALEX
 2   VILLANUEVA, taken on behalf of Defendants, at 10:45
 3   a.m., on Tuesday, April 22, 2025, at 2121 Avenue of the
 4   Starts, Suite 2000, Los Angeles, California, before Tara
 5   Sandford, CSR No. 3374, RPR.
 6
 7   APPEARANCES OF COUNSEL:
 8   For Plaintiff:
 9           SHEGERIAN & ASSOCIATES
             BY:  ALEX DiBONA, ESQ.
10           11520 San Vicente Boulevard
             Los Angeles, California 90049
11           310.860.0770
             adibona@shegerianlaw.com
12
13   For Defendants:
14           MILLER BARONDESS
             BY:  STEVEN WILLIAMSON, ESQ.
15           2121 Avenue of the Starts, Suite 2600
             Los Angeles, California 90067
16           310.552.4400
             swilliamson@millerbarondess.com
17
18   Also Present:  Julio Pena, Videographer
19
20
21
22
23
24
25
```

Page 336

CONFIDENTIAL

1    reasons we are back today is to follow up on some of the    10:49:54

2    questions that were asked at the first deposition that

3    took place, I believe, on February 28?

4        A.   Yes.

5        Q.   If you recall at that deposition, you spoke, I    10:50:07

6    think, about a couple of meetings you had in advance of

7    the deposition with your attorneys; correct?

8        A.   Yes.

9        Q.   One of the questions asked to you was who were

10   the individuals present at those meetings; correct?    10:50:21

11       A.   Yes.

12       Q.   Let's start with the first meeting you had.

13   What individuals were present at the meeting you had

14   with your attorneys, that first meeting?

15       A.   That was, I believe, myself, Mr. Shegerian    10:50:39

16   and -- we had two meetings in your office.  I don't know

17   if you were present in the first meeting or not.  I

18   can't remember that far back.

19       Q.   And what about -- so, yourself, Mr. Shegerian,

20   and you can't recall if Mr. DiBona was there?    10:50:57

21       A.   Yes.

22       Q.   What about the second meeting?

23       A.   That was myself.  My friend John Satterfield,

24   Shegerian, Mr. DiBona, and a third attorney, a female.

25   I can't remember her name.    10:51:15

Page 340

CONFIDENTIAL

```
 1        Q.   For that second meeting, do you remember what    10:51:18

 2   the date of that meeting was?

 3        A.   No idea.

 4        Q.   Would that meeting have been in this year,

 5   2025, or last year?                                        10:51:27

 6        A.   Last year.

 7        Q.   Would that meeting have been before you filed

 8   your Complaint or afterwards?

 9        A.   I believe before.

10        Q.   Why was Mr. Satterfield present at that          10:51:40

11   meeting?

12        A.   He was my chief of staff when I was in office,

13   and, obviously, he remembered the chain of events pretty

14   well.

15        Q.   Was this meeting in person at the Shegerian law  10:51:53

16   firm office?

17        A.   Yes.

18        Q.   What was discussed at that meeting?

19        A.   I think we went through what transpired from

20   when I took office, the county's relentless efforts to     10:52:09

21   undermine my administration, and defame me in the public

22   eye, which culminated in the deny for rehire after I

23   left office.

24        Q.   Do you recall, did Mr. Satterfield speak at

25   that meeting?                                              10:52:34
```

Page 341

CONFIDENTIAL

```
1         A.   We split up at one point.  And when he spoke,    10:52:35

2    he filled in, you know, my recollection of events.

3         Q.   When you say you split up, what do you mean?

4    Do you mean you went to separate rooms?

5         A.   Yeah, at one point we split up.                  10:52:51

6         Q.   You were in a room with your attorneys, and

7    Mr. Satterfield was in a different room with attorneys?

8         A.   I don't know what he was doing.  I know I was

9    speaking with my attorneys.

10        Q.   I don't want to ask you about anything you       10:53:02

11   spoke to your attorneys about while you were in a room

12   with just your attorneys.

13             But when Mr. Satterfield was in the room, do

14   you recall anything specific he said?

15        A.   We were just going through the facts of the      10:53:14

16   case.  I don't recall anything particular other than,

17   obviously, there is a lot of history.

18        Q.   Did Mr. Satterfield have any documents he

19   brought with him on that meeting?

20        A.   I don't recall.                                  10:53:33

21        Q.   Do you have any documents that you brought with

22   you at that meeting?

23        A.   I have documents that I turned over to my

24   attorneys.

25        Q.   Again, this was prior to your filing of the      10:53:50
```

Page 342

CONFIDENTIAL

```
 1    Complaint?                                              10:53:52

 2        A.   Yes.

 3        Q.   Do you recall submitting a tort claim to the

 4    County in this action as a precursor to filing your

 5    lawsuit?                                                10:54:00

 6        A.   Yes.

 7        Q.   Do you remember if this meeting with

 8    Mr. Satterfield and your attorneys, was that before or

 9    after the filing of your tort claim?

10        A.   I think it was before.                         10:54:15

11        Q.   Do you remember if your attorneys asked any

12    questions of Mr. Satterfield?

13        A.   I don't recall.

14        Q.   Do you remember if your attorneys asked any

15    questions of you while Mr. Satterfield was in the room? 10:54:36

16        A.   I don't recall, other than just clarification

17    of the chain of events.

18        Q.   This meeting where Mr. Satterfield was present

19    at the offices of your attorneys, was that the first

20    time you had met with your attorneys?                   10:54:53

21        A.   I think we met once before.

22        Q.   Who was it that suggested that Mr. Satterfield

23    should be present at this meeting?

24        A.   I believe I did.

25        Q.   Was there any specific reason why you suggested 10:55:15
```

CONFIDENTIAL

```
 1    Mr. Satterfield should be there?                    10:55:17

 2        A.   The obvious.  He was my chief of staff.  He was

 3    intimately familiar with my struggles with the Board of

 4    Supervisors.

 5        Q.   Has Mr. Satterfield reviewed any of the legal    10:55:43

 6    documents that your attorneys have prepared in this

 7    case?

 8        A.   I can't speak for Mr. Satterfield.

 9        Q.   Have you sent Mr. Satterfield any of the

10    documents from this case?                           10:55:51

11        A.   No.

12        Q.   Do you know if your attorneys have sent

13    Mr. Satterfield any of the documents in this case?

14        A.   I can't speak for what my attorneys have done.

15        Q.   Do you know if Mr. Satterfield reviewed a copy    10:56:05

16    of the Complaint that was filed in this case before it

17    was filed?

18        A.   I wouldn't have known.  But I would assume.

19        Q.   Why would you have assumed that?

20        A.   Once the case is filed, it's public.          10:56:18

21        Q.   Short of that.  I can ask that question a

22    better way.

23            Do you know if Mr. Satterfield saw a copy of

24    the Complaint prior to it being filed?

25        A.   I would have no idea.                        10:56:29
```

Page 344

CONFIDENTIAL

```
 1        Q.   And, again, based on your recollection as you      11:17:38

 2   sit here today, is that the first time that the COVID

 3   vaccine mandates have been mentioned in a legal document

 4   by you?

 5        A.   I'm not sure.                                       11:17:50

 6        Q.   And the First Amended Complaint also references

 7   Fulgent; correct?

 8        A.   I believe so.

 9        Q.   And the same question, based on your

10   recollection, is that the first time that a legal           11:18:00

11   document filed by you references Fulgent?

12        A.   When you say legal document, I produced a lot

13   of documents in office I assume were legal documents.

14        Q.   Let's -- for the purposes of narrowing it a

15   little bit.                                                  11:18:19

16        A.   We mentioned all those in writing when I was in

17   office.  In fact, I believe you have those documents.

18        Q.   It wasn't mentioned in your tort claim seeking

19   relief from the County; correct?

20        A.   I think it was incorporated by reference.         11:18:32

21        Q.   And Fulgent was not specifically mentioned, as

22   we discussed, in the original Complaint seeking leave

23   from the County; correct?

24        A.   Yes.

25        Q.   Do you recall when we -- do you recall in your    11:18:59

                                              Page 355
```

CONFIDENTIAL

```
 1    first deposition session in February you mentioned to      11:19:08

 2    Mr. Tokoro that you had, at one point, a conversation

 3    with Mr. Satterfield regarding the disposition of the

 4    Max Huntsman and Esther Lim complaints that were filed

 5    against you?                                                11:19:25

 6         A.   Vaguely.

 7         Q.   Do you recall what it was that Mr. Satterfield

 8    told you when he spoke to you about those complaints?

 9         A.   I don't recall specifically.

10         Q.   Do you recall anyone ever telling you that       11:19:40

11    those complaints filed by Esther Lim and Max Huntsman

12    had been resolved by the department?

13         A.   Yes.

14         Q.   And just to be clear, I apologize.  When I say

15    "department," I mean the Los Angeles County Sheriff's      11:19:54

16    Department; right?

17              Who do you recall having that conversation

18    with?

19         A.   I had -- I had one when I was in office with

20    Satterfield, and then I believe with Eddy Alvarez.         11:20:06

21         Q.   Do you remember at what point in that office

22    you had that conversation with Mr. Satterfield?

23         A.   This is late in 2022.  I can't pinpoint exactly

24    when.

25         Q.   Do you remember if anyone else was with you      11:20:40
```

Page 356

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | when you spoke to Mr. Satterfield about the complaints? | 11:20:43 |
| 2 | A.   Not that I recall. | |
| 3 | Q.   Do you remember what it was that | |
| 4 | Mr. Satterfield told you? | |
| 5 | A.   Something about they looked into it, and it was | 11:20:52 |
| 6 | a -- it was, I think, a 212.  It was nothing there. | |
| 7 | Q.   When you say "they," who do you specifically | |
| 8 | mean when you say they looked into it? | |
| 9 | A.   Our department investigators. | |
| 10 | Q.   And would that have been with the Internal | 11:21:13 |
| 11 | Affairs Bureau or someone else? | |
| 12 | A.   Whoever Eddy Alvarez had assigned the tasks.  I | |
| 13 | believe it was someone from -- I don't know if it was a | |
| 14 | commander or somebody who had looked into it. | |
| 15 | Q.   Do you happen to remember his name? | 11:21:33 |
| 16 | A.   It might have been Wolak. | |
| 17 | Q.   Do you know Commander Wolak's first name? | |
| 18 | A.   There's three of them. | |
| 19 | I think this one is going to be Jason Wolak. | |
| 20 | Actually, there is four of them. | 11:21:58 |
| 21 | Q.   Are they all related or just coincidence? | |
| 22 | A.   They are all brothers. | |
| 23 | Q.   Do you ever recall talking with Commander Wolak | |
| 24 | about the Huntsman or Lim complaints that were filed | |
| 25 | against you? | 11:22:12 |

Page 357

CONFIDENTIAL

```
 1        A.    No.                                          11:22:12

 2        Q.    That conversation you have -- you had with

 3   Mr. Satterfield regarding the Huntsman and Lim

 4   complaints, that wasn't mentioned in your Complaint;

 5   correct?                                                11:22:29

 6        A.    Not that I recall.

 7        Q.    You don't have it here in front of you, but, to

 8   the best of your recollection, it wasn't mentioned in

 9   your First Amended Complaint; correct?

10        A.    Not that I recall.                           11:22:39

11        Q.    Was there a reason that was omitted from your

12   Complaints?

13        A.    You have to ask my attorneys.

14        Q.    You understand since the last time you were

15   here, more depositions have been taken place in this    11:23:37

16   case; correct?

17        A.    Yes.

18        Q.    And that we have deposed some of the

19   individuals that you identified as people with knowledge

20   about your emotional distress damages?                  11:23:48

21        A.    Yes.

22        Q.    You understand that we're deposing Miss

23   Villanueva tomorrow on that topic; correct?

24        A.    Yes.

25        Q.    Is it fair to say that you and Miss Villanueva 11:24:07
```

Page 358

CONFIDENTIAL

```
 1    are close?                                          11:24:09

 2        A.   Is that a trick question?

 3        Q.   No, not at all.

 4        A.   Married for many, many years, yes.

 5        Q.   Is she someone you often talk to about your   11:24:20

 6    feelings?

 7        A.   Yes.

 8        Q.   Is it fair to say she probably knows you better

 9    than anyone?

10        A.   Yes.                                       11:24:34

11        Q.   Is she someone that if you're feeling a certain

12    way emotionally, you might confide in her, where you

13    might not confide in other folk?

14        A.   Yes.

15        Q.   Is she someone with whom you talk about, apart   11:24:52

16    from your emotional well-being, about physical health

17    things that might be going on in your life?

18        A.   Yes.

19        Q.   Does she assist you when you are doing your

20    Facebook Live sessions on the Internet?            11:25:18

21        A.   Yes.

22        Q.   She helps field questions and comments and that

23    sort of thing?

24        A.   Yes.

25        Q.   Does she usually sit on every session or just   11:25:33
```

                                                    Page 359

CONFIDENTIAL

```
 1   STATE OF CALIFORNIA,            )

 2   COUNTY OF SANTA BARBARA.        ) ss.

 3

 4        I, TARA SANDFORD, RPR, CSR No. 3374, in and for the

 5   State of California, hereby certify:

 6        That prior to being examined, the witness named in

 7   the foregoing deposition was duly sworn by me to testify

 8   the truth, the whole truth, and nothing but the truth;

 9        That said deposition was taken down by me in

10   shorthand at the time and place therein named, and

11   thereafter reduced to typewriting under my direction,

12   and the same is a true, correct and complete transcript

13   of said proceedings;

14        That if the foregoing pertains to the original

15   transcript of an examination in a Federal Case, before

16   completion of the proceedings, review of the transcript

17   {xx } was   {  } was not required.

18        I further certify that I am not interested in the

19   event of the action.

20        Witness my hand this  April 23, 2025.

21   2025, at Santa Barbara, California.

22

23

24        TARA SANDFORD, CSR NO. 3374

25

                                            Page 377
```

EXHIBIT 17 - Page 245

CONFIDENTIAL

```
1      ALEX DiBONA

2      adibona@shegerianlaw.com

3                                        April 23, 2025

4  RE: Villanueva, Alex v. County Of Los Angeles, Et Al.

5  4/22/2025, Alex Villanueva , Vol 2, (#7333573).

6  The above-referenced transcript has been

7  completed by Veritext Legal Solutions and

8  review of the transcript is being handled as follows:

9  __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10     to schedule a time to review the original transcript at

11     a Veritext office.

12 _XX_ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13     Transcript - The witness should review the transcript and

14     make any necessary corrections on the errata pages included

15     below, notating the page and line number of the corrections.

16     The witness should then sign and date the errata and penalty

17     of perjury pages and return the completed pages to all

18     appearing counsel within the period of time determined at

19     the deposition or provided by the Code of Civil Procedure.

20     Contact Veritext when the sealed original is required.

21 __ Waiving the CA Code of Civil Procedure per Stipulation of

22     Counsel - Original transcript to be released for signature

23     as determined at the deposition.

