Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Mahru Madjidi, Esq., State Bar No. 297906
MMadjidi@Shegerianlaw.com
Alex DiBona, Esq., State Bar No. 265744
ADiBona@shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
320 North Larchmont Boulevard
Los Angeles, CA 90004
Telephone Number:      (310) 860 0770
Facsimile Number:      (310) 860 0771

Attorneys for Plaintiff,
ALEX VILLANUEVA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX VILLANUEVA,<br><br>       Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100, inclusive,<br><br>       Defendants. | Case No.: 2:24 cv 04979 SVW (JC)<br><br>**The Honorable Stephen V. Wilson**<br><br>**PLAINTIFF ALEX VILLANUEVA'S SEPARATE STATEMENT OF DISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**<br><br>Date:   May 19, 2025<br>Time:  1:30 p.m.<br>Dept.:  10A<br><br>**RESERVATION ID [ID]**<br><br>Trial Date:   June 3, 2025<br>Action Filed:  June 13, 2024 |

Plaintiff, Alex Villanueva, respectfully submits this Separate Statement of Disputed Material Facts in Opposition to Defendants' Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Issues.

Dated:  April 28, 2025                    SHEGERIAN & ASSOCIATES, INC.

By: _____
Alex DiBona, Esq.

Attorneys for Plaintiff,
ALEX VILLANUEVA

## DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| **Lim POE Complaint** | | | |
| 1. On March 8. 2022, Justice Deputy Esther Lim filed a personnel complaint against Plaintiff, alleging that he made harassing and discriminatory statements based on age, race, gender, ethnicity, and national origin, in violation of the County Policy of Equity ("POE"). | Lim Decl. ¶¶ 7, 12 COE Ex. 11 at 149:9–23; COE Ex. 18. | Partially Disputed. Lim's complaint gives no examples of any conduct related to race, gender, age, ethnicity or national origin. Her four examples exclusively focus on her criticisms of her work and policy positions. | COE Ex. 11 at 149:9–23; COE Ex. 18. |
| 2. The County Intake Specialist Unit ("CISU") determined it did not have jurisdiction over Ms. Lim's POE complaint because Plaintiff was a member of the Los Angeles County Sheriff's Department (the "Department"). | Gevorki Decl. ¶ 6 COE Ex. 17 at 30:20–32:3, 36:13–37:2, 48:16–25; COE Ex. 19 | Disputed. The CISU form states that Villanueva's conduct is "unrelated to employment" and is nonjurisidictional under a "reasonable good faith belief standard". Geveroki's Declaration simply contradicts the document she wrote and does not address the "reasonable good faith belief standard" in the document. | Gevorki Decl. ¶ 6 COE Ex. 17 at 30:20–32:3, 36:13–37:2, 48:16–25, 49:12–24; COE Ex. 19 |
| 3. CISU recommended that the Department conduct its own investigation into the POE complaint filed by Ms. Lim. | Gevorki Decl. ¶¶ 7–8 COE Ex. 19 | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| 4.  CISU did not ever determine that Plaintiff did not violate County policy as alleged in Ms. Lim's POE complaint. | Gevorki Decl. ¶¶ 7–10 COE Ex.17 at 47:4–23; COE Ex. 19. | Disputed. Disputed. The CISU form states that Villanueva's conduct is "unrelated to employment" and is nonjurisidictional under a "reasonable good faith belief standard". Geveroki's Declaration simply contradicts the document she wrote and does not address the "reasonable good faith belief standard" in the document. | Gevorki Decl. ¶¶ 7–10 COE Ex.17 at 47:4–23; COE Ex. 19. |
| 5.   CISU did not ever place Ms. Lim's POE complaint in a "suspense file." | COE Ex. 17 at 51:2–14; COE Ex. 19. | Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | Appendix, **Exhibits 19. 20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| 6.    The Department's Intake Specialist Unit ("ISU") determined that the allegations made by Ms. Lim against Plaintiff warranted further investigation. | Lested Decl. ¶¶ 15, 19<br><br>COE Ex. 16 at 35:18–36:2, 59:1–7, 61:4–13, 69:24–70:3; COE Exs. 20–21. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 7.    ISU did not ever determine that Plaintiff did not violate County policy as alleged in Ms. Lim's POE complaint. | Lested Decl. ¶¶ 14, 21<br><br>COE Ex. 16 at 69:12–23; COE Exs. 20–21. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 8.    ISU did not ever place Ms. Lim's POE complaint in a "suspense file." | COE Ex. 16 at 70:4–71:8; COE Exs. 20–21. | Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | Appendix, **Exhibits 19. 20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates |
| 9.    The Department admonished Plaintiff on March 23, 2022 for the allegations in the POE complaint filed by Ms. Lim. | Lested Decl. ¶ 18<br>COE Ex. 16 at 23:8–24:19, 60:23–61:3;<br>COE Ex. 21 at 6. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| 10.  After being admonished on March 23, 2022, Plaintiff continued to speak publicly about Ms. Lim, the Board, and its Justice Deputies. | Tokoro Decl. ¶¶ 68-137, COE Exs. 54– 69, 78; COE Ex. 5 at 250:6–13, 250:24–253:10; COE Ex. 11 at 243:23–250:8. | Disputed. Villanueva has filed objections to this evidence Lack of personal knowledge (FRE 602); Lack of foundation (FRE 901); Hearsay (FRE 802). Statements interpreting or characterizing Plaintiff's speech are improper lay opinion under FRE 701. Speculation about Plaintiff's motives, future plans, or intended meaning in public comments is inadmissible under FRE 602 and 701. | |
| 11.   Ms. Lim never publicly disclosed the POE complaint she filed against Plaintiff. | Lim Decl. ¶¶ 33–35 | Disputed. Ester Lim and Max Huntsman admitted through text message they filed the POE complaint knowing it would be made public because complaints of harassment and discrimination are public records. | Exhibit 22, **Exhibit 31,** 211:22-212:9; 216:221:21 |
| 12.   On June 29, 2022, Plaintiff was notified by the Department that he was the subject of an administrative investigation into allegations that he violated the POE through, inter alia, discrimination, harassment, and retaliation. | COE Ex. 22; COE Ex. 5 at 188:14–191:6. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| 13. Sanders Roberts was retained to investigate the allegations in Ms. Lim's POE complaint. | Diaz-Herrera Decl. ¶¶ 3–5; COE Ex. 7 at 28:4–14. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 14. Sanders Roberts interviewed Ms. Lim, Justice Deputy Kyla Cotes, and Justice Deputy Veronica Pawlowski in connection with its investigation into the allegations in Ms. Lim's POE complaint. | Diaz-Herrera Decl. ¶¶ 17–26; COE Ex. 7 at 58:17–25; COE Ex. 11 at 165:5–16; Lim Decl. ¶¶ 20–26; Coates Decl. ¶¶ 5– 12; COE Ex. 13 at 40:12–42:2; Pawlowski Decl. ¶¶ 5–12; COE Ex. 6 at 161:6–9; COE Ex. 25. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 15. During her interview, Ms. Lim told Sanders Roberts about public statements by Plaintiff about the Los Angeles County Board of Supervisors ("Board") and its Justice Deputies that she believed violated the POE. | Diaz-Herrera Decl. ¶¶ 19–22; Lim Decl. ¶¶ 20–23; COE Ex. 11 at 197:25–198:2, 200:2–201:6. COE Ex. 25. | Disputed. Lim told material untruths in her interview 1) Lim falsely told Diaz-Herrera Villanueva was trying to get her fired when the actual letter(s) Villanueva sent say no such thing and Lim admitted this in her deposition 2) Lim falsely told Diaz-Herera she and Hilda Solis made a mutual decision for her to stop tweeting when the truth was that Hilda Solis disciplined Lim for her tweets and forbade her from tweeting in the future. 3) Lim falsely stated that the tweets she sent was | Appendix, **Exhibit 17,** COLA002135, 2136, **Exhibit 4, 8; 31,** 85:11-86:20; 91:13-92:6; 92:7-93:9; 97:9;14; 102:22-103:4, 104:20-25; 108:23-109:6; 112-11-18; 118:5-18; **Exhibits 10-11** |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | | when she was employed by the ACLU, the tweets were sent while she was a justice deputy during business hours. The County's own investigation report admits Lim stated Villanueva targeted her because she engaged in oversight, not because of her race, gender, age or ethnicity. Lim's complaint does not include any reference to race, gender or ethnicty. | |
| 16.     During their interviews, Ms. Coates and Ms. Pawlowski also told Sanders Roberts about public statements by Plaintiff about the Board and its Justice Deputies that they believed violated the POE. | Diaz-Herrera Decl. ¶¶ 23–26; Coates Decl. ¶¶ 9–12; COE Ex. 13 at 28:5–30:20, 51:12–58:24, 60:5–67:18, 98:24–100:6; Pawlowski Decl. ¶¶ 8–12; COE Ex. 6 at 84:1–98:15, 161:6–162:25; COE Ex. 15 at 76:23–77:4, 78:20–80:18; COE Ex. 25. | Disputed. Pawlowski and Coates told material untruths in her interview. Pawlowski stated that Villnueva referred to justice deputies and the board of supervisors as "woke and dumb women", Villnueva never said this. Pawlowski admitted Villanueva had never even mentioned her name or said anything directly to her she found inappropriate or offensive. Coates interview was simply made up out of whole cloth. Coates supposedly said in her interview that Villanueva directly said | Appendix, **Exhibit 17,** COLA 2132-33, 2137, Villnueva Decl. **¶ 15; Exhibit 35,** 29:8-31:21; 63:1-:4: |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | | to her you are all women, but Coates denied this ever happened in her deposition. Coates further admitted Villanueva's actions did not impact her. | |
