LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
STEVEN G. WILLIAMSON (State Bar No. 343842)
swilliamson@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX VILLANUEVA,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100, inclusive,<br><br>Defendants. | **CASE NO. 2:24-cv-04979 SVW (JCx)**<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[*Filed Concurrently with Supplemental Declaration of Jason H. Tokoro; Reply Separate Statement; and Evidentiary Objections to Declaration of Alex Villanueva*]<br><br>Date: May 19, 2025<br>Time: 1:30 p.m.<br>Crtrm.: 10A<br><br>Assigned to the Hon. Stephen V. Wilson, Crtrm. 10A and Magistrate Judge Jacqueline Chooljian, Crtrm. 750<br><br>Trial Date:   June 3, 2025 |

732429.6

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
| | A. Summary Judgment Is Proper On Plaintiff's Claim | 2 |
| |    1. Plaintiff Applies the Wrong First Amendment Standard | 2 |
| |    2. Plaintiff Was Not Subject to a Materially Adverse Action | 3 |
| |       (a) The File Notation Was Not "Materially Adverse" | 3 |
| |       (b) Plaintiff's Speech Has Not Been Chilled | 5 |
| |    3. Plaintiff Does Not Establish Substantial Causation | 6 |
| |       (a) There Was No "Closed" Investigation | 7 |
| |       (b) Plaintiff Blatantly Mischaracterizes the Facts | 8 |
| |    4. Plaintiff Does Not Address the Lack of "But-For" Causation | 10 |
| |    5. This Court Should Not Second-Guess the CEOP | 10 |
| | B. Plaintiff Cannot Establish Liability Under Section 1983 | 11 |
| | C. Plaintiff Lacks Standing | 13 |
| | D. The County Is The Only Proper Defendant | 14 |
| III. | CONCLUSION | 14 |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Allen v. Wright*,
 468 U.S. 737 (1984) ............................................................................................. 6

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
 166 F. Supp. 3d 988 (N.D. Cal. 2015) ................................................................ 6

*Blair v. Bethel Sch. Dist.*,
 608 F.3d 540 (9th Cir. 2010) ........................................................................... 3, 6

*Blissful Enters., Inc. v. Cincinnati Ins. Co.*,
 421 F. Supp. 3d 193 (D. Md. 2019), *aff'd*, No. 19-2217, 2022 WL
 6671618 (4th Cir. Oct. 11, 2022) ........................................................................ 6

*Boquist v. Courtney*,
 32 F.4th 764 (9th Cir. 2022) ........................................................................ passim

*Colonies Partners LP v. County of San Bernardino*,
 No. EDCV 18-420 JGB (SHKx), 2020 WL 5102160 (C.D. Cal.
 July 28, 2020) .......................................................................................... 3, 10, 14

*Coszalter v. City of Salem*,
 320 F.3d 968 (9th Cir. 2003) .............................................................................. 2

*Est. of Osuna v. County of Stanislaus*,
 392 F. Supp. 3d 1162 (E.D. Cal. 2019) ............................................................ 14

*Hous. Cmty. Coll. Sys. v. Wilson*,
 595 U.S. 468 (2022) ..................................................................................... passim

*Monell v. Dep't of Soc. Servs. of City of New York*,
 436 U.S. 658 (1978) ............................................................................... 2, 11, 12

*Nilsson v. City of Mesa*,
 503 F.3d 947 (9th Cir. 2007) .............................................................................. 5

*Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*,
 235 F.3d 1243 (10th Cir. 2000) ....................................................................... 4, 5

*Pickern v. Holliday Quality Foods*,
 293 F.3d 1133 (9th Cir. 2002) .......................................................................... 13

*Ridge Top Ranch, LLC v. U.S. Fish & Wildlife Serv.*,
 No. CIV. S-13-2462 LKK/CKD, 2014 WL 841229 (E.D. Cal. Mar. 4,
 2014) ................................................................................................................. 10

