1  LOUIS R. MILLER (State Bar No. 54141)
   smiller@millerbarondess.com
2  JASON H. TOKORO (State Bar No. 252345)
   jtokoro@millerbarondess.com
3  STEVEN G. WILLIAMSON (State Bar No. 343842)
   swilliamson@millerbarondess.com
4  MILLER BARONDESS, LLP
   2121 Avenue of the Stars, Suite 2600
5  Los Angeles, California 90067
   Tel.: (310) 552-4400 | Fax: (310) 552-8400
6
   Attorneys for Defendants
7

8              UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  ALEX VILLANUEVA,                    CASE NO. 2:24-cv-04979 SVW (JCx)

12          Plaintiff,                  **SUPPLEMENTAL DECLARATION
                                        OF JASON H. TOKORO IN
13      v.                              SUPPORT OF REPLY IN SUPPORT
                                        OF DEFENDANTS' MOTION FOR
14  COUNTY OF LOS ANGELES,              SUMMARY JUDGMENT**
    COUNTY OF LOS ANGELES
15  SHERIFF'S DEPARTMENT, LOS           [*Filed Concurrently with Reply in
    ANGELES COUNTY BOARD OF             Support of Motion for Summary
16  SUPERVISORS, COUNTY EQUITY          Judgment; Reply Separate Statement;
    OVERSIGHT PANEL, LOS                and Evidentiary Objections to
17  ANGELES COUNTY OFFICE OF            Declaration of Alex Villanueva*]
    INSPECTOR GENERAL,
18  CONSTANCE KOMOROSKI,
    MERCEDES CRUZ, ROBERTA              Date:    May 19, 2025
19  YANG, LAURA LECRIVAIN,              Time:    1:30 p.m.
    SERGIO V. ESCOBEDO, RON             Crtrm.:  10A
20  KOPPERUD, ROBERT G. LUNA,
    MAX-GUSTAF HUNTSMAN,                Assigned to the Hon. Stephen V.
21  ESTHER LIM, and DOES 1 to 100,      Wilson and Magistrate Judge Jacqueline
    inclusive,                          Chooljian
22
            Defendants.                 Trial Date:    June 3, 2025
23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX (310) 552-8400

## SUPPLEMENTAL DECLARATION OF JASON H. TOKORO

I, Jason H. Tokoro, declare as follows:

1.      I am an attorney duly admitted to practice before this Court.  I am a partner with Miller Barondess, LLP, counsel of record for Defendants.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify to all of said facts.  I make this declaration in support of Defendants' Reply In Support of Their Motion for Summary Judgment.

**The Parties' Summary-Judgment Filings**

2.      On April 21, 2025, Defendants filed their Motion for Summary Judgment and Memorandum of Points and Authorities in support thereof (the "Motion").  (*See* Dkt. Nos. 89, 89-1.)

3.      Along with the Motion, Defendants also filed numerous supporting declarations and a Compendium of Evidence upon which Defendants' Motion relied.  (*See* Dkt. No. 89-17.)

4.      On April 28, 2025, Plaintiff filed his Opposition to Defendants' Motion.  (Dkt. No. 105.)  In support thereof, Plaintiff filed an Appendix of Exhibits (Dkt. Nos. 105-3 to 105-7) as well as a declaration from Plaintiff.  (Dkt. No. 105-8.)

5.      In his Opposition and supporting pleadings, Plaintiff raised arguments or introduced new purported "facts" that are contradicted by the evidence in this case or by Plaintiff's own prior statements.  Because Plaintiff raised these issues for the first time in his Opposition, Defendants are entitled to introduce targeted responsive evidence on reply.  *Young v. Allstate Co.*, 662 F. Supp. 3d 1066, 1073 (C.D. Cal. 2023) (held that "a party may introduce evidence that directly responds to evidence provided in Opposition papers").

