JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|---|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:**     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [89]

## I. Introduction

Before the Court is Defendants'[1] motion for summary judgment. ECF No. 89. For the following reasons, Defendants' motion is GRANTED.

## II. Background

### A. Factual Background[2]

Plaintiff Alex Villanueva's claims are based on the following series of events:

---

[1] In full, Defendants are: the County of Los Angeles, the County of Los Angeles Sheriff's Department, the Los Angeles Board of Supervisors, the Country Equity Oversight Panel, the Los Angeles County Office of Inspector General, Constance Komoroski, Mercedes Cruz, Roberta Yang, Laura Lecrivain, Sergio V. Escobedo, Ron Kopperud, Robert G. Luna, Max-Gustaf Huntsman, and Esther Lim (collectively, "Defendants")

[2] All facts are undisputed unless otherwise stated and are derived from the parties' briefs and supporting materials. Some of

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

### i.    Plaintiff criticized the Los Angeles Board of Supervisors.

Plaintiff served as Sheriff of Los Angeles County from 2018 to 2022. Plaintiff's Additional Material Facts ("PF") ¶ 1. During his tenure as Sheriff, Plaintiff publicly criticized the Los Angeles Board of Supervisors (the "Board" or "BoS"). PF ¶ 6; Declaration of Plaintiff ("Pl. Decl.") ¶ 5, ECF No. 105-3. Specifically, he criticized various ballot measures, the County's contracts with the companies coordinating the County's COVID-19 testing procedures, and the County's COVID-19 vaccination policy. *Id.*

### ii.    Esther Lim and Max Huntsman filed complaints against Plaintiff.

#### a.    Esther Lim

Esther Lim is a Justice Deputy for Los Angeles County Board Supervisor Janice Hahn. Declaration of Esther Lim ("Lim Decl.") ¶ 1, ECF No. 89-6. Justice Deputies serve as liaisons between the Board of Supervisors and the County's public safety and justice departments, the respective Department heads, and County oversight entities. *Id.* ¶ 3. Lim is a woman of Korean American descent. *Id.* ¶ 4.

On March 8, 2022, Lim filed a complaint against Plaintiff alleging that he violated the County's Policy of Equality ("POE"), which prohibits harassment and discrimination. She alleged in her complaint that Plaintiff publicly referred to her and her fellow Justice Deputies as "20-something, woke individuals, who are basically putting in words what doesn't pass legal muster at all." Compendium of Evidence in

---

these undisputed facts are technically "disputed" by the parties, but the dispute is in name only, as there is not any conflicting evidence. Nothing in this section should be construed as a factual finding; rather, this section is merely background information regarding the instant lawsuit. "To the extent certain facts or contentions are not mentioned in this Order, the Court has not found it necessary to consider them in reaching its decision." *Sarieddine v. Vaptio, Inc.*, 2021 WL 4731341, at *1 (C.D. Cal. June 15, 2021).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

support of Def. Mot. for Summ. J. ("COE") Exhibit 18, page 415. She also alleged that he publicly referred to her as a "flunky." *Id.*

Ms. Lim alleged that Plaintiff made these comments because he disagreed with one of her reports, which outlined the steps families can take to protect themselves from law enforcement harassment. *Id.* Ms. Lim also claimed that he targeted her because of her Asian race. Relatedly, she alleged that Plaintiff "targeted, intimidated, and harassed" another Asian woman, Chief Executive Officer Sachi Hamai. *Id.* Finally, she alleged that as part of his targeting of her, he filed a complaint against her in 2021. Pl. Opp. to Def. Mot. for Summ. J. ("Pl. Opp.") Exhibit 10, ECF No. 105-3 at 107.

### b. Max Huntsman

Max Huntsman is the Inspector General for the County of Los Angeles. Declaration of Max Huntsman ("Huntsman Decl.") ¶ 2. As the Inspector General, his job is to promote independent oversight of the Los Angeles County Sheriff's Department and to promote constitutional policing. *Id.* ¶¶ 2-3.

Huntsman's name given to him at birth is Max-Gustaf Huntsman, and that is the name in the County's official records. COE Ex. 32, page 604. In line with this, a name plaque given to Mr. Huntsman by the County displays "Max-Gustaf Huntsman." Deposition of Mr. Huntsman 127:21-24, ECF No. 105-5 at 66. But Mr. Huntsman does not use the name "Gustaf" in practice. COE Ex. 32, page 560. Rather, he "officially, professionally, and socially" goes by "Max Huntsman," which is the name on his driver's license and passport. COE Exhibit 38, page 604; COE Exhibit 32, page 560. According to Mr. Huntsman, "nobody who knows him" would call him "Max-Gustaf." COE Exhibit 38, page 605.

On March 9, 2022, Huntsman filed a complaint against Plaintiff alleging that he violated the County's Policy of Equality. COE Exhibit 32, page 554. Huntsman alleged that Plaintiff "referred to [him] as Max-Gustaf in public attacks," and that he used the "Gustaf" name as a "dog whistl[e] to the extremists he caters to as the more unusual name might lead some to view [him] as foreign (German or Jewish)." *Id.*

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

After Lim and Huntsman filed their complaint, they briefly sent text messages to each other communicating frustration with the complaint process and pessimism that their complaints would survive the County's bureaucratic process. Pl. Opp. Exhibit 12, ECF No. 105-3 at 118.

### iii.   The County Intake Specialist Unit transferred Lim and Huntsman's complaints to the Sheriff Department.

Lim and Huntsman each filed their complaints against Plaintiff with the County Intake Specialist Unit ("CISU"). COPE Exhibit 19, page 418 (Lim complaint); COE Exhibit 33, page 564 (Huntsman complaint). The County Intake Specialist Unit reviewed both complaints and determined that they did not have jurisdiction over either one, as "the Sheriff's Department has its own equity process by which it internally addresses such complaints." *Id.* It then recommended "that the Sheriff's Department consider conducting an independent inquiry into" the complaints. *Id.*

### iv.   The Sheriff Department's Intake Specialist Unit recommended further investigation.

On March 27, 2022, the Los Angeles County Sheriff's Department's Intake Specialist Unit ("ISU") received Lim and Huntsman's complaints. COE Ex. 21, page 428; COE Ex. 34, page 568. The ISU handles reports of misconduct or violations of Sheriff Department policy by Department personnel. Declaration of Deputy Jonathan Lested ("Lested Decl.") ¶ 3, ECF No. 89-10.

