Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Mahru Madjidi, Esq., State Bar No. 297906
MMadjidi@Shegerianlaw.com
Alex DiBona, Esq., State Bar No. 265744
ADiBona@shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
320 North Larchmont Boulevard
Los Angeles, California 90004
Telephone Number:  (310) 860-0770
Facsimile Number:   (310) 860-0771

Attorneys for Plaintiff,
ALEX VILLANEUVA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX VILLANEUVA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100, inclusive,<br><br>　　　　Defendants. | Case No.:  2:24-cv 04979 SVW (JC)<br><br>**The Honorable Stephen V. Wilson**<br><br>**PLAINTIFF ALEX VILLANUEVA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY FEES, SANCTIONS, AND COSTS**<br><br>(Filed concurrently with Declaration of Alex DiBona, Exhibits)<br><br><br><br>Date:    June 30, 2025<br>Time:    1:30 p.m.<br>Ctrm.:   10A<br><br>Trial Date:     Not Set<br>Action Filed:  June 13. 2024 |

# TABLE OF CONTENTS

**Page**

**1.** INTRODUCTION .......................................................................................... 1

**2.** STATEMENT OF FACTS ............................................................................ 2

   **A.** Villanueva Dedicated More than 36 Years of Exemplary Service to Los Angeles County Law Enforcement. .................................................. 2

   **B.** Defendants' Sham FAC Argument Is Without Merit, as the Allegations Leading to the Denial of the Motion to Dismiss Were Consistently Pled in the FAC, the Original Complaint, and the Tort Claim Letter. .......... 2

      **(1)** **Villanueva's Pleadings are Consistent because His First Amendment Claim was in His Tort Claim Letter, His Original Complaint, and His First Amended Complaint**. ................ 2

      **(2)** Villanueva's Tort Claim Letter is Irrelevant to His First Amendment Claim ........................................................................ 3

      **(3)** Villanueva's First Amended Complaint Simply Expanded Upon the Allegations in his Original Complaint And is Wholly Consistent with the Evidence That Came Out. ............................. 3

      **(4)** Villanueva Testified Unequivocally at Deposition to His Belief that He Was Retaliated Against and the Basis for Retaliation. .......... 3

   **C.** Villanueva's FAC Was Well Supported by Evidence Developed in Discovery. .......................................................................................... 4

      **(1)** The County Did Determine that the Complaints Against Villanueva Were Meritless "under a reasonable good faith standard." .......... 4

      **(2)** Villanueva's Investigation Was Placed in a Suspense File. .......... 4

   **D.** Throughout Litigation, Defendants Conceded the Necessity of All of the Witnesses Plaintiff Deposed; Defendants Produced Declarations of All 13 Deponents, and That Alone Required Their Depositions to Be Taken. .......... 5

      **(1)** Plaintiff's Counsel Did Not Forfeit or Waive Any Discovery and Defendant's Representation of Such an Agreement is Flat Out False. .......... 5

      **(2)** The Depositions Plaintiff Directly Necessary to the Prosecution of His Claims .......................................................................................... 6

   **E.** The Depositions of Yang, Komorski, and Cruz Were Necessary Because They Were Defendants and Were Personally Involved in the Retaliatory "Do Not Rehire" Note. .......................................................................... 6

   **F.** Gil Carillo Was Disclosed as a Potential Witness in Good Faith. .......... 6

   **G.** Defendants Were Not the Prevailing Parties on Their Discovery Motions, and All Objections Were Brought in Good Faith. .......................................... 7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

**(1)** Plaintiff's Counsel Reasonably Objected During Villanueva's Deposition. ........ 7

**H.** Plaintiff Appropriately Objected to Requests for Privileged Information About Counsel's Presence in Meetings. ........ 8

**I.** Plaintiff Complied Fully with the Magistrate Judge's Discovery Orders. ........ 8

**J.** Defendants' Discovery Demands for Irrelevant Medical Records Were Overreaching and Were Rejected by the Court. ........ 8

**K.** Defendants Misrepresent the Text Message Production; Plaintiff Produced Thousands of Pages and Promptly Corrected Extraction Errors. ........ 9

**L.** Plaintiff Produced a Timely Privilege Log for Vivian Villanueva's Messages, and Defendants Never Challenged It. ........ 9

**M.** Villanueva's Counsel Did Not Misstate Any Law. ........ 9

**N.** Defendants' Characterization of Meet and Confer Discussions Is Inaccurate, as Plaintiff's Counsel Participated in Good Faith. ........ 10

**O.** Plaintiff Had Good Cause to Move *in Limine* to Exclude Prejudicial and Improper Character Evidence. ........ 11

**P.** Plaintiff Properly Designated Three Emotional Distress Experts, Each of Whom Used Different Methods with Different Qualifications. ........ 11

**Q.** Villaneuva Did Not Give False Testimony, and This Court Certainly Did Not Find that He Had. ........ 12

**R.** All of Plaintiff's Litigation Conduct Was in Good Faith and Taken for Proper Purposes. ........ 12

**3.** LEGAL ARGUMENT ........ 13

**A.** Defendants Are Not Entitled to Fees Under § 1988 Because Plaintiff's Claims Were Not Frivolous, Unreasonable, or Without Foundation. ........ 13

(1) Villanueva First Amended Complaint did survive a motion to dismiss ........ 13

As established above, Villanueva's First Amended Complaint, which survived a motion to dismiss, was not a sham pleading. The fact that Villanueva, at all times, believed he had been retaliated against and was able to marshal some evidentiary support simply precludes the imposition of sanctions. ........ 13

(2) Villanueva's Case was not Frivolous, Unreasonable or Without Foundation as a Matter of Law ........ 13

**B.** Villanueva Reasonably Believed that He Had Standing to Pursue This Lawsuit. ........ 14

**(1)** Villanueva Believed that He Was Subjected to a Material Adverse Action that Was Likely to Deter Protected Speech. ........ 14

**C.** Defendants Conceded Villanueva's Protected Speech. ........................ 15

**D.** Villanueva Reasonably Believed that the Timing Showed Causation. .... 15

**E.** Rule 11 Sanctions Are Procedurally Barred Because Defendants Failed to Serve a Timely Motion Complying with the Safe Harbor Provision. ...... 16