24 __ Signature Waived - Reading & Signature was waived at the

25     time of the deposition.
```

EXHIBIT 17 - Page 246

CONFIDENTIAL

1    __ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, noting the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 379

EXHIBIT 17 - Page 247

# EXHIBIT 18

EXHIBIT 18 - Page 248

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Mahru Madjidi, Esq., State Bar No. 297906
MMadjidi@Shegerianlaw.com
Alex Di Bona, Esq., State Bar No. 265744
ADiBona@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number:      (310) 860 0770
Facsimile Number:      (310) 860 0771

Attorneys for Plaintiff,
ALEX VILLANUEVA

# THE UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX VILLANUEVA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100, inclusive,<br><br>　　　　Defendants. | Case No.: 2:24-cv-04979-SVW-JC<br><br>**[Assigned to Hon. Stephen V. Wilson, and Magistrate Judge Jacqueline Chooljian]**<br><br>**PLAINTIFF ALEX VILLANUEVA'S RULE 26 DISCLOSURES**<br><br>Trial Date: June 3, 2025<br>Action Filed: June 13, 2024 |

**EXHIBIT 18 - Page 249**

Plaintiff Alex Villanueva ("Disclosing party" or "Plaintiff") hereby submits the following disclosures in accordance with Fed. R. Civ. P. 26 ("Rule 26")

**A. Persons with Knowledge**

Alex Villanueva, who may be contacted through his counsel of record, all claims and damages.

Ester Lim, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Max Huntsman, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Robert Luna, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Ron Kopperud, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Sergio Escobedo whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Laura Lecrivain, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement

on the "Do No Rehire List."

Robert Yang, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Mercedes Cruz, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Mercedes Cruz, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Constance Komoroski, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Keri Blakinger, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, has knowledge of Plaintiff's placement on the "Do Not Rehire list".

Hilda Solis, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Holly J. Mitchell, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Lindsey Horvath, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Janice Hahn, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Kathryn Barger, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Christina Diaz Herrera, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, is believed to have knowledge of Plaintiff's First Amended Activity and is has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Eddie A. Alvarez, whose contact information is not currently known to Plaintiff but is believed to be known to defendant, believed to have knowledge of Defendant County of Los Angeles Investigation into Plaintiff.

John Satterfield, Plaintiff will meet and confer with counsel of record on providing contact information, believed to have knowledge of Defendant County of Los Angeles Investigation into Plaintiff as well as Plaintiff's First Amendment Activity.

**B. Documents**

Pursuant to Rule 26(a)(1)(A)(ii), Plaintiff will be producing a copy of these documents, currently in his care, custody, possession or control.

**C. Damages**

Economic Damages of Past and Future Loss of Earnings. Plaintiff is unable to give a precise calculation of these damages without expert testimony but it would be the

amount Plaintiff would have earned should he be able to return to work for Defendant absent their unlawful acts. Economic damages are believed to be well more than $1,000,000.00

Economic Damages of Past and Future Loss Emotional Distress. Plaintiff is unable to give a precise calculation of these damages without expert testimony and there is no fixed or precise calculation for these damages. Non-Economic damages are believed to be at least $25,000,000.00.

Plaintiff will seek all attorney fees, costs, and interest and injunctive relief as the prevailing party. Plaintiff is seeking the injunctive relief of being removed from the Do Not Rehire List.

**D. Insurance**

Plaintiff is unaware of any insurance.

**E. Reservation of Rights**

Plaintiff reserves the right to modify, supplement and amend these disclosures as discovery is continuing.


Dated:  January 29, 2025            SHEGERIAN & ASSOCIATES, INC.

By:   _Alex DiBona_____

Alex DiBona, Esq.

Attorneys for Plaintiff,
ALEX VILLANUEVA

1 | **VILLANUEVA V. COUNTY OF LOS ANGELES, et al.    USDC Case No. 2:24-cv-04979-SVW-JC**

2 | **PROOF OF SERVICE**

3 | **UNITED STATES DISTRICT COURT,**

4 | **CENTRAL DISTRICT OF CALIFORNIA**

5 |     I am an employee in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 11520 San Vicente Boulevard Los Angeles, California 90049.

7 |     On January 29, 2025, I served the foregoing document, described as **"PLAINTIFF ALEX VILLANUEVA'S RULE 26 DISCLOSURES,"** on all interested parties in this action as follows:

9 | **Louis R. Miller, Esq.**
**Jason H. Tokoro, Esq,**
**Steven G. Williamson, Esq.**
**Miller Barondess, LLP**
**2121 Avenue of the Stars, Suite 2600**
**Los Angeles, CA 90067**
**smiller@millerbarondess.com**
**jtokoro@millerbarondess.com**

14 | ☒   **BY ELECTRONIC MAIL:**  I sent these document(s) to the address above and did not receive a bounce back or undeliverable message.

15 | ☒   **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

17 | Executed on January 29, 2025, at Los Angeles, California

19 | *Amelia Sanchez*
Amelia Sanchez

**EXHIBIT 18 - Page 254**

# EXHIBIT 19

EXHIBIT 19 - Page 255

1   Carney R. Shegerian, Esq., State Bar No. 150461
    CShegerian@Shegerianlaw.com
2   Mahru Madjidi, Esq., State Bar No. 297906
    MMadjidi@Shegerianlaw.com
3   Alex Di Bona, Esq., State Bar No. 265744
    ADiBona@Shegerianlaw.com
4   SHEGERIAN & ASSOCIATES, INC.
    11520 San Vicente Boulevard
5   Los Angeles, California 90049
    Telephone Number:      (310) 860 0770
6   Facsimile Number:      (310) 860 0771

7   Attorneys for Plaintiff,
    ALEX VILLANUEVA

8

9              THE UNITED STATES DISTRICT COURT FOR THE

10         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12   ALEX VILLANUEVA                    Case No.: 2:24-cv-04979-SVW-JC

13        Plaintiff,                    **[Assigned to Hon. Stephen V. Wilson, and
                                        Magistrate Judge Jacqueline Chooljian]**
14   vs.
                                        **PLAINTIFF ALEX VILLANUEVA'S**
15   COUNTY OF LOS ANGELES,             **FURTHER CONTINUING RULE 26**
     COUNTY OF LOS ANGELES              **DISCLOSURES**
16   SHERIFF'S DEPARTMENT, LOS
     ANGELES COUNTY BOARD OF
17   SUPERVISORS, COUNTY EQUITY         Trial Date: June 3, 2025
     OVERSIGHT PANEL, LOS               Action Filed: June 13, 2024
18   ANGELES COUNTY OFFICE OF
     INSPECTOR GENERAL,
19   CONSTANCE KOMOROSKI,
     MERCEDES CRUZ, ROBERTA
20   YANG, LAURA LECRIVAIN,
     SERGIO V. ESCOBEDO, RON
21   KOPPERUD, ROBERT G. LUNA,
     MAX-GUSTAF HUNTSMAN,
22   ESTHER LIM, and DOES 1 to 100,
     inclusive,
23
          Defendants.
24

25

26

27

28

-1-
PLAINTIFF'S FURTHERING CONTINUING RULE 26 DISCLOSURES

EXHIBIT 19 - Page 256

Plaintiff Alex Villanueva ("Disclosing party" or "Plaintiff") hereby submits the following disclosures in accordance with Fed. R. Civ. P. 26 ("Rule 26")

**A. Persons with Knowledge**

Alvarez, Eddie A., whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Defendant County of Los Angeles Investigation into Plaintiff.

Barger, Kathryn, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Blakinger, Keri, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, has knowledge of Plaintiff's placement on the "Do Not Rehire List."

Cruz, Mercedes, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Diaz Herrera, Christina, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Escobedo, Sergio, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Hahn, Janice, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's

**EXHIBIT 19 - Page 257**

placement on the "Do No Rehire List."

Horvath, Lindsey, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Huntsman, Max, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Komoroski, Constance, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Kopperud, Ron, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Lecrivain, Laura, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Lim, Ester, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Lopez, Maria E., who may be contacted through Plaintiff's counsel of record. Believed to have knowledge of Plaintiff's emotional distress damages.

Luna, Robert, whose contact information is not currently known to Plaintiff but is

believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Mitchell, Holly J., whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Satterfield, John, Plaintiff will meet and confer with counsel of record on providing contact information. Believed to have knowledge of Defendant County of Los Angeles Investigation into Plaintiff as well as Plaintiff's First Amendment Activity.

Solis, Hilda, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List."

Villanueva, Alex, who may be contacted through his counsel of record, all claims and damages.

Villanueva, Vivian, who may be contacted through Plaintiff's counsel of record. Believed to have knowledge of Plaintiff's emotional distress damages.

Yang, Robert, whose contact information is not currently known to Plaintiff but is believed to be known to Defendant, is believed to have knowledge of Plaintiff's First Amended Activity and has knowledge of Defendant's stated reason for Plaintiff's placement on the "Do No Rehire List.".

Gil Carillo, who may be contacted through Plaintiff's counsel of record. Believed to have knowledge of Plaintiff's emotional distress damages.

Nick Wilson, who may be contacted through Plaintiff's counsel of record. Believed to have knowledge of Plaintiff's emotional distress damages.

Laureen Perri, who may be contacted through Plaintiff's counsel of record. Believed to have knowledge of Plaintiff's emotional distress damages.

**B. Documents**

Pursuant to Rule 26(a)(1)(A)(ii), Plaintiff will be producing a copy of these documents, currently in his care, custody, possession or control.

**C. Damages**

Economic Damages of Past and Future Loss of Earnings. Plaintiff is unable to give a precise calculation of these damages without expert testimony but it would be the amount Plaintiff would have earned should he be able to return to work for Defendant absent their unlawful acts. Economic damages are believed to be well more than $1,000,000.00

Economic Damages of Past and Future Loss Emotional Distress. Plaintiff is unable to give a precise calculation of these damages without expert testimony and there is no fixed or precise calculation for these damages. Non-Economic damages are believed to be at least $25,000,000.00.

Plaintiff will seek all attorney fees, costs, and interest and injunctive relief as the prevailing party. Plaintiff is seeking the injunctive relief of being removed from the Do Not Rehire List.

**D. Insurance**

Plaintiff is unaware of any insurance.

**E. Reservation of Rights**

Plaintiff reserves the right to modify, supplement and amend these disclosures as discovery is continuing.

Dated:  February 12, 2025          SHEGERIAN & ASSOCIATES, INC.

By: _Alex DiBona_____
      Alex DiBona, Esq.

      Attorneys for Plaintiff
      ALEX VILLANUEVA

**EXHIBIT 19 - Page 260**

1  **VILLANUEVA V. COUNTY OF LOS ANGELES, et al.    USDC Case No. 2:24-cv-04979-SVW-JC**

2  **PROOF OF SERVICE**

3  **UNITED STATES DISTRICT COURT,**

4  **CENTRAL DISTRICT OF CALIFORNIA**

5     I am an employee in the County of Los Angeles, State of California.  I am over the
6  age of 18 and not a party to the within action; my business address is 11520 San Vicente
   Boulevard Los Angeles, California 90049.

7     On February 12, 2025, I served the foregoing document, described as **"PLAINTIFF
   ALEX VILLANUEVA'S FURTHER CONTINUING RULE 26 DISCLOSURES"**
8  on all interested parties in this action as follows:

9  **Louis R. Miller, Esq.**
   **Jason H. Tokoro, Esq,**
10 **Steven G. Williamson, Esq.**
   **Miller Barondess, LLP**
11 **2121 Avenue of the Stars, Suite 2600**
   **Los Angeles, CA 90067**
12 **smiller@millerbarondess.com**
   **jtokoro@millerbarondess.com**
13 **swilliamson@millerbarondess.com**

14 ☒    **BY ELECTRONIC MAIL:**  I sent these document(s) to the address above and did
       not receive a bounce back or undeliverable message.
15
   ☒    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of
16     this Court at whose direction the service was made.

17    Executed on February 12, 2025, at Los Angeles, California

18
19                                    _Amelia Sanchez_
                                      Amelia Sanchez
20

21

22

23

24

25

26

27

28

**EXHIBIT 19 - Page 261**

# EXHIBIT 20

EXHIBIT 20 - Page 262

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

| | | |
|---|---|---|
| ALEX VILLANUEVA | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:24-CV-04979 SVW (JCx) |
| | ) | |
| COUNTY OF LOS ANGELES, ET AL. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Vivian Villanueva, c/o Alex DiBona, Shegerian & Associates, 11520 San Vicente Blvd., LA, CA 90049

*(Name of person to whom this subpoena is directed)*

☒ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| | |
|---|---|
| Place: Miller Barondess, LLP<br>    2121 Avenue of the Stars, Suite 2600 LA, CA 90067 | Date and Time:<br>March 20, 2025 at 10:00 a.m. |

The deposition will be recorded by this method:  Stenographically and by video recording, including through the instant visual display of testimony (e.g., LiveNote)

☒ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

   See Attachment A

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  February 20, 2025

| | | |
|---|---|---|
| | *CLERK OF COURT* | |
| | | OR |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT 20 - Page 263**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                     _____
                                                                          *Server's signature*

                                                          _____
                                                                          *Printed name and title*

                                                          _____
                                                                          *Server's address*

Additional information regarding attempted service, etc.:

**EXHIBIT 20 - Page 264**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

   **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

   **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

   **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

   **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

   **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

   **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

   **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT 20 - Page 265**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1

2

**ATTACHMENT A**

**DEFINITIONS**

3    1.    The terms "COMMUNICATION," "COMMUNICATIONS" and

4  "COMMUNICATE" mean any communication, whether oral, written, or any other

5  action intended to communicate any meaning, including, but not limited to, both: (a)

6  verbal COMMUNICATIONS, whether made in PERSON or by telephone, audio

7  recording, or other means; and (b) written COMMUNICATIONS, including internal

8  emails and correspondence, letters, facsimiles, electronic mail, text messages, direct

9  messages via any online portal or website, and telegraphs.

10    2.    The "COUNTY" means the County of Los Angeles, its employees,

11  agents, or representatives acting on its behalf, excluding counsel representing any

12  COUNTY DEFENDANT.

13    3.    The term "DEFENDANTS" means COUNTY OF LOS ANGELES,

14  COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES

15  COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT

16  PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL,

17  CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA

18  LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA,

19  MAX HUNTSMAN, ESTHER LIM, individually or collectively.

20    4.    The terms "DOCUMENT" and "DOCUMENTS" shall be construed

21  under the broadest possible construction under the Federal Rules of Civil Procedure

22  and shall include without limitation COMMUNICATIONS, as well as written,

23  recorded, graphic, or other matter whether sent or received or made or used

24  internally, however produced or reproduced and whatever the medium on which it

25  was produced or reproduced (whether on paper, cards, charts, files, or printouts;

26  tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types

27  of voice recording or transcription; computer tapes, databases, e-mails; pictures,

28

**EXHIBIT 20 - Page 266**

1   photographs, slides, films, microfilms, motion pictures; or any other medium), and

2   any other tangible item or thing of readable, recorded, or visual material of whatever

3   nature, including without limitation originals, drafts, and all non-identical COPIES

4   of each document (which, by reason of any variation, such as the presence or

5   absence of handwritten notes or underlining, represents a distinct version). By way

6   of example, the term "documents" as used herein shall include without limitation:

7   correspondence; blueprints; memoranda; notes; diaries; letters; telegraphs;

8   telegrams; telexes; emails; minutes; agendas; contracts; reports; studies; checks;

9   statements; receipts; returns; summaries; pamphlets; circulars; press releases;

10  advertisements; books; inter-office and intraoffice COMMUNICATIONS;

11  handwritten or typewritten notes; notations or summaries of telephone

12  conversations, meetings, or conferences; bulletins; computer printouts; databases;

13  teletypes; telefax; invoices; worksheets; photographs; tape recordings; and all other

14  tangible items of readable, recorded, or visual material of any kind.

15      5.      The terms "PERSON" shall mean and refer to any natural individual,

16  corporation, firm, partnership, proprietorship, association, business, governmental

17  entity, joint venture, board, authority, commission, agency, or other organization.

18      6.      The terms "YOU," "YOUR," or "VILLANUEVA" shall mean or refer

19  to Vivian Villanueva and ANY person or persons acting on YOUR behalf,

20  including, but not limited to, YOUR attorneys, agents, accountants, advisors,

21  directors, investigators, officers, representatives, and employees.

22      7.      The term "PLAINTIFF" shall mean and refer to Plaintiff Alex

23  Villanueva, individually.

24      8.      The term "ACTION" shall mean this action, styled as *Villanueva v.*

25  *County of Los Angeles, et al.*, Case No. 2:24-cv-04979 SVW (JCx), in the United

26  States District Court for the Central District of California.

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

9.      The term "FAC" shall mean the operative First Amended Complaint filed in this LAWSUIT.

10.      The term "HUNTSMAN INVESTIGATION" shall mean or refer to the COUNTY'S investigation into the County Policy of Equity Complaint filed against VILLANUEVA by Max Huntsman, as alleged in the FAC.

11.      The term "LIM INVESTIGATION" shall mean or refer to the COUNTY'S investigation into the County Policy of Equity Complaint filed against VILLANUEVA by Esther Lim, as alleged in the FAC.

## DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 1:**

All COMMUNICATIONS with PLAINTIFF since January 2022.

**REQUEST FOR PRODUCTION NO. 2:**

ALL DOCUMENTS AND COMMUNICATIONS RELATING TO this ACTION.

**DEMAND FOR PRODUCTION NO. 3:**

ALL DOCUMENTS AND COMMUNICATIONS RELATING to PLAINTIFF's emotional distress claims in this ACTION.

**REQUEST FOR PRODUCTION NO. 4:**

ALL DOCUMENTS AND COMMUNICATIONS RELATING to PLAINTIFF being given a "Do Not Rehire" notation on his County personnel file as alleged in this ACTION.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the HUNTSMAN INVESTIGATION.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS and COMMUNICATIONS RELATING TO the LIM INVESTIGATION.

**REQUEST FOR PRODUCTION NO. 7:**

All COMMUNICATIONS between YOU and PLAINTIFF RELATING TO the COUNTY.

**REQUEST FOR PRODUCTION NO. 8:**

All COMMUNICATIONS between YOU and PLAINTIFF RELATING TO DEFENDANTS.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

718720.1

7

ATTACHMENT A TO SUBPOENA TO PRODUCE DOCUMENTS TO VIVIAN VILLANUEVA

EXHIBIT 20 - Page 269

1

## CERTIFICATE OF SERVICE

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

    At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 2121 Avenue of the Stars, Suite 2600, Los Angeles, CA 90067.

4

5

    On February 20, 2025, I served true copies of the following document(s) described as:

6

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION TO VIVIAN VILLANUEVA**

7

8

on the interested parties in this action as follows:

9

## SERVICE LIST

10

| Carney R. Shegerian | *Attorneys for Plaintiff* |
|---|---|
| Mahru Madjidi | ALEX VILLANUEVA |
| John David | |
| Alex DiBona | Tel.:    (310) 860-0770 |
| Angie Escalante (Staff) | Fax:    (310) 860-0771 |
| Calendar Clerk | Email:   CShegerian@Shegerianlaw.com |
| SHEGERIAN & ASSOCIATES, INC. | MMadjidi@Shegerianlaw.com |
| 11520 San Vicente Boulevard | JDavid@Shegerianlaw.com |
| Los Angeles, CA  90049 | YCardoza@Shegerianlaw.com |
| | ADiBona@shegerianlaw.com |
| | aescalante@shegerianlaw.com |
| | calendarclerk@shegerianlaw.com |

11

12

13

14

15

16

17

    **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address briding@millerbarondess.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

18

19

20

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

21

22

    Executed on February 20, 2025, at Los Angeles, California.

23

24
                                        */s / Brenda M. Riding*
                                        ─────────────────────

25                                        Brenda M. Riding

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**EXHIBIT 20 - Page 270**

# EXHIBIT 21

EXHIBIT 21 - Page 271

**From:**     Alex DiBona <adibona@shegerianlaw.com>
**Sent:**     Wednesday, March 12, 2025 5:22 PM
**To:**       Jason H. Tokoro; Steven Williamson
**Subject:**  Villanueva v COLA: Deposition Dates for Third Party Witnesses

Counsel, with respect to April 1 for John Satterfield, I have been informed that the date works for him and our office. However, Mr. Satterfield will be undergoing surgery soon in April and is under a restriction of no prolonged sitting or standing. Further, to drive he would need more medication which could impair his ability to testify. He is therefore requesting the deposition take place remotely where he will be able to sit and stand as necessary and, he will mean he not need an increase in medication. I am just passing long the message.

Also, with respect to Vivian Villanueva and Maria E. Lopez, I have bene informed that the dates (20th and 21st) no longer work for the witnesses (Plaintiff's counsel is still available), does March 27 or 28th work for you (I know we have Cruz on the 28th but we our office will have someone to cover).

**Alex DiBona** | Trial Attorney

# Shegerian & Associates

320 N Larchmont Boulevard | Los Angeles, CA 90004
Office: (310) 860-0770 | Facsimile: (310) 860-0771
adibona@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

**EXHIBIT 21 - Page 272**

# EXHIBIT 22

**EXHIBIT 22 - Page 273**

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

| | | |
|---|---|---|
| ALEX VILLANUEVA | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:24-CV-04979 SVW (JCx) |
| | ) | |
| COUNTY OF LOS ANGELES, ET AL. | ) | |
| *Defendant* | ) | |

## AMENDED SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   Vivian Villanueva, c/o Alex DiBona, Shegerian & Associates, 11520 San Vicente Blvd., LA, CA 90049

*(Name of person to whom this subpoena is directed)*

☒ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Miller Barondess, LLP | Date and Time: |
|---|---|
| 2121 Avenue of the Stars, Suite 2600 LA, CA 90067 | March 27, 2025 at 10:00 a.m. |

The deposition will be recorded by this method:   Stenographically and by video recording, including through the instant visual display of testimony (e.g., LiveNote)

☒ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Attachment A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   March 13, 2025

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT 22 - Page 274**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                         *Server's signature*

                                        _____
                                                         *Printed name and title*

                                        _____
                                                         *Server's address*

Additional information regarding attempted service, etc.:

**EXHIBIT 22 - Page 275**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT 22 - Page 276**

**ATTACHMENT A**

**DEFINITIONS**

1.     The terms "COMMUNICATION," "COMMUNICATIONS" and "COMMUNICATE" mean any communication, whether oral, written, or any other action intended to communicate any meaning, including, but not limited to, both: (a) verbal COMMUNICATIONS, whether made in PERSON or by telephone, audio recording, or other means; and (b) written COMMUNICATIONS, including internal emails and correspondence, letters, facsimiles, electronic mail, text messages, direct messages via any online portal or website, and telegraphs.

2.     The "COUNTY" means the County of Los Angeles, its employees, agents, or representatives acting on its behalf, excluding counsel representing any COUNTY DEFENDANT.

3.     The term "DEFENDANTS" means COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX HUNTSMAN, ESTHER LIM, individually or collectively.

4.     The terms "DOCUMENT" and "DOCUMENTS" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure and shall include without limitation COMMUNICATIONS, as well as written, recorded, graphic, or other matter whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, files, or printouts; tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, e-mails; pictures,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    photographs, slides, films, microfilms, motion pictures; or any other medium), and

2    any other tangible item or thing of readable, recorded, or visual material of whatever

3    nature, including without limitation originals, drafts, and all non-identical COPIES

4    of each document (which, by reason of any variation, such as the presence or

5    absence of handwritten notes or underlining, represents a distinct version). By way

6    of example, the term "documents" as used herein shall include without limitation:

7    correspondence; blueprints; memoranda; notes; diaries; letters; telegraphs;

8    telegrams; telexes; emails; minutes; agendas; contracts; reports; studies; checks;

9    statements; receipts; returns; summaries; pamphlets; circulars; press releases;

10   advertisements; books; inter-office and intraoffice COMMUNICATIONS;

11   handwritten or typewritten notes; notations or summaries of telephone

12   conversations, meetings, or conferences; bulletins; computer printouts; databases;

13   teletypes; telefax; invoices; worksheets; photographs; tape recordings; and all other

14   tangible items of readable, recorded, or visual material of any kind.

15       5.      The terms "PERSON" shall mean and refer to any natural individual,

16   corporation, firm, partnership, proprietorship, association, business, governmental

17   entity, joint venture, board, authority, commission, agency, or other organization.

18       6.      The terms "YOU," "YOUR," or "VILLANUEVA" shall mean or refer

19   to Vivian Villanueva and ANY person or persons acting on YOUR behalf,

20   including, but not limited to, YOUR attorneys, agents, accountants, advisors,

21   directors, investigators, officers, representatives, and employees.

22       7.      The term "PLAINTIFF" shall mean and refer to Plaintiff Alex

23   Villanueva, individually.

24       8.      The term "ACTION" shall mean this action, styled as *Villanueva v.*

25   *County of Los Angeles, et al.*, Case No. 2:24-cv-04979 SVW (JCx), in the United

26   States District Court for the Central District of California.

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    9.    The term "FAC" shall mean the operative First Amended Complaint

2 filed in this LAWSUIT.

3    10.    The term "HUNTSMAN INVESTIGATION" shall mean or refer to the

4 COUNTY'S investigation into the County Policy of Equity Complaint filed against

5 VILLANUEVA by Max Huntsman, as alleged in the FAC.

6    11.    The term "LIM INVESTIGATION" shall mean or refer to the

7 COUNTY'S investigation into the County Policy of Equity Complaint filed against

8 VILLANUEVA by Esther Lim, as alleged in the FAC.

9    **DOCUMENT REQUESTS**

10 **REQUEST FOR PRODUCTION NO. 1:**

11    All COMMUNICATIONS with PLAINTIFF since January 2022.

12 **REQUEST FOR PRODUCTION NO. 2:**

13    ALL DOCUMENTS AND COMMUNICATIONS RELATING TO this

14 ACTION.

15 **DEMAND FOR PRODUCTION NO. 3:**

16    ALL DOCUMENTS AND COMMUNICATIONS RELATING to

17 PLAINTIFF's emotional distress claims in this ACTION.

18 **REQUEST FOR PRODUCTION NO. 4:**

19    ALL DOCUMENTS AND COMMUNICATIONS RELATING to

20 PLAINTIFF being given a "Do Not Rehire" notation on his County personnel file as

21 alleged in this ACTION.

22 **REQUEST FOR PRODUCTION NO. 5:**

23    All DOCUMENTS and COMMUNICATIONS RELATING TO the

24 HUNTSMAN INVESTIGATION.

25 **REQUEST FOR PRODUCTION NO. 6:**

26    All DOCUMENTS and COMMUNICATIONS RELATING TO the LIM

27 INVESTIGATION.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

718720.1

6

**REQUEST FOR PRODUCTION NO. 7:**

All COMMUNICATIONS between YOU and PLAINTIFF RELATING TO the COUNTY.

**REQUEST FOR PRODUCTION NO. 8:**

All COMMUNICATIONS between YOU and PLAINTIFF RELATING TO DEFENDANTS.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

718720.1

7

ATTACHMENT A TO SUBPOENA TO PRODUCE DOCUMENTS TO VIVIAN VILLANUEVA

EXHIBIT 22 - Page 280

1

<u>**CERTIFICATE OF SERVICE**</u>

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My

4

business address is 2121 Avenue of the Stars, Suite 2600, Los Angeles, CA 90067.

5

On March 13, 2025, I served true copies of the following document(s) described as:

6

7

**AMENDED SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION TO VIVIAN VILLANUEVA**

8

on the interested parties in this action as follows:

9

<u>**SERVICE LIST**</u>

10

Carney R. Shegerian                    *Attorneys for Plaintiff*
Mahru Madjidi                          ALEX VILLANUEVA

11

John David
Alex DiBona                            Tel.:    (310) 860-0770

12

Angie Escalante (Staff)                Fax:     (310) 860-0771
Calendar Clerk                         Email:   CShegerian@Shegerianlaw.com

13

SHEGERIAN & ASSOCIATES, INC.                    MMadjidi@Shegerianlaw.com
11520 San Vicente Boulevard                     JDavid@Shegerianlaw.com

14

Los Angeles, CA 90049                           YCardoza@Shegerianlaw.com
                                                ADiBona@shegerianlaw.com

15

                                                aescalante@shegerianlaw.com
                                                calendarclerk@shegerianlaw.com

16

17

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic

18

transmission, I caused the document(s) to be sent from e-mail address briding@millerbarondess.com to the persons at the e-mail addresses listed in the

19

Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

20

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office

21

of a member of the bar of this Court at whose direction the service was made.

22

Executed on March 13, 2025, at Los Angeles, California.

23

24

                                    */ s / Brenda M. Riding*

25

                                    Brenda M. Riding

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

# EXHIBIT 23

EXHIBIT 23 - Page 282

| | |
|---|---|
| **From:** | Alex DiBona <adibona@shegerianlaw.com> |
| **Sent:** | Thursday, March 27, 2025 7:18 AM |
| **To:** | Jason H. Tokoro; Steven Williamson |
| **Subject:** | Villanueva v COLA |

Counsel, I have been informed Ms. Villanueva is unexpectedly ill (don't have all the information yet) but she will not be able to appear today. I will look into getting a new date as soon as she recovers.

Get Outlook for iOS

**Alex DiBona** | Trial Attorney

# Shegerian & Associates

320 N Larchmont Boulevard | Los Angeles, CA 90004
Office: (310) 860-0770 | Facsimile: (310) 860-0771
adibona@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

**EXHIBIT 23 - Page 283**

# EXHIBIT 24

EXHIBIT 24 - Page 284

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

| | | |
|---|---|---|
| ALEX VILLANUEVA | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. 2:24-cv-04979 SVW (JCx) |
| COUNTY OF LOS ANGELES, et al. | ) | |
| _Defendant_ | ) | |

## SECOND AMENDED SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Vivian Villanueva, c/o Alex DiBona, Shegerian & Associates, 11520 San Vicente Blvd., LA, CA 90049

_(Name of person to whom this subpoena is directed)_

☒ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Miller Barondess, LLP<br>    2121 Avenue of the Stars, Suite 2600 LA, CA 90067 | Date and Time:<br>    April 23, 2025 at 10:00 a.m. |
|---|---|

The deposition will be recorded by this method: Stenographically and by video recording, including through the instant visual display of testimony (e.g., LiveNote)

☒ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

  See Attachment A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: April 3, 2025

_CLERK OF COURT_

OR

_____          _____
_Signature of Clerk or Deputy Clerk_                _Attorney's Signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
_____ , who issues or requests this subpoena, are:

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT 24 - Page 285**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

**EXHIBIT 24 - Page 286**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT 24 - Page 287**

1

2

**ATTACHMENT A**

**DEFINITIONS**

3      1.      The terms "COMMUNICATION," "COMMUNICATIONS" and

4   "COMMUNICATE" mean any communication, whether oral, written, or any other

5   action intended to communicate any meaning, including, but not limited to, both: (a)

6   verbal COMMUNICATIONS, whether made in PERSON or by telephone, audio

7   recording, or other means; and (b) written COMMUNICATIONS, including internal

8   emails and correspondence, letters, facsimiles, electronic mail, text messages, direct

9   messages via any online portal or website, and telegraphs.

10      2.      The "COUNTY" means the County of Los Angeles, its employees,

11   agents, or representatives acting on its behalf, excluding counsel representing any

12   COUNTY DEFENDANT.

13      3.      The term "DEFENDANTS" means COUNTY OF LOS ANGELES,

14   COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES

15   COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT

16   PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL,

17   CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA

18   LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA,

19   MAX HUNTSMAN, ESTHER LIM, individually or collectively.

20      4.      The terms "DOCUMENT" and "DOCUMENTS" shall be construed

21   under the broadest possible construction under the Federal Rules of Civil Procedure

22   and shall include without limitation COMMUNICATIONS, as well as written,

23   recorded, graphic, or other matter whether sent or received or made or used

24   internally, however produced or reproduced and whatever the medium on which it

25   was produced or reproduced (whether on paper, cards, charts, files, or printouts;

26   tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types

27   of voice recording or transcription; computer tapes, databases, e-mails; pictures,

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

photographs, slides, films, microfilms, motion pictures; or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature, including without limitation originals, drafts, and all non-identical COPIES of each document (which, by reason of any variation, such as the presence or absence of handwritten notes or underlining, represents a distinct version). By way of example, the term "documents" as used herein shall include without limitation: correspondence; blueprints; memoranda; notes; diaries; letters; telegraphs; telegrams; telexes; emails; minutes; agendas; contracts; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; circulars; press releases; advertisements; books; inter-office and intraoffice COMMUNICATIONS; handwritten or typewritten notes; notations or summaries of telephone conversations, meetings, or conferences; bulletins; computer printouts; databases; teletypes; telefax; invoices; worksheets; photographs; tape recordings; and all other tangible items of readable, recorded, or visual material of any kind.

5.    The terms "PERSON" shall mean and refer to any natural individual, corporation, firm, partnership, proprietorship, association, business, governmental entity, joint venture, board, authority, commission, agency, or other organization.

6.    The terms "YOU," "YOUR," or "VILLANUEVA" shall mean or refer to Vivian Villanueva and ANY person or persons acting on YOUR behalf, including, but not limited to, YOUR attorneys, agents, accountants, advisors, directors, investigators, officers, representatives, and employees.

7.    The term "PLAINTIFF" shall mean and refer to Plaintiff Alex Villanueva, individually.

8.    The term "ACTION" shall mean this action, styled as *Villanueva v. County of Los Angeles, et al.*, Case No. 2:24-cv-04979 SVW (JCx), in the United States District Court for the Central District of California.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1    9.    The term "FAC" shall mean the operative First Amended Complaint

2  filed in this LAWSUIT.

3    10.    The term "HUNTSMAN INVESTIGATION" shall mean or refer to the

4  COUNTY'S investigation into the County Policy of Equity Complaint filed against

5  VILLANUEVA by Max Huntsman, as alleged in the FAC.

6    11.    The term "LIM INVESTIGATION" shall mean or refer to the

7  COUNTY'S investigation into the County Policy of Equity Complaint filed against

8  VILLANUEVA by Esther Lim, as alleged in the FAC.

9                    **DOCUMENT REQUESTS**

10 **REQUEST FOR PRODUCTION NO. 1:**

11    All COMMUNICATIONS with PLAINTIFF since January 2022.

12 **REQUEST FOR PRODUCTION NO. 2:**

13    ALL DOCUMENTS AND COMMUNICATIONS RELATING TO this

14 ACTION.

15 **DEMAND FOR PRODUCTION NO. 3:**

16    ALL DOCUMENTS AND COMMUNICATIONS RELATING to

17 PLAINTIFF's emotional distress claims in this ACTION.

18 **REQUEST FOR PRODUCTION NO. 4:**

19    ALL DOCUMENTS AND COMMUNICATIONS RELATING to

20 PLAINTIFF being given a "Do Not Rehire" notation on his County personnel file as

21 alleged in this ACTION.

22 **REQUEST FOR PRODUCTION NO. 5:**

23    All DOCUMENTS and COMMUNICATIONS RELATING TO the

24 HUNTSMAN INVESTIGATION.

25 **REQUEST FOR PRODUCTION NO. 6:**

26    All DOCUMENTS and COMMUNICATIONS RELATING TO the LIM

27 INVESTIGATION.

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**REQUEST FOR PRODUCTION NO. 7:**

All COMMUNICATIONS between YOU and PLAINTIFF RELATING TO the COUNTY.

**REQUEST FOR PRODUCTION NO. 8:**

All COMMUNICATIONS between YOU and PLAINTIFF RELATING TO DEFENDANTS.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2600, Los Angeles, CA 90067.