| 17. Sanders Roberts collected evidence related to the allegations in Ms. Lim's POE complaint. | Diaz-Herrera Decl. ¶¶ 28–29; COE Ex. 7 at 164:6–165:19, 189:17–190:24; COE Exs. 25, 27-30. | Disputed. Diaz Herrera did not collect Villanueva's letters to the Board of Supervisor concerning Ester Lim and the County Equity Oversight Board and the Sheriff's department "found" it was retaliatory without ever seeing the letters. Diaz Herrera did not interview Sheriff Villanueva despite him explicitly saying he did not need her questions in advance. Diaz Herrera also did not interview Tim Murakami, Villanueva's undersheriff. Lim made spurious accusations of improper criminal investigations and Murakami has denied any such improper investigations. | **Exhibit 17,** COLA 2122; **Exhibit 36,** 107:20-108:25; **Exhibit 16,** Villanueva Decl. ¶ 23; **Exhibit 28,** 58:9-60:4, 73:8-74:23; 75:17-20 |
| **Huntsman POE Complaint** | | | |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| 18.    On March 9, 2022, County Inspector General Max Huntsman filed a personnel complaint against Plaintiff, alleging that he made harassing and discriminatory statements based on ethnicity and national origin, in violation of the POE. | Huntsman Decl. ¶¶ 11–17, 19; COE Ex. 9 at 133:17–19, 134:8–19; COE Ex. 32. | Disputed. Max Huntsman did not inform the investigator that he had a plaque identifying himself as "Max Gustaf," *and he still had it on his desk at the time of his deposition* and without basis, accused Villanueva of trying to paint him as Jewish and (in a complete contradiction) a Holocaust denier. Huntsman further admitted that the State Bar had his name as Max Gustaf Huntsman while Villanueva was Sheriff. CEOP panelist Constance Komoroski admitted that calling someone by the name they are born with is not harassment or discrimination. | **Exhibit 32,** Huntsman Depo. 127:8-128:3; 162:1-163:25, Villanueva Decl. ¶¶ 12, **Exhibit 26.** 21; 40:1-10 |
| 19.    The CISU determined that it did not have jurisdiction over Mr. Huntsman's POE complaint because Plaintiff was a member of the Department. | Gevorki Decl. ¶ 13; COE Ex. 17 at 30:20–32:3, 36:13–37:2, 48:20–49:24; COE Ex. 33. | Disputed. The CISU form states that Villanueva's conduct is "unrelated to employment" and is nonjurisidictional under a "reasonable good faith belief standard". Geveroki's Declaration simply contradicts the document she wrote and does not address the "reasonable good faith belief standard" in the document. | Gevorki Decl. ¶ 13; COE Ex. 17 at 30:20–32:3, 36:13–37:2, 48:20–49:24; COE Ex. 33. |
| 20.    CISU recommended that the Department conduct its own investigation into the POE complaint filed by | Gevorki Decl. ¶¶ 14–15; COE Ex. 33. | Undisputed, but does not entitled Defendants to Judgment as a Matter of Law | |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| Mr. Huntsman. | | | |
| 21.    CISU did not ever determine that Plaintiff did not violated County policy as alleged in Mr. Huntsman's POE complaint and did not place Mr. Huntsman's complaint into a "suspense file." | Gevorki Decl. ¶¶ 12, 16–17; COE Ex. 17 at 47:24–48:15, 51:2–14; COE Ex. 33. | Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | Appendix, **Exhibits 19**, **20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates |
| 22.    ISU determined that the allegations made by Mr. Huntsman against Plaintiff warranted further investigation. | Lested Decl. ¶ 9; CEO Ex. 16 at 35:18–36:2, 61:14–25, 69:1–4; COE Ex. 34. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 23.    ISU did not ever determine that Plaintiff did not violate County policy as alleged in Mr. Huntsman's POE complaint. | Lested Decl. ¶¶ 5, 12; CEO Ex. 16 at 68:6–69:4; COE Ex. 34–35. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 24.    ISU did not ever place Mr. Huntsman's POE complaint in a "suspense file." | COE Ex. 16 at 70:4–15, 70:20–71:8. COE Ex. 34–35. | Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's | Appendix, **Exhibits 19**, **20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | | states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | |
| 25.    The Department admonished Plaintiff on March 23, 2022 for the allegations in the POE complaint filed by Mr. Huntsman. | Lested Decl. ¶ 18; CEO Ex. 16 at 23:8–24:19, 60:13–60:22; COE Ex. 34. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 26.    After being admonished on March 23, 2022, Plaintiff continued to speak publicly about Mr. Huntsman. | Tokoro Decl. ¶¶ 68-137, COE Exs. 54- 69, 78; Huntsman Decl. ¶¶ 20–25; COE Ex. 5 at 253:14–255:2, 214:8–219:6; COE Ex. 9 at 47:23–48:5, 140:3–10. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 27.    On April 1, 2022, Plaintiff publicly disclosed that Mr. Huntsman had filed a POE complaint against him. | Huntsman Decl. ¶¶ 20–25; COE Ex. 5 at 213:23–215:18; COE Ex. 9 at 140:3–10. | Partially disputed, Villanueva's Comments as quoted in the *Los Angeles Times* were "You do realize that Max Huntsman, one, he's a Holocaust denier. I don't know if you're aware of that. I have it from two separate sources. And he filed a complaint against me because I refer to him as Max-Gustaf Huntsman, his actual legal name, that's on his [State] Bar card. And he filed a | Huntsman Decl. ¶¶ 20–25; COE Ex. 5 at 213:23–215:18; COE Ex. 9 at 140:3–10. |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | | complaint to the — I thought that was kind of humorous." Villanueva did not disclose it was a policy of equality complaint but truthfully stated the nature of the complaint and his response to it. | |
| 28.    Mr. Huntsman never publicly disclosed the POE complaint he filed against Plaintiff at any time prior to Plaintiff publicly disclosing it on April 1, 2022. | Huntsman Decl. ¶¶ 33–35. | Disputed. Ester Lim and Max Huntsman admitted through text message they filed the POE complaint knowing it would be made public because complaints of harassment and discrimination are public records. | Exhibit 22, **Exhibit 31,** 211:22-212:9; 216:221:21 |
| 29.    On June 29, 2022, Plaintiff was notified by the Department that he was the subject of an administrative investigation into allegations that he violated the POE through, inter alia, discrimination, harassment, and retaliation. | COE Ex. 36; COE Ex. 5 at 211:2–213:22. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 30.    Sanders Roberts was retained to investigate the allegations in Mr. Huntsman's POE complaint. | Diaz-Herrera Decl. ¶¶ 3–5; COE Ex. 7 at 28:4–14. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 31.    Sanders Roberts interviewed Mr. Huntsman and Ms. Pawlowski in connection with its investigation into the allegations in Mr. Huntsman's POE | Diaz-Herrera Decl. ¶¶ 9, 13; COE Ex. 7 at 163:5–7, 184:22–25; Huntsman Decl. ¶ 26; COE Ex. 9 at | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| complaint. | 155:9–25; Pawlowski Decl. ¶ 14; COE Ex. 38. | | |
| 32.    During his interview, Mr. Huntsman told Sanders Roberts about public statements by Plaintiff that he believed violated the POE. | Diaz-Herrera Decl. ¶¶ 10–12; COE Ex. 7 at 175:23–176:25; Huntsman Decl. ¶¶ 20–30; COE Ex. 9 at 156:21–157:22; COE Exs. 48-49. | Disputed. Max Huntsman did not inform the investigator that he had a plaque identifying himself as "Max Gustaf," *and he still had it on his desk at the time of his deposition* and without basis, accused Villanueva of trying to paint him as Jewish and (in a complete contradiction) a Holocaust denier. Huntsman further admitted that the State Bar had his name as Max Gustaf Huntsman while Villanueva was Sheriff.<br>CEOP panelist Constance Komoroski admitted that calling someone by the name they are born with is not harassment or | **Exhibit 32,** Huntsman Depo. 127:8-128:3; 162:1-163:25, Villanueva Decl. ¶¶ 12, **Exhibit 26.** 21; 40:1-10 |
| 33.    During her interview, Ms. Pawlowski told Sanders Roberts about public statements by Plaintiff about Mr. Huntsman that she believed violated the POE. | Diaz-Herrera Decl. ¶ 13; Pawlowski Decl. ¶ 14; COE Ex. 38. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 34.    Sanders Roberts collected evidence related to the allegations in Mr. Huntsman's POE complaint, including recordings of public statements made by Plaintiff and social media posts and | Diaz-Herrera Decl. ¶¶ 14–15; COE Ex. 7 at 165:20–166:13, 195:6–199:10; COE Exs. 38, 40–52. | Disputed. Max Huntsman did not inform the investigator that he had a plaque identifying himself as "Max Gustaf," *and he still had it on his desk at the time of his deposition* and without | **Exhibit 32,** Huntsman Depo. 127:8-128:3; 162:1-163:25, Villanueva Decl. ¶¶ 12, **Exhibit 26.** 21; 40:1-10 |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| communications sent by Plaintiff. | | basis, accused Villanueva of trying to paint him as Jewish and (in a complete contradiction) a Holocaust denier. Huntsman further admitted that the State Bar had his name as Max Gustaf Huntsman while Villanueva was Sheriff. The County Admits that referring to someone by their legal name is not discrimination or harassment. | |
| **Plaintiff Refuses To Be Interviewed** | | | |