*Roberts v. Broski*,
 979 F. Supp. 746, 753 (N.D. Ill. 1997) ............................................................ 11

*Segal v. Los Angeles County*,
　852 F.2d 1290, 1988 WL 79481 (9th Cir. 1988) (unpublished) ..................... 12

*TransUnion LLC v. Ramirez*,
　594 U.S. 413 (2021) ............................................................................................. 13

*Van Asdale v. Int'l Game Tech.*,
　577 F.3d 989 (9th Cir. 2009) ............................................................................... 4

*Williams v. Seniff*,
　342 F.3d 774 (7th Cir. 2003) ............................................................................. 13

*Zilich v. Longo*,
　34 F.3d 359 (6th Cir. 1994) ............................................................................ 4, 5

**FEDERAL STATUTES**

42 U.S.C. § 1983 ............................................................................................... 11, 14

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 6

Fed. R. Civ. P. 56(c)(1)(A) ..................................................................................... 11

**OTHER AUTHORITIES**

U.S. Const. amend. I ........................................................................................ passim

## I. INTRODUCTION

The material facts of this case are not in dispute. The parties agree Plaintiff's First Amendment retaliation claim arises from his protected speech while he was the elected Sheriff. The parties also agree Plaintiff was investigated for misconduct, and that the investigation found he violated the Department's POE while in office and resulted in a "Do Not Rehire" notation in his County personnel file.

What Plaintiff's Opposition does *not* say, however, speaks to the factual and legal insufficiency of his claim. Faced with *no facts* supporting his conspiracy theory and legal standards he cannot meet, the Opposition simple ignores them. The claim fails as a matter of law.

*First*, the Opposition ignores the heightened standard that indisputably applies to First Amendment retaliation claims by elected officials. Even if the Court credits Plaintiff's (factually-bereft) theory that the Board spearheaded a campaign to publicly expose his conduct, it should still grant summary judgment. Under binding Ninth Circuit and Supreme Court precedent, public censure concerning the conduct of a public official does not establish an adverse action supporting a First Amendment claim—even if it harms the plaintiff's reputation and even if it is driven by retaliatory animus of political rivals.

Plaintiff put his own character at issue when he ran for public office. He openly opposed the Board on public issues and took controversial stances. The First Amendment protects his right to do so. But it equally protects **Defendants'** right to oppose Plaintiff's policies and openly discuss Plaintiff's conduct in office, and it "cannot be used as a weapon" against Defendants for exercising their own protected rights. *Boquist v. Courtney*, 32 F.4th 764, 776 (9th Cir. 2022) (quoting *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022)).

*Second*, Plaintiff ignores that his claim cannot meet the "but-for" causation standard. Undisputed facts show any purported retaliation was not the but-for cause of the investigation and file notation. Plaintiff's claim fails for these reasons.

      Plaintiff's Opposition has fatal defects in other respects, too. Plaintiff does not meet his prima facie burden to show that the file notation was not the product of a legitimate process but, rather, some retaliatory action by the County. He does not identify any material *facts* supporting his claim that the Board orchestrated retaliatory action against him. He fails to show any involvement in this case by the Board or Sheriff Luna in the POE investigation and resulting file notation.

      Speculation, conjecture, and conclusory self-serving declarations do not create a triable issue and are insufficient to overcome summary judgment. So, too, are arguments premised on mischaracterizations of undisputed documents. Plaintiff, thus, fails to show any triable issue of fact supporting causation.

      Plaintiff also fails to establish *Monell* liability. He does not—and cannot—point a to custom, policy, or practice that harmed him. Nor does he identify any fact establishing concrete harm. He cannot show he has applied for any County job, even after learning that his "Do Not Rehire" notation does not serve as a bar to future County employment. Plaintiff lacks standing.

      The Court should grant summary judgment under Rule 56.