**Plaintiff's Statements Regarding the "Do Not Rehire" Notation**

6.      In his declaration, Plaintiff states, "Everyone in County administration knows what that label means" and that Plaintiff is familiar with the "Do Not Rehire" notation due to his time as Sheriff, where he "served as the head of an agency with

Miller Barondess, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

over 18,000 employees" and "oversaw hiring, promotions, background investigations, and personnel decisions across every division." (Dkt. No. 105-8 ¶ 25.)

7. These statements are contrary to Plaintiff's prior statements, including in his book, in his pleadings, and at deposition. He has repeatedly stated that the file notation was created *after* his time in office, specifically to punish him.

8. In December 2024, while this litigation was ongoing, Plaintiff published an autobiography titled, "Sheriff: Holding the Thin Blue Line in a Deep Blue State." Plaintiff verified that he wrote the book at his deposition. In it, Plaintiff wrote the following about the "Do Not Rehire" notation:

> In essence, this was a brazen form of electioneering, using two expired investigations that had been cleared back in 2022, with no violation of policy as the finding. The puppet Sheriff Luna unlawfully revived them . . . The cases were revived within a week of when I filed the papers, a sham investigation was quickly assembled that excluded any information already submitted in the original investigation, and they turned the previous unfounded investigation into a founded one. ***The kangaroo panel then invented an entirely new category, "Do Not Rehire," something never before used against a department employee, let alone an elected official.***

(Emphasis added.) A true and correct copy of this excerpt from Plaintiff's book is attached hereto as **Exhibit 80**.

9. Plaintiff said the same thing at his deposition. There, Plaintiff was asked whether he was aware of receiving the notation on his file, and what he understood it to mean. Plaintiff testified the notation was created "***solely for this purpose***" and was "***a political construct designed to damage and defame***. That's all it is." A true and correct copy of this excerpt from Plaintiff's deposition is attached hereto as **Exhibit 81**.

10. Plaintiff made similar statements his First Amended Complaint, calling his notation "unprecedented (First Amended Complaint ("FAC") at 3:23), and claiming that "no similar action" had been taken before against public officials (*id.*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

at 3:25).

**Plaintiff's Testimony Regarding the "Closed" Investigations**

11.     Plaintiff has provided numerous contradictory statements regarding his belief that the investigations into his misconduct were closed and then reopened.

12.     At first, Plaintiff claimed that after he learned of the "Do Not Rehire" notation in ***January 2024***, he spoke to former Chief of Professional Standards Ed Alvarez, who stated the Department determined no policy violations occurred and that the complaints by Huntsman and Lim were placed into a "suspense file."  (FAC ¶ 17.)

13.     Then, at his deposition, Plaintiff claimed that the source of this information was a conversation with John Satterfield that occurred sometime around ***July 2022***.  (*See* **Exhibit 81** at 242:8–15.)

14.     Now, in his Opposition—for the first time ever—Plaintiff contends that the investigations were "completed" in ***May 2023*** and then reopened in October 2023.  (Opp. at 6:10–19.)

**Plaintiff's Testimony Regarding His Speech at Board Meetings**

15.     In his declaration and Separate Statement, Plaintiff states that the Board of Supervisors provided him only three minutes of time to speak, and could only speak as a private citizen, while other department heads were given "unlimited time."  (*See* Plaintiff's Separate Statement No. 2; Villanueva Decl. ¶ 14.)

16.     This is false and is contradicted by the testimony of Victoria Pawlowski, who attended those meetings and noted that Plaintiff was given five minutes to speak on any topic he so chose, a privilege that was not afforded to any other department head.  A true and correct copy of Ms. Pawlowski's deposition testimony is attached hereto as **Exhibit 82**.

**Plaintiff's Statement Regarding Ms. Lim's "False" Testimony**

17.     In his Separate Statement No. 23, Plaintiff states that Ms. Lim "falsely claimed it was a mutual decision" for her to stop Tweeting.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

18.    In fact, Ms. Lim testified that it was a "joint" decision where she concurred with Supervisor Solis that she would stop Tweeting.  A true and correct copy of Ms. Lim's testimony is attached hereto as **Exhibit 83**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 5th day of May, 2025, at Los Angeles, California.