The ISU started by investigating the complaints made by Ms. Lim. COE Ex. 21, page 428. It interviewed Ms. Lim herself and reviewed the available evidence, which mostly consisted of the social media posts where Plaintiff allegedly made disparaging comments about Ms. Lim. *Id.* at 428-436. Upon review of the evidence, the ISU concluded that "the alleged documented conduct warrants further investigation by the [Internal Affairs Bureau's] Equity Investigations Unit." *Id* at 435. It also concluded that Plaintiff may have violated the following provisions of the Policy of Equality: prohibited conduct,

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

discrimination, sexual harassment, harassment (other than sexual), third-person harassment, inappropriate
conduct toward others, and retaliation. *Id.* at 433.

The ISU similarly investigated Mr. Huntsman's complaint. COE Ex. 34, page 568. As with Ms.
Lim's complaint, the ISU interviewed Mr. Huntsman and reviewed any relevant evidence. And similarly,
the ISU concluded that Huntsman's complaint "contains sufficient information to warrant further
investigation by the Equity Investigations Unit." *Id.* at 564. The ISU recommended investigation into the
following potential Policy of Equality violations: discrimination, harassment (other than sexual), third-
person harassment, inappropriate conduct toward others, and "examples of conduct that may violate this
policy and scope of coverage." *Id.* at 574.

> **v.    A third-party law firm investigated Lim and Huntsman's complaints.**

After the ISU recommended further investigation into Lim and Huntsman's complaints, Los
Angeles County hired Sanders Roberts, a private law firm, to investigate the complaints. Defendants'
Uncontroverted Facts ("DUF") ¶ 13, ECF No. 89-2. Christine Diaz-Herrera, who at the time was a senior
associate at Sanders Roberts, led the investigation. Declaration of Christine Diaz-Herrera ("Diaz-Herrera
Decl.") ¶¶ 2, 5, ECF No. 89-5.

To investigate Ms. Lim's complaint, Ms. Diaz-Herrera interviewed Ms. Lim and two other Justice
Deputies: Kyla Cotes and Veronica Pawlowski. Defendants' Statement of Uncontroverted Facts ("DF") ¶
14. These interviews led to the following highlights, all of which were included in Ms. Diaz's report.

Ms. Lim accused Plaintiff of the following: calling her and other Justice Deputies "flunkies," and
"twenty-somethings that don't know any better" (many Justice Deputies are in their 30s or 40s); harassing
the former County CEO, who was also a minority woman; making "negative comments" about Supervisor
Holly Mitchel; publicly calling for investigations into why there are no male Justice Deputies; and opening
up a criminal investigation to intimidate her. COE Ex. 25, pages 471-73.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|---|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

Ms. Pawlowski claimed that Plaintiff: repeatedly made comments about the gender composition of the Justice Deputies; referred to the Justice Deputies as "woke twenty-year-old flunkies;" complained that "all these women" were "running the show;" called the Justice Deputies "young twenty something woke and dumb women;" referred to Supervisor Hilda Solis as "La Malinche" (slang for a "traitor"); and singled out Ms. Lim. *Id.* at 473-76.

Ms. Coates told Ms. Diaz-Herrera that Plaintiff: disparaged the entire Justice Deputies group; called them "woke twenty-somethings that worship at the altar of wokeness;" was "especially awful" to Supervisor Mitchel and Supervisor Solis; told her that he "can tell from your age you are one of those people that hate the police and want to defund us;" and publicly said that he should take the Board of Supervisors out to the shed and beat them. *Id.* at 469-70.

Ms. Diaz-Herrera investigated Mr. Huntsman's complaint the same as she did Ms. Lim's. She interviewed Mr. Huntsman himself and Ms. Pawlowski. DF ¶ 31. Huntsman told Ms. Diaz that Plaintiff, on a radio show, acknowledged that Mr. Huntsman had changed his name and suggested that "someone should look into that." COE Ex. 38, page 605. He also told her that Plaintiff falsely told the Los Angeles editorial board that Mr. Huntsman was a holocaust denier. *Id.* Finally, he reiterated the allegation that Plaintiff referred to him as "Max-Gustaf" as a "dog-whistle" to signal to his base of extremist supporters to "let them know who their current target is." *Id.* at 603.

Ms. Diaz interviewed Ms. Pawlowski to try and corroborate Mr. Huntsman's claims. Ms. Pawlowski said that Plaintiff made comments about Mr. Huntsman "nonstop." *Id.* at 606. She also said that Plaintiff called him "Gustav Huntsman" to allude that he is "some kind of Nazi." *Id.* She believed that Plaintiff's comments regarding Mr. Huntsman's name were meant to reference his national origin. *Id.* at 606.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

### vi.    Plaintiff lost re-election as County Sheriff.

On December 5, 2022, while Ms. Diaz's investigation was ongoing, Plaintiff lost his bid for re-election as Sheriff of Los Angeles County. First Amended Complaint ¶ 13.

### vii.    Plaintiff refused to interview with Ms. Diaz

On June 29, 2022, the Sheriff's Department notified Plaintiff that he was the subject of an administrative investigation into allegations that he violated the Policy of Equality by engaging in discrimination, harassment, and retaliation. DF ¶ 29. Later, Plaintiff received two requests to interview him regarding those allegations. *See* COE Ex. 24, page 454.