**F.** Rule 11 Does Not Apply to Discovery, Conduct at Depositions, or Misstatements. .................................................................................. 16

**G.** Even If Rule 11 Could Be Considered on the Merits, Sanctions Still Would Be Improper Because Plaintiff Acted in Good Faith. ................ 17

**H.** Defendants Cannot Obtain Sanctions Under § 1927 Because Sanctions Cannot Be Imposed on Law Firms, and There Was No Bad Faith. ...... 17

**I.** Defendants Cannot Rely on Local Rule 11-9 Because They Identify No Frivolous Motion or Improper Purpose. ........................................... 18

**J.** Defendants Cannot Obtain Sanctions Under Local Rule 83-7 Because They Have Not Identified Any Violation of the Local Rules. ............... 19

**K.** Defendants' Hours Were Not Reasonably Incurred, and Defendants Are Not Entitled to Fees When They Are Not the Prevailing Parties. ....... 19

**4.** CONCLUSION ..................................................................................... 21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

# TABLE OF AUTHORITIES

## Cases

*Barber v. Miller,* 146 F.3d 707, 710-711 (9th Cir. 1998) .................................. 17

*Blair v. Bethel Sch. Dist.,* 608 F.3d 540 (9th Cir. 2010) .................................. 16

*Boquist v. Courtney,* 32 F.4th 764 (9th Cir. 2022) .................................. 16

*Broeker v. BNSF Ry. Co.,* No. 19-CV-79-ABJ, 2021 WL 2914152, *4 (D. Wyo. June 25, 2021) .................................. 10

*Cantu v. United States,* 2015 U.S. Dist. LEXIS 191395 (C.D. Cal. 2015) .................................. 12

*Christian v Mattel, Inc.,* 286 F.3d 1118 (9th Cir. 2002) .................................. 18

*Coszalter v. City of Salem,* 320 F.3d 968 (9th Cir. 2003) .................................. 15

*Davis v. CVS Pharmacy, Inc.,* No. CV 21-2484-DMG (KSx), 2023 WL 2558412, *2 (C.D. Cal. Feb. 10, 2023) .................................. 10

*Disney Enters., Inc. v. VidAngel Inc.,* 2017 U.S. Dist. LEXIS 221998, *1618 (C.D. Cal. Nov. 29, 2017) .................................. 20

*Ditton v. BNSF Ry. Co.,* No. CV 12-6932 JGB (JCGx), 2014 WL 12928305, *6 (C.D. Cal. Jan. 6, 2014) .................................. 10

*Ebert v. City of New York,* No. 04 Civ. 9971 (LMM), 2006 WL 2620373, *3 (S.D. N.Y. June 26, 2006) .................................. 10

*EEOC v. Bruno's Rest.,* 13 F.3d 285, 290 (9th Cir. 1993 .................................. 14

*El Dorado Estates v. City of Fillmore,* 765 F.3d 1118 (9th Cir. 2014) .................................. 15

*In re Yagman,* 796 F.2d 1165 (9th Cir. 1986) .................................. 19

*Kaass Law v. Wells Fargo Bank, N.A.,* 799 F.3d 1290 (9th Cir. 2015) .................................. 19

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) .................................. 15

*McAdams v. Ladner,* 608 F.Supp.3d 416 (C.D. Cal. 2022) .................................. 14

*Miller v. Bonta,* 646 F.Supp.3d 1218 (S.D. Cal. 2022) .................................. 14

*Patsy v. Board of Regents,* 457 U.S. 496 (1982) .................................. 3

*Pickern v. Holiday Quality Foods,* 293 F.3d 1133 (9th Cir. 2002) .................................. 16

*RG Abrams Ins. v. Law Offices of C.R. Abrams,* 2022 U.S. Dist. LEXIS 24987, *68-70 (C.D. Cal. Feb. 11, 2022) .................................. 20, 21

*Rodriguez v. County of Stanislaus,* 2010 U.S. Dist. LEXIS 80600 (E.D. Cal. 2010) .................................. 12

*Stitt v. Williams*, 919 F.2d 516, 527 (9th Cir. 1990) ......................................... 14

*Thomas v. Douglas*, 877 F.2d 1428, 1434 & n.8 (9th Cir. 1989)). .................... 15

*Uzuegbunam v. Preczewski,* 592 U.S. 279 (2021) ............................................ 15

*Wood v. Georgia,* 370 U.S. 375 (1962) .............................................................. 16

**Statutes**

42 U.S.C. section 1988 ............................................................................................ 1

42 United States Code § 1927 ...................................................................... 1, 17, 18

42 United States Code § 1983 ............................................................................ 3, 14

42 United States Code § 1988 .................................................................... 1, 13, 14

**Rules**

Federal Rules of Civil Procedure, Rule 8 .............................................................. 3

Local Rules Rule 26 ....................................................................................... 6, 11, 12

Local Rules, Rule 11 ................................................................................ 1, 15, 16, 17

Local Rules, Rule 11-9 ..................................................................................... 1, 18

Local Rules, Rule 7-3 ............................................................................................. 18

Local Rules, Rule 83-7 ................................................................................ 1, 18, 19

**Constitutional Provisions**

United States Constitution, First Amendment ............................................. passim

**Page**

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

Defendants' motion for attorney's fees and costs is not only legally baseless, but factually indefensible. Plaintiff, Alex Villanueva, is a career public servant who devoted more than 36 years to Los Angeles County law enforcement. Villanueva brought this action in good faith to vindicate core constitutional rights whose violation he truthfully and honestly believed caused tangible harm because he spoke out on matters of public concern. Defendants do not dispute that Villanueva engaged in protected First Amendment activity.

The record demonstrates that plaintiff and his counsel conducted themselves with diligence, professionalism, and respect for the judicial process. Every deposition taken was of either a disclosed witness or one who submitted a declaration in support of summary judgment. The three individual defendants who authorized the adverse employment action were necessarily deposed. Plaintiff's objections during discovery were proper and were either upheld by the magistrate judge or fully complied with when overruled. There were no discovery sanctions, there was no violation of court orders, and there as no improper purpose behind any litigation conduct.