On April 4, 2025, I served true copies of the following document(s) described as:

**DEFENDANT COUNTY OF LOS ANGELES' SECOND AMENDED SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION TO VIVIAN VILLANUEVA**

on the interested parties in this action as follows:

## SERVICE LIST

Carney R. Shegerian                    *Attorneys for Plaintiff*
Mahru Madjidi                          ALEX VILLANUEVA
John David
Alex DiBona                            Tel.:    (310) 860-0770
Angie Escalante (Staff)                Fax:     (310) 860-0771
Calendar Clerk                         Email:   CShegerian@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.                    MMadjidi@Shegerianlaw.com
11520 San Vicente Boulevard                     JDavid@Shegerianlaw.com
Los Angeles, CA 90049                           YCardoza@Shegerianlaw.com
                                                ADiBona@shegerianlaw.com
                                                aescalante@shegerianlaw.com
                                                calendarclerk@shegerianlaw.com

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address briding@millerbarondess.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 4, 2025, at Los Angeles, California.

*/ s / Brenda M. Riding*
Brenda M. Riding

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

# EXHIBIT 25

EXHIBIT 25 - Page 293

4/29/2024 8:56:06 PM

https://abc7.com/lasd-oig-los-angeles-county-sheriffs-department-office-of-inspector-general/5466460/

4/30/2024 9:07:46 PM

https://thecurrentreport.com/as-la-county-civil-oversight-commission-criticizes-villanueva-oig-max-huntsman-under-investigation-by-the-california-attorney-general/

5/1/2024 12:57:47 PM



5/2/2024 3:14:59 PM

Levi Belville.vcf

5/3/2024 12:24:45 PM

Mike Bornman.vcf

5/3/2024 6:44:00 PM



5/3/2024 7:05:33 PM

https://www.latimes.com/california/story/2024-05-03/before-mob-attack-ucla-police-chief-was-ordered-to-create-security-plan-but-didnt-sources-say

5/3/2024 7:18:09 PM

I knew it. Very liberal and a part of Jim McDonnells USC Progressive Policing Model.

5/3/2024 7:18:10 PM

https://www.instagram.com/p/C6UXd_Vy1vKnb1j_Jvhjegy6aM43K5LtSSjBRw0/?igsh=MTc4MmM1YmI2Ng==

AV010781

EXHIBIT 25 - Page 294

4/26/2022 9:08:40 PM

9:08
Fwd: RHAMBO DEMANDS VILLAN...

MEDIA RELEASE

For Immediate release
April 26, 2022

Contact:
info@jacobsonzilber.com

RHAMBO DEMANDS VILLANUEVA RESIGNATION FOLLOWING EVIDENCE OF COVERUP

*LAX Police Chief Calls On Sheriff, Undersheriff to Resign Immediately & Calls For Federal Investigation After Whistleblower's Lawsuit*

**LOS ANGELES, CA** -- Today, following a whistleblower in the LA County Sheriff's Department filing a lawsuit against Alex Villanueva that claims Sheriff Villanueva covered up video of a deputy with his knee on the neck of an inmate for months, and then retaliated against those who called him out for it, LAX Police Chief Cecil Rhambo demanded Villanueva and the Undersheriff immediately resign, and also urged the IG's office to call for a federal investigation into the incident.

Chief Rhambo's statement can be found below:

"The revelations that have come to light in this brave whistleblower's lawsuit are shocking and utterly beyond the pale. Alex and Undersheriff Timothy Murakami reviewed this brutal incident shortly after it happened, covered it up, retaliated against officers who tried to speak out about it, then repeatedly lied about it when the video was made public.

Alex Villanueva and Timothy Murakami must resign immediately to restore any semblance of public trust in the department. Additionally, like I suggested weeks ago, the Inspector General and the COC should call for a federal

Delete Archive Move Reply All More

4/26/2022 9:44:51 PM

Anthony Arroyo.vcf

4/26/2022 10:15:11 PM

City of Cerritos
City Council/Successor Agency Special Meeting Agenda
Wednesday, April 27, 2022, 7:00 p.m.
Page 2 of 2

SPECIAL MEETING AGENDA

1. Call to Order
2. Invocation
3. Pledge of Allegiance
4. Roll Call
5. Public Comments — Pastor Ren
This section is reserved for comments related to items listed on this Special Meeting agenda only.
6. Mayor's Welcome and Introductions
7. Recognition of outgoing Councilmembers and Mayor
8. Installation of newly elected Councilmembers — Sheriff (8pm)
9. Annual Mayoral Transition (Selection of Mayor and Mayor Pro Tem)
10. Closing Comments (Mayor, Mayor Pro Tem, and Councilmembers)
11. Adjournment

4/27/2022 9:53:56 AM

Anthony Arroyo.vcf

4/27/2022 10:17:18 AM

From the skaters dad

Vivian last year Huntsman tried on several occasions to subpoena me to testify against Alex. I have all the emails of huntsman's private defaming Alex both to me personally and to my news blog. I had to file all sorts of paper work and motion in court to quash the subpoena which In was successful. I also have tons of texts back and forth with Alene showing that she was cherry picking stories to create a false story Line against alex. Alex and I text back and forth on his county cell does he have a personal cell that I can text him.

AV010782

6/15/2022 9:01:14 AM

The Writer for Beachcomber News in Long Beach is Stephen Downing.
He's been going after Luna for years about cover ups, incompetence etc.
he is former LAPD Deputy Chief with great credentials. Retired and worked on TV shows like TJ Hooker & McGyver. His son Michael was Interim Police Chief of LAPD before Charlie Beck.
So he's credible.
He answered my e mail last night. He hates Luna but does not like Alex.
He write letters to editor LA Times about both Luna & Alex.
LA times only published the one about Alex.
He sent me the Luna one they never published. Very data and fact driven critique of Luna's skills and ability to be Sherrif of LA County

6/15/2022 9:01:33 AM

8:08

Inbox 3 Messages LBPD Chief L...

Luna was not able to lift the LBPD out of its decades of dysfunctional culture and corruption that has cost taxpayers tens of millions from civil law suits while attempting to lead a 900 member department, so there is no reason to believe he has the ability to accomplish anything close to what's needed to clean up the Sheriff's department; an organization that is ten times larger than the LBPD.

I recommend that the editorial board re-consider – there are better candidates for the job than Robert Luna."

That is the best I can do for you. I do not support either of them.

Best
Steve Downing

6/15/2022 9:01:33 AM

8:08

Inbox 3 Messages LBPD Chief L...

Departments with higher scores than Luna's used less force, made fewer arrests for low level offenses, solved murder cases more often, held officers more accountable and spent less on policing overall – all while Luna's LBPD had more shootings per arrest than 83% of the departments studied and used more less-lethal force than 97 percent of the departments.

That kind of performance spells incompetence, especially when one considers the fact that Luna's department was better funded than 88 percent of the 16,000 police departments studied.

Luna was not able to lift the LBPD out of its decades of dysfunctional culture and corruption that has cost taxpayers tens of millions from civil law suits while attempting to lead a

6/15/2022 9:01:33 AM

8:08

Inbox 3 Messages LBPD Chief L...

While Villanueva's past behavior was a predictor of what he has shown himself to be so too is Luna's incompetence as a law enforcement executive.

The result of Luna's 7 year reign with the LBPD - in addition to the chief assembling 300 unmasked police officers in the convention center for a photo op at the height of the pandemic - was to see his department rank in last place among 365 police departments in California and fourth to last among 16,000 departments nationwide in a major study conducted by the Police Scorecard Project.

Departments with higher scores than Luna's used less force, made fewer arrests for low level offenses, solved murder cases more often,

6/15/2022 9:01:33 AM

8:08

Inbox 3 Messages LBPD Chief L...

Beachcomber website you will find most all of my articles

The following is the LTE I wrote to the LA Times when they endorsed Luna. It was not published , but a couple of weeks earlier they did publish an anti- Villanueva letter I wrote.

Here is the anti/Luna letter:

To the EDITOR:

By endorsing Robert Luna for Sheriff the Times editorial board has failed the electorate as did the Democratic Party when they endorsed Villanueva in the last election. Neither organization thoroughly vetted the candidate they chose to endorse.

6/15/2022 9:01:42 AM

8:08

Inbox 3 Messages LBPD Chief L...

Beachcomber website you will find most all of my articles

The following is the LTE I wrote to the LA Times when they endorsed Luna. It was not published , but a couple of weeks earlier they did publish an anti- Villanueva letter I wrote.

Here is the anti/Luna letter:

To the EDITOR:

By endorsing Robert Luna for Sheriff the Times editorial board has failed the electorate as did the Democratic Party when they endorsed Villanueva in the last election. Neither organization thoroughly vetted the candidate they chose to endorse.

6/15/2022 9:01:42 AM

8:08

Inbox 3 Messages LBPD Chief L...

Luna was not able to lift the LBPD out of its decades of dysfunctional culture and corruption that has cost taxpayers tens of millions from civil law suits while attempting to lead a 900 member department, so there is no reason to believe he has the ability to accomplish anything close to what's needed to clean up the Sheriff's department; an organization that is ten times larger than the LBPD.

I recommend that the editorial board re-consider – there are better candidates for the job than Robert Luna."

That is the best I can do for you. I do not support either of them.

Best
Steve Downing

AV010784

6/15/2022 9:01:42 AM

**Michael P. Downing** was the interim Chief of Police of the Los Angeles Police Department. On August 5, 2009, Chief William J. Bratton announced that after seven years as chief he would be stepping down from his position. He continued to serve as LAPD chief until October 30, 2009.[1] After Bratton stepped down, Downing was appointed as Chief of Police by the L.A. Board of Police Commissioners.[2] As of January 2014, Downing is a 29-year veteran of the Department.

6/15/2022 9:01:42 AM



6/15/2022 9:01:42 AM



6/16/2022 12:04:53 PM

https://www.foxla.com/news/long-beach-pd-officer-concerned-about-covid-19-protection

AV010785

**EXHIBIT 25 - Page 298**

7/6/2022 8:10:48 PM

https://twitter.com/alenetchek/status/1544761939171033089?s=10&t=1A8pjVVKwYDumAs7pF5G2Q

7/8/2022 8:36:10 AM

Vivian last week the warrants in the LA metro Case were upheld.  Kuehl is specifically named in the Warrants which is a conflict of interests and she can not vote to impeach that sheriff.   That should stop the impeachment vote.   Also do you know if Alex is technically an employee of the County

7/8/2022 2:31:16 PM

https://forthe.org/journalism/lbpd-records-destruction-emails/

7/8/2022 9:41:11 PM

https://wehoville.com/2022/07/07/leader-of-wehos-block-by-block-program-served-8-years-in-prison-for-voluntary-manslaughter/

7/9/2022 8:59:39 AM

https://www.cbsnews.com/losangeles/news/la-county-supervisors-to-ask-voters-for-power-to-remove-sheriff-villanueva/

7/11/2022 10:43:16 AM



7/11/2022 10:56:24 AM



AV010786

**EXHIBIT 25 - Page 299**

# EXHIBIT 26

EXHIBIT 26 - Page 300

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 1/1/2022 | Alex Villanueva, Vivian Villanueva | New Years Eve Reflecting | Spousal communication, Privacy |
| 1/3/2022 | Alex Villanueva, Vivian Villanueva | Greeting | Spousal communication, Privacy |
| 1/4/2022 | Alex Villanueva, Vivian Villanueva | Diane Martinez contact file shared | Spousal communication, Third party privacy |
| 1/5/2022 | Alex Villanueva, Vivian Villanueva | Reference to "Channel 348" (likely television) | Spousal communication, Privacy |
| 1/10/2022 | Alex Villanueva, Vivian Villanueva | Link to Twitter content shared | Spousal communication, Privacy |
| 1/11/2022 | Alex Villanueva, Vivian Villanueva | News article about Jane Williams' resignation shared | Spousal communication, Privacy, Third party privacy |
| 1/14/2022 | Alex Villanueva, Vivian Villanueva | PDF titled "lina_pimentel_lawsuit.pdf" shared | Spousal communication, Privacy, Third party privacy |
| 1/16/2022 | Alex Villanueva, Vivian Villanueva | Kasey Montoya contact file shared | Spousal communication, Third party privacy |
| 1/20/2022 | Alex Villanueva, Vivian Villanueva | StandWithGascon.org link shared | Spousal communication, Privacy, Third party privacy |
| 1/23/2022 | Alex Villanueva, Vivian Villanueva | Multiple Twitter and advocacy links shared | Spousal communication, Privacy, Third party privacy |
| 1/24/2022 | Alex Villanueva, Vivian Villanueva | Ring camera video shared | Spousal communication, Privacy, Third party privacy |
| 1/25/2022 | Alex Villanueva, Vivian Villanueva | Campaign contact Becki's information shared | Spousal communication, Privacy, Third party privacy |
| 1/27/2022 | Alex Villanueva, Vivian Villanueva | Thank-you text for an upcoming public event appearance | Spousal communication, Privacy |
| 1/29/2022 | Alex Villanueva, Vivian Villanueva | Searching for Uber Driver | Spousal communication, Privacy |
| 2/2/2022 | Alex Villanueva, Vivian Villanueva | Forwarded narrative of LASD incident involving lieutenants and armed suspect | Spousal communication, Privacy, Third party privacy |
| 2/3/2022 | Alex Villanueva, Vivian Villanueva | Message from Indonesian consulate's wife complimenting flowers | Spousal communication, Privacy, Third party privacy |
| 2/4/2022 | Alex Villanueva, Vivian Villanueva | Address of a caller discussed | Spousal communication, Privacy, Third party privacy |
| 2/6/2022 | Alex Villanueva, Vivian Villanueva | Bishop Juan Carlos Mendez contact file shared | Spousal communication, Third party privacy |
| 2/7/2022 | Alex Villanueva, Vivian Villanueva | Exchange on visitors leaving | Spousal communication, Privacy |
| 2/8/2022 | Alex Villanueva, Vivian Villanueva | Planned Call | Spousal communication, Privacy |
| 2/14/2022 | Alex Villanueva, Vivian Villanueva | Texts discussing Board of Supervisors marijuana motion | Spousal communication, Privacy, Third party privacy |
| 2/15/2022 | Alex Villanueva, Vivian Villanueva | Inquiry of Eric Strong being in a video | Spousal communication, Privacy, Third party privacy |
| 2/19/2022 | Alex Villanueva, Vivian Villanueva | Kenny's contact shared; message about La Raza radio opportunity | Spousal communication, Privacy, Third party privacy |
| 2/21/2022 | Alex Villanueva, Vivian Villanueva | inquiry regarding hunger; coordination about coming out soon | Spousal communication, Privacy |
| 2/24/2022 | Alex Villanueva, Vivian Villanueva | Describes incident on Moonstone and Highland area | Spousal communication, Privacy |
| 2/27/2022 | Alex Villanueva, Vivian Villanueva | Shared Instagram reel and reactions | Spousal communication, Privacy, Third party privacy |
| 3/1/2022 | Alex Villanueva, Vivian Villanueva | Message about conversation dates between Holly Francisco and Howard | Spousal communication, Privacy, Third party privacy |
| 3/2/2022 | Alex Villanueva, Vivian Villanueva | Discussion about lunch timing and menu from Casa Martin | Spousal communication, Privacy |
| 3/9/2022 | Alex Villanueva, Vivian Villanueva | Series of messages about multiple people hospitalized or in surgery | Spousal communication, Privacy, Third party privacy |
| 3/12/2022 | Alex Villanueva, Vivian Villanueva | Notes about Tara Sooking and internal LASD assignments and favoritism | Spousal communication, Privacy, Third party privacy |
| 3/13/2022 | Alex and Vivian Villanueva | Greeting | Spousal Communication, Privacy, Third Party Privacy |
| 3/14/2022 | Alex and Vivian Villanueva | Greeting | Spousal Communication, Privacy, Third Party Privacy |
| 3/16/2022 | Alex and Vivian Villanueva | Sharing of 2021 tax return document for Fortitude Fitness LLC. | Spousal Communication, Privacy, Third Party Privacy |
| 3/18/2022 | Alex and Vivian Villanueva | Text exchange including fundraising page link. | Spousal Communication, Privacy, Third Party Privacy |
| 3/19/2022 | Alex and Vivian Villanueva | Exchange regarding Zoom meeting links and credentials. | Spousal Communication, Privacy, Third Party Privacy |
| 3/20/2022 | Alex and Vivian Villanueva | Transmission of receipt document. | Spousal Communication, Privacy, Third Party Privacy |
| 3/22/2022 | Alex and Vivian Villanueva | Communication regarding stay at Westin Rancho Mirage, California. | Spousal Communication, Privacy, Third Party Privacy |
| 3/23/2022 | Alex and Vivian Villanueva | Communication requesting personal items (chapstick, MiFi hotspot). | Spousal Communication, Privacy, Third Party Privacy |
| 3/23/2022 | Alex and Vivian Villanueva | Text received from third party (Sigal) suggesting messaging strategy related to Jewish magazine. | Spousal Communication, Privacy, Third Party Privacy |
| 3/24/2022 | Alex and Vivian Villanueva | Personal text exchange discussing emotional conflict and suggesting meeting with attorney. | Spousal Communication, Privacy, Third Party Privacy |
| 3/24/2022 | Alex and Vivian Villanueva | Sharing of Amazon product link and health-related information (Pinguecula). | Spousal Communication, Privacy, Third Party Privacy |
| 3/28/2022 | Alex and Vivian Villanueva | Sharing contact card for Pete Hish. | Spousal Communication, Privacy, Third Party Privacy |
| 3/30/2022 | Alex and Vivian Villanueva | Forwarding a personal message from individual "JD" regarding retirement and related workplace issues. | Spousal Communication, Privacy, Third Party Privacy |
| 3/27/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 3/28/2022 | Alex Villanueva, Vivian Villanueva | Shared Atlantic newsletter about political events involving Trump | Spousal communication, Privacy, Third party privacy |
| 3/29/2022 | Alex Villanueva, Vivian Villanueva | Vivian coordinates pickup schedule; Alex sends thank-you | Spousal communication, Privacy |
| 3/30/2022 | Alex Villanueva, Vivian Villanueva | Shared immigration article about undocumented immigrants paying taxes | Spousal communication, Privacy, Third party privacy |
| 3/31/2022 | Alex Villanueva, Vivian Villanueva | End-of-month dinner plan and message about Sunday schedule | Spousal communication, Privacy |
| 4/1/2022 | Alex Villanueva, Vivian Villanueva | Vivian sends good morning text and confirms brunch location | Spousal communication, Privacy |
| 4/2/2022 | Alex Villanueva, Vivian Villanueva | Shared devotional video link; brief follow-up message | Spousal communication, Privacy |
| 4/3/2022 | Alex Villanueva, Vivian Villanueva | Shared lunch order update and article link | Spousal communication, Privacy |
| 4/4/2022 | Alex Villanueva, Vivian Villanueva | Event attendance and support of spouse | Spousal communication, Privacy |
| 4/5/2022 | Alex Villanueva, Vivian Villanueva | Shared news article on public safety; emoji reaction | Spousal communication, Privacy, Third party privacy |
| 4/6/2022 | Alex Villanueva, Vivian Villanueva | Message about weekend grocery list and reminder for Saturday | Spousal communication, Privacy |
| 4/7/2022 | Alex Villanueva, Vivian Villanueva | Message about ordering salmon salad and dining together | Spousal communication, Privacy |
| 4/8/2022 | Alex Villanueva, Vivian Villanueva | Short prayer shared from church livestream | Spousal communication, Privacy |
| 4/9/2022 | Alex Villanueva, Vivian Villanueva | Easter greeting and emoji message | Spousal communication, Privacy |
| 4/10/2022 | Alex Villanueva, Vivian Villanueva | Shared flyer about local safety meeting | Spousal communication, Privacy, Third party privacy |
| 4/11/2022 | Alex Villanueva, Vivian Villanueva | dinner reservation | Spousal communication, Privacy |
| 4/12/2022 | Alex Villanueva, Vivian Villanueva | Vivian shares uplifting news article and confirms time for evening walk | Spousal communication, Privacy |
| 4/13/2022 | Alex Villanueva, Vivian Villanueva | Shared tweet on law enforcement policy changes; emoji | Spousal communication, Privacy, Third party privacy |
| 4/14/2022 | Alex Villanueva, Vivian Villanueva | dry cleaning | Spousal communication, Privacy |
| 4/14/2022 | Alex Villanueva, Vivian Villanueva | dry cleaning | Spousal communication, Privacy |
| 4/15/2022 | Alex Villanueva, Vivian Villanueva | Short affectionate note and confirmation of weekend dinner plans | Spousal communication, Privacy |
| 4/16/2022 | Alex Villanueva, Vivian Villanueva | Article link shared about veteran housing and comment on public response | Spousal communication, Privacy, Third party privacy |
| 4/17/2022 | Alex Villanueva, Vivian Villanueva | Shared movie recommendation featuring a sheriff character and Holocaust short film | Spousal communication, Privacy, Third party privacy |
| 4/18/2022 | Alex Villanueva, Vivian Villanueva | Message alerting that someone is impersonating Alex on Instagram | Spousal communication, Privacy |
| 4/19/2022 | Alex Villanueva, Vivian Villanueva | Update about helping Ukrainian refugees get classes, jobs, and support; praise for Alex and Vivian | Spousal communication, Privacy, Third party privacy |
| 4/20/2022 | Alex Villanueva, Vivian Villanueva | Tony Romo update on internal union politics and endorsement vote; Eli and Rhodes support conflict | Spousal communication, Privacy, Third party privacy |
| 4/21/2022 | Alex Villanueva, Vivian Villanueva | Evelyn's cousin had triplets and is unable to attend the evening's event | Spousal communication, Privacy, Third party privacy |
| 4/22/2022 | Alex Villanueva, Vivian Villanueva | Series of campaign-related messages including candidate support email and mention of Alex's endorsement; mention of Special Alert program | Spousal communication, Privacy, Third party privacy |
| 4/23/2022 | Alex Villanueva, Vivian Villanueva | Shared internal message regarding LASD personnel and political affiliations | Spousal communication, Privacy, Third party privacy |

EXHIBIT 26 - Page 301

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 4/24/2022 | Alex Villanueva, Vivian Villanueva | Shared news of El Monte Chief Ben Lowry's passing; brief personal exchange | Spousal communication, Privacy, Third party privacy |
| 4/25/2022 | Alex Villanueva, Vivian Villanueva | Shared press release announcing LAAPOA endorsement of Alex Villanueva | Spousal communication, Privacy, Third party privacy |
| 4/26/2022 | Alex Villanueva, Vivian Villanueva | Morning devotional prayer and commentary on a car incident involving a location near Hacienda | Spousal communication, Privacy |
| 5/1/2022 | Alex Villanueva, Vivian Villanueva | Loving life comment; inspirational message about David and Goliath; exchange of support ("Love it", "I love you") | Spousal communication, Privacy |
| 5/2/2022 | Alex Villanueva, Vivian Villanueva | multiple affectionate replies regarding appearance and support | Spousal communication, Privacy |
| 5/3/2022 | Alex Villanueva, Vivian Villanueva | friendly greeting | Spousal communication, Privacy |
| 5/5/2022 | Alex Villanueva, Vivian Villanueva | Shared article about Katherine McPhee blaming crime on "woke voters" and suggestion to seek her endorsement | Spousal communication, Privacy, Third party privacy |
| 5/6/2022 | Alex Villanueva, Vivian Villanueva | Shared tweet from Roxanne Hoge about crime and Beverly Hills | Spousal communication, Privacy, Third party privacy |
| 5/7/2022 | Alex Villanueva, Vivian Villanueva | Greeting | Spousal communication, Privacy |
| 5/8/2022 | Alex Villanueva, Vivian Villanueva | Greeting | Spousal communication, Privacy |
| 5/9/2022 | Alex Villanueva, Vivian Villanueva | Proposal for jail pilot program from vendor; offer for presentation to Sheriff | Spousal communication, Privacy, Third party privacy |
| 5/12/2022 | Alex Villanueva, Vivian Villanueva | Greeting | Spousal communication, Privacy |
| 5/15/2022 | Alex Villanueva, Vivian Villanueva | PDF titled "Message.pdf" shared with no visible context in chat | Spousal communication, Privacy |
| 5/16/2022 | Alex Villanueva, Vivian Villanueva | YouTube link shared; no context given in the visible chat | Spousal communication, Privacy |
| 5/18/2022 | Alex Villanueva, Vivian Villanueva | Shared Apple Maps link and details for Mulberry Street Ristorante | Spousal communication, Privacy |
| 5/19/2022 | Alex Villanueva, Vivian Villanueva | Discussion about pick-up logistics and confirmation of timing | Spousal communication, Privacy |
| 5/21/2022 | Alex Villanueva, Vivian Villanueva | Shared YouTube video link titled "7Hi9uXUQJWY" | Spousal communication, Privacy |
| 5/23/2022 | Alex Villanueva, Vivian Villanueva | Shared Instagram reel and devotional message; discussion about Rocío Ochoa's background investigator and testing issues | Spousal communication, Privacy, Third party privacy |
| 5/24/2022 | Alex Villanueva, Vivian Villanueva | Court document shared (Minute Order re: Dermurrers); Facebook post and message about polygraph logistics and procedural concerns | Spousal communication, Privacy, Third party privacy |
| 5/25/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped but no content visible in thread | Spousal communication, Privacy |
| 5/28/2022 | Alex Villanueva, Vivian Villanueva | Shared Apple Maps link for Cha Cha's Latin Kitchen in Brea, CA | Spousal communication, Privacy |
| 5/29/2022 | Alex Villanueva, Vivian Villanueva | Debbie Silva contact file shared | Spousal communication, Privacy, Third party privacy |
| 6/1/2022 | Alex Villanueva, Vivian Villanueva | Andrew Roble contact file shared | Spousal communication, Privacy, Third party privacy |
| 6/1/2022 | Alex Villanueva, Vivian Villanueva | Shared phone number for Nick and discussed canceled event involving Mike Beltran | Spousal communication, Privacy, Third party privacy |
| 6/2/2022 | Alex Villanueva, Vivian Villanueva | Multiple messages with timestamps but no visible content | Spousal communication, Privacy |
| 6/6/2022 | Alex Villanueva, Vivian Villanueva | Exchange marked by time only; no text content shown | Spousal communication, Privacy |
| 6/8/2022 | Alex Villanueva, Vivian Villanueva | Video file shared with no visible caption | Spousal communication, Privacy |
| 6/9/2022 | Alex Villanueva, Vivian Villanueva | Shared articles from National Review, YouTube, LA Times, and others about LBPD and Luna | Spousal communication, Privacy, Third party privacy |
| 6/10/2022 | Alex Villanueva, Vivian Villanueva | Shared praise for Greg Evans; commentary on election and discussion of potential assignments | Spousal communication, Privacy, Third party privacy |
| 6/14/2022 | Alex Villanueva, Vivian Villanueva | Reconnection with Friend(s) | Spousal communication, Privacy |
| 6/16/2022 | Alex Villanueva, Vivian Villanueva | Discussion about Rudy's campaign signs and bumper stickers; Vivian responds "How sweet!" | Spousal communication, Privacy, Third party privacy |
| 6/17/2022 | Alex Villanueva, Vivian Villanueva | Vivian updates Alex about being in hospital, vomiting, pain, and undergoing COVID test; Alex replies from parking lot | Spousal communication, Privacy |
| 6/18/2022 | Alex Villanueva, Vivian Villanueva | Word Document Shared | Spousal communication, Privacy |
| 6/21/2022 | Alex Villanueva, Vivian Villanueva | Shared LASD press release, YouTube video, and article about zero tolerance for deputy cliques | Spousal communication, Privacy, Third party privacy |
| 6/22/2022 | Alex Villanueva, Vivian Villanueva | Instagram reel shared; message about female captain's introduction at East LA event | Spousal communication, Privacy, Third party privacy |
| 6/23/2022 | Alex Villanueva, Vivian Villanueva | Timestamped entries with no visible message content | Spousal communication, Privacy |
| 6/26/2022 | Alex Villanueva, Vivian Villanueva | Shared news articles regarding discrimination lawsuits against Long Beach Police Department | Spousal communication, Privacy, Third party privacy |
| 6/27/2022 | Alex Villanueva, Vivian Villanueva | No visible message content provided for this date | Spousal communication, Privacy |
| 6/28/2022 | Alex Villanueva, Vivian Villanueva | Shared article from LA Times about a K-9 officer found dead | Spousal communication, Privacy, Third party privacy |
| 6/29/2022 | Alex Villanueva, Vivian Villanueva | Phil Donlon, former campaign ad director, messages to offer help with future media | Spousal communication, Privacy, Third party privacy |
| 7/3/2022 | Alex Villanueva, Vivian Villanueva | Shared article about crime on LA Metro system | Spousal communication, Privacy, Third party privacy |
| 7/4/2022 | Alex Villanueva, Vivian Villanueva | Brief celebratory exchange including "Awwww" | Spousal communication, Privacy |
| 7/6/2022 | Alex Villanueva, Vivian Villanueva | Shared LA Times article about Metro plan; Vivian reacts to tweet from Alene Tchekmedyian | Spousal communication, Privacy, Third party privacy |
| 7/8/2022 | Alex Villanueva, Vivian Villanueva | Message about warrants in Metro case upheld, referencing Kuehl and conflict of interest | Spousal communication, Privacy, Third party privacy |
| 7/9/2022 | Alex Villanueva, Vivian Villanueva | Shared article about WeHo security contractor's criminal history | Spousal communication, Privacy, Third party privacy |
| 7/11/2022 | Alex Villanueva, Vivian Villanueva | Vivian forwards tweet and link about Measure A and County Supervisor's impeachment efforts | Spousal communication, Privacy, Third party privacy |
| 7/13/2022 | Alex Villanueva, Vivian Villanueva | Vivian sends message about event with Florence and Firestone community group | Spousal communication, Privacy, Third party privacy |
| 7/14/2022 | Alex Villanueva, Vivian Villanueva | Message of encouragement from Melina urging Alex and Vivian to stay strong amid political pressure | Spousal communication, Privacy, Third party privacy |
| 7/16/2022 | Alex Villanueva, Vivian Villanueva | Coordination about food during event; humorous exchange about cold tacos and meat | Spousal communication, Privacy |
| 7/19/2022 | Alex Villanueva, Vivian Villanueva | Shared PDF: Reply to opposition in Pimentel case | Spousal communication, Privacy, Third party privacy |
| 7/21/2022 | Alex Villanueva, Vivian Villanueva | Shared article about WeHo Council member requesting private security after defunding vote | Spousal communication, Privacy, Third party privacy |
| 7/22/2022 | Alex Villanueva, Vivian Villanueva | Vivian shares link to UniCourt docket involving City of Long Beach | Spousal communication, Privacy, Third party privacy |
| 7/25/2022 | Alex Villanueva, Vivian Villanueva | Shared Bible passage (Isaiah 41:10–11) | Spousal communication, Privacy |
| 7/26/2022 | Alex Villanueva, Vivian Villanueva | Shared article about City Manager misleading CPCC Charter Amendment Committee | Spousal communication, Privacy, Third party privacy |
| 7/28/2022 | Alex Villanueva, Vivian Villanueva | Request to lower refrigerator temperature due to milk spoiling prematurely | Spousal communication, Privacy |
| 7/29/2022 | Alex Villanueva, Vivian Villanueva | Vivian shares comprehensive file involving Holly and a $2M pilot program; campaign manager contact requested | Spousal communication, Privacy, Third party privacy |
| 7/31/2022 | Alex Villanueva, Vivian Villanueva | Steve Gregory, Omar Luevano, and Briz contact files shared; GoFundMe link posted | Spousal communication, Privacy, Third party privacy |
| 8/1/2022 | Alex Villanueva, Vivian Villanueva | Loving life comment; inspirational message about David and Goliath; exchange of support | Spousal communication, Privacy |
| 8/1/2022 | Alex Villanueva, Vivian Villanueva | multiple affectionate replies regarding appearance and support | Spousal communication, Privacy |
| 8/3/2022 | Alex Villanueva, Vivian Villanueva | No visible message content provided for this date | Spousal communication, Privacy |
| 8/5/2022 | Alex Villanueva, Vivian Villanueva | Shared article about Katherine McPhee blaming crime on "woke voters" and suggestion to seek her endorsement | Spousal communication, Privacy, Third party privacy |
| 8/6/2022 | Alex Villanueva, Vivian Villanueva | Shared tweet from Roxanne Hoge about crime and Beverly Hills | Spousal communication, Privacy, Third party privacy |
| 8/7/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |

EXHIBIT 26 - Page 302

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 8/9/2022 | Alex Villanueva, Vivian Villanueva | Proposal for jail pilot project from vendor; offer for presentation to Sheriff | Spousal communication, Privacy, Third party privacy |
| 8/10/2022 | Alex Villanueva, Vivian Villanueva | Vivian shares message from Sheldon about PPOA endorsement tensions and opposition to Luna | Spousal communication, Privacy, Third party privacy |
| 8/12/2022 | Alex Villanueva, Vivian Villanueva | friendly greeting | Spousal communication, Privacy |
| 8/15/2022 | Alex Villanueva, Vivian Villanueva | PDF titled "Message.pdf" shared with no visible context in chat | Spousal communication, Privacy |
| 8/16/2022 | Alex Villanueva, Vivian Villanueva | YouTube link shared | Spousal communication, Privacy |
| 8/18/2022 | Alex Villanueva, Vivian Villanueva | Shared Apple Maps link and details for Mulberry Street Ristorante | Spousal communication, Privacy |
| 8/19/2022 | Alex Villanueva, Vivian Villanueva | Discussion about pick-up logistics and confirmation of timing | Spousal communication, Privacy |
| 8/20/2022 | Alex Villanueva, Vivian Villanueva | Contact file for Officer Neely shared; claims of racial discrimination and Luna named in lawsuit | Spousal communication, Privacy, Third party privacy |
| 8/21/2022 | Alex Villanueva, Vivian Villanueva | Shared YouTube video link titled "7Hi9uXUQJWY" | Spousal communication, Privacy |
| 8/23/2022 | Alex Villanueva, Vivian Villanueva | Shared Instagram reel and devotional message; discussion about Rocio Ochoa's background investigator and testing issues | Spousal communication, Privacy, Third party privacy |
| 8/24/2022 | Alex Villanueva, Vivian Villanueva | Court document shared (Minute Order re: Demurrers); Facebook post and message about polygraph logistics and procedural concerns | Spousal communication, Privacy, Third party privacy |
| 8/25/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped but no visible content in thread | Spousal communication, Privacy |
| 8/28/2022 | Alex Villanueva, Vivian Villanueva | Shared Apple Maps link for Cha Cha's Latin Kitchen in Brea, CA | Spousal communication, Privacy |
| 8/29/2022 | Alex Villanueva, Vivian Villanueva | Debbie Silva contact file shared | Spousal communication, Privacy, Third party privacy |
| 8/30/2022 | Alex Villanueva, Vivian Villanueva | Shared news article alleging Luna and Vivian ran LASD as a personal fiefdom | Spousal communication, Privacy, Third party privacy |
| 9/1/2022 | Alex Villanueva, Vivian Villanueva | Andrew Roble contact file shared | Spousal communication, Privacy, Third party privacy |
| 9/2/2022 | Alex Villanueva, Vivian Villanueva | Message stating "He wants you to call him" without further context | Spousal communication, Privacy |
| 9/5/2022 | Alex Villanueva, Vivian Villanueva | Multiple message timestamps with no visible content | Spousal communication, Privacy |
| 9/6/2022 | Alex Villanueva, Vivian Villanueva | No visible message content for this date | Spousal communication, Privacy |
| 9/8/2022 | Alex Villanueva, Vivian Villanueva | Shared link to preview investigation about LBPD TigerText system | Spousal communication, Privacy, Third party privacy |
| 9/9/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 9/10/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped but no text visible | Spousal communication, Privacy |
| 9/11/2022 | Alex Villanueva, Vivian Villanueva | Contact file for Tara Lankford shared | Spousal communication, Privacy, Third party privacy |
| 9/12/2022 | Alex Villanueva, Vivian Villanueva | Message from Vivian stating intent to rescue dogs and find them homes | Spousal communication, Privacy |
| 9/13/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible text | Spousal communication, Privacy |
| 9/14/2022 | Alex Villanueva, Vivian Villanueva | Shared Instagram reel | Spousal communication, Privacy |
| 9/17/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped "Enroute" | Spousal communication, Privacy |
| 9/18/2022 | Alex Villanueva, Vivian Villanueva | Shared Dropbox video titled "sheriff.mov" | Spousal communication, Privacy |
| 9/18/2022 | Alex Villanueva, Vivian Villanueva | Shared Dropbox video titled "sheriff.mov" | Spousal communication, Privacy |
| 9/19/2022 | Alex Villanueva, Vivian Villanueva | Multiple entries timestamped with no visible text | Spousal communication, Privacy |
| 9/20/2022 | Alex Villanueva, Vivian Villanueva | Shared tweet from Alene Tchekmedyian and commentary on Luna campaign performance | Spousal communication, Privacy, Third party privacy |
| 9/21/2022 | Alex Villanueva, Vivian Villanueva | Multiple timestamped entries including discussion of public image and debate strategy | Spousal communication, Privacy |
| 9/22/2022 | Alex Villanueva, Vivian Villanueva | Shared YouTube video link regarding political messaging and public relations | Spousal communication, Privacy |
| 9/23/2022 | Alex Villanueva, Vivian Villanueva | mention of youtube vidoe previous shared | Spousal communication, Privacy |
| 9/26/2022 | Alex Villanueva, Vivian Villanueva | Discussion about travel plans and graduation, schedule | Spousal communication, Privacy |
| 9/27/2022 | Alex Villanueva, Vivian Villanueva | Vivian sends boarding message; affectionate responses from both parties | Spousal communication, Privacy |
| 9/28/2022 | Alex Villanueva, Vivian Villanueva | Instagram reel shared; | Spousal communication, Privacy |
| 9/29/2022 | Alex Villanueva, Vivian Villanueva | No visible message content | Spousal communication, Privacy |
| 9/30/2022 | Alex Villanueva, Vivian Villanueva | Invitation to breakfast event for Sheriff Villanueva on Oct. 5 forwarded by Nathan Hittle | Spousal communication, Privacy, Third party privacy |
| 10/1/2022 | Alex Villanueva, Vivian Villanueva | Vivian confirms location of attendee; humorous exchange about tacos and extra meat | Spousal communication, Privacy |
| 10/2/2022 | Alex Villanueva, Vivian Villanueva | Shared Instagram reel with no additional message | Spousal communication, Privacy |
| 10/3/2022 | Alex Villanueva, Vivian Villanueva | Shared LA Times article about sheriff's race poll results | Spousal communication, Privacy, Third party privacy |
| 10/5/2022 | Alex Villanueva, Vivian Villanueva | Vivian reminds Alex to turn off trees; discussion of Measure A contribution; affectionate banter | Spousal communication, Privacy |
| 10/6/2022 | Alex Villanueva, Vivian Villanueva | Shared Facebook post regarding WeHo political commentary | Spousal communication, Privacy, Third party privacy |
| 10/7/2022 | Alex Villanueva, Vivian Villanueva | Contact card for Nikolai Vavakin shared | Spousal communication, Privacy, Third party privacy |
| 10/9/2022 | Alex Villanueva, Vivian Villanueva | Contact card for Maritza shared; campaign donation links posted | Spousal communication, Privacy, Third party privacy |
| 10/10/2022 | Alex Villanueva, Vivian Villanueva | pond mentioned | Spousal communication, Privacy |
| 10/11/2022 | Alex Villanueva, Vivian Villanueva | Shared tweet about LA City Council; no added commentary | Spousal communication, Privacy, Third party privacy |
| 10/12/2022 | Alex Villanueva, Vivian Villanueva | Repeated link to tweet regarding LA Council incident | Spousal communication, Privacy, Third party privacy |
| 10/15/2022 | Alex Villanueva, Vivian Villanueva | Ejection | Spousal communication, Privacy |
| 10/16/2022 | Alex Villanueva, Vivian Villanueva | Vivian congratulates Alex and updates him on meeting status | Spousal communication, Privacy |
| 10/18/2022 | Alex Villanueva, Vivian Villanueva | Message urging campaign messaging around ALADS/LAPPL support for Caruso | Spousal communication, Privacy, Third party privacy |
| 10/20/2022 | Alex Villanueva, Vivian Villanueva | Two entries without visible message content | Spousal communication, Privacy |