| 35. Sanders Roberts attempted to interview Plaintiff in connection with its investigation into the allegations in Ms. Lim's POE complaint, but was unable to do so. | Diaz-Herrera Decl. ¶¶ 30–35; COE Ex. 7 at 136:18–140:23, 141:20–147:21; 183:14–184:15, 185:5–18; COE Ex. 5 at 205:16:–208:20; COE Ex. 14 at 40:7–21; COE Exs. 23–24. | Disputed. Villanueva explicitly emailed Diaz Herrera that he did not need the questions in advance but only wanted to know the general substance of the allegations. Villanueva received no response to this email. | Exhibit 16. Villanuva Decl, ¶ 23 |
| 36. Sanders Roberts attempted to interview Plaintiff in connection with its investigation into the allegations in Mr. Huntsman's complaint, but was unable to do so. | Diaz-Herrera Decl. ¶¶ 36–48; COE Ex. 7 at 136:18–140:23, 141:20–147:21; 183:14–15, 185:5–18; COE Ex. 5 at 205:16:–208:20; COE Ex. 14 at 40:7–21; COE Ex. 24,37. | Disputed. Villanueva explicitly emailed Diaz Herrera that he did not need the questions in advance but only wanted to know the general substance of the allegations. Villanueva received no response to this email. | Exhibit 16. Villanuva Decl, ¶ 23 |
| **Department's Internal Affairs Bureau ("IAB")** | | | |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| 37.    IAB received the Sanders Roberts investigation files for the POE complaints filed by Ms. Lim and Mr. Huntsman in late-June 2023. | Devane Decl. ¶¶ 17–21; Kopperud Decl. ¶¶ 18–21; COE Exs. 26, 39. | Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | Appendix, **Exhibits 19. 20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates |
| 38.    IAB finalized its case files for the investigations into the POE complaints filed by Ms. Lim and Mr. Huntsman in October 2023. | Devane Decl. ¶ 21; COE Ex. 8 at 99:18–100:3; Kopperud Decl. ¶ 21 | Partially Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | Appendix, **Exhibits 19. 20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| 39.    IAB did not ever determine that Plaintiff did not violate County policy as alleged in Ms. Lim's POE complaint. | Devane Decl. ¶¶ 10–16; COE Ex. 8 at 187:15–188:6, 188:11–13, 190:3–11; Kopperud Decl. ¶¶ 11–17; COE Exs. 25, 26. | Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | |
| 40.    IAB did not ever place Ms. Lim's complaint in a "suspense file." | Devane Decl. ¶¶ 10–16; COE Ex. 8 at 185:10–15, 185:19–21, 186:13–20, 186:25–187:5; Kopperud Decl. ¶¶ 11–17; COE Exs. 25, 26. | Partially Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | Appendix, **Exhibits 19. 20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| 41.     IAB did not ever determine that Plaintiff did not violate County policy as alleged in Mr. Huntsman's POE complaint. | Devane Decl. ¶¶ 10–16; COE Ex. 8 at 187:7–14, 187:22–188:10, 189:10–17; Kopperud Decl. ¶¶ 11–17; COE Exs. 38, 39. | Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | Appendix, **Exhibits 19. 20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates |
| 42.     IAB did not ever place Mr. Huntsman's POE complaint in a "suspense file." | Devane Decl. ¶¶ 10–16; COE Ex. 8 at 186:6–12, 186:21–187:5; Kopperud Decl. ¶¶ 11–17; COE Exs. 38, 39. | Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | Appendix, **Exhibits 19. 20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| 43.    The Department did not reopen the investigation into the allegations in Ms. Lim's POE complaint in September 2023. | Devane Decl. ¶¶ 10–16; COE Ex. 8 at 185:10–15, 185:19–21, 186:13–20, 186:25–187:5, 187:15–188:6, 188:11–13, 190:3–11; Kopperud Decl. ¶¶ 4–17; COE Ex. 7 at 184:16–189:11; COE Exs. 25, 26. | Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | Appendix, **Exhibits 19. 20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates |
| 44.    The Department did not reopen the investigation into the allegations in Mr. Huntsman's complaint in September 2023. | Devane Decl. ¶¶ 10–16; COE Ex. 8 at 185:10–18, 186:6–12, 186:21–187:14, 187:22–188:10, 189:10–17; COE Ex. 7 at 184:16–189:11; Kopperud Decl. ¶¶ 4–17; COE Exs. 38, 39. | Disputed. The Internal Affair's Bureau ("IAB") Investigator's Log shows the Complaint was filed in March 2022 and, Villanueva was not contacted for an interview until January 2023. The Investigator's states that the Investigation was complete *May 2023*. It was not until October 2023 Villanueva was placed had a do not rehire notation placed in his personnel file, one month after he announced he was running for the board of supervisors. | |
| **County Equity Oversight Panel ("CEOP")** | | | |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| 45.     On October 17, 2023, a panel of the CEOP (the "Panel") considered the POE complaints filed by Ms. Lim and Mr. Huntsman. | Yang Decl. ¶ 3; Komoroski Decl. ¶ 3; Cruz Decl. ¶ 3; COE Ex. 31, 53. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| 46.     Based on the IAB investigation file, the Panel recommended that all but one of the POE violations alleged by Ms. Lim be deemed "founded" against Plaintiff. | Yang Decl. ¶ 4; COE Ex. 10 at 103:15–106:3, 110:22–112:24; Komoroski Decl. ¶ 4; COE Ex. 4 at 79:3–12, 90:24–92:1, 98:19–99:6, 121:7–122:2, 129:3–13; Cruz Decl. ¶ 4; COE Ex. 14 at 26:13–19, 32:15–20, 116:3–19, 118:12–123:8, 131:22–132:11; COE Ex. 31. | Disputed. Mercedes Cruz, the 30(b)(6) Witness stated the allegations were founded because Villanueva hindered "oversight" a political determination.<br><br>Lim told material untruths in her interview 1) Lim falsely told Diaz-Herrera Villanueva was trying to get her fired when the actual letter(s) Villanueva sent say no such thing and Lim admitted this in her deposition 2) Lim falsely told Diaz-Herera she and Hilda Solis made a mutual decision for her to stop tweeting when the truth was that Hilda Solis disciplined Lim for her tweets and forbade her from tweeting in the future. 3) Lim falsely stated that the tweets she sent was when she was employed by the ACLU, the tweets were | Appendix, **Exhibit 33,** 60:5–60:23; 84:2–85:24; 85:3–85:10<br><br>**Exhibit 17,** COLA002135, 2136, **Exhibit 4, 8; 31,** 85:11-86:20; 91:13-92:6; 92:7-93:9; 97:9;14; 102:22-103:4, 104:20-25; 108:23-109:6; 112-11-18; 118:5-18; **Exhibits 10-11**<br><br>Appendix, **Exhibit 17,** COLA 2132-33, 2137, Villnueva Decl. **¶ 15; Exhibit 35,** 29:8-31:21; 63:1-:4:<br><br>Villanueva Decl. ¶ 15, **Exhibit 26,** 89:22-90:16 |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | | sent while she was a justice deputy during business hours. The County's own investigation report admits Lim stated Villanueva targeted her because she engaged in oversight, not because of her race, gender, age or ethnicity. Lim's complaint does not include any reference to race, gender or ethinicty The Panel did not even review Villanueva's facebook lives, which demonstrate the witnesses against him were untruthful. Pawlowski and Coates told material untruths in her interview. Pawlowski stated that Villnueva referred to justice deputies and the board of supervisors as "woke and dumb women", Villnueva never said this. Pawlowski admitted Villanueva had never even mentioned her name or said anything directly to her she found inappropriate or offensive. Coates interview was simply made up out of whole cloth. Coates supposedly said in her | |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE | |
|---|---|---|---|---|
| | | interview that Villanueva directly said to her you are all women, but Coates denied this ever happened in her deposition. Coates further admitted Villanueva's actions did not impact her.<br><br>The terms woke and flunkies do not refer to gender, age or race/ethnicty. | | |
| 47.    The Panel recommended that, as a result of the "founded" allegations in Ms. Lim's POE complaint, a "Do Not Rehire" notation be placed on Plaintiff's County personnel file | Yang Decl. ¶ 4; COE Ex. 10 at 38:12–40:3; Komoroski Decl. ¶ 4; COE Ex. 4 at 78:15–79:2; Cruz Decl. ¶ 4; COE Ex. 14 at 77:25–78:6, 127:17–21, 144:15–21; COE Ex. 31. | Disputed. Mercedes Cruz Witness stated the allegations were "founded" because Villanueva hindered a political determination.<br><br>Lim told material untruths. 1) Lim falsely told Diaz-Herrera Villanueva was trying to get the actual letter(s) Villanueva sent; no such thing and Lim admitted this in her deposition 2) Lim falsely said she and Hilda Solis made a mutual decision for her to stop tweeting when the truth was that Hilda Solis disciplined Lim for her tweets and forbade her from tweeting in the future. 3) Lim falsely stated that the tweets she sent was when she was employed by the ACLU, the tweets were sent when she was a justice deputy during business hours. The County's own investigation report admits Lim stated Villanueva targeted her because she engaged in oversight, not because of her race, gender, age or ethnicity.  Lim's complaint does not include any reference to race, gender or ethnicty | Appendix; **Exhibit 33,** 60:5–60:23; 84:2–85:24; 85:3–85:16 **Exhibit 17** COLA002135, 2136 **Exhibit 4, 8; 31,** 85:11–86:20; 87:13–92:2; 92:7–93:09; 103:1–104:20:25; 108:10–108:18; 111:18–118:5; 118:18 **Exhibits 10-11** Appendix; **Exhibit 7,** COLA 2132 **23:37; Villaneuva Decl.** 29:8–31:21; 35 **Villaneuva Decl. ¶ 15** | Appendix 84:2–85:2; 85:3–85:1 **Exhibit 18; 31,** 85:9; 97:9;14; 109:6; 11 Appendix 2137, Vil 29:8-31:2 Villanuev |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | | The Panel did not even review Villanueva's facebook lives, which demonstrate the witnesses against him were untruthful. The terms woke and flunkies do not refer to gender, age or race/ethinicty.<br><br>Pawlowski and Coates told material untruths in her interview. Pawlowski stated that Villnueva referred to justice deputies and the board of supervisors as "woke and dumb women", Villnueva never said this. Pawlowski admitted Villanueva had never even mentioned her name or said anything directly to her she found inappropriate or offensive. Coates interview was simply made up out of whole cloth. Coates supposedly said in her interview that Villanueva directly said to her you are all women, but Coates denied this ever happened in her deposition. Coates further admitted Villanueva's actions did not impact her. | |