## II. ARGUMENT

### A. Summary Judgment Is Proper On Plaintiff's Claim

#### 1. Plaintiff Applies the Wrong First Amendment Standard

      Defendants' Motion establishes that, because Plaintiff's First Amendment claim is based on his speech concerning public issues while he was an elected official, a heightened standard applies. (Mot. at 10:24–11:11.) Plaintiff ignores the numerous elected-official cases cited by Defendants and instead points to an inapposite standard from *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003). (*See* Opp. at 9:6–21, 11:3–6.) *Coszalter* did not involve speech by elected officials; it involved speech by maintenance workers—i.e., lower-level, non-public-facing government employees. 320 F.3d at 973–78. *Coszalter* is inapplicable here.

      In *Boquist*, the Ninth Circuit left no room for debate on the difference

between the First Amendment standards governing employees and elected officials: "We next address whether the framework that applies to evaluating speech restrictions that the government imposes on its employees also applies to restrictions on the speech of elected officials. **We conclude it does not**." 32 F.4th at 778–79 (emphasis added). It is undisputed that Plaintiff was not an employee at the time he engaged in protected speech; his most recent declaration confirms his claim is based on speech occurring while he was Sheriff. (*See* Dkt. No. 105-8 ¶ 1.)

By failing to address these cases, Plaintiff has waived any argument under them and concedes Defendants are correct about the proper standard for elected officials like Plaintiff. *E.g.*, *Colonies Partners LP v. County of San Bernardino*, No. EDCV 18-420 JGB (SHKx), 2020 WL 5102160, at *29 n.42 (C.D. Cal. July 28, 2020) (arguments not presented in summary judgment opposition are waived).

### 2. Plaintiff Was Not Subject to a Materially Adverse Action

"[I]t is more difficult for elected officials to establish that they were subjected to an adverse action that offends the First Amendment because 'more is fair in electoral politics than in other contexts.'" *Boquist*, 32 F.4th at 776 (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010)). "In this country, we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers." *Id.* at 776 (quoting *Wilson*, 595 U.S. at 478).

Supreme Court and Ninth Circuit precedent requires an elected official to meet a heightened standard and show the adverse act deprived the official of the ability to do his job or exercise his authority in office. *Wilson*, 595 U.S. at 479. Plaintiff falls woefully short of meeting this standard.

#### (a) The File Notation Was Not "Materially Adverse"

Under settled law, public censures regarding an official's conduct in office—like those Plaintiff complains of here—are legally insufficient to state a First Amendment retaliation claim. *Wilson*, 595 U.S. at 479; *Blair*, 608 F.3d at 546. It is undisputed the County's acts did not prevent Plaintiff from doing his job or from

exercising his authority and enjoying his privileges as an elected official. *See Boquist*, 32 F.4th at 777 ("[A]n adverse action against an elected official is material when it 'prevent[s] [the elected official] from doing his job,' 'deprive[s] him of authority he enjoyed by virtue of his popular election,' or otherwise prevents him from enjoying 'the full range of rights and prerogatives that came with having been publicly elected'" (first alteration added) (citations omitted); *accord*, *Wilson*, 595 U.S. at 481 (discipline falling short of exclusion from office is insufficient).

Instead of addressing the correct legal standard, Plaintiff invokes a lower, inapplicable standard and offers a perfunctory argument that the Board's public statements and the file notation regarding his conduct in office are enough to state a constitutional claim. (Opp. at 9:6–10, 11:3–6.) Plaintiff is wrong.

The Department was entitled to state that Plaintiff violated the POE. *See Wilson*, 595 U.S. at 479. Even assuming such a statement was intended to harm his reputation, that is not enough to support a First Amendment retaliation claim. *See Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994); *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*, 235 F.3d 1243, 1248 (10th Cir. 2000) ("In the First Amendment context, however, injury to one's reputation is not enough . . . .")