/s/ *Jason H. Tokoro*
Jason H. Tokoro

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1

**INDEX OF EXHIBITS TO THE DECLARATION OF JASON H. TOKORO**

2

| Exhibit No. | Description | Pg. No. |
|---|---|---|
| 80. | Relevant excerpts from Plaintiff's book, "Sheriff: Holding the Thin Blue Line in a Deep Blue State." | 7-10 |
| 81. | Relevant excerpts from the February 28, 2025 deposition transcript of Plaintiff | 11-21 |
| 82. | Relevant excerpts from the March 4, 2025 deposition transcript of Veronica Pawlowski (Vol. I) | 22-29 |
| 83. | Relevant excerpts from the March 21, 2025 deposition transcript of Esther Lim | 30-35 |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

# EXHIBIT 80

EXHIBIT 80 - Page 7



EXHIBIT 80 - Page 8

In essence, this was a brazen form of electioneering, using two expired investigations that had been cleared back in 2022, with no violation of policy as the finding. The puppet Sheriff Luna unlawfully revived them, knowing full well the cases were beyond statute date for one, and perhaps more importantly, did not apply to the elected sheriff's office. The cases were revived within a week of when I filed the papers, a sham investigation was quickly assembled that excluded any information already submitted in the original investigation, and they turned the previous unfounded investigation into a founded one. The kangaroo panel then invented an entirely new category, "Do Not Rehire," something never before used against a department employee, much less an elected official. Curiously, the county never attempted this against three elected officials who became convicted felons, including assessor John Noguez, sheriff Lee Baca, and most recently supervisor Mark Ridley-Thomas.

Of course, the Times reporter showed no interest in researching the unprecedented nature of the report, or even the mere fact that the kangaroo panel had their result in October of 2023, but decided to either leak it to the Times back then, or worse, worked with the Times to release it when it would have the greatest

impact on the elections. The COC held a new round of "special hearings" on deputy gangs in the runup to the 2024 Primaries as well, focusing on subpoenaing myself and my undersheriff, Tim Murakami, once again. They showed no interest in subpoenaing the current sheriff at the time, Luna, or my predecessors, Baca, John Scott, or McDonnell. Supervisor Janice Hahn's campaign jumped on the Times article, and blasted out mass emails telling voters that they should not rehire the former sheriff either.

This Times article was a gem in many ways, revealing how the county colluded with the newspaper to defame my reputation on the eve of yet another election, a new October surprise delivered on the eve of voting in the 2024 primary. The convicted felon Blakinger continued the pile-on with this:

> On Wednesday, the Sheriff's Department confirmed to The Times that it upheld the panel's recommendation. Meanwhile, Huntsman said he was "happy" with the finding.

> "I'm glad that Villanueva is no longer the sheriff and, now that he is gone, the facts have been treated in a more fair and objective way,"

EXHIBIT 80 - Page 9



# SHERIFF

### HOLDING THE THIN BLUE LINE IN A DEEP BLUE STATE

This is the true story of Alex Villanueva, who spent four decades in public service, rising through the ranks to become the 33rd Sheriff of Los Angeles County, the largest sheriff's department and the third largest law enforcement agency in the nation. It's a story of overcoming adversity from an early age, leading a career fraught with the danger of speaking truth to power, overcoming obstacles, and winning an improbable race to unseat an incumbent sheriff. This is a modern David versus Goliath story, but then Goliath discovered lawfare…



Alex Villanueva is a unique American politician, from humble origins, who survived a career challenging a corrupt political establishment, overcame adversity, and ultimately succeeded in becoming the 33rd Sheriff of Los Angeles County, unseating an incumbent sheriff for the first time in over a century. Here is his story…



## AMERICAN PUBLISHERS INC.



ISBN 9781917613422

9 781917 613422

90000

EXHIBIT 80 - Page 10

# EXHIBIT 81

EXHIBIT 81 - Page 11

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   WESTERN DIVISION

4

5    ALEX VILLANUEVA,                    No. 2:24-CV-04979
                                         SVW (JCx)

6            Plaintiff,

7        vs.