On January 9, 2023, Plaintiff contacted Ms. Diaz-Herrera and asked her to provide him with her interview questions in writing and a description of the allegations against him. *Id.* Ms. Diaz explained that he faced allegations of discrimination, sexual harassment, discriminatory harassment, third person harassment, inappropriate conduct towards others, and retaliation. *Id.* But she did not provide him with the interview questions, explaining that "it is not our practice to submit questions in advance of the interview." *Id.* at 451. Plaintiff refused to accept this and responded that any potential interview "will be on my terms." *Id.* at 450. Neither party changed their positions, so Ms. Diaz was never able to interview Plaintiff. *See id.* at 449-454.

|  |  | : |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

> viii. **The law firm finished its report, and the Sheriff Department's Internal Affairs Bureau compiled the case.**

In sometime around May or June of 2023,[3] Sanders Roberts sent its completed investigation files for the Lim and Huntsman's complaints to the Sheriff Department's Internal Affairs Bureau ("IAB"). COE Ex. 26, page 538. The report summarized Roberts' investigation into Ms. Lim and Mr. Huntsman's complaints. On July 5, 2023, Lieutenant Ann Devane took over the IAB investigation. *Id.* After taking over, Devane began the process of putting together a case file. *Id.*; Declaration of Ann Devane ("Devane Decl.") ¶ 19, ECF No. 89-7. This involved reviewing the investigation materials, transcribing Lim and Huntsman's interviews, pulling the required documents, requesting Plaintiff's training record, and reviewing the Sanders Roberts reports to ensure their accuracy. *Id.* Devane conducted this process during August and September of 2023. COE Ex. 26, page 538.

> ix. **Plaintiff announced he was running for Los Angeles Board of Supervisors.**

On September 13, 2023, Plaintiff publicly announced his candidacy for the Los Angeles County Board of Supervisors. PF ¶ 30.

> x. **IAB completed its case file and sent its reports to the County Equity Oversight Panel.**

On September 26, 2023, Lieutenant Devane finished compiling the case reports for the Lim and Huntsman complaints. COE Ex. 26, page 538. She submitted the case reports to IAB Captain Ron Kopperud for review. *Id.* On October 2, 2023, he approved the Huntsman and Lim case files. *Id.*

---

[3] There is some dispute as to whether the report was completed on May 15, 2023, or June 14, 2023. This difference is immaterial and does not affect the Court's reasoning in this order.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

xi.     **The County Equity Oversight Panel found that the allegations against
Plaintiff were founded.**

The County Equity Oversight Panel ("CEOP" or the "Panel") is an independent oversight body
comprised of employment law experts with the authority and responsibility for reviewing Policy of
Equality investigations and making recommendations to County Department Heads concerning
dispositions and discipline. Declaration of Constance Komoroski ("Komoroski Decl.") ¶ 2.

On October 17, 2023, the Panel met to consider the complaints filed by Lim and Huntsman alleging
that Plaintiff violated the Policy of Equality. DF ¶ 45. The Panel consisted of Constance Komoroski,
Mercedes Cruz, and Roberta Yang. Komoroski Decl. ¶ 3.

The Panel reviewed the case file put together by IAB (which contained the law firm investigative
report from Sanders Roberts) and concluded that all but one of the alleged Policy of Equality violations
were "founded." *Id.* ¶ 4; Declaration of Mercedes Cruz ("Cruz Decl.") ¶ 4, ECF No. 89-13; Declaration
of Roberta Yang ("Yang Decl.") ¶ 4, ECF No 89-15. Specifically, the Panel found that the charges of
discrimination, discriminatory harassment (based on gender and ethnicity), third person harassment (based
on gender and ethnicity), inappropriate conduct toward others (based on gender and ethnicity) and
retaliation (based on gender and ethnicity) were founded. COE Exhibit 31, page 550. And they found that
the charge of sexual harassment was unfounded. *Id.* As a result of these findings, the Panel recommended
that a "Do Not Rehire" notation[4] be put at the top of Plaintiff's employment file. *Id.*

---

[4] There is much dispute as to what this means. Defendants contend that a "Do Not Rehire" notation is just a "flag" in an
employment file letting hiring representatives know to check out the candidate's investigation history before hiring. Def. Mot.
for Summ. J. ("Mot.") at 8. Plaintiff disagrees with this characterization. He argues that "Do Not Rehire" is a literal instruction
that prevents County employers from hiring him under any circumstance. Pl. Decl. ¶ 25. The Court does not need to resolve
this conflict. Even if the Court adopted Plaintiff's literal interpretation, it would still grant summary judgment for Defendants.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|---|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

In coming to their conclusion that most of the allegations against Plaintiff were founded, the members of the Panel gave no consideration to Plaintiff's criticism of the Board of Supervisors. In sworn declarations, each member of the Panel declared that they did not consider the ballot measures Plaintiff criticized, his criticism of certain County contracts, or his criticism of the County's vaccine policy. Komoroski Decl. ¶¶ 13-19; Cruz Decl. ¶¶ 13-19; Yang Decl. ¶¶ 13-19. Likewise, they declared that they gave no consideration to Plaintiff's recent announcement that he was seeking election to the Board of Supervisors. Komoroski Decl. ¶¶ 20-21; Cruz Decl. ¶¶ 20-21; Yang Decl. ¶¶ 20-21.

The Panelists further declared that none of the Supervisors on the Board were present at the October 17, 2023 meeting. Komoroski Decl. ¶ 7; Cruz Decl. ¶ 7; Yang Decl. ¶ 7. Nor did any Supervisors have any involvement with or input into the Panel's decision to find all but one of the allegations against Plaintiff "founded." *Id.* The same goes for their decision to place a "Do Not Rehire" notation in Plaintiff's file. *Id.*

            xii.    **The Los Angeles Times published a story about the Huntsman complaint.**

On November 2, 2023, an employee at the Los Angeles Times served the Los Angeles County Sheriff's Department with a Public Records Act request for any findings regarding allegations that Plaintiff discriminated against Ms. Lim or Mr. Huntsman. COE Exs. 63, 64, pages 962-963. The Sheriff's Department submitted a redacted copy of the investigation findings. COE Ex. 64, page 963. On January 31, 2024, the Los Angeles Times published a story about the Huntsman complaint and the Panel's findings regarding his allegations. Decl. of Jason Tokoro ("Tokoro Decl.") ¶ 105, ECF No. 89-3.

|  |  | : |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|---|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

### B. Procedural History

On June 13, 2024, Plaintiff brought claims against Defendants, alleging seven different causes of action: (1) violation of Constitutional Due Process; (2) violation of the First Amendment; (3) violation of California Government Code section 3060; (4) defamation, libel, and slander; (5) coerced self-defamation; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress. *Id.* at 1, ECF No. 1. In this initial complaint, Plaintiff's theory of First Amendment retaliation was that Defendants placed him on the "Do Not Rehire" list in retaliation for him filing a complaint against Esther Lim in 2021. *See id.*

Defendants moved to dismiss Plaintiff's initial complaint. ECF No. 30. The Court granted Defendants' motion without prejudice on September 20, 2024. ECF No. 45.