Defendants' motion is meritless on both the procedure and the law. 42 U.S.C. section 1988 does not permit fee-shifting where claims, even if unsuccessful, are brought in good faith and grounded in fact and law. Rule 11 sanctions are procedurally barred by defendants' failure to comply with the mandatory safe harbor provision and because they seek them only *after* summary judgment, which is not permissible. Section § 1927 is inapplicable because defendants seek to sanction a law firm, not an individual attorney, and there is no showing of bad faith. Defendants point to no motion filed solely for delay under Local Rule 11-9 and cite no actual violation of the local rules to support sanctions under Rule 83-7.

At bottom, defendants are attempting to impose punitive fees not because plaintiff

---

abused the litigation process, but because he dared to challenge them. That is not a permissible use of the Court's sanctioning power. Plaintiff's claims were rooted in legitimate factual grievances and supported by a robust legal framework. The litigation was properly conducted and devoid of bad faith. This motion should be denied in its entirety.

## 2. STATEMENT OF FACTS

### A. Villanueva Dedicated More than 36 Years of Exemplary Service to Los Angeles County Law Enforcement.

Villanueva devoted more than 36 years of his life to public service and law enforcement. He began his distinguished career with the Los Angeles County Sheriff's Department in 1986, steadily ascending through its ranks until his historic election as sheriff in 2018—the first time in more than a century that an incumbent sheriff was unseated.

### B. Defendants' Sham FAC Argument Is Without Merit, as the Allegations Leading to the Denial of the Motion to Dismiss Were Consistently Pled in the FAC, the Original Complaint, and the Tort Claim Letter.

### (1) Villanueva's Pleadings are Consistent because His First Amendment Claim was in His Tort Claim Letter, His Original Complaint, and His First Amended Complaint.

Defendant's allegation that Villanueva's pleadings were a sham is belied by the record. Villanueva's original Complaint stated unequivocally, "Defendants and their employees and agents violated plaintiff's First Amendment right to free speech by taking adverse action against plaintiff for asserting his civil rights in a public forum and for complaining about defendants' unlawful activities." (Docket "Dkt." No. 1, Complaint, ¶ 30.) The tort claim letter stated the same. (*Id.,* Exhibit 7.) Villanueva from the very beginning stated that Defendants had violated his First Amendment Rights.

///

### (2)  Villanueva's Tort Claim Letter is Irrelevant to His First Amendment Claim

In any event, Defendant's argument about what was and was not contained in Villanueva's Tort Letter is a legal red herring. Villanueva was not required to exhaust his section 1983 claims before bringing them. *Patsy v. Board of Regents,* 457 U.S. 496 (1982) ("exhaustion of state administrative remedies are [sic] not a prerequisite to an action under Section 1983 claims").  Defendants argued that Villanueva was required to do so in their Motions to Dismiss.  (Dkt. Nos. 30, 48.)  However, defendants did not raise or renew this argument in their Motion for Summary Judgment.  (Dkt. No. 89.)  Defendants therefore conceded that exhaustion of administrative remedies was not at issue.

### (3)  Villanueva's First Amended Complaint Simply Expanded Upon the Allegations in his Original Complaint And is Wholly Consistent with the Evidence That Came Out.

Villanueva, as was entirely proper, gave a more detailed statement of the First Amendment retaliation in his First Amended Complaint ("FAC").  (Dkt. No. 46.)  Each and every allegation that Villanueva pled either proved to be true or Villanueva believed would prove to be true after discovery, as is explained further below.

### (4)  Villanueva Testified Unequivocally at Deposition to His Belief that He Was Retaliated Against and the Basis for Retaliation.

Villanueva honestly and reasonably believed he was retaliated against for his First Amendment Activity. Villanueva testified unequivocally that he was retaliated against and the basis for it.  (Deposition of Alex Villanueva, 347:1-351:25.)  Villanueva stated that the tort claim letter did not have to give a "blow by blow" description, but that what was in the letter encompassed what was the County did to him.  (*Id.,* 351:1-25.)  This also aligns with the federal pleading standard that only requires "a short and plain statement of the claim." F.R.C.P. 8.

## C. Villanueva's FAC Was Well Supported by Evidence Developed in Discovery.

Defendants argue that Villanueva falsely pled that the County found the allegations against him meritless and that the investigation of him was placed in a "suspense file." Both of these allegations were proven true in discovery as explained further below.

### (1) The County Did Determine that the Complaints Against Villanueva Were Meritless "under a reasonable good faith standard."

During discovery, the County produced two documents that said that Ester Lim's and Max Huntsman's complaints were "non-jurisdictional" and "unrelated to employment" under a "reasonable good faith standard." (Declaration of Alex DiBona ("DiBona Decl."), **Exhibits 7, 8**.) These documents were the initial intake forms prepared by the County of Los Angeles. The County does not have a credible claim that these documents do not mean what they say. Villanueva was not unreasonable in believing pled facts that did turn out to have evidentiary support.

### (2) Villanueva's Investigation Was Placed in a Suspense File.

Villanueva's allegation of "suspense file" pled that the investigation of him lay dormant until he ran for the Board of Supervisors.[1] This proved to be accurate.

The investigator's logs were produced in discovery and show that, *in May of 2023, the attorneys conducting the investigation of Villanueva said that the investigation was done and would be sent to the sheriff's office within a week.* However, no further action was taken on the complaint *until September of 2023.* (DiBona Decl., Exhibits 5, 6, investigator's logs).

Villanueva announced his run for the Board of Supervisors on September 13, 2023.

---

[1] Villanueva was not using the term "suspense file" in any sort of technical or unusual meaning. In context, the phrase quite literally means that the file was kept in suspense or dormant.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

Approximately one month later, in October of 2023, defendants abruptly placed a punitive "do not rehire" note in Villanueva's personnel file; this coincided precisely with his active political campaign. (Dkt. No. 1, Exhibit 1, p. 90.) Further, the *Los Angeles Times* published the story of the "do not rehire" note on the very day ballots dropped for the Board of Supervisors race. (Dkt. No. 1, Exhibit 3.)