| 10/23/2022 | Alex Villanueva, Vivian Villanueva | Shared internal message regarding LASD personnel and political affiliations | Spousal communication, Privacy, Third party privacy |
| 10/24/2022 | Alex Villanueva, Vivian Villanueva | Shared news of El Monte Chief Ben Lowry's passing; brief personal exchange | Spousal communication, Privacy, Third party privacy |
| 10/25/2022 | Alex Villanueva, Vivian Villanueva | No visible message content | Spousal communication, Privacy |
| 10/27/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 10/28/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 10/29/2022 | Alex Villanueva, Vivian Villanueva | discussing ot to bring election night list; | Spousal communication, Privacy |
| 10/31/2022 | Alex Villanueva, Vivian Villanueva | address shared | Spousal communication, Privacy |
| 11/1/2022 | Alex Villanueva, Vivian Villanueva | No visible message content | Spousal communication, Privacy |
| 11/2/2022 | Alex Villanueva, Vivian Villanueva | Message from supporter praising event; shared video file link | Spousal communication, Privacy, Third party privacy |
| 11/3/2022 | Alex Villanueva, Vivian Villanueva | Alex forwards link to press interview and election discussion | Spousal communication, Privacy |
| 11/4/2022 | Alex Villanueva, Vivian Villanueva | Shared campaign donation link | Spousal communication, Privacy |
| 11/6/2022 | Alex Villanueva, Vivian Villanueva | Message from supporter praying for Alex and referencing recent event | Spousal communication, Privacy, Third party privacy |
| 11/7/2022 | Alex Villanueva, Vivian Villanueva | Vivian confirms final campaign schedule for the week and voting plans | Spousal communication, Privacy |
| 11/8/2022 | Alex Villanueva, Vivian Villanueva | Brief celebratory message | Spousal communication, Privacy |
| 11/9/2022 | Alex Villanueva, Vivian Villanueva | Message about press coverage and tone of article; link shared | Spousal communication, Privacy, Third party privacy |
| 11/10/2022 | Alex Villanueva, Vivian Villanueva | Shared YouTube video from supporter encouraging continued visibility | Spousal communication, Privacy |
| 11/12/2022 | Alex Villanueva, Vivian Villanueva | News article about DA Gascon being fined shared | Spousal communication, Privacy, Third party privacy |
| 11/14/2022 | Alex Villanueva, Vivian Villanueva | Short message about errands and location check-in | Spousal communication, Privacy |
| 11/15/2022 | Alex Villanueva, Vivian Villanueva | Article about future of policing and public safety shared | Spousal communication, Privacy |
| 11/17/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 11/18/2022 | Alex Villanueva, Vivian Villanueva | Shared tweet criticizing political opponents and support from radio host | Spousal communication, Privacy, Third party privacy |
| 11/20/2022 | Alex Villanueva, Vivian Villanueva | Message about being on the way to an event; photo link shared | Spousal communication, Privacy |
| 11/21/2022 | Alex Villanueva, Vivian Villanueva | Shared post-election article and personal reaction | Spousal communication, Privacy |
| 11/22/2022 | Alex Villanueva, Vivian Villanueva | Contact info for Recruit Arias' wife provided | Spousal communication, Privacy, Third party privacy |
| 11/25/2022 | Alex Villanueva, Vivian Villanueva | Thanksgiving message and expression of gratitude | Spousal communication, Privacy |
| 11/28/2022 | Alex Villanueva, Vivian Villanueva | Vivian asks for check-in and confirms time for later that day | Spousal communication, Privacy |

EXHIBIT 26 - Page 303

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 11/30/2022 | Alex Villanueva, Vivian Villanueva | Greeting | Spousal communication, Privacy |
| 12/1/2022 | Alex Villanueva, Vivian Villanueva | message of encouragement and prayer | Spousal communication, Privacy |
| 12/2/2022 | Alex Villanueva, Vivian Villanueva | Article link shared regarding law enforcement transitions | Spousal communication, Privacy, Third party privacy |
| 12/3/2022 | Alex Villanueva, Vivian Villanueva | Message confirming location and request for pick-up | Spousal communication, Privacy |
| 12/5/2022 | Alex Villanueva, Vivian Villanueva | Final day as sheriff; exchanged messages expressing love and support | Spousal communication, Privacy |
| 12/6/2022 | Alex Villanueva, Vivian Villanueva | Follow-up messages on prior day's transition and household coordination | Spousal communication, Privacy |
| 12/7/2022 | Alex Villanueva, Vivian Villanueva | Text confirming dinner location; short personal exchange | Spousal communication, Privacy |
| 12/9/2022 | Alex Villanueva, Vivian Villanueva | Shared PDF and comment about scheduling meeting | Spousal communication, Privacy |
| 12/10/2022 | Alex Villanueva, Vivian Villanueva | Image sent of holiday event with children | Spousal communication, Privacy |
| 12/11/2022 | Alex Villanueva, Vivian Villanueva | Message from friend expressing appreciation and holiday wishes | Spousal communication, Privacy |
| 12/12/2022 | Alex Villanueva, Vivian Villanueva | Vivian confirms holiday event RSVP and mentions potential guest | Spousal communication, Privacy, Third party privacy |
| 12/13/2022 | Alex Villanueva, Vivian Villanueva | Link shared to local community event flyer | Spousal communication, Privacy |
| 12/15/2022 | Alex Villanueva, Vivian Villanueva | Conversation about Alex's schedule and airport pick-up logistics | Spousal communication, Privacy |
| 12/16/2022 | Alex Villanueva, Vivian Villanueva | Shared message of thanks from a nonprofit organizer | Spousal communication, Privacy, Third party privacy |
| 12/17/2022 | Alex Villanueva, Vivian Villanueva | Brief update about Christmas preparations and shopping list | Spousal communication, Privacy |
| 12/19/2022 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 12/21/2022 | Alex Villanueva, Vivian Villanueva | Vivian shares reminder for annual donation deadline | Spousal communication, Privacy |
| 2/22/2022 | Alex Villanueva, Vivian Villanueva | Shared holiday video and message of appreciation from supporter | Spousal communication, Privacy, Third party privacy |
| 12/23/2022 | Alex Villanueva, Vivian Villanueva | Vivian asks for pickup time confirmation and responds with holiday emoji | Spousal communication, Privacy |
| 12/24/2022 | Alex Villanueva, Vivian Villanueva | Shared holiday blessings and note from family friend | Spousal communication, Privacy, Third party privacy |
| 12/25/2022 | Alex Villanueva, Vivian Villanueva | Venmo donation link shared; invitation to join family gathering | Spousal communication, Privacy |
| 12/26/2022 | Alex Villanueva, Vivian Villanueva | Brief message timestamped; no additional content | Spousal communication, Privacy |
| 12/27/2022 | Alex Villanueva, Vivian Villanueva | Shared contact card for Martin Romo | Spousal communication, Privacy, Third party privacy |
| 12/28/2022 | Alex Villanueva, Vivian Villanueva | Message confirming Alex's location and plans for the evening | Spousal communication, Privacy |
| 12/29/2022 | Alex Villanueva, Vivian Villanueva | PDF email from Mark Burnley shared | Spousal communication, Privacy, Third party privacy |
| 12/30/2022 | Alex Villanueva, Vivian Villanueva | Message about setting goals for the new year | Spousal communication, Privacy |
| 12/31/2022 | Alex Villanueva, Vivian Villanueva | New Year's Eve well wishes exchanged | Spousal communication, Privacy |
| 1/1/2023 | Alex Villanueva, Vivian Villanueva | New Year's Day blessing and affectionate message exchange | Spousal communication, Privacy |
| 1/2/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares post about goal-setting and asks Alex's opinion | Spousal communication, Privacy |
| 1/3/2023 | Alex Villanueva, Vivian Villanueva | No visible message content | Spousal communication, Privacy |
| 1/4/2023 | Alex Villanueva, Vivian Villanueva | Vivian coordinates pickup time from grocery store | Spousal communication, Privacy |
| 1/5/2023 | Alex Villanueva, Vivian Villanueva | Multiple blank or repeated timestamped messages | Spousal communication, Privacy |
| 1/6/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares article from neighborhood group app; no added content | Spousal communication, Privacy, Third party privacy |
| 1/7/2023 | Alex Villanueva, Vivian Villanueva | Alex confirms return flight schedule and asks about dinner | Spousal communication, Privacy |
| 1/8/2023 | Alex Villanueva, Vivian Villanueva | Vivian sends link to church livestream | Spousal communication, Privacy |
| 1/9/2023 | Alex Villanueva, Vivian Villanueva | Message confirming time for lunch; brief personal reply | Spousal communication, Privacy |
| 1/9/2023 | Alex Villanueva, Vivian Villanueva | Message confirming time for lunch; brief personal reply | Spousal communication, Privacy |
| 1/10/2023 | Alex Villanueva, Vivian Villanueva | Vivian asks if Alex picked up dinner; mentions long day | Spousal communication, Privacy |
| 1/11/2023 | Alex Villanueva, Vivian Villanueva | Shared Instagram reel with motivational quote | Spousal communication, Privacy |
| 1/12/2023 | Alex Villanueva, Vivian Villanueva | Confirmation of RSVP for upcoming event | Spousal communication, Privacy |
| 1/14/2023 | Alex Villanueva, Vivian Villanueva | Short exchange about traffic and delay | Spousal communication, Privacy |
| 1/15/2023 | Alex Villanueva, Vivian Villanueva | Commentary on Karen Bass' homelessness strategy and shared LAT article | Spousal communication, Privacy, Third party privacy |
| 1/16/2023 | Alex Villanueva, Vivian Villanueva | Vivian checks in about lunch and errands | Spousal communication, Privacy |
| 1/17/2023 | Alex Villanueva, Vivian Villanueva | meeting location and time | Spousal communication, Privacy |
| 1/18/2023 | Alex Villanueva, Vivian Villanueva | Shared article about Sheriff Luna's restructuring plans | Spousal communication, Privacy, Third party privacy |
| 1/19/2023 | Alex Villanueva, Vivian Villanueva | Quick check-in message with timestamp but no visible content | Spousal communication, Privacy |
| 1/20/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms guest list for dinner and mentions RSVP deadline | Spousal communication, Privacy |
| 1/21/2023 | Alex Villanueva, Vivian Villanueva | Discussion about event seating chart and table placement | Spousal communication, Privacy |
| 1/21/2023 | Alex Villanueva, Vivian Villanueva | Discussion about event seating chart and table placement | Spousal communication, Privacy |
| 1/22/2023 | Alex Villanueva, Vivian Villanueva | Shared news article about deputy-involved shooting in Compton | Spousal communication, Privacy, Third party privacy |
| 1/23/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 1/24/2023 | Alex Villanueva, Vivian Villanueva | dinner preparation and schedule | Spousal communication, Privacy |
| 1/25/2023 | Alex Villanueva, Vivian Villanueva | Alex sends note of appreciation and reminder about meeting | Spousal communication, Privacy |
| 1/26/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares podcast link and message about community safety | Spousal communication, Privacy, Third party privacy |
| 1/27/2023 | Alex Villanueva, Vivian Villanueva | Shared inspirational quote and comment on justice | Spousal communication, Privacy |
| 1/28/2023 | Alex Villanueva, Vivian Villanueva | Alex updates Vivian on travel status; Vivian confirms dinner time | Spousal communication, Privacy |
| 1/29/2023 | Alex Villanueva, Vivian Villanueva | Shared reminder about bill due date | Spousal communication, Privacy |
| 1/30/2023 | Alex Villanueva, Vivian Villanueva | meme | Spousal communication, Privacy |
| 1/31/2023 | Alex Villanueva, Vivian Villanueva | Shared Google Maps address and contact for Michael Xavier Lopez | Spousal communication, Privacy, Third party privacy |
| 2/1/2023 | Alex Villanueva, Vivian Villanueva | Concern about large-capacity magazine found in pistol; legal and safety implications | Spousal communication, Privacy, Third party privacy |
| 2/2/2023 | Alex Villanueva, Vivian Villanueva | Detailed legal update regarding conviction, appeal, and sentencing documents | Spousal communication, Privacy, Third party privacy |
| 2/3/2023 | Alex Villanueva, Vivian Villanueva | Vivian checks in on lunch timing; Alex sends supportive message | Spousal communication, Privacy |
| 2/4/2023 | Alex Villanueva, Vivian Villanueva | Confirmation of church livestream and time for donation | Spousal communication, Privacy |
| 2/5/2023 | Alex Villanueva, Vivian Villanueva | Shared news article regarding public safety and legislative changes | Spousal communication, Privacy, Third party privacy |
| 2/6/2023 | Alex Villanueva, Vivian Villanueva | Vivian asks about dinner plans and confirms grocery items | Spousal communication, Privacy |
| 2/6/2023 | Alex Villanueva, Vivian Villanueva | Vivian asks about dinner plans and confirms grocery items | Spousal communication, Privacy |
| 2/7/2023 | Alex Villanueva, Vivian Villanueva | Shared community safety update and reminder to schedule call | Spousal communication, Privacy |
| 2/8/2023 | Alex Villanueva, Vivian Villanueva | Vivian forwards link to LA Times editorial on recent city policy | Spousal communication, Privacy, Third party privacy |
| 2/9/2023 | Alex Villanueva, Vivian Villanueva | Messages confirming location and request for quick reply | Spousal communication, Privacy |
| 2/10/2023 | Alex Villanueva, Vivian Villanueva | Sent or received article regarding California law enforcement and proposed reforms | Spousal communication, Privacy, Third party privacy |
| 2/11/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares photos from recent outreach event | Spousal communication, Privacy |
| 2/12/2023 | Alex Villanueva, Vivian Villanueva | Short affectionate message sent during church livestream | Spousal communication, Privacy |
| 2/13/2023 | Alex Villanueva, Vivian Villanueva | Vivian checks in about dinner and mentions upcoming schedule | Spousal communication, Privacy |
| 2/14/2023 | Alex Villanueva, Vivian Villanueva | Article questioning sheriff's response to Monterey Park shooting | Spousal communication, Privacy, Third party privacy |
| 2/15/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 2/16/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares info about community meeting and public comment | Spousal communication, Privacy, Third party privacy |
| 2/17/2023 | Alex Villanueva, Vivian Villanueva | Commentary on LAPD using DOJ data to identify alleged extremists | Spousal communication, Privacy, Third party privacy |
| 2/18/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts confirmation of dinner time; brief affectionate note | Spousal communication, Privacy |
| 2/19/2023 | Alex Villanueva, Vivian Villanueva | Message about Sunday errands and confirmation of morning plans | Spousal communication, Privacy |
| 2/20/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares map pin and parking instructions for event | Spousal communication, Privacy |
| 2/21/2023 | Alex Villanueva, Vivian Villanueva | Testifying update and conversation about lunch plans | Spousal communication, Privacy |
| 2/22/2023 | Alex Villanueva, Vivian Villanueva | Alex sends good luck text and follows up on church talk | Spousal communication, Privacy |
| 2/23/2023 | Alex Villanueva, Vivian Villanueva | Weather-related note ("cats and dogs") and contact card for John Satterfield | Spousal communication, Privacy, Third party privacy |
| 2/24/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares grocery list reminder and plan for early dinner | Spousal communication, Privacy |
| 2/25/2023 | Alex Villanueva, Vivian Villanueva | Shared article on political news; no added commentary | Spousal communication, Privacy |
| 2/26/2023 | Alex Villanueva, Vivian Villanueva | Message of appreciation for Vivian's dinner and weekend support | Spousal communication, Privacy |
| 2/27/2023 | Alex Villanueva, Vivian Villanueva | Shared link to city council meeting notes | Spousal communication, Privacy, Third party privacy |

EXHIBIT 26 - Page 304

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 2/28/2023 | Alex Villanueva, Vivian Villanueva | Short affirmation and emoji-only reply from Alex | Spousal communication, Privacy |
| 3/1/2023 | Alex Villanueva, Vivian Villanueva | Shared Instagram reel and noted dates of conversations involving Holly Francisco and Howard | Spousal communication, Privacy, Third party privacy |
| 3/2/2023 | Alex Villanueva, Vivian Villanueva | Exchange about restaurant menu and lunch delay | Spousal communication, Privacy |
| 3/3/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped but no visible text | Spousal communication, Privacy |
| 3/4/2023 | Alex Villanueva, Vivian Villanueva | Vivian asks Alex to bring home dinner and reminds him of errands | Spousal communication, Privacy |
| 3/5/2023 | Alex Villanueva, Vivian Villanueva | Article shared on community safety and legislative change | Spousal communication, Privacy, Third party privacy |
| 3/6/2023 | Alex Villanueva, Vivian Villanueva | texts of encouragement before scheduled talk and confirms attendance | Spousal communication, Privacy |
| 3/7/2023 | Alex Villanueva, Vivian Villanueva | Shared link to Nordstrom product | Spousal communication, Privacy |
| 3/8/2023 | Alex Villanueva, Vivian Villanueva | Vivian sends short prayer message; Alex replies with appreciation | Spousal communication, Privacy |
| 3/9/2023 | Alex Villanueva, Vivian Villanueva | Shared political meme with no further comment | Spousal communication, Privacy |
| 3/10/2023 | Alex Villanueva, Vivian Villanueva | Laughed at image and brief comment ("Castigo") | Spousal communication, Privacy |
| 3/11/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms delivery of mail and asks about package | Spousal communication, Privacy |
| 3/12/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional message and planning for Monday breakfast | Spousal communication, Privacy |
| 3/13/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts reminder about doctor's appointment; Alex confirms | Spousal communication, Privacy |
| 3/14/2023 | Alex Villanueva, Vivian Villanueva | Shared image of flowers from community event | Spousal communication, Privacy |
| 3/15/2023 | Alex Villanueva, Vivian Villanueva | Message from supporter asking for advice; forwarded by Vivian | Spousal communication, Privacy, Third party privacy |
| 3/16/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms weekend trip plans and event details | Spousal communication, Privacy |
| 3/17/2023 | Alex Villanueva, Vivian Villanueva | Shared video of St. Patrick's Day greeting; Alex replies with emoji | Spousal communication, Privacy |
| 3/18/2023 | Alex Villanueva, Vivian Villanueva | Vivian asks about RSVP for Sunday breakfast | Spousal communication, Privacy |
| 3/19/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer from faith group and invitation to attend | Spousal communication, Privacy, Third party privacy |
| 3/20/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares encouraging quote and confirms dinner location | Spousal communication, Privacy |
| 3/21/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 3/22/2023 | Alex Villanueva, Vivian Villanueva | Vivian asks Alex to pick up groceries and confirms dinner time | Spousal communication, Privacy |
| 3/23/2023 | Alex Villanueva, Vivian Villanueva | Shared Instagram reel; short response with emoji | Spousal communication, Privacy |
| 3/24/2023 | Alex Villanueva, Vivian Villanueva | Vivian sends inspirational quote from church service | Spousal communication, Privacy |
| 3/25/2023 | Alex Villanueva, Vivian Villanueva | Article link shared with no additional commentary | Spousal communication, Privacy, Third party privacy |
| 3/26/2023 | Alex Villanueva, Vivian Villanueva | Vivian asks about garden tools; Alex replies with list | Spousal communication, Privacy |
| 3/27/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 3/28/2023 | Alex Villanueva, Vivian Villanueva | Shared Atlantic newsletter about political events involving Trump | Spousal communication, Privacy, Third party privacy |
| 3/29/2023 | Alex Villanueva, Vivian Villanueva | Vivian coordinates pickup schedule; Alex sends thank-you | Spousal communication, Privacy |
| 3/30/2023 | Alex Villanueva, Vivian Villanueva | Shared immigration article about undocumented immigrants paying taxes | Spousal communication, Privacy, Third party privacy |
| 3/31/2023 | Alex Villanueva, Vivian Villanueva | End-of-month dinner plan and message about Sunday schedule | Spousal communication, Privacy |
| 4/1/2023 | Alex Villanueva, Vivian Villanueva | Vivian sends good morning text and confirms brunch location | Spousal communication, Privacy |
| 4/2/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional video link; brief follow-up message | Spousal communication, Privacy |
| 4/3/2023 | Alex Villanueva, Vivian Villanueva | Shared lunch order update and article link | Spousal communication, Privacy |
| 4/4/2023 | Alex Villanueva, Vivian Villanueva | Alex confirms event attendance and thanks Vivian for her support | Spousal communication, Privacy |
| 4/5/2023 | Alex Villanueva, Vivian Villanueva | Shared news article on public safety; Vivian responds with emoji | Spousal communication, Privacy, Third party privacy |
| 4/6/2023 | Alex Villanueva, Vivian Villanueva | Message about weekend grocery list and reminder for Saturday | Spousal communication, Privacy |
| 4/7/2023 | Alex Villanueva, Vivian Villanueva | Short prayer shared from church livestream | Spousal communication, Privacy |
| 4/8/2023 | Alex Villanueva, Vivian Villanueva | Message about ordering salmon salad and dining together | Spousal communication, Privacy |
| 4/9/2023 | Alex Villanueva, Vivian Villanueva | Easter greeting and emoji message | Spousal communication, Privacy |
| 4/10/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer about local safety meeting | Spousal communication, Privacy, Third party privacy |
| 4/11/2023 | Alex Villanueva, Vivian Villanueva | Vivian reminds Alex about dinner reservation | Spousal communication, Privacy |
| 4/12/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares uplifting news article and confirms time for evening walk | Spousal communication, Privacy |
| 4/13/2023 | Alex Villanueva, Vivian Villanueva | Shared tweet on law enforcement policy changes; Alex replies with thumbs-up | Spousal communication, Privacy, Third party privacy |
| 4/14/2023 | Alex Villanueva, Vivian Villanueva | dry cleaning | Spousal communication, Privacy |
| 4/15/2023 | Alex Villanueva, Vivian Villanueva | Short affectionate note and confirmation of weekend dinner plans | Spousal communication, Privacy |
| 4/16/2023 | Alex Villanueva, Vivian Villanueva | Article link shared about veteran housing and comment on public response | Spousal communication, Privacy, Third party privacy |
| 4/17/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer from law enforcement fundraiser and RSVP inquiry | Spousal communication, Privacy, Third party privacy |
| 4/18/2023 | Alex Villanueva, Vivian Villanueva | Message about breakfast options and grocery store reminder | Spousal communication, Privacy |
| 4/19/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts emoji-only response and schedules lunch meetup | Spousal communication, Privacy |
| 4/20/2023 | Alex Villanueva, Vivian Villanueva | Link to article on 4/20 policing and brief comment from Alex | Spousal communication, Privacy, Third party privacy |
| 4/21/2023 | Alex Villanueva, Vivian Villanueva | Discussion of logistics for community outreach event | Spousal communication, Privacy |
| 4/22/2023 | Alex Villanueva, Vivian Villanueva | lunch location | Spousal communication, Privacy |
| 4/23/2023 | Alex Villanueva, Vivian Villanueva | Shared photo from outreach event; message of thanks to organizer | Spousal communication, Privacy, Third party privacy |
| 4/24/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms grocery pickup and Alex replies with list | Spousal communication, Privacy |
| 4/25/2023 | Alex Villanueva, Vivian Villanueva | Article shared about new LA city legislation; brief comment | Spousal communication, Privacy, Third party privacy |
| 4/26/2023 | Alex Villanueva, Vivian Villanueva | Vivian sends calendar invite and reminder for Friday event | Spousal communication, Privacy |
| 4/27/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional video link | Spousal communication, Privacy |
| 4/28/2023 | Alex Villanueva, Vivian Villanueva | Message about weekend plans and time to meet at the venue | Spousal communication, Privacy |
| 4/29/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer and message about final campaign meeting | Spousal communication, Privacy, Third party privacy |
| 4/30/2023 | Alex Villanueva, Vivian Villanueva | End-of-month devotional and message of gratitude | Spousal communication, Privacy |
| 5/1/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares inspirational quote and confirms breakfast time | Spousal communication, Privacy |
| 5/2/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer from civic event and discussion of guest list | Spousal communication, Privacy, Third party privacy |
| 5/3/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms dinner location and sends emoji reply | Spousal communication, Privacy |
| 5/4/2023 | Alex Villanueva, Vivian Villanueva | Article shared on city council proposal and Vivian's brief comment | Spousal communication, Privacy, Third party privacy |
| 5/5/2023 | Alex Villanueva, Vivian Villanueva | Cinco de Mayo message and short response from Alex | Spousal communication, Privacy |
| 5/6/2023 | Alex Villanueva, Vivian Villanueva | Shared video clip from news coverage with no caption | Spousal communication, Privacy, Third party privacy |
| 5/7/2023 | Alex Villanueva, Vivian Villanueva | Sunday brunch and RSVP | Spousal communication, Privacy |
| 5/8/2023 | Alex Villanueva, Vivian Villanueva | Short prayer text and reply with heart emoji | Spousal communication, Privacy |
| 5/9/2023 | Alex Villanueva, Vivian Villanueva | Article about law enforcement and public commentary shared | Spousal communication, Privacy, Third party privacy |
| 5/10/2023 | Alex Villanueva, Vivian Villanueva | Message about weekend fundraiser planning | Spousal communication, Privacy |
| 5/11/2023 | Alex Villanueva, Vivian Villanueva | grocery list and confirms dinner time | Spousal communication, Privacy |
| 5/12/2023 | Alex Villanueva, Vivian Villanueva | Shared message from community member about local violence | Spousal communication, Privacy, Third party privacy |
| 5/13/2023 | Alex Villanueva, Vivian Villanueva | Vivian sends birthday greeting; Alex replies with thanks | Spousal communication, Privacy |
| 5/14/2023 | Alex Villanueva, Vivian Villanueva | Mother's Day message exchanged | Spousal communication, Privacy |
| 5/15/2023 | Alex Villanueva, Vivian Villanueva | Shared image from fundraiser with caption | Spousal communication, Privacy |
| 5/16/2023 | Alex Villanueva, Vivian Villanueva | Vivian coordinates upcoming meeting; confirms Alex's attendance | Spousal communication, Privacy |
| 5/17/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional message and check-in from Alex | Spousal communication, Privacy |
| 5/18/2023 | Alex Villanueva, Vivian Villanueva | Article about youth crime trends and legislative reform shared | Spousal communication, Privacy, Third party privacy |
| 5/19/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts about Saturday errands and picks up dry cleaning | Spousal communication, Privacy |
| 5/20/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer for faith-based safety workshop | Spousal communication, Privacy, Third party privacy |
| 5/21/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts Alex photo of church service and confirms dinner location | Spousal communication, Privacy |
| 5/22/2023 | Alex Villanueva, Vivian Villanueva | Shared Instagram reel and comment on morning news | Spousal communication, Privacy |
| 5/23/2023 | Alex Villanueva, Vivian Villanueva | Vivian updates Alex on doctor's visit and confirms grocery list | Spousal communication, Privacy |
| 5/24/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional video and lunch plans | Spousal communication, Privacy |
| 5/25/2023 | Alex Villanueva, Vivian Villanueva | Short message about meeting location and follow-up | Spousal communication, Privacy |
| 5/26/2023 | Alex Villanueva, Vivian Villanueva | Vivian sends emoji-only response and confirms dinner schedule | Spousal communication, Privacy |

EXHIBIT 26 - Page 305

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 5/27/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer for local safety walk and comment on attendance | Spousal communication, Privacy, Third party privacy |
| 5/28/2023 | Alex Villanueva, Vivian Villanueva | Memorial Day message and brunch coordination | Spousal communication, Privacy |
| 5/29/2023 | Alex Villanueva, Vivian Villanueva | Devotional | Spousal communication, Privacy |
| 5/30/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms RSVP to campaign dinner | Spousal communication, Privacy |
| 5/31/2023 | Alex Villanueva, Vivian Villanueva | Alex shares photo and thanks Vivian for support | Spousal communication, Privacy |
| 6/1/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares inspirational quote and confirms dinner plans | Spousal communication, Privacy |
| 6/2/2023 | Alex Villanueva, Vivian Villanueva | Shared event flyer and RSVP message for fundraiser | Spousal communication, Privacy, Third party privacy |
| 6/3/2023 | Alex Villanueva, Vivian Villanueva | Brief update on weekend errands and shopping list | Spousal communication, Privacy |
| 6/4/2023 | Alex Villanueva, Vivian Villanueva | Shared image from community walk and message of thanks | Spousal communication, Privacy, Third party privacy |
| 6/5/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts confirmation about Alex's doctor visit | Spousal communication, Privacy |
| 6/6/2023 | Alex Villanueva, Vivian Villanueva | Shared article about crime trends and legislative response | Spousal communication, Privacy, Third party privacy |
| 6/7/2023 | Alex Villanueva, Vivian Villanueva | pick up dinner and confirms location | Spousal communication, Privacy |
| 6/8/2023 | Alex Villanueva, Vivian Villanueva | Prayer message and RSVP confirmation for upcoming event | Spousal communication, Privacy |
| 6/9/2023 | Alex Villanueva, Vivian Villanueva | Shared article from civic watch group and brief reaction | Spousal communication, Privacy, Third party privacy |
| 6/10/2023 | Alex Villanueva, Vivian Villanueva | church livestream time | Spousal communication, Privacy |
| 6/11/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional quote and update on lunch plans | Spousal communication, Privacy |
| 6/12/2023 | Alex Villanueva, Vivian Villanueva | Vivian sends RSVP to Alex and confirms event start time | Spousal communication, Privacy |
| 6/13/2023 | Alex Villanueva, Vivian Villanueva | Shared news article and emoji response | Spousal communication, Privacy, Third party privacy |
| 6/14/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts reminder for weekend schedule and family plans | Spousal communication, Privacy |
| 6/15/2023 | Alex Villanueva, Vivian Villanueva | Link to local safety initiative shared and brief discussion | Spousal communication, Privacy, Third party privacy |
| 6/16/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped; no visible content | Spousal communication, Privacy |
| 6/17/2023 | Alex Villanueva, Vivian Villanueva | Shared event photo with note of appreciation | Spousal communication, Privacy, Third party privacy |
| 6/18/2023 | Alex Villanueva, Vivian Villanueva | Father's Day message exchanged | Spousal communication, Privacy |
| 6/19/2023 | Alex Villanueva, Vivian Villanueva | brief note on travel update | Spousal communication, Privacy |
| 6/20/2023 | Alex Villanueva, Vivian Villanueva | Shared article about legislative proposal | Spousal communication, Privacy, Third party privacy |
| 6/21/2023 | Alex Villanueva, Vivian Villanueva | t lunch and errands for Thursday | Spousal communication, Privacy |
| 6/22/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer for community gathering and meeting notes | Spousal communication, Privacy, Third party privacy |
| 6/23/2023 | Alex Villanueva, Vivian Villanueva | Shared image from Friday fundraiser event and comment on attendance | Spousal communication, Privacy, Third party privacy |
| 6/24/2023 | Alex Villanueva, Vivian Villanueva | confirms schedule for weekend family visit | Spousal communication, Privacy |
| 6/25/2023 | Alex Villanueva, Vivian Villanueva | Shared video from faith group; emoji-only reply | Spousal communication, Privacy |
| 6/26/2023 | Alex Villanueva, Vivian Villanueva | Shared article on law enforcement salaries and LA County policy | Spousal communication, Privacy, Third party privacy |
| 6/27/2023 | Alex Villanueva, Vivian Villanueva | coordinates dinner with family friends | Spousal communication, Privacy |
| 6/28/2023 | Alex Villanueva, Vivian Villanueva | Shared contact card for potential campaign supporter | Spousal communication, Privacy, Third party privacy |
| 6/29/2023 | Alex Villanueva, Vivian Villanueva | Message about community fair and planning notes | Spousal communication, Privacy |
| 6/30/2023 | Alex Villanueva, Vivian Villanueva | End-of-month devotional and discussion of monthly highlights | Spousal communication, Privacy |
| 7/1/2023 | Alex Villanueva, Vivian Villanueva | Shared photo from community breakfast event | Spousal communication, Privacy |
| 7/2/2023 | Alex Villanueva, Vivian Villanueva | attendance at holiday gathering | Spousal communication, Privacy |
| 7/3/2023 | Alex Villanueva, Vivian Villanueva | Link to article about law enforcement support in community | Spousal communication, Privacy, Third party privacy |
| 7/4/2023 | Alex Villanueva, Vivian Villanueva | Fourth of July greeting and message of gratitude | Spousal communication, Privacy |
| 7/5/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer from neighborhood safety watch group | Spousal communication, Privacy, Third party privacy |
| 7/6/2023 | Alex Villanueva, Vivian Villanueva | lunchtime and location | Spousal communication, Privacy |
| 7/7/2023 | Alex Villanueva, Vivian Villanueva | follow up re grocery | Spousal communication, Privacy |
| 7/8/2023 | Alex Villanueva, Vivian Villanueva | devotional image and Sunday brunch note | Spousal communication, Privacy |
| 7/9/2023 | Alex Villanueva, Vivian Villanueva | Link to local policy update and Alex's reply | Spousal communication, Privacy, Third party privacy |
| 7/10/2023 | Alex Villanueva, Vivian Villanueva | errands list and dinner plans | Spousal communication, Privacy |
| 7/11/2023 | Alex Villanueva, Vivian Villanueva | meeting location and follows up on flyer printout | Spousal communication, Privacy |
| 7/12/2023 | Alex Villanueva, Vivian Villanueva | Shared contact info for attendee at recent fundraiser | Spousal communication, Privacy, Third party privacy |
| 7/13/2023 | Alex Villanueva, Vivian Villanueva | speech | Spousal communication, Privacy |
| 7/14/2023 | Alex Villanueva, Vivian Villanueva | Shared event schedule and notes from supporter | Spousal communication, Privacy, Third party privacy |
| 7/15/2023 | Alex Villanueva, Vivian Villanueva | RSVP confirmation and replies with emoji | Spousal communication, Privacy |
| 7/16/2023 | Alex Villanueva, Vivian Villanueva | Shared image of community walk and note of appreciation | Spousal communication, Privacy |
| 7/17/2023 | Alex Villanueva, Vivian Villanueva | morning schedule and errands | Spousal communication, Privacy |
| 7/18/2023 | Alex Villanueva, Vivian Villanueva | Shared article on new law enforcement policy; Alex responds | Spousal communication, Privacy, Third party privacy |
| 7/19/2023 | Alex Villanueva, Vivian Villanueva | confirms dinner reservation and guest count | Spousal communication, Privacy |
| 7/20/2023 | Alex Villanueva, Vivian Villanueva | Link to fundraiser page shared and brief follow-up | Spousal communication, Privacy, Third party privacy |
| /21/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares devotional message and prayer emoji | Spousal communication, Privacy |
| 7/22/2023 | Alex Villanueva, Vivian Villanueva | Article on LAPD statistics shared and discussed | Spousal communication, Privacy, Third party privacy |
| 7/23/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms details for Monday's lunch and errands | Spousal communication, Privacy |
| 7/24/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer and message regarding upcoming event | Spousal communication, Privacy, Third party privacy |
| 7/25/2023 | Alex Villanueva, Vivian Villanueva | note of thanks for weekend event support | Spousal communication, Privacy |
| 7/26/2023 | Alex Villanueva, Vivian Villanueva | outreach coordination and family schedule | Spousal communication, Privacy |
| 7/27/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 7/28/2023 | Alex Villanueva, Vivian Villanueva | call event organizer; follow-up message | Spousal communication, Privacy |
| 7/29/2023 | Alex Villanueva, Vivian Villanueva | Shared photo from weekend gathering and brief reply | Spousal communication, Privacy |
| 7/30/2023 | Alex Villanueva, Vivian Villanueva | Message about early morning plans and prayer request | Spousal communication, Privacy |
| 7/31/2023 | Alex Villanueva, Vivian Villanueva | Shared campaign message draft and comment on edit | Spousal communication, Privacy, Third party privacy |
| 8/1/2023 | Alex Villanueva, Vivian Villanueva | shares Bible verse and confirms breakfast meeting | Spousal communication, Privacy |
| 8/2/2023 | Alex Villanueva, Vivian Villanueva | Article shared about local safety initiative and reply from Alex | Spousal communication, Privacy, Third party privacy |
| 8/3/2023 | Alex Villanueva, Vivian Villanueva | grocery list and pickup time | Spousal communication, Privacy |
| 8/4/2023 | Alex Villanueva, Vivian Villanueva | Shared Instagram reel with no added message | Spousal communication, Privacy |
| 8/5/2023 | Alex Villanueva, Vivian Villanueva | community breakfast and confirms headcount | Spousal communication, Privacy |
| 8/6/2023 | Alex Villanueva, Vivian Villanueva | Short prayer message and weekend update | Spousal communication, Privacy |
| 8/7/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer and comment on campaign planning | Spousal communication, Privacy, Third party privacy |
| 8/8/2023 | Alex Villanueva, Vivian Villanueva | coordinates dinner plan and sends emoji reaction | Spousal communication, Privacy |
| 8/9/2023 | Alex Villanueva, Vivian Villanueva | Shared tweet about local policy change and safety update | Spousal communication, Privacy, Third party privacy |
| 8/10/2023 | Alex Villanueva, Vivian Villanueva | confirms attendance at weekend event | Spousal communication, Privacy |
| 8/11/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional video and brief prayer | Spousal communication, Privacy |
| 8/12/2023 | Alex Villanueva, Vivian Villanueva | errands and confirms evening meeting | Spousal communication, Privacy |
| 8/13/2023 | Alex Villanueva, Vivian Villanueva | Shared link to news article on civic reform and discussion | Spousal communication, Privacy, Third party privacy |
| 8/14/2023 | Alex Villanueva, Vivian Villanueva | Message about schedule change and request to pick up groceries | Spousal communication, Privacy |
| 8/15/2023 | Alex Villanueva, Vivian Villanueva | campaign flyer delivery and responds to text thread | Spousal communication, Privacy |
| 8/16/2023 | Alex Villanueva, Vivian Villanueva | Shared map link and location for outreach dinner | Spousal communication, Privacy |
| 8/17/2023 | Alex Villanueva, Vivian Villanueva | timing and RSVP | Spousal communication, Privacy |
| 8/18/2023 | Alex Villanueva, Vivian Villanueva | Shared link to LAT editorial on criminal justice reform | Spousal communication, Privacy, Third party privacy |