| 48.    Based on the IAB investigation file, the Panel recommended that all of the POE violations alleged by Mr. Huntsman be deemed "founded" against Plaintiff. | Yang Decl. ¶ 4; Komoroski Decl. ¶ 4; COE Ex. 4 at 62:1–64:10, 66:14–68:13; Cruz Decl. ¶ 4; COE Ex. 14 at 40:22–42:19, 145:6–15; COE Ex. 53. | Disputed. Max Huntsman did not inform the investigator that he had a plaque identifying himself as "Max Gustaf," *and he still had it on his desk at the time of his deposition* and without basis, accused Villanueva of trying to paint him as Jewish and (in a complete contradiction) a Holocaust denier. Huntsman further admitted that the State Bar had his name as Max Gustaf Huntsman while Villanueva was Sheriff. | **Exhibit 32,** Huntsman Depo. 127:8-128:3; 162:1-163:25, Villanueva Decl. ¶¶ 12, **Exhibit 26.** 21; 40:1-10 |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | | CEOP panelist Constance Komoroski admitted that calling someone by the name they are born with is not harassment or discrimination. | |
| 49.    The Panel recommended that, as a result of the "founded" allegations in Mr. Huntsman's complaint, a "Do Not Rehire" notation be placed on Plaintiff's County personnel file. | Yang Decl. ¶ 4; COE Ex. 10 at 57:22–59:11; Komoroski Decl. ¶ 4; COE Ex. 4 at 57:19–60:24; Cruz Decl. ¶ 4; COE Ex. 14 at 71:18–23, 127:17–21; COE Ex. 53. | Partially Disputed. Max Huntsman did not inform the investigator that he had a plaque identifying himself as "Max Gustaf," *and he still had it on his desk at the time of his deposition* and without basis, accused Villanueva of trying to paint him as Jewish and (in a complete contradiction) a Holocaust denier. Huntsman further admitted that the State Bar had his name as Max Gustaf Huntsman while Villanueva was Sheriff. CEOP panelist Constance Komoroski admitted that calling someone by the name they are born with is not harassment or discrimination. | **Exhibit 32,** Huntsman Depo. 127:8-128:3; 162:1-163:25, Villanueva Decl. ¶¶ 12, **Exhibit 26.** 21; 40:1-10 |
| 50. The "Do Not Rehire" notation does not mean that the person cannot be rehired by the County. | Yang Decl. ¶¶ 5–6; COE Ex. 10 at 121:8–22, 131:18–132:13; Komoroski Decl. ¶¶ 5–6; COE Ex. 4 at 58:5–60:2, 147:22–149:9; Cruz Decl. ¶¶ 5–6; COE Ex. 14 at 27:5–23. | Disputed. Do Not Rehire means what it says. The very form states that "Do Not Hire/Rehire" is a "determination of discipline" There is on the form a place for when "no discipline" is warranted and it is not | Exhibit 21; Villanueva Decl. ¶ 25 |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | | checked in Villanueva;s. | |
| **The Department** | | | |
| 51. The Department concurred with the Panel's recommendations. | Lecrivain Decl. ¶ 6; COE Ex. 12 at 50:18–51:14; COE Ex. 8 at 166:21–167:5; COE Ex. 75 at 110:17–24. | Undisputed, but does not entitle Defendants to Judgment as a Matter of Law | |
| **No Involvement by the Board or Sheriff Luna** | | | |
| 52. The Board had no involvement in Ms. Lim's complaint, the investigation into the allegations made by Ms. Lim, or the outcome. | Lim Decl. ¶¶ 36–37; COE Ex. 11 at 250:10–251:10; Gevorki Decl. ¶¶ 18–19; COE Ex. 17 at 42:18–20, 42:24–43:10; Lested Decl. ¶¶ 22–23; CEO Ex. 16 at 65:17–66:1, 66:5–7, 66:11–13; Coates Decl. ¶¶ 17–18; COE Ex. 13 at 98:4–23; Pawlowski Decl. ¶¶ 17–18; COE Ex. 15 at 73:22–25, 74:5–16; Diaz-Herrera Decl. ¶¶ 49–50; COE Ex. 7 at 180:16–181:10; Devane Decl. ¶¶ 31–33; COE Ex. 8 at 184:20–185:9; COE Ex. 75 at | The Board of Supervisors, including Sheila Kuel, and Hilda Solis instructed Max Huntsman to remove Alex Villanueva from the office of Sheriff.<br><br>Max Huntsman and Ester Lim Coordinated their complaints against Sheriff Villanueva with the intention the complaints go public.<br><br>The Complaints were made in March 2022, the investigation was completed May 2023 but it was not until October 2023, just one month after Villanueva announced his candidacy for the board of supervisors, that the Do Not Rehire Notation was placed in | Appendix, **Exhibit 1 and 14, 22,** Exhibit 22, **Exhibit 31,** 211:22-212:9; 216:221:21<br><br>**Exhibits 19. 20,** 3/16/2022, 5/15/2023 and 10/02/2023 dates<br><br>Villenueva Decl. ¶ 24 |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | 130:10–24; Kopperud Decl. ¶¶ 28–29; Yang Decl. ¶¶ 7–9; COE Ex. 10 at 128:8–16; Komoroski Decl. ¶¶ 7–9; COE Ex. 4 at 153:6–16; Cruz Decl. ¶¶ 7–9; Cruz. Depo at 138:14–24, 139:4–7, 139:17–19, 139:23–25; Lecrivain Decl. ¶¶ 8–9; COE Ex. 12 at 138:20–139:15, 139:20–22; COE, Exs. 18–22, 25–31. | his personnel file.\n\nThe *Los Angeles Times* published the story of the placement of the "Do Not Rehire" notation the same day as ballots were sent out in the Board of Supervisors Race of Villanueva vs Janice Hahn. | |
| 53.    Sheriff Luna had no involvement in Ms. Lim's complaint, the investigation into the allegations made by Ms. Lim, or the outcome. | Lim Decl. ¶¶ 38–39; COE Ex. 11 at 251:11–24, 254:24–255:2; Gevorki Decl. ¶¶ 20–22; COE Ex. 17 at 43:11–13, 43:17–20; Lested Decl. ¶¶ 24–26; COE Ex. 16 at 66:22–67:6, 67:10–21, 67:25–68:5; Coates Decl. ¶¶ 19–20; COE Ex. 13 at 97:6–98:2; Pawlowski Decl. ¶¶ 19–20; COE Ex. 15 at 73:9–11. 73:16–19; Diaz-Herrera Decl. ¶¶ 51–52; COE Ex. 7 at 181:11–182:2, 182:14–183:8; COE Ex. 75 at 130:25–131:14; Devane | The Board of Supervisors, including Sheila Kuel, and Hilda Solis instructed Max Huntsman to remove Alex Villanueva from the office of Sheriff.\n\nMax Huntsman and Ester Lim Coordinated their complaints against Sheriff Villanueva with the intention the complaints go public.\n\nThe Complaints were made in March 2022, the investigation was completed May 2023 but it was not until October 2023, just one month after Villanueva announced his candidacy for the board of supervisors, that the Do Not Rehire Notation was placed in his personnel file. | Appendix, **Exhibit 1 and 14, 22,** Exhibit 22, **Exhibit 31,** 211:22-212:9; 216:221:21\n\n**Exhibits 19. 20.** 3/16/2022, 5/15/2023 and 10/02/2023 dates\n\nVillenueva Decl. ¶ 24 |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | Decl. ¶¶ 34–36; COE Ex. 8 at 183:25–184:16; Kopperud Decl. ¶¶ 30–31; Yang Decl. ¶¶ 10–12; COE Ex. 10 at 128:17–20; Komoroski Decl. ¶¶ 10–12; COE Ex. 4 at 153:17–19; Cruz Decl. ¶¶ 10–12; COE Ex. 14 at 137:22–138:13; Lecrivain Decl. ¶¶ 10–11; COE Ex. 12 at 138:6–19; COE Exs 18–22, 25–31. | The *Los Angeles Times* published the story of the placement of the "Do Not Rehire" notation the same day as ballots were sent out in the Board of Supervisors Race of Villanueva vs Janice Hahn.\n\nLaura Lecrevian had final authority on behalf of the Sheriff's department to make a final deceison with respect to Villanueva, no appeal or grievance was permitted. | |
| 54.    Plaintiff's alleged protected speech played no role in Ms. Lim's complaint, the investigation into the allegations made by Ms. Lim, or the outcome. | Lim Decl. ¶¶ 40–45; COE Ex. 11 at 251:25–253:25; Gevorki Decl. ¶¶ 23–28; COE Ex. 17 at 43:21–44:14, 44:21–45:1, 45:8–12, 45:21–46:2, 46:6–46:14, 46:20–25; Lested Decl. ¶¶ 27–32; CEO Ex. 16 at 62:8–16, 62:22–63:1, 63:7–10, 63:15–19, 64:6–10, 64:17–21, 65:2–6, 65:12–16; Coates Decl. ¶¶ 21–25; COE Ex. 13 at 93:18–97:5; Pawlowski Decl. ¶¶ 21–25; COE Ex. 15 at 74:17–76:22, 77:5–8; Diaz-Herrera Decl. | Disputed. Max Huntsman, Ester Lim, Kyla Coates and Veronica Pawlowski were all aware of Villanueva's protected activity.\n\nDisputed. The Board of Supervisors, including Sheila Kuel, and Hilda Solis instructed Max Huntsman to remove Alex Villanueva from the office of Sheriff.\n\nMax Huntsman and Ester Lim Coordinated their complaints against Sheriff Villanueva with the intention the complaints go public.\n\nThe Complaints were made in March 2022, the investigation was completed May 2023 but it was not until | Appendix,\n\n**Exhibit 1 and 14, 22,** Exhibit 22, **Exhibit 31,** 211:22–212:9; 216:221:21\n\n**Exhibits 19. 20,** 3/16/2022, 5/15/2023 and 10/02/2023 dates\n\nVillenueva Decl. ¶ 24 |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | ¶¶ 53–58; Devane Decl. ¶¶ 37–42; COE Ex. 75 at 131:15–134:1; Kopperud Decl. ¶¶ 32–37; Yang Decl. ¶¶ 13–19; COE Ex. 10 at 128:21–130:20; Komoroski Decl. ¶¶ 13–19; COE Ex. 4 at 141:22–146:1; Cruz Decl. ¶¶ 13–19; COE Ex. 14 at 141:6–144:1; Lecrivain Decl. ¶¶ 12–18; COE Ex. 12 at 139:23–142:11; COE Ex. 3 (Nos. 6–15— Never responded to and deemed admitted per FRCP 36(a)(3); COE Exs. 18–22, 25–31. | October 2023, just one month after Villanueva announced his candidacy for the board of supervisors, that the Do Not Rehire Notation was placed in his personnel file.