Defendants provided substantial evidence that the "Do Not Rehire" notation is merely an administrative flag on a file, designed to call attention to the fact that Plaintiff committed a POE violation. (*See, e.g.,* SUF 50.) Plaintiff provides no controverting evidence. Instead, he submits a self-serving declaration, which cannot overcome summary judgment.[1] *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th

---

[1] Plaintiff's claim that his experience as Sheriff taught him about the adverse effects of a "Do Not Rehire" notation (*see* Dkt. No. 105-8 ¶ 25) contradicts his deposition testimony and other statements that the notation was created **after** he left office specifically to punish him. (Supplemental Tokoro Decl. Exs. 80. 81 at 209:22–210:17.) His declaration should also be disregarded for this reason. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his

Cir. 2007) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

A file notation indicating that Plaintiff violated a County policy is similar to the public reprimands and censures that numerous courts have held *cannot* constitute a materially adverse action. *E.g.*, *Wilson*, 595 U.S. at 472, 479 (formal censure stating the elected official's conduct was "inappropriate" and "reprehensible" does not support a First Amendment claim); *Phelan*, 235 F.3d at 1247 (formal censure stating that elected official violated ethics policy does not trigger a First Amendment violation); *Zilich*, 34 F.3d at 361–62 (city council resolution stating former councilman was unqualified to hold office could not support First Amendment retaliation claim).

Plaintiff's failure to address these cases, along with his failure to identify any dispute of material fact regarding the effect of the file notation, is dispositive.

### (b)     Plaintiff's Speech Has Not Been Chilled

It also undisputed that Plaintiff's speech has not been chilled. Quite the contrary—Plaintiff continues to speak out publicly regarding the Board, the Department, Mr. Huntsman, and Ms. Lim. (Mot. at 15:3–21.) Defendants cited extensive examples of Plaintiff's continued speech, which make plain that the notation he received has not deterred him from speaking out. (*See id.*) *See Wilson*, 595 U.S. at 471, 479 (that plaintiff responded to reprimand by saying it would "never . . . stop me" and "did not exactly cower silently" showed his speech was not chilled); *Phelan*, 235 F.3d at 1248 (noting the plaintiff was not chilled).

Plaintiff's Opposition offered no rejoinder: it simply states, without any factual or legal support, that the file notation "would chill anyone from speaking out." (Opp. at 9:17.) That is clearly not the case, and it undisputedly has not chilled ***Plaintiff's*** speech. Plaintiff's bald assertion, untethered to any supporting evidence,

---

prior deposition testimony." (citation omitted)).

does not satisfy his prima facie burden to establish he suffered a materially adverse action infringing his First Amendment rights.

### 3. **Plaintiff Does Not Establish Substantial Causation**

Plaintiff also presents zero facts to meet his burden of establishing a "substantial causal relationship" between his protected speech and the adverse action. *E.g., Blair*, 608 F.3d at 543.[2]

Plaintiff is bound by the allegations in his FAC. *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 994 (N.D. Cal. 2015) ("Plaintiffs must abide by the consequences of its pleading decision and cannot, at its convenience, switch to a theory not plead in the Complaint."); *Blissful Enters., Inc. v. Cincinnati Ins. Co.*, 421 F. Supp. 3d 193, 198 (D. Md. 2019) ("A plaintiff is 'bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.'" (citation omitted)), *aff'd*, No. 19-2217, 2022 WL 6671618 (4th Cir. Oct. 11, 2022).

Plaintiff alleges that the Board conspired to punish him for his speech. (*See* FAC at 3:22–25.) He is bound by these allegations. But no facts support them. Defendants provided substantial undisputed evidence that neither the Board nor Sheriff Luna were involved in the investigations into Plaintiff's misconduct or the resulting file notation. (SUF 52–53. 56–57.) Plaintiff's Opposition points to no facts related to actions by the Board or Sheriff Luna that show their involvement in the complaints filed against him, the investigation into those complaints, or the outcome.

Instead, he cites to various political disagreements between himself and the

---

[2] Plaintiff again cites to the wrong standard and claims that he only needs to show that Defendants' conduct was "fairly traceable" to his protected speech. (Opp. at 9:23–25, citing *Allen v. Wright*, 468 U.S. 737, 751 (1984).) *Allen* is not a First Amendment retaliation case involving an elected official. It evaluated standing to challenge an IRS practice in the context of a 12(b)(6) motion to dismiss.