8    COUNTY OF LOS ANGELES, COUNTY OF
     LOS ANGELES SHERIFF'S DEPARTMENT,

9    LOS ANGELES COUNTY BOARD OF
     SUPERVISORS, COUNTY EQUITY OVERSIGHT

10   PANEL, LOS ANGELES COUNTY OFFICE OF
     INSPECTOR GENERAL, CONSTANCE

11   KOMOROSKI, MERCEDES CRUZ, ROBERT A.
     YANG, LAURA LECRIVAIN, SERGIO V.

12   ESCOBEDO, RON KOPPERUD, ROBERT G.
     LUNA, MAX-GUSTAF HUNTSMAN, ESTHER

13   LIM, and DOES 1 to 100, inclusive,

14

15           Defendants.

     _____

16

17

18       VIDEOTAPED DEPOSITION of ALEX VILLANUEVA

19            LOS ANGELES, CALIFORNIA

20           FRIDAY, FEBRUARY 28, 2025

21                  VOLUME 1

22

23   Reported by
     Daryl Baucum, RPR, CRR, RMR, CSR No. 10356

24

25   Job No. 7184228,  PAGES 1 - 334

                                          Page 1

EXHIBIT 81 - Page 12

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                         WESTERN DIVISION

4

5     ALEX VILLANUEVA,                    No. 2:24-CV-04979

                                          SVW (JCx)

6             Plaintiff,

7         vs.

8     COUNTY OF LOS ANGELES, COUNTY OF

      LOS ANGELES SHERIFF'S DEPARTMENT,

9     LOS ANGELES COUNTY BOARD OF

      SUPERVISORS, COUNTY EQUITY OVERSIGHT

10    PANEL, LOS ANGELES COUNTY OFFICE OF

      INSPECTOR GENERAL, CONSTANCE

11    KOMOROSKI, MERCEDES CRUZ, ROBERT A.

      YANG, LAURA LECRIVAIN, SERGIO V.

12    ESCOBEDO, RON KOPPERUD, ROBERT G.

      LUNA, MAX-GUSTAF HUNTSMAN, ESTHER

13    LIM, and DOES 1 to 100, inclusive,

14

              Defendants.

15

      _____

16

17

18            VIDEOTAPED DEPOSITION of ALEX VILLANUEVA,

19        at Miller, Barondess, 2121 Avenue of the Stars,

20        Suite 2600, Los Angeles, California, beginning

21        at 10:05 a.m., and ending at 5:16 p.m., on

22        Friday, February 28, 2025, before Daryl Baucum,

23        RPR, CRR, RMR, CSR No. 10356.

24

25

                                              Page 2

EXHIBIT 81 - Page 13

```
 1    APPEARANCES OF COUNSEL:

 2

 3       FOR THE PLAINTIFF:

 4

 5            SHEGERIAN & ASSOCIATES

 6            BY:  ALEX DI BONA, ATTORNEY AT LAW

 7            11520 San Vicente Boulevard

 8            Los Angeles, California  90049

 9            310.860.0770

10            ADiBona@ShegerianLaw.com

11

12

13       FOR THE DEFENDANTS:

14

15            MILLER, BARONDESS

16            BY:  JASON H. TOKORO, ATTORNEY AT LAW

17                 STEVEN G. WILLIAMSON, ATTORNEY AT LAW

18            2121 Avenue of the Stars

19            Suite 2600

20            Los Angeles, California  90067

21            310.552.4400

22            JTokoro@MillerBarondess.com

23            SWilliamson@MillerBarondess.com

24

25
```