Plaintiff filed his First Amended Complaint on September 30, 2024. ECF No. 46. This new complaint alleged a new theory of First Amendment retaliation. Instead of alleging that Defendants retaliated against Plaintiff for filing a complaint against Esther Lim, he alleged that Defendants retaliated against him for criticizing various Board of Supervisor policies, ballot measures, and contracts. *Id.*

Defendants moved to dismiss Plaintiff's FAC, but the Court denied the motion. ECF No. 59. It also bifurcated Plaintiff's state law claims from his First Amendment claim, which was the only federal claim in his FAC. *Id.*

Defendants now move for summary judgment on Plaintiff's claims. ECF No. 89. Plaintiff opposes. ECF No. 105.

### III.  Legal Standard

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "On an issue as to which the nonmoving party will have the burden of proof . . . the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must draw all inferences from the facts in the non-movant's favor, *id.* at 255, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremukun*, 509 F.3d at 984.

## IV.    Evidentiary Objections

Both parties make dozens of evidentiary objections to the evidence presented by the other side. A "trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Accordingly, a district "must . . . rule on evidentiary objections that are material to its ruling." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

That said, there are some evidentiary objections best left for trial, specifically objections "focus[ed] on the admissibility of evidence's form." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of evidence's form. We instead focus on the admissibility of its contents."). Additionally, the Court "need not address boilerplate evidentiary objections that the parties themselves deem unworthy of development." *Ameretto Ranch Breedables v. Ozimals Inc.*, 907 F. Supp. 2d 1080, 1081 (N.D. Cal. 2012). An evidentiary objection requires more than the bare assertion of hearsay.

### A. Plaintiff's Evidentiary Objections

With that established, the Court turns first to Plaintiff's evidentiary objections. Plaintiff makes vague and boilerplate objections to portions of the declarations of Jason Tokoro, Max Huntsman, Esther Lim, Christine Diaz-Herrera, Ann Devane, Kyla Coates, and Ron Kopperud. *See* ECF No. 105-2. For the most part, the Court does not rely on any of the objected to evidence. Because this evidence is not "material to its ruling," the Court does not need to consider these objections.

The only potentially relevant objection is Plaintiff's objection to paragraph 105 of Jason Tokoro's declaration, which declares that the Times published a story about the Huntsman complaint on January 31, 2025. Declaration of Jason Tokoro ("Tokoro Decl.") ¶ 105, ECF No. 89-3. Plaintiff objects to this paragraph due to "lack of personal knowledge," "lack of foundation," and "hearsay." Pl. Obj. to Def. Evidence at 33, ECF No. 105-2.

The Court overrules this objection. First and foremost, that the LA Times published an article about Mr. Huntsman's complaint in January 2024 is immaterial to the Court's ruling. The Court mentions the Times publication simply to provide context to the reader.

Second, the objection otherwise lacks merit. To start, Plaintiff's objection is impermissibly boilerplate and vague. It is almost word for word the same objection that he makes to dozens of Defendants' declarations.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|---|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

Finally, Plaintiff's hearsay objection is incorrect. Defendants bring evidence of the Times
publication to explain how the Huntsman allegations and the Panel's "Do Not Rehire" notation became
public. They do not use the Times story as proof that its contents are true. Defehdahts thus do not use the
Times story "to prove the truth of the matter asserted" in the story. *See* Fed. R. Evidence 801.

### B. Defendants' Evidentiary Objections

Defendants make several evidentiary objections, all to statements contained within Plaintiff's
declaration. However, none of the objected to statements are material to the Court's ruling. Moreover,
even if the Court overruled all of Defendants' objections, it would still grant summary judgment in their
favor for the reasons explained below. Accordingly, the Court does not need to address these objections.

### V.    Discussion

### A. Standing

"The question of whether a party has standing to sue under Article III is a threshold issue that must
be addressed before turning to the merits of a case." *Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023)
(citing *Horne v. Flores*, 557 U.S. 433, 445 (2009)). Standing requires three elements: "the plaintiff must
have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,
and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S.
330, 338 (2016) (citations omitted). "At the summary judgment stage, a plaintiff must offer evidence and
specific facts demonstrating each element of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th
1053, 1058 (9th Cir. 2023) (cleaned up).

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally
protected interest that is concrete and particularized and actual or imminent, not conjectural or

|  |  | : |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|---|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

hypothetical." *Spokeo*, 578 U.S. at 339. To be concrete and particularized, the injury must be "real" and "must affect the plaintiff in a personal and individual way." *Id.* at 339-40.

Here, the alleged injury-in-fact is the Panel's placement of a "Do Not Rehire" notation on his employment file. He argues that this "not only harms his political prospects but makes him effectively unemployable in any future public role." Pl. Opp. at 9.

But Plaintiff brings no evidence to support these claims. He supplies no evidence that the "Do Not Rehire" notation affected him in any way. No evidence that his political prospects have suffered. No evidence that his employment prospects have suffered. Not any evidence that he has applied for a job with the County, is deterred from applying for a job from the County, or even desires to be employed by the County again. This last deficiency is especially fatal. It is hard to imagine how being placed on a Do Not Rehire list could serve as an injury if Plaintiff does not desire to be rehired.

Of course, Plaintiff made these allegations in his First Amended Complaint. It was those allegations that gave the Court cause to find standing at the motion to dismiss stage. Plaintiff alleged that he desired to apply for at least two different County positions but did not do so because any application would be futile given the Do Not Rehire notation on his file. FAC at 6.

But now its summary judgment. At summary judgment, "the plaintiff can no longer rest on . . . 'mere allegations.'" *Lujan v. Defs. of* Wildlife, 504 U.S. 555, 561 (1992). Rather, summary judgment requires "evidence and specific facts demonstrating" Plaintiff's injury. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) (cleaned up). He brings none.