The County has never provided an explanation for why it waited more than six months (from May to September) to take any action on a "completed" investigation or why the "do not rehire" note was made only a month after the announcement of Villanueva's run for the Board of Supervisors. During discovery, Villanueva's allegation that there was unwarranted delay proved to have evidentiary support.[2] This was consistently pleaded across the tort claim letter, the complaint, the first amended complaint and in the opposition to the motion for summary judgment.

### D. Throughout Litigation, Defendants Conceded the Necessity of All of the Witnesses Plaintiff Deposed; Defendants Produced Declarations of All 13 Deponents, and That Alone Required Their Depositions to Be Taken.

### (1) Plaintiff's Counsel Did Not Forfeit or Waive Any Discovery and Defendant's Representation of Such an Agreement is Flat Out False.

Defendants' counsel was told on *February 4, 2025* that there was no agreement not to depose the Board of Supervisors or Sheriff Luna.[3] (DiBona Decl., ¶¶ 3-5,12, Exhibit 9.) It was pointed out then, as it is now, that no such agreement exists and that any agreement on discovery needs to be committed to writing. No such agreement on

---

[2] While this Court found Villanueva's evidence of timing insufficient, it was not unreasonable for Villanueva to believe that the timing supported causation.

[3] Defendants' counsel has a habit of declaring what he thinks a person should say, rather than what the person actually said.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

depositions was ever committed to in writing.  (*Id.*)

### (2)   The Depositions Plaintiff Directly Necessary to the Prosecution of His Claims

Plaintiff did not vexatiously multiply depositions.  Defendants submitted declarations from 13 individuals in support of their Motion for Summary Judgment; the declarants were Max Huntsman, Mercedes Cruz, Nairi Gevorki, Ron Kipperud, Veronica Pawlowski, Roberta Yang, Jonathan Lested, Ann Devane, Christine Diaz-Herrera, Constance Komorski, Ester Lim, Kyla Coates, and Laura Lecrivain.  (Dkt. No. 89.)  Each of these individuals was either disclosed in defendants' amended Rule 26 disclosures or provided declarations in support of summary judgment.  Plaintiff did not depose a single witness who fell outside of those two categories.  (DiBona Decl., ¶¶ 6-11, Exhibit 1, defendants' Rule 26 disclosures.)  These depositions were necessary to Villanueva's case.

### E.   The Depositions of Yang, Komorski, and Cruz Were Necessary Because They Were Defendants and Were Personally Involved in the Retaliatory "Do Not Rehire" Note.

Komorski, Yang, and Cruz were individual defendants who personally recommended placing a "do not rehire" note in plaintiff's personnel file.  (DiBona Decl., ¶ 6.)  Villanueva was entitled to assess whether these witnesses offered inconsistent or contradictory accounts.  (DiBona Decl., ¶ 10.)

### F.   Gil Carillo Was Disclosed as a Potential Witness in Good Faith.

Plaintiff disclosed in good faith that Gil Carillo "may" have knowledge of plaintiff's emotional distress.  (DiBona Decl., ¶¶ 13-15.)  Although Carillo ultimately testified that he did not observe plaintiff's distress, the deposition—which lasted approximately five hours—focused primarily on Carillo's background, including his role in the "Night Stalker" case.  (*Id.*)  Defendants have not identified any prejudice or any misuse of this

deposition. Defendants did not incur unwarranted or additional expense and if they had, such expense is minimal given how little of the deposition was about Villanueva and how much of it was about Carillo's career.

## G. Defendants Were Not the Prevailing Parties on Their Discovery Motions, and All Objections Were Brought in Good Faith.

Defendants misleadingly state that they "overwhelmingly" prevailed on the discovery motions.  The discovery motions concerned (1) instructions not to answer at deposition, (2) objections to producing all of Villanueva's medical records, and (3) plaintiff's discovery responses.  The truth of the matter is that these motions were "granted in part and denied in part.".  (DiBona Decl., **Exhibit 4**, rulings on Motions to Compel; Dkt. No. 88.)[4]  This fact alone shows that there was some merit to Villanueva's positions and that all of them were taken in good faith.

### (1) Plaintiff's Counsel Reasonably Objected During Villanueva's Deposition.

Defendants misleadingly state that Villanueva refused to provide basic information in his deposition.  Villanueva was instructed not to answer questions about who was present at meetings with his attorneys, what documents his attorneys showed him, and how his Complaint and tort claim letters were drafted.  The objection to not answer these questions on the grounds of privilege was reasonable, even if they were later overruled. (DiBona Decl., ¶¶ 16-22.)  The Magistrate Judge's ruling was simply that plaintiff could answer if he relied on his attorneys and prohibited follow-up questions.  (Exhibit 4, p. 6, fn. 12.)

---

[4]  The rulings on the Motions to Compel were not placed on the docket.

### H. Plaintiff Appropriately Objected to Requests for Privileged Information About Counsel's Presence in Meetings.

Defendants' inquiries into whether members of plaintiff's legal team were present at meetings reasonably implicated attorney-client privilege. Villanueva asserted objections accordingly. Notably, defendants redacted similar information in their own billing records. (DiBona Decl., ¶ 22.)

### I. Plaintiff Complied Fully with the Magistrate Judge's Discovery Orders.

When the magistrate judge overruled *some* of plaintiff's objections—for example, ordering him to answer questions about the First Amended Complaint, plaintiff complied fully. (DiBona Decl., ¶ 23.) No sanctions were issued in connection with any discovery dispute. (DiBona Declaration, **Exhibit 4; Dkt No. 88.**)

### J. Defendants' Discovery Demands for Irrelevant Medical Records Were Overreaching and Were Rejected by the Court.

Defendants subpoenaed all of plaintiff's medical records, including those from unrelated providers, such as his orthopedist and dermatologist, even though plaintiff made it clear that he had not sought emotional distress treatment from those providers. (DiBona Decl., ¶¶ 24-30.) Plaintiff's counsel offered to produce *all medical records* subject to a first-look agreement and privilege log, but defendants refused and insisted on full production. (*Id,* **Exhibit 12***.*) Villanueva's objections to producing the medical records were sustained, and he was ordered to produce only his primary care physician's records. (DiBona Decl., **Exhibit 4**.) Defendants did not prevail on this motion. In fact, the ruling ordered *fewer records than plaintiff's counsel offered to produce voluntarily.* (DiBona Decl., ¶¶ 24-30.)