| 8/19/2023 | Alex Villanueva, Vivian Villanueva | sends photo from outreach event and message of support | Spousal communication, Privacy |
| 8/20/2023 | Alex Villanueva, Vivian Villanueva | Article about local civic engagement shared; Alex responds with comment | Spousal communication, Privacy, Third party privacy |
| 8/21/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms dinner RSVP and sends prayer emoji | Spousal communication, Privacy |
| 8/22/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped with no visible content | Spousal communication, Privacy |
| 8/23/2023 | Alex Villanueva, Vivian Villanueva | Shared community meeting flyer and follow-up message | Spousal communication, Privacy, Third party privacy |

EXHIBIT 26 - Page 306

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 8/24/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts about Friday schedule and quick reply from Alex | Spousal communication, Privacy |
| 8/25/2023 | Alex Villanueva, Vivian Villanueva | Shared link to sheriff's blog post and reaction | Spousal communication, Privacy, Third party privacy |
| 8/26/2023 | Alex Villanueva, Vivian Villanueva | Alex sends emoji and confirms Saturday breakfast time | Spousal communication, Privacy |
| 8/27/2023 | Alex Villanueva, Vivian Villanueva | Shared church livestream link; Vivian replies "Amen" | Spousal communication, Privacy |
| 8/28/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms Monday meeting location; Alex sends heart emoji | Spousal communication, Privacy |
| 8/29/2023 | Alex Villanueva, Vivian Villanueva | Shared article on policing reforms and community comments | Spousal communication, Privacy, Third party privacy |
| 8/30/2023 | Alex Villanueva, Vivian Villanueva | Message about dinner RSVP and errands list | Spousal communication, Privacy |
| 8/31/2023 | Alex Villanueva, Vivian Villanueva | short blessing and prayer message | Spousal communication, Privacy |
| 9/1/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer for weekend prayer event; Alex confirms attendance | Spousal communication, Privacy |
| 9/2/2023 | Alex Villanueva, Vivian Villanueva | coordinates shopping list and morning plan | Spousal communication, Privacy |
| 9/3/2023 | Alex Villanueva, Vivian Villanueva | Shared inspirational quote and brunch check-in | Spousal communication, Privacy |
| 9/4/2023 | Alex Villanueva, Vivian Villanueva | Labor Day message and location coordination | Spousal communication, Privacy |
| 9/5/2023 | Alex Villanueva, Vivian Villanueva | Shared news article about law enforcement conference | Spousal communication, Privacy, Third party privacy |
| 9/6/2023 | Alex Villanueva, Vivian Villanueva | dinner timing and guest update | Spousal communication, Privacy |
| 9/6/2023 | Alex Villanueva, Vivian Villanueva | dinner timing and guest update | Spousal communication, Privacy |
| 9/7/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional video; Alex responds with thumbs-up emoji | Spousal communication, Privacy |
| 9/8/2023 | Alex Villanueva, Vivian Villanueva | outreach flyer delivery and weekend plans | Spousal communication, Privacy |
| 9/9/2023 | Alex Villanueva, Vivian Villanueva | Article link shared on recent law enforcement policy and debate | Spousal communication, Privacy, Third party privacy |
| 9/10/2023 | Alex Villanueva, Vivian Villanueva | groceries and sends heart emoji | Spousal communication, Privacy |
| 9/11/2023 | Alex Villanueva, Vivian Villanueva | Shared remembrance post and brief prayer message | Spousal communication, Privacy |
| 9/12/2023 | Alex Villanueva, Vivian Villanueva | family visit and confirms dinner | Spousal communication, Privacy |
| 9/13/2023 | Alex Villanueva, Vivian Villanueva | Shared news story from faith group and short reply | Spousal communication, Privacy, Third party privacy |
| 9/14/2023 | Alex Villanueva, Vivian Villanueva | confirms event attendance | Spousal communication, Privacy |
| 9/15/2023 | Alex Villanueva, Vivian Villanueva | Short devotional message shared; reply with "Amen" | Spousal communication, Privacy |
| 9/16/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares weekend calendar reminder and RSVP follow-up | Spousal communication, Privacy |
| 9/17/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer for Sunday community brunch and Alex's confirmation | Spousal communication, Privacy |
| 9/18/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts about lunch pickup; Alex replies with emoji | Spousal communication, Privacy |
| 9/19/2023 | Alex Villanueva, Vivian Villanueva | Shared quote from devotional; Alex responds "Amen" | Spousal communication, Privacy |
| 9/20/2023 | Alex Villanueva, Vivian Villanueva | Message about church service planning and dinner prep | Spousal communication, Privacy |
| 9/21/2023 | Alex Villanueva, Vivian Villanueva | Shared article on city budget reform; brief discussion | Spousal communication, Privacy, Third party privacy |
| 9/22/2023 | Alex Villanueva, Vivian Villanueva | Vivian coordinates grocery shopping and confirms RSVPs | Spousal communication, Privacy |
| 9/23/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional video and response from Alex | Spousal communication, Privacy |
| 9/24/2023 | Alex Villanueva, Vivian Villanueva | Alex texts update about outreach visit; Vivian replies "Proud of you" | Spousal communication, Privacy |
| 9/25/2023 | Alex Villanueva, Vivian Villanueva | Shared community safety meeting agenda | Spousal communication, Privacy, Third party privacy |
| 9/26/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms dinner time; Alex replies with prayer hands emoji | Spousal communication, Privacy |
| 9/27/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer for October campaign breakfast | Spousal communication, Privacy, Third party privacy |
| 9/28/2023 | Alex Villanueva, Vivian Villanueva | Vivian reminds Alex to send RSVP and confirms breakfast location | Spousal communication, Privacy |
| 9/29/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional quote and update on weekend events | Spousal communication, Privacy |
| 9/30/2023 | Alex Villanueva, Vivian Villanueva | Alex confirms church attendance and lunch plans | Spousal communication, Privacy |
| 10/1/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer from safety forum; Vivian confirms attendance | Spousal communication, Privacy |
| 10/2/2023 | Alex Villanueva, Vivian Villanueva | Article on law enforcement policy shared; emoji reaction | Spousal communication, Privacy, Third party privacy |
| 10/3/2023 | Alex Villanueva, Vivian Villanueva | Vivian asks about community outreach photos; Alex replies "Got it" | Spousal communication, Privacy |
| 10/4/2023 | Alex Villanueva, Vivian Villanueva | Shared press coverage link and response from Vivian | Spousal communication, Privacy, Third party privacy |
| 10/5/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional and thank-you text after campaign breakfast | Spousal communication, Privacy |
| 10/6/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms dinner guests and sends emoji-only message | Spousal communication, Privacy |
| 10/7/2023 | Alex Villanueva, Vivian Villanueva | Shared article about LAPD statistics; Alex comments "Interesting" | Spousal communication, Privacy, Third party privacy |
| 10/8/2023 | Alex Villanueva, Vivian Villanueva | Vivian checks if Alex is attending Sunday livestream and sends emoji | Spousal communication, Privacy |
| 10/9/2023 | Alex Villanueva, Vivian Villanueva | Link to Monday civic meeting agenda; Vivian confirms attendance | Spousal communication, Privacy, Third party privacy |
| 10/10/2023 | Alex Villanueva, Vivian Villanueva | Alex updates Vivian on outreach meeting time | Spousal communication, Privacy |
| 10/11/2023 | Alex Villanueva, Vivian Villanueva | Shared press article on community safety proposal and brief reply | Spousal communication, Privacy, Third party privacy |
| 10/12/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms RSVP and updates Alex on upcoming travel | Spousal communication, Privacy |
| 10/13/2023 | Alex Villanueva, Vivian Villanueva | Short check-in about groceries and lunch menu | Spousal communication, Privacy |
| 10/14/2023 | Alex Villanueva, Vivian Villanueva | Shared image from community cleanup and thank-you message | Spousal communication, Privacy, Third party privacy |
| 10/15/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts early morning devotional and confirms church visit | Spousal communication, Privacy |
| 10/16/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped; no visible content | Spousal communication, Privacy |
| 10/17/2023 | Alex Villanueva, Vivian Villanueva | Shared article on local ballot measure; emoji response | Spousal communication, Privacy, Third party privacy |
| 10/18/2023 | Alex Villanueva, Vivian Villanueva | Vivian checks on dinner schedule and confirms guest | Spousal communication, Privacy |
| 10/19/2023 | Alex Villanueva, Vivian Villanueva | Shared information about event preparation and timing | Spousal communication, Privacy |
| 10/20/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms guest list and delivery of materials | Spousal communication, Privacy |
| 10/21/2023 | Alex Villanueva, Vivian Villanueva | Shared follow-up from public meeting and coordinated response | Spousal communication, Privacy, Third party privacy |
| 10/22/2023 | Alex Villanueva, Vivian Villanueva | Vivian sends morning check-in and brief response from Alex | Spousal communication, Privacy |
| 10/23/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms dinner reservation and coordinating guest details | Spousal communication, Privacy |
| 10/24/2023 | Alex Villanueva, Vivian Villanueva | Shared photo from earlier meeting and follow-up about event | Spousal communication, Privacy |
| 10/25/2023 | Alex Villanueva, Vivian Villanueva | Article shared regarding safety initiative; brief discussion | Spousal communication, Privacy, Third party privacy |
| 10/26/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms outreach lunch details and RSVP | Spousal communication, Privacy |
| 10/27/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer from campaign event and follow-up message | Spousal communication, Privacy, Third party privacy |
| 10/28/2023 | Alex Villanueva, Vivian Villanueva | Vivian updates Alex on personal errands and coordination | Spousal communication, Privacy |
| 10/29/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional and message of encouragement | Spousal communication, Privacy |
| 10/30/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped; no visible content | Spousal communication, Privacy |
| 10/31/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms Halloween plans and dinner time | Spousal communication, Privacy |
| 11/1/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares article on post-election analysis and schedules dinner | Spousal communication, Privacy, Third party privacy |
| 11/2/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer for weekend prayer breakfast; RSVP confirmed | Spousal communication, Privacy |
| 11/3/2023 | Alex Villanueva, Vivian Villanueva | Grocery list coordination and morning check-in | Spousal communication, Privacy |
| 11/4/2023 | Alex Villanueva, Vivian Villanueva | Shared news item about community budget reform | Spousal communication, Privacy, Third party privacy |
| 11/5/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms event location and attendance for fundraiser | Spousal communication, Privacy |
| 11/6/2023 | Alex Villanueva, Vivian Villanueva | Brief devotional shared; message about upcoming event | Spousal communication, Privacy |
| 11/7/2023 | Alex Villanueva, Vivian Villanueva | Follow-up on campaign meeting and schedule confirmation | Spousal communication, Privacy |
| 11/8/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms dinner time and location for evening outreach | Spousal communication, Privacy |
| 11/9/2023 | Alex Villanueva, Vivian Villanueva | Shared article on public safety reform; brief reaction | Spousal communication, Privacy, Third party privacy |
| 11/10/2023 | Alex Villanueva, Vivian Villanueva | Grocery reminder and RSVP confirmation for Saturday | Spousal communication, Privacy |
| 11/11/2023 | Alex Villanueva, Vivian Villanueva | Veteran's Day message exchanged | Spousal communication, Privacy |
| 11/12/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional and brunch planning | Spousal communication, Privacy |
| 11/13/2023 | Alex Villanueva, Vivian Villanueva | Vivian coordinates pickup time and confirms family visit | Spousal communication, Privacy |
| 11/14/2023 | Alex Villanueva, Vivian Villanueva | Shared photo from event and comment on attendance | Spousal communication, Privacy |
| 11/15/2023 | Alex Villanueva, Vivian Villanueva | Article about civic engagement campaign shared | Spousal communication, Privacy, Third party privacy |
| 11/16/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares flyer for upcoming meeting and confirms RSVP | Spousal communication, Privacy |
| 11/17/2023 | Alex Villanueva, Vivian Villanueva | Grocery and dinner planning for weekend | Spousal communication, Privacy |
| 11/18/2023 | Alex Villanueva, Vivian Villanueva | Shared quote from devotional and weekend check-in | Spousal communication, Privacy |
| 11/19/2023 | Alex Villanueva, Vivian Villanueva | Vivian coordinates brunch timing and confirms attendance | Spousal communication, Privacy |

EXHIBIT 26 - Page 307

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 11/20/2023 | Alex Villanueva, Vivian Villanueva | Shared article on community safety legislation; brief discussion | Spousal communication, Privacy, Third party privacy |
| 11/20/2023 | Alex Villanueva, Vivian Villanueva | Shared article on community safety legislation; brief discussion | Spousal communication, Privacy, Third party privacy |
| 11/21/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares event logistics and confirms guest count | Spousal communication, Privacy |
| 11/22/2023 | Alex Villanueva, Vivian Villanueva | Grocery prep and RSVP confirmation for holiday meal | Spousal communication, Privacy |
| 11/23/2023 | Alex Villanueva, Vivian Villanueva | Thanksgiving greeting exchanged | Spousal communication, Privacy |
| 11/24/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer from community appreciation event | Spousal communication, Privacy, Third party privacy |
| 11/25/2023 | Alex Villanueva, Vivian Villanueva | Message about brunch location and family visit | Spousal communication, Privacy |
| 11/26/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares devotional quote and confirms dinner | Spousal communication, Privacy |
| 11/27/2023 | Alex Villanueva, Vivian Villanueva | Shared article on LA public safety vote | Spousal communication, Privacy, Third party privacy |
| 11/28/2023 | Alex Villanueva, Vivian Villanueva | Message timestamped; no visible content | Spousal communication, Privacy |
| 11/29/2023 | Alex Villanueva, Vivian Villanueva | Coordination for Friday outreach meeting | Spousal communication, Privacy |
| 11/30/2023 | Alex Villanueva, Vivian Villanueva | End-of-month prayer message and reflection shared | Spousal communication, |
| 12/1/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares morning devotional and confirms dinner plans | Spousal communication, Privacy |
| 12/2/2023 | Alex Villanueva, Vivian Villanueva | Grocery coordination and weekend schedule confirmed | Spousal communication, Privacy |
| 12/3/2023 | Alex Villanueva, Vivian Villanueva | Shared brunch image and comment on event turnout | Spousal communication, Privacy |
| 12/4/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms schedule for event prep and errands | Spousal communication, Privacy |
| 12/5/2023 | Alex Villanueva, Vivian Villanueva | Shared press article about city council initiative | Spousal communication, Privacy, Third party privacy |
| 12/6/2023 | Alex Villanueva, Vivian Villanueva | Coordination for evening meeting and dinner time | Spousal communication, Privacy |
| 12/7/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer for weekend community gathering | Spousal communication, Privacy, Third party privacy |
| 12/8/2023 | Alex Villanueva, Vivian Villanueva | Vivian shares holiday devotion and RSVP confirmation | Spousal communication, Privacy |
| 12/9/2023 | Alex Villanueva, Vivian Villanueva | Article shared on holiday traffic and safety message | Spousal communication, Privacy, Third party privacy |
| 12/10/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms church time and holiday brunch plans | Spousal communication, Privacy |
| 12/11/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer about faith-based safety forum | Spousal communication, Privacy, Third party privacy |
| 12/12/2023 | Alex Villanueva, Vivian Villanueva | Vivian asks about dinner RSVP and confirms pickup | Spousal communication, Privacy |
| 12/13/2023 | Alex Villanueva, Vivian Villanueva | Shared news article on civic engagement; brief response | Spousal communication, Privacy, Third party privacy |
| 12/14/2023 | Alex Villanueva, Vivian Villanueva | Grocery list and Friday night dinner planning | Spousal communication, Privacy |
| 12/15/2023 | Alex Villanueva, Vivian Villanueva | Vivian confirms guest count and shares devotional image | Spousal communication, Privacy |
| 12/16/2023 | Alex Villanueva, Vivian Villanueva | Shared community event photo and thank-you note | Spousal communication, Privacy, Third party privacy |
| 12/17/2023 | Alex Villanueva, Vivian Villanueva | Vivian asks about holiday travel and confirms Monday errands | Spousal communication, Privacy |
| 12/18/2023 | Alex Villanueva, Vivian Villanueva | Shared article about local budget reforms and civic meeting | Spousal communication, Privacy, Third party privacy |
| 12/19/2023 | Alex Villanueva, Vivian Villanueva | Vivian sends calendar update and grocery request | Spousal communication, Privacy |
| 12/20/2023 | Alex Villanueva, Vivian Villanueva | Shared devotional link and confirms lunch schedule | Spousal communication, Privacy |
| 12/21/2023 | Alex Villanueva, Vivian Villanueva | Vivian coordinates guest pickup and confirms headcount | Spousal communication, Privacy |
| 12/22/2023 | Alex Villanueva, Vivian Villanueva | Shared press article on policing legislation | Spousal communication, Privacy, Third party privacy |
| 12/23/2023 | Alex Villanueva, Vivian Villanueva | Holiday message exchanged and dinner RSVP confirmed | Spousal communication, Privacy |
| 12/24/2023 | Alex Villanueva, Vivian Villanueva | Shared holiday devotional and brunch coordination | Spousal communication, Privacy |
| 12/25/2023 | Alex Villanueva, Vivian Villanueva | Christmas Day message and photo shared | Spousal communication, Privacy |
| 12/26/2023 | Alex Villanueva, Vivian Villanueva | Vivian texts about post-holiday errands | Spousal communication, Privacy |
| 12/27/2023 | Alex Villanueva, Vivian Villanueva | Shared flyer for New Year's Eve community dinner | Spousal communication, Privacy, Third party privacy |
| 12/28/2023 | Alex Villanueva, Vivian Villanueva | Grocery planning and RSVP confirmation for dinner | Spousal communication, Privacy |
| 12/29/2023 | Alex Villanueva, Vivian Villanueva | Shared press article and brief comment | Spousal communication, Privacy, Third party privacy |
| 12/30/2023 | Alex Villanueva, Vivian Villanueva | Final weekend planning and brunch confirmation | Spousal communication, Privacy |
| 12/31/2023 | Alex Villanueva, Vivian Villanueva | New Year's Eve devotional and message of encouragement | Spousal communication, Privacy |
| 1/1/2024 | Alex Villanueva, Vivian Villanueva | New Year's Day message and breakfast plans | Spousal communication, Privacy |
| 1/2/2024 | Alex Villanueva, Vivian Villanueva | Vivian sends grocery list and confirms errands | Spousal communication, Privacy |
| 1/3/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer from community meeting and brief exchange | Spousal communication, Privacy, Third party privacy |
| 1/4/2024 | Alex Villanueva, Vivian Villanueva | Vivian texts about dinner and RSVPs | Spousal communication, Privacy |
| 1/5/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional message and evening check-in | Spousal communication, Privacy |
| 1/6/2024 | Alex Villanueva, Vivian Villanueva | Shared community outreach flyer and planning discussion | Spousal communication, Privacy, Third party privacy |
| 1/7/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms Sunday plans and church time | Spousal communication, Privacy |
| 1/8/2024 | Alex Villanueva, Vivian Villanueva | Article on public safety shared and brief response | Spousal communication, Privacy, Third party privacy |
| 1/9/2024 | Alex Villanueva, Vivian Villanueva | Vivian coordinates lunch and afternoon errands | Spousal communication, Privacy |
| 1/10/2024 | Alex Villanueva, Vivian Villanueva | Message timestamped; no visible content | Spousal communication, Privacy |
| 1/11/2024 | Alex Villanueva, Vivian Villanueva | Vivian texts reminder for weekend travel and dinner | Spousal communication, Privacy |
| 1/12/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional video and message of support | Spousal communication, Privacy |
| 1/13/2024 | Alex Villanueva, Vivian Villanueva | Vivian shares flyer for campaign planning meeting | Spousal communication, Privacy, Third party privacy |
| 1/14/2024 | Alex Villanueva, Vivian Villanueva | Vivian sends Sunday greeting and confirms brunch | Spousal communication, Privacy |
| 1/15/2024 | Alex Villanueva, Vivian Villanueva | Shared article related to civic reform efforts | Spousal communication, Privacy, Third party privacy |
| 1/16/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms appointment and dinner guest count | Spousal communication, Privacy |
| 1/17/2024 | Alex Villanueva, Vivian Villanueva | Shared contact card and follow-up message | Spousal communication, Privacy, Third party privacy |
| 1/18/2024 | Alex Villanueva, Vivian Villanueva | Vivian checks in about groceries and sends emoji | Spousal communication, Privacy |
| 1/19/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional prayer and confirmation of RSVP | Spousal communication, Privacy |
| 1/20/2024 | Alex Villanueva, Vivian Villanueva | Event coordination and weekend family plans | Spousal communication, Privacy |
| 1/21/2024 | Alex Villanueva, Vivian Villanueva | Vivian shares church notes and thank-you message | Spousal communication, Privacy |
| 1/22/2024 | Alex Villanueva, Vivian Villanueva | Article on local government hearing shared | Spousal communication, Privacy, Third party privacy |
| 1/23/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and scheduling errands | Spousal communication, Privacy |
| 1/24/2024 | Alex Villanueva, Vivian Villanueva | Shared link to civic update; brief reaction | Spousal communication, Privacy, Third party privacy |
| 1/25/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms RSVP and shares dinner menu | Spousal communication, Privacy |
| 1/26/2024 | Alex Villanueva, Vivian Villanueva | Reminder about family gathering and follow-up | Spousal communication, Privacy |
| 1/27/2024 | Alex Villanueva, Vivian Villanueva | Shared community event update and flyer | Spousal communication, Privacy, Third party privacy |
| 1/28/2024 | Alex Villanueva, Vivian Villanueva | Vivian texts about Sunday plans and sends emoji | Spousal communication, Privacy |
| 1/29/2024 | Alex Villanueva, Vivian Villanueva | Article shared on policy changes and short discussion | Spousal communication, Privacy, Third party privacy |
| 1/30/2024 | Alex Villanueva, Vivian Villanueva | Grocery list coordination and prayer message | Spousal communication, Privacy |
| 1/31/2024 | Alex Villanueva, Vivian Villanueva | Shared end-of-month devotional and reflection | Spousal communication, Privacy |
| 2/1/2024 | Alex Villanueva, Vivian Villanueva | Vivian shares devotional message and confirms weekend RSVP | Spousal communication, Privacy |
| 2/2/2024 | Alex Villanueva, Vivian Villanueva | Shared article on public safety ordinance and discussion | Spousal communication, Privacy, Third party privacy |
| 2/3/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and event reminder for Sunday | Spousal communication, Privacy |
| 2/4/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms church attendance and lunch guest list | Spousal communication, Privacy |
| 2/5/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer for faith-based outreach and coordination note | Spousal communication, Privacy, Third party privacy |
| 2/6/2024 | Alex Villanueva, Vivian Villanueva | Vivian texts RSVP confirmation and updates dinner menu | Spousal communication, Privacy |
| 2/7/2024 | Alex Villanueva, Vivian Villanueva | Shared article on public sector leadership and brief discussion | Spousal communication, Privacy, Third party privacy |
| 2/8/2024 | Alex Villanueva, Vivian Villanueva | Vivian checks in on event logistics and confirms call time | Spousal communication, Privacy |
| 2/9/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional message and follow-up on outreach support | Spousal communication, Privacy |
| 2/10/2024 | Alex Villanueva, Vivian Villanueva | Article shared on policing statistics and civic response | Spousal communication, Privacy, Third party privacy |
| 2/11/2024 | Alex Villanueva, Vivian Villanueva | Vivian shares brunch location and schedule update | Spousal communication, Privacy |
| 2/12/2024 | Alex Villanueva, Vivian Villanueva | Shared community flyer and comment on policy update | Spousal communication, Privacy, Third party privacy |
| 2/13/2024 | Alex Villanueva, Vivian Villanueva | Vivian sends prayer and confirms groceries | Spousal communication, Privacy |
| 2/14/2024 | Alex Villanueva, Vivian Villanueva | Valentine's Day message and coordination for evening | Spousal communication, Privacy |
| 2/15/2024 | Alex Villanueva, Vivian Villanueva | Shared news story on criminal justice reform | Spousal communication, Privacy, Third party privacy |

EXHIBIT 26 - Page 308

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 2/16/2024 | Alex Villanueva, Vivian Villanueva | Vivian updates Alex on outreach details and pickup time | Spousal communication, Privacy |
| 2/17/2024 | Alex Villanueva, Vivian Villanueva | Flyer shared for weekend campaign event | Spousal communication, Privacy, Third party privacy |
| 2/18/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms church and Sunday dinner schedule | Spousal communication, Privacy |
| 2/19/2024 | Alex Villanueva, Vivian Villanueva | Shared article on holiday enforcement changes | Spousal communication, Privacy, Third party privacy |
| 2/20/2024 | Alex Villanueva, Vivian Villanueva | Grocery and weekly schedule coordination | Spousal communication, Privacy |
| 2/21/2024 | Alex Villanueva, Vivian Villanueva | Vivian texts emoji-only reply to Alex's outreach update | Spousal communication, Privacy |
| 2/22/2024 | Alex Villanueva, Vivian Villanueva | Shared policy report and brief reaction | Spousal communication, Privacy, Third party privacy |
| 2/23/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms dinner prep and guest arrival time | Spousal communication, Privacy |
| 2/24/2024 | Alex Villanueva, Vivian Villanueva | Flyer for Sunday service and brunch shared | Spousal communication, Privacy, Third party privacy |
| 2/25/2024 | Alex Villanueva, Vivian Villanueva | Vivian sends RSVP confirmation and shared devotional quote | Spousal communication, Privacy |
| 2/26/2024 | Alex Villanueva, Vivian Villanueva | Shared public safety memo and Alex's comment | Spousal communication, Privacy, Third party privacy |
| 2/27/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and schedule reminders | Spousal communication, Privacy |
| 2/28/2024 | Alex Villanueva, Vivian Villanueva | Vivian shares prayer message and campaign planning note | Spousal communication, Privacy |
| 2/29/2024 | Alex Villanueva, Vivian Villanueva | End-of-month devotional and gratitude message | Spousal communication, Privacy |
| 3/1/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms Friday dinner guest count and coordinates grocery items | Spousal communication, Privacy |
| 3/2/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional message and weekend event reminder | Spousal communication, Privacy |
| 3/3/2024 | Alex Villanueva, Vivian Villanueva | Brunch planning and update on church livestream | Spousal communication, Privacy |
| 3/4/2024 | Alex Villanueva, Vivian Villanueva | Shared article on local reform proposal and scheduling update | Spousal communication, Privacy, Third party privacy |
| 3/5/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and RSVP coordination for upcoming dinner | Spousal communication, Privacy |
| 3/6/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms guest speaker arrival and logistics | Spousal communication, Privacy, Third party privacy |
| 3/7/2024 | Alex Villanueva, Vivian Villanueva | Shared image from community outreach and comment | Spousal communication, Privacy |
| 3/8/2024 | Alex Villanueva, Vivian Villanueva | Friday devotional and family schedule check-in | Spousal communication, Privacy |
| 3/9/2024 | Alex Villanueva, Vivian Villanueva | Vivian coordinates shopping and confirms Sunday plans | Spousal communication, Privacy |
| 3/10/2024 | Alex Villanueva, Vivian Villanueva | Shared prayer and church note | Spousal communication, Privacy |
| 3/11/2024 | Alex Villanueva, Vivian Villanueva | Article on city public safety vote and brief reply | Spousal communication, Privacy, Third party privacy |
| 3/12/2024 | Alex Villanueva, Vivian Villanueva | campaign RSVP and dinner menu | Spousal communication, Privacy |
| 3/13/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional video and discussion of weekend travel | Spousal communication, Privacy |
| 3/14/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and flyer confirmation for fundraiser | Spousal communication, Privacy |
| 3/15/2024 | Alex Villanueva, Vivian Villanueva | Shared press article on county board meeting | Spousal communication, Privacy, Third party privacy |
| 3/16/2024 | Alex Villanueva, Vivian Villanueva | schedule and sends emoji-only reply | Spousal communication, Privacy |
| 3/17/2024 | Alex Villanueva, Vivian Villanueva | Sunday brunch update and devotional text shared | Spousal communication, Privacy |
| 3/18/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer for community appreciation lunch | Spousal communication, Privacy, Third party privacy |
| 3/19/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms campaign call and updates on family matters | Spousal communication, Privacy |
| 3/20/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and RSVP reminders for upcoming events | Spousal communication, Privacy |
| 3/21/2024 | Alex Villanueva, Vivian Villanueva | Shared community event photo and message of appreciation | Spousal communication, Privacy |
| 3/22/2024 | Alex Villanueva, Vivian Villanueva | Vivian texts about Friday errands and Sunday planning | Spousal communication, Privacy |
| 3/23/2024 | Alex Villanueva, Vivian Villanueva | Shared article on law enforcement oversight reforms | Spousal communication, Privacy, Third party privacy |
| 3/24/2024 | Alex Villanueva, Vivian Villanueva | Devotional text and brunch check-in | Spousal communication, Privacy |
| 3/25/2024 | Alex Villanueva, Vivian Villanueva | Vivian updates Alex on midweek scheduling and flyer edits | Spousal communication, Privacy |
| 3/26/2024 | Alex Villanueva, Vivian Villanueva | Shared prayer video and reminder for church RSVP | Spousal communication, Privacy |
| 3/27/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and Sunday volunteer coordination | Spousal communication, Privacy |
| 3/28/2024 | Alex Villanueva, Vivian Villanueva | Shared article about city public budget hearing | Spousal communication, Privacy, Third party privacy |
| 3/29/2024 | Alex Villanueva, Vivian Villanueva | Good Friday church visit and lunch | Spousal communication, Privacy |
| 3/30/2024 | Alex Villanueva, Vivian Villanueva | Grocery pickup reminder and Saturday dinner plans | Spousal communication, Privacy |
| 3/31/2024 | Alex Villanueva, Vivian Villanueva | Easter Sunday devotional message and photo shared | Spousal communication, Privacy |
| 4/1/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and Monday schedule coordination | Spousal communication, Privacy |
| 4/2/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional text and reminder for meeting | Spousal communication, Privacy |
| 4/3/2024 | Alex Villanueva, Vivian Villanueva | Flyer shared for campaign outreach and planning discussion | Spousal communication, Privacy, Third party privacy |
| 4/4/2024 | Alex Villanueva, Vivian Villanueva | Vivian checks in about dinner and guest RSVP | Spousal communication, Privacy |
| 4/5/2024 | Alex Villanueva, Vivian Villanueva | Shared prayer video and weekly devotional | Spousal communication, Privacy |
| 4/6/2024 | Alex Villanueva, Vivian Villanueva | Grocery pickup update and coordination for Sunday | Spousal communication, Privacy |
| 4/7/2024 | Alex Villanueva, Vivian Villanueva | Shared Sunday devotional and confirmation of brunch time | Spousal communication, Privacy |
| 4/8/2024 | Alex Villanueva, Vivian Villanueva | confirms lunch meeting and flyer edits | Spousal communication, Privacy |
| 4/9/2024 | Alex Villanueva, Vivian Villanueva | Shared article about policing policy reform and reply | Spousal communication, Privacy, Third party privacy |
| 4/10/2024 | Alex Villanueva, Vivian Villanueva | Reminder for church RSVP and grocery list check-in | Spousal communication, Privacy |
| 4/11/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms community event location and start time | Spousal communication, Privacy |
| 4/12/2024 | Alex Villanueva, Vivian Villanueva | Shared news piece and brief discussion of public reaction | Spousal communication, Privacy, Third party privacy |
| 4/13/2024 | Alex Villanueva, Vivian Villanueva | Coordination for dinner guest seating and RSVP | Spousal communication, Privacy |
| 4/14/2024 | Alex Villanueva, Vivian Villanueva | Shared church devotional and Sunday message | Spousal communication, Privacy |
| 4/15/2024 | Alex Villanueva, Vivian Villanueva | Grocery schedule update and confirmation for midweek meeting | Spousal communication, Privacy |
| 4/16/2024 | Alex Villanueva, Vivian Villanueva | Vivian texts about errands and upcoming flyer delivery | Spousal communication, Privacy |
| 4/17/2024 | Alex Villanueva, Vivian Villanueva | Shared article on new legislation and brief commentary | Spousal communication, Privacy, Third party privacy |
| 4/18/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and devotional reminder | Spousal communication, Privacy |
| 4/19/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms guest arrival and sends emoji reply | Spousal communication, Privacy |
| 4/20/2024 | Alex Villanueva, Vivian Villanueva | Shared photo from community gathering and note of thanks | Spousal communication, Privacy |
| 4/21/2024 | Alex Villanueva, Vivian Villanueva | Vivian texts about brunch timing and church livestream | Spousal communication, Privacy |
| 4/22/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer about public forum and brief reaction | Spousal communication, Privacy, Third party privacy |
| 4/23/2024 | Alex Villanueva, Vivian Villanueva | Grocery and weekend planning coordination | Spousal communication, Privacy |
| 4/24/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms event logistics and sends prayer emoji | Spousal communication, Privacy |
| 4/25/2024 | Alex Villanueva, Vivian Villanueva | Shared civic article and comment on community feedback | Spousal communication, Privacy, Third party privacy |
| 4/26/2024 | Alex Villanueva, Vivian Villanueva | Grocery reminder and guest confirmation for outreach dinner | Spousal communication, Privacy |
| 4/27/2024 | Alex Villanueva, Vivian Villanueva | Shared Sunday planning message and devotional link | Spousal communication, Privacy |
| 4/28/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms pickup location and evening schedule | Spousal communication, Privacy |
| 4/29/2024 | Alex Villanueva, Vivian Villanueva | Shared quote and update on campaign coordination | Spousal communication, Privacy, Third party privacy |
| 4/30/2024 | Alex Villanueva, Vivian Villanueva | End-of-month devotional and Friday flyer review | Spousal communication, Privacy |
| 5/1/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and weekday planning | Spousal communication, Privacy |
| 5/2/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional message and follow-up event confirmation | Spousal communication, Privacy |
| 5/3/2024 | Alex Villanueva, Vivian Villanueva | Flyer shared for community meeting and brief update | Spousal communication, Privacy, Third party privacy |
| 5/4/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms dinner guest list and grocery list | Spousal communication, Privacy |
| 5/5/2024 | Alex Villanueva, Vivian Villanueva | Sunday devotional shared and brunch coordination | Spousal communication, Privacy |
| 5/6/2024 | Alex Villanueva, Vivian Villanueva | Shared campaign-related article and response | Spousal communication, Privacy, Third party privacy |
| 5/7/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms RSVPs and coordinates outreach schedule | Spousal communication, Privacy |
| 5/8/2024 | Alex Villanueva, Vivian Villanueva | Grocery update and prayer message shared | Spousal communication, Privacy |
| 5/9/2024 | Alex Villanueva, Vivian Villanueva | Shared news item and brief discussion | Spousal communication, Privacy, Third party privacy |
| 5/10/2024 | Alex Villanueva, Vivian Villanueva | Friday planning and reminder for Sunday service | Spousal communication, Privacy |
| 5/11/2024 | Alex Villanueva, Vivian Villanueva | Grocery run and dinner guest confirmation | Spousal communication, Privacy |
| 5/12/2024 | Alex Villanueva, Vivian Villanueva | Mother's Day message exchanged | Spousal communication, Privacy |
| 5/13/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional and discussion of flyer edits | Spousal communication, Privacy |
| 5/14/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms weekly errands and Sunday RSVP | Spousal communication, Privacy |

EXHIBIT 26 - Page 309

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 5/15/2024 | Alex Villanueva, Vivian Villanueva | Shared community event flyer and brief exchange | Spousal communication, Privacy, Third party privacy |
| 5/16/2024 | Alex Villanueva, Vivian Villanueva | Grocery list update and coordination for campaign lunch | Spousal communication, Privacy |
| 5/17/2024 | Alex Villanueva, Vivian Villanueva | Shared quote and emoji reply | Spousal communication, Privacy |
| 5/18/2024 | Alex Villanueva, Vivian Villanueva | Coordination for Sunday devotional and planning | Spousal communication, Privacy |
| 5/19/2024 | Alex Villanueva, Vivian Villanueva | Sunday message exchange and brunch follow-up | Spousal communication, Privacy |
| 5/20/2024 | Alex Villanueva, Vivian Villanueva | Shared article and notes on upcoming council hearing | Spousal communication, Privacy, Third party privacy |
| 5/21/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms pickup time and RSVP | Spousal communication, Privacy |
| 5/22/2024 | Alex Villanueva, Vivian Villanueva | Grocery and devotional message shared | Spousal communication, Privacy |
| 5/23/2024 | Alex Villanueva, Vivian Villanueva | Coordination for Friday outreach and prayer meeting | Spousal communication, Privacy |
| 5/24/2024 | Alex Villanueva, Vivian Villanueva | Shared update from outreach supporter and comment | Spousal communication, Privacy, Third party privacy |
| 5/25/2024 | Alex Villanueva, Vivian Villanueva | Weekend family plans and grocery coordination | Spousal communication, Privacy |
| 5/26/2024 | Alex Villanueva, Vivian Villanueva | Brunch planning and shared devotional message | Spousal communication, Privacy |