The *Los Angeles Times* published the story of the placement of the "Do Not Rehire" notation the same day as ballots were sent out in the Board of Supervisors Race of Villanueva vs Janice Hahn. | |
| 55.    Plaintiff running for the Board in 2024 played no role in Ms. Lim's complaint, the investigation into the allegations made by Ms. Lim, or the outcome. | Lim Decl. ¶¶ 46–48; Gevorki Decl. ¶¶ 29–31; Lested Decl. ¶¶ 33–35; Coates Decl. ¶¶ 26–28; Pawlowski Decl. ¶¶ 26–28; Diaz-Herrera Decl. ¶¶ 59–60; Devane Decl. ¶¶ 43–44; COE Ex. 8 at 190:16–191:12; Kopperud Decl. ¶¶ 38–39; Yang Decl. ¶¶ 5–6; COE Ex. 10 at 130:21–131:11; Komoroski Decl. ¶¶ 5–6; COE | Disputed. Disputed. Max Huntsman, Ester Lim, Kyla Coates and Veronica Pawlowski were all aware of Villanueva's protected activity.

The Board of Supervisors, including Sheila Kuel, and Hilda Solis instructed Max Huntsman to remove Alex Villanueva from the office of Sheriff.

Max Huntsman and Ester Lim Coordinated their complaints against Sheriff Villanueva with | Appendix,

**Exhibit 1 and 14, 22,** Exhibit 22, **Exhibit 31,** 211:22–212:9; 216:221:21

**Exhibits 19. 20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates

Villenueva Decl. ¶ 24 |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | Ex. 4 at 153:20–154:21; Cruz Decl. ¶¶ 5–6; COE Ex. 14 at 140:1–15, 141:2–5; Lecrivain Decl. ¶¶ 19–20; COE Ex. 12 at 142:13–143:11; COE Exs. 18–22, 25–31. | the intention the complaints go public.<br><br>The Complaints were made in March 2022, the investigation was completed May 2023 but it was not until October 2023, just one month after Villanueva announced his candidacy for the board of supervisors, that the Do Not Rehire Notation was placed in his personnel file.<br><br>The *Los Angeles Times* published the story of the placement of the "Do Not Rehire" notation the same day as ballots were sent out in the Board of Supervisors Race of Villanueva vs Janice Hahn. | |
| 56.     The Board had no involvement in Mr. Huntsman's complaint, the investigation into the allegations made by Mr. Huntsman, or the outcome. | Huntsman Decl. ¶¶ 36–37; COE Ex. 9 at 142:17–19; Gevorki Decl. ¶¶ 18–19; COE Ex. 17 at 42:21–23, 43:2–10; Lested Decl. ¶¶ 22–23; CEO Ex. 16 at 65:17–66:4, 66:8–10; Pawlowski Decl. ¶¶ 17–18; COE Ex. 15 at 74:1–16; Diaz-Herrera Decl. ¶¶ 49–50; COE Ex. 7 at 180:16–181:10; Devane Decl. ¶¶ 31–33; COE Ex. 8 | Disputed. The Board of Supervisors, including Sheila Kuel and Hilda Solis instructed Max Huntsman to remove Alex Villanueva from the office of Sheriff.<br><br>Max Huntsman and Ester Lim Coordinated their complaints against Sheriff Villanueva with the intention the complaints go public.<br><br>The Complaints were made in March 2022, the investigation was completed May 2023 but it was not until | Appendix, **Exhibit 1 and 14, 22,** Exhibit 22, **Exhibit 31,** 211:22-212:9; 216:221:21<br><br>**Exhibits 19. 20,** 3/16/2022, 5/15/2023 and 10/02/2023 dates<br><br>Villenueva Decl. ¶ 24 |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | at 182:18–183:24; COE Ex. 75 at 130:10–24; Kopperud Decl. ¶¶ 28–29; Yang Decl. ¶¶ 7–9; COE Ex. 10 at 128:8–16; Komoroski Decl. ¶¶ 7–9; COE Ex. 4 at 151:12–152:4; Cruz Decl. ¶¶ 7–9; Cruz. Depo at 138:14–139:3, 139:14–16, 139:20–22; Lecrivain Decl. ¶¶ 8–9; COE Ex. 12 at 138:20–139:19; COE Exs. 32–36, 38–53. | October 2023, just one month after Villanueva announced his candidacy for the board of supervisors, that the Do Not Rehire Notation was placed in his personnel file.<br><br>The *Los Angeles Times* published the story of the placement of the "Do Not Rehire" notation the same day as ballots were sent out in the Board of Supervisors Race of Villanueva vs Janice Hahn. | |
| 57.    Sheriff Luna had no involvement in Mr. Huntsman's complaint, the investigation into the allegations made by Mr. Huntsman, or the outcome. | Huntsman Decl. ¶¶ 38–39; Gevorki Decl. ¶¶ 20–22; COE Ex. 17 at 43:14–20; Lested Decl. ¶¶ 24–26; CEO Ex. 16 at 66:14–67:2, 67:7–9, 67:13–24, 68:3–5; Pawlowski Decl. ¶¶ 19–20; COE Ex. 15 at 73:12–19; Diaz-Herrera Decl. ¶¶ 51–52; COE Ex. 7 at 181:11–182:13, 182:18–183:4; Devane Decl. ¶¶ 34–36; COE Ex. 8 at 181:18–182:17; COE Ex. 75 at 130:25–131:14; Kopperud Decl. ¶¶ 30–31; Yang Decl. ¶¶ 10– | Disputed. The Board of Supervisors, including Sheila Kuel, and Hilda Solis instructed Max Huntsman to remove Alex Villanueva from the office of Sheriff.<br><br>Max Huntsman and Ester Lim Coordinated their complaints against Sheriff Villanueva with the intention the complaints go public.<br><br>The Complaints were made in March 2022, the investigation was completed May 2023 but it was not until October 2023, just one month after Villanueva announced his candidacy for the board of supervisors, that the Do Not Rehire | Appendix, **Exhibit 1 and 14, 22,** Exhibit 22, **Exhibit 31,** 211:22-212:9; 216:221:21<br><br>**Exhibits 19, 20,** 3/16/2022, 5/15/2023 and 10/02/2023 dates<br><br>Villenueva Decl. ¶ 24 |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | 12; COE Ex. 10 at 128:17–20; Komoroski Decl. ¶¶ 10–12; COE Ex. 4 at 152:5–18; Cruz Decl. ¶¶ 10–12; COE Ex. 14 at 137:22–138:13; Lecrivain Decl. ¶¶ 10–11; COE Ex. 12 at 138:6–19; COE Exs. 32–36, 38–53. | Notation was placed in his personnel file.<br><br>The *Los Angeles Times* published the story of the placement of the "Do Not Rehire" notation the same day as ballots were sent out in the Board of Supervisors Race of Villanueva vs Janice Hahn. | |
| 58.    Plaintiff's alleged protected speech played no role in Mr. Huntsman's complaint, the investigation into the allegations made by Mr. Huntsman, or the outcome. | Huntsman Decl. ¶¶ 40–45; COE Ex. 9 at 187:10–25; Gevorki Decl. ¶¶ 23–28; COE Ex. 17 at 43:21–44:6, 44:11–19, 45:3–6, 45:15–46:11. 46:15–25; Lested Decl. ¶¶ 27–32; CEO Ex. 16 at 62:8–11, 62:17–21, 63:2–6, 63:11–14, 63:20–64:5. 64:11–16, 64:22–65:1, 65:7–11; Pawlowski Decl. ¶¶ 21–25; COE Ex. 15 at 74:17–76:22, 77:5–8; Diaz-Herrera Decl. ¶¶ 53–58; Devane Decl. ¶¶ 37–42; COE Ex. 75 at 131:15–134:1; Kopperud Decl. ¶¶ 32–37; Yang Decl. ¶¶ 13–19; COE Ex. 10 at 128:21–130:20; | Disputed. Disputed. Max Huntsman, Ester Lim, Kyla Coates and Veronica Pawlowski were all aware of Villanueva's protected activity.<br><br>The Board of Supervisors, including Sheila Kuel, and Hilda Solis instructed Max Huntsman to remove Alex Villanueva from the office of Sheriff.<br><br>Max Huntsman and Ester Lim Coordinated their complaints against Sheriff Villanueva with the intention the complaints go public.<br><br>The Complaints were made in March 2022, the investigation was completed May 2023 but it was not until October 2023, just one month after Villanueva announced his candidacy for the board of supervisors, | Appendix, **Exhibit 27**, 56:-58:19; 58:20-59:12; 135:20-136:19; 140:25-144:24; 144:3-7; 144:8-146:12; 148:23-49:3; 151:2-152:8; 152:12-154:22, **Exhibit 31**, 74:4-25; 79:2-82:6; 252:25-253; 253:13-17; 192:5–22, **Exhibit 32**, P152:2–23 P168:17–25, **Exhibit 35**, 74:14-75:24; 81:1:9-:82:4; 82:5-8:4:10; 86:25-88:10; 88:18-89:4; 90:11-90:22; 91:5-92:7<br><br>**Exhibit 1 and 14, 22,** Exhibit 22, **Exhibit 31**, 211:22-212:9; 216:221:21<br><br>**Exhibits 19. 20**, 3/16/2022, 5/15/2023 and 10/02/2023 dates<br><br>Villenueva Decl. ¶ 24 |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | Komoroski Decl. ¶¶ 13–19; COE Ex. 4 at 141:22–146:1; Cruz Decl. ¶¶ 13–19; COE Ex. 14 at 141:6–144:1; Lecrivain Decl. ¶¶ 12–18; COE Ex. 12 at 139:23–142:11; COE Exs. 32–36, 38–53. | that the Do Not Rehire Notation was placed in his personnel file.<br><br>The *Los Angeles Times* published the story of the placement of the "Do Not Rehire" notation the same day as ballots were sent out in the Board of Supervisors Race of Villanueva vs Janice Hahn. | |
| 59.    Plaintiff running for the Board in 2024 played no role in Mr. Huntsman's complaint, the investigation into the allegations made by Mr. Huntsman, or the outcome. | Huntsman Decl. ¶¶ 46–48; COE Ex. 9 at 188:25–189:6; Gevorki Decl. ¶¶ 29–31; Lested Decl. ¶¶ 33–35; Pawlowski Decl. ¶¶ 26–28; Diaz-Herrera Decl. ¶¶ 59–60; Devane Decl. ¶¶ 43–44; COE Ex. 8 at 190:16–191:12; Kopperud Decl. ¶¶ 38–39; Yang Decl. ¶¶ 5–6; COE Ex. 10 at 130:21–131:11; Komoroski Decl. ¶¶ 5–6; COE Ex. 4 at 153:20–154:21; Cruz Decl. ¶¶ 5–6; COE Ex. 14 at 140:1–141:1; Lecrivain Decl. ¶¶ 19–20; COE Ex. 12 at 142:13–143:11; COE Exs. 32–36, 38–53. | Disputed. Disputed. Max Huntsman, Ester Lim, Kyla Coates and Veronica Pawlowski were all aware of Villanueva's protected activity.<br><br>The Board of Supervisors, including Sheila Kuel, and Hilda Solis instructed Max Huntsman to remove Alex Villanueva from the office of Sheriff.<br><br>Max Huntsman and Ester Lim Coordinated their complaints against Sheriff Villanueva with the intention the complaints go public.<br><br>The Complaints were made in March 2022, the investigation was completed May 2023 but it was not until October 2023, just one month after Villanueva announced his candidacy for the | Appendix, Appendix, **Exhibit 27**, 56:-58:19; 58:20-59:12; 135:20-136:19; 140:25-144:24; 144:3-7; 144:8-146:12; 148:23-49:3; 151:2-152:8; 152:12-154:22, **Exhibit 31**, 74:4-25; 79:2-82:6; 252:25-253: 253:13-17; 192:5–22, **Exhibit 32**, P152:2–23 P168:17–25, **Exhibit 35**, 74:14-75:24; 81:1-9:-82:4; 82:5-8:4:10; 86:25-88:10; 88:18-89:4; 90:11-90:22; 91:5-92:7<br><br>**Exhibit 1 and 14, 22,** Exhibit 22, **Exhibit 31,** 211:22-212:9; 216:221:21<br><br>**Exhibits 19. 20,** 3/16/2022, 5/15/2023 and 10/02/2023 dates<br><br>Villenueva Decl. ¶ 24 |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | | board of supervisors, that the Do Not Rehire Notation was placed in his personnel file. The *Los Angeles Times* published the story of the placement of the "Do Not Rehire" notation the same day as ballots were sent out in the Board of Supervisors Race of Villanueva vs Janice Hahn. | |
| **Plaintiff's Continued Public Attacks** | | | |
| 60.    Since learning about the "Do Not Rehire" notation on January 31, 2024, Plaintiff has continued to speak publicly about Ms. Lim, the Board, and its Justice Deputies. | Tokoro Decl. ¶¶ 106-115. 134-15, COE Exs. 65-66, 68-69 ; COE Ex. 5 at 250:6–13, 250:21–253:10; COE Ex. 11 at 243:23–250:8. | Disputed. Villanueva has filed objections to this evidence Lack of personal knowledge (FRE 602); Lack of foundation (FRE 901); Hearsay (FRE 802). Statements interpreting or characterizing Plaintiff's speech are improper lay opinion under FRE 701. Speculation about Plaintiff's motives, future plans, or intended meaning in public comments is inadmissible under FRE 602 and 701. | |
| 61.    Since learning about the "Do Not Rehire" notation on January 31, 2024, Plaintiff has continued to speak publicly about Mr. Huntsman. | Tokoro Decl. ¶¶ 106-115. 135, COE Exs. 65-66, 69; COE Ex. 5 at 250:21–23, 253:14–255:2. | Disputed. Villanueva has filed objections to this evidence Lack of personal knowledge (FRE 602); Lack of foundation (FRE 901); Hearsay (FRE 802). Statements interpreting or characterizing Plaintiff's speech are | |