732429.6

6

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Board, which he characterizes as "animus." (Opp. at 11:14–22.) All of these alleged incidents have nothing to do with the "Do Not Rehire" notation, and Plaintiff does not identify a single fact to establish a causal link.

Plaintiff bristles at the fact that others criticized *his* political speech and claims it supports some level of animus. But he cannot have it both ways—Plaintiff cannot criticize the political views of others, only to then claim that their criticism of *his* politics constitutes unconstitutional animus. *Wilson*, 595 U.S. at 478 ("The First Amendment surely promises an elected representative like Mr. Wilson the right to speak freely on questions of government policy. But just as surely, it cannot be used as a weapon to silence other representatives seeking to do the same.").

### (a) There Was No "Closed" Investigation

Plaintiff continues to push the false narrative that the investigations were "closed" and then reopened for political retribution. (*See* Opp. at 6:12-19.) No facts to support this claim, and Plaintiff has changed his story several times.

At first, Plaintiff claimed that after he learned of the "Do Not Rehire" notation in *January 2024*, he spoke to former Chief of Professional Standards Ed Alvarez, who stated the Department determined no policy violations occurred and that the complaints by Huntsman and Lim were placed into a "suspense file." (FAC ¶ 17.) Then, at his deposition, Plaintiff claimed that the source of this information was a conversation with John Satterfield that occurred sometime around *July 2022*. (Supplemental Tokoro Decl. Ex. 81 at 242:8–15.)

Now, in his Opposition—for the first time ever—Plaintiff contends that the investigations were "completed" in *May 2023* and then reopened in October 2023. (Opp. at 6:10–19.) Plaintiff says nothing about the Department concluding there was no misconduct. He says nothing about a "suspense file." And he does not even mention either conversation with Alvarez or Satterfield. Instead, he introduces a factually-unsupported claim that is nowhere in Plaintiff's Complaint and which directly contradicts Plaintiff's allegations and deposition testimony.

1  The Court need look no further than the evidence presented with Defendants' Motion. Defendants attached deposition testimony from Lieutenant Ann Devane and Commander Ron Kopperud, both of whom detail that, from June 2023 to October 2023, the Department was preparing the case files for review by the CEOP. (Mot. at 7:28–8:5; SUF 37–44.)

Plaintiff does not attempt to controvert any of the sworn testimony from Kopperud or Devane. Instead, he argues that the Investigator Logs submitted by Defendants with their Motion show that the investigation was completed and then "delayed" until October 2023. (Opp. at 12:4–6.) That is simply untrue.

The Investigator Logs (COE Exs. 26, 39) show that (i) the Department received the case files from the investigator on or around June 27, 2023; (ii) Devane started "reviewing, completing and stacking the case" on July 5, 2023; (iii) Devane ordered transcriptions of the video interviews of Huntsman and Lim for inclusion in the case file in August 2023; (iv) Devane received the transcriptions on August 28, 2023; (v) Devane finalized the case files in late September 2023; and (vi) Kopperud approved the case files on October 2, 2023 and submitted them to the CEOP.

This is all readily apparent from the face of the Logs. Plaintiff cannot simply ignore these facts in an attempt to avoid summary judgment. There is no genuine dispute of material fact that the investigations were ***never*** closed and then reopened.

### (b)  Plaintiff Blatantly Mischaracterizes the Facts

The Opposition is rife with other misleading statements for which he has no evidentiary support. Plaintiff even goes so far as to cite to "facts" that do not exist.

Taking one example, Plaintiff claims that the County "leaked" news of his "Do Not Rehire" notation to the Los Angeles Times in an attempt to damage him. (Opp. at 9:4–6.) In support, he cites to PSS 15 and 30. PSS 15 cites the Investigator Logs, discussed *supra*, and have nothing to do with the Times. (*See* Dkt. No. 105-1.) PSS 30 cites to Villanueva Declaration "Paragraph 38." That does not exist—the Villanueva Declaration has only 33 paragraphs. (*See* Dkt. No. 105-8.)