Page 3

EXHIBIT 81 - Page 14

1    APPEARANCES OF COUNSEL (CONTINUED):

2

3

4         ALSO PRESENT:

5              JON MANUEL, Videographer

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

EXHIBIT 81 - Page 15

```
 1        BY MR. TOKORO:

   14:47:05

 2        Q    Now, are you aware that at some point,

 3    Ms. Lim's complaint was submitted to the County

 4    Equity Oversight Panel, correct?

 5        A    Yes.

   14:47:35

 6        Q    And I'm -- just for ease of reference, I'm

 7    just going to refer to them as the CEOP.

 8             Is that okay with you?

 9        A    Yes.

10        Q    And so you are aware that in -- through

   14:47:43

11    your PRA request that in August of 2023, the CEOP

12    undertook to look at Ms. Lim's allegations, correct?

13        A    Correct.

14        Q    And the CEOP recommended that four of the

15    five allegations be founded, correct?

   14:47:56

16        A    Yes.

17        Q    And that you are also aware that the

18    Department concurred in that recommendation,

19    correct?

20        A    Those in the administration, yes,

   14:48:09

21    shocking.

22        Q    And the recommendation was also to put a

23    do-not-rehire notation at the top of your personal

24    file, correct?

25        A    Yes.                              14:48:23

                                              Page 209
```

```
1           Q    What is your understanding of the
     14:48:23
2      do-not-rehire notation?
3           A    It was created for solely this purpose.
4           Q    So your belief is that prior to you being
5      given the do-not-rehire notation, nobody else at the
     14:48:32
6      County had ever been given it?
7           A    In the Sheriff's Department, no one had
8      ever been given it.
9           Q    And you believe no one else has been given
10     that same notation since you left office?
     14:48:44
11          A    One more person got it now.
12          Q    Who is that?
13          A    Mark Lillienfeld.
14          Q    And what do you understand the
15     do-not-rehire notation means?
     14:49:06
16          A    It's a political construct designed to
17     damage and defame.  That's all it is.
18          Q    That's it?
19          A    And it, obviously, is going to give people
20     cause to say oh, let's not hire them.
     14:49:18
21          Q    Anything else?
22          A    It's negative.  I mean it's a black eye,
23     especially after thirty-six years of faithful public
24     service to get that connotation on your file and
25     then not even being able to defend it or have input      14:49:36
```

Page 210

1          Q    So now, I am confused because I thought

15:36:26

2      you had just said it was a conversation that you had

3      with Ed Alvarez after you got the PRA materials.

4          A    That's what I heard in '22, but fast

5      forward to this do not hire, the PRA request, and

15:36:39

6      then I got specific.  So I went to the source, Eddie

7      Alvarez, and he told me the details.

8          Q    So who told you in 2022 when you were

9      still in office that the investigation ended without

10     any findings of misconduct?

15:36:56

11         A    I believe that was Satterfield.

12         Q    John Satterfield.

13         A    Yes.

14         Q    Your Chief of Staff.

15         A    Yes.

15:37:08

16         Q    He doesn't work in IAB, correct?

17         A    No.

18         Q    He doesn't work at Sanders, Roberts,

19     correct?

20         A    What?

15:37:13

21         Q    Sanders, Roberts, the law firm that was

22     hired --

23         A    No.

24         Q    -- to do the independent investigation,

25     correct?                                          15:37:18

Page 242

1    STATE OF _____)

                                            )  Ss.

2    COUNTY OF _____)

3

4           I, DARYL BAUCUM, a Certified Shorthand

5    Reporter of the State of California, do hereby

6    certify;

7           That the foregoing proceedings were taken

8    before me at the time and place herein set forth,

9    at which time the witness named in the foregoing

10   proceeding was placed under oath; that a record

11   of the proceedings was made by me using machine

12   shorthand which was thereafter transcribed under my

13   direction; and that the foregoing pages contain a

14   full, true and accurate record of all proceedings

15   and testimony to the best of my skill and ability.