This is an especially glaring omission given that Plaintiff submitted a 33-paragraph long declaration in support of summary judgment. *See* Pl. Decl., ECF No. 105-3 at 9-23. But not one of these 33 paragraphs asserts that Plaintiff desires to be employed by the County again. Given that the Court addressed the importance of this evidence at length at the motion to dismiss stage, Plaintiff's omission could hardly be considered an oversight.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|----------|----------------------|------|--------------|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

Accordingly, because Plaintiff fails to establish an injury-in-fact, he does not have standing to bring his claims, and the Court lacks subject matter jurisdiction over this case. Regardless, for the sake of completeness, the Court will analyze Plaintiff's First Amendment retaliation claim below.

**B. First Amendment Retaliation**

Plaintiff brings claims for retaliation in violation of the First Amendment under 42 U.S.C. § 1983. In broad strokes, his theory of the retaliation is that Defendants placed Plaintiff on the Do Not Rehire list as retaliation for publicly critiquing the Board of Supervisors, and that the findings of the Huntsman and Lim investigations were merely pretextual.

"To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in a constitutionally protected activity; (2) as a result, he was subject to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

        **i.**        **Plaintiff fails to show a substantial causal relationship.**

The Court need not analyze the first two elements of the First Amendment retaliation test, as Plaintiff's claim fails on element three: he does not bring evidence sufficient to support a jury finding that there is a substantial causal relationship between his criticism of the Board of Supervisors and the Panel putting a "Do Not Rehire" notation on his employment file.

To "establish the third prong of the prima facie case for First Amendment retaliation—which requires the plaintiff to show a causal relationship between the protected conduct and the material adverse action—the plaintiff must show that the 'protected conduct played a part, substantial or otherwise,' in the

|  |  | : |  |
|--|--|---|--|
|  | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

defendant's wrongdoing.'" *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (emphasis in original). "Specifically, it must be a 'but-for' cause, meaning the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* "

For the following reasons, the Court holds that Plaintiff fails to bring evidence sufficient to create a genuine dispute of fact on this issue.

### a. Plaintiff brings no direct evidence of retaliation.

To start, Plaintiff brings no direct evidence of retaliation. He presents nothing to suggest that the County Equity Oversight Panel—the body that imposed the "Do Not Rehire" designation—acted because of his criticism of the Board of Supervisors. In fact, he brings no evidence that the Panel members *even knew about his criticism*. Indeed, the investigative materials they reviewed—the reports from Sanders Roberts and the IAB—contained no references to Plaintiff's critiques of the Board's ballot measures, vaccine policies, or third-party contracts.

Plaintiff similarly fails to present any evidence that the investigations into the Lim and Huntsman complaints were motivated by retaliation. These complaints were investigated by an independent law firm, as well as two investigative units *within the Sheriff's Department*: the ISU and the IAB. Plaintiff offers no evidence suggesting that any of these entities were aware of his criticism, disagreed with it, or, more importantly, that his criticism had any impact on their investigations.

The available evidence suggests the opposite. Ms. Diaz-Herrera (the senior associate from Sanders Roberts investigating the case), Deputy Jonathan Lested (a deputy working for the ISU), Lieutenant Ann Devane (Team Lieutenant of the Policy of Equality in charge of the Huntsman and Lim investigations), and Commander Ron Kopperud (Captain of the Internal Affairs Bureau) each submitted sworn declarations on the matter. Lested Decl. ¶¶ 22-35; Diaz-Herrera Decl. ¶¶ 49-60; Devane Decl. ¶¶ 31-44;

|  |  | : |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|---|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

Kopperud Decl. ¶¶ 28-39. Each declaration stated Plaintiff's criticism of the Board was not discussed or considered. Nor was the Board involved in their investigation. And sure enough, neither Sanders Roberts' report nor the IAB's case file included any information about Plaintiff's criticism of the Board.

Finally, Plaintiff brings no evidence that Ms. Lim and Mr. Huntsman submitted complaints against him in retaliation for his criticism of the Board of Supervisors. At most, Plaintiff makes a few assertions in his statement of facts, but they are wholly unsupported by evidence. For example, Plaintiff asserts that "The Board of Supervisors retaliated against Villanueva for his speech by instructing Max Huntsman to explore all possible avenues to remove him from office." PF ¶ 11. But in support, Plaintiff points to unrelated exhibits and deposition testimony that in no way support that assertion. *See* Deposition of Max Huntsman 161:15-25, 162:1-13, ECF No. 105-5 at 72-73. Plaintiff makes similarly unfounded statements arguing that Lim and Huntsman "coordinated their complaints, admitted wanting them to become public, and agreed to 'support each other' to maximize their impact." Pl. Opp. at 11 (citing PF ¶¶ 12-14). As with his allegation that the Board instructed Huntsman to file his complaint, these allegations are wholly unsupported by evidence. *See* PF ¶¶ 12, 13, 14 (citing to deposition testimony and text messages that plainly do not support Plaintiff's assertions).

### b. Plaintiff does not bring sufficient circumstantial evidence of retaliation.

Plaintiffs can establish First Amendment retaliation through "circumstantial evidence." *Boquist*, 32 F.4th at 77. Historically, courts in the Ninth Circuit have considered three types of circumstantial evidence: (1) "proximity in time between the protected speech and the adverse action," (2) "the defendant's expression of opposition to the protected speech," and (3) "evidence that the defendant proffered false or pretextual explanations for the adverse action." *Id.* Plaintiff fails to bring convincing evidence in any category.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|---|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

### 1.  Proximity in time

"[P]roximity in time between the protected action and the allegedly retaliatory employment decision such that a jury could logically infer that the plaintiff was terminated in retaliation for his speech" can serve as circumstantial evidence of retaliation. *Howard v. City of Coos Bay*, 871 F.3d 1032, 1045 (9th Cir. 2017). But here, the timing works against Plaintiff. He criticized the Board of Supervisors between 2020 and 2022, with most of his criticism coming in 2020 and 2021. *See* Pl. Decl. ¶¶ 5-10. The Panel did not place a Do Not Rehire notation in his file until late 2023. The multi-year gap between Plaintiff's protected speech and the adverse action against him is too large to serve as circumstantial evidence of a retaliatory motive. *Cf. Howard*, 871 F.3d at 1045 (explaining that "speech which occurred within three to eight months of the adverse employment action is easily within a time range that can support an inference of retaliation" and further noting that "an eleven-month gap" could "support an inference" of retaliation).