///

///

### K.  Defendants Misrepresent the Text Message Production; Plaintiff Produced Thousands of Pages and Promptly Corrected Extraction Errors.

Villanueva did not alter or delete any text message.  As an initial matter, Villanueva produced literally *thousands of text messages* from multiple witnesses.  (DiBona Decl., ¶ 34.)  Villanueva's counsel used forensic software that extracted text messages by phone number.  Inadvertently, on some occasions, the software retrieved only messages from contacts like Gil Carillo and Maria Lopez without including Villanueva's responses.  These errors were promptly identified and corrected.   (DiBona Decl., ¶ 31-36.)  *Villanueva's counsel literally fixed the issue while the deposition was ongoing.*  (DiBona Decl., **Exhibits 10, 11**.)  Further, defendants have not pointed to a single bit of information that Villanueva allegedly "withheld" that was unfavorable to him.  This is because no such information exists.

### L.  Plaintiff Produced a Timely Privilege Log for Vivian Villanueva's Messages, and Defendants Never Challenged It.

The magistrate judge stated that messages from Vivian Villanueva should be produced subject to a privilege log.  Villanueva fully complied and served a detailed privilege log, which defendants never challenged or met and conferred over.  (DiBona Decl., ¶¶ 35-36, **Exhibit 3**, privilege log, **Exhibit 4**.)  Vivian Villanueva, because she was not a party or represented by counsel, had not seen the privilege log and, of course, could not answer questions about its contents or why not all text messages were produced.

### M.  Villanueva's Counsel Did Not Misstate Any Law.

Villanueva moved to quash defendants' subpoenas for pension records, relying on established district court precedent holding that such records were inadmissible and not relevant to retaliation claims.  *Davis v. CVS Pharmacy, Inc.*, No. CV 21-2484-DMG (KSx), 2023 WL 2558412, *2 (C.D. Cal. Feb. 10, 2023) (a

defendant may not introduce evidence of a plaintiff's disability or retirement benefits to argue that the plaintiff lacks motivation to return to work); *see Broeker v. BNSF Ry. Co.,* No. 19-CV-79-ABJ, 2021 WL 2914152, *4 (D. Wyo. June 25, 2021) (pension benefits inadmissible as offset); *Ebert v. City of New York,* No. 04 Civ. 9971 (LMM), 2006 WL 2620373, *3 (S.D. N.Y. June 26, 2006) (same); *Ditton v. BNSF Ry. Co.,* No. CV 12-6932 JGB (JCGx), 2014 WL 12928305, *6 (C.D. Cal. Jan. 6, 2014) (disability benefits inadmissible under collateral source rule).

Further, Villanueva never claimed economic damages related to his pension. This is yet another proof that his objections were made in good faith. (Dkt. No. 88.)

The magistrate judge ruled that Villanueva's pension benefits were *discoverable* in part. (Dkt. No. 88.) However, Villanueva was certainly reasonable in relying on the above cases to believe that they were not discoverable. (DiBona Decl. ¶ 39.)

## N. Defendants' Characterization of Meet and Confer Discussions Is Inaccurate, as Plaintiff's Counsel Participated in Good Faith.

Defendants claim that Villanueva did not meet and confer with respect to defendants' Motion for Summary Judgment. This contradicts their own counsel's record. Jason Tokoro declared that he met and conferred with plaintiff's counsel. (Dkt. No. 89, Declaration of Jason Tokoro, ¶ 3.) Mr. Tokoro did not mention anything in his declaration about being unable to meet and confer with plaintiff's counsel. (*Id.*) Further, defendants' own billing records state that the meet and confer session lasted approximately 45 minutes.

Contrary to Mr. Tokoro's claim, Villanueva's counsel did not say that he "did not care" about the meet and confer process. Plaintiff's counsel stated that he would not agree to dismiss the claim, but was willing to meet and confer in good faith. (DiBona Decl., ¶¶ 40-42.) The call lasted 45 minutes and included a discussion of key disputed issues, including *Monell* liability, causation, and protected activity. (*Id*).

///

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

## O.  Plaintiff Had Good Cause to Move *in Limine* to Exclude Prejudicial and Improper Character Evidence.

Defendants claim that Villanueva filed a motion *in limine* even though there was a stipulation to exclude the evidence.  Defendants' argument is nonsensical.  Defendants would not have to oppose a motion when they stipulated to the relief.  Villanueva and defendants agreed that reports by the office of the inspector general would not be admitted at trial.  However, Villaneuva believed that any discussion of "deputy gangs" should be excluded.  Defendants would not agree to such relief.  Instead, defendants made clear their intent to introduce evidence related to "deputy gangs" and other prejudicial allegations.  Plaintiff's motion *in limine* sought to exclude not only inspector general reports, but any inflammatory or irrelevant material designed to prejudice the jury.  (DiBona Decl., ¶ 43. **Exhibit 13**, meet and confer e-mails.)

## P.  Plaintiff Properly Designated Three Emotional Distress Experts, Each of Whom Used Different Methods with Different Qualifications.

Villanueva properly designed three experts on emotional distress.  Dr. Nigel Kennedy is a psychiatrist and Dr. Rebecca Udell and Dr. Jennifer Rowe are psychologists.  (DiBona Decl., **Exhibit 14,** Rule 26 Disclosures.)  Only Dr. Rowe was retained to testify regarding defendants' psychological testing of Villanueva.  (*Id.*)

Further, Villaneuva reasonably relied on case law from this district to retain multiple experts.  In *Cantu v. United States,* 2015 U.S. Dist. LEXIS 191395 (C.D. Cal. 2015), the court denied a motion to limit cumulative expert testimony, recognizing that expert testimony is permissible when it involves distinct methodologies and individual analyses, even if conclusions align.  In *Cantu,* the court emphasized the necessity of allowing experts who employ varying methodologies and provide unique analytical insights to testify, finding such testimony valuable and non-cumulative, even when it reaches similar conclusions.