| 5/27/2024 | Alex Villanueva, Vivian Villanueva | Memorial Day greeting and coordination for lunch | Spousal communication, Privacy |
| 5/28/2024 | Alex Villanueva, Vivian Villanueva | RSVP and flyer edits | Spousal communication, Privacy |
| 5/29/2024 | Alex Villanueva, Vivian Villanueva | Shared image from civic event and note of appreciation | Spousal communication, Privacy |
| 5/30/2024 | Alex Villanueva, Vivian Villanueva | Grocery list check-in and guest update | Spousal communication, Privacy |
| 5/31/2024 | Alex Villanueva, Vivian Villanueva | End-of-month prayer and campaign follow-up | Spousal communication, Privacy |
| 6/1/2024 | Alex Villanueva, Vivian Villanueva | Shared prayer and brunch planning | Spousal communication, Privacy |
| 6/2/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and Sunday scheduling | Spousal communication, Privacy |
| 6/3/2024 | Alex Villanueva, Vivian Villanueva | Shared campaign update flyer and response | Spousal communication, Privacy, Third party privacy |
| 6/4/2024 | Alex Villanueva, Vivian Villanueva | Vivian checks in on dinner plans and confirms RSVPs | Spousal communication, Privacy |
| 6/5/2024 | Alex Villanueva, Vivian Villanueva | Shared quote and devotional reaction | Spousal communication, Privacy |
| 6/6/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and guest arrival coordination | Spousal communication, Privacy |
| 6/7/2024 | Alex Villanueva, Vivian Villanueva | Shared civic article and emoji response | Spousal communication, Privacy, Third party privacy |
| 6/8/2024 | Alex Villanueva, Vivian Villanueva | Brunch RSVP and devotional message exchange | Spousal communication, Privacy |
| 6/9/2024 | Alex Villanueva, Vivian Villanueva | Vivian shares prayer link and confirms church plans | Spousal communication, Privacy |
| 6/10/2024 | Alex Villanueva, Vivian Villanueva | Shared article on policing and campaign flyer edits | Spousal communication, Privacy, Third party privacy |
| 6/11/2024 | Alex Villanueva, Vivian Villanueva | Grocery shopping update and weekly meeting plans | Spousal communication, Privacy |
| 6/12/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional video and feedback | Spousal communication, Privacy |
| 6/13/2024 | Alex Villanueva, Vivian Villanueva | Planning dinner and discussing RSVP updates | Spousal communication, Privacy |
| 6/14/2024 | Alex Villanueva, Vivian Villanueva | Shared local reform article and emoji-only reply | Spousal communication, Privacy, Third party privacy |
| 6/15/2024 | Alex Villanueva, Vivian Villanueva | Grocery and family event coordination | Spousal communication, Privacy |
| 6/16/2024 | Alex Villanueva, Vivian Villanueva | Father's Day message and brunch coordination | Spousal communication, Privacy |
| 6/17/2024 | Alex Villanueva, Vivian Villanueva | Shared community meeting schedule and flyer update | Spousal communication, Privacy, Third party privacy |
| 6/18/2024 | Alex Villanueva, Vivian Villanueva | Grocery list check-in and prayer message | Spousal communication, Privacy |
| 6/19/2024 | Alex Villanueva, Vivian Villanueva | Shared Juneteenth message and evening planning | Spousal communication, Privacy |
| 6/20/2024 | Alex Villanueva, Vivian Villanueva | Event flyer shared and RSVP discussion | Spousal communication, Privacy, Third party privacy |
| 6/21/2024 | Alex Villanueva, Vivian Villanueva | Vivian sends reminder for brunch and campaign outreach | Spousal communication, Privacy |
| 6/22/2024 | Alex Villanueva, Vivian Villanueva | Grocery update and Saturday planning | Spousal communication, Privacy |
| 6/23/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional quote and church schedule | Spousal communication, Privacy |
| 6/24/2024 | Alex Villanueva, Vivian Villanueva | Flyer edits and RSVP list review | Spousal communication, Privacy |
| 6/25/2024 | Alex Villanueva, Vivian Villanueva | Grocery and guest coordination for weekend | Spousal communication, Privacy |
| 6/26/2024 | Alex Villanueva, Vivian Villanueva | Shared campaign article and reaction | Spousal communication, Privacy, Third party privacy |
| 6/27/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms family visit and dinner plans | Spousal communication, Privacy |
| 6/28/2024 | Alex Villanueva, Vivian Villanueva | Grocery run reminder and guest list update | Spousal communication, Privacy |
| 6/29/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional message and thank-you note | Spousal communication, Privacy |
| 6/30/2024 | Alex Villanueva, Vivian Villanueva | End-of-month reflection and schedule coordination | Spousal communication, Privacy |
| 7/1/2024 | Alex Villanueva, Vivian Villanueva | Grocery and dinner coordination for Monday | Spousal communication, Privacy |
| 7/2/2024 | Alex Villanueva, Vivian Villanueva | Shared article about civic policy update | Spousal communication, Privacy, Third party privacy |
| 7/3/2024 | Alex Villanueva, Vivian Villanueva | Planning for 4th of July gathering and grocery list | Spousal communication, Privacy |
| 7/4/2024 | Alex Villanueva, Vivian Villanueva | Independence Day message and brunch update | Spousal communication, Privacy |
| 7/5/2024 | Alex Villanueva, Vivian Villanueva | Shared community update and response | Spousal communication, Privacy, Third party privacy |
| 7/6/2024 | Alex Villanueva, Vivian Villanueva | Grocery list coordination and dinner guest planning | Spousal communication, Privacy |
| 7/7/2024 | Alex Villanueva, Vivian Villanueva | Devotional message and Sunday brunch plans | Spousal communication, Privacy |
| 7/8/2024 | Alex Villanueva, Vivian Villanueva | Shared campaign flyer and message of encouragement | Spousal communication, Privacy |
| 7/9/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and RSVP for midweek event | Spousal communication, Privacy |
| 7/10/2024 | Alex Villanueva, Vivian Villanueva | Planning outreach flyer edits and schedule | Spousal communication, Privacy, Third party privacy |
| 7/11/2024 | Alex Villanueva, Vivian Villanueva | Dinner coordination and guest list confirmation | Spousal communication, Privacy |
| 7/12/2024 | Alex Villanueva, Vivian Villanueva | Shared article on law enforcement initiative | Spousal communication, Privacy, Third party privacy |
| 7/13/2024 | Alex Villanueva, Vivian Villanueva | Grocery prep and planning for weekend events | Spousal communication, Privacy |
| 7/14/2024 | Alex Villanueva, Vivian Villanueva | Sunday devotional shared and lunch plans confirmed | Spousal communication, Privacy |
| 7/15/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer and RSVP response for upcoming community meeting | Spousal communication, Privacy, Third party privacy |
| 7/16/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and schedule for upcoming fundraiser | Spousal communication, Privacy |
| 7/17/2024 | Alex Villanueva, Vivian Villanueva | Campaign update coordination and flyer note | Spousal communication, Privacy |
| 7/18/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional and daily planning message | Spousal communication, Privacy |
| 7/19/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and weekend planning | Spousal communication, Privacy |
| 7/20/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms campaign event RSVP and dinner prep | Spousal communication, Privacy |
| 7/21/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional and brunch coordination | Spousal communication, Privacy |
| 7/22/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and campaign outreach updates | Spousal communication, Privacy |
| 7/23/2024 | Alex Villanueva, Vivian Villanueva | Flyer edits and coordination for midweek meeting | Spousal communication, Privacy |
| 7/24/2024 | Alex Villanueva, Vivian Villanueva | Shared article and reply about policy discussion | Spousal communication, Privacy, Third party privacy |
| 7/25/2024 | Alex Villanueva, Vivian Villanueva | Vivian confirms outreach logistics and RSVP list | Spousal communication, Privacy |
| 7/26/2024 | Alex Villanueva, Vivian Villanueva | Grocery update and Sunday brunch planning | Spousal communication, Privacy |
| 7/27/2024 | Alex Villanueva, Vivian Villanueva | Shared end-of-week prayer and event confirmation | Spousal communication, Privacy |
| 7/28/2024 | Alex Villanueva, Vivian Villanueva | Shared Sunday devotional and message of support | Spousal communication, Privacy |
| 7/29/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and campaign notes coordination | Spousal communication, Privacy |
| 7/30/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer and confirmed dinner guests | Spousal communication, Privacy |
| 7/31/2024 | Alex Villanueva, Vivian Villanueva | End-of-month devotional and scheduling update | Spousal communication, Privacy |
| 8/1/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and campaign flyer edits | Spousal communication, Privacy |
| 8/2/2024 | Alex Villanueva, Vivian Villanueva | Shared community policy article and brief comment | Spousal communication, Privacy, Third party privacy |
| 8/3/2024 | Alex Villanueva, Vivian Villanueva | Devotional message and weekend brunch planning | Spousal communication, Privacy |
| 8/4/2024 | Alex Villanueva, Vivian Villanueva | Sunday planning and brunch logistics | Spousal communication, Privacy |
| 8/5/2024 | Alex Villanueva, Vivian Villanueva | Shared article and grocery list check-in | Spousal communication, Privacy, Third party privacy |
| 8/6/2024 | Alex Villanueva, Vivian Villanueva | Flyer edits and family dinner schedule | Spousal communication, Privacy |
| 8/7/2024 | Alex Villanueva, Vivian Villanueva | Shared civic meeting notes and prayer emoji | Spousal communication, Privacy |
| 8/8/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and church guest confirmation | Spousal communication, Privacy |
| 8/9/2024 | Alex Villanueva, Vivian Villanueva | Shared community article and schedule update | Spousal communication, Privacy, Third party privacy |
| 8/10/2024 | Alex Villanueva, Vivian Villanueva | Dinner RSVP and devotional quote shared | Spousal communication, Privacy |
| 8/11/2024 | Alex Villanueva, Vivian Villanueva | Sunday church coordination and brunch check-in | Spousal communication, Privacy |

EXHIBIT 26 - Page 310

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 8/12/2024 | Alex Villanueva, Vivian Villanueva | Shared article on public safety policy; brief reply | Spousal communication, Privacy, Third party privacy |
| 8/13/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and flyer delivery reminder | Spousal communication, Privacy |
| 8/14/2024 | Alex Villanueva, Vivian Villanueva | Devotional message and coordination for weekend dinner | Spousal communication, Privacy |
| 8/15/2024 | Alex Villanueva, Vivian Villanueva | Shared civic update and campaign event flyer | Spousal communication, Privacy, Third party privacy |
| 8/16/2024 | Alex Villanueva, Vivian Villanueva | Dinner RSVP confirmation and emoji reply | Spousal communication, Privacy |
| 8/17/2024 | Alex Villanueva, Vivian Villanueva | Community event prep and flyer design update | Spousal communication, Privacy |
| 8/18/2024 | Alex Villanueva, Vivian Villanueva | Sunday devotional and scheduling brunch | Spousal communication, Privacy |
| 8/19/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and midweek meeting RSVP | Spousal communication, Privacy |
| 8/20/2024 | Alex Villanueva, Vivian Villanueva | Shared policy memo and brief comment | Spousal communication, Privacy, Third party privacy |
| 8/21/2024 | Alex Villanueva, Vivian Villanueva | RSVP confirmation for dinner and devotional message | Spousal communication, Privacy |
| 8/22/2024 | Alex Villanueva, Vivian Villanueva | Grocery check-in and campaign flyer edits | Spousal communication, Privacy |
| 8/23/2024 | Alex Villanueva, Vivian Villanueva | Shared photo from Friday outreach and response | Spousal communication, Privacy |
| 8/24/2024 | Alex Villanueva, Vivian Villanueva | Coordination for Sunday brunch and devotional shared | Spousal communication, Privacy |
| 8/25/2024 | Alex Villanueva, Vivian Villanueva | Grocery run update and weekend planning | Spousal communication, Privacy |
| 8/26/2024 | Alex Villanueva, Vivian Villanueva | Shared civic flyer and campaign discussion | Spousal communication, Privacy, Third party privacy |
| 8/27/2024 | Alex Villanueva, Vivian Villanueva | Grocery and dinner coordination | Spousal communication, Privacy |
| 8/28/2024 | Alex Villanueva, Vivian Villanueva | Devotional and confirmation of Sunday event plans | Spousal communication, Privacy |
| 8/29/2024 | Alex Villanueva, Vivian Villanueva | Flyer draft review and evening schedule check-in | Spousal communication, Privacy |
| 8/30/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and RSVP list confirmation | Spousal communication, Privacy |
| 8/31/2024 | Alex Villanueva, Vivian Villanueva | End-of-month devotional and calendar review | Spousal communication, Privacy |
| 9/1/2024 | Alex Villanueva, Vivian Villanueva | Sunday devotional and brunch planning | Spousal communication, Privacy |
| 9/2/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and weekend schedule update | Spousal communication, Privacy |
| 9/3/2024 | Alex Villanueva, Vivian Villanueva | Shared article on public policy change and brief reply | Spousal communication, Privacy, Third party privacy |
| 9/4/2024 | Alex Villanueva, Vivian Villanueva | Dinner guest confirmation and grocery list | Spousal communication, Privacy |
| 9/5/2024 | Alex Villanueva, Vivian Villanueva | Shared campaign flyer draft and emoji response | Spousal communication, Privacy |
| 9/6/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and confirmation of outreach event details | Spousal communication, Privacy |
| 9/7/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer and Sunday planning message | Spousal communication, Privacy |
| 9/8/2024 | Alex Villanueva, Vivian Villanueva | Sunday devotional and brunch coordination | Spousal communication, Privacy |
| 9/9/2024 | Alex Villanueva, Vivian Villanueva | Shared article and reminder about upcoming campaign call | Spousal communication, Privacy, Third party privacy |
| 9/10/2024 | Alex Villanueva, Vivian Villanueva | Grocery pickup update and guest RSVP | Spousal communication, Privacy |
| 9/11/2024 | Alex Villanueva, Vivian Villanueva | Shared remembrance message and devotional prayer | Spousal communication, Privacy |
| 9/12/2024 | Alex Villanueva, Vivian Villanueva | Grocery reminder and flyer coordination | Spousal communication, Privacy |
| 9/13/2024 | Alex Villanueva, Vivian Villanueva | Shared campaign update and schedule confirmation | Spousal communication, Privacy, Third party privacy |
| 9/14/2024 | Alex Villanueva, Vivian Villanueva | Dinner planning and devotional shared | Spousal communication, Privacy |
| 9/15/2024 | Alex Villanueva, Vivian Villanueva | Sunday message and brunch guest coordination | Spousal communication, Privacy |
| 9/16/2024 | Alex Villanueva, Vivian Villanueva | Grocery and event logistics | Spousal communication, Privacy |
| 9/17/2024 | Alex Villanueva, Vivian Villanueva | Shared public memo and emoji reply | Spousal communication, Privacy, Third party privacy |
| 9/18/2024 | Alex Villanueva, Vivian Villanueva | Dinner RSVP and guest list confirmation | Spousal communication, Privacy |
| 9/19/2024 | Alex Villanueva, Vivian Villanueva | Grocery check-in and devotional message | Spousal communication, Privacy |
| 9/20/2024 | Alex Villanueva, Vivian Villanueva | Shared article on community safety and brief response | Spousal communication, Privacy, Third party privacy |
| 9/21/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and Saturday planning | Spousal communication, Privacy |
| 9/22/2024 | Alex Villanueva, Vivian Villanueva | Sunday devotional and brunch coordination | Spousal communication, Privacy |
| 9/23/2024 | Alex Villanueva, Vivian Villanueva | Grocery reminder and meeting schedule update | Spousal communication, Privacy |
| 9/24/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer for campaign event and RSVP reply | Spousal communication, Privacy, Third party privacy |
| 9/25/2024 | Alex Villanueva, Vivian Villanueva | Grocery and dinner planning | Spousal communication, Privacy |
| 9/26/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional message and thank-you note | Spousal communication, Privacy |
| 9/27/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and guest check-in | Spousal communication, Privacy |
| 9/28/2024 | Alex Villanueva, Vivian Villanueva | Shared article on policing and civic responsibility | Spousal communication, Privacy, Third party privacy |
| 9/29/2024 | Alex Villanueva, Vivian Villanueva | Sunday message and brunch confirmation | Spousal communication, Privacy |
| 9/30/2024 | Alex Villanueva, Vivian Villanueva | End-of-month devotional and RSVP update | Spousal communication, Privacy |
| 10/1/2024 | Alex Villanueva, Vivian Villanueva | Shared Sunday devotional and confirmed dinner plans | Spousal communication, Privacy |
| 10/2/2024 | Alex Villanueva, Vivian Villanueva | Grocery list coordination and scheduling updates | Spousal communication, Privacy |
| 10/3/2024 | Alex Villanueva, Vivian Villanueva | Shared article and brief discussion about public safety | Spousal communication, Privacy, Third party privacy |
| 10/4/2024 | Alex Villanueva, Vivian Villanueva | RSVP confirmation and grocery planning for weekend | Spousal communication, Privacy |
| 10/5/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional message and church service note | Spousal communication, Privacy |
| 10/6/2024 | Alex Villanueva, Vivian Villanueva | Sunday brunch planning and schedule coordination | Spousal communication, Privacy |
| 10/7/2024 | Alex Villanueva, Vivian Villanueva | Grocery reminder and follow-up on RSVP | Spousal communication, Privacy |
| 10/8/2024 | Alex Villanueva, Vivian Villanueva | Shared policy flyer and campaign coordination | Spousal communication, Privacy, Third party privacy |
| 10/9/2024 | Alex Villanueva, Vivian Villanueva | Dinner and devotional planning for Thursday | Spousal communication, Privacy |
| 10/10/2024 | Alex Villanueva, Vivian Villanueva | Grocery update and outreach logistics for the weekend | Spousal communication, Privacy |
| 10/11/2024 | Alex Villanueva, Vivian Villanueva | Shared image and brunch coordination | Spousal communication, Privacy |
| 10/12/2024 | Alex Villanueva, Vivian Villanueva | Flyer edit request and RSVP confirmation | Spousal communication, Privacy, Third party privacy |
| 10/13/2024 | Alex Villanueva, Vivian Villanueva | Shared Sunday devotional and family brunch update | Spousal communication, Privacy |
| 10/14/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and weekly calendar check-in | Spousal communication, Privacy |
| 10/15/2024 | Alex Villanueva, Vivian Villanueva | Shared civic memo and discussion of flyer distribution | Spousal communication, Privacy, Third party privacy |
| 10/16/2024 | Alex Villanueva, Vivian Villanueva | Dinner RSVP and devotional shared | Spousal communication, Privacy |
| 10/17/2024 | Alex Villanueva, Vivian Villanueva | Grocery run confirmation and reminder for upcoming meeting | Spousal communication, Privacy |
| 10/18/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer and campaign schedule update | Spousal communication, Privacy, Third party privacy |
| 10/19/2024 | Alex Villanueva, Vivian Villanueva | Sunday coordination and flyer edits discussed | Spousal communication, Privacy |
| 10/20/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional and confirmation of dinner guests | Spousal communication, Privacy |
| 10/21/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and event coordination | Spousal communication, Privacy |
| 10/22/2024 | Alex Villanueva, Vivian Villanueva | Campaign flyer feedback and RSVP check-in | Spousal communication, Privacy, Third party privacy |
| 10/23/2024 | Alex Villanueva, Vivian Villanueva | Grocery update and Sunday brunch note | Spousal communication, Privacy |
| 10/24/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional and end-of-week reflection | Spousal communication, Privacy |
| 10/25/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and weekend event reminder | Spousal communication, Privacy |
| 10/26/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer and RSVP confirmation | Spousal communication, Privacy, Third party privacy |
| 10/27/2024 | Alex Villanueva, Vivian Villanueva | Sunday devotional and brunch planning | Spousal communication, Privacy |
| 10/28/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and dinner coordination | Spousal communication, Privacy |
| 10/29/2024 | Alex Villanueva, Vivian Villanueva | Shared event flyer and thank-you message | Spousal communication, Privacy, Third party privacy |
| 10/30/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and schedule for campaign dinner | Spousal communication, Privacy |
| 10/31/2024 | Alex Villanueva, Vivian Villanueva | Halloween message and coordination for evening dinner | Spousal communication, Privacy |
| 12/1/2024 | Alex Villanueva, Vivian Villanueva | Shared prayer message and grocery list coordination | Spousal communication, Privacy |
| 12/2/2024 | Alex Villanueva, Vivian Villanueva | Grocery pickup and planning for dinner guest | Spousal communication, Privacy |
| 12/3/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional message and evening check-in | Spousal communication, Privacy |
| 12/4/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and midweek RSVP update | Spousal communication, Privacy |
| 12/5/2024 | Alex Villanueva, Vivian Villanueva | Flyer edit coordination and Sunday guest list confirmation | Spousal communication, Privacy, Third party privacy |
| 12/6/2024 | Alex Villanueva, Vivian Villanueva | Shared holiday devotional and dinner planning | Spousal communication, Privacy |
| 12/7/2024 | Alex Villanueva, Vivian Villanueva | Grocery reminder and Saturday scheduling | Spousal communication, Privacy |
| 12/8/2024 | Alex Villanueva, Vivian Villanueva | Shared Sunday devotional and brunch update | Spousal communication, Privacy |

EXHIBIT 26 - Page 311

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 12/9/2024 | Alex Villanueva, Vivian Villanueva | Grocery list coordination and event RSVP | Spousal communication, Privacy |
| 12/10/2024 | Alex Villanueva, Vivian Villanueva | Shared article and holiday schedule update | Spousal communication, Privacy, Third party privacy |
| 12/11/2024 | Alex Villanueva, Vivian Villanueva | Dinner planning and flyer delivery coordination | Spousal communication, Privacy |
| 12/12/2024 | Alex Villanueva, Vivian Villanueva | Devotional message and guest list review | Spousal communication, Privacy |
| 12/13/2024 | Alex Villanueva, Vivian Villanueva | Grocery update and RSVP confirmation | Spousal communication, Privacy |
| 12/14/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer and dinner coordination for family | Spousal communication, Privacy, Third party privacy |
| 12/15/2024 | Alex Villanueva, Vivian Villanueva | Shared Sunday devotional and brunch photo | Spousal communication, Privacy |
| 12/16/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and midweek campaign logistics | Spousal communication, Privacy |
| 12/17/2024 | Alex Villanueva, Vivian Villanueva | Shared community announcement and prayer emoji | Spousal communication, Privacy, Third party privacy |
| 12/18/2024 | Alex Villanueva, Vivian Villanueva | Dinner RSVP confirmation and grocery reminder | Spousal communication, Privacy |
| 12/19/2024 | Alex Villanueva, Vivian Villanueva | Holiday devotional and Sunday event reminder | Spousal communication, Privacy |
| 12/20/2024 | Alex Villanueva, Vivian Villanueva | Shared family calendar and guest RSVP | Spousal communication, Privacy |
| 12/21/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and holiday brunch planning | Spousal communication, Privacy |
| 12/22/2024 | Alex Villanueva, Vivian Villanueva | Shared Sunday devotional and church attendance update | Spousal communication, Privacy |
| 12/23/2024 | Alex Villanueva, Vivian Villanueva | Flyer discussion and coordination for Christmas dinner | Spousal communication, Privacy, Third party privacy |
| 12/24/2024 | Alex Villanueva, Vivian Villanueva | Christmas Eve message and brunch RSVP | Spousal communication, Privacy |
| 12/25/2024 | Alex Villanueva, Vivian Villanueva | Shared Christmas greeting and holiday coordination | Spousal communication, Privacy |
| 12/26/2024 | Alex Villanueva, Vivian Villanueva | Grocery reminder and event recap | Spousal communication, Privacy |
| 12/27/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional and guest schedule planning | Spousal communication, Privacy |
| 12/28/2024 | Alex Villanueva, Vivian Villanueva | Grocery coordination and Sunday brunch logistics | Spousal communication, Privacy |
| 12/29/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer for New Year's Eve event | Spousal communication, Privacy, Third party privacy |
| 12/30/2024 | Alex Villanueva, Vivian Villanueva | Grocery prep and RSVP confirmation for holiday dinner | Spousal communication, Privacy |
| 12/31/2024 | Alex Villanueva, Vivian Villanueva | New Year's Eve devotional and dinner coordination | Spousal communication, Privacy |
| 11/1/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional and grocery list coordination | Spousal communication, Privacy |
| 11/2/2024 | Alex Villanueva, Vivian Villanueva | Flyer planning and confirmation of RSVP list | Spousal communication, Privacy, Third party privacy |
| 11/3/2024 | Alex Villanueva, Vivian Villanueva | Sunday devotional and brunch scheduling | Spousal communication, Privacy |
| 11/4/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and weekday event coordination | Spousal communication, Privacy |
| 11/5/2024 | Alex Villanueva, Vivian Villanueva | Shared public safety article and brief discussion | Spousal communication, Privacy, Third party privacy |
| 11/6/2024 | Alex Villanueva, Vivian Villanueva | Dinner RSVP and confirmation of weekend errands | Spousal communication, Privacy |
| 11/7/2024 | Alex Villanueva, Vivian Villanueva | Devotional message shared and calendar check-in | Spousal communication, Privacy |
| 11/8/2024 | Alex Villanueva, Vivian Villanueva | Grocery list and Sunday planning | Spousal communication, Privacy |
| 11/9/2024 | Alex Villanueva, Vivian Villanueva | Shared community flyer and brief coordination note | Spousal communication, Privacy, Third party privacy |
| 11/10/2024 | Alex Villanueva, Vivian Villanueva | Sunday devotional and brunch RSVP confirmation | Spousal communication, Privacy |
| 11/11/2024 | Alex Villanueva, Vivian Villanueva | Shared Veterans Day message and dinner update | Spousal communication, Privacy |
| 11/12/2024 | Alex Villanueva, Vivian Villanueva | Grocery list coordination and flyer edits | Spousal communication, Privacy |
| 11/13/2024 | Alex Villanueva, Vivian Villanueva | Shared news article and emoji-only response | Spousal communication, Privacy, Third party privacy |
| 11/14/2024 | Alex Villanueva, Vivian Villanueva | Dinner planning and guest check-in | Spousal communication, Privacy |
| 11/15/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional and thank-you note | Spousal communication, Privacy |
| 11/16/2024 | Alex Villanueva, Vivian Villanueva | Grocery reminder and RSVP confirmation | Spousal communication, Privacy |
| 11/17/2024 | Alex Villanueva, Vivian Villanueva | Sunday devotional and brunch update | Spousal communication, Privacy |
| 11/18/2024 | Alex Villanueva, Vivian Villanueva | Shared community update and flyer review | Spousal communication, Privacy, Third party privacy |
| 11/19/2024 | Alex Villanueva, Vivian Villanueva | Grocery prep and prayer message shared | Spousal communication, Privacy |
| 11/20/2024 | Alex Villanueva, Vivian Villanueva | Event logistics and dinner planning | Spousal communication, Privacy |
| 11/21/2024 | Alex Villanueva, Vivian Villanueva | Shared flyer and follow-up coordination | Spousal communication, Privacy, Third party privacy |
| 11/22/2024 | Alex Villanueva, Vivian Villanueva | Grocery reminder and RSVP response | Spousal communication, Privacy |
| 11/23/2024 | Alex Villanueva, Vivian Villanueva | Weekend devotional and event update | Spousal communication, Privacy |
| 11/24/2024 | Alex Villanueva, Vivian Villanueva | Sunday brunch coordination and thank-you message | Spousal communication, Privacy |
| 11/25/2024 | Alex Villanueva, Vivian Villanueva | Shared article and civic discussion | Spousal communication, Privacy, Third party privacy |
| 11/26/2024 | Alex Villanueva, Vivian Villanueva | Grocery planning and Thanksgiving prep | Spousal communication, Privacy |
| 11/27/2024 | Alex Villanueva, Vivian Villanueva | Shared devotional and schedule check-in | Spousal communication, Privacy |
| 11/28/2024 | Alex Villanueva, Vivian Villanueva | Thanksgiving message and brunch photo | Spousal communication, Privacy |
| 11/29/2024 | Alex Villanueva, Vivian Villanueva | Grocery list update and guest check-in | Spousal communication, Privacy |
| 11/30/2024 | Alex Villanueva, Vivian Villanueva | End-of-month reflection and devotional shared | Spousal communication, Privacy |
| 1/1/2025 | Alex Villanueva, Vivian Villanueva | New Year's Day message and grocery planning | Spousal communication, Privacy |
| 1/2/2025 | Alex Villanueva, Vivian Villanueva | Shared flyer and RSVP for community meeting | Spousal communication, Privacy, Third party privacy |
| 1/3/2025 | Alex Villanueva, Vivian Villanueva | Grocery coordination and campaign flyer edits | Spousal communication, Privacy |
| 1/4/2025 | Alex Villanueva, Vivian Villanueva | Shared devotional message and weekend schedule | Spousal communication, Privacy |
| 1/5/2025 | Alex Villanueva, Vivian Villanueva | Sunday brunch coordination and shared prayer | Spousal communication, Privacy |
| 1/6/2025 | Alex Villanueva, Vivian Villanueva | Grocery list and dinner guest confirmation | Spousal communication, Privacy |
| 1/7/2025 | Alex Villanueva, Vivian Villanueva | Shared article and civic event planning | Spousal communication, Privacy, Third party privacy |
| 1/8/2025 | Alex Villanueva, Vivian Villanueva | Grocery pickup reminder and RSVP | Spousal communication, Privacy |
| 1/9/2025 | Alex Villanueva, Vivian Villanueva | Shared devotional and flyer update | Spousal communication, Privacy |
| 1/10/2025 | Alex Villanueva, Vivian Villanueva | Grocery planning and campaign update | Spousal communication, Privacy |
| 1/10/2025 | Alex Villanueva, Vivian Villanueva | Grocery planning and campaign update | Spousal communication, Privacy |
| 1/11/2025 | Alex Villanueva, Vivian Villanueva | Grocery list and RSVP follow-up for weekend dinner | Spousal communication, Privacy |
| 1/12/2025 | Alex Villanueva, Vivian Villanueva | Shared devotional message and Sunday coordination | Spousal communication, Privacy |
| 1/13/2025 | Alex Villanueva, Vivian Villanueva | Grocery shopping reminder and campaign flyer discussion | Spousal communication, Privacy |
| 1/14/2025 | Alex Villanueva, Vivian Villanueva | Shared article and RSVP update | Spousal communication, Privacy, Third party privacy |
| 1/15/2025 | Alex Villanueva, Vivian Villanueva | Grocery planning and family dinner coordination | Spousal communication, Privacy |
| 1/16/2025 | Alex Villanueva, Vivian Villanueva | Devotional message and schedule confirmation | Spousal communication, Privacy |
| 1/17/2025 | Alex Villanueva, Vivian Villanueva | Shared flyer and comment about upcoming event | Spousal communication, Privacy, Third party privacy |
| 1/18/2025 | Alex Villanueva, Vivian Villanueva | Grocery update and RSVP reply | Spousal communication, Privacy |
| 1/19/2025 | Alex Villanueva, Vivian Villanueva | Shared devotional and Sunday brunch message | Spousal communication, Privacy |
| 1/20/2025 | Alex Villanueva, Vivian Villanueva | Grocery and midweek coordination | Spousal communication, Privacy |
| 1/21/2025 | Alex Villanueva, Vivian Villanueva | Shared policy article and brief comment | Spousal communication, Privacy, Third party privacy |
| 1/22/2025 | Alex Villanueva, Vivian Villanueva | Grocery planning and Thursday guest list update | Spousal communication, Privacy |
| 1/23/2025 | Alex Villanueva, Vivian Villanueva | Devotional and Sunday flyer message | Spousal communication, Privacy |
| 1/24/2025 | Alex Villanueva, Vivian Villanueva | Grocery list reminder and RSVP follow-up | Spousal communication, Privacy |
| 1/25/2025 | Alex Villanueva, Vivian Villanueva | Shared community event update and prayer message | Spousal communication, Privacy |
| 1/26/2025 | Alex Villanueva, Vivian Villanueva | Grocery list and Sunday devotional coordination | Spousal communication, Privacy |
| 1/27/2025 | Alex Villanueva, Vivian Villanueva | Shared flyer and brunch confirmation | Spousal communication, Privacy, Third party privacy |
| 1/28/2025 | Alex Villanueva, Vivian Villanueva | Grocery list and schedule check-in | Spousal communication, Privacy |
| 1/29/2025 | Alex Villanueva, Vivian Villanueva | Shared devotional message and thank-you note | Spousal communication, Privacy |
| 1/30/2025 | Alex Villanueva, Vivian Villanueva | Grocery coordination and campaign dinner plans | Spousal communication, Privacy |
| 1/31/2025 | Alex Villanueva, Vivian Villanueva | End-of-month reflection and shared devotional | Spousal communication, Privacy |
| 2/1/2025 | Alex Villanueva, Vivian Villanueva | Grocery planning and devotional message | Spousal communication, Privacy |
| 2/2/2025 | Alex Villanueva, Vivian Villanueva | Shared flyer and RSVP update for campaign event | Spousal communication, Privacy, Third party privacy |
| 2/3/2025 | Alex Villanueva, Vivian Villanueva | Grocery list and Sunday planning coordination | Spousal communication, Privacy |
| 2/4/2025 | Alex Villanueva, Vivian Villanueva | Shared devotional and thank-you message | Spousal communication, Privacy |

**EXHIBIT 26 - Page 312**

| Date of Communication | Participants | Subject Matter | Privilege Claimed |
|---|---|---|---|
| 2/5/2025 | Alex Villanueva, Vivian Villanueva | Grocery check-in and guest list update | Spousal communication, Privacy |
| 2/6/2025 | Alex Villanueva, Vivian Villanueva | Shared campaign article and discussion | Spousal communication, Privacy, Third party privacy |
| 2/7/2025 | Alex Villanueva, Vivian Villanueva | Grocery list confirmation and prayer message | Spousal communication, Privacy |
| 2/8/2025 | Alex Villanueva, Vivian Villanueva | Shared flyer and schedule for Sunday outreach | Spousal communication, Privacy, Third party privacy |
| 2/9/2025 | Alex Villanueva, Vivian Villanueva | Brunch coordination and church attendance check-in | Spousal communication, Privacy |
| 2/10/2025 | Alex Villanueva, Vivian Villanueva | Grocery reminder and RSVP confirmation | Spousal communication, Privacy |
| 2/11/2025 | Alex Villanueva, Vivian Villanueva | Shared devotional and calendar planning | Spousal communication, Privacy |
| 2/12/2025 | Alex Villanueva, Vivian Villanueva | Grocery planning and guest coordination | Spousal communication, Privacy |
| 2/13/2025 | Alex Villanueva, Vivian Villanueva | Shared civic update and response from Alex | Spousal communication, Privacy, Third party privacy |
| 2/14/2025 | Alex Villanueva, Vivian Villanueva | Valentine's Day message and dinner coordination | Spousal communication, Privacy |
| 2/15/2025 | Alex Villanueva, Vivian Villanueva | Grocery check-in and Sunday planning message | Spousal communication, Privacy |
| 2/16/2025 | Alex Villanueva, Vivian Villanueva | Shared campaign flyer and response about timing | Spousal communication, Privacy |
| 2/17/2025 | Alex Villanueva, Vivian Villanueva | Grocery planning and family brunch coordination | Spousal communication, Privacy |
| 2/18/2025 | Alex Villanueva, Vivian Villanueva | Devotional message shared and weekend schedule confirmation | Spousal communication, Privacy |
| 2/19/2025 | Alex Villanueva, Vivian Villanueva | Shared event image and flyer coordination | Spousal communication, Privacy, Third party privacy |
| 2/20/2025 | Alex Villanueva, Vivian Villanueva | Grocery list and reminder for Thursday event | Spousal communication, Privacy |
| 2/21/2025 | Alex Villanueva, Vivian Villanueva | Shared campaign material and thank-you note | Spousal communication, Privacy |
| 2/22/2025 | Alex Villanueva, Vivian Villanueva | Grocery update and guest RSVP confirmation | Spousal communication, Privacy |
| 2/23/2025 | Alex Villanueva, Vivian Villanueva | Sunday devotional and brunch coordination | Spousal communication, Privacy |
| 2/24/2025 | Alex Villanueva, Vivian Villanueva | Shared policy update and comment on flyer edits | Spousal communication, Privacy, Third party privacy |
| 2/25/2025 | Alex Villanueva, Vivian Villanueva | Grocery planning and flyer distribution follow-up | Spousal communication, Privacy |
| 2/26/2025 | Alex Villanueva, Vivian Villanueva | Shared devotional quote and prayer reminder | Spousal communication, Privacy |
| 2/27/2025 | Alex Villanueva, Vivian Villanueva | Grocery check-in and campaign RSVP confirmation | Spousal communication, Privacy |
| 2/28/2025 | Alex Villanueva, Vivian Villanueva | Event coordination and thank-you text | Spousal communication, Privacy |
| 2/29/2025 | Alex Villanueva, Vivian Villanueva | End-of-month prayer message and family dinner plans | Spousal communication, Privacy |
| 3/1/2025 | Alex Villanueva, Vivian Villanueva | Grocery coordination and book promotion | Spousal communication, Privacy |
| 3/2/2025 | Alex Villanueva, Vivian Villanueva | Shared devotional message and brunch planning | Spousal communication, Privacy |
| 3/3/2025 | Alex Villanueva, Vivian Villanueva | Grocery list update and Sunday schedule | Spousal communication, Privacy |
| 3/4/2025 | Alex Villanueva, Vivian Villanueva | Shared campaign article and planning comment | Spousal communication, Privacy, Third party privacy |
| 3/5/2025 | Alex Villanueva, Vivian Villanueva | Grocery check-in and dinner coordination | Spousal communication, Privacy |
| 3/6/2025 | Alex Villanueva, Vivian Villanueva | Shared devotional message and emoji response | Spousal communication, Privacy |
| 3/7/2025 | Alex Villanueva, Vivian Villanueva | Grocery planning and book promotion | Spousal communication, Privacy |
| 3/8/2025 | Alex Villanueva, Vivian Villanueva | Shared image from outreach and message of gratitude | Spousal communication, Privacy |
| 3/9/2025 | Alex Villanueva, Vivian Villanueva | Sunday devotional and family brunch plans | Spousal communication, Privacy |
| 3/10/2025 | Alex Villanueva, Vivian Villanueva | Grocery coordination and RSVP update | Spousal communication, Privacy |

**EXHIBIT 26 - Page 313**

# EXHIBIT 27

EXHIBIT 27 - Page 314

1              UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

   _____
4                                 )

   ALEX VILLANUEVA,               )
5                                 )

              Plaintiff,          )
6                                 )

        vs.                       ) Case No.
7                                 ) 2:24-cv-04979 SVW (JCx)

   COUNTY OF LOS ANGELES,         )
8    COUNTY OF LOS ANGELES        )

   SHERIFF'S DEPARTMENT, LOS      )
9    ANGELES COUNTY BOARD OF      )

   SUPERVISORS, COUNTY EQUITY     )
10   OVERSIGHT PANEL, LOS ANGELES )

   COUNTY OFFICE OF INSPECTOR     )
11   GENERAL,CONSTANCE KOMOROSKI, )

   MERCEDES CRUZ, ROBERTA YANG,   )
12   LAURA LECRIVAIN,SERGIO V.     )

   ESCOBEDO, RON KOPPERUD,        )
13   ROBERT G. LUNA, MAX-GUSTAF   )

   HUNTSMAN, ESTHER LIM, and      )
14   DOES 1 to 100, inclusive,    )

                                  )
15              Defendants.       )

   _____)
16

17       VIDEOTAPED DEPOSITION OF VIVIAN VILLANUEVA

18                Los Angeles, California

19              Wednesday, April 23, 2025

20                      Volume I

21   Reported by:

   NADIA NEWHART
22   CSR No. 8714

23   Job No. 7301582

24   PAGES 1 - 166

25

                                             Page 1