| DEFENDANTS' ALLEGED UNCONTROVERTED FACTS | DEFENDANTS' SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSES | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|---|---|
| | | improper lay opinion under FRE 701. Speculation about Plaintiff's motives, future plans, or intended meaning in public comments is inadmissible under FRE 602 and 701. | |
| **No Policymakers Were Involved** | | | |
| 62.    The CEOP does not make policy for the County or the Department. | Komoroski Decl. ¶ 2; Yang Decl. ¶ 2; Cruz Decl. ¶ 2; COE Ex. 4 at 23:3–26:12; COE Ex. 10 at 11:2–15, 38:8–11; COE Ex. 14 at 14:14–16:21. | Disputed. The CEOP reports to the board of supervisors and their decision to recommend discipline is final. There is no ability to appeal or grieve the determination. | **Exhibit 34,** 56:5–7; 72:2–3; 76:10–12; 56:12:–14; 67:2–5; 81:9; 81:13; 74; 75:25; 76:17; 77:3; 77:17–78:9; 134:15–16; 136:10–14, 137:1–3; 136:25–137:3; 140:3–5, 141:7–9; 135:21–136:4; 138:13–15; 138:22–24 |
| 63.    Chief Lecrivain does not make policy for the County or the Department. | Lecrivain Decl. ¶¶ 6–7; COE Ex. 12 at 31:17–32:25, 50:18–51:14. | Disputed. Laura Lecrvain had the final authority to make a final decision on placement the do not rehire notation on Villanueva's personnel file. | **Exhibit 34,** 56:5–7; 72:2–3; 76:10–12; 56:12:–14; 67:2–5; 81:9; 81:13; 74; 75:25; 76:17; 77:3; 77:17–78:9; 134:15–16; 136:10–14, 137:1–3; 136:25–137:3; 140:3–5, 141:7–9; 135:21–136:4; 138:13–15; 138:22–24 |

## DEFENDANT'S CONCLUSIONS OF LAW

| CONCLUSION OF LAW | SUPPORTING AUTHORITIES | PLAINTIFF'S RESPONSE |
|---|---|---|
| 1.   A court grants summary judgment where the moving party shows there is no dispute as to any material fact and that it is entitled to judgment as a matter of law. | Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). | Undisputed, but Defendant is not entitled to judgment as a matter of law and there are disputed facts. |
| 2.   To establish a First Amendment claim, a plaintiff must show that (1) he engaged in protected activity; (2) as a result, he was subject to adverse action by the defendant that would chill or silence an ordinary person from continuing to engage in the protected activity; and (3) there was a substantial | *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (footnote omitted). | Undisputed. Villanueva notes that Defendants argue a contrary and Inapplicable standard and try to argue that Villanueva's speech was actually chilled, there is no such requirement as *Blair* makes clear. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| CONCLUSION OF LAW | SUPPORTING AUTHORITIES | PLAINTIFF'S RESPONSE |
|---|---|---|
| causal relationship between the protected activity and the adverse action. | | |
| 3.  It is a plaintiff's burden to make a *prima facie* showing of three elements required to establish a First Amendment claim. | *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022) | Undisputed. |
| 4.  If a plaintiff makes a *prima facie* showing, a defendant can prevail by showing that they would have taken the same adverse action even in the absence of animus or retaliatory motive. | *Boquist*, 32 F.4th at 778. | Disputed, this standard does not  apply on summary judgment but  is a disputed issue of material fact  for the trier of fact. *Boquist*, 32 F.4th at 778. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| CONCLUSION OF LAW | SUPPORTING AUTHORITIES | PLAINTIFF'S RESPONSE |
|---|---|---|
| 5. "If there is a finding that retaliation was not the but-for cause of the [adverse action], the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." | *Boquist*, 32 F.4th at 778. | Disputed. Villanueva must show only that the "protected conduct played *a* part, substantial or otherwise," in defendants' wrongdoing. *Nieves v Bartlett,* 139 S.Ct. 1715, 1722 (2019), quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977) (emphasis added). |
| 6. "[I]t is more difficult for elected officials to establish that they were subjected to an adverse action that offends the First Amendment because more is fair in electoral politics than in other contexts . . . and the First Amendment therefore | *Boquist*, 32 F.4th at 776. | Undisputed. |