732429.6

8

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff cannot invent unsubstantiated "facts" to avoid summary judgment, especially when he does not even attempt to grapple with the undisputed facts submitted with Defendants' Motion: that it was **Plaintiff** who told the Times about the complaint made against him in April 2022 (SUF 27) and that the Times obtained the investigation after it served a formal PRA request on the County in November 2023.  (Mot. at 9:8–12.)  His argument that the "County" publicized these issues in January 2024 is frivolous (Opp. at 9:12–13)—the article in question was written by the Los Angeles Times.  Plaintiff points to no facts showing that the County controlled either the timing or the content of the article.

Taking another example, Plaintiff claims the Huntsman and Lim complaints were not based on protected classes, such as race, gender or national origin.  (Opp. at 11:23–25.)  Tellingly, he cites to no facts to support this argument.  Nor can he—the investigation forms list the Policy of Equality violations at issue, and the Intake Assessments performed by the Department *while Plaintiff was Sheriff* discuss the protected classes in extensive detail.  (*See* COE Exs. 21, 34.)

Plaintiff complains that the interview of Coates was not recorded.  (Opp. at 2:2-5.)  He omits the fact that Coates has consistently stated that Plaintiff harassed and discriminated against the Justice Deputies based on them being "all women"— during her interview, at deposition, and in her declaration.  (*See* COE 25 at 477 (COLA 2140); *id.* Ex. 13 at 52:8–10; Coates Decl. ¶ 10.)

At bottom, even if *all* of the above were true, these "facts" still do not help Plaintiff establish his prima facie burden of "substantial" causation.  All of it is a distraction from the fact that after extensive discovery, Plaintiff has no proof of his conspiracy theories about the Board and no evidence of retaliation.

Plaintiff's FAC alleged that the Board orchestrated the "Do Not Rehire" notation in retaliation for his protected speech.  Plaintiff's Opposition was his opportunity to present facts to support this allegation.  He did not, and cannot, do so.

### 4. **Plaintiff Does Not Address the Lack of "But-For" Causation**

Defendants' Motion argued that, even assuming Plaintiff met his prima facie burden, there was no genuine dispute of material fact as to the lack of "but-for" causation. (Mot. at 17:12–2.) In other words, even if Plaintiff could point to facts showing that the Board's alleged retaliatory animus played some role in the complaints against Plaintiff (he cannot), the outcome of those complaints would have been the same. (*Id.*); *Boquist*, 32 F.4th at 778 ("If there is a finding that retaliation was not the but-for cause of the [adverse action], the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind." (alteration in original)).

Plaintiff's Opposition does not address this argument; he has thus conceded it. *Colonies Partners LP*, 2020 WL 5102160, at *29 n.42. Plaintiff presents no genuine dispute of fact to show that the CEOP—an independent body not affiliated with the Board—would have made a different recommendation. Quite the contrary, the CEOP members unequivocally testified that Plaintiff's misconduct was founded and severe. (Mot. at 17:15–18:2; SUF 46, 48.) There is no "but-for" causation.

### 5. **This Court Should Not Second-Guess the CEOP**

Faced with no evidence of actual retaliation, Plaintiff mounts various broadsides on the investigations into his misconduct or how the CEOP arrived at its recommendations. (Opp. at 6:22–8:1.) Plaintiff effectively invites this Court to independently review the investigations and come to a different result than the CEOP. This is obviously improper.

*First*, it is not the role of a federal court to act as a surrogate decisionmaker for the CEOP. *See, e.g., Ridge Top Ranch, LLC v. U.S. Fish & Wildlife Serv.,* No. CIV. S-13-2462 LKK, 2014 WL 841229, at *15 (E.D. Cal. Mar. 4, 2014) ("[A] 'court cannot lawfully second-guess the agency, unless . . . bad faith is so manifest that the agency's judgments can no longer be trusted.'" (citation omitted)). Plaintiff has no evidence of any bad faith or animus on behalf of the CEOP—he merely

disagrees with its conclusions.