16          I further certify that I am neither

17   financially interested in the outcome nor a relative

18   or employee of any attorney or any party to this

19   action.

20          IN WITNESS WHEREOF, I have subscribed my

21   name this 5th day of March 2025.

22

23

24

25   DARYL BAUCUM, CSR No. 10356

                                            Page 334

1    JASON H. TOKORO, ESQ.

2    JTokoro@MillerBarondess.com

3                                        March 5, 2025

4    RE: Villanueva, Alex v. County Of Los Angeles

5    2/28/2025, Alex Villanueva , Volume 1, (#7184228).

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    ___ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12   ___ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20       Contact Veritext when the sealed original is required.

21   ___ Waiving the CA Code of Civil Procedure per Stipulation of

22       Counsel - Original transcript to be released for signature

23       as determined at the deposition.

24   ___ Signature Waived - Reading & Signature was waived at the

25       time of the deposition.

                                                    Page 335

1   __ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2      Transcript - The witness should review the transcript and

3      make any necessary corrections on the errata pages included

4      below, notating the page and line number of the corrections.

5      The witness should then sign and date the errata and penalty

6      of perjury pages and return the completed pages to all

7      appearing counsel within the period of time determined at

8      the deposition or provided by the Federal Rules.

9   _X_ Federal R&S Not Requested - Reading & Signature was not

10     requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 336

# EXHIBIT 82

EXHIBIT 82 - Page 22

CERTIFIED COPY

# Express Deposition Services
## by ExpressNetwork

1605 W. Olympic Blvd., Suite 800 Los Angeles, CA 90015

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

## ALEX VILLANUEVA vs COUNTY OF LOS ANGELES

## VERONICA PAWLOWSKI

### March 04, 2025

Lynn Ann Waters, RMR, CRR, CSR No. 14432, Job No. 6477

EXHIBIT 82 - Page 23

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  WESTERN DIVISION

4

5   ALEX VILLANUEVA,

6

            Plaintiff,

7                                    CASE NO. 2:24-cv
    -vs-                             -04979 SVW (JCx)

8

    COUNTY OF LOS ANGELES, et al.,

9

                  Defendants.

10

11              Deposition of
              VERONICA PAWLOWSKI

12

              TUESDAY, MARCH 4, 2025

13                10:00 a.m.

14

15        Taken via Zoom videoconference

16

    REPORTER: Lynn Ann Waters, RMR, CRR, CSR No. 14432

17

18

19

20

21

22

23

24

25

EXHIBIT 82 - Page 24

```
 1    APPEARANCES:

 2
              ALEX DiBONA, ESQ.
 3            SHEGERIAN & ASSOCIATES, INC.
              11520 San Vicente Blvd.
 4            Los Angeles, CA  90049
              (310) 860-0070,
 5            adibona@shegerianlaw.com

 6
                  On behalf of the Plaintiff;
 7

 8            JASON H. TOKORO, ESQ.
              MILLER, BARONDESS, LLP
 9            2121 Avenue of the Stars
              Suite 2600
10            Los Angeles, CA  90067
              (310) 552-5226,
11            jtokoro@millerbarondess.com

12
                  On behalf of the Defendant.
13

14    ALSO PRESENT:

15         Steven Williamson
           Alex Villanueva
16

17

18

19

20

21

22

23

24

25
```