The timing of Plaintiff's speech and the adverse action taken against him is especially inconsistent with retaliation given that he ran for re-election in late 2022. This was after Huntsman and Lim had filed their complaints, and after Plaintiff had criticized the Board. So, if Defendants truly desired to retaliate against Plaintiff by affirming the complaints against him, surely they would have done so in the midst of his Sheriff re-election campaign.

### 2.  Defendants' expression of opposition to Plaintiff's speech

Opposition to the protected speech can, under certain circumstances, serve as circumstantial evidence of a causal relationship between a plaintiff's protected speech and a defendant's adverse action. And to be sure, there is at least indirect evidence that the Board of Supervisors opposed Plaintiff's speech. After all, Plaintiff criticized the Board's policies. It is only natural to oppose criticism of oneself.

Not only can opposition be inferred, but there are concrete examples of the Board expressing opposition towards Plaintiff. For example, in October 2020, two Supervisors authored a memorandum criticizing the way Plaintiff ran his department and calling for an investigation into how he could be legally

|  | : |  |
|---|---|---|
| Initials of Preparer |  | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|----------|----------------------|------|--------------|

| Title | *Alex Villanueva v. County of Los Angeles et al.* |
|-------|---------------------------------------------------|

removed from office. Pl. Opp. Ex. 1, ECF No. 105-3 at 37. Similarly, Justice Deputies (who work for the Board of Supervisors) such as Esther Lim have criticized Plaintiff's behavior as inappropriate (for example, by filing the complaint at issue in this case). And in 2022, the Board of Supervisors issued a memorandum disapproving of Plaintiff's critique of their COVID-19 policies. Pl. Opp. Ex. 7, ECF No. 105-3 at 88.

But Plaintiff fails to connect this opposition to the adverse action taken against him. In the normal employment-retaliation context, this is a straightforward task. That an employer opposes an employee's speech and then later takes adverse action against them certainly serves as circumstantial evidence that the former caused the latter.

This case is not so straightforward. The entity opposing Plaintiff's speech, the Board of Supervisors, is not the same entity that punished him. That would be the County Equity Oversight Panel. In fact, the Board is not even the entity that investigated the complaints against him. That was a third-party law firm and two investigative units *within Plaintiff's own department*. Accordingly, that the Board opposed Plaintiff's criticism does not naturally mean that any adverse action taken against him was retaliatory, as they did not necessarily play any part in the decision to take adverse action.

To bridge this gap, Plaintiff needs to bring evidence that the Board's opposition somehow influenced the investigation into Lim and Huntsman's complaints or the Panel's conclusion that the complaints against him were founded. He brings evidence of neither. Nor does he bring any evidence that the investigative entities or the Panel expressed any opposition to Plaintiff's criticism of the Board.

### 3. Pretextual Explanation

Alternatively, Plaintiff can bridge the gap between the Board's opposition to his speech and the Panel's conclusion regarding the complaints against him by showing that the Panel's conclusion was

| Initials of Preparer | : PMC |
|----------------------|-------|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|----------|----------------------|---|------|--------------|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

pretextual.[5] This concept is well recognized by the courts, which have held that evidence that "the defendant proffered false or pretextual explanations for the adverse action" can serve as circumstantial evidence of a causal relationship between the plaintiff's speech and the adverse action. *Boquist*, 34 F.4th at 777. "Pretext may be shown when the stated reasons for an adverse employment action are demonstrably false or, even if true, are insufficient to justify the type of action taken by the employer." *James v. City of Apache Junction*, No. 23-cv-00832, 2025 WL 345363, at *7 (D. Ariz. Jan. 30, 2025) (citing *Allen v. Ironon*, 283 F.3d 1070, 1078 (9th Cir. 2002)).

Critically, that Plaintiff believes the employer's action "was faulty in some way" is insufficient to render an explanation pretextual. *Risby v. Nielsen*, 768 F. App'x 607, 711 (9th Cir. 2019). Even if the decision to impose an adverse action was flawed, it is enough that "an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). Rather, to establish that an explanation was pretextual, "the employee must demonstrate such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence[.]" *Dep't of Fair Em't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011).[6]

---

[5] This is what courts require in analogous contexts. For example, in retaliatory prosecution cases, "the decision to bring charges is . . . made by a prosecutor," meaning, like here, "the official with the malicious motive does not carry out the retaliatory action himself." *Nieves v. Bartlett*, 587 U.S. 391, 400 (2019). "To account for this 'problem of causation' in retaliatory prosecution claims," courts "adopted the requirement that plaintiffs plead and prove the absence of probable cause for the underlying criminal charge." *Id.* The same standard applies here. To account for the fact that it is the Panel, not the Board, that imposed punishment on Plaintiff, he can show that the Panel's finding against him was pretextual.

[6] While *Lucent Techs.* evaluates claims of employment discrimination, rather than First Amendment retaliation, both causes of action can be established by showing that an employer's explanation was pretextual. Indeed, the Ninth Circuit has noted that Title VII and First Amendment retaliation are "analogous" when it comes to proving that a protected factor (whether it be an employee's race or protected speech) was a substantial factor motivating an employer's adverse action. *Anthoine v. N Cent. Ctys. Consortium*, 605 F.3d 740, 751 (9th Cir. 2010).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|----------|----------------------|------|--------------|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

Plaintiff fails to satisfy this burden. He essentially makes four arguments: (1) the timing of the Panel's decision is suspicious; (2) the investigation into Lim and Huntsman's complaints was flawed; (3) Lim and Huntsman's complaints were baseless; and (4) the Panel's decision process was "a sham." Pl. Opp. at 7. None are persuasive.

**First**, the timing of the Panel's decision does not raise red flags. Plaintiff argues that Defendants delayed decision on the complaints against him until after he announced his candidacy for the Board of Supervisors. Pl. Opp. at 7. But the evidence rebuts this contention. After Sanders Roberts completed its report around May or June of 2023, the IAB worked steadily on the report until it was approved by the IAB Captain on October 2, 2023. *See* COE Ex. 26, page 538. For example, IAB activity logs show that during that period, Lieutenant Ann Devane reviewed the investigation materials, transcribed the relevant interviews, pulled required documents, requested Plaintiff's training record, and reviewed the law firm's investigative reports. COE Ex. 26, page 538. In short, the IAB did not delay decision on Plaintiff's complaints—it worked steadily according to normal processes to prepare case files for the Panel's review.