Similarly, *Rodriguez v. County of Stanislaus,* 2010 U.S. Dist. LEXIS 80600 (E.D.

Cal. 2010), underscored that courts should avoid prematurely limiting expert witnesses simply because of similar outcomes, especially when each expert brings unique professional expertise and uses different evaluative methods. The *Rodriguez* court specifically rejected the argument that similar conclusions by multiple experts should lead to exclusion, highlighting instead that the critical analysis should focus on the distinct methodologies employed and the unique expertise of each expert. Plaintiff designated three emotional distress experts—Dr. Rowe Dr. Kennedy, and Dr. Udell—each of whom employed a different professional method to assess plaintiff's psychological harm. The designations were not duplicative and were made in good faith to present a complete evidentiary picture for the trier of fact. (DiBona Decl., ¶ 18.) Further, even if the Court had excluded an expert, it was certainly reasonable for plaintiff to rely on the above cases to believe that he would be able to present their testimony.

## Q. Villaneuva Did Not Give False Testimony, and This Court Certainly Did Not Find that He Had.

Villnueva's declaration at summary judgment stated that "do not rehire" meant exactly that. (Dkt. No. 105-8 ¶ 25.) This was to counter defendants' quite frankly ridiculous assertion (which the Court never adopted) that "do not rehire" did not mean what it said. This is consistent with the testimony that the "do not rehire" note was used to punish him and that this was without precedent. (*See* Dkt. No. 112 at 4, n. 1, 112-1, ¶¶ 8-10.)

## R. All of Plaintiff's Litigation Conduct Was in Good Faith and Taken for Proper Purposes.

At every stage of litigation, plaintiff and his counsel acted diligently, responsibly, and with respect for the judicial process. None of the actions described above was taken for an improper purpose, to harass, or to delay the proceedings. (DiBona Decl., ¶ 44.) Every deposition plaintiff took involved someone either disclosed under Rule 26 or someone who submitted a declaration in support of summary judgment. (DiBona Decl.,

¶¶ 3-6, 9.)  Villanueva did not take any unnecessary deposition or multiply proceedings without reason.  Moreover, plaintiff voluntarily dismissed multiple individual defendants, narrowing the litigation in good faith.  (DiBona Decl., ¶¶ 45.)

## 3.  LEGAL ARGUMENT

### A.  Defendants Are Not Entitled to Fees Under § 1988 Because Plaintiff's Claims Were Not Frivolous, Unreasonable, or Without Foundation.

#### (1) Villanueva First Amended Complaint did survive a motion to dismiss

As established above, Villanueva's First Amended Complaint, which survived a motion to dismiss, was not a sham pleading. The fact that Villanueva, at all times, believed he had been retaliated against and was able to marshal some evidentiary support simply precludes the imposition of sanctions.

#### (2) Villanueva's Case was not Frivolous, Unreasonable or Without Foundation as a Matter of Law

Under 42 U.S.C. section 1988, a prevailing defendant may recover attorneys' fees only where the plaintiff's claims are shown to be frivolous, unreasonable, or without foundation.  This demanding standard protects the right to bring civil rights claims without fear of punitive fee exposure.  As the court in *Miller v. Bonta,* 646 F.Supp.3d 1218, 1227 (S.D. Cal. 2022), explained, claims are not frivolous merely because they fail on the merits, and courts must avoid imposing fees where litigants pursue claims grounded in good faith. Further, Judgment as a matter of law *does not make a case frivolous. In re Yagman*, 796 F.2d 1165, 1187-1188 (9th Cir. 1986) (reversing district's imposition of sanctions after grant of judgment as a matter of law).

Likewise, *McAdams v. Ladner,* 608 F.Supp.3d 416, 419 (C.D. Cal. 2022), denied fees under section 1988 where the plaintiff's constitutional claims raised genuine issues, despite ultimately being unsuccessful.  The court emphasized that section 1988 does not penalize novel, difficult, or ultimately losing claims. See, *Stitt v. Williams*, 919 F.2d 516, 527 (9th Cir. 1990) ("That the district court held [Plaintiff's] evidence to be insufficient

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

for purposes of summary judgment does not mean that appellants' claims were factually unfounded for purposes of Rule 11.") The Ninth Circuit has "repeatedly cautioned that district courts should not 'engage in post hoc reasoning,' awarding fees simply 'because a plaintiff did not ultimately prevail.'" Id. (quoting *EEOC v. Bruno's Rest.*, 13 F.3d 285, 290 (9th Cir. 1993)). "This admonition applies even in cases which are resolved at summary judgment because no 'reasonable jury could return a verdict in [the plaintiff's] favor.'" Id. at 1267 (quoting *Thomas v. Douglas*, 877 F.2d 1428, 1434 & n.8 (9th Cir. 1989)).

Here, plaintiff's claims were brought in good faith and were based on a legitimate belief that he was subjected to unlawful retaliation. Because plaintiff's claims were not frivolous, unreasonable, or without foundation, no fees may be awarded under section 1988.

## B. Villanueva Reasonably Believed that He Had Standing to Pursue This Lawsuit.

To establish Article III standing under section 1983, a plaintiff must show (1) an injury in fact, (2) that the injury is fairly traceable to the defendant's conduct, and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992); *El Dorado Estates v. City of Fillmore,* 765 F.3d 1118, 1121 (9th Cir. 2014). Villanueva believed that he met all three requirements.