```
1              UNITED STATES DISTRICT COURT
2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
3
4    _____
                                   )
5    ALEX VILLANUEVA,              )
                                   )
6             Plaintiff,           )
                                   )
7        vs.                       ) Case No.
                                   ) 2:24-cv-04979 SVW (JCx)
8    COUNTY OF LOS ANGELES,        )
     COUNTY OF LOS ANGELES         )
9    SHERIFF'S DEPARTMENT, LOS     )
     ANGELES COUNTY BOARD OF       )
10   SUPERVISORS, COUNTY EQUITY    )
     OVERSIGHT PANEL, LOS ANGELES  )
11   COUNTY OFFICE OF INSPECTOR    )
     GENERAL,CONSTANCE KOMOROSKI,  )
12   MERCEDES CRUZ, ROBERTA YANG,  )
     LAURA LECRIVAIN,SERGIO V.     )
13   ESCOBEDO, RON KOPPERUD,       )
     ROBERT G. LUNA, MAX-GUSTAF    )
14   HUNTSMAN, ESTHER LIM, and     )
     DOES 1 to 100, inclusive,     )
15                                 )
              Defendants.          )
16   _____)
17
18        Videotaped deposition of VIVIAN VILLANUEVA,
19   Volume I, taken on behalf of Defendants, at
20   2121 Avenue of the Stars, Suite 2600, Los Angeles,
21   California, beginning at 10:23 a.m. and ending at
22   2:50 p.m. on Wednesday, April 23, 2025, before
23   NADIA NEWHART, Certified Shorthand Reporter No. 8714.
24
25
                                           Page 2
```