| CONCLUSION OF LAW | SUPPORTING AUTHORITIES | PLAINTIFF'S RESPONSE |
|---|---|---|
| doesn't shield public figures from the give-and-take of the political process." | | |
| 7. "Minor indignit[ies]" and "de minimis deprivations of benefits and privileges" are insufficient to establish an adverse action when it comes to elected officials. | *Blair*, 608 F.3d at 544. | Disputed, this is dicta. Even minor retaliatory acts—s uch as a threat of discipline  or negative personnel action—may constitute a materially adverse action in a First Amendment retaliation claim. *Coszalter v. City of Salem,*  320 F.3d 968, 974–75 (9th Cir. 2003) |
| 8. An elected-official plaintiff must show that the adverse action prevents them from doing their job or exercising the authority enjoyed by virtue of his or her popular election. | *Houston Cmty. College System v. Wilson*, 595 U.S. 468, 479 (2022). | Disputed. Villanueva held no public office  at the time of the adverse action, Therefore,  this is case inappopsite and inapplicable. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| CONCLUSION OF LAW | SUPPORTING AUTHORITIES | PLAINTIFF'S RESPONSE |
|---|---|---|
| 9. The fact that the allegedly adverse action post-dated the protected activity is also not enough to show retaliation—more is required. | *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). | Disputed, this cited case does not stand for this proposition. Timing is sufficient to establish causation. *Howard v. City of Coos Bay*, 871 F.3d 1032, 1045 (9th Cir. 2017); *Keyser v. Sacramento City Unified Sch . Dist.*, 265 F.3d 741, 751–52 (9th Cir. 2001) |
| 10. "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." | *Hartzell v. Marana Unified Sch. Dist., 130 F.4th 722, 734 (9th Cir. 2025)* | Dsiputed, this citation makes it clear there are *three* ways to establish liability, including the individual who committed the constitutional tort was an "official with final policymaking authority." *Hartzell*, 130 F.4th at 734. |
| 11. "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § | *Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978).* | Undisputed. |

| CONCLUSION OF LAW | SUPPORTING AUTHORITIES | PLAINTIFF'S RESPONSE |
|---|---|---|
| 1983 on a respondeat superior theory." | | |
| 12. The Ninth Circuit has recognized three ways to satisfy Monell: (1) the government entity acted "pursuant to an expressly adopted official policy"; (2) the government entity acted pursuant to a "longstanding practice or custom"; or (3) the individual who committed the constitutional tort was an "official with final policy-making authority." | *Hartzell, 130 F.4th at 734.* | Undisputed. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| CONCLUSION OF LAW | SUPPORTING AUTHORITIES | PLAINTIFF'S RESPONSE |
|---|---|---|
| 13. "Proof of random acts or isolated events is insufficient to establish custom." | *Navarro v. Block, 72 F.3d 712, 714 (9th Cir. 1995).* | Disputed. This statement of law only applies if Plaintiff is proceeding on a policy or custom theory under *Monell*, not a "final policy maker" theory. *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997) *Pembaur*, 475 U.S. at 483; *Trevino*, 382 F.3d at 986 |
| 14. Liability "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." | *Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996)* | Disputed. This case makes it clear it is not referring to the final policy maker theory but the "custom" theory of Monell. *Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996)* |
| 15. Article III standing is a jurisdictional requirement. | *Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004).* | Undisputed. |

| CONCLUSION OF LAW | SUPPORTING AUTHORITIES | PLAINTIFF'S RESPONSE |
|---|---|---|
| 16. To establish standing, a plaintiff must show (i) an injury in fact that is concrete and particularized; (ii) that the injury was caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. | *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 578 (1992).* | Undisputed. |
| 17. The plaintiff bears the burden of establishing standing. | *TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021).* | Undisputed. |
| 18. The "concrete-harm requirement" is "essential to the Constitution's separation of powers." | *TransUnion LLC, 141 S. Ct. at 2207.* | Undisputed. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| CONCLUSION OF LAW | SUPPORTING AUTHORITIES | PLAINTIFF'S RESPONSE |
|---|---|---|
| 19. To satisfy the "concrete-harm" requirement, a plaintiff must show an injury that is "real, and not abstract." | *TransUnion LLC, 141 S. Ct. at 2204.* | Undisputed. |
| 20. A hypothetical injury that may or could occur does not suffice, because the "mere risk of future harm" is not a concrete harm. | *TransUnion LLC, 141 S. Ct. at 2210–11; Probodanu v. Sessions, 387 F. Supp. 3d 1031, 1039 (C.D. Cal. 2019).* | Undisputed. |
| 21. Official capacity claims can only be brought against a governmental entity. | *Pierce v. San Mateo Cnty. Sheriff's Dep't, 232 Cal. App. 4th 995, 1018 (2014); Kentucky v. Graham, 473 U.S. 159, 166 (1985)* | Undisputed. |
| 22. Subdivisions of a governmental entity should be dismissed where a party asserts claims that are identical to those asserted against the | *Garcia v. Cnty. of Riverside, No. EDCV 13–00616–JGB (SPX), 2013 WL 12167913, at *8 (C.D. Cal. Aug. 1, 2013).* | Disputed. Government Code section 945 provides that "[a] public entity may sue or be sued."   Meanwhile, Government Code section 811.2 defines a "a public entity" as including "the state, the Regents of the University of California, the Trustees of the California State University, a county, city, district, public  authority, public agency, and any other politica l subdivision or public corporation in the State."   In *Estate of Osuna v. County of Stanislaus,* 392 F .Supp.3d 1162 (E.D. Cal. 2019),  the court held that there was no basis to dismiss the Stanislaus County Sherriff's Department from  the plaintiff's state law causes of action, even though the County of |

| CONCLUSION OF LAW | SUPPORTING AUTHORITIES | PLAINTIFF'S RESPONSE |
|---|---|---|
| entity. | | Stanislaus was also named as a defendant. *Id.* at 1171. For the same reasons, here, all public entities, which are all political subdivision ns of the County of Los Angeles, are properly named. |
| 23. "A subsidiary of a public entity is not a proper defendant on a § 1983 claim." | *Gordon v. County of Orange, No. SACV 14-01050-CJC(DFM), 2019 WL 4279036, at *8 (C.D. Cal. Aug. 5, 2019); Solesbee v. County of Inyo, No. 1:13-CV-1548 AWI JLT, 2014 WL 3890680, at *2 (E.D. Cal. Aug. 7, 2014)* | provides that "[a] public entity may sue or be sued." Meanwhile, Government Code section 811.2 defines a "a public entity" as including "the state, the Regents of the University of California, the Trustees of the California State University, a county, city, district, public authority, public agency, and any other politica l subdivision or public corporation in the State." In *Estate of Osuna v. County of Stanislaus,* 392 F .Supp.3d 1162 (E.D. Cal. 2019), the court held that there was no basis to dismiss the Stanislaus County Sherriff's Department from the plaintiff's state law causes of action, even though the County of Stanislaus was also named as a defendant. *Id.* at 1171. For the same reasons, here, all public entities, which are all political subdivision ns of the County of Los Angeles, are properly named. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## Plaintiff's Additional Material Facts that Negate
## Summary Judgment

| Material Facts | Supporting Evidence |
|---|---|
| 1. Sheriff Alex Villanueva served as Sheriff of Los Angeles County from 2018 to 2022. Villanueva. Villanueva is proud of his service to Los Angeles County. | 1. Villanueva Decl. ¶ 1. |
| 2. From the beginning of his term, the Board was hostile to Villanueva's speech and limited him to only three minutes to speak, while other department heads received unlimited time. | 2. Villanueva Decl. ¶ 14 |
| 3. Veronica Pawlowski stated that it was inappropriate and offensive that Villanueva criticized the Board from 2018-2020, even though Board member Mark Ridley-Thomas had been indicted and served time in prison. | 3. **Exhibit 27,** 56:1-58:19 |
| 4. Pawlowski admitted that from 2018 to 2020, Villanueva said nothing she found inappriopriate or offensive other than accusing the board of corruption. | 4. **Exhibit 27,** 58:20-59:12 |
| 5. Mark Ridley-Thomas and Sheila Kuehl authored a motion in October 2020 to remove Sheriff Villanueva as | 5. Appendix **Ex. 1.** |