*Second*, if Plaintiff wanted judicial review of the CEOP's recommendations, the proper action would have been to file a writ in state court. Plaintiff did not do so. The Court should decline Plaintiff's request that it reevaluate a County-level proceeding that Plaintiff never appealed or contested.

### B. Plaintiff Cannot Establish Liability Under Section 1983

Defendants' Motion also showed that Plaintiff could not establish a custom, pattern, or practice necessary to bring a *Monell* claim against the County. (Mot. at 18:28–8.) Plaintiff disagrees and argues that he satisfies *Monell* because Chief Laura Lecrivain, the Department representative who concurred with the CEOP's recommendations, is a final policymaker. (Opp. at 12:23–14:18.) But the undisputed evidence shows that Chief Lecrivain was ***not*** a policymaker. (SUF 63.)

At the outset, Plaintiff's Opposition cites to various purported statements by Chief Lecrivain, none of which are part of the factual record, or in the deposition excerpts Plaintiff submitted. (*See* Dkt. No. 105-5, Ex. 34.) Contrary to his assertions, Plaintiff has not submitted any evidence regarding Chief Lecrivain's delegation or lack thereof (Opp. at 12:28), whether there was "protocol in place," (*id.* at 13:5) or any conversations between Chief Lecrivain and County Counsel (*id.* at 13:10–19.) This is likely why the vast majority of Plaintiff's arguments regarding Chief Lecrivain lack any factual citation whatsoever. The Court cannot conclude that Chief Lecrivain is a policymaker based on nonexistent record evidence. *E.g.* Fed. R. Civ. P. 56(c)(1)(A) (noting a party must point to "particular parts of materials **in the record**" (emphasis added)); *Roberts v. Broski*, 979 F. Supp. 746, 753 (N.D. Ill. 1997), aff'd, 186 F.3d 990 (7th Cir. 1999) (noting "It doesn't appear that such evidence exists within the trial record. Accordingly, the court ignores it.").

Despite this lack of submitted evidence, Plaintiff appears to hang his hat on the fact that Chief Lecrivain was the "decision maker" for whether to concur in the CEOP's recommendations. (*E.g.*, Opp. at 12:23–13:1.) Simply because she made a

decision in the course of her job does not mean she is a policymaker for the Department. Millions of government employees make decisions in the course of their jobs on a daily basis—that does not render all of them final policymakers for *Monell* purposes.

Plaintiff provides no case citations to explain **how** Chief Lecrivain is a policymaker—that is because there are none. And his arguments regarding her authority are inherently self-contradictory. On the one hand, Plaintiff claims that Chief Lecrivain was a policymaker for the Department who was capable of rendering a final decision on Plaintiff. But on the other hand, he acknowledges (again, without supporting record evidence) that Chief Lecrivain sought advice from County Counsel regarding what the scope of her role actually was. (*See* Opp. at 13:10–19.)

Plaintiff's argument suffers from another flaw. Even assuming *arguendo* that Chief Lecrivain was a "policymaker," Plaintiff still does not identify what "policy" wronged him. Under the single policymaker exception, Plaintiff is required to identify the final impermissible policy at issue. *See, e.g.*, *Segal v. Los Angeles County*, 852 F.2d 1290, 1988 WL 79481, at *3 (9th Cir. 1988) (unpublished) (plaintiff "must produce some evidence of a county policy"). Allegations of isolated decisions by County employees do not support a *Monell* claim. *Id.*

But that is all Plaintiff points to here—a one-off decision from Chief Lecrivain to concur in a CEOP recommendation. This is not a "policy"; and Plaintiff does not provide any facts about what "policy" Chief Lecrivain created by her concurrence, nor can he. No such policy exists.[3]