**EXHIBIT 82 - Page 25**

```
1              Q.   And what subjects do you recall?

2              A.   I recall -- excuse me.  Sorry.

3                   I recall that at some point during

4    my time with the board, the board gave Sheriff

5    Villanueva five minutes at the board of

6    supervisors meetings to address the board on

7    whatever issue he wished to address them.

8              Q.   And do you recall -- sorry.

9                   Do you recall how many times

10   Sheriff Villanueva availed himself of those five

11   minutes?

12             A.   No.

13             Q.   And do you recall what subjects he

14   used those five minutes to speak about?

15             A.   He would speak sometimes about

16   COVID.

17                  He would speak sometimes about if

18   there was an item or motion on the board's agenda

19   that he wanted to speak on, he would speak about

20   that.

21             Q.   Do you recall Sheriff Villanueva in

22   the five minutes he had before the board of

23   supervisors ever directly referencing you?

24             A.   No.

25             Q.   Do you recall Sheriff Villanueva
```

**EXHIBIT 82 - Page 26**

```
 1              A.    No.
 2              Q.    Did you ever hear Sheriff
 3    Villanueva make any reference to Mark Ridley
 4    Thomas's race at any time?
 5              A.    No.
 6              Q.    Just to take a step back.  Separate
 7    and apart from Sheriff Villanueva's comments, what
 8    is the Peace over Violence contract?
 9              A.    Peace over Violence is an
10    organization that does work in the area of
11    domestic violence and intimate partner violence.
12                    And Peace over Violence had a
13    contract with LA Metro to run a hotline.
14              Q.    By the way, just to take a step
15    back for a moment, you said the board of
16    supervisors gave Sheriff Villanueva five minutes
17    to address them; is that your testimony?
18              A.    They gave him five minutes at the
19    beginning of meetings for a period of time.
20              Q.    Apart from Sheriff Villanueva, are
21    you aware of any other head of the department that
22    had a time limit imposed on them in speaking to
23    the board of supervisors?
24              A.    Everyone has a time limit.
25              Q.    And so just to be clear, is it your
```

```
 1    testimony, just to make sure I understand it, is
 2    it your testimony that every department head also
 3    had a five minute limit to speak?
 4                    MR. TOKORO:  Objection.  Asked and
 5    answered.
 6                    You can answer again.
 7            A.    Okay.  Everyone had a time limit.
 8            Q.    Yeah, understood.  Sorry.  Maybe my
 9    question was unclear, I'll just rephrase it.
10                    Did -- to your knowledge, did every
11    department head have the same five minutes or were
12    the time limits different based on who was
13    speaking?
14            A.    Sheriff Villanueva was the only
15    department head who was given the opportunity to
16    speak in this sort of open and free manner.
17            Q.    While you were the senior justice
18    deputy and attended the Tuesday meetings of the
19    board of supervisors, besides Sheriff Villanueva,
20    did any other heads of departments come to address
21    the board of supervisors?
22            A.    Yes.
23            Q.    And do you recall any instance
24    where a head of a department came to address the
25    board of supervisors and they were given a time
```

**EXHIBIT 82 - Page 28**

PAWLOWSKI, VERONICA                                        Page 206

```
 1                    CERTIFICATE

 2                        OF

 3            CERTIFIED SHORTHAND REPORTER

 4                  *    *    *    *

 5

 6

 7            The undersigned Certified Shorthand

 8   Reporter of the State of California does hereby

 9   certify:

10            That the foregoing Deposition was taken

11   before me at the time and place therein set forth,

12   at which time the Witness was duly sworn by me.

13            That the testimony of the Witness and

14   all objections made at the time of the Deposition

15   were recorded stenographically by me and were

16   thereafter transcribed, said transcript being a

17   true and correct copy of the proceedings thereof.

18            In witness whereof, I have subscribed my

19   name, this date:  March 17, 2025.

20

21

22

23

24   _____
     LYNN ANN WATERS, CSR NO. 14432
25
```

**EXHIBIT 82 - Page 29**

# EXHIBIT 83

**EXHIBIT 83 - Page 30**

CERTIFIED COPY



## Express Deposition Services

*by* EXPRESSNETWORK

1605 W. Olympic Blvd., Suite 800 Los Angeles, CA 90015

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

ALEX VILLANUEVA vs COUNTY OF LOS ANGELES

ESTHER LIM

March 21, 2025

Shannon D. Denney, CSR No. 10385, Job No. 6454

EXHIBIT 83 - Page 31

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION


ALEX VILLANUEVA,                        )
                                        )
            Plaintiff,                  )
                                        )
vs.                                     ) No: 2:24-cv-04979
                                        )     SVW (JCx)
COUNTY OF LOS ANGELES, COUNTY OF   )
LOS ANGELES SHERIFFS DEPARTMENT,   )
LOS ANGELES COUNTY BOARD OF        )
SUPERVISORS, COUNTY EQUITY         )
OVERSIGHT PANEL, LOS ANGELES COUNTY)
OFFICE OF INSPECTOR GENERAL,       )
CONSTANCE KOMOROSKI, MERCEDES CRUZ,)
ROBERTA YANG, LAURA LECRIVAIN,     )
SERGIO V. ESCOBEDO, RON KOPPERUD,  )
ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN)
ESTHER LIM, and DOES 1 to 100,     )
inclusive,                              )
                                        )
            Defendants.                 )
_____)


                DEPOSITION OF:  ESTHER LIM



                     March 21, 2025




        REPORTED BY: SHANNON D. DENNEY, CSR No. 10385

EXHIBIT 83 - Page 32

```
 1                      APPEARANCES

 2

 3    For the Plaintiff:

 4         SHEGERIAN & ASSOCIATES, INC.
           BY:  ALEX DIBONA, ESQ.
 5         aDiBona@shegerianlaw.com
           11520 San Vicente Boulevard
 6         Los Angeles, CA  90049

 7

 8    For the Defendants:

 9         MILLER BARONDESS, LLP
           BY:  JASON H. TOKORO, ESQ.
10             STEVEN WILLIAMSON, ESQ.
           jtokoro@millerbarondess.com
11         2121 Avenue of the Stars, Suite 2600
           Los Angeles, CA  90067
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**EXHIBIT 83 - Page 33**

```
 1    not to use it.  And she agreed do so.

 2              You can answer that question, again.

 3              THE WITNESS:  Again, Mr. DiBona, the

 4    discipline was that I not use my social media account.

 5    And so I -- that was the agreement, I would not use my

 6    social media account as part of my discipline.

 7       Q.    MR. DiBONA:  And therefore -- let me ask this

 8    way.

 9              Why did you tell Ms. Herrera that there was a

10    joint decision that you would not make your social

11    media account?

12       A.    I mean, that's part of the discipline that --

13    that Supervisor Solis said, right.  And so I agreed to

14    that discipline, that I would not use my social media

15    account.

16       Q.    And you never told Ms. Diaz-Herrera that you

17    were disciplined, correct?

18       A.    I don't recall in this conversation.

19       Q.    While I'm scrolling, did you ever send Ms.

20    Diaz-Herrera any of the transcripts of the Facebook

21    lives that are referenced?

22       A.    I don't recall sending Ms. Herrera any

23    documents.

24              But I do -- I do refer to them, and talk

25    about them.
```

**EXHIBIT 83 - Page 34**

```
 1   STATE OF CALIFORNIA

 2

 3

 4           I, SHANNON D. DENNEY, CSR 10385, a Certified

 5   Shorthand Reporter in and for the State of California,

 6   do hereby certify that, prior to being examined, the

 7   witness named in the foregoing deposition was by me

 8   duly sworn to testify the truth, the whole truth, and

 9   nothing but the truth; that said deposition was taken

10   down by me in shorthand at the time and place named

11   therein and was thereafter transcribed under my

12   supervision; that this transcript contains a full, true

13   and correct record of the proceedings which took place

14   at the time and place set forth in the caption hereto.

15           I further certify that I have no interest in

16   the event of this action.

17

18   EXECUTED this 1st day of April, 2025.

19

20

21                        Shannon D. Denney

22                        Shannon D. Denney, CSR 10385

23

24

25
```

**EXHIBIT 83 - Page 35**