The timing of the Los Angeles Times' reporting on Mr. Huntsman is also not evidence that the Panel's decision was pretextual. Yes, the Los Angeles Times reported on Mr. Huntsman's complaint at a very inconvenient time for Plaintiff: right before the Board of Supervisors election. But neither the Panel, nor any other Defendants, had anything to do with the timing of the Times article. The County provided the Times with the findings of the Lim and Huntsman investigations as it was required to by law under the Public Records Act. COE Exs. 63, 64, pages 962-93. It had no input into when the Times decided to publish an article about those materials.[7]

---

[7] The LA times article is generally irrelevant to Plaintiff's First Amendment claims. Plaintiff needs to establish a causal connection between his protected speech (i.e., his criticism of the Board) and the adverse action taken against him (his placement on the Do Not Rehire list). The LA Times article is not relevant to this causal connection, as it was published *after* the Panel marked Plaintiff with the Do Not Rehire notation. Nor could the LA Times article itself constitute an adverse action that could serve as the basis for a retaliation case, as "criticism or 'bad-mouthing' does not constitute an adverse employment action sufficient for a First Amendment retaliation claim." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 779 (9th Cir. 2022); *see also Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) ("It would be the height of irony, indeed, if

|  | : |
|--|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|---|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

**Second**, Plaintiff's argument that the investigation into the Huntsman and Lim's complaints was flawed is irrelevant to whether the Panel's conclusion was pretextual. Plaintiff claims that the law firm investigating the complaints against Plaintiff did not record their interview of Kyla Coates, a Justice Deputy who was a witness in the Lim investigation, despite explicit instructions to do so. PF ¶ 16. Not only that, but that Ms. Diaz-Herrera, the senior associate investigating the case, "falsely testified that it was recorded." *Id.* Beyond this specific contention, Plaintiff also contends that multiple interviewees made false statements during the investigation.

As a threshold matter, his allegation regarding Coates' interview is only partially supported. Yes, Diaz-Herrera testified that she was informed by IAB that it is best practices to record all interviews. Pl. Opp. Ex. 25, 35:8-18, ECF No. 105-4 at 147. But there is no evidence that she denied an explicit instruction regarding Ms. Coates interview, and there is no evidence that Ms. Diaz-Herrera provided any false testimony. Moreover, while there was no audio recording of Ms. Coates' interview, Sanders Roberts' report still contained a detailed summary of the interview. COE Ex. 25, page 468-69.

More importantly, this dispute regarding the Coates interview and the accuracy of interviewee statements is immaterial. The question is whether the actions taken by ***the Panel*** were pretextual. The Panel did not have information about the ins and outs of the investigative process when they reviewed Ms. Lim and Mr. Huntsman's case files. They would not know if certain investigative procedures were not practiced. They would not know if some of the statements in the interviews were false. The Panel only had the evidence presented in the report, which, as explained below, was not so sparse that their conclusions must be pretextual.

**Third**, the Panel's decision, standing alone, does not establish that its actions were pretextual. While the evidence against Plaintiff may be characterized as thin, that a decision is "foolish or trivial or even baseless" does not, by itself, demonstrate pretext. *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054,

---

mere speech, in response to speech, could constitute a First Amendment Violation.").

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | | Date | May 15, 2025 |
|---|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | | |

1063 (9th Cir. 2002). To qualify as pretext, the Panel's conclusion must be so "inconsistent, incoherent, or contradictory" that a reasonable jury could find that the employer did not "honestly believe its reason for its actions." *Id.* (cleaned up). That standard is not met here.

The record shows that the Panel reached its decision after a review of findings by the Internal Affairs Bureau and an independent third-party law firm. Based on that review, the Panel determined that Plaintiff violated several provisions of the County's Policy of Equality, including: Discrimination, Discriminatory Harassment (based on gender and ethnicity), Third-Person Harassment (based on gender and ethnicity), Inappropriate Conduct Toward Others (based on gender and ethnicity), and Retaliation (based on gender and ethnicity). COE Ex. 31, page 550.

These Policy of Equality policies are defined as follows:

- **Discrimination:** "Disparate or adverse treatment of an individual based on or because of that individual's" protected characteristic. COE Ex. 25, page 530.
- **Harassment:** "Harassment is conduct which has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, offensive, or abusive work environment, and a reasonable person subjected to the conduct would find that the harassment so altered working conditions as to make it more difficult to do the job." *Id.* at 532.
- **Third-Person Harassment:** "Third party harassment is indirect harassment of a bystander, even if the person engaging in the conduct is unaware of the presence of the bystander." *Id.* at 533.
- **Inappropriate Conduct Toward Others:** "Inappropriate conduct towards others is any physical, verbal, or visual conduct based on or because of any of the protected characteristics described in this policy, when such conduct reasonably would be considered inappropriate for the workplace." *Id.* at 534.
- **Retaliation**: "An adverse employment action against another for reporting protected incident, filing a complaint of conduct or opposing conduct that violates this policy or

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

related state or federal law, participating in an investigation, administrative proceeding, or
otherwise exercising their rights or performing their duties under this policy or related state
or federal law." *Id.* at 535.

The evidence before the Panel—while perhaps not overwhelming—was not "implausible,"
"inconsistent," "incoherent," or "contradictory." It included, for example, testimony and documentation
supporting claims of gender-based harassment. Ms. Lim's case file noted that Plaintiff made derogatory
comments about the Justice Deputies, including remarks such as "all these women" were "running the
show" and referring to them as "young twenty-something woke and dumb women." COE Ex. 25, pages
473-76.

There was also evidence supporting allegations of racial harassment. Plaintiff allegedly referred to
Supervisor Hilda Solis, a woman of color, as "La Malinche"—a term associated with betrayal and, in this
context, interpreted by some as a racial slur. Plaintiff was also said to have "singled out" Ms. Lim, the
only Asian American female Justice Deputy, as well as made disparaging remarks toward the former
County CEO, also a woman of color. COE Ex. 25, pages 473-76.

Additionally, the case file reflects general disparagement of staff, with Plaintiff referring to
Deputies as "flunkies," "twenty-something who don't know any better," and "woke twenty-somethings
that worship at the altar of wokeness." COE Ex. 25, pages 469-73.

As for retaliation, there was evidence that Plaintiff disapproved of one of Ms. Lim's reports, which
outlined the steps families can take to protect themselves from law enforcement harassment. Specifically,
Plaintiff made a social media post critiquing the Deputies while specifically holding up Ms. Lim's report.
Pl. Opp. Exhibit 10, ECF No. 105-3 at 107. Shortly after Ms. Lim published this report, Plaintiff filed a
Policy of Equality complaint against her, which ultimately proved unfounded. *Id.* The timing of this
complaint, that it ultimately failed, and the evidence that Plaintiff "singled out" Ms. Lim could support a
finding of retaliation.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

Regarding Mr. Huntsman, his case file also included evidence of harassment. His file provided evidence that Plaintiff was aware that Max Huntsman did not go by "Max-Gustav," but that Plaintiff called him that nonetheless. *See* COE Ex. 38, pages 603-606. A Justice Deputy further added that Plaintiff made comments about Mr. Huntsman "nonstop" and that he used the name "Gustav" to allude that Huntsman was "some kind of Nazi." *Id.* at 606. Yes, Mr. Huntsman did have a plaque in his office with the name "Gustav" on it. But Mr. Huntsman explained that the plaque was the result of a system error, that no one professionally called him "Gustav," and that Plaintiff was aware of this. *Id.* at 603-606.

To be clear, the Court does not recount this evidence to endorse the Panel's conclusions. The evidence against Plaintiff is admittedly thin. Rather, the point is that the Panel's decision was supported by *some* evidence. Evidence that, while certainly not strong enough to constitute harassment in a court of law, could support a finding that Plaintiff violated the Policy of Equality. In other words, the evidence presented was not so "weak," "implausible," "inconsistent," "incoherent," or "contradict[ory]" such that Panel's decision must be pretextual. *See Dep't of Fair Em't*, 642 F.3d at 746.

Plaintiff may believe the Panel's findings were "foolish" or "even baseless." *See Villarimo*, 281 F.3d at 1054. But it's not enough for Plaintiff to show that the Panel made the wrong call. He must bring evidence that the Panel did not "honestly believe[] its reason for its actions." *See id.* He fails to do so.

Moreover, Plaintiff's choice to place Plaintiff on the "Do Not Rehire" list also does not suggest pretext. To the extent such a designation could support an inference of retaliation, Plaintiff would need to show that others accused of similar misconduct were not similarly flagged. But he offers no such evidence.[8] Rather, the only evidence on this point comes from the Panelists themselves, who uniformly state that the "Do Not Rehire" notation is a routine administrative marker—commonly applied when the

---

[8] To be sure, Plaintiff's declaration mentions the Do Not Rehire notation. But he simply states that the Do Not Rehire notation is a literal instruction to not rehire. He provides no comment regarding the frequency in which it is used or the situations in which it is appropriate.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|---|---|---|---|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

subject of a founded investigation is no longer employed by the County and thus cannot be formally disciplined.

**Fourth**, there is no evidence that the Panel's decision-making process was "a sham" or otherwise flawed. Plaintiff claims that Mercedes Cruz, one of the Panelists who reviewed the complaints against Plaintiff, "openly stated Villanueva was found guilty of harassment and discrimination because he interfered with Lim and Huntsman's 'oversight'—a determination explicitly tied to Villanueva's political disagreements and protected speech." Pl. Opp. at 7 (citing PF ¶ 28). This is not true. The deposition testimony Plaintiff cites in support of this contention in no way supports his assertion about Ms. Cruz. *See* Pl. Opp. Ex. 33, 84:2-85:24, ECF No. 105-5 at 84.

Plaintiff next points to deposition testimony from Roberta Yang, another Panelist, who admitted that she only read the investigative reports for Ms. Lim and Mr. Huntsman's complaints and did not review the exhibits described and referenced in the report. Pl. Opp. Ex. 36 43:6-45:16, 62:9-63:25, 91:20-23, 112:3-114:10. This is not evidence that the Panel's decision was pretextual. At best, it is evidence that Ms. Yang could have been more thorough in her review of the evidence. But she still read the report and the evidence included within it. That one of three panelists did not fully cross her t's and dot her i's does not mean that the entire Panel's finding was a pretext for retaliation.

In sum, Plaintiff's First Amendment retaliation claim fails because he provides no evidence that the Panel—the body that imposed the "Do Not Rehire" designation—was even aware of his criticism of the Board of Supervisors, much less influenced by it. His theory rests on the bare sequence of events: that he publicly criticized the Board, and later, an independent Panel—relying on investigative reports *that made no reference to his protected speech*—found complaints against him to be substantiated. This is not enough. "[M]ere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 904-05 (9th Cir. 2014). As the Supreme Court has made clear, a plaintiff must "prove more than the mere fact that he criticized the Board members before [the Panel found against him]." *Bd. of Cnt, Comm'rs v. Umbehr*, 518 U.S. 668, 685 (1996). Plaintiff fails to meet that burden.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | May 15, 2025 |
|----------|----------------------|------|--------------|
| Title | *Alex Villanueva v. County of Los Angeles et al.* | | |

### C.  State Law Claims

In addition to his federal claims, Plaintiff also brings various claims under state law. The Court bifurcated the state and federal claims earlier in this case. Now that the Court has granted summary judgment for Defendants on Plaintiff's federal claims, it will turn to their state law claims.

The only basis for jurisdiction over these claims is supplemental jurisdiction. "A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000)).

Here, the Court has dismissed all of Plaintiff's claims over which it has original jurisdiction. Accordingly, as courts do in the "usual case in which all federal-law claims are eliminated before trial," the Court will decline to exercise supplemental jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c)(3).

### VI.    Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

Because the Court dismisses Plaintiff's one federal claim and declines to exercise jurisdiction over his state claims, Plaintiff has no more claims before this Court. The Court accordingly VACATES the June 3, 2025 trial date as well as all upcoming hearings.

**IT IS SO ORDERED.**

:

| Initials of Preparer | PMC |
|----------------------|-----|