## (1) Villanueva Believed that He Was Subjected to a Material Adverse Action that Was Likely to Deter Protected Speech.

Well established law supported Villanueva's claim of standing. *Coszalter v. City of Salem,* 320 F.3d 968, 974-975 (9th Cir. 2003).[5] The Supreme Court has confirmed that nominal damages are sufficient to meet the redressability prong in a First Amendment case. *Uzuegbunam v. Preczewski,* 592 U.S. 279, 292 (2021). In addition to nominal

---

[5] It was not unreasonable for Villanueva to assert that this standard applied to him given that he was not an elected official at the time of the "do not rehire notation". Further, the Court did not rely on the different standard between Officials and Citizens in its grant of Summary Judgment. (DiBoan Decl. ¶ 38).

damages, Villanueva seeks injunctive relief to remove the "do not rehire" designation, which continues to harm his reputation and career prospects. Redress is not speculative—it is directly tied to the requested relief. The Ninth Circuit has long held that plaintiffs are not required to engage in futile acts to preserve their standing. *Pickern v. Holiday Quality Foods,* 293 F.3d 1133, 1137-1138 (9th Cir. 2002).

The fact that the Court disagreed with the application of this law does not establish bad faith. It was certainly reasonable for Villanueva to believe that the case law supported him.

### C.   Defendants Conceded Villanueva's Protected Speech.

To prevail on a First Amendment retaliation claim, Villanueva must show that (1) he engaged in constitutionally protected speech, (2) he was subjected to an adverse action, and (3) there was a causal connection between the two. *Boquist v. Courtney,* 32 F.4th 764, 775 (9th Cir. 2022). Defendants, rightly, did not even contest that Villanueva had engaged in protected speech. *Wood v. Georgia,* 370 U.S. 375, 389 (1962); *Blair v. Bethel Sch. Dist.,* 608 F.3d 540, 543 (9th Cir. 2010).

### D.   Villanueva Reasonably Believed that the Timing Showed Causation.

The investigator's logs were produced *in May of 2023, and the attorneys conducting the investigation of Villanueva said that the investigation was done and would be sent to the sheriff's office within a week.* However, no further action was taken on the complaint *until September of 2023,* when Villanueva announced his run for the Board of Supervisors. On September 13, 2023, Villanueva publicly announced his candidacy for the Los Angeles County Board of Supervisors. Approximately one month later, in October of 2023, defendants abruptly placed a punitive "do not rehire" note in Villanueva's personnel file, and this coincided precisely with his active political campaign. Further, the *Los Angeles Times* published the story of the "do not rehire" note on the very day ballots dropped for the Board of Supervisors race.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

The County has never provided an explanation for why it waited more than six months to take any action on a "completed" investigation and why the "do not rehire" note was made only a month after the announcement of Villanueva's run for the Board of Supervisors.  Villanueva's allegation that there was unwarranted delay proved during discovery to have evidentiary support.

The fact that this Court disagreed with the above does not mean that it was bad faith for Villanueva to believe that he could show causation.

### E.   Rule 11 Sanctions Are Procedurally Barred Because Defendants Failed to Serve a Timely Motion Complying with the Safe Harbor Provision.

Rule 11(c)(2) imposes a mandatory procedural requirement:  a motion for sanctions must be served on the opposing party at least 21 days before it is filed with the court, allowing a "safe harbor" period to withdraw or correct the challenged filing.  In *Barber v. Miller,* 146 F.3d 707, 710-711 (9th Cir. 1998), the Ninth Circuit held that failure to comply with this safe harbor provision mandates denial of Rule 11 sanctions and that informal warnings are not a substitute for a properly served motion.

Here, defendants did not serve a Rule 11 motion on plaintiff at any time prior to filing it with the Court.  (DiBona Decl., ¶ 2.)  Instead, they raised the issue after the summary judgment decision, long after the opportunity to withdraw any filing had passed.  As in *Barber,* defendants' failure to follow the required procedure forecloses their ability to obtain Rule 11 sanctions.  Rule 11 is designed to prevent litigation abuse—not to act as a *post hoc* penalty after a party loses on the merits.

### F.   Rule 11 Does Not Apply to Discovery, Conduct at Depositions, or Misstatements.

Further, even if this Court were to consider Rule 11 sanctions on the merits, they would fail because it is clear that Rule 11 does not apply to "misstatements, conduct at depositions or discovery issues." *Christian v Mattel, Inc.,* 286 F.3d 1118 (9th Cir. 2002).

Therefore, this rule is inapplicable to defendants' claims in their motion.

### G. Even If Rule 11 Could Be Considered on the Merits, Sanctions Still Would Be Improper Because Plaintiff Acted in Good Faith.

Even if defendants had complied with Rule 11's procedural requirements—they did not—and even if the conduct complained of fell within Rule 11's ambit, sanctions still would be improper on the merits. Rule 11 is aimed at filings made for improper purposes, such as to harass, cause delay, or needlessly increase litigation costs. It does not apply simply because a party loses or advances a weak legal argument.

Plaintiff presented claims supported by factual allegations and legal authority. There is no indication that any filing was made with an improper motive. Courts consistently reject Rule 11 motions where the record shows that a party acted in good faith and conducted a reasonable inquiry. Defendants offer no evidence that plaintiff's filings were abusive, vexatious, or objectively unreasonable. Rule 11 sanctions therefore would be unjustified on the merits. (DiBona Decl., ¶ 39.)

### H. Defendants Cannot Obtain Sanctions Under § 1927 Because Sanctions Cannot Be Imposed on Law Firms, and There Was No Bad Faith.

Section 1927 allows a court to impose sanctions only on an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Critically, the statute applies only to individual attorneys—not law firms. In *Kaass Law v. Wells Fargo Bank, N.A.,* 799 F.3d 1290, 1293 (9th Cir. 2015), the Ninth Circuit held that section 1927 "does not permit the imposition of sanctions against a law firm" and reversed an award where the sanction was directed at the firm, rather than a named attorney.

Here, defendants seek sanctions against plaintiff's law firm, Shegerian & Associates, Inc., not against an individual attorney. This alone defeats their request. Even if an individual attorney had been named, defendants still fail to meet the substantive standard. Section 1927 requires evidence of bad faith, recklessness, or intentional misconduct.

Plaintiff's counsel acted in good faith throughout the litigation, narrowing claims on the basis of discovery and complying with all procedural rules and court orders.

In *In re Yagman,* 796 F.2d 1165, 1187-1188 (9th Cir. 1986), the Ninth Circuit reversed a section 1927 sanctions order imposed after the district court concluded that the plaintiff's defamation claim was frivolous because the challenged statements were protected opinion. While the district court believed that the plaintiff should have known that the claim would fail, the Ninth Circuit held that this was hindsight reasoning and insufficient to show bad faith. The court explained that an unsuccessful legal theory—particularly one involving complex First Amendment issues—does not warrant sanctions without a clear showing of improper purpose.

The same principle applies here. Plaintiff's legal theories, though ultimately unsuccessful, were not pursued in bad faith. Sanctions under section 1927 are unwarranted both procedurally and substantively.

## I.  Defendants Cannot Rely on Local Rule 11-9 Because They Identify No Frivolous Motion or Improper Purpose.

Local Rule 11-9 provides the Court discretion to impose sanctions where a party files a motion that is frivolous or made solely for delay. As was articulated in *Disney Enters., Inc. v. VidAngel Inc.,* 2017 U.S. Dist. LEXIS 221998, *1618 (C.D. Cal. Nov. 29, 2017), sanctions under Rule 11-9 are reserved for filings that are wholly without merit and intended to abuse the judicial process.

Defendants fail to identify any specific motion by plaintiff that meets this standard. Defendants do not contend that any motion Villanueva filed was frivolous; they argue that it was unsuccessful. Further, defendants have not identified any fee related to any motion purported to be frivolous.

///

///

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

### J.  Defendants Cannot Obtain Sanctions Under Local Rule 83-7 Because They Have Not Identified Any Violation of the Local Rules.

Local Rule 83-7 permits the Court to sanction a party for violating the local rules or engaging in bad faith litigation conduct.  However, as the court held in *RG Abrams Ins. v. Law Offices of C.R. Abrams,* 2022 U.S. Dist. LEXIS 24987, *68-70 (C.D. Cal. Feb. 11, 2022), sanctions under Rule 83-7 require an actual violation—not merely disapproval of a party's legal arguments or litigation posture.

The only local rule that defendants claim plaintiff's counsel violated is Rule 7-3, for failing to meet and confer in good faith.  This argument should be rejected out of hand for failure to develop this argument.  However, even if considered, it must fail on the merits. Plaintiff's counsel met and conferred with defense counsel for 45 minutes on their summary judgment motion.  Defendants' *own counsel stated in his declaration in support of that motion that he had met and conferred.*  (Dkt. No. 89, No. 3, Declaration of Jason Tokoro, ¶ 3.)  Plaintiff's counsel complied with their obligations to meet and confer. (DiBona Decl., ¶ 37.)

Defendants do not identify a single local rule that plaintiff allegedly violated.  As the court warned in *RG Abrams,* Rule 83-7 must not become a mechanism for punishing counsel simply because their claims are disfavored.  Here, plaintiff conducted himself professionally, complied with all court rules, and litigated in good faith.  There is no basis for sanctions under Rule 83-7.

### K.  Defendants' Hours Were Not Reasonably Incurred, and Defendants Are Not Entitled to Fees When They Are Not the Prevailing Parties.

As was established above, this Court should deny defendants' request for fees altogether.  However, even if the Court were to grant fees, defendants are not entitled to the fees they claim.

Defendants agreed to waive fees and costs related to the dismissal of Sergio Escobedo and Ron Kooperud.  (Dkt. No. 119.)  Defendants' counsel therefore is not entitled to fees

related to these defendants.

Defendants did not incur additional fees related to the number of defendants. Defendants did not even move for summary judgment on behalf of the individual defendants. (Dkt. No. 89.) Therefore, they cannot attribute any fee to the fact that the individual defendants were named, and no fees should be awarded on that basis.

Further, defendants did not prevail on their anti-SLAPP motion. This Court stayed its ruling on the anti-SLAPP motion. (Dkt. No. 59.) The Court then dismissed Villanueva's state law claims without prejudice. (Dkt. No 135.) Therefore, defendants were never the prevailing parties on the anti-SLAPP motion, and fees should not be awarded for this effort.

Finally, defendants do not break down their fee request by the amount of fees they attribute to Villanueva's allegedly improper actions. For instance, they do not state how much in fees they had to incur in relation to Gil Carillo's and Maria Lopez's text messages. This is because defendants know that such fees would be *de minimis.* Defendants' counsel, at most, had to send a few e-mails related to this topic. Defendants' failure to attribute fees properly to the actions claimed means that they simply did not meet their burden of proof on the fees they claim.

### L. Defendants are Not Entitled to their Costs

Defendants make no independent argument as to why they are entitled to their costs. Therefore, this Court should deny Defendant's request for costs for the same reason as the fees should be denied above.

Further, Defendant does not establish that would not have occurred any cost but for the actions of Plaintiff's they raise in their motion. Accordingly, their request for costs fails because they did not meet their burden of proof.

///

///

///

///

**4. CONCLUSION**

For all of the foregoing reasons, Alex Villanueva respectfully requests that this Court deny defendants' Motion for Attorneys' Fees.

Dated:  June 9, 2025                    SHEGERIAN & ASSOCIATES, INC.


By: _____
          Alex DiBona, Esq.

          Attorneys for Plaintiff,
          ALEX VILLANEUVA

**VILLANUEVA v. COUNTY OF LOS ANGELES, et al.   USDC Case No. 2:24-cv 04979 SVW (JC)**

## PROOF OF SERVICE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

I am an employee in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 11520 San Vicente Boulevard, Los Angeles, California 90049.

On June 9, 2025, I served the foregoing document, described as **"PLAINTIFF ALEX VILLANUEVA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY FEES, SANCTIONS, AND COSTS,"** on all interested parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

**Louis R. Miller, Esq.**
**smiller@millerbarondess.com**
**Jason H. Tokoro, Esq.**
**jtokoro@millerbarondess.com**
**Steven G. Williamson, Esq.**
**swilliamson@millerbarondess.com**
**Miller Barondess, LLP**
**2121 Avenue of the Stars, Suite 2600**
**Los Angeles, California 90067**

☐     **(BY MAIL)** As follows:

☒     **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒     **(FEDERAL)**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 9, 2025, at Los Angeles, California.

_____
Amelia Sanchez