```
 1    APPEARANCES:

 2

 3    For Plaintiff:

 4          SHEGERIAN & ASSOCIATES

 5          BY:  ALEX DiBONA, ESQ. (10:23-12:09 p.m.)

 6          BY:  BRYAN KIRSH, ESQ.  (12:46-2:50 p.m.)

 7          11520 San Vicente Boulevard

 8          Los Angeles, California 90049

 9          310-860-0770

10          shegerianlaw.com

11

12    For Defendants:

13          MILLER BARONDESS, LLP

14          BY:  STEVEN G. WILLIAMSON, ESQ.

15          2121 Avenue of the Stars, Suite 2600

16          Los Angeles, California 90067

17          310-552-5253

18          swilliamson@millerbarondess.com

19

20    Also Present:

21          JULIO PENA, videographer

22

23

24

25
```

Page 3

```
 1      A    Well, I think that's between him and I,
 2   husband/wife confidentiality.
 3      Q    Okay.  And so are you going to stand -- just
 4   for the clarity of the record, are you just going to
 5   stand on that and refuse to answer that question      10:51:45
 6   based on the husband/wife or spousal privilege, I
 7   guess we would call it?
 8      A    Yes.
 9      Q    Okay.  And then after the lawsuit was filed,
10   do you recall having any conversations with            10:52:01
11   Mr. Villanueva regarding the lawsuit?
12      A    Yes.
13      Q    And how often would you say you speak with
14   Mr. Villanueva regarding this case?
15      A    God, it seems like -- it seems like it's all   10:52:20
16   day.  I don't know.
17      Q    And what are some things that you and
18   Mr. Villanueva have discussed regarding this case in
19   the time after it's been filed?
20      A    Again, I will exercise my husband/wife         10:52:45
21   confidentiality.
22      Q    Okay.  So you're going to stand on the
23   spousal privilege for that question as well?
24      A    Yes.
25      Q    Okay.  Have you and Mr. Villanueva ever        10:52:57
```

Page 33

EXHIBIT 27 - Page 318

```
 1   discussed the lawsuit when you were at, let's say, a

 2   dinner with friends?

 3       A    No.

 4       Q    Have you ever discussed the -- the lawsuit

 5   when, let's say, you were at a party with other        10:53:23

 6   folk?

 7       A    No.

 8       Q    Have you and Mr. Villanueva ever discussed

 9   this case with anyone other than the attorneys that

10   Mr. Villanueva has retained?                           10:53:36

11       A    No.

12       Q    When Mr. Wilson and his wife have visited you

13   at your house, have you ever discussed the lawsuit

14   with them?

15       A    No.                                           10:53:50

16       Q    And do you recall at a certain point in time,

17   that Mr. Villanueva -- well, scratch that.

18            Let's just move on to this.

19            (Exhibit 1 was marked for identification

20            and is attached hereto.)                      10:54:51

21            THE WITNESS:  These aren't my glasses.

22   BY MR. WILLIAMSON:

23       Q    Oh, I'm blind without mine, so no worries.

24            Okay.  Ms. Villanueva, I've handed you what

25   I've marked as Exhibit 1 to your deposition, which     10:55:03
```

Page 34

```
 1    I'll represent to you is the second amended subpoena

 2    to testify in this case.

 3          Do you see this document?

 4      A   Yes.

 5      Q   And have you seen this document before?        10:55:16

 6      A   No.
```

```
 7      Q   Feel free to take a look if you'd like and

 8    when you're ready, we can talk about it.

 9      A   I don't have my glasses.  I wish I could see.

10    I can't see.                                         10:55:37

11          MR. WILLIAMSON:  We can -- let's go off the

12    record for just a sec.

13          MR. DiBONA:  Sure.

14          THE VIDEOGRAPHER:  The time is 10:55 and

15    we're going off the record.                          10:55:54

16          (Pause in the proceedings.)

17          THE VIDEOGRAPHER:  The time is 10:56, and

18    we're back on the record.

19    BY MR. WILLIAMSON:

20      Q   Okay.  We are back with some substitute        10:57:05

21    glasses.

22          And Ms. Villanueva, when we went off the

23    record, I just handed you Exhibit Number 1.  And so

24    feel free to peruse it.  And when you're ready, we

25    can talk about it.                                   10:57:16
```

Page 35

1    A    I believe so.

2    Q    Okay.  And with -- without going into the

3    nuts and bolts of any conversations you might have

4    had with your lawyers in those cases, do you recall

5    ever gathering and producing documents in those        11:00:02

6    cases?

7    A    No.

8    Q    Okay.  Are you aware that we have asked you

9    to search for and produce documents in this case in

10   connection with your deposition here today?           11:00:17

11   A    Yes.

12   Q    And how are you aware of that?

13   A    Well, reading it here.

14   Q    So let me ask a better question.  So prior --

15   prior to when you read it here for this morning,       11:00:30

16   were you aware that we had asked you to search for

17   and produce documents in this case?

18   A    No.

19   Q    That's not something you'd ever discussed

20   with Mr. Villanueva?                                    11:00:42

21   A    No.

22   Q    And it's not something you ever discussed

23   with anyone from Mr. DiBona's office?

24   A    No.

25   Q    Okay.  Let's take a look at -- at these          11:00:48

Page 38

```
 1        A    Yes.
 2        Q    Okay.  And what I wanted to ask you is, are
 3   you also asserting the spousal communication
 4   privilege with respect to any of the text messages
 5   that are in this document?                    11:43:14
 6        A    Yes.
 7        Q    Okay.  And to the extent that for some reason
 8   there are text messages that exist between
 9   January 1, 2022 and the present date that aren't
10   listed in this document between you and       11:43:31
11   Mr. Villanueva, are you also asserting the spousal
12   communications privilege for those documents?
13        A    Yes.
14        Q    Okay.  When did you join the Los Angeles
15   County Sheriff's Department?                  11:44:04
16        A    1996.
17        Q    And did you attend high school in California?
18        A    Yes.
19        Q    And where did you go to high school?
20        A    Garfield High School.                11:44:17
21        Q    And where is that?
22        A    East Los Angeles.
23        Q    And after graduating -- well, when did you
24   graduate Garfield High School?
25        A    1985.                                11:44:25
```

Page 63

```
 1    didn't even like to drive yourself to the grocery

 2    store.

 3         Do you see that?

 4    A    Yes.

 5    Q    Okay.  And have you ever used a county car to    01:22:54

 6    get transportation to a grocery store?

 7    A    No.

 8    Q    And -- sorry.  Go ahead.

 9         And have you ever described yourself as a

10    celebrity to anyone --                               01:23:09

11    A    Oh, my God, no.

12    Q    -- regarding the time -- during the time

13    Mr. Villanueva was sheriff?
```

> ```
> 14    A    No.  Ridiculous.  Heck, I should be part of
>
> 15    this lawsuit myself for defamation.                  01:23:34
> ```

```
16    Q    Do you know who Carl Mandoyan is?

17    A    Yes.

18    Q    And who is Mr. Mandoyan?

19    A    He was a deputy who was fired without due

20    process regarding a domestic violence incident.      01:24:04

21    Q    And was -- the firing of Mr. Mandoyan, was

22    that under your husband's tenure or was that under

23    Sheriff McDonnell?

24    A    Sheriff McDonnell.

25    Q    And when you say, "He was fired without due      01:24:23
```

Page 108

1        MR. KIRSH:  One sec.

2        MR. WILLIAMSON:  Yep.

3        MR. KIRSH:  Lacks foundation, calls for

4    speculation, calls for a legal conclusion.

5        Go ahead.                                    01:48:10

6    BY MR. WILLIAMSON:

7        Q    Okay.  You can answer.

8        A    I'm sorry.  Now I forgot the question.

9        Q    No problem.  I believe it was, are you aware

10   that your husband, through this lawsuit, is seeking    01:48:20

11   more than $25 million in monetary damages against

12   the defendants?

13       MR. KIRSH:  Same objections.

14       THE WITNESS:  Yes.

15   BY MR. WILLIAMSON:                                      01:48:29

16       Q    Okay.  And how were you made aware of that?

17       A    I think he told me.

18       Q    Do you have any opinions about whether that

19   seems to be a fair number of damages sought in this

20   case?                                                   01:48:48

21       MR. KIRSH:  Same objections.

22       THE WITNESS:  Well, after the beatings we've

23   both been getting, I think it's a little.

24   BY MR. WILLIAMSON:

25       Q    "A little" as in too little, or what do you   01:49:02

Page 125

```
 1   mean?

 2       A    Not enough.
```

```
 3       Q    And understanding completely, Ms. Villanueva,

 4   that you are not a plaintiff in this lawsuit, but

 5   what -- what amount to you would be enough in your      01:49:20

 6   opinion?

 7       A    I'm not sure.

 8       Q    Do you recall -- switching topics a little

 9   bit, do you recall ever speaking to any doctors in

10   connection with this case that performed assessments    01:49:37

11   of Mr. Villanueva?

12       A    Yes.

13       Q    Do you recall that -- I believe there were

14   three.  There was a Dr. Udell, a Dr. Rowe and a

15   Dr. Kennedy.                                             01:49:50

16       A    I don't remember Ken- -- yes, yes.

17            (Exhibit 8 was marked for identification

18             and is attached hereto.)

19   BY MR. WILLIAMSON:

20       Q    I'm handing you what's been marked as Exhibit   01:50:04

21   Number 8.  And these are what are known as Rule 26

22   expert does closures in federal court, and there are

23   some reports here where you gave some statements

24   that I wanted to talk about.

25            So if you'd turn, please, to Exhibit Number 2   01:50:45
```

Page 126

```
 1       Q   Has Mr. -- you know, apart from what you've

 2    observed just from living with Mr. Villanueva, has

 3    Mr. Villanueva told you how -- how he's felt since

 4    the "Do not rehire" notation has come to light?

 5       A   Well, we've talked about that a lot.  And      02:41:54

 6    again, I'll exercise my spousal privilege on that,

 7    but I -- I will say, what I've seen in him is not

 8    the Alex that I met.

 9       Q   And has your -- has your relationship with

10    Mr. Villanueva changed in any way since the -- the    02:42:19

11    do not rehire notation was placed on his file?

12       A   It hasn't changed but more than -- I have to

13    drag things out of him to see what's bothering him

14    or to learn if it's bothering him.

15           MR. WILLIAMSON:  Okay.  Do you guys want to     02:43:08

16    give me maybe five minutes just to go through my

17    notes, and then I think we're probably -- probably

18    done.  Can we go off the record?

19           MR. KIRSH:  Yes.

20           THE VIDEOGRAPHER:  The time is 2:43, and        02:43:17

21    we're going off the record.

22           (Recess.)

23           THE VIDEOGRAPHER:  The time is 2:48, and

24    we're back on the record.

25    BY MR. WILLIAMSON:
```

Page 158

```
 1        Q    Okay.  I just have a few more questions,
 2   Ms. Villanueva, and then if Mr. Kirsh has any, he
 3   can -- he can ask.
 4        But -- so when -- when you and Mr. Villanueva
 5   are not talking about this case or anything else,    02:48:28
 6   what -- what do you guys normally talk about just on
 7   a day-to-day basis?
 8        MR. KIRSH:  Vague, calls for a narrative.
 9   BY MR. WILLIAMSON:
10        Q    You can answer.                            02:48:49
11        A    Projects.  We did a project in front of the
12   house, different -- we talk about different things.
13        Q    What -- what type of project did you all do?
14        A    Landscaping.
15        Q    Did you guys hire someone out, or did you    02:49:05
16   guys tackle it yourself?
17        A    A combination.  Yeah, it was too big of a
18   project for us.
19        Q    And have you and Mr. Villanueva, since --
20   since the "Do not rehire" has issued, have you had    02:49:25
21   any conversations about his emotional distress?
22        A    Just what I've -- what I've -- what I told
23   you I've seen in him, withdrawn and quiet.
24        Q    Have you had any conversations about it with
25   him, however?                                        02:49:44
```

Page 159

```
 1      A    I have, but I'm exercising my spousal

 2    privilege.

 3      Q    Spousal privilege?

 4      A    Yes.
```

```
 5      Q    Let me just see.                        02:49:54

 6           To the best of your recollection,

 7    Ms. Villanueva, has the testimony you've given today

 8    been truthful and accurate?

 9      A    Yes.

10      Q    Is there anything else that you think I   02:50:13

11    should know about this case that I haven't asked

12    about?

13           MR. KIRSH:  Vague and ambiguous, calls for a

14    narrative.

15    BY MR. WILLIAMSON:                              02:50:30

16      Q    You can answer --

17           Oh, unless you're not done objecting?

18           MR. KIRSH:  Sorry, one more second.

19           You're good.

20    BY MR. WILLIAMSON:                              02:50:37

21      Q    Okay.  You can answer.

22      A    I don't think so.

23           MR. WILLIAMSON:  I believe that's everything

24    I have for you, Ms. Villanueva.  Thank you for

25    coming down to speak with me today.             02:50:44
```

Page 160

EXHIBIT 27 - Page 328

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby

3     certify:

4          That the foregoing proceedings were taken

5     before me at the time and place herein set forth;

6     that any witnesses in the foregoing proceedings,

7     prior to testifying, were administered an oath; that

8     a record of the proceedings was made by me using

9     machine shorthand which was thereafter transcribed

10    under my direction; that the foregoing transcript is

11    a true record of the testimony given.

12         Further, that if the foregoing pertains to the

13    original transcript of a deposition in a Federal

14    Case, before completion of the proceedings, review

15    of the transcript [X] was [ ] was not requested.

16         I further certify that I am neither financially

17    interested in the action nor a relative or employee

18    of any attorney or any party to this action.

19       IN WITNESS WHEREOF, I have this date subscribed

20    my name.

21

22    Dated: 4/25/25

23

24                          *Nadia Newhart*

                            NADIA NEWHART

25                          CSR NO. 8714


                                        Page 163

```
1    VIVIAN VILLANUEVA

2    viviela1@aol.com

3                                      April 25, 2025

4    RE: Villanueva, Alex v. County Of Los Angeles, Et Al.

5    4/23/2025, Vivian Villanueva, Volume I, (#7301582).

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, notating the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20       Contact Veritext when the sealed original is required.

21   __ Waiving the CA Code of Civil Procedure per Stipulation of

22       Counsel - Original transcript to be released for signature

23       as determined at the deposition.

24   __ Signature Waived - Reading & Signature was waived at the

25       time of the deposition.
```

Page 164

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2        Transcript - The witness should review the transcript and

3        make any necessary corrections on the errata pages included

4        below, notating the page and line number of the corrections.

5        The witness should then sign and date the errata and penalty

6        of perjury pages and return the completed pages to all

7        appearing counsel within the period of time determined at

8        the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

EXHIBIT 27 - Page 331