| | |
|---|---|
| retaliation for his anti-corruption stance. | |
| 6. Sheriff Villanueva continued to engage in protected activity by opposing Ballot Measures A (an unconstituonal attempt to overturn the will of the voters, R (giving the Civilian Oversight Commien subpoena power which could be abused, and J (ostensibly social justice but really about defunding the police), the Fulgent no-bid contract, and the County's vaccine mandates. | 6. Villanueva Decl. ¶¶ 11–17; Exs. 6, 7, 13, 15. |
| 7. Fulgent was a company that had received a no bid contract from the board of supervisors to administer vaccines to Los Angeles County Employees. On or Around Thanksgiving 2021, Villanueva attended a briefing at the Los Angeles Office of the FBI which informed him that Fulgent had ties to the Communist Party of China and that the data of Employee's of Los Angeles County was not safe with Fulgent. | 7. Villanueva Decl. ¶ 10 |
| 8. Sheriff Villanueva informed the board of supervisors about the FBI meeting. | 8. Villanueva Decl. ¶ 10, **Exhibit 3** |
| 9. Fulgent (without merit) sued Sheriff Villanueva for telling the truth about | 9. **Exhibit 6** |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| their ties to the Chinese Communist Party. Villanueva requested a defense from County Counsel and the Board of Supervisors instructed County Counsel to deny him a defense. | |
| 10. County Counsel, even though Villanueva had relied upon the FBI briefing and the Board of Supervisors knew it, accused Villanueva of acting with actual malice. | 10. Villanueva Decl. ¶ 10, **Exhibit 7** |
| 11. The Board of Supervisors retaliated against Villanueva for his speech by instructing Max Huntsman to explore all possible avenues to remove him from office. | 11. **Exhibit 1, 14, Exbit 32,** 161:15–25, 162:1–13 |
| 12. Max Huntsman admitted he was instructed to find ways to remove Villanueva and also that he wanted Villanueva to resign. | 12. 1 **Exbit 32,** 61:15–25, 162:1–13 |
| 13. Max Huntsman admitted in a text to Esther Lim that he filed an equity complaint against Villanueva because he wanted the complaint to be made public. | 13. Appendix Ex. 12, 13. Exhibit 22, **Exhibit 31,** 211:22-212:9; 216:221:21 |
| 14. Esther Lim and Max Huntsman agreed to support each other by filing complaints in coordination. | 14. Appendix Ex. 12, 13. |
| 15. The Investigator Logs for Ester Lim | 15. Appendix, Exhibits 19. 20, |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| and Max Huntsman's IAB investigate establish the complaint was filed *March 2022 and complete by May 2023.* However, no action was taken on the case until October 2023, just one month after Villanueva announced a run for the Board of Supervisors. | 3/16/2022, 5/15/2023 and 10/02/2023 dates |
| 16. Kyla Coates' interview was not recorded despite explicit instructions to do so, and the investigator falsely testified that it was recorded. | 16. Diaz-Herra Depo. 59:21–60:8., **Exhibit 24**, 21:22-23:5; **Exhibit 25**, 35:8-18; **Exhibit 35**, 42:11-15 |
| 17. Kyla Coates is the only witness who allegedly testified that Villanueva referenced gender directly to her in her presence. | 17. Appendix, **Exhibit 17,** COLA 2132-33, 2137, Villnueva Decl. ¶ **15; Exhibit 35,** 29:8-31:21; 63:1-:4: |
| 18. Kyla Coates, when asked at her deposition, denied the allegation that Villanueva had said justice deputies are 'all women" to her. | 18. Appendix, **Exhibit 17,** COLA 2132-33, 2137, Villnueva Decl. ¶ **15; Exhibit 35,** 29:8-31:21; 63:1-:4: |
| 19. Max Huntsman did not inform the investigator that he had a plaque identifying himself as "Max Gustaf," *and he still had it on his desk at the time of his deposition* and without basis, accused Villanueva of trying to paint him as Jewish and (in a complete contradiction) a Holocaust denier. | 19. **Exhibit 32,** Huntsman Depo. 127:8-128:3; 162:1-163:25, Villanueva Decl. ¶¶ 12, **Exhibit 26.** 21; 40:1-10 |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 20. The County admits that referring to someone by their birth name does not constitute harassment or discrimination. | 20. Komoroski Depo. 40:1–10. |
| 21. Esther Lim falsely claimed that Villanueva sent a letter to the Board of Supervisors asking for her to be fired. The letter does no such thing. | 21. Appendix, **Exhibit 17,** COLA002135, 2136, **Exhibit 4, 8; 31,** 85:11-86:20; 91:13-92:6; 92:7-93:9; 97:9;14; 102:22-103:4, 104:20-25; 108:23-109:6; 112-11-18; 118:5-18; **Exhibits 10-11** |
| 22. Ester Lim further falsely claimed that the tweets referenced in Villanueva's letter to the Board of Supervisors occurred prior to her employment with Hilda Solis. | 22. Appendix, **Exhibit 17,** COLA002135, 2136, **Exhibit 4, 8; 31,** 85:11-86:20; 91:13-92:6; 92:7-93:9; 97:9;14; 102:22-103:4, 104:20-25; 108:23-109:6; 112-11-18; 118:5-18; **Exhibits 10-11** |
| 23. Ester Lim also falsely claimed it was a mutual decision to stop tweeting, when in fact Supervisor Hilda Solis forbade her from tweeting and disciplined her for her conduct. | 23. Appendix, **Exhibit 17,** COLA002135, 2136, **Exhibit 4, 8; 31,** 85:11-86:20; 91:13-92:6; 92:7-93:9; 97:9;14; 102:22-103:4, 104:20-25; 108:23-109:6; 112-11-18; 118:5-18; **Exhibits 10-11** |
| 24. Lim admitted that Villanueva never mentioned her race or ethnicity. | 24. Ester Lim Depo. P192:5–22. |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 25.  Villanueva's concern with Lim was based solely on her oversight conduct and political statements, not her race, gender, or ethnicity. | 25.  Villanueva Decl. ¶¶ 31–32. |
| 26. Ester Lim further admitted that Villanueva disagreed with her politics, not her ethinicty or gender. | 26.  **Exhibit 17,** COLA002135, 2136 |
| 27. Veronica Pawlowski falsely against Villanueva falsely testified that Villanueva had referred to them as "dumb women" "women and unqalfied" | 27.  Appendix, **Exhibit 17,** COLA 2132-33, 2137, Villnueva Decl. ¶ **15; Exhibit 35,** 29:8-31:21; 63:1-:4: |
| 28. Mercedes Cruz, the County's PMK, testified that Villanueva was guilty of harassment and retaliation for impeding the oversight duties of Esther Lim and Max Huntsman—statements that reflect political, not factual, determinations. | 28.  Exhibit 33, P84:2–P85:24. |
| 29. The County Equity Oversight Panel upheld retaliation charges against Villanueva based on a letter without ever reviewing the letter or the tweets that prompted it. | 29.  Exhibit 36,. 107:20–108:25. |
| 30. The "Do Not Rehire" story was published the same day ballots were mailed in his race for the board of supervisors. | 30.  Villanueva Decl. ¶ 38 |
| 31. Tim     Murakami,     Villanueva's | 31.  **Exhibit 28,** 58:9-60:4, 73:8-74:23; |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| undersheriff denied any improper investigations. | 75:17-20 |
| 32. Anne Devane was never treated differently by Villanueva because she is a woman and she never heard him say anything inappropriate related to gender, race or ethinicty or age. | 32. **Exhibit 35,** 28:15-30:16 |
| 33. Veronica Pawloski was aware of Villanueva's protected speech and had animus towards all of it, even referring to it as "ridiculous", inappropriate and 'very disapointing" | 33. **Exhibit 27**, 56:-58:19<br><br>58:20-59:12<br>135:20-136:19:<br>140:25-144:2415<br>144:3-7<br>144:8-146:12<br>148:23-49:3<br>151:2-152:8<br>152:12-154:22 |
| 34. Sergio Escoebedo was promoted by Robert Luna after he is participated in placing a "do not rehire" notation in Villanueva's personnel file. | 34. **Exhibit 29,** 13:3-11 |
| 35. Ester Lim, in her own tweets, was "so f---ing pissed" at Villanueva and his protected activity. | 35. **Exhibit 31,** 102:-104:25; 79:2-82:6; 74:4-25;   76:11-20;   P139:3–P139:25 P140:5: 253:13-17 |
| 36. Tim Murakami, the primary point of contact between the Department and the Deuputies, did not retaliate against the justice deputies, was not asked to do so | 36. **Exhibit 28:** 64:1-66:25, **Exhibit 35,** 19:11-18 |

| | |
|---|---|
| and never made their job harder because they were perceived political enemies of Alex Villanueva. | |
| 37. Tim Murakami believed Ester Lim's tweets were unprofessional and inappropriate but not because of her age, gender or ethnicity. | 37. **Exhibit 28:** 66:25-69:9 |
| 38. CEOP panelist Roberta Yang did not even bother to review the evidence against Alex Villanueva and even at one point stated she was unable to speak the charges against him. | 38. **Exhibit 36:** 43:6-45:16; 62:9-63:25; 91:20-23; 112:3-114:10 |
| 39. Villanueva engaged in protected activity by opposing measures A, R and J. | 39. **Villanueva Decl. ¶¶ 5-8, Exhibits 37-67** |
| 40. Villnueva engaged in protected activity by opposing no bid contracts, vaccine mandates and Fulgent's improper data collection of County Employees | 40. **Villanueva Decl. ¶¶ 9-11** |
| 41. Villnueva did not discriminate or harass Max Huntsman in any manner and not on the basis of any protected class. | 41. **Villanueva Decl. ¶ 12, 18, 19, 20, 21** |
| 42. Villnueva did not discriminate or harass Ester Lim in any manner and not on the basis of any protected class | 42. **Villanueva Decl. ¶ 13, 18, 19, 20, 22** |

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 43. The Board of Supervisors demonstrated animus towards Villnueva because of his protected speech | 43. **Villanueva Decl. ¶ 13** |
| 44. The terms "woke" and "flunky" and La Malcine do not refer to any protected class. | 44. **Villanueva Decl. ¶¶ 14-16** |
| 45. Villnueva did not open any criminal investigation for improper reasons. | 45. **Villanueva Decl. ¶ 17** |
| 46. Villanueva did not refuse to be interviewed | 46. **Villanueva Decl. ¶ 23** |

Dated:  April 28, 2025          SHEGERIAN & ASSOCIATES, INC.


By: _____
       Carney R. Shegerian, Esq.

       Attorneys for Plaintiff,
       ALEX VILLANUEVA

SEPARATE STATEMENT OF DISPUTED FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**VILLANUEVA v. COUNTY OF LOS ANGELES, et al.**    **USDC CASE NO.:  2:24  cv 04979 SVW (JC)**

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 11520 San Vicente Boulevard, Los Angeles, California 90049.

On April 28, 2025, I served the foregoing document, described as **"PLAINTIFF ALEX VILLANUEVA'S SEPARATE STATEMENT OF DISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES,"** on all interested parties in this action, addressed as follows:

**Louis R. Miller**
**smiller@millerbarondess.com**
**Jason H. Tokoro**
**jtokoro@millerbarondess.com**
**Steven G. Williamson**
**swilliamson@millerbarondess.com**
**MILLER BARONDESS, LLP**
**2121 Avenue of the Stars, Suite 2600**
**Los Angeles, California 90067**

☐    **(BY MAIL)** As follows:

☒    **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒    **(FEDERAL)**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 28, 2025, at Los Angeles, California.

_____
Amelia Sanchez