---

[3] If the Court decides that Chief Lecrivain was a "policymaker," that would dictate that summary judgment be granted to the County, Board, CEOP, and Office of Inspector General. That is because Chief Lecrivain works for the Department and cannot be deemed a "policymaker" for any of these other County subdivisions. It would also dictate that Chief Lecrivain be dismissed as an individual defendant,

### C.  **Plaintiff Lacks Standing**

Defendants presented undisputed evidence that (1) a "Do Not Rehire" notation is not a bar to employment; and (2) despite knowing this fact, Plaintiff has not reapplied for County employment at any point during this case. (*See* Mot. at 20:3–12.) Predictably, Plaintiff's Opposition responded that reapplying would be "futile." (Opp. at 10:12–15.) He cites to no facts to support this statement.

Although such a bald assertion may have been enough to survive a motion to dismiss, summary judgment requires more. Plaintiff's claim is founded entirely upon the exact type of speculation and hypothetical injury that summary judgment is designed to curtail. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 436 (2021) (a hypothetical injury that may or could occur does not suffice, because the "mere risk of future harm" is not a concrete harm); *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (conclusory statements and "unsupported conjecture [are] not competent evidence" (citation omitted)). Plaintiff has not met his burden to establish standing.

Nor does Plaintiff grapple with the fact that his application was considered and he was interviewed for the position of Chief of Police with LA Metro. (*See* Mot. at 20:13-16.) This undisputed evidence shows the file notation given to Plaintiff by the County does ***not*** prevent him from pursuing his law enforcement career or any other employment opportunities.

Plaintiff's reliance on *Pickern v. Holliday Quality Foods*, 293 F.3d 1133, 1137-39 (9th Cir. 2002), for his futility argument is also misplaced. (Opp. at 10:11-15.) *Pickern* was ***not*** a First Amendment retaliation case. 293 F.3d at 1135-36. The plaintiff there sued for injunctive relief for an alleged violation of Title III of the Americans with Disabilities Act ("ADA"). *Id.* The Ninth Circuit held the plaintiff had standing because he was deterred from visiting the business because of its undisputed ADA violations. *Id.* at 1138-39. *Pickern* has no application here.

---

since she would be acting in her official capacity. Plaintiff cannot have it both ways.

### D. The County Is The Only Proper Defendant

Plaintiff did not oppose the County's argument that summary judgment is proper for the individual defendants and has thus conceded the argument. *Colonies Partners LP*, 2020 WL 5102160, at *29 n.42. The individuals should be dismissed.

As to the redundant County subdivision defendants, Plaintiff cites only a single case from the Eastern District of California where the court refused to dismiss a county sheriff's department, even though the county was also a named defendant. (Opp. at 14:24–27 (citing *Est. of Osuna v. County of Stanislaus*, 392 F. Supp. 3d 1162 (E.D. Cal. 2019).) Plaintiff did not contest any of the cases cited by Defendants from the Central District that held to the contrary. (*See* Mot. at 21:4–9.)

In any event, *Osuna* is not like the facts here. That case turned on whether a sheriff's department is considered a "person" for the purposes of Section 1983. *See Osuna*, 392 F. Supp. 3d at 1170–71. That is not the question here. Defendants' point, which Plaintiff failed to meaningfully address, is that there is no need for redundant government subdivisions in this case where the County is a defendant. If this case proceeds to trial, the County is the only proper defendant.

### III. CONCLUSION

For the reasons stated above and in Defendants' Motion, this Court should grant summary judgment on Plaintiff's First Amendment claim.

DATED: May 5, 2025               Respectfully Submitted,

                                 MILLER BARONDESS, LLP


                                 By:    /s/ *Jason H. Tokoro*
                                        JASON H. TOKORO
                                        Attorneys for Defendants

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,627 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: May 5, 2025           MILLER BARONDESS, LLP

By:   /s/ *Jason H. Tokoro*
      JASON H. TOKORO
      Attorneys for Defendants

732429.6

15

REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT