1  Carney R. Shegerian, Esq., State Bar No. 150461
   CShegerian@Shegerianlaw.com
2  Mahru Madjidi, Esq., State Bar No. 297906
   MMadjidi@Shegerianlaw.com
3  Alex DiBona, Esq., State Bar No. 265744
   ADiBona@shegerianlaw.com
4  SHEGERIAN & ASSOCIATES, INC.
   320 North Larchmont Boulevard
5  Los Angeles, California 90004
   Telephone Number:  (310) 860-0770
6  Facsimile Number:   (310) 860-0771

7  Attorneys for Plaintiff,
   ALEX VILLANEUVA

8

9              **UNITED STATES DISTRICT COURT**

10    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

11

12 | ALEX VILLANEUVA,                          | Case No.:  2:24-cv 04979 SVW (JC)

13 |         Plaintiff,                        | **The Honorable Stephen V. Wilson**

14 | vs.                                       | **DECLARATION OF ALEX DiBONA, ESQ., IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

15 | COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES
16 | SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF
17 | SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS
   | ANGELES COUNTY OFFICE OF     | (Filed concurrently with Memorandum of Points and Authorities; [Proposed] Order)
18 | INSPECTOR GENERAL,
19 | CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA     | Date:    June 30, 2025
   | YANG, LAURA LECRIVAIN,       | Time:    1:30 p.m.
20 | SERGIO V. ESCOBEDO, RON      | Ctrm.:   10A
21 | KOPPERUD, ROBERT G. LUNA,
   | MAX-GUSTAF HUNTSMAN,         | Trial Date:     Not Set
22 | ESTHER LIM, and DOES 1 to 100,   | Action Filed:  June 13, 2024
   | inclusive,
23
24 |         Defendants.

25

26

27

28

### DECLARATION OF ALEX DiBONA

I, Alex DiBona, declare as follows:

1.   I am an attorney at law, duly authorized to practice law before all of the courts of the State of California and this honorable Court.  I am an attorney of record for plaintiff, Alex Villanueva, in this case.  I am familiar with the files, pleadings, and facts in this case, and I could and would competently testify to the following facts on the basis of my own personal knowledge.

2.   Defendants' counsel never sent me or our office any communication related to a "safe" harbor for Rule 11.  Defendants filed their motion for the first time on May 29, 2025, for a regularly scheduled hearing, and this was the first time it had ever been served on our office.

3.   Plaintiff did not vexatiously multiply depositions.   The County submitted declarations from the following individuals in support of their motion for summary judgment:  Max Huntsman, Mercedes Cruz, Nairi Gevorki, Ron Kipperud, Veronica Pawlowski, Roberta Yang, Jonathan Lested, Ann Devane, Christine Diaz-Herrera, Constance Komorski, Ester Lim, Kyla Coates, and Laura Lecrivain.

4.   Defendants listed all of these individuals in their amended Rule 26 disclosures.

5.   Plaintiff did not take a single deposition of a witness who was not either listed in defendants' Rule 26 disclosures or who did not provide a declaration in support of defendants' Motion for Summary Judgment.

6.   Constance Marie Komoroski, Roberta Yang, and Mercedes Cruz were individual defendants in this action who made the initial recommendation to place a "do not rehire" note at the top of plaintiff's personnel file.

7.   The placement of the "do not rehire" note was the adverse action forming the gravamen of plaintiff's First Amendment retaliation claim.  Thus, deposing all three of these individuals was necessary.

8.   The County submitted declarations from all three of these individuals, further

confirming the necessity of plaintiff's deposition of these witnesses.

9.   Mercedes Cruz was also designated by the County as its Rule 30(b)(6) witness.

10.   Although plaintiff asked similar questions of Komoroski, Yang, and Cruz, plaintiff was entitled to learn whether these witnesses' answers would be inconsistent or contradictory.

11.   Plaintiff, through his counsel, was obligated to depose witnesses whose testimony the County would and did rely upon.

12.   I never agreed in any form or fashion not to depose the Board of Supervisors or Sheriff Luna.  During my meet and confer discussion with defendants' counsel, I merely stated that I understood that defense counsel considered them to be Apex witnesses.  Further, during that meet and confer session, defense counsel stated that we needed to get this issue resolved as soon as possible.  Therefore, deposition notices were sent for further meet and confer discussions or law and motion.  Further, counsel for defendants never memorialized this agreement in writing.

13.   Plaintiff disclosed in good faith that Gil Carillo "may" have knowledge regarding plaintiff's emotional distress damages.

14.   Mr. Carillo's deposition lasted approximately four hours, with most of the deposition focusing on his background, including his role as lead detective on the "Night Stalker" case.

15.   Although Mr. Carillo testified that he did not observe plaintiff's emotional distress, plaintiff believed in good faith that he might have.

16.   Mr. Tokoro's declaration, at paragraph 14, significantly distorts the record.  Plaintiff was asked in deposition, without qualification, about what documents his counsel showed him.  Plaintiff was instructed not to answer because counsel's document selection reflects attorney-client privilege and work product protection.

17.   Defendants' counsel "advised" plaintiff's counsel during the deposition that such objections were improper, but the magistrate judge ultimately sustained plaintiff's objections as proper.

18.  Defendants did not simply ask plaintiff about the "nature of his complaints." Rather, defendants asked plaintiff why certain information was not included in his First Amended Complaint, a question that necessarily involved attorney-client communications and attorney work product.

19.  Plaintiff's counsel drafted the First Amended Complaint.  Consequently, defendants' questioning improperly sought protected attorney-client communications and attorney work product.

20.  Plaintiff complied fully when the magistrate judge ordered him to answer defendants' question regarding the First Amended Complaint.  However, plaintiff answered truthfully that he relied upon his counsel to make sure that discovery responses were accurate and what information to include in his tort claim letter and his operative Complaints.

21.  The same issue arose with respect to plaintiff's discovery responses; plaintiff testified truthfully that he relied on his attorneys to ensure the accuracy of his discovery responses.

22.  Questions regarding the presence of members of plaintiff's counsel's law firm at meetings reasonably involved attorney-client privileged communications.  Indeed, defendants similarly redacted such information from their own billing records.  Although this objection was overruled, I believed at the time that it was valid and would be sustained if challenged.

23.  Importantly, the magistrate judge did not award sanctions of any type.  Further, the magistrate judge granted in part and denied in part all discovery motions. Villaneuva fully complied with all discovery orders, including sitting for a second day of deposition.

24.  Mr. Tokoro's declaration incorrectly states facts regarding medical records. Defendants requested all of plaintiff's medical records, including clearly irrelevant records from plaintiff's orthopedist and dermatologist.

25.  Defendants persisted in seeking these irrelevant records, even though plaintiff clearly stated that he had not sought emotional distress treatment from these providers.

DECLARATION OF ALEX DiBONA IN OPPOSITION TO MOTION FOR ATTORNEYS' FEES

26.    I offered to produce *all* medical records from *all medical providers,* subject to a first-look agreement and an accompanying privilege log, but defendants' counsel refused and insisted on receiving all records with no redactions.

27.    The magistrate judge ultimately sustained most of plaintiff's objections to defendants' subpoenas for medical records, ordering plaintiff to produce records only from his primary care physician.

28.    Plaintiff produced these medical records in a timely manner to both his expert and defense counsel with appropriate redactions, and defendants have never challenged these redactions.

29.    Defendants did not have to file a motion to compel plaintiff's medical records; indeed, had defendants accepted plaintiff's initial offer, defendants would have received more records than the magistrate judge ultimately ordered.

30.    Defendants clearly did not "overwhelmingly" prevail on the motion to compel, as defendants received fewer records than plaintiff initially offered.

31.    Plaintiff did not alter or delete any text message.  Our office used appropriate software to extract text messages for discovery from plaintiff's cell phone.

32.    This software allowed extraction by individual phone number and inadvertently, on certain occasions, extracted only text messages from Gil Carillo and Maria Lopez without including plaintiff's responsive messages.

33.    Plaintiff's counsel promptly acknowledged and corrected this inadvertent issue, as defendants' counsel is aware.

34.    Plaintiff, through his counsel, produced thousands of pages of text messages. Defendants have not referred to a single withheld text message unfavorable to plaintiff because none exists.

35.    Defendants omit in Mr. Tokoro's declaration that the magistrate judge stated that Vivian Villanueva's text messages should be produced subject to a privilege log, and plaintiff produced a comprehensive privilege log.

36.    A true and correct copy of plaintiff's detailed privilege log regarding Vivian

DECLARATION OF ALEX DiBONA IN OPPOSITION TO MOTION FOR ATTORNEYS' FEES

Villanueva's text messages is attached.  Defendants never met and conferred regarding any perceived inadequacy in this privilege log, nor have defendants referred to its existence.

37.  Plaintiff's motion to quash pension records subpoenas was properly supported by relevant district court cases holding such evidence inadmissible at trial.

38.  Plaintiff reasonably argued that the discoverability standard for public officials did not apply to him because plaintiff was not an elected official at the time the adverse action occurred.

39.  I signed the Joint Stipulation relating to the Motion to Quash Villanueva's pension records.  I reasonably believed that the case law cited therein advanced the argument that the records were not discoverable.  Further, defendants' counsel, in their meet and confer letter, stated that they believed the pension records were relevant to show that Villanueva did not wish to return to work.  There was case law from this very district that rejected such an argument.  Therefore, I reasonably believed that the case law supported Villanueva's position.  Further, I did not knowingly misstate or miscite any holding or quotation from any case; rather, I believed in good faith that the case law supported the position and that defendants and plaintiff's counsel simply disagreed on their respective positions.

40.  Regarding meet and confer communications, Mr. Tokoro incorrectly represents that I stated that I "do not care about the meet and confer process."  In fact, I stated that plaintiff would not agree to dismiss the claim and did not wish to prolong the call unnecessarily, but would meet and confer in good faith.

41.  During the meet and confer process, I specifically discussed disputed facts, including *Monell* liability based on Laura Lecrivain's role as a final policy maker, causation related to timing and animus from Huntsman and Lim, and defendants' concession of plaintiff's protected activity.  Our conversation lasted more than 45 minutes.  Indeed, defendants' own billing records show that this conversation took .80 hour.  I also discussed with counsel for defendants the possibility of dismissing certain individual

DECLARATION OF ALEX DiBONA IN OPPOSITION TO MOTION FOR ATTORNEYS' FEES

defendants, and we did.

42. Defendants' counsel explicitly stated that they complied with their Rule 7-3 obligations when they filed their Motion for Summary Judgment.

43. With respect to motions *in limine,* defendants clearly expressed intent to introduce evidence regarding "deputy gangs." Although defendants agreed not to admit inspector general reports, plaintiff legitimately sought a broader exclusion.

44. Plaintiff was justified in designating three emotional distress experts, each of whom employed a distinct methodology beneficial to the trier of fact.

45. None of the actions I have undertaken in this litigation was motivated by animus toward defendants or defendants' counsel; all were intended solely for rigorous advocacy.

46. Attached hereto as **Exhibit 1** is a true and correct copy defendants' of Rule 26 Disclosures.

47. Attached hereto as **Exhibit 2** are true and correct copies of relevant portions of plaintiff's second day of deposition.

48. Attached hereto as **Exhibit 3** *is a true and correct copy* of plaintiff's privilege log with respect to the text messages of Vivian Villanueva.

49. Attached hereto as **Exhibit 4** is a true and correct copy of the magistrate judge's ruling on defendants' Motion to Compel Discovery Responses.

50. Attached hereto as **Exhibit 5** is a true and correct copy of the investigator's log for Max Huntsman's complaint that was produced in discovery by the County of Los Angeles.

51. Attached hereto **Exhibit 6** is a true and correct copy of the investigator's log for Ester Lim that was produced in discovery by the County of Los Angeles

52. Attached hereto as **Exhibit 7** is a true and correct copy of the initial intake with Max Huntsman's complaint that was produced in discovery by the County of Los Angeles.

///

///

///

DECLARATION OF ALEX DiBONA IN OPPOSITION TO MOTION FOR ATTORNEYS' FEES

53.    Attached hereto **Exhibit 8** is a true and correct copy of the initial intake for Ester Lim's complaint that was produced in discovery by the County of Los Angeles

54.    Attached hereto as **Exhibit 9** is a true and correct copy of meet and confer correspondence I sent to Defense Counsel.

55.    Attached hereto **Exhibit 10** is a true and correct copy of meet and confer correspondence I sent to Defense Counsel.

56.    Attached hereto **Exhibit 11** is a true and correct copy of meet and confer correspondence I sent to Defense Counsel.

57.    Attached hereto **Exhibit 12** is a true and correct copy of meet and confer correspondence I sent to Defense Counsel.

58.    Attached hereto **Exhibit 13** is a true and correct copy of meet and confer correspondence I sent to Defense Counsel.

59.    Attached hereto **Exhibit 14** is a true and correct copy of Plaintiff's Rule 26 disclosures with respect to his expert witnesses.

I declare, under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed on this 9th day of June, 2025, at Los Angeles, California.

Alex DiBona, Esq.

DECLARATION OF ALEX DiBONA IN OPPOSITION TO MOTION FOR ATTORNEYS' FEES

# EXHIBIT 1

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
STEVEN G. WILLIAMSON (State Bar No. 343842)
swilliamson@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX VILLANUEVA,<br><br>          Plaintiff,<br><br>     v.<br><br>COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100, inclusive,<br><br>          Defendants. | **CASE NO. 2:24-cv-04979 SVW (JCx)**<br><br>**DEFENDANTS' AMENDED AND SUPPLEMENTAL RULE 26 DISCLOSURES**<br><br>Assigned to the Hon. Stephen V. Wilson and Magistrate Judge Jacqueline Chooljian<br><br>Trial Date:     June 3, 2025 |

719777.2

Defendants hereby make their amended and supplemental disclosures in accordance with Rule 26 of the Federal Rules of Civil Procedure.

Defendants make these disclosures based on the information that is reasonably available to them at this time in a good-faith effort to comply with their obligations under Rule 26. Discovery is ongoing, and the Defendants reserve the right to supplement, update and/or amend these disclosures as appropriate during the course of this action. By making these disclosures, Defendants do not represent that they are identifying every document or witness relevant to its claims, do not concede admissibility of the information disclosed, and do not waive any protections available pursuant to the attorney-client privilege, the work product doctrine, or any other applicable privilege. No incidental or implied admissions are intended. This disclosure does not include any expert witnesses. Expert witnesses will be disclosed pursuant to the Federal Rules of Civil Procedure and applicable scheduling orders of the Court.

Finally, Defendants' disclosures are made without waiver of (1) the right to object to the use of any information disclosed herein in this action or any other action, (2) the right to object to any discovery request relating to these disclosures, and (3) the right to seek a protective order under Rule 26(c).

## A.    Individuals Likely to Have Discoverable Information

In accordance with Federal Rule of Civil Procedure 26(a)(1)(A)(i), and subject to the reservation of all rights and privileges described above, Defendants believe that the persons identified below may have discoverable information regarding their claims:

| Name | Contact Information | General Subject Matter |
|---|---|---|
| Plaintiff Alex Villanueva | c/o Plaintiff's Counsel | Plaintiff may have knowledge regarding the allegations in his First Amended Complaint ("FAC"). |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

2

| **Name** | **Contact Information** | **General Subject Matter** |
|---|---|---|
| Max Huntsman | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Mr. Huntsman may have knowledge regarding the investigation into Plaintiff's harassment of Mr. Huntsman, which forms the basis of Plaintiff's FAC. |
| Esther Lim | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Ms. Lim may have knowledge regarding the investigation into Plaintiff's harassment of Ms. Lim, which forms the basis of Plaintiff's FAC. |
| Christine Diaz-Herrera | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Ms. Diaz-Herrera may have knowledge regarding the investigations that form the basis of Plaintiff's FAC. |
| Ed Alvarez | Retired from the Los Angeles County Sheriff's Department (the "Department") | Mr. Alvarez may have knowledge regarding the alleged "reopening" of investigations referenced in Plaintiff's FAC. |
| Constance Komoroski | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Ms. Komoroski is a member of the County Equity Oversight Panel ("CEOP") who may have information regarding the CEOP's recommendations related to the investigations that form the basis of Plaintiff's FAC. |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

| **Name** | **Contact Information** | **General Subject Matter** |
|---|---|---|
| Mercedes Cruz | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Ms. Cruz is a member of the CEOP who may have information regarding the CEOP's recommendations related to the investigations that form the basis of Plaintiff's FAC. |
| Roberta Yang | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Ms. Yang is a member of the CEOP who may have information regarding the CEOP's recommendations related to the investigations that form the basis of Plaintiff's FAC. |
| Ann Devane | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Lieutenant Devane may have knowledge regarding the investigations that form the basis of Plaintiff's FAC. |
| Sergio Escobedo | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Commander Escobedo may have knowledge regarding the Department's concurrence in the CEOP's recommendations related to the investigations that form the basis of Plaintiff's FAC. |
| Laura Lecrivain | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Chief Lecrivain may have knowledge regarding the Department's concurrence in the CEOP's recommendations related to the investigations that form the basis of Plaintiff's FAC. |

| **Name** | **Contact Information** | **General Subject Matter** |
|---|---|---|
| Ron Kopperud | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Commander Kopperud may have knowledge regarding the Department's concurrence in the CEOP's recommendations related to the investigations that form the basis of Plaintiff's FAC. |
| John Satterfield | Retired from the Department | Mr. Satterfield may have knowledge regarding the investigations that form the basis of Plaintiff's FAC. |
| Mark Lillienfeld | Retired from the Department | Mr. Lillienfeld may have knowledge regarding the investigations that form the basis of Plaintiff's FAC. |
| Tim Murakami | Retired from the Department | Mr. Murakami may have knowledge regarding the investigations that form the basis of Plaintiff's FAC. |
| Jonathan Lested | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Deputy Lested is a member of the Department's Intake Specialist Unit and may have knowledge of the Department's intake assessment of the Huntsman and Lim Complaints. |
| Nairi Gevorki | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Ms. Gevorki is a member of the County's Intake Specialist Unit and may have knowledge of the County's intake assessment of the Huntsman and Lim Complaints. |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL. (310) 552-4400   FAX. (310) 552-8400

| **Name** | **Contact Information** | **General Subject Matter** |
|---|---|---|
| Shawn Thomas | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Mr. Thomas may have knowledge regarding the investigations that form the basis of Plaintiff's FAC. |
| Eric Mintz | c/o Miller Barondess, LLP 2121 Avenue of the Stars Suite 2600 Los Angeles, CA 90067 (310) 552-4400 | Mr. Mintz may have knowledge regarding the investigations that form the basis of Plaintiff's FAC. |

### B.    Categories of Documents That Defendants May Use

In accordance with Federal Rule of Civil Procedure 26(a)(1)(A)(ii), and subject to the reservation of all rights and privileges described above and any ruling by the Court as to scope, Defendants may use the following documents in support their defenses (excluding documents that would be used solely for impeachment): (1) documents related to the complaints filed by Max Huntsman and Esther Lim against Plaintiff for violations of the Department's Policy of Equality; (2) documents related to the independent investigations performed into Plaintiff's misconduct; (3) the CPRA request related to those investigations submitted by the Los Angeles Times to the County, and the County's response thereto; and (4) the CPRA request related to those investigations submitted by Plaintiff to the County, and the County's response

Defendants reserve their right to identify additional documents and to object to the production of any documents described herein on any basis permitted under the Federal Rules of Civil Procedure and any other applicable law or privilege.

### C.    Insurance

Defendants do not maintain an insurance policy that is applicable to the claims in this matter.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**D.    Damages**

Defendants are not pursuing affirmative claim for damages in this lawsuit. Defendants reserve the right to assert such a claim.

Defendants deny that Plaintiff is entitled to any of the damages sought in his FAC, including any fees or costs.

**E.    Reservation of Rights**

Defendants reserve their right to supplement or amend these disclosures in light of further discovery, investigation, and trial preparation.

DATED:  March 28, 2025          MILLER BARONDESS, LLP


By:  _____
        STEVEN G. WILLIAMSON
        Attorneys for Defendants

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2600, Los Angeles, CA 90067.

On March 28, 2025, I served true copies of the following document(s) described as:

**DEFENDANTS' AMENDED AND SUPPLEMENTAL RULE 26 DISCLOSURES**

on the interested parties in this action as follows:

| | |
|---|---|
| Carney R. Shegerian | *Attorneys for Plaintiff* |
| Mahru Madjidi | ALEX VILLANUEVA |
| John David | |
| Alex DiBona | Tel.: (310) 860-0770 |
| SHEGERIAN & ASSOCIATES, INC. | Fax: (310) 860-0771 |
| 11520 San Vicente Boulevard | Email: CShegerian@Shegerianlaw.com |
| Los Angeles, CA 90049 | MMadjidi@Shegerianlaw.com |
| | JDavid@Shegerianlaw.com |
| | YCardoza@Shegerianlaw.com |
| | ADiBona@shegerianlaw.com |

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address briding@millerbarondess.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 28, 2025, at Los Angeles, California.

/ s / *Brenda M. Riding*
Brenda M. Riding

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

1

DEFENDANTS' AMENDED AND SUPPLEMENTAL RULE 26 DISCLOSURES

# EXHIBIT 2

CONFIDENTIAL

```
 1                  UNITED STATES DISTRICT COURT
 2           CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3
 4
 5       ALEX VILLANUEVA,                )
                                         )
 6                   Plaintiff,          )
                                         ) Case No.
 7             vs.                       ) 2:24-cv004979
                                         ) SVW (JCx)
 8       COUNTY OF LOS ANGELES, COUNTY   )
         OF LOS ANGELES SHERIFF'S        )
 9       DEPARTMENT, et al.,             )
                                         )
10                   Defendants.         )
         _____ )
11
12
13                        CONFIDENTIAL
14                         VOLUME II
15           VIDEOTAPED VIDEOCONFERENCE DEPOSITION
16                    OF ALEX VILLANUEVA
17                 TUESDAY, APRIL 22, 2025
18
19
20
21
22
23       JOB NO.:  7333573
24
25       REPORTED BY TARA SANDFORD, CSR NO. 3374, RPR
```

Page 335

CONFIDENTIAL

```
 1        VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF ALEX
 2   VILLANUEVA, taken on behalf of Defendants, at 10:45
 3   a.m., on Tuesday, April 22, 2025, at 2121 Avenue of the
 4   Starts, Suite 2000, Los Angeles, California, before Tara
 5   Sandford, CSR No. 3374, RPR.
 6
 7   APPEARANCES OF COUNSEL:
 8   For Plaintiff:
 9            SHEGERIAN & ASSOCIATES
              BY:  ALEX DiBONA, ESQ.
10            11520 San Vicente Boulevard
              Los Angeles, California 90049
11            310.860.0770
              adibona@shegerianlaw.com
12
13   For Defendants:
14            MILLER BARONDESS
              BY:  STEVEN WILLIAMSON, ESQ.
15            2121 Avenue of the Starts, Suite 2600
              Los Angeles, California 90067
16            310.552.4400
              swilliamson@millerbarondess.com
17
18   Also Present:  Julio Pena, Videographer
19
20
21
22
23
24
25
```

Page 336

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q.   BY MR. WILLIAMSON:   When Mr. Tokoro was taking | 10:59:49 |
| 2 | your deposition back in February, we -- he and you | |
| 3 | talked about this document a little bit; correct? | |
| 4 | A.   I believe so. | |
| 5 | Q.   It is accurate to say that one of the claims | 11:00:12 |
| 6 | that you are now making in this case is that the County | |
| 7 | has retaliated against you for engaging in various forms | |
| 8 | of alleged protected speech, such as talking about | |
| 9 | ballot measures, Fulgent, and COVID vaccine mandates; | |
| 10 | correct? | 11:00:27 |
| 11 | A.   Yes. | |
| 12 | Q.   If you would turn to -- if you look at the top, | |
| 13 | it is page 227 out of 248.   This is Exhibit 6 to your | |
| 14 | Complaint. | |
| 15 | Actually, I apologize.   Go a little bit further | 11:01:03 |
| 16 | to Exhibit Number 7, which is on page 233. | |
| 17 | When we were at your first deposition in | |
| 18 | February, do you recall Mr. Tokoro asking you whether | |
| 19 | the allegations regarding the protected speech regarding | |
| 20 | the ballot measures, and Fulgent and COVID were included | 11:01:31 |
| 21 | in your tort claim? | |
| 22 | A.   I remember something about that. | |
| 23 | Q.   Sitting here today, looking at this Exhibit 7, | |
| 24 | there is no mention of any of that in this document; | |
| 25 | correct? | 11:01:47 |

Page 347

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A.  I have to go through the whole document. | 11:01:48 |
| 2 | Q.  I think it's just one page. | |
| 3 | A.  One page? | |
| 4 | Q.  Yes. | |
| 5 | A.  I think we filed a letter that was very | 11:02:18 |
| 6 | lengthy.  This is just a cover sheet. | |
| 7 | Q.  We can get to the letter in a moment.  You | |
| 8 | would agree you don't see any references to ballot | |
| 9 | measures or Fulgent or COVID in this cover sheet; | |
| 10 | correct? | 11:02:35 |
| 11 | A.  Obviously not. | |
| 12 | Q.  So if you would turn to one page back, starting | |
| 13 | on page 235 out of 248, which is Exhibit 8 to the | |
| 14 | Complaint, this is the letter you are referencing; | |
| 15 | correct? | 11:02:45 |
| 16 | A.  Yes. | |
| 17 | Q.  This letter is dated May 15, 2024; correct? | |
| 18 | A.  Yes. | |
| 19 | Q.  And it was sent on behalf of you by your | |
| 20 | attorneys with the Shegerian firm; right? | 11:02:59 |
| 21 | A.  Yes. | |
| 22 | Q.  There is no reference in this letter to any | |
| 23 | ballot measures; correct? | |
| 24 | A.  I have to read the whole thing. | |
| 25 | Q.  Sure.  Go ahead. | 11:03:17 |

Page 348

CONFIDENTIAL

```
 1        A.    (Witness reading to himself.)              11:04:08

 2              (Clarification by the reporter.)

 3              THE WITNESS:   Okay.   What was your question?

 4        Q.    BY MR. WILLIAMSON:   Now that you've read the

 5  May 2024 letter, you don't see any reference to ballot   11:07:16

 6  measures in this letter; correct?

 7        A.    Yes, I do.

 8        Q.    Where do you see a reference to ballot

 9  measures?

10        A.    Violation of the First Amendment,            11:07:29

11  disinformation, libel and slander.   Everything that the

12  defendants, the County did was actually in violation of

13  everything I did as Sheriff of L.A. County.

14        Q.    When you say in violation of everything that

15  you did as Sheriff of L.A. County, can you expand upon    11:07:45

16  that?

17        A.    Easy.   Everything I did in my lawful position

18  as the elected Sheriff to oppose bad public policy and

19  the efforts of the County to paint me as some rogue, to

20  call for my resignation in direct response to my         11:08:02

21  opposition to their unwise policy choices.   That -- oh,

22  my God, the amount of material, you can write a book on

23  it.

24        Q.    What you are pointing to is on, just for ease,

25  is Page 242 of 248.   You are pointing to the violation   11:08:21
```

Page 349

CONFIDENTIAL

```
 1    of the First Amendment bullet point under the heading of    11:08:26
 2    "Potential Legal Theories and Claims"?
 3         A.   Yes.
 4         Q.   Where does it mention Ballot Measures A, J or
 5    R?                                                          11:08:36
 6         A.   Well, for example, Ballot Measure A, which was
 7    to authorize the board to have a 4/5th votes to remove
 8    elected Sheriff, that was actually the culmination of a
 9    lengthy process where the board, one, called for my
10    resignation, Supervisor Mark Ridley-Thomas now convicted   11:08:53
11    felon, then former or at the time Supervisor Sheila
12    Kuehl, they called for my resignation.  The oversight
13    commission called for my resignation.  They voted to
14    charge County Counsel to seek ways to remove me lawfully
15    from office.  That's a lot of information there, packed     11:09:14
16    in there.
17         Q.   So if you turn back a few pages, page 237 out
18    of 248, there is another section that's called "General
19    Facts Supporting Claim."
20         A.   Uh-huh.                                           11:09:31
21         Q.   There is no mention of Ballot Measure A in
22    there; correct?
23         A.   By name, no.
24         Q.   There is no mention of Ballot Measure R?
25         A.   No.                                               11:09:43
```

Page 350

CONFIDENTIAL

```
1        Q.   And no mention of Ballot Measure J?         11:09:43

2        A.   By name, no.

3        Q.   You say "by name," is there something else in

4    this facts section that you believe refers to any of

5    those ballot measures?                               11:09:52

6        A.   I think when they wrote it, they left it

7    general enough to cover the totality of the

8    circumstance, but they didn't give you the blow-by-blow

9    of everything they did.

10       Q.   It says here "Without any previously -- without 11:10:32

11   any previously" --

12            "Without any previous notice thereof

13   Respondents are believed to have, during the fall of

14   2023, held and/or conducted secretive closed sessions,

15   one-sided proceedings ex parte, without providing      11:10:48

16   Villanueva the opportunity to appear, testify, present

17   any and all evidence in any manner nor have

18   representation on his behalf, as well.  Such was in

19   flagrant violation of former Sheriff Villanueva's

20   numerous State and Federal rights, including, but not   11:11:03

21   limited to, his Federal and State Constitutional due

22   process and First Amendment rights."

23            Do you see that?

24       A.   Yes.

25       Q.   Nothing in those paragraphs that I just read   11:11:11
```

Page 351

CONFIDENTIAL

```
1    STATE OF CALIFORNIA,              )

2    COUNTY OF SANTA BARBARA.          ) ss.

3

4         I, TARA SANDFORD, RPR, CSR No. 3374, in and for the

5    State of California, hereby certify:

6         That prior to being examined, the witness named in

7    the foregoing deposition was duly sworn by me to testify

8    the truth, the whole truth, and nothing but the truth;

9         That said deposition was taken down by me in

10   shorthand at the time and place therein named, and

11   thereafter reduced to typewriting under my direction,

12   and the same is a true, correct and complete transcript

13   of said proceedings;

14        That if the foregoing pertains to the original

15   transcript of an examination in a Federal Case, before

16   completion of the proceedings, review of the transcript

17   {xx } was   {   } was not required.

18        I further certify that I am not interested in the

19   event of the action.

20        Witness my hand this  April 23, 2025.

21   2025, at Santa Barbara, California.

22

23

24        TARA SANDFORD, CSR NO. 3374

25
```

Page 377

# EXHIBIT 3

| ommunication | Participants |
|---|---|
| 1/1/2022 | Alex Villanueva, Vivian Villanueva |
| 1/3/2022 | Alex Villanueva, Vivian Villanueva |
| 1/4/2022 | Alex Villanueva, Vivian Villanueva |
| 1/5/2022 | Alex Villanueva, Vivian Villanueva |
| 1/10/2022 | Alex Villanueva, Vivian Villanueva |
| 1/11/2022 | Alex Villanueva, Vivian Villanueva |
| 1/14/2022 | Alex Villanueva, Vivian Villanueva |
| 1/16/2022 | Alex Villanueva, Vivian Villanueva |
| 1/20/2022 | Alex Villanueva, Vivian Villanueva |
| 1/23/2022 | Alex Villanueva, Vivian Villanueva |
| 1/24/2022 | Alex Villanueva, Vivian Villanueva |
| 1/25/2022 | Alex Villanueva, Vivian Villanueva |
| 1/27/2022 | Alex Villanueva, Vivian Villanueva |
| 1/29/2022 | Alex Villanueva, Vivian Villanueva |
| 2/2/2022 | Alex Villanueva, Vivian Villanueva |
| 2/3/2022 | Alex Villanueva, Vivian Villanueva |
| 2/4/2022 | Alex Villanueva, Vivian Villanueva |
| 2/6/2022 | Alex Villanueva, Vivian Villanueva |
| 2/7/2022 | Alex Villanueva, Vivian Villanueva |
| 2/8/2022 | Alex Villanueva, Vivian Villanueva |
| 2/14/2022 | Alex Villanueva, Vivian Villanueva |
| 2/15/2022 | Alex Villanueva, Vivian Villanueva |
| 2/19/2022 | Alex Villanueva, Vivian Villanueva |
| 2/21/2022 | Alex Villanueva, Vivian Villanueva |
| 2/24/2022 | Alex Villanueva, Vivian Villanueva |
| 2/27/2022 | Alex Villanueva, Vivian Villanueva |
| 3/1/2022 | Alex Villanueva, Vivian Villanueva |
| 3/2/2022 | Alex Villanueva, Vivian Villanueva |
| 3/9/2022 | Alex Villanueva, Vivian Villanueva |
| 3/12/2022 | Alex Villanueva, Vivian Villanueva |
| 3/13/2022 | Alex and Vivian Villanueva |
| 3/14/2022 | Alex and Vivian Villanueva |
| 3/16/2022 | Alex and Vivian Villanueva |
| 3/18/2022 | Alex and Vivian Villanueva |
| 3/19/2022 | Alex and Vivian Villanueva |
| 3/20/2022 | Alex and Vivian Villanueva |
| 3/22/2022 | Alex and Vivian Villanueva |
| 3/23/2022 | Alex and Vivian Villanueva |
| 3/23/2022 | Alex and Vivian Villanueva |
| 3/24/2022 | Alex and Vivian Villanueva |
| 3/24/2022 | Alex and Vivian Villanueva |
| 3/28/2022 | Alex and Vivian Villanueva |
| 3/30/2022 | Alex and Vivian Villanueva |

| 3/27/2022 | Alex Villanueva, Vivian Villanueva |
|---|---|
| 3/28/2022 | Alex Villanueva, Vivian Villanueva |
| 3/29/2022 | Alex Villanueva, Vivian Villanueva |
| 3/30/2022 | Alex Villanueva, Vivian Villanueva |
| 3/31/2022 | Alex Villanueva, Vivian Villanueva |
| 4/1/2022 | Alex Villanueva, Vivian Villanueva |
| 4/2/2022 | Alex Villanueva, Vivian Villanueva |
| 4/3/2022 | Alex Villanueva, Vivian Villanueva |
| 4/4/2022 | Alex Villanueva, Vivian Villanueva |
| 4/5/2022 | Alex Villanueva, Vivian Villanueva |
| 4/6/2022 | Alex Villanueva, Vivian Villanueva |
| 4/7/2022 | Alex Villanueva, Vivian Villanueva |
| 4/8/2022 | Alex Villanueva, Vivian Villanueva |
| 4/9/2022 | Alex Villanueva, Vivian Villanueva |
| 4/10/2022 | Alex Villanueva, Vivian Villanueva |
| 4/11/2022 | Alex Villanueva, Vivian Villanueva |
| 4/12/2022 | Alex Villanueva, Vivian Villanueva |
| 4/13/2022 | Alex Villanueva, Vivian Villanueva |
| 4/14/2022 | Alex Villanueva, Vivian Villanueva |
| 4/14/2022 | Alex Villanueva, Vivian Villanueva |
| 4/15/2022 | Alex Villanueva, Vivian Villanueva |
| 4/16/2022 | Alex Villanueva, Vivian Villanueva |
| 4/17/2022 | Alex Villanueva, Vivian Villanueva |
| 4/18/2022 | Alex Villanueva, Vivian Villanueva |
| 4/19/2022 | Alex Villanueva, Vivian Villanueva |
| 4/20/2022 | Alex Villanueva, Vivian Villanueva |
| 4/21/2022 | Alex Villanueva, Vivian Villanueva |
| 4/22/2022 | Alex Villanueva, Vivian Villanueva |
| 4/23/2022 | Alex Villanueva, Vivian Villanueva |
| 4/24/2022 | Alex Villanueva, Vivian Villanueva |
| 4/25/2022 | Alex Villanueva, Vivian Villanueva |
| 4/26/2022 | Alex Villanueva, Vivian Villanueva |
| 5/1/2022 | Alex Villanueva, Vivian Villanueva |
| 5/2/2022 | Alex Villanueva, Vivian Villanueva |
| 5/3/2022 | Alex Villanueva, Vivian Villanueva |
| 5/5/2022 | Alex Villanueva, Vivian Villanueva |
| 5/6/2022 | Alex Villanueva, Vivian Villanueva |
| 5/7/2022 | Alex Villanueva, Vivian Villanueva |
| 5/8/2022 | Alex Villanueva, Vivian Villanueva |
| 5/9/2022 | Alex Villanueva, Vivian Villanueva |
| 5/12/2022 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 5/15/2022 | Alex Villanueva, Vivian Villanueva |
| 5/16/2022 | Alex Villanueva, Vivian Villanueva |
| 5/18/2022 | Alex Villanueva, Vivian Villanueva |
| 5/19/2022 | Alex Villanueva, Vivian Villanueva |
| 5/21/2022 | Alex Villanueva, Vivian Villanueva |
| 5/23/2022 | Alex Villanueva, Vivian Villanueva |
| 5/24/2022 | Alex Villanueva, Vivian Villanueva |
| 5/25/2022 | Alex Villanueva, Vivian Villanueva |
| 5/28/2022 | Alex Villanueva, Vivian Villanueva |
| 5/29/2022 | Alex Villanueva, Vivian Villanueva |
| 6/1/2022 | Alex Villanueva, Vivian Villanueva |
| 6/1/2022 | Alex Villanueva, Vivian Villanueva |
| 6/2/2022 | Alex Villanueva, Vivian Villanueva |
| 6/6/2022 | Alex Villanueva, Vivian Villanueva |
| 6/8/2022 | Alex Villanueva, Vivian Villanueva |
| 6/9/2022 | Alex Villanueva, Vivian Villanueva |
| 6/10/2022 | Alex Villanueva, Vivian Villanueva |
| 6/14/2022 | Alex Villanueva, Vivian Villanueva |
| 6/16/2022 | Alex Villanueva, Vivian Villanueva |
| 6/17/2022 | Alex Villanueva, Vivian Villanueva |
| 6/18/2022 | Alex Villanueva, Vivian Villanueva |
| 6/21/2022 | Alex Villanueva, Vivian Villanueva |
| 6/22/2022 | Alex Villanueva, Vivian Villanueva |
| 6/23/2022 | Alex Villanueva, Vivian Villanueva |
| 6/26/2022 | Alex Villanueva, Vivian Villanueva |
| 6/27/2022 | Alex Villanueva, Vivian Villanueva |
| 6/28/2022 | Alex Villanueva, Vivian Villanueva |
| 6/29/2022 | Alex Villanueva, Vivian Villanueva |
| 7/3/2022 | Alex Villanueva, Vivian Villanueva |
| 7/4/2022 | Alex Villanueva, Vivian Villanueva |
| 7/6/2022 | Alex Villanueva, Vivian Villanueva |
| 7/8/2022 | Alex Villanueva, Vivian Villanueva |
| 7/9/2022 | Alex Villanueva, Vivian Villanueva |
| 7/11/2022 | Alex Villanueva, Vivian Villanueva |
| 7/13/2022 | Alex Villanueva, Vivian Villanueva |

7/14/2022     Alex Villanueva, Vivian Villanueva

7/16/2022     Alex Villanueva, Vivian Villanueva

7/19/2022     Alex Villanueva, Vivian Villanueva

7/21/2022     Alex Villanueva, Vivian Villanueva

7/22/2022     Alex Villanueva, Vivian Villanueva
7/25/2022     Alex Villanueva, Vivian Villanueva

7/26/2022     Alex Villanueva, Vivian Villanueva

7/28/2022     Alex Villanueva, Vivian Villanueva

7/29/2022     Alex Villanueva, Vivian Villanueva

7/31/2022     Alex Villanueva, Vivian Villanueva

8/1/2022     Alex Villanueva, Vivian Villanueva

8/1/2022     Alex Villanueva, Vivian Villanueva
8/3/2022     Alex Villanueva, Vivian Villanueva

8/5/2022     Alex Villanueva, Vivian Villanueva

8/6/2022     Alex Villanueva, Vivian Villanueva
8/7/2022     Alex Villanueva, Vivian Villanueva
8/9/2022     Alex Villanueva, Vivian Villanueva

8/10/2022     Alex Villanueva, Vivian Villanueva

8/12/2022     Alex Villanueva, Vivian Villanueva
8/15/2022     Alex Villanueva, Vivian Villanueva
8/16/2022     Alex Villanueva, Vivian Villanueva
8/18/2022     Alex Villanueva, Vivian Villanueva
8/19/2022     Alex Villanueva, Vivian Villanueva

8/20/2022     Alex Villanueva, Vivian Villanueva

8/21/2022     Alex Villanueva, Vivian Villanueva

8/23/2022     Alex Villanueva, Vivian Villanueva

8/24/2022     Alex Villanueva, Vivian Villanueva

8/25/2022     Alex Villanueva, Vivian Villanueva
8/28/2022     Alex Villanueva, Vivian Villanueva
8/29/2022     Alex Villanueva, Vivian Villanueva
8/30/2022     Alex Villanueva, Vivian Villanueva
9/1/2022     Alex Villanueva, Vivian Villanueva
9/2/2022     Alex Villanueva, Vivian Villanueva
9/5/2022     Alex Villanueva, Vivian Villanueva
9/6/2022     Alex Villanueva, Vivian Villanueva

| | |
|---|---|
| 9/8/2022 | Alex Villanueva, Vivian Villanueva |
| 9/9/2022 | Alex Villanueva, Vivian Villanueva |
| 9/10/2022 | Alex Villanueva, Vivian Villanueva |
| 9/11/2022 | Alex Villanueva, Vivian Villanueva |
| 9/12/2022 | Alex Villanueva, Vivian Villanueva |
| 9/13/2022 | Alex Villanueva, Vivian Villanueva |
| 9/14/2022 | Alex Villanueva, Vivian Villanueva |
| 9/17/2022 | Alex Villanueva, Vivian Villanueva |
| 9/18/2022 | Alex Villanueva, Vivian Villanueva |
| 9/18/2022 | Alex Villanueva, Vivian Villanueva |
| 9/19/2022 | Alex Villanueva, Vivian Villanueva |
| 9/20/2022 | Alex Villanueva, Vivian Villanueva |
| 9/21/2022 | Alex Villanueva, Vivian Villanueva |
| 9/22/2022 | Alex Villanueva, Vivian Villanueva |
| 9/23/2022 | Alex Villanueva, Vivian Villanueva |
| 9/26/2022 | Alex Villanueva, Vivian Villanueva |
| 9/27/2022 | Alex Villanueva, Vivian Villanueva |
| 9/28/2022 | Alex Villanueva, Vivian Villanueva |
| 9/29/2022 | Alex Villanueva, Vivian Villanueva |
| 9/30/2022 | Alex Villanueva, Vivian Villanueva |
| 10/1/2022 | Alex Villanueva, Vivian Villanueva |
| 10/2/2022 | Alex Villanueva, Vivian Villanueva |
| 10/3/2022 | Alex Villanueva, Vivian Villanueva |
| 10/5/2022 | Alex Villanueva, Vivian Villanueva |
| 10/6/2022 | Alex Villanueva, Vivian Villanueva |
| 10/7/2022 | Alex Villanueva, Vivian Villanueva |
| 10/9/2022 | Alex Villanueva, Vivian Villanueva |
| 10/10/2022 | Alex Villanueva, Vivian Villanueva |
| 10/11/2022 | Alex Villanueva, Vivian Villanueva |
| 10/12/2022 | Alex Villanueva, Vivian Villanueva |
| 10/15/2022 | Alex Villanueva, Vivian Villanueva |
| 10/16/2022 | Alex Villanueva, Vivian Villanueva |
| 10/18/2022 | Alex Villanueva, Vivian Villanueva |
| 10/20/2022 | Alex Villanueva, Vivian Villanueva |
| 10/23/2022 | Alex Villanueva, Vivian Villanueva |
| 10/24/2022 | Alex Villanueva, Vivian Villanueva |
| 10/25/2022 | Alex Villanueva, Vivian Villanueva |
| 10/27/2022 | Alex Villanueva, Vivian Villanueva |
| 10/28/2022 | Alex Villanueva, Vivian Villanueva |
| 10/29/2022 | Alex Villanueva, Vivian Villanueva |
| 10/31/2022 | Alex Villanueva, Vivian Villanueva |
| 11/1/2022 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 11/2/2022 | Alex Villanueva, Vivian Villanueva |
| 11/3/2022 | Alex Villanueva, Vivian Villanueva |
| 11/4/2022 | Alex Villanueva, Vivian Villanueva |
| 11/6/2022 | Alex Villanueva, Vivian Villanueva |
| 11/7/2022 | Alex Villanueva, Vivian Villanueva |
| 11/8/2022 | Alex Villanueva, Vivian Villanueva |
| 11/9/2022 | Alex Villanueva, Vivian Villanueva |
| 11/10/2022 | Alex Villanueva, Vivian Villanueva |
| 11/12/2022 | Alex Villanueva, Vivian Villanueva |
| 11/14/2022 | Alex Villanueva, Vivian Villanueva |
| 11/15/2022 | Alex Villanueva, Vivian Villanueva |
| 11/17/2022 | Alex Villanueva, Vivian Villanueva |
| 11/18/2022 | Alex Villanueva, Vivian Villanueva |
| 11/20/2022 | Alex Villanueva, Vivian Villanueva |
| 11/21/2022 | Alex Villanueva, Vivian Villanueva |
| 11/22/2022 | Alex Villanueva, Vivian Villanueva |
| 11/25/2022 | Alex Villanueva, Vivian Villanueva |
| 11/28/2022 | Alex Villanueva, Vivian Villanueva |
| 11/30/2022 | Alex Villanueva, Vivian Villanueva |
| 12/1/2022 | Alex Villanueva, Vivian Villanueva |
| 12/2/2022 | Alex Villanueva, Vivian Villanueva |
| 12/3/2022 | Alex Villanueva, Vivian Villanueva |
| 12/5/2022 | Alex Villanueva, Vivian Villanueva |
| 12/6/2022 | Alex Villanueva, Vivian Villanueva |
| 12/7/2022 | Alex Villanueva, Vivian Villanueva |
| 12/9/2022 | Alex Villanueva, Vivian Villanueva |
| 12/10/2022 | Alex Villanueva, Vivian Villanueva |
| 12/11/2022 | Alex Villanueva, Vivian Villanueva |
| 12/12/2022 | Alex Villanueva, Vivian Villanueva |
| 12/13/2022 | Alex Villanueva, Vivian Villanueva |
| 12/15/2022 | Alex Villanueva, Vivian Villanueva |
| 12/16/2022 | Alex Villanueva, Vivian Villanueva |
| 12/17/2022 | Alex Villanueva, Vivian Villanueva |
| 12/19/2022 | Alex Villanueva, Vivian Villanueva |
| 12/21/2022 | Alex Villanueva, Vivian Villanueva |
| 2/22/2022 | Alex Villanueva, Vivian Villanueva |
| 12/23/2022 | Alex Villanueva, Vivian Villanueva |
| 12/24/2022 | Alex Villanueva, Vivian Villanueva |
| 12/25/2022 | Alex Villanueva, Vivian Villanueva |
| 12/26/2022 | Alex Villanueva, Vivian Villanueva |
| 12/27/2022 | Alex Villanueva, Vivian Villanueva |
| 12/28/2022 | Alex Villanueva, Vivian Villanueva |
| 12/29/2022 | Alex Villanueva, Vivian Villanueva |
| 12/30/2022 | Alex Villanueva, Vivian Villanueva |
| 12/31/2022 | Alex Villanueva, Vivian Villanueva |
| 1/1/2023 | Alex Villanueva, Vivian Villanueva |
| 1/2/2023 | Alex Villanueva, Vivian Villanueva |

| 1/3/2023 | Alex Villanueva, Vivian Villanueva |
| 1/4/2023 | Alex Villanueva, Vivian Villanueva |
| 1/5/2023 | Alex Villanueva, Vivian Villanueva |
| 1/6/2023 | Alex Villanueva, Vivian Villanueva |
| 1/7/2023 | Alex Villanueva, Vivian Villanueva |
| 1/8/2023 | Alex Villanueva, Vivian Villanueva |
| 1/9/2023 | Alex Villanueva, Vivian Villanueva |
| 1/9/2023 | Alex Villanueva, Vivian Villanueva |
| 1/10/2023 | Alex Villanueva, Vivian Villanueva |
| 1/11/2023 | Alex Villanueva, Vivian Villanueva |
| 1/12/2023 | Alex Villanueva, Vivian Villanueva |
| 1/14/2023 | Alex Villanueva, Vivian Villanueva |
| 1/15/2023 | Alex Villanueva, Vivian Villanueva |
| 1/16/2023 | Alex Villanueva, Vivian Villanueva |
| 1/17/2023 | Alex Villanueva, Vivian Villanueva |
| 1/18/2023 | Alex Villanueva, Vivian Villanueva |
| 1/19/2023 | Alex Villanueva, Vivian Villanueva |
| 1/20/2023 | Alex Villanueva, Vivian Villanueva |
| 1/21/2023 | Alex Villanueva, Vivian Villanueva |
| 1/21/2023 | Alex Villanueva, Vivian Villanueva |
| 1/22/2023 | Alex Villanueva, Vivian Villanueva |
| 1/23/2023 | Alex Villanueva, Vivian Villanueva |
| 1/24/2023 | Alex Villanueva, Vivian Villanueva |
| 1/25/2023 | Alex Villanueva, Vivian Villanueva |
| 1/26/2023 | Alex Villanueva, Vivian Villanueva |
| 1/27/2023 | Alex Villanueva, Vivian Villanueva |
| 1/28/2023 | Alex Villanueva, Vivian Villanueva |
| 1/29/2023 | Alex Villanueva, Vivian Villanueva |
| 1/30/2023 | Alex Villanueva, Vivian Villanueva |
| 1/31/2023 | Alex Villanueva, Vivian Villanueva |
| 2/1/2023 | Alex Villanueva, Vivian Villanueva |
| 2/2/2023 | Alex Villanueva, Vivian Villanueva |
| 2/3/2023 | Alex Villanueva, Vivian Villanueva |
| 2/4/2023 | Alex Villanueva, Vivian Villanueva |
| 2/5/2023 | Alex Villanueva, Vivian Villanueva |
| 2/6/2023 | Alex Villanueva, Vivian Villanueva |
| 2/6/2023 | Alex Villanueva, Vivian Villanueva |
| 2/7/2023 | Alex Villanueva, Vivian Villanueva |
| 2/8/2023 | Alex Villanueva, Vivian Villanueva |
| 2/9/2023 | Alex Villanueva, Vivian Villanueva |
| 2/10/2023 | Alex Villanueva, Vivian Villanueva |
| 2/11/2023 | Alex Villanueva, Vivian Villanueva |
| 2/12/2023 | Alex Villanueva, Vivian Villanueva |
| 2/13/2023 | Alex Villanueva, Vivian Villanueva |
| 2/14/2023 | Alex Villanueva, Vivian Villanueva |
| 2/15/2023 | Alex Villanueva, Vivian Villanueva |

| 2/16/2023 | Alex Villanueva, Vivian Villanueva |
| 2/17/2023 | Alex Villanueva, Vivian Villanueva |
| 2/18/2023 | Alex Villanueva, Vivian Villanueva |
| 2/19/2023 | Alex Villanueva, Vivian Villanueva |
| 2/20/2023 | Alex Villanueva, Vivian Villanueva |
| 2/21/2023 | Alex Villanueva, Vivian Villanueva |
| 2/22/2023 | Alex Villanueva, Vivian Villanueva |
| 2/23/2023 | Alex Villanueva, Vivian Villanueva |
| 2/24/2023 | Alex Villanueva, Vivian Villanueva |
| 2/25/2023 | Alex Villanueva, Vivian Villanueva |
| 2/26/2023 | Alex Villanueva, Vivian Villanueva |
| 2/27/2023 | Alex Villanueva, Vivian Villanueva |
| 2/28/2023 | Alex Villanueva, Vivian Villanueva |
| 3/1/2023 | Alex Villanueva, Vivian Villanueva |
| 3/2/2023 | Alex Villanueva, Vivian Villanueva |
| 3/3/2023 | Alex Villanueva, Vivian Villanueva |
| 3/4/2023 | Alex Villanueva, Vivian Villanueva |
| 3/5/2023 | Alex Villanueva, Vivian Villanueva |
| 3/6/2023 | Alex Villanueva, Vivian Villanueva |
| 3/7/2023 | Alex Villanueva, Vivian Villanueva |
| 3/8/2023 | Alex Villanueva, Vivian Villanueva |
| 3/9/2023 | Alex Villanueva, Vivian Villanueva |
| 3/10/2023 | Alex Villanueva, Vivian Villanueva |
| 3/11/2023 | Alex Villanueva, Vivian Villanueva |
| 3/12/2023 | Alex Villanueva, Vivian Villanueva |
| 3/13/2023 | Alex Villanueva, Vivian Villanueva |
| 3/14/2023 | Alex Villanueva, Vivian Villanueva |
| 3/15/2023 | Alex Villanueva, Vivian Villanueva |
| 3/16/2023 | Alex Villanueva, Vivian Villanueva |
| 3/17/2023 | Alex Villanueva, Vivian Villanueva |
| 3/18/2023 | Alex Villanueva, Vivian Villanueva |
| 3/19/2023 | Alex Villanueva, Vivian Villanueva |
| 3/20/2023 | Alex Villanueva, Vivian Villanueva |
| 3/21/2023 | Alex Villanueva, Vivian Villanueva |
| 3/22/2023 | Alex Villanueva, Vivian Villanueva |
| 3/23/2023 | Alex Villanueva, Vivian Villanueva |
| 3/24/2023 | Alex Villanueva, Vivian Villanueva |
| 3/25/2023 | Alex Villanueva, Vivian Villanueva |
| 3/26/2023 | Alex Villanueva, Vivian Villanueva |
| 3/27/2023 | Alex Villanueva, Vivian Villanueva |
| 3/28/2023 | Alex Villanueva, Vivian Villanueva |
| 3/29/2023 | Alex Villanueva, Vivian Villanueva |
| 3/30/2023 | Alex Villanueva, Vivian Villanueva |
| 3/31/2023 | Alex Villanueva, Vivian Villanueva |
| 4/1/2023 | Alex Villanueva, Vivian Villanueva |
| 4/2/2023 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 4/3/2023 | Alex Villanueva, Vivian Villanueva |
| 4/4/2023 | Alex Villanueva, Vivian Villanueva |
| 4/5/2023 | Alex Villanueva, Vivian Villanueva |
| 4/6/2023 | Alex Villanueva, Vivian Villanueva |
| 4/7/2023 | Alex Villanueva, Vivian Villanueva |
| 4/8/2023 | Alex Villanueva, Vivian Villanueva |
| 4/9/2023 | Alex Villanueva, Vivian Villanueva |
| 4/10/2023 | Alex Villanueva, Vivian Villanueva |
| 4/11/2023 | Alex Villanueva, Vivian Villanueva |
| 4/12/2023 | Alex Villanueva, Vivian Villanueva |
| 4/13/2023 | Alex Villanueva, Vivian Villanueva |
| 4/14/2023 | Alex Villanueva, Vivian Villanueva |
| 4/15/2023 | Alex Villanueva, Vivian Villanueva |
| 4/16/2023 | Alex Villanueva, Vivian Villanueva |
| 4/17/2023 | Alex Villanueva, Vivian Villanueva |
| 4/18/2023 | Alex Villanueva, Vivian Villanueva |
| 4/19/2023 | Alex Villanueva, Vivian Villanueva |
| 4/20/2023 | Alex Villanueva, Vivian Villanueva |
| 4/21/2023 | Alex Villanueva, Vivian Villanueva |
| 4/22/2023 | Alex Villanueva, Vivian Villanueva |
| 4/23/2023 | Alex Villanueva, Vivian Villanueva |
| 4/24/2023 | Alex Villanueva, Vivian Villanueva |
| 4/25/2023 | Alex Villanueva, Vivian Villanueva |
| 4/26/2023 | Alex Villanueva, Vivian Villanueva |
| 4/27/2023 | Alex Villanueva, Vivian Villanueva |
| 4/28/2023 | Alex Villanueva, Vivian Villanueva |
| 4/29/2023 | Alex Villanueva, Vivian Villanueva |
| 4/30/2023 | Alex Villanueva, Vivian Villanueva |
| 5/1/2023 | Alex Villanueva, Vivian Villanueva |
| 5/2/2023 | Alex Villanueva, Vivian Villanueva |
| 5/3/2023 | Alex Villanueva, Vivian Villanueva |
| 5/4/2023 | Alex Villanueva, Vivian Villanueva |
| 5/5/2023 | Alex Villanueva, Vivian Villanueva |
| 5/6/2023 | Alex Villanueva, Vivian Villanueva |
| 5/7/2023 | Alex Villanueva, Vivian Villanueva |
| 5/8/2023 | Alex Villanueva, Vivian Villanueva |
| 5/9/2023 | Alex Villanueva, Vivian Villanueva |
| 5/10/2023 | Alex Villanueva, Vivian Villanueva |
| 5/11/2023 | Alex Villanueva, Vivian Villanueva |
| 5/12/2023 | Alex Villanueva, Vivian Villanueva |
| 5/13/2023 | Alex Villanueva, Vivian Villanueva |
| 5/14/2023 | Alex Villanueva, Vivian Villanueva |
| 5/15/2023 | Alex Villanueva, Vivian Villanueva |
| 5/16/2023 | Alex Villanueva, Vivian Villanueva |
| 5/17/2023 | Alex Villanueva, Vivian Villanueva |
| 5/18/2023 | Alex Villanueva, Vivian Villanueva |
| 5/19/2023 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 5/20/2023 | Alex Villanueva, Vivian Villanueva |
| 5/21/2023 | Alex Villanueva, Vivian Villanueva |
| 5/22/2023 | Alex Villanueva, Vivian Villanueva |
| 5/23/2023 | Alex Villanueva, Vivian Villanueva |
| 5/24/2023 | Alex Villanueva, Vivian Villanueva |
| 5/25/2023 | Alex Villanueva, Vivian Villanueva |
| 5/26/2023 | Alex Villanueva, Vivian Villanueva |
| 5/27/2023 | Alex Villanueva, Vivian Villanueva |
| 5/28/2023 | Alex Villanueva, Vivian Villanueva |
| 5/29/2023 | Alex Villanueva, Vivian Villanueva |
| 5/30/2023 | Alex Villanueva, Vivian Villanueva |
| 5/31/2023 | Alex Villanueva, Vivian Villanueva |
| 6/1/2023 | Alex Villanueva, Vivian Villanueva |
| 6/2/2023 | Alex Villanueva, Vivian Villanueva |
| 6/3/2023 | Alex Villanueva, Vivian Villanueva |
| 6/4/2023 | Alex Villanueva, Vivian Villanueva |
| 6/5/2023 | Alex Villanueva, Vivian Villanueva |
| 6/6/2023 | Alex Villanueva, Vivian Villanueva |
| 6/7/2023 | Alex Villanueva, Vivian Villanueva |
| 6/8/2023 | Alex Villanueva, Vivian Villanueva |
| 6/9/2023 | Alex Villanueva, Vivian Villanueva |
| 6/10/2023 | Alex Villanueva, Vivian Villanueva |
| 6/11/2023 | Alex Villanueva, Vivian Villanueva |
| 6/12/2023 | Alex Villanueva, Vivian Villanueva |
| 6/13/2023 | Alex Villanueva, Vivian Villanueva |
| 6/14/2023 | Alex Villanueva, Vivian Villanueva |
| 6/15/2023 | Alex Villanueva, Vivian Villanueva |
| 6/16/2023 | Alex Villanueva, Vivian Villanueva |
| 6/17/2023 | Alex Villanueva, Vivian Villanueva |
| 6/18/2023 | Alex Villanueva, Vivian Villanueva |
| 6/19/2023 | Alex Villanueva, Vivian Villanueva |
| 6/20/2023 | Alex Villanueva, Vivian Villanueva |
| 6/21/2023 | Alex Villanueva, Vivian Villanueva |
| 6/22/2023 | Alex Villanueva, Vivian Villanueva |
| 6/23/2023 | Alex Villanueva, Vivian Villanueva |
| 6/24/2023 | Alex Villanueva, Vivian Villanueva |
| 6/25/2023 | Alex Villanueva, Vivian Villanueva |
| 6/26/2023 | Alex Villanueva, Vivian Villanueva |
| 6/27/2023 | Alex Villanueva, Vivian Villanueva |
| 6/28/2023 | Alex Villanueva, Vivian Villanueva |
| 6/29/2023 | Alex Villanueva, Vivian Villanueva |
| 6/30/2023 | Alex Villanueva, Vivian Villanueva |
| 7/1/2023 | Alex Villanueva, Vivian Villanueva |
| 7/2/2023 | Alex Villanueva, Vivian Villanueva |
| 7/3/2023 | Alex Villanueva, Vivian Villanueva |
| 7/4/2023 | Alex Villanueva, Vivian Villanueva |
| 7/5/2023 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 7/6/2023 | Alex Villanueva, Vivian Villanueva |
| 7/7/2023 | Alex Villanueva, Vivian Villanueva |
| 7/8/2023 | Alex Villanueva, Vivian Villanueva |
| 7/9/2023 | Alex Villanueva, Vivian Villanueva |
| 7/10/2023 | Alex Villanueva, Vivian Villanueva |
| 7/11/2023 | Alex Villanueva, Vivian Villanueva |
| 7/12/2023 | Alex Villanueva, Vivian Villanueva |
| 7/13/2023 | Alex Villanueva, Vivian Villanueva |
| 7/14/2023 | Alex Villanueva, Vivian Villanueva |
| 7/15/2023 | Alex Villanueva, Vivian Villanueva |
| 7/16/2023 | Alex Villanueva, Vivian Villanueva |
| 7/17/2023 | Alex Villanueva, Vivian Villanueva |
| 7/18/2023 | Alex Villanueva, Vivian Villanueva |
| 7/19/2023 | Alex Villanueva, Vivian Villanueva |
| 7/20/2023 | Alex Villanueva, Vivian Villanueva |
| /21/2023 | Alex Villanueva, Vivian Villanueva |
| 7/22/2023 | Alex Villanueva, Vivian Villanueva |
| 7/23/2023 | Alex Villanueva, Vivian Villanueva |
| 7/24/2023 | Alex Villanueva, Vivian Villanueva |
| 7/25/2023 | Alex Villanueva, Vivian Villanueva |
| 7/26/2023 | Alex Villanueva, Vivian Villanueva |
| 7/27/2023 | Alex Villanueva, Vivian Villanueva |
| 7/28/2023 | Alex Villanueva, Vivian Villanueva |
| 7/29/2023 | Alex Villanueva, Vivian Villanueva |
| 7/30/2023 | Alex Villanueva, Vivian Villanueva |
| 7/31/2023 | Alex Villanueva, Vivian Villanueva |
| 8/1/2023 | Alex Villanueva, Vivian Villanueva |
| 8/2/2023 | Alex Villanueva, Vivian Villanueva |
| 8/3/2023 | Alex Villanueva, Vivian Villanueva |
| 8/4/2023 | Alex Villanueva, Vivian Villanueva |
| 8/5/2023 | Alex Villanueva, Vivian Villanueva |
| 8/6/2023 | Alex Villanueva, Vivian Villanueva |
| 8/7/2023 | Alex Villanueva, Vivian Villanueva |
| 8/8/2023 | Alex Villanueva, Vivian Villanueva |
| 8/9/2023 | Alex Villanueva, Vivian Villanueva |
| 8/10/2023 | Alex Villanueva, Vivian Villanueva |
| 8/11/2023 | Alex Villanueva, Vivian Villanueva |
| 8/12/2023 | Alex Villanueva, Vivian Villanueva |
| 8/13/2023 | Alex Villanueva, Vivian Villanueva |
| 8/14/2023 | Alex Villanueva, Vivian Villanueva |
| 8/15/2023 | Alex Villanueva, Vivian Villanueva |
| 8/16/2023 | Alex Villanueva, Vivian Villanueva |
| 8/17/2023 | Alex Villanueva, Vivian Villanueva |
| 8/18/2023 | Alex Villanueva, Vivian Villanueva |
| 8/19/2023 | Alex Villanueva, Vivian Villanueva |
| 8/20/2023 | Alex Villanueva, Vivian Villanueva |
| 8/21/2023 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 8/22/2023 | Alex Villanueva, Vivian Villanueva |
| 8/23/2023 | Alex Villanueva, Vivian Villanueva |
| 8/24/2023 | Alex Villanueva, Vivian Villanueva |
| 8/25/2023 | Alex Villanueva, Vivian Villanueva |
| 8/26/2023 | Alex Villanueva, Vivian Villanueva |
| 8/27/2023 | Alex Villanueva, Vivian Villanueva |
| 8/28/2023 | Alex Villanueva, Vivian Villanueva |
| 8/29/2023 | Alex Villanueva, Vivian Villanueva |
| 8/30/2023 | Alex Villanueva, Vivian Villanueva |
| 8/31/2023 | Alex Villanueva, Vivian Villanueva |
| 9/1/2023 | Alex Villanueva, Vivian Villanueva |
| 9/2/2023 | Alex Villanueva, Vivian Villanueva |
| 9/3/2023 | Alex Villanueva, Vivian Villanueva |
| 9/4/2023 | Alex Villanueva, Vivian Villanueva |
| 9/5/2023 | Alex Villanueva, Vivian Villanueva |
| 9/6/2023 | Alex Villanueva, Vivian Villanueva |
| 9/6/2023 | Alex Villanueva, Vivian Villanueva |
| 9/7/2023 | Alex Villanueva, Vivian Villanueva |
| 9/8/2023 | Alex Villanueva, Vivian Villanueva |
| 9/9/2023 | Alex Villanueva, Vivian Villanueva |
| 9/10/2023 | Alex Villanueva, Vivian Villanueva |
| 9/11/2023 | Alex Villanueva, Vivian Villanueva |
| 9/12/2023 | Alex Villanueva, Vivian Villanueva |
| 9/13/2023 | Alex Villanueva, Vivian Villanueva |
| 9/14/2023 | Alex Villanueva, Vivian Villanueva |
| 9/15/2023 | Alex Villanueva, Vivian Villanueva |
| 9/16/2023 | Alex Villanueva, Vivian Villanueva |
| 9/17/2023 | Alex Villanueva, Vivian Villanueva |
| 9/18/2023 | Alex Villanueva, Vivian Villanueva |
| 9/19/2023 | Alex Villanueva, Vivian Villanueva |
| 9/20/2023 | Alex Villanueva, Vivian Villanueva |
| 9/21/2023 | Alex Villanueva, Vivian Villanueva |
| 9/22/2023 | Alex Villanueva, Vivian Villanueva |
| 9/23/2023 | Alex Villanueva, Vivian Villanueva |
| 9/24/2023 | Alex Villanueva, Vivian Villanueva |
| 9/25/2023 | Alex Villanueva, Vivian Villanueva |
| 9/26/2023 | Alex Villanueva, Vivian Villanueva |
| 9/27/2023 | Alex Villanueva, Vivian Villanueva |
| 9/28/2023 | Alex Villanueva, Vivian Villanueva |
| 9/29/2023 | Alex Villanueva, Vivian Villanueva |
| 9/30/2023 | Alex Villanueva, Vivian Villanueva |
| 10/1/2023 | Alex Villanueva, Vivian Villanueva |
| 10/2/2023 | Alex Villanueva, Vivian Villanueva |
| 10/3/2023 | Alex Villanueva, Vivian Villanueva |
| 10/4/2023 | Alex Villanueva, Vivian Villanueva |
| 10/5/2023 | Alex Villanueva, Vivian Villanueva |
| 10/6/2023 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 10/7/2023 | Alex Villanueva, Vivian Villanueva |
| 10/8/2023 | Alex Villanueva, Vivian Villanueva |
| 10/9/2023 | Alex Villanueva, Vivian Villanueva |
| 10/10/2023 | Alex Villanueva, Vivian Villanueva |
| 10/11/2023 | Alex Villanueva, Vivian Villanueva |
| 10/12/2023 | Alex Villanueva, Vivian Villanueva |
| 10/13/2023 | Alex Villanueva, Vivian Villanueva |
| 10/14/2023 | Alex Villanueva, Vivian Villanueva |
| 10/15/2023 | Alex Villanueva, Vivian Villanueva |
| 10/16/2023 | Alex Villanueva, Vivian Villanueva |
| 10/17/2023 | Alex Villanueva, Vivian Villanueva |
| 10/18/2023 | Alex Villanueva, Vivian Villanueva |
| 10/19/2023 | Alex Villanueva, Vivian Villanueva |
| 10/20/2023 | Alex Villanueva, Vivian Villanueva |
| 10/21/2023 | Alex Villanueva, Vivian Villanueva |
| 10/22/2023 | Alex Villanueva, Vivian Villanueva |
| 10/23/2023 | Alex Villanueva, Vivian Villanueva |
| 10/24/2023 | Alex Villanueva, Vivian Villanueva |
| 10/25/2023 | Alex Villanueva, Vivian Villanueva |
| 10/26/2023 | Alex Villanueva, Vivian Villanueva |
| 10/27/2023 | Alex Villanueva, Vivian Villanueva |
| 10/28/2023 | Alex Villanueva, Vivian Villanueva |
| 10/29/2023 | Alex Villanueva, Vivian Villanueva |
| 10/30/2023 | Alex Villanueva, Vivian Villanueva |
| 10/31/2023 | Alex Villanueva, Vivian Villanueva |
| 11/1/2023 | Alex Villanueva, Vivian Villanueva |
| 11/2/2023 | Alex Villanueva, Vivian Villanueva |
| 11/3/2023 | Alex Villanueva, Vivian Villanueva |
| 11/4/2023 | Alex Villanueva, Vivian Villanueva |
| 11/5/2023 | Alex Villanueva, Vivian Villanueva |
| 11/6/2023 | Alex Villanueva, Vivian Villanueva |
| 11/7/2023 | Alex Villanueva, Vivian Villanueva |
| 11/8/2023 | Alex Villanueva, Vivian Villanueva |
| 11/9/2023 | Alex Villanueva, Vivian Villanueva |
| 11/10/2023 | Alex Villanueva, Vivian Villanueva |
| 11/11/2023 | Alex Villanueva, Vivian Villanueva |
| 11/12/2023 | Alex Villanueva, Vivian Villanueva |
| 11/13/2023 | Alex Villanueva, Vivian Villanueva |
| 11/14/2023 | Alex Villanueva, Vivian Villanueva |
| 11/15/2023 | Alex Villanueva, Vivian Villanueva |
| 11/16/2023 | Alex Villanueva, Vivian Villanueva |
| 11/17/2023 | Alex Villanueva, Vivian Villanueva |
| 11/18/2023 | Alex Villanueva, Vivian Villanueva |
| 11/19/2023 | Alex Villanueva, Vivian Villanueva |
| 11/20/2023 | Alex Villanueva, Vivian Villanueva |
| 11/20/2023 | Alex Villanueva, Vivian Villanueva |
| 11/21/2023 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 11/22/2023 | Alex Villanueva, Vivian Villanueva |
| 11/23/2023 | Alex Villanueva, Vivian Villanueva |
| 11/24/2023 | Alex Villanueva, Vivian Villanueva |
| 11/25/2023 | Alex Villanueva, Vivian Villanueva |
| 11/26/2023 | Alex Villanueva, Vivian Villanueva |
| 11/27/2023 | Alex Villanueva, Vivian Villanueva |
| 11/28/2023 | Alex Villanueva, Vivian Villanueva |
| 11/29/2023 | Alex Villanueva, Vivian Villanueva |
| 11/30/2023 | Alex Villanueva, Vivian Villanueva |
| 12/1/2023 | Alex Villanueva, Vivian Villanueva |
| 12/2/2023 | Alex Villanueva, Vivian Villanueva |
| 12/3/2023 | Alex Villanueva, Vivian Villanueva |
| 12/4/2023 | Alex Villanueva, Vivian Villanueva |
| 12/5/2023 | Alex Villanueva, Vivian Villanueva |
| 12/6/2023 | Alex Villanueva, Vivian Villanueva |
| 12/7/2023 | Alex Villanueva, Vivian Villanueva |
| 12/8/2023 | Alex Villanueva, Vivian Villanueva |
| 12/9/2023 | Alex Villanueva, Vivian Villanueva |
| 12/10/2023 | Alex Villanueva, Vivian Villanueva |
| 12/11/2023 | Alex Villanueva, Vivian Villanueva |
| 12/12/2023 | Alex Villanueva, Vivian Villanueva |
| 12/13/2023 | Alex Villanueva, Vivian Villanueva |
| 12/14/2023 | Alex Villanueva, Vivian Villanueva |
| 12/15/2023 | Alex Villanueva, Vivian Villanueva |
| 12/16/2023 | Alex Villanueva, Vivian Villanueva |
| 12/17/2023 | Alex Villanueva, Vivian Villanueva |
| 12/18/2023 | Alex Villanueva, Vivian Villanueva |
| 12/19/2023 | Alex Villanueva, Vivian Villanueva |
| 12/20/2023 | Alex Villanueva, Vivian Villanueva |
| 12/21/2023 | Alex Villanueva, Vivian Villanueva |
| 12/22/2023 | Alex Villanueva, Vivian Villanueva |
| 12/23/2023 | Alex Villanueva, Vivian Villanueva |
| 12/24/2023 | Alex Villanueva, Vivian Villanueva |
| 12/25/2023 | Alex Villanueva, Vivian Villanueva |
| 12/26/2023 | Alex Villanueva, Vivian Villanueva |
| 12/27/2023 | Alex Villanueva, Vivian Villanueva |
| 12/28/2023 | Alex Villanueva, Vivian Villanueva |
| 12/29/2023 | Alex Villanueva, Vivian Villanueva |
| 12/30/2023 | Alex Villanueva, Vivian Villanueva |
| 12/31/2023 | Alex Villanueva, Vivian Villanueva |
| 1/1/2024 | Alex Villanueva, Vivian Villanueva |
| 1/2/2024 | Alex Villanueva, Vivian Villanueva |
| 1/3/2024 | Alex Villanueva, Vivian Villanueva |
| 1/4/2024 | Alex Villanueva, Vivian Villanueva |
| 1/5/2024 | Alex Villanueva, Vivian Villanueva |
| 1/6/2024 | Alex Villanueva, Vivian Villanueva |
| 1/7/2024 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 1/8/2024 | Alex Villanueva, Vivian Villanueva |
| 1/9/2024 | Alex Villanueva, Vivian Villanueva |
| 1/10/2024 | Alex Villanueva, Vivian Villanueva |
| 1/11/2024 | Alex Villanueva, Vivian Villanueva |
| 1/12/2024 | Alex Villanueva, Vivian Villanueva |
| 1/13/2024 | Alex Villanueva, Vivian Villanueva |
| 1/14/2024 | Alex Villanueva, Vivian Villanueva |
| 1/15/2024 | Alex Villanueva, Vivian Villanueva |
| 1/16/2024 | Alex Villanueva, Vivian Villanueva |
| 1/17/2024 | Alex Villanueva, Vivian Villanueva |
| 1/18/2024 | Alex Villanueva, Vivian Villanueva |
| 1/19/2024 | Alex Villanueva, Vivian Villanueva |
| 1/20/2024 | Alex Villanueva, Vivian Villanueva |
| 1/21/2024 | Alex Villanueva, Vivian Villanueva |
| 1/22/2024 | Alex Villanueva, Vivian Villanueva |
| 1/23/2024 | Alex Villanueva, Vivian Villanueva |
| 1/24/2024 | Alex Villanueva, Vivian Villanueva |
| 1/25/2024 | Alex Villanueva, Vivian Villanueva |
| 1/26/2024 | Alex Villanueva, Vivian Villanueva |
| 1/27/2024 | Alex Villanueva, Vivian Villanueva |
| 1/28/2024 | Alex Villanueva, Vivian Villanueva |
| 1/29/2024 | Alex Villanueva, Vivian Villanueva |
| 1/30/2024 | Alex Villanueva, Vivian Villanueva |
| 1/31/2024 | Alex Villanueva, Vivian Villanueva |
| 2/1/2024 | Alex Villanueva, Vivian Villanueva |
| 2/2/2024 | Alex Villanueva, Vivian Villanueva |
| 2/3/2024 | Alex Villanueva, Vivian Villanueva |
| 2/4/2024 | Alex Villanueva, Vivian Villanueva |
| 2/5/2024 | Alex Villanueva, Vivian Villanueva |
| 2/6/2024 | Alex Villanueva, Vivian Villanueva |
| 2/7/2024 | Alex Villanueva, Vivian Villanueva |
| 2/8/2024 | Alex Villanueva, Vivian Villanueva |
| 2/9/2024 | Alex Villanueva, Vivian Villanueva |
| 2/10/2024 | Alex Villanueva, Vivian Villanueva |
| 2/11/2024 | Alex Villanueva, Vivian Villanueva |
| 2/12/2024 | Alex Villanueva, Vivian Villanueva |
| 2/13/2024 | Alex Villanueva, Vivian Villanueva |
| 2/14/2024 | Alex Villanueva, Vivian Villanueva |
| 2/15/2024 | Alex Villanueva, Vivian Villanueva |
| 2/16/2024 | Alex Villanueva, Vivian Villanueva |
| 2/17/2024 | Alex Villanueva, Vivian Villanueva |
| 2/18/2024 | Alex Villanueva, Vivian Villanueva |
| 2/19/2024 | Alex Villanueva, Vivian Villanueva |
| 2/20/2024 | Alex Villanueva, Vivian Villanueva |
| 2/21/2024 | Alex Villanueva, Vivian Villanueva |
| 2/22/2024 | Alex Villanueva, Vivian Villanueva |
| 2/23/2024 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 2/24/2024 | Alex Villanueva, Vivian Villanueva |
| 2/25/2024 | Alex Villanueva, Vivian Villanueva |
| 2/26/2024 | Alex Villanueva, Vivian Villanueva |
| 2/27/2024 | Alex Villanueva, Vivian Villanueva |
| 2/28/2024 | Alex Villanueva, Vivian Villanueva |
| 2/29/2024 | Alex Villanueva, Vivian Villanueva |
| 3/1/2024 | Alex Villanueva, Vivian Villanueva |
| 3/2/2024 | Alex Villanueva, Vivian Villanueva |
| 3/3/2024 | Alex Villanueva, Vivian Villanueva |
| 3/4/2024 | Alex Villanueva, Vivian Villanueva |
| 3/5/2024 | Alex Villanueva, Vivian Villanueva |
| 3/6/2024 | Alex Villanueva, Vivian Villanueva |
| 3/7/2024 | Alex Villanueva, Vivian Villanueva |
| 3/8/2024 | Alex Villanueva, Vivian Villanueva |
| 3/9/2024 | Alex Villanueva, Vivian Villanueva |
| 3/10/2024 | Alex Villanueva, Vivian Villanueva |
| 3/11/2024 | Alex Villanueva, Vivian Villanueva |
| 3/12/2024 | Alex Villanueva, Vivian Villanueva |
| 3/13/2024 | Alex Villanueva, Vivian Villanueva |
| 3/14/2024 | Alex Villanueva, Vivian Villanueva |
| 3/15/2024 | Alex Villanueva, Vivian Villanueva |
| 3/16/2024 | Alex Villanueva, Vivian Villanueva |
| 3/17/2024 | Alex Villanueva, Vivian Villanueva |
| 3/18/2024 | Alex Villanueva, Vivian Villanueva |
| 3/19/2024 | Alex Villanueva, Vivian Villanueva |
| 3/20/2024 | Alex Villanueva, Vivian Villanueva |
| 3/21/2024 | Alex Villanueva, Vivian Villanueva |
| 3/22/2024 | Alex Villanueva, Vivian Villanueva |
| 3/23/2024 | Alex Villanueva, Vivian Villanueva |
| 3/24/2024 | Alex Villanueva, Vivian Villanueva |
| 3/25/2024 | Alex Villanueva, Vivian Villanueva |
| 3/26/2024 | Alex Villanueva, Vivian Villanueva |
| 3/27/2024 | Alex Villanueva, Vivian Villanueva |
| 3/28/2024 | Alex Villanueva, Vivian Villanueva |
| 3/29/2024 | Alex Villanueva, Vivian Villanueva |
| 3/30/2024 | Alex Villanueva, Vivian Villanueva |
| 3/31/2024 | Alex Villanueva, Vivian Villanueva |
| 4/1/2024 | Alex Villanueva, Vivian Villanueva |
| 4/2/2024 | Alex Villanueva, Vivian Villanueva |
| 4/3/2024 | Alex Villanueva, Vivian Villanueva |
| 4/4/2024 | Alex Villanueva, Vivian Villanueva |
| 4/5/2024 | Alex Villanueva, Vivian Villanueva |
| 4/6/2024 | Alex Villanueva, Vivian Villanueva |
| 4/7/2024 | Alex Villanueva, Vivian Villanueva |
| 4/8/2024 | Alex Villanueva, Vivian Villanueva |
| 4/9/2024 | Alex Villanueva, Vivian Villanueva |
| 4/10/2024 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 4/11/2024 | Alex Villanueva, Vivian Villanueva |
| 4/12/2024 | Alex Villanueva, Vivian Villanueva |
| 4/13/2024 | Alex Villanueva, Vivian Villanueva |
| 4/14/2024 | Alex Villanueva, Vivian Villanueva |
| 4/15/2024 | Alex Villanueva, Vivian Villanueva |
| 4/16/2024 | Alex Villanueva, Vivian Villanueva |
| 4/17/2024 | Alex Villanueva, Vivian Villanueva |
| 4/18/2024 | Alex Villanueva, Vivian Villanueva |
| 4/19/2024 | Alex Villanueva, Vivian Villanueva |
| 4/20/2024 | Alex Villanueva, Vivian Villanueva |
| 4/21/2024 | Alex Villanueva, Vivian Villanueva |
| 4/22/2024 | Alex Villanueva, Vivian Villanueva |
| 4/23/2024 | Alex Villanueva, Vivian Villanueva |
| 4/24/2024 | Alex Villanueva, Vivian Villanueva |
| 4/25/2024 | Alex Villanueva, Vivian Villanueva |
| 4/26/2024 | Alex Villanueva, Vivian Villanueva |
| 4/27/2024 | Alex Villanueva, Vivian Villanueva |
| 4/28/2024 | Alex Villanueva, Vivian Villanueva |
| 4/29/2024 | Alex Villanueva, Vivian Villanueva |
| 4/30/2024 | Alex Villanueva, Vivian Villanueva |
| 5/1/2024 | Alex Villanueva, Vivian Villanueva |
| 5/2/2024 | Alex Villanueva, Vivian Villanueva |
| 5/3/2024 | Alex Villanueva, Vivian Villanueva |
| 5/4/2024 | Alex Villanueva, Vivian Villanueva |
| 5/5/2024 | Alex Villanueva, Vivian Villanueva |
| 5/6/2024 | Alex Villanueva, Vivian Villanueva |
| 5/7/2024 | Alex Villanueva, Vivian Villanueva |
| 5/8/2024 | Alex Villanueva, Vivian Villanueva |
| 5/9/2024 | Alex Villanueva, Vivian Villanueva |
| 5/10/2024 | Alex Villanueva, Vivian Villanueva |
| 5/11/2024 | Alex Villanueva, Vivian Villanueva |
| 5/12/2024 | Alex Villanueva, Vivian Villanueva |
| 5/13/2024 | Alex Villanueva, Vivian Villanueva |
| 5/14/2024 | Alex Villanueva, Vivian Villanueva |
| 5/15/2024 | Alex Villanueva, Vivian Villanueva |
| 5/16/2024 | Alex Villanueva, Vivian Villanueva |
| 5/17/2024 | Alex Villanueva, Vivian Villanueva |
| 5/18/2024 | Alex Villanueva, Vivian Villanueva |
| 5/19/2024 | Alex Villanueva, Vivian Villanueva |
| 5/20/2024 | Alex Villanueva, Vivian Villanueva |
| 5/21/2024 | Alex Villanueva, Vivian Villanueva |
| 5/22/2024 | Alex Villanueva, Vivian Villanueva |
| 5/23/2024 | Alex Villanueva, Vivian Villanueva |
| 5/24/2024 | Alex Villanueva, Vivian Villanueva |
| 5/25/2024 | Alex Villanueva, Vivian Villanueva |
| 5/26/2024 | Alex Villanueva, Vivian Villanueva |
| 5/27/2024 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 5/28/2024 | Alex Villanueva, Vivian Villanueva |
| 5/29/2024 | Alex Villanueva, Vivian Villanueva |
| 5/30/2024 | Alex Villanueva, Vivian Villanueva |
| 5/31/2024 | Alex Villanueva, Vivian Villanueva |
| 6/1/2024 | Alex Villanueva, Vivian Villanueva |
| 6/2/2024 | Alex Villanueva, Vivian Villanueva |
| 6/3/2024 | Alex Villanueva, Vivian Villanueva |
| 6/4/2024 | Alex Villanueva, Vivian Villanueva |
| 6/5/2024 | Alex Villanueva, Vivian Villanueva |
| 6/6/2024 | Alex Villanueva, Vivian Villanueva |
| 6/7/2024 | Alex Villanueva, Vivian Villanueva |
| 6/8/2024 | Alex Villanueva, Vivian Villanueva |
| 6/9/2024 | Alex Villanueva, Vivian Villanueva |
| 6/10/2024 | Alex Villanueva, Vivian Villanueva |
| 6/11/2024 | Alex Villanueva, Vivian Villanueva |
| 6/12/2024 | Alex Villanueva, Vivian Villanueva |
| 6/13/2024 | Alex Villanueva, Vivian Villanueva |
| 6/14/2024 | Alex Villanueva, Vivian Villanueva |
| 6/15/2024 | Alex Villanueva, Vivian Villanueva |
| 6/16/2024 | Alex Villanueva, Vivian Villanueva |
| 6/17/2024 | Alex Villanueva, Vivian Villanueva |
| 6/18/2024 | Alex Villanueva, Vivian Villanueva |
| 6/19/2024 | Alex Villanueva, Vivian Villanueva |
| 6/20/2024 | Alex Villanueva, Vivian Villanueva |
| 6/21/2024 | Alex Villanueva, Vivian Villanueva |
| 6/22/2024 | Alex Villanueva, Vivian Villanueva |
| 6/23/2024 | Alex Villanueva, Vivian Villanueva |
| 6/24/2024 | Alex Villanueva, Vivian Villanueva |
| 6/25/2024 | Alex Villanueva, Vivian Villanueva |
| 6/26/2024 | Alex Villanueva, Vivian Villanueva |
| 6/27/2024 | Alex Villanueva, Vivian Villanueva |
| 6/28/2024 | Alex Villanueva, Vivian Villanueva |
| 6/29/2024 | Alex Villanueva, Vivian Villanueva |
| 6/30/2024 | Alex Villanueva, Vivian Villanueva |
| 7/1/2024 | Alex Villanueva, Vivian Villanueva |
| 7/2/2024 | Alex Villanueva, Vivian Villanueva |
| 7/3/2024 | Alex Villanueva, Vivian Villanueva |
| 7/4/2024 | Alex Villanueva, Vivian Villanueva |
| 7/5/2024 | Alex Villanueva, Vivian Villanueva |
| 7/6/2024 | Alex Villanueva, Vivian Villanueva |
| 7/7/2024 | Alex Villanueva, Vivian Villanueva |
| 7/8/2024 | Alex Villanueva, Vivian Villanueva |
| 7/9/2024 | Alex Villanueva, Vivian Villanueva |
| 7/10/2024 | Alex Villanueva, Vivian Villanueva |
| 7/11/2024 | Alex Villanueva, Vivian Villanueva |
| 7/12/2024 | Alex Villanueva, Vivian Villanueva |
| 7/13/2024 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 7/14/2024 | Alex Villanueva, Vivian Villanueva |
| 7/15/2024 | Alex Villanueva, Vivian Villanueva |
| 7/16/2024 | Alex Villanueva, Vivian Villanueva |
| 7/17/2024 | Alex Villanueva, Vivian Villanueva |
| 7/18/2024 | Alex Villanueva, Vivian Villanueva |
| 7/19/2024 | Alex Villanueva, Vivian Villanueva |
| 7/20/2024 | Alex Villanueva, Vivian Villanueva |
| 7/21/2024 | Alex Villanueva, Vivian Villanueva |
| 7/22/2024 | Alex Villanueva, Vivian Villanueva |
| 7/23/2024 | Alex Villanueva, Vivian Villanueva |
| 7/24/2024 | Alex Villanueva, Vivian Villanueva |
| 7/25/2024 | Alex Villanueva, Vivian Villanueva |
| 7/26/2024 | Alex Villanueva, Vivian Villanueva |
| 7/27/2024 | Alex Villanueva, Vivian Villanueva |
| 7/28/2024 | Alex Villanueva, Vivian Villanueva |
| 7/29/2024 | Alex Villanueva, Vivian Villanueva |
| 7/30/2024 | Alex Villanueva, Vivian Villanueva |
| 7/31/2024 | Alex Villanueva, Vivian Villanueva |
| 8/1/2024 | Alex Villanueva, Vivian Villanueva |
| 8/2/2024 | Alex Villanueva, Vivian Villanueva |
| 8/3/2024 | Alex Villanueva, Vivian Villanueva |
| 8/4/2024 | Alex Villanueva, Vivian Villanueva |
| 8/5/2024 | Alex Villanueva, Vivian Villanueva |
| 8/6/2024 | Alex Villanueva, Vivian Villanueva |
| 8/7/2024 | Alex Villanueva, Vivian Villanueva |
| 8/8/2024 | Alex Villanueva, Vivian Villanueva |
| 8/9/2024 | Alex Villanueva, Vivian Villanueva |
| 8/10/2024 | Alex Villanueva, Vivian Villanueva |
| 8/11/2024 | Alex Villanueva, Vivian Villanueva |
| 8/12/2024 | Alex Villanueva, Vivian Villanueva |
| 8/13/2024 | Alex Villanueva, Vivian Villanueva |
| 8/14/2024 | Alex Villanueva, Vivian Villanueva |
| 8/15/2024 | Alex Villanueva, Vivian Villanueva |
| 8/16/2024 | Alex Villanueva, Vivian Villanueva |
| 8/17/2024 | Alex Villanueva, Vivian Villanueva |
| 8/18/2024 | Alex Villanueva, Vivian Villanueva |
| 8/19/2024 | Alex Villanueva, Vivian Villanueva |
| 8/20/2024 | Alex Villanueva, Vivian Villanueva |
| 8/21/2024 | Alex Villanueva, Vivian Villanueva |
| 8/22/2024 | Alex Villanueva, Vivian Villanueva |
| 8/23/2024 | Alex Villanueva, Vivian Villanueva |
| 8/24/2024 | Alex Villanueva, Vivian Villanueva |
| 8/25/2024 | Alex Villanueva, Vivian Villanueva |
| 8/26/2024 | Alex Villanueva, Vivian Villanueva |
| 8/27/2024 | Alex Villanueva, Vivian Villanueva |
| 8/28/2024 | Alex Villanueva, Vivian Villanueva |
| 8/29/2024 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 8/30/2024 | Alex Villanueva, Vivian Villanueva |
| 8/31/2024 | Alex Villanueva, Vivian Villanueva |
| 9/1/2024 | Alex Villanueva, Vivian Villanueva |
| 9/2/2024 | Alex Villanueva, Vivian Villanueva |
| 9/3/2024 | Alex Villanueva, Vivian Villanueva |
| 9/4/2024 | Alex Villanueva, Vivian Villanueva |
| 9/5/2024 | Alex Villanueva, Vivian Villanueva |
| 9/6/2024 | Alex Villanueva, Vivian Villanueva |
| 9/7/2024 | Alex Villanueva, Vivian Villanueva |
| 9/8/2024 | Alex Villanueva, Vivian Villanueva |
| 9/9/2024 | Alex Villanueva, Vivian Villanueva |
| 9/10/2024 | Alex Villanueva, Vivian Villanueva |
| 9/11/2024 | Alex Villanueva, Vivian Villanueva |
| 9/12/2024 | Alex Villanueva, Vivian Villanueva |
| 9/13/2024 | Alex Villanueva, Vivian Villanueva |
| 9/14/2024 | Alex Villanueva, Vivian Villanueva |
| 9/15/2024 | Alex Villanueva, Vivian Villanueva |
| 9/16/2024 | Alex Villanueva, Vivian Villanueva |
| 9/17/2024 | Alex Villanueva, Vivian Villanueva |
| 9/18/2024 | Alex Villanueva, Vivian Villanueva |
| 9/19/2024 | Alex Villanueva, Vivian Villanueva |
| 9/20/2024 | Alex Villanueva, Vivian Villanueva |
| 9/21/2024 | Alex Villanueva, Vivian Villanueva |
| 9/22/2024 | Alex Villanueva, Vivian Villanueva |
| 9/23/2024 | Alex Villanueva, Vivian Villanueva |
| 9/24/2024 | Alex Villanueva, Vivian Villanueva |
| 9/25/2024 | Alex Villanueva, Vivian Villanueva |
| 9/26/2024 | Alex Villanueva, Vivian Villanueva |
| 9/27/2024 | Alex Villanueva, Vivian Villanueva |
| 9/28/2024 | Alex Villanueva, Vivian Villanueva |
| 9/29/2024 | Alex Villanueva, Vivian Villanueva |
| 9/30/2024 | Alex Villanueva, Vivian Villanueva |
| 10/1/2024 | Alex Villanueva, Vivian Villanueva |
| 10/2/2024 | Alex Villanueva, Vivian Villanueva |
| 10/3/2024 | Alex Villanueva, Vivian Villanueva |
| 10/4/2024 | Alex Villanueva, Vivian Villanueva |
| 10/5/2024 | Alex Villanueva, Vivian Villanueva |
| 10/6/2024 | Alex Villanueva, Vivian Villanueva |
| 10/7/2024 | Alex Villanueva, Vivian Villanueva |
| 10/8/2024 | Alex Villanueva, Vivian Villanueva |
| 10/9/2024 | Alex Villanueva, Vivian Villanueva |
| 10/10/2024 | Alex Villanueva, Vivian Villanueva |
| 10/11/2024 | Alex Villanueva, Vivian Villanueva |
| 10/12/2024 | Alex Villanueva, Vivian Villanueva |
| 10/13/2024 | Alex Villanueva, Vivian Villanueva |
| 10/14/2024 | Alex Villanueva, Vivian Villanueva |
| 10/15/2024 | Alex Villanueva, Vivian Villanueva |

| 10/16/2024 | Alex Villanueva, Vivian Villanueva |
| 10/17/2024 | Alex Villanueva, Vivian Villanueva |
| 10/18/2024 | Alex Villanueva, Vivian Villanueva |
| 10/19/2024 | Alex Villanueva, Vivian Villanueva |
| 10/20/2024 | Alex Villanueva, Vivian Villanueva |
| 10/21/2024 | Alex Villanueva, Vivian Villanueva |
| 10/22/2024 | Alex Villanueva, Vivian Villanueva |
| 10/23/2024 | Alex Villanueva, Vivian Villanueva |
| 10/24/2024 | Alex Villanueva, Vivian Villanueva |
| 10/25/2024 | Alex Villanueva, Vivian Villanueva |
| 10/26/2024 | Alex Villanueva, Vivian Villanueva |
| 10/27/2024 | Alex Villanueva, Vivian Villanueva |
| 10/28/2024 | Alex Villanueva, Vivian Villanueva |
| 10/29/2024 | Alex Villanueva, Vivian Villanueva |
| 10/30/2024 | Alex Villanueva, Vivian Villanueva |
| 10/31/2024 | Alex Villanueva, Vivian Villanueva |
| 12/1/2024 | Alex Villanueva, Vivian Villanueva |
| 12/2/2024 | Alex Villanueva, Vivian Villanueva |
| 12/3/2024 | Alex Villanueva, Vivian Villanueva |
| 12/4/2024 | Alex Villanueva, Vivian Villanueva |
| 12/5/2024 | Alex Villanueva, Vivian Villanueva |
| 12/6/2024 | Alex Villanueva, Vivian Villanueva |
| 12/7/2024 | Alex Villanueva, Vivian Villanueva |
| 12/8/2024 | Alex Villanueva, Vivian Villanueva |
| 12/9/2024 | Alex Villanueva, Vivian Villanueva |
| 12/10/2024 | Alex Villanueva, Vivian Villanueva |
| 12/11/2024 | Alex Villanueva, Vivian Villanueva |
| 12/12/2024 | Alex Villanueva, Vivian Villanueva |
| 12/13/2024 | Alex Villanueva, Vivian Villanueva |
| 12/14/2024 | Alex Villanueva, Vivian Villanueva |
| 12/15/2024 | Alex Villanueva, Vivian Villanueva |
| 12/16/2024 | Alex Villanueva, Vivian Villanueva |
| 12/17/2024 | Alex Villanueva, Vivian Villanueva |
| 12/18/2024 | Alex Villanueva, Vivian Villanueva |
| 12/19/2024 | Alex Villanueva, Vivian Villanueva |
| 12/20/2024 | Alex Villanueva, Vivian Villanueva |
| 12/21/2024 | Alex Villanueva, Vivian Villanueva |
| 12/22/2024 | Alex Villanueva, Vivian Villanueva |
| 12/23/2024 | Alex Villanueva, Vivian Villanueva |
| 12/24/2024 | Alex Villanueva, Vivian Villanueva |
| 12/25/2024 | Alex Villanueva, Vivian Villanueva |
| 12/26/2024 | Alex Villanueva, Vivian Villanueva |
| 12/27/2024 | Alex Villanueva, Vivian Villanueva |
| 12/28/2024 | Alex Villanueva, Vivian Villanueva |
| 12/29/2024 | Alex Villanueva, Vivian Villanueva |
| 12/30/2024 | Alex Villanueva, Vivian Villanueva |
| 12/31/2024 | Alex Villanueva, Vivian Villanueva |

| | |
|---|---|
| 11/1/2024 | Alex Villanueva, Vivian Villanueva |
| 11/2/2024 | Alex Villanueva, Vivian Villanueva |
| 11/3/2024 | Alex Villanueva, Vivian Villanueva |
| 11/4/2024 | Alex Villanueva, Vivian Villanueva |
| 11/5/2024 | Alex Villanueva, Vivian Villanueva |
| 11/6/2024 | Alex Villanueva, Vivian Villanueva |
| 11/7/2024 | Alex Villanueva, Vivian Villanueva |
| 11/8/2024 | Alex Villanueva, Vivian Villanueva |
| 11/9/2024 | Alex Villanueva, Vivian Villanueva |
| 11/10/2024 | Alex Villanueva, Vivian Villanueva |
| 11/11/2024 | Alex Villanueva, Vivian Villanueva |
| 11/12/2024 | Alex Villanueva, Vivian Villanueva |
| 11/13/2024 | Alex Villanueva, Vivian Villanueva |
| 11/14/2024 | Alex Villanueva, Vivian Villanueva |
| 11/15/2024 | Alex Villanueva, Vivian Villanueva |
| 11/16/2024 | Alex Villanueva, Vivian Villanueva |
| 11/17/2024 | Alex Villanueva, Vivian Villanueva |
| 11/18/2024 | Alex Villanueva, Vivian Villanueva |
| 11/19/2024 | Alex Villanueva, Vivian Villanueva |
| 11/20/2024 | Alex Villanueva, Vivian Villanueva |
| 11/21/2024 | Alex Villanueva, Vivian Villanueva |
| 11/22/2024 | Alex Villanueva, Vivian Villanueva |
| 11/23/2024 | Alex Villanueva, Vivian Villanueva |
| 11/24/2024 | Alex Villanueva, Vivian Villanueva |
| 11/25/2024 | Alex Villanueva, Vivian Villanueva |
| 11/26/2024 | Alex Villanueva, Vivian Villanueva |
| 11/27/2024 | Alex Villanueva, Vivian Villanueva |
| 11/28/2024 | Alex Villanueva, Vivian Villanueva |
| 11/29/2024 | Alex Villanueva, Vivian Villanueva |
| 11/30/2024 | Alex Villanueva, Vivian Villanueva |
| 1/1/2025 | Alex Villanueva, Vivian Villanueva |
| 1/2/2025 | Alex Villanueva, Vivian Villanueva |
| 1/3/2025 | Alex Villanueva, Vivian Villanueva |
| 1/4/2025 | Alex Villanueva, Vivian Villanueva |
| 1/5/2025 | Alex Villanueva, Vivian Villanueva |
| 1/6/2025 | Alex Villanueva, Vivian Villanueva |
| 1/7/2025 | Alex Villanueva, Vivian Villanueva |
| 1/8/2025 | Alex Villanueva, Vivian Villanueva |
| 1/9/2025 | Alex Villanueva, Vivian Villanueva |
| 1/10/2025 | Alex Villanueva, Vivian Villanueva |
| 1/10/2025 | Alex Villanueva, Vivian Villanueva |
| 1/11/2025 | Alex Villanueva, Vivian Villanueva |
| 1/12/2025 | Alex Villanueva, Vivian Villanueva |
| 1/13/2025 | Alex Villanueva, Vivian Villanueva |
| 1/14/2025 | Alex Villanueva, Vivian Villanueva |
| 1/15/2025 | Alex Villanueva, Vivian Villanueva |
| 1/16/2025 | Alex Villanueva, Vivian Villanueva |

| 1/17/2025 | Alex Villanueva, Vivian Villanueva |
| 1/18/2025 | Alex Villanueva, Vivian Villanueva |
| 1/19/2025 | Alex Villanueva, Vivian Villanueva |
| 1/20/2025 | Alex Villanueva, Vivian Villanueva |
| 1/21/2025 | Alex Villanueva, Vivian Villanueva |
| 1/22/2025 | Alex Villanueva, Vivian Villanueva |
| 1/23/2025 | Alex Villanueva, Vivian Villanueva |
| 1/24/2025 | Alex Villanueva, Vivian Villanueva |
| 1/25/2025 | Alex Villanueva, Vivian Villanueva |
| 1/26/2025 | Alex Villanueva, Vivian Villanueva |
| 1/27/2025 | Alex Villanueva, Vivian Villanueva |
| 1/28/2025 | Alex Villanueva, Vivian Villanueva |
| 1/29/2025 | Alex Villanueva, Vivian Villanueva |
| 1/30/2025 | Alex Villanueva, Vivian Villanueva |
| 1/31/2025 | Alex Villanueva, Vivian Villanueva |
| 2/1/2025 | Alex Villanueva, Vivian Villanueva |
| 2/2/2025 | Alex Villanueva, Vivian Villanueva |
| 2/3/2025 | Alex Villanueva, Vivian Villanueva |
| 2/4/2025 | Alex Villanueva, Vivian Villanueva |
| 2/5/2025 | Alex Villanueva, Vivian Villanueva |
| 2/6/2025 | Alex Villanueva, Vivian Villanueva |
| 2/7/2025 | Alex Villanueva, Vivian Villanueva |
| 2/8/2025 | Alex Villanueva, Vivian Villanueva |
| 2/9/2025 | Alex Villanueva, Vivian Villanueva |
| 2/10/2025 | Alex Villanueva, Vivian Villanueva |
| 2/11/2025 | Alex Villanueva, Vivian Villanueva |
| 2/12/2025 | Alex Villanueva, Vivian Villanueva |
| 2/13/2025 | Alex Villanueva, Vivian Villanueva |
| 2/14/2025 | Alex Villanueva, Vivian Villanueva |
| 2/15/2025 | Alex Villanueva, Vivian Villanueva |
| 2/16/2025 | Alex Villanueva, Vivian Villanueva |
| 2/17/2025 | Alex Villanueva, Vivian Villanueva |
| 2/18/2025 | Alex Villanueva, Vivian Villanueva |
| 2/19/2025 | Alex Villanueva, Vivian Villanueva |
| 2/20/2025 | Alex Villanueva, Vivian Villanueva |
| 2/21/2025 | Alex Villanueva, Vivian Villanueva |
| 2/22/2025 | Alex Villanueva, Vivian Villanueva |
| 2/23/2025 | Alex Villanueva, Vivian Villanueva |
| 2/24/2025 | Alex Villanueva, Vivian Villanueva |
| 2/25/2025 | Alex Villanueva, Vivian Villanueva |
| 2/26/2025 | Alex Villanueva, Vivian Villanueva |
| 2/27/2025 | Alex Villanueva, Vivian Villanueva |
| 2/28/2025 | Alex Villanueva, Vivian Villanueva |
| 2/29/2025 | Alex Villanueva, Vivian Villanueva |
| 3/1/2025 | Alex Villanueva, Vivian Villanueva |
| 3/2/2025 | Alex Villanueva, Vivian Villanueva |
| 3/3/2025 | Alex Villanueva, Vivian Villanueva |

| 3/4/2025 | Alex Villanueva, Vivian Villanueva |
| 3/5/2025 | Alex Villanueva, Vivian Villanueva |
| 3/6/2025 | Alex Villanueva, Vivian Villanueva |
| 3/7/2025 | Alex Villanueva, Vivian Villanueva |
| 3/8/2025 | Alex Villanueva, Vivian Villanueva |
| 3/9/2025 | Alex Villanueva, Vivian Villanueva |
| 3/10/2025 | Alex Villanueva, Vivian Villanueva |

| Subject Matter |
|---|
| New Years Eve Reflecting |
| Greeting |
| Diane Martinez contact file shared |
| Reference to "Channel 348" (likely television) |
| Link to Twitter content shared |
| News article about Jane Williams' resignation shared |
| PDF titled "lina_pimentel_lawsuit.pdf" shared |
| Kasey Montoya contact file shared |
| StandWithGascon.org link shared |
| Multiple Twitter and advocacy links shared |
| Ring camera video shared |
| Campaign contact Becki's information shared |
| Thank-you text for an upcoming public event appearance |
| Searching for Uber Driver |
| Forwarded narrative of LASD incident involving lieutenants and armed suspect |
| Message from Indonesian consulate's wife complimenting flowers |
| Address of a caller discussed |
| Bishop Juan Carlos Mendez contact file shared |
| Exchange on visitors leaving |
| Planned Call |
| Texts discussing Board of Supervisors marijuana motion |
| Inquiry of Eric Strong being in a video |
| Kenny's contact shared; message about La Raza radio opportunity |
| inquiry regarding hunger; coordination about coming out soon |
| Describes incident on Moonstone and Highland area |
| Shared Instagram reel and reactions |
| Message about conversation dates between Holly Francisco and Howard |
| Discussion about lunch timing and menu from Casa Martin |
| Series of messages about multiple people hospitalized or in surgery |
| Notes about Tara Sooking and internal LASD assignments and favoritism |
| Greeting |
| Greeting |
| Sharing of 2021 tax return document for Fortitude Fitness LLC. |
| Text exchange including fundraising page link. |
| Exchange regarding Zoom meeting links and credentials. |
| Transmission of receipt document. |
| Communication regarding stay at Westin Rancho Mirage, California. |
| Communication requesting personal items (chapstick, MiFi hotspot). |
| Text received from third party (Sigal) suggesting messaging strategy related to Jewish magazine. |
| Personal text exchange discussing emotional conflict and suggesting meeting with attorney. |
| Sharing of Amazon product link and health-related information (Pinguecula). |
| Sharing contact card for Pete Hish. |
| Forwarding a personal message from individual "JD" regarding retirement and related workplace issues. |

Message timestamped with no visible content

Shared Atlantic newsletter about political events involving Trump

Vivian coordinates pickup schedule; Alex sends thank-you

Shared immigration article about undocumented immigrants paying taxes

End-of-month dinner plan and message about Sunday schedule

Vivian sends good morning text and confirms brunch location

Shared devotional video link; brief follow-up message

Shared lunch order update and article link

Event attendance and support of spouse

Shared news article on public safety; emoji reaction

Message about weekend grocery list and reminder for Saturday

Message about ordering salmon salad and dining together

Short prayer shared from church livestream

Easter greeting and emoji message

Shared flyer about local safety meeting

dinner reservation

Vivian shares uplifting news article and confirms time for evening walk

Shared tweet on law enforcement policy changes; emoji

dry cleaning

dry cleaning

Short affectionate note and confirmation of weekend dinner plans

Article link shared about veteran housing and comment on public response

Shared movie recommendation featuring a sheriff character and Holocaust short film

Message alerting that someone is impersonating Alex on Instagram

Update about helping Ukrainian refugees get classes, jobs, and support; praise for Alex and Vivian

Tony Romo update on internal union politics and endorsement vote; Eli and Rhodes support conflict

Evelyn's cousin had triplets and is unable to attend the evening's event

Series of campaign-related messages including candidate support email and mention of Alex's endorsement; mention of Special Alert program

Shared internal message regarding LASD personnel and political affiliations

Shared news of El Monte Chief Ben Lowry's passing; brief personal exchange

Shared press release announcing LAAPOA endorsement of Alex Villanueva

Morning devotional prayer and commentary on a car incident involving a location near Hacienda

Loving life comment; inspirational message about David and Goliath; exchange of support ("Love it", "I love you")

multiple affectionate replies regarding appearance and support

friendly greeting

Shared article about Katherine McPhee blaming crime on "woke voters" and suggestion to seek her endorsement

Shared tweet from Roxanne Hoge about crime and Beverly Hills

Greeting

Greeting

Proposal for jail pilot program from vendor; offer for presentation to Sheriff

Greeting

PDF titled "Message.pdf" shared with no visible context in chat

YouTube link shared; no context given in the visible chat

Shared Apple Maps link and details for Mulberry Street Ristorante

Discussion about pick-up logistics and confirmation of timing

Shared YouTube video link titled "7Hi9uXUQJWY"

Shared Instagram reel and devotional message; discussion about Rocío Ochoa's background investigator and testing issues

Court document shared (Minute Order re: Demurrers); Facebook post and message about polygraph logistics and procedural concerns

Message timestamped but no content visible in thread

Shared Apple Maps link for Cha Cha's Latin Kitchen in Brea, CA

Debbie Silva contact file shared

Andrew Roble contact file shared

Shared phone number for Nick and discussed canceled event involving Mike Beltran

Multiple messages with timestamps but no visible content

Exchange marked by time only; no text content shown

Video file shared with no visible caption

Shared articles from National Review, YouTube, LA Times, and others about LBPD and Luna

Shared praise for Greg Evans; commentary on election and discussion of potential assignments

Reconnection with Friend(s)

Discussion about Rudy's campaign signs and bumper stickers; Vivian responds "How sweet!"

Vivian updates Alex about being in hospital, vomiting, pain, and undergoing COVID test; Alex replies from parking lot

Word Document Shared

Shared LASD press release, YouTube video, and article about zero tolerance for deputy cliques

Instagram reel shared; message about female captain's introduction at East LA event

Timestamped entries with no visible message content

Shared news articles regarding discrimination lawsuits against Long Beach Police Department

No visible message content provided for this date

Shared article from LA Times about a K-9 officer found dead

Phil Donlon, former campaign ad director, messages to offer help with future media

Shared article about crime on LA Metro system

Brief celebratory exchange including "Awwww"

Shared LA Times article about Metro plan; Vivian reacts to tweet from Alene Tchekmedyian

Message about warrants in Metro case upheld, referencing Kuehl and conflict of interest

Shared article about WeHo security contractor's criminal history

Vivian forwards tweet and link about Measure A and County Supervisor's impeachment efforts

Vivian sends message about event with Florence and Firestone community group

Message of encouragement from Melina urging Alex and Vivian to stay strong amid political pressure

Coordination about food during event; humorous exchange about cold tacos and meat

Shared PDF: Reply to opposition in Pimentel case

Shared article about WeHo Council member requesting private security after defunding vote

Vivian shares link to UniCourt docket involving City of Long Beach

Shared Bible passage (Isaiah 41:10–11)

Shared article about City Manager misleading CPCC Charter Amendment Committee

Request to lower refrigerator temperature due to milk spoiling prematurely

Vivian shares comprehensive file involving Holly and a $2M pilot program; campaign manager contact requested

Steve Gregory, Omar Luevano, and Briz contact files shared; GoFundMe link posted

Loving life comment; inspirational message about David and Goliath; exchange of support

multiple affectionate replies regarding appearance and support

No visible message content provided for this date

Shared article about Katherine McPhee blaming crime on "woke voters" and suggestion to seek her endorsement

Shared tweet from Roxanne Hoge about crime and Beverly Hills

Message timestamped with no visible content

Proposal for jail pilot project from vendor; offer for presentation to Sheriff

Vivian shares message from Sheldon about PPOA endorsement tensions and opposition to Luna

friendly greeting

PDF titled "Message.pdf" shared with no visible context in chat

YouTube link shared

Shared Apple Maps link and details for Mulberry Street Ristorante

Discussion about pick-up logistics and confirmation of timing

Contact file for Officer Neely shared; claims of racial discrimination and Luna named in lawsuit

Shared YouTube video link titled "7Hi9uXUQJWY"

Shared Instagram reel and devotional message; discussion about Rocío Ochoa's background investigator and testing issues

Court document shared (Minute Order re: Demurrers); Facebook post and message about polygraph logistics and procedural concerns

Message timestamped but no content visible in thread

Shared Apple Maps link for Cha Cha's Latin Kitchen in Brea, CA

Debbie Silva contact file shared

Shared news article alleging Luna and Vivian ran LASD as a personal fiefdom

Andrew Roble contact file shared

Message stating "He wants you to call him" without further context

Multiple message timestamps with no visible content

No visible message content for this date

Shared link to preview investigation about LBPD TigerText system
Message timestamped with no visible content
Message timestamped but no text visible
Contact file for Tara Lankford shared
Message from Vivian stating intent to rescue dogs and find them homes
Message timestamped with no visible text
Shared Instagram reel
Message timestamped "Enroute"
Shared Dropbox video titled "sheriff.mov"
Shared Dropbox video titled "sheriff.mov"
Multiple entries timestamped with no visible text
Shared tweet from Alene Tchekmedyian and commentary on Luna campaign performance

Multiple timestamped entries including discussion of public image and debate strategy

Shared YouTube video link regarding political messaging and public relations
mention of youtube vidoe previous shared
Discussion about travel plans and graduation, schedule
Vivian sends boarding message; affectionate responses from both parties
Instagram reel shared;
No visible message content
Invitation to breakfast event for Sheriff Villanueva on Oct. 5 forwarded by Nathan Hittle

Vivian confirms location of attendee; humorous exchange about tacos and extra meat

Shared Instagram reel with no additional message
Shared LA Times article about sheriff's race poll results
Vivian reminds Alex to turn off trees; discussion of Measure A contribution; affectionate banter
Shared Facebook post regarding WeHo political commentary
Contact card for Nikolai Vavakin shared
Contact card for Maritza shared; campaign donation links posted
pond mentioned
Shared tweet about LA City Council; no added commentary
Repeated link to tweet regarding LA Council incident
Ejection
Vivian congratulates Alex and updates him on meeting status
Message urging campaign messaging around ALADS/LAPPL support for Caruso
Two entries without visible message content
Shared internal message regarding LASD personnel and political affiliations
Shared news of El Monte Chief Ben Lowry's passing; brief personal exchange
No visible message content
Message timestamped with no visible content
Message timestamped with no visible content
discussing of to bring election night list;
address shared
No visible message content

Message from supporter praising event; shared video file link

Alex forwards link to press interview and election discussion

Shared campaign donation link

Message from supporter praying for Alex and referencing recent event

Vivian confirms final campaign schedule for the week and voting plans

Brief celebratory message

Message about press coverage and tone of article; link shared

Shared YouTube video from supporter encouraging continued visibility

News article about DA Gascon being fined shared

Short message about errands and location check-in

Article about future of policing and public safety shared

Message timestamped with no visible content

Shared tweet criticizing political opponents and support from radio host

Message about being on the way to an event; photo link shared

Shared post-election article and personal reaction

Contact info for Recruit Arias' wife provided

Thanksgiving message and expression of gratitude

Vivian asks for check-in and confirms time for later that day

Greeting

message of encouragement and prayer

Article link shared regarding law enforcement transitions

Message confirming location and request for pick-up

Final day as sheriff; exchanged messages expressing love and support

Follow-up messages on prior day's transition and household coordination

Text confirming dinner location; short personal exchange

Shared PDF and comment about scheduling meeting

Image sent of holiday event with children

Message from friend expressing appreciation and holiday wishes

Vivian confirms holiday event RSVP and mentions potential guest

Link shared to local community event flyer

Conversation about Alex's schedule and airport pick-up logistics

Shared message of thanks from a nonprofit organizer

Brief update about Christmas preparations and shopping list

Message timestamped with no visible content

Vivian shares reminder for annual donation deadline

Shared holiday video and message of appreciation from supporter

Vivian asks for pickup time confirmation and responds with holiday emoji

Shared holiday blessings and note from family friend

Venmo donation link shared; invitation to join family gathering

Brief message timestamped; no additional content

Shared contact card for Martin Romo

Message confirming Alex's location and plans for the evening

PDF email from Mark Burnley shared

Message about setting goals for the new year

New Year's Eve well wishes exchanged

New Year's Day blessing and affectionate message exchange

Vivian shares post about goal-setting and asks Alex's opinion

No visible message content
Vivian coordinates pickup time from grocery store
Multiple blank or repeated timestamped messages
Vivian shares article from neighborhood group app; no added comment
Alex confirms return flight schedule and asks about dinner
Vivian sends link to church livestream
Message confirming time for lunch; brief personal reply
Message confirming time for lunch; brief personal reply
Vivian asks if Alex picked up dinner; mentions long day
Shared Instagram reel with motivational quote
Confirmation of RSVP for upcoming event
Short exchange about traffic and delay
Commentary on Karen Bass' homelessness strategy and shared LAT article
Vivian checks in about lunch and errands
meeting location and time
Shared article about Sheriff Luna's restructuring plans
Quick check-in message with timestamp but no visible content
Vivian confirms guest list for dinner and mentions RSVP deadline
Discussion about event seating chart and table placement
Discussion about event seating chart and table placement
Shared news article about deputy-involved shooting in Compton
Message timestamped with no visible content
dinner preparation and schedule
Alex sends note of appreciation and reminder about meeting
Vivian shares podcast link and message about community safety
Shared inspirational quote and comment on justice
Alex updates Vivian on travel status; Vivian confirms dinner time
Shared reminder about bill due date
meme
Shared Google Maps address and contact for Michael Xavier Lopez

Concern about large-capacity magazine found in pistol; legal and safety implications

Detailed legal update regarding conviction, appeal, and sentencing documents
Vivian checks in on lunch timing; Alex sends supportive message
Confirmation of church livestream and time for donation
Shared news article regarding public safety and legislative changes
Vivian asks about dinner plans and confirms grocery items
Vivian asks about dinner plans and confirms grocery items
Shared community safety update and reminder to schedule call
Vivian forwards link to LA Times editorial on recent city policy
Messages confirming location and request for quick reply
Sent or received article regarding California law enforcement and proposed reforms
Vivian shares photos from recent outreach event
Short affectionate message sent during church livestream
Vivian checks in about dinner and mentions upcoming schedule
Article questioning sheriff's response to Monterey Park shooting
Message timestamped with no visible content

Vivian shares info about community meeting and public comment
Commentary on LAPD using DOJ data to identify alleged extremists
Vivian texts confirmation of dinner time; brief affectionate note
Message about Sunday errands and confirmation of morning plans
Vivian shares map pin and parking instructions for event
Testifying update and conversation about lunch plans
Alex sends good luck text and follows up on church talk
Weather-related note ("cats and dogs") and contact card for John Satterfield
Vivian shares grocery list reminder and plan for early dinner
Shared article on political news; no added commentary
Message of appreciation for Vivian's dinner and weekend support
Shared link to city council meeting notes
Short affirmation and emoji-only reply from Alex
Shared Instagram reel and noted dates of conversations involving Holly Francisco and Howard
Exchange about restaurant menu and lunch delay
Message timestamped but no visible text
Vivian asks Alex to bring home dinner and reminds him of errands
Article shared on community safety and legislative change
texts of encouragement before scheduled talk and confirms attendance
Shared link to Nordstrom product
Vivian sends short prayer message; Alex replies with appreciation
Shared political meme with no further comment
Laughed at image and brief comment ("Castigo")
Vivian confirms delivery of mail and asks about package
Shared devotional message and planning for Monday breakfast
Vivian texts reminder about doctor's appointment; Alex confirms
Shared image of flowers from community event
Message from supporter asking for advice; forwarded by Vivian
Vivian confirms weekend trip plans and event details
Shared video of St. Patrick's Day greeting; Alex replies with emoji
Vivian asks about RSVP for Sunday breakfast
Shared flyer from faith group and invitation to attend
Vivian shares encouraging quote and confirms dinner location
Message timestamped with no visible content
Vivian asks Alex to pick up groceries and confirms dinner time
Shared Instagram reel; short response with emoji
Vivian sends inspirational quote from church service
Article link shared with no additional commentary
Vivian asks about garden tools; Alex replies with list
Message timestamped with no visible content
Shared Atlantic newsletter about political events involving Trump
Vivian coordinates pickup schedule; Alex sends thank-you
Shared immigration article about undocumented immigrants paying taxes
End-of-month dinner plan and message about Sunday schedule
Vivian sends good morning text and confirms brunch location
Shared devotional video link; brief follow-up message

Shared lunch order update and article link
Alex confirms event attendance and thanks Vivian for her support
Shared news article on public safety; Vivian responds with emoji
Message about weekend grocery list and reminder for Saturday
Message about ordering salmon salad and dining together
Short prayer shared from church livestream
Easter greeting and emoji message
Shared flyer about local safety meeting
Vivian reminds Alex about dinner reservation
Vivian shares uplifting news article and confirms time for evening walk
Shared tweet on law enforcement policy changes; Alex replies with thumbs-up
dry cleaning
Short affectionate note and confirmation of weekend dinner plans
Article link shared about veteran housing and comment on public response
Shared flyer from law enforcement fundraiser and RSVP inquiry
Message about breakfast options and grocery store reminder
Vivian texts emoji-only response and schedules lunch meetup
Link to article on 4/20 policing and brief comment from Alex
Discussion of logistics for community outreach event
lunch location
Shared photo from outreach event; message of thanks to organizer
Vivian confirms grocery pickup and Alex replies with list
Article shared about new LA city legislation; brief comment
Vivian sends calendar invite and reminder for Friday event
Shared devotional video link
Message about weekend plans and time to meet at the venue
Shared flyer and message about final campaign meeting
End-of-month devotional and message of gratitude
Vivian shares inspirational quote and confirms breakfast time
Shared flyer from civic event and discussion of guest list
Vivian confirms dinner location and sends emoji reply
Article shared on city council proposal and Vivian's brief comment
Cinco de Mayo message and short response from Alex
Shared video clip from news coverage with no caption
Sunday brunch and RSVP
Short prayer text and reply with heart emoji
Article about law enforcement and public commentary shared
Message about weekend fundraiser planning
grocery list and confirms dinner time
Shared message from community member about local violence
Vivian sends birthday greeting; Alex replies with thanks
Mother's Day message exchanged
Shared image from fundraiser with caption
Vivian coordinates upcoming meeting; confirms Alex's attendance
Shared devotional message and check-in from Alex
Article about youth crime trends and legislative reform shared
Vivian texts about Saturday errands and picks up dry cleaning

Shared flyer for faith-based safety workshop
Vivian texts Alex photo of church service and confirms dinner location
Shared Instagram reel and comment on morning news
Vivian updates Alex on doctor's visit and confirms grocery list
Shared devotional video and lunch plans
Short message about meeting location and follow-up
Vivian sends emoji-only response and confirms dinner schedule
Shared flyer for local safety walk and comment on attendance
Memorial Day message and brunch coordination
Devotional
Vivian confirms RSVP to campaign dinner
Alex shares photo and thanks Vivian for support
Vivian shares inspirational quote and confirms dinner plans
Shared event flyer and RSVP message for fundraiser
Brief update on weekend errands and shopping list
Shared image from community walk and message of thanks
Vivian texts confirmation about Alex's doctor visit
Shared article about crime trends and legislative response
pick up dinner and confirms location
Prayer message and RSVP confirmation for upcoming event
Shared article from civic watch group and brief reaction
church livestream time
Shared devotional quote and update on lunch plans
Vivian sends RSVP to Alex and confirms event start time
Shared news article and emoji response
Vivian texts reminder for weekend schedule and family plans
Link to local safety initiative shared and brief discussion
Message timestamped; no visible content
Shared event photo with note of appreciation
Father's Day message exchanged
brief note on travel update
Shared article about legislative proposal
t lunch and errands for Thursday
Shared flyer for community gathering and meeting notes
Shared image from Friday fundraiser event and comment on attendance
confirms schedule for weekend family visit
Shared video from faith group; emoji-only reply
Shared article on law enforcement salaries and LA County policy
coordinates dinner with family friends
Shared contact card for potential campaign supporter
Message about community fair and planning notes
End-of-month devotional and discussion of monthly highlights
Shared photo from community breakfast event
attendance at holiday gathering
Link to article about law enforcement support in community
Fourth of July greeting and message of gratitude
Shared flyer from neighborhood safety watch group

lunchtime and location

follow up re grocery

devotional image and Sunday brunch note

Link to local policy update and Alex's reply

errands list and dinner plans

meeting location and follows up on flyer printout

Shared contact info for attendee at recent fundraiser speech

Shared event schedule and notes from supporter

RSVP confirmation and  replies with emoji

Shared image of community walk and note of appreciation

morning schedule and errands

Shared article on new law enforcement policy; Alex responds

confirms dinner reservation and guest count

Link to fundraiser page shared and brief follow-up

Vivian shares devotional message and prayer emoji

Article on LAPD statistics shared and discussed

Vivian confirms details for Monday's lunch and errands

Shared flyer and message regarding upcoming event

note of thanks for weekend event support

outreach coordination and family schedule

Message timestamped with no visible content

call event organizer; follow-up message

Shared photo from weekend gathering and brief reply

Message about early morning plans and prayer request

Shared campaign message draft and comment on edit

shares Bible verse and confirms breakfast meeting

Article shared about local safety initiative and reply from Alex

grocery list and pickup time

Shared Instagram reel with no added message

community breakfast and confirms headcount

Short prayer message and weekend update

Shared flyer and comment on campaign planning

coordinates dinner plan and sends emoji reaction

Shared tweet about local policy change and safety update

confirms attendance at weekend event

Shared devotional video and brief prayer

errands and confirms evening meeting

Shared link to news article on civic reform and discussion

Message about schedule change and request to pick up groceries

campaign flyer delivery and responds to text thread

Shared map link and location for outreach dinner

timing and RSVP

Shared link to LAT editorial on criminal justice reform

sends photo from outreach event and message of support

Article about local civic engagement shared; Alex responds with comment

Vivian confirms dinner RSVP and sends prayer emoji

Message timestamped with no visible content
Shared community meeting flyer and follow-up message
Vivian texts about Friday schedule and quick reply from Alex
Shared link to sheriff's blog post and reaction
Alex sends emoji and confirms Saturday breakfast time
Shared church livestream link; Vivian replies "Amen"
Vivian confirms Monday meeting location; Alex sends heart emoji
Shared article on policing reforms and community comments
Message about dinner RSVP and errands list
short blessing and prayer message
Shared flyer for weekend prayer event; Alex confirms attendance
coordinates shopping list and morning plan
Shared inspirational quote and brunch check-in
Labor Day message and location coordination
Shared news article about law enforcement conference
dinner timing and guest update
dinner timing and guest update
Shared devotional video; Alex responds with thumbs-up emoji
outreach flyer delivery and weekend plans
Article link shared on recent law enforcement policy and debate
groceries and sends heart emoji
Shared remembrance post and brief prayer message
family visit and confirms dinner
Shared news story from faith group and short reply
confirms event attendance
Short devotional message shared; reply with "Amen"
Vivian shares weekend calendar reminder and RSVP follow-up
Shared flyer for Sunday community brunch and Alex's confirmation
Vivian texts about lunch pickup; Alex replies with emoji
Shared quote from devotional; Alex responds "Amen"
Message about church service planning and dinner prep
Shared article on city budget reform; brief discussion
Vivian coordinates grocery shopping and confirms RSVPs
Shared devotional video and response from Alex
Alex texts update about outreach visit; Vivian replies "Proud of you"
Shared community safety meeting agenda
Vivian confirms dinner time; Alex replies with prayer hands emoji
Shared flyer for October campaign breakfast
Vivian reminds Alex to send RSVP and confirms breakfast location
Shared devotional quote and update on weekend events
Alex confirms church attendance and lunch plans
Shared flyer from safety forum; Vivian confirms attendance
Article on law enforcement policy shared; emoji reaction
Vivian asks about community outreach photos; Alex replies "Got it"
Shared press coverage link and response from Vivian
Shared devotional and thank-you text after campaign breakfast
Vivian confirms dinner guests and sends emoji-only message

Shared article about LAPD statistics; Alex comments "Interesting"

Vivian checks if Alex is attending Sunday livestream and sends emoji

Link to Monday civic meeting agenda; Vivian confirms attendance

Alex updates Vivian on outreach meeting time

Shared press article on community safety proposal and brief reply

Vivian confirms RSVP and updates Alex on upcoming travel

Short check-in about groceries and lunch menu

Shared image from community cleanup and thank-you message

Vivian texts early morning devotional and confirms church visit

Message timestamped; no visible content

Shared article on local ballot measure; emoji response

Vivian checks on dinner schedule and confirms guest

Shared information about event preparation and timing

Vivian confirms guest list and delivery of materials

Shared follow-up from public meeting and coordinated response

Vivian sends morning check-in and brief response from Alex

Vivian confirms dinner reservation and coordinating guest details

Shared photo from earlier meeting and follow-up about event

Article shared regarding safety initiative; brief discussion

Vivian confirms outreach lunch details and RSVP

Shared flyer from campaign event and follow-up message

Vivian updates Alex on personal errands and coordination

Shared devotional and message of encouragement

Message timestamped; no visible content

Vivian confirms Halloween plans and dinner time

Vivian shares article on post-election analysis and schedules dinner

Shared flyer for weekend prayer breakfast; RSVP confirmed

Grocery list coordination and morning check-in

Shared news item about community budget reform

Vivian confirms event location and attendance for fundraiser

Brief devotional shared; message about upcoming event

Follow-up on campaign meeting and schedule confirmation

Vivian confirms dinner time and location for evening outreach

Shared article on public safety reform; brief reaction

Grocery reminder and RSVP confirmation for Saturday

Veteran's Day message exchanged

Shared devotional and brunch planning

Vivian coordinates pickup time and confirms family visit

Shared photo from event and comment on attendance

Article about civic engagement campaign shared

Vivian shares flyer for upcoming meeting and confirms RSVP

Grocery and dinner planning for weekend

Shared quote from devotional and weekend check-in

Vivian coordinates brunch timing and confirms attendance

Shared article on community safety legislation; brief discussion

Shared article on community safety legislation; brief discussion

Vivian shares event logistics and confirms guest count

Grocery prep and RSVP confirmation for holiday meal

Thanksgiving greeting exchanged

Shared flyer from community appreciation event

Message about brunch location and family visit

Vivian shares devotional quote and confirms dinner

Shared article on LA public safety vote

Message timestamped; no visible content

Coordination for Friday outreach meeting

End-of-month prayer message and reflection shared

Vivian shares morning devotional and confirms dinner plans

Grocery coordination and weekend schedule confirmed

Shared brunch image and comment on event turnout

Vivian confirms schedule for event prep and errands

Shared press article about city council initiative

Coordination for evening meeting and dinner time

Shared flyer for weekend community gathering

Vivian shares holiday devotion and RSVP confirmation

Article shared on holiday traffic and safety message

Vivian confirms church time and holiday brunch plans

Shared flyer about faith-based safety forum

Vivian asks about dinner RSVP and confirms pickup

Shared news article on civic engagement; brief response

Grocery list and Friday night dinner planning

Vivian confirms guest count and shares devotional image

Shared community event photo and thank-you note

Vivian asks about holiday travel and confirms Monday errands

Shared article about local budget reforms and civic meeting

Vivian sends calendar update and grocery request

Shared devotional link and confirms lunch schedule

Vivian coordinates guest pickup and confirms headcount

Shared press article on policing legislation

Holiday message exchanged and dinner RSVP confirmed

Shared holiday devotional and brunch coordination

Christmas Day message and photo shared

Vivian texts about post-holiday errands

Shared flyer for New Year's Eve community dinner

Grocery planning and RSVP confirmation for dinner

Shared press article and brief comment

Final weekend planning and brunch confirmation

New Year's Eve devotional and message of encouragement

New Year's Day message and breakfast plans

Vivian sends grocery list and confirms errands

Shared flyer from community meeting and brief exchange

Vivian texts about dinner and RSVPs

Shared devotional message and evening check-in

Shared community outreach flyer and planning discussion

Vivian confirms Sunday plans and church time

Article on public safety shared and brief response
Vivian coordinates lunch and afternoon errands
Message timestamped; no visible content
Vivian texts reminder for weekend travel and dinner
Shared devotional video and message of support
Vivian shares flyer for campaign planning meeting
Vivian sends Sunday greeting and confirms brunch
Shared article related to civic reform efforts
Vivian confirms appointment and dinner guest count
Shared contact card and follow-up message
Vivian checks in about groceries and sends emoji
Shared devotional prayer and confirmation of RSVP
Event coordination and weekend family plans
Vivian shares church notes and thank-you message
Article on local government hearing shared
Grocery planning and scheduling errands
Shared link to civic update; brief reaction
Vivian confirms RSVP and shares dinner menu
Reminder about family gathering and follow-up
Shared community event update and flyer
Vivian texts about Sunday plans and sends emoji
Article shared on policy changes and short discussion
Grocery list coordination and prayer message
Shared end-of-month devotional and reflection
Vivian shares devotional message and confirms weekend RSVP
Shared article on public safety ordinance and discussion
Grocery planning and event reminder for Sunday
Vivian confirms church attendance and lunch guest list
Shared flyer for faith-based outreach and coordination note
Vivian texts RSVP confirmation and updates dinner menu
Shared article on public sector leadership and reply
Vivian checks in on event logistics and confirms call time
Shared devotional message and follow-up on outreach support
Article shared on policing statistics and civic response
Vivian shares brunch location and schedule update
Shared community flyer and comment on policy update
Vivian sends prayer and confirms groceries
Valentine's Day message and coordination for evening
Shared news story on criminal justice reform
Vivian updates Alex on outreach details and pickup time
Flyer shared for weekend campaign meeting
Vivian confirms church and Sunday dinner schedule
Shared article on holiday enforcement changes
Grocery and weekly schedule coordination
Vivian texts emoji-only reply to Alex's outreach update
Shared policy report and brief reaction
Vivian confirms dinner prep and guest arrival time

Flyer for Sunday service and brunch shared

Vivian sends RSVP confirmation and shared devotional quote

Shared public safety memo and Alex's comment

Grocery list and schedule reminders

Vivian shares prayer message and campaign planning note

End-of-month devotional and gratitude message

Vivian confirms Friday dinner guest count and coordinates grocery items

Shared devotional message and weekend event reminder

Brunch planning and update on church livestream

Shared article on local reform proposal and scheduling update

Grocery list and RSVP coordination for upcoming dinner

Vivian confirms guest speaker arrival and logistics

Shared image from community outreach and comment

Friday devotional and family schedule check-in

Vivian coordinates shopping and confirms Sunday plans

Shared prayer and church note

Article on city public safety vote and brief reply

campaign RSVP and dinner menu

Shared devotional video and discussion of weekend travel

Grocery planning and flyer confirmation for fundraiser

Shared press article on county board meeting

schedule and sends emoji-only reply

Sunday brunch update and devotional text shared

Shared flyer for community appreciation lunch

Vivian confirms campaign call and updates on family matters

Grocery list and RSVP reminders for upcoming events

Shared community event photo and message of appreciation

Vivian texts about Friday errands and Sunday planning

Shared article on law enforcement oversight reforms

Devotional text and brunch check-in

Vivian updates Alex on midweek scheduling and flyer edits

Shared prayer video and reminder for church RSVP

Grocery list and Sunday volunteer coordination

Shared article about city public budget hearing

Good Friday church visit and lunch

Grocery pickup reminder and Saturday dinner plans

Easter Sunday devotional message and photo shared

Grocery planning and Monday schedule coordination

Shared devotional text and reminder for meeting

Flyer shared for campaign outreach and planning discussion

Vivian checks in about dinner and guest RSVP

Shared prayer video and weekly devotional

Grocery pickup update and coordination for Sunday

Shared Sunday devotional and confirmation of brunch time

confirms lunch meeting and flyer edits

Shared article about policing policy reform and reply

Reminder for church RSVP and grocery list check-in

Vivian confirms community event location and start time
Shared news piece and brief discussion of public reaction
Coordination for dinner guest seating and RSVP
Shared church devotional and Sunday message
Grocery schedule update and confirmation for midweek meeting
Vivian texts about errands and upcoming flyer delivery
Shared article on new legislation and brief commentary
Grocery coordination and devotional reminder
Vivian confirms guest arrival and sends emoji reply
Shared photo from community gathering and note of thanks
Vivian texts about brunch timing and church livestream
Shared flyer about public forum and brief reaction
Grocery and weekend planning coordination
Vivian confirms event logistics and sends prayer emoji
Shared civic article and comment on community feedback
Grocery reminder and guest confirmation for outreach dinner
Shared Sunday planning message and devotional link
Vivian confirms pickup location and evening schedule
Shared quote and update on campaign coordination
End-of-month devotional and Friday flyer review
Grocery coordination and weekday planning
Shared devotional message and follow-up event confirmation
Flyer shared for community meeting and brief update
Vivian confirms dinner guest list and grocery list
Sunday devotional shared and brunch coordination
Shared campaign-related article and response
Vivian confirms RSVPs and coordinates outreach schedule
Grocery update and prayer message shared
Shared news item and brief discussion
Friday planning and reminder for Sunday service
Grocery run and dinner guest confirmation
Mother's Day message exchanged
Shared devotional and discussion of flyer edits
Vivian confirms weekly errands and Sunday RSVP
Shared community event flyer and brief exchange
Grocery list update and coordination for campaign lunch
Shared quote and emoji reply
Coordination for Sunday devotional and planning
Sunday message exchange and brunch follow-up
Shared article and notes on upcoming council hearing
Vivian confirms pickup time and RSVP
Grocery and devotional message shared
Coordination for Friday outreach and prayer meeting
Shared update from outreach supporter and comment
Weekend family plans and grocery coordination
Brunch planning and shared devotional message
Memorial Day greeting and coordination for lunch

RSVP and flyer edits
Shared image from civic event and note of appreciation
Grocery list check-in and guest update
End-of-month prayer and campaign follow-up
Shared prayer and brunch planning
Grocery coordination and Sunday scheduling
Shared campaign update flyer and response
Vivian checks in on dinner plans and confirms RSVPs
Shared quote and devotional reaction
Grocery list and guest arrival coordination
Shared civic article and emoji response
Brunch RSVP and devotional message exchange
Vivian shares prayer link and confirms church plans
Shared article on policing and campaign flyer edits
Grocery shopping update and weekly meeting plans
Shared devotional video and feedback
Planning dinner and discussing RSVP updates
Shared local reform article and emoji-only reply
Grocery and family event coordination
Father's Day message and brunch coordination
Shared community meeting schedule and flyer update
Grocery list check-in and prayer message
Shared Juneteenth message and evening planning
Event flyer shared and RSVP discussion
Vivian sends reminder for brunch and campaign outreach
Grocery update and Saturday planning
Shared devotional quote and church schedule
Flyer edits and RSVP list review
Grocery and guest coordination for weekend
Shared campaign article and reaction
Vivian confirms family visit and dinner plans
Grocery run reminder and guest list update
Shared devotional message and thank-you note
End-of-month reflection and schedule coordination
Grocery and dinner coordination for Monday
Shared article about civic policy update
Planning for 4th of July gathering and grocery list
Independence Day message and brunch update
Shared community update and response
Grocery list coordination and dinner guest planning
Devotional message and Sunday brunch plans
Shared campaign flyer and message of encouragement
Grocery list and RSVP for midweek event
Planning outreach flyer edits and schedule
Dinner coordination and guest list confirmation
Shared article on law enforcement initiative
Grocery prep and planning for weekend events

Sunday devotional shared and lunch plans confirmed
Shared flyer and RSVP response for upcoming community meeting
Grocery planning and schedule for upcoming fundraiser
Campaign update coordination and flyer note
Shared devotional and daily planning message
Grocery coordination and weekend planning
Vivian confirms campaign event RSVP and dinner prep
Shared devotional and brunch coordination
Grocery list and campaign outreach updates
Flyer edits and coordination for midweek meeting
Shared article and reply about policy discussion
Vivian confirms outreach logistics and RSVP list
Grocery update and Sunday brunch planning
Shared end-of-week prayer and event confirmation
Shared Sunday devotional and message of support
Grocery list and campaign notes coordination
Shared flyer and confirmed dinner guests
End-of-month devotional and scheduling update
Grocery coordination and campaign flyer edits
Shared community policy article and brief comment
Devotional message and weekend dinner planning
Sunday planning and brunch logistics
Shared article and grocery list check-in
Flyer edits and family dinner schedule
Shared civic meeting notes and prayer emoji
Grocery coordination and church guest confirmation
Shared community article and schedule update
Dinner RSVP and devotional quote shared
Sunday church coordination and brunch check-in
Shared article on public safety policy; brief reply
Grocery planning and flyer delivery reminder
Devotional message and coordination for weekend dinner
Shared civic update and campaign event flyer
Dinner RSVP confirmation and emoji reply
Community event prep and flyer design update
Sunday devotional and scheduling brunch
Grocery coordination and midweek meeting RSVP
Shared policy memo and brief comment
RSVP confirmation for dinner and devotional message
Grocery check-in and campaign flyer edits
Shared photo from Friday outreach and response
Coordination for Sunday brunch and devotional shared
Grocery run update and weekend planning
Shared civic flyer and campaign discussion
Grocery and dinner coordination
Devotional and confirmation of Sunday event plans
Flyer draft review and evening schedule check-in

Grocery planning and RSVP list confirmation
End-of-month devotional and calendar review
Sunday devotional and brunch planning
Grocery coordination and weekend schedule update
Shared article on public policy change and brief reply
Dinner guest confirmation and grocery list
Shared campaign flyer draft and emoji response
Grocery planning and confirmation of outreach event details
Shared flyer and Sunday planning message
Sunday devotional and brunch coordination
Shared article and reminder about upcoming campaign call
Grocery pickup update and guest RSVP
Shared remembrance message and devotional prayer
Grocery reminder and flyer coordination
Shared campaign update and schedule confirmation
Dinner planning and devotional shared
Sunday message and brunch guest coordination
Grocery and event logistics
Shared public memo and emoji reply
Dinner RSVP and guest list confirmation
Grocery check-in and devotional message
Shared article on community safety and brief response
Grocery list and Saturday planning
Sunday devotional and brunch coordination
Grocery reminder and meeting schedule update
Shared flyer for campaign event and RSVP reply
Grocery and dinner planning
Shared devotional message and thank-you note
Grocery coordination and guest check-in
Shared article on policing and civic responsibility
Sunday message and brunch confirmation
End-of-month devotional and RSVP update
Shared Sunday devotional and confirmed dinner plans
Grocery list coordination and scheduling updates
Shared article and brief discussion about public safety
RSVP confirmation and grocery planning for weekend
Shared devotional message and church service note
Sunday brunch planning and schedule coordination
Grocery reminder and follow-up on RSVP
Shared policy flyer and campaign coordination
Dinner and devotional planning for Thursday
Grocery update and outreach logistics for the weekend
Shared image and brunch coordination
Flyer edit request and RSVP confirmation
Shared Sunday devotional and family brunch update
Grocery planning and weekly calendar check-in
Shared civic memo and discussion of flyer distribution

Dinner RSVP and devotional shared
Grocery run confirmation and reminder for upcoming meeting
Shared flyer and campaign schedule update
Sunday coordination and flyer edits discussed
Shared devotional and confirmation of dinner guests
Grocery list and event coordination
Campaign flyer feedback and RSVP check-in
Grocery update and Sunday brunch note
Shared devotional and end-of-week reflection
Grocery coordination and weekend event reminder
Shared flyer and RSVP confirmation
Sunday devotional and brunch planning
Grocery list and dinner coordination
Shared event flyer and thank-you message
Grocery planning and schedule for campaign dinner
Halloween message and coordination for evening dinner
Shared prayer message and grocery list coordination
Grocery pickup and planning for dinner guest
Shared devotional message and evening check-in
Grocery planning and midweek RSVP update
Flyer edit coordination and Sunday guest list confirmation
Shared holiday devotional and dinner planning
Grocery reminder and Saturday scheduling
Shared Sunday devotional and brunch update
Grocery list coordination and event RSVP
Shared article and holiday schedule update
Dinner planning and flyer delivery coordination
Devotional message and guest list review
Grocery update and RSVP confirmation
Shared flyer and dinner coordination for family
Shared Sunday devotional and brunch photo
Grocery planning and midweek campaign logistics
Shared community announcement and prayer emoji
Dinner RSVP confirmation and grocery reminder
Holiday devotional and Sunday event reminder
Shared family calendar and guest RSVP
Grocery coordination and holiday brunch planning
Shared Sunday devotional and church attendance update
Flyer discussion and coordination for Christmas dinner
Christmas Eve message and brunch RSVP
Shared Christmas greeting and holiday coordination
Grocery reminder and event recap
Shared devotional and guest schedule planning
Grocery coordination and Sunday brunch logistics
Shared flyer for New Year's Eve event
Grocery prep and RSVP confirmation for holiday dinner
New Year's Eve devotional and dinner coordination

Shared devotional and grocery list coordination
Flyer planning and confirmation of RSVP list
Sunday devotional and brunch scheduling
Grocery planning and weekday event coordination
Shared public safety article and brief discussion
Dinner RSVP and confirmation of weekend errands
Devotional message shared and calendar check-in
Grocery list and Sunday planning
Shared community flyer and brief coordination note
Sunday devotional and brunch RSVP confirmation
Shared Veterans Day message and dinner update
Grocery list coordination and flyer edits
Shared news article and emoji-only response
Dinner planning and guest check-in
Shared devotional and thank-you note
Grocery reminder and RSVP confirmation
Sunday devotional and brunch update
Shared community update and flyer review
Grocery prep and prayer message shared
Event logistics and dinner planning
Shared flyer and follow-up coordination
Grocery reminder and RSVP response
Weekend devotional and event update
Sunday brunch coordination and thank-you message
Shared article and civic discussion
Grocery planning and Thanksgiving prep
Shared devotional and schedule check-in
Thanksgiving message and brunch photo
Grocery list update and guest check-in
End-of-month reflection and devotional shared
New Year's Day message and grocery planning
Shared flyer and RSVP for community meeting
Grocery coordination and campaign flyer edits
Shared devotional message and weekend schedule
Sunday brunch coordination and shared prayer
Grocery list and dinner guest confirmation
Shared article and civic event planning
Grocery pickup reminder and RSVP
Shared devotional and flyer update
Grocery planning and campaign update
Grocery planning and campaign update
Grocery list and RSVP follow-up for weekend dinner
Shared devotional message and Sunday coordination
Grocery shopping reminder and campaign flyer discussion
Shared article and RSVP update
Grocery planning and family dinner coordination
Devotional message and schedule confirmation

Shared flyer and comment about upcoming event
Grocery update and RSVP reply
Shared devotional and Sunday brunch message
Grocery and midweek coordination
Shared policy article and brief comment
Grocery planning and Thursday guest list update
Devotional and Sunday flyer message
Grocery list reminder and RSVP follow-up
Shared community event update and prayer message
Grocery list and Sunday devotional coordination
Shared flyer and brunch confirmation
Grocery list and schedule check-in
Shared devotional message and thank-you note
Grocery coordination and campaign dinner plans
End-of-month reflection and shared devotional
Grocery planning and devotional message
Shared flyer and RSVP update for campaign event
Grocery list and Sunday planning coordination
Shared devotional and thank-you message
Grocery check-in and guest list update
Shared campaign article and discussion
Grocery list confirmation and prayer message
Shared flyer and schedule for Sunday outreach
Brunch coordination and church attendance check-in
Grocery reminder and RSVP confirmation
Shared devotional and calendar planning
Grocery planning and guest coordination
Shared civic update and response from Alex
Valentine's Day message and dinner coordination
Grocery check-in and Sunday planning message
Shared campaign flyer and response about timing
Grocery planning and family brunch coordination
Devotional message shared and weekend schedule confirmation
Shared event image and flyer coordination
Grocery list and reminder for Thursday event
Shared campaign material and thank-you note
Grocery update and guest RSVP confirmation
Sunday devotional and brunch coordination
Shared policy update and comment on flyer edits
Grocery planning and flyer distribution follow-up
Shared devotional quote and prayer reminder
Grocery check-in and campaign RSVP confirmation
Event coordination and thank-you text
End-of-month prayer message and family dinner plans
Grocery coordination and book promotion
Shared devotional message and brunch planning
Grocery list update and Sunday schedule

Shared campaign article and planning comment
Grocery check-in and dinner coordination
Shared devotional message and emoji response
Grocery planning and book promotion
Shared image from outreach and message of gratitude
Sunday devotional and family brunch plans
Grocery coordination and RSVP update

| Privilege Claimed |
| --- |
| Spousal communication, Privacy |
| Spousal communication, Privacy |
| Spousal communication, Third party privacy |
| Spousal communication, Privacy |
| Spousal communication, Privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy |
| Spousal communication, Privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Third party privacy |
| Spousal communication, Privacy |
| Spousal communication, Privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy |
| Spousal communication, Privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal communication, Privacy, Third party privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |
| Spousal Communication, Privacy, Third Party Privacy |

Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

                              Spousal communication, Privacy

                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

                              Spousal communication, Privacy

                              Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy

                              Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
                              Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
                              Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy
                              Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication,

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy

Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy

Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy

Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy

Spousal communication, Privacy, Third party privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy
Spousal communication, Privacy

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | April 10, 2025 |
|----------|----------------------|------|----------------|
| Title | Alex Villanueva v. County of Los Angeles, et al. | | |

| Present: The Honorable | Jacqueline Chooljian, United States Magistrate Judge | |
|------------------------|------------------------------------------------------|--|
| L. Krivitsky for Kerri Hays | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|----------------------------------|----------------------------------|
| None | None |

**Proceedings:**      (IN CHAMBERS)

**ORDER (1) SUBMITTING AND VACATING HEARING ON DISCOVERY MOTIONS; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO COMPEL PLAINTIFF'S MEDICAL RECORDS (DOCKET NOS. 72, 80); (3) GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING APEX DEPOSITIONS (DOCKET NOS. 74, 79); AND (4) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES (DOCKET NOS. 76. 78)**

Pending before the Court and addressed herein are three discovery motions which are set for hearing before this Court on April 15, 2025, namely: (1) Defendant County of Los Angeles' Motion to Compel Plaintiff's Medical Records ("First Motion"), which essentially seeks an order compelling Plaintiff to obtain and produce to the County of Los Angeles ("County") Plaintiff's medical records from Drs. Daniel Kharrazi, M.D., Lubomira Scherschun, M.D., and Mary Wahbah, M.D. ("Plaintiff's Doctors") or to provide the County with a written consent to obtain Plaintiff's medical records from Plaintiff's Doctors; (2) Defendants' Motion for Protective Order Regarding Apex Depositions ("Second Motion"), which essentially seeks an order barring Plaintiff from deposing Sheriff Robert Luna, and County Board of Supervisors Hilda Solis and Janice Hahn; and (3) Defendants' Motion to Compel Plaintiff's Discovery Responses ("Third Motion"), which essentially seeks an order compelling Plaintiff to respond to certain deposition questions and to produce certain documents assertedly responsive to the County's Request for Production Nos. 1, 15, 20, 21, 23, 32-34, and 36 (collectively, "Motions").

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds the Motions appropriate for decision without oral argument. The hearing calendared for April 15, 2025 is hereby vacated and the matters are taken off calendar and submitted for decision.

Based upon the Court's consideration of the parties' submissions in connection with the Motions and the pertinent facts and law, the Court rules as set forth below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | April 10, 2025 |
|---|---|---|---|

| Title | Alex Villanueva v. County of Los Angeles, et al. |
|---|---|

**The First Motion**

The Court grants in part and to denies in part the First Motion. The Court grants the First Motion only as to Dr. WahBah's records and any medical records that Plaintiff provided to his own expert(s) that have not already been produced and otherwise denies the First Motion. More specifically: Plaintiff shall (1) obtain from Dr. WahBah and produce to the County by not later than April 17, 2025, Plaintiff's medical records reflecting complaints, symptoms, examinations, findings, diagnosis and treatment for the period of January 2022 to the present; and (2) produce to the County forthwith any other medical records Plaintiff has produced to his own expert(s) that have not already been produced.

Plaintiff apparently has not sought any mental health treatment at any time from January 2022 to the present, but began seeing Plaintiff's Doctors – for orthopedic treatment (Dr. Kharrazi), high blood pressure (Dr. WahBah), and dermatology needs (Dr. Scherschun) – in January 2022. (Docket No. 72-1 at 313-14 [Response to Interrogatory No. 6]; Docket No. 72-2 at 2, ¶ 3 [DiBona Declaration]; Docket No. 72-2 at 48-49 [Response to Interrogatory No. 6]). The Court declines to require Plaintiff to obtain and produce medical records from his orthopedist and dermatologist because it is not persuaded that such records are likely to be relevant or proportional to the needs of the case considering the Rule 26(b)(1) factors, and finds that Plaintiff's right to privacy in such records outweighs the County's need therefor. However, blood pressure issues can be stress-related and an internist is likely to have comprehensive records potentially reflecting factors that could have caused Plaintiff emotional distress or the fact that he was not suffering emotional distress, and the Court views medical records from Plaintiff's internist for the period of January 2022 to the present[1] to be relevant and proportional to the needs of the case considering the factors set out in Fed. R. Civ. P. 26(b)(1), particularly given the breadth/severity of Plaintiff's allegations regarding the emotional/physical injuries he has assertedly suffered as a result of Defendants' alleged conduct, and his assertion that he is entitled to approximately $25 million in damages for the same.[2] The Court also finds that Plaintiff's right to privacy in the records ordered produced is outweighed by the County's need for them to defend this action, that Plaintiff's privacy concerns can be adequately addressed through the existing Protective Order, and that Plaintiff's other objections, to the extent directed to the documents ordered produced herein, are without merit.

---

[1]The allegations in the First Amended Complaint appear to be predicated on Defendants' alleged conduct beginning in the Fall of 2023 but some of that conduct relates to events going back to at least 2021 (see, e.g., FAC, Exs. 1, 5).

[2]Plaintiff seeks economic damages of past and future loss emotional distress of at least $25 million, and has asserted that Defendants' actions caused him to suffer 'humiliation," "severe emotional distress," "mental and physical pain and anguish," "emotional reactions," "shock, disbelief, embarrassment, distress, hurt, dejection, depression, stress, diminished confidence, anxiety, anger, fear, isolation, insomnia, fatigue, rejection, bleakness, lack of joy, grief, emotional blocking, disappointment, sadness, despair, isolation, numbness, and insomnia." (FAC ¶¶ 28, 34, 44, 45, 49; Docket No. 72-1 at 312-13 [Response to Interrogatory No. 5]).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | April 10, 2025 |
|---|---|---|---|

| Title | Alex Villanueva v. County of Los Angeles, et al. | | |

**Second Motion**

The Court grants the Second Motion and issues a protective order prohibiting Plaintiff from deposing Sheriff Robert Luna, and County Board of Supervisors Hilda Solis and Janice Hahn. First, Plaintiff is not entitled to take the three depositions in issue because doing so would result in Plaintiff exceeding the ten deposition limit without a stipulation or court order authorizing him to do so.[3] Second, the Court finds: (1) the three witnesses in issue qualify for treatment as "apex" witnesses; (2) there are no extraordinary circumstances that warrant the taking of their depositions; and (3) such witnesses do not appear to have unique first-hand, non-repetitive knowledge of the facts at issue in the case that has not been or could not be obtained through less intrusive discovery methods.[4]

///
///
///
///
///
///
///
///

---

[3]Pursuant to Fed. R. Civ. P. 30, absent a stipulation or leave of court, no party may take more than ten depositions in an action. Here, the parties have not so stipulated and Plaintiff did not seek leave of court to take more than ten depositions. Nor is the Court persuaded that it would be consistent with Fed. R. Civ. P. 26(b)(1) and (2) to grant such leave at this juncture.

[4]Discovery seeking the deposition of high-level executives or government officials (so-called "apex" depositions) creates "a tremendous potential for abuse or harassment" that may require the court's intervention for the witness's protection under Fed. R. Civ. P. 26(c). Apple Inc. v. Samsung Elecs. Co., Ltd., 282 F.R.D. 259, 263 (N.D. Cal. 2012) (internal quotation marks omitted). Heads of government agencies in particular "are not normally subject to deposition" absent extraordinary circumstances. Green v. Baca, 226 F.R.D. 624, 648 (C.D. Cal. 2005) (quoting Kyle Eng. Co. v. Kleppe, 600 F.2d 226, 231-32 (9th Cir. 1979), and collecting cases), clarified, 2005 WL 283361 (C.D. Cal. 2005). The apex doctrine does not, however, protect high-ranking officials from deposition in all circumstances. "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." Apple Inc., 282 F.R.D. at 263 (internal quotation marks omitted). The party seeking to block an apex deposition bears the burden of showing why the deposition should not be allowed. See, e.g., Finisar Corp. v. Nistica, Inc., 2015 WL 3988132, at *2 (N.D. Cal. June 30, 2015) ("Even when the apex doctrine is at issue, however, the burden remains on the party seeking to avoid the deposition.") (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-04979-SVW-JC | Date | April 10, 2025 |
|---|---|---|---|
| Title | Alex Villanueva v. County of Los Angeles, et al. | | |

**Third Motion**

The Court grants in part and denies in part the Third Motion.[5]  To the extent the Court directs Plaintiff to answer deposition questions or to produce documents he must do so by not later than April 24, 2025.

First, the Court grants the Third Motion to the extent it seeks an order compelling Plaintiff to answer Defendant's deposition question regarding the identity of those present at the referenced "second meeting" with counsel and to overrule Plaintiff's attorney-client privilege/work product objections thereto.[6]

---

[5]The Court's orders are limited to the specific deposition questions and discovery requests referenced in the joint stipulation corresponding to the Third Motion (Docket No. 77).

[6]Questions of privilege that arise in the course of the adjudication of federal rights are governed by the principles of federal common law.  United States v. Zolin, 491 U.S. 554, 562 (1989) (citing Federal Rules of Evidence 501).  Where, as in this case, federal question and pendent state law claims are present, federal law on privilege, not state law, applies.  Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir.), cert. denied, 546 U.S. 958 (2005).  The identity of persons who are present at attorney-client meetings or who are parties to attorney-client communications is not privileged or protected as work product and instead is subject to disclosure and indeed, standard fare for inclusion in a privilege log, so that an assessment can be made as to whether in fact the communications are privileged or were made in the presence of a third party such that the privilege did not attach.  See United States v. Gann, 732 F.2d 714, 723 (9th Cir. 1984) (rejecting assertion of attorney-client privilege as to communications with attorney where party knew or should have known that third party was present); New Jersey v. Sprint Corp., 258 F.R.D. 421, 444 (D. Kan. 2009) ("[T]he subject matter of meetings with an attorney, the persons present, the location of the meetings, or the persons arranging the meetings are [] not protected by the privilege."); United States ex rel. Baker v. Community Health Systems, Inc., 2012 WL 12918280, at *2 (D. N.M. Feb. 17, 2012) (same); Coorstek, Inc. v. Reiber, 2010 WL 1332845, at *4 & *7 (D. Colo. Apr. 5, 2010) (same and discussing when presence of or disclosure of communication to third party does/does not effect a waiver of privilege); Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995) ("[A] claim of confidentiality [in connection with the assertion of the attorney-client privilege] may be defeated where the client knowingly makes the communication in the presence of a third party."); In re Grand Jury Investigation, 974 F.2d 1068, 1070-71 (9th Cir. 1992) (approving use of privilege log that identified attorney and client involved, the nature of document, all persons/entitites shown on document to have received or sent it, all persons/entities known to have been furnished document or informed of its substance, and date document was generated, prepared, or dated).  The sole case upon which Plaintiff relies – Coito v. Superior Court, 54 Cal. 4th 480, 485-86 (2012) – is a state case interpreting California state law which is not applicable and is distinguishable for the reasons explained by the County (see Docket No. 78 at 2-3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | April 10, 2025 |
|---|---|---|---|
| Title | Alex Villanueva v. County of Los Angeles, et al. | | |

Second, the Court denies the Third Motion to the extent it seeks an order compelling Plaintiff to Answer Defendant's deposition question regarding the documents/videos reviewed during a meeting with counsel and to sustain Plaintiff's attorney-client privilege/work product objection thereto.[7]

Third, the Court grants the Third Motion to the extent it seeks an order compelling Plaintiff to answer Defendant's deposition questions as to whether he knows if Plaintiff's written responses to the County's document requests are accurate or not and whether he has any knowledge whether Plaintiff's written responses to the County's document requests are accurate and to overrule Plaintiff's attorney-client privilege/work product objections thereto.[8]

Fourth, the Court grants the Third Motion to the extent it seeks an order compelling Plaintiff to answer Defendant's deposition questions as to whether specified allegations in his First Amended Complaint regarding ballot measures, Fulgent, and COVID vaccine mandates were or were not included in his tort claim/tort claim letter and whether specified ballot measures, Fulgent or vaccine mandates were referenced in the government claim filed with the County and to overrule Plaintiff's attorney-client privilege, work product and calls for a legal conclusion objections thereto.[9]

---

[7]Although the Court agrees with Defendants that Plaintiff could properly be asked and compelled to identify the documents/videos he reviewed in preparation for his deposition (see, e.g., Fed. R. Evid. 612), that is distinct from asking Plaintiff to disclose what he reviewed with counsel or during a meeting with counsel or even at the request of counsel, the latter of which the Court views to be privileged/the subject of work product protection.  To be clearer, a question that simply calls for Plaintiff to identify the documents/videos he reviewed in preparation for his deposition is not properly subject to an attorney-client privilege or work product objection or instruction not to answer merely because Plaintiff conducted such a review on the instruction of, or in the presence of his counsel.

[8]These questions call for a simple response (e.g., yes, no, I don't know, etc.) and appear to this Court to be fair questions that do not implicate the attorney-client privilege or work product.

[9]Plaintiff's objection that the questions in issue called for a legal conclusion is not a basis upon which to instruct Plaintiff not to answer such deposition questions.  While Plaintiff's reason(s) for allegedly including references to ballot measures, Fulgent, or vaccine mandates in his First Amended Complaint and not including them in his government claim may or may not implicate the attorney-client privilege/work product, the fact that they are referenced in the First Amended Complaint and are not referenced in Plaintiff's government claim (if true), is something that should be apparent from the face of the public documents in issue and accordingly is not subject to the attorney-client privilege or work product.  To the extent Plaintiff now argues that the information called for is irrelevant because there is no legal requirement that Plaintiff exhaust administrative remedies, the Court overrules such objection both because it was not asserted at the deposition and because, as the County argues, the requested information is at least arguably relevant to the veracity of Plaintiff's current allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-04979-SVW-JC | Date | April 10, 2025 |
|---|---|---|---|
| Title | Alex Villanueva v. County of Los Angeles, et al. | | |

Fifth, the Court grants the Third Motion to the extent it seeks an order compelling Plaintiff to answer Defendant's deposition question as to whether, when he filed the instant lawsuit, it had anything to do with the ballot measures, the Fulgent contract, or vaccine mandates and to overrule Plaintiff's attorney-client privilege, work product and calls for a legal conclusion objections thereto.[10]

Sixth, the Court grants the Third Motion to the extent it seeks an order compelling Plaintiff to answer Defendant's deposition question as to whether the March 2022 filing of the Lim and Huntsman complaints could have been in retaliation for Plaintiff speaking out against Measure A in July 2022 and to overrule Plaintiff's attorney-client privilege, work product, and calls for a legal conclusion objections.[11]

Seventh, the Court grants the Third Motion to the extent it seeks an order compelling Plaintiff to answer the discrete "yes or no" questions calling for Plaintiff to state whether or not he had a reason not to include specified information in the First Amended Complaint and whether or not he chose to include certain conversations in his complaint.[12]

Eighth, the Court is grants in part and denies in part the Third Motion.  To the extent Plaintiff has not already produced all non-privileged communications between himself and Vivian Villanueva, Gil Carrillo, Laureen Perri, Maria Lopez, Nick Wilson, and John Satterfield that are responsive to RFP Nos. 1, 15, 20, 21, 23, 32, 33, 34 and 36, the Court orders him to do so.  Further, to the extent Plaintiff has withheld any privileged communications between himself and Vivian Villanueva, Gil Carrillo, Laureen Perri, Maria Lopez, Nick Wilson, and John Satterfield that would otherwise be responsive to RFP Nos. 1, 15, 20, 21, 23, 32, 33, 34 and 36, the Court orders him to produce a privilege log corresponding to the same.

IT IS SO ORDERED.

---

[10]See supra note 9.  Again, the question asked simply calls for Plaintiff to agree or disagree as to whether the instant lawsuit when filed, had anything to do with the ballot measures, the Fulgent contract, or the vaccine mandates which appears to the Court to be a fair factual inquiry independent of any communications, let alone attorney-client privileged communications with counsel or attorney work product.

[11]See supra note 9.  This inquiry calls for Plaintiff to agree or disagree with a common sense proposition – that his statements in July 2022 could not have been a basis for complaints filed before he made the statements.  It does not call for attorney-client privileged communications or work product.

[12]While potential follow-up questions inquiring about reasons/choices for including certain information in, or omitting it from the First Amended Complaint may implicate the attorney-client privilege or work product, the discrete "yes or no" questions in issue do not do so.

# EXHIBIT 5

# INVESTIGATOR'S LOG

| | |
|---|---|
| **FILE NUMBER:** | IV2558101 |
| **INVESTIGATOR:** | Sanders Roberts LLP |
| **DATE DEPARTMENT BECAME AWARE OF ALLEGATION(S):** | 03/16/2022 |
| **DATE IAB INVESTIGATION INITIATED:** | 06/27/2023 |
| **DATE SENT TO ADVOCACY UNIT:** | |
| **DATE RETURNED FROM ADVOCACY UNIT:** | |
| **DATE FORWARDED TO FORCE OR RISK REVIEW:** | |
| **DATE RETURNED FROM FORCE OR RISK REVIEW:** | |
| **DATE TO DIVISION:** | |
| **DATE RETURNED TO IAB:** | |

**CASE SUMMARY:**

| DATE | SUMMARY | NAME |
|---|---|---|
| 06/22/22 | Attorney Client Privilege | Lt. Carter |
| 06/23/22 | Attorney Client Privilege | Lt. Carter |
| 06/24/22 | Commander Wolak called and informed me to handle this matter in the same fashion as the previous involved Sheriff cases. | Lt. Carter |
| 07/07/2022 | Per Ms. Real, hard case delivered to Ms. Diaz Herrera's office | Lt. Carter |
| 08/03/22 | Emailed Ms. Diaz Herrera for an update. | Lt. Carter |
| 10/03/22 | Sent email to Ms. Diaz Herrera re: case status. | Lt. Carter |
| 10/13/22 | All interviews have been completed, except for the Sheriff. Will attempt to schedule a date by 10/14/22. | Lt. Carter |
| 11/02/22 | Sent email to Ms. Diaz Herrera re: case status. | Lt. Carter |
| 11/07/22 | Re-inquired about case status. | Lt. Carter |
| 11/14/22 | Completed all the interviews necessary for the Huntsman matter, with exception of Sheriff Villanueva. She has reached out to Commander Satterfield to schedule Sheriff Villanueva's interview. She does not have a date sched for the interview yet. | Lt. Carter |
| 11/30/22 | I sent Commander Satterfield and Capt. Blanchard an email | Lt. Carter |

Page **1** of **3**

**EXHIBIT**

**14**

CONFIDENTIAL

COLA002432

# INVESTIGATOR'S LOG

|  |  |  |
|---|---|---|
|  | asking them to contact the attorney in order to set up an interview with Sheriff Villanueva. |  |
| 11/30/22 | Commander Satterfield and Capt Blanchard called and informed me that they never received any requests for interviews for Sheriff Villanueva. | Lt. Carter |
| 12/13/22 | Sent email to Ms. Diaz Herrera regarding update. | Lt. Carter |
| 01/04/23 | Certified letter sent requesting an interview with the subject, Villanueva. | Lt. Carter |
| 01/09/23 | Former Sheriff Villanueva contacted the attorney. | Lt. Carter |
| 01/12/23 | Attorney Client Privilege | Lt. Carter |
| 02/02/23 | Sent an email requesting a case status. | Lt. Carter |
| 02/21/23 | Sent another email, no response. | Lt. Carter |
| 03/05/23 | Sent a 3rd email requesting an update. | Lt. Carter |
| 03/09/23 | Ms. Diaz Herrera responded. Villanueva is not cooperating. Attorney Client Privilege | Lt. Carter |
| 03/09/23 | Briefed Chief Lecrivain and are moving forward with the case. | Lt. Carter |
| 04/03/23 | Per Ms. Diaz-Herrera, she advised Shawn Thomas was reassigned all 4 cases. | Lt. Carter |
| 04/18/23 | Sent email to new council Shawn Thomas regarding an update. | Lt. Carter |
| 04/19/23 | Received update- Outside counsel have undertaken to draft a final report using interview and relevant evidence. | Lt. Carter |
| 05/15/23 | Attorney Shawn Thomas sent an email stating he would send the Hunstman case back to IAB this week. | Lt. Carter |
| 06/14/23 | Emailed Mr. Thomas regarding 4 POE cases. 2 cases (Huntsman, Lim) are ready for pick up. IAB LET and Risk Management LET not available until next Tuesday (6/27/23). | Lt. Carter |
| 07/05/23 | Lt. Ann Devane took over the POE team, Lt. John Carter explained the process of reviewing, completing and stacking the case. | Lt. Devane |
| 08/17/23 | Reviewed zoom interview with Complainant Lim | Lt. Devane |
| 08/24/23 | Converted zoom interview to wave file to send out and have the interview transcribed | Lt. Devane |
| 08/28/23 | Received Transcripts | Lt. Devane |

CONFIDENTIAL

# INVESTIGATOR'S LOG

| 09/12/23 | Worked on completing required documents to stack the case | Lt. Devane |
|---|---|---|
| 09/21/23 | Reviewed transcripts and compared to the summary written by Saunders Roberts LLP, and confirmed the statements made by Complainant Lim and Witnesses were all documented in the summary. | Lt. Devane |
| 09/26/23 | Requested Subject Villanueva's training record and copy of Policy of Equality notification form, unable to locate either, per IAB Secretary V. | Lt. Devane |
| 09/26/23 | Stacked case and submitted to IAB Captain Kopperud for review. | Lt. Devane |
| 10.2.23 | *Reviewed, returned for edits re: spelling.* | *R. Leopows* |
| 10-2-23 | *Resubmitted. APPROVED* | *R. Kopper* |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

CONFIDENTIAL

COLA002434

EXHIBIT 6

# INVESTIGATOR'S LOG

| | |
|---|---|
| **FILE NUMBER:** | IV 2558097 |
| **INVESTIGATOR:** | Sanders Roberts LLP |
| **DATE DEPARTMENT BECAME AWARE OF ALLEGATION(S):** | 03/16/2022 |
| **DATE IAB INVESTIGATION INITIATED:** | 06/27/2023 |
| **DATE SENT TO ADVOCACY UNIT:** | |
| **DATE RETURNED FROM ADVOCACY UNIT:** | |
| **DATE FORWARDED TO FORCE OR RISK REVIEW:** | |
| **DATE RETURNED FROM FORCE OR RISK REVIEW:** | |
| **DATE TO DIVISION:** | |
| **DATE RETURNED TO IAB:** | |

**CASE SUMMARY:**

| DATE | SUMMARY | NAME |
|---|---|---|
| 06/22/22 | Attorney Client Privilege | Lt. Carter |
| 06/23/22 | Attorney Client Privilege | Lt. Carter |
| 06/24/22 | Commander Wolak called and informed me to handle this matter in the same fashion as the previous involved Sheriff cases. | Lt. Carter |
| 07/07/2022 | Per Ms. Real, hard case delivered to Ms. Diaz Herrera's office | Lt. Carter |
| 08/03/22 | Emailed Ms. Diaz Herrera for an update. | Lt. Carter |
| 10/03/22 | Sent email to Ms. Diaz Herrera re: case status. | Lt. Carter |
| 10/13/22 | All interviews have been completed, except for the Sheriff. Will attempt to schedule a date by 10/14/22. | Lt. Carter |
| 11/02/22 | Sent email to Ms. Diaz Herrera re: case status. | Lt. Carter |
| 11/07/22 | Re-inquired about case status. | Lt. Carter |
| 11/14/22 | Completed all the interviews necessary for the Huntsman matter, with exception of Sheriff Villanueva. She has reached out to Commander Satterfield to sched Sheriff Villanueva's interview. She does not have a date sched for the interview yet. | Lt. Carter |
| 11/30/22 | I sent Commander Satterfield and Capt. Blanchard an email | Lt. Carter |

**EXHIBIT**

**13**

CONFIDENTIAL

COLA002429

# INVESTIGATOR'S LOG

| | asking them to contact the attorney in order to set up an interview with Sheriff Villanueva. | |
|---|---|---|
| 11/30/22 | Commander Satterfield and Capt Blanchard called and informed me that they never received any requests for interviews for Sheriff Villanueva. | Lt. Carter |
| 12/13/22 | Sent email to Ms. Diaz Herrera regarding update. | Lt. Carter |
| 01/04/23 | Certified letter sent requesting an interview with the subject, Villanueva. | Lt. Carter |
| 01/09/23 | Former Sheriff Villanueva contacted the attorney. | Lt. Carter |
| 01/12/23 | Attorney Client Privilege | Lt. Carter |
| 02/02/23 | Sent an email requesting a case status. | Lt. Carter |
| 02/21/23 | Sent another email, no response. | Lt. Carter |
| 03/05/23 | Sent a 3rd email requesting an update. | Lt. Carter |
| 03/09/23 | Ms. Diaz Herrera responded. Villanueva is not cooperating. Attorney Client Privilege | Lt. Carter |
| 03/09/23 | Briefed Chief Lecrivain and are moving forward with the case. | Lt. Carter |
| 04/03/23 | Per Ms. Diaz-Herrera, she advised Shawn Thomas was reassigned all 4 cases. | Lt. Carter |
| 04/18/23 | Sent email to new council Shawn Thomas regarding an update. | Lt. Carter |
| 04/19/23 | Received update- Outside counsel have undertaken to draft a final report using interview and relevant evidence. | Lt. Carter |
| 05/15/23 | Attorney Shawn Thomas sent an email stating he would send the Hunstman case back to IAB this week. | Lt. Carter |
| 06/14/23 | Emailed Mr. Thomas regarding 4 POE cases. 2 cases (Huntsman, Lim) are ready for pick up. IAB LET and Risk Management LET not available until next Tuesday (6/27/23). | Lt. Carter |
| 07/05/23 | Lt. Ann Devane took over the POE team, Lt. John Carter explained the process of reviewing, completing and stacking the case. | Lt. Devane |
| 08/16/23 | Reviewed zoom interview with Complainant Huntsman | Lt. Devane |
| 08/24/23 | Converted zoom interview to wave file to send out and have the interview transcribed | Lt. Devane |
| 08/28/23 | Received transcripts | Lt. Devane |

CONFIDENTIAL                                                        COLA002430

# INVESTIGATOR'S LOG

| | | |
|---|---|---|
| 09/12/23 | Worked on completing required documents to stack the case | Lt. Devane |
| 09/21/23 | Reviewed transcripts and compared to the summary written by Saunders Roberts LLP, and confirmed the statements made by Complainant Huntsman were all documented in the summary. | Lt. Devane |
| 09/26/23 | Requested Subject Villanueva's training record and copy of Policy of Equality notification form, unable to locate either, per IAB Secretary V. | Lt. Devane |
| 09/26/23 | Stacked case and submitted to IAB Captain Kopperud for review. | Lt. Devane |
| 10·2·23 | returned. approved. | R Kopperud |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

CONFIDENTIAL

COLA002431

EXHIBIT 7

EXHIBIT

3

exhibitsticker.com

## CISU ASSESSMENT FORM

| | Final Overall Designation |
|---|---|
| ICMS Number(s): 2022-112213 | ☐ "A" |
| Date CISU Received: March 9, 2022 | ☐ "B" |
| Sworn Personnel: None | ☐ "C" |
| Approximate Statute Date: N/A | ☑ "N" |
| | ☐ "E" |

Reporting Party(ies)

MAX HUNTSMAN, e410745, BOARD OF SUPERVISORS, INSPECTOR GENERAL (UC)

Complainant(s):

MAX HUNTSMAN, e410745, BOARD OF SUPERVISORS, INSPECTOR GENERAL (UC)

Involved Party(ies):

ALEJANDRO VILLANUEVA, e246296, SHERIFF, SHERIFF/UNCLASSIFIED

### Persons Interviewed

### Assessment

CP Huntsman (White) alleged that IP Villanueva (Hispanic or Latino) sent an email on 3/5/2022 within the Sheriff's Department that CP considered to be "a racially biased attacked" on CP. CP explains that CP's birth name was Max-Gustaf Edler but as Inspector General CP has only used the name Max Huntsman, which is reflected on CP's passport and driver's license. IP Villanueva has allegedly "repeatedly" referred to CP Huntsman as Max-Gustaf Huntsman "in public attacks" in an alleged effort to cause "extremists [IP] caters to" to view CP as either German or Jewish. For instance, CP also alleged that in a 3/6/2022 appearance on a KFI Radio show IP Villanueva acknowledged that CP no longer uses "Gustaf" as part of CP's name, which CP believes supports CP's allegation that IP "intentionally misnamed [CP] for the purpose of benefiting from the racial animosity that could trigger…" among extremists in IP's "audience."

IP Villanueva is the Los Angeles County Sheriff. The Sheriff's Department has its own equity process by which it internally addresses such complaints. Therefore, the facts alleged, even if taken as true, are unrelated to County employment or are otherwise non-jurisdictional under the County Policy of Equity. The County Intake Specialist Unit recommends an "N" designation for ICMS No. 2022-112213 and that the Sheriff's Department consider conducting an independent inquiry into the matter.

### Designation

Based on the information contained in the Report Notification Form(s) and any data indicated on this intake assessment form and/or additional information, it has been determined that this complaint is designated as follows:

**Involved Party**    ALEJANDRO VILLANUEVA, e246296, SHERIFF

CISU Assessment  Form

March 21, 2022

CONFIDENTIAL                                                    COLA002402

Overall Designation:  **N**

| CP | Charge | Protected Basis | Designation |
|---|---|---|---|
| MAX HUNTSMAN | Sec. 1 Discrimination | Religion | N |
| MAX HUNTSMAN | Sec. 5 Inappropriate Conduct Towards Others | Religion | N |
| MAX HUNTSMAN | Sec. 1 Discrimination | Ethnicity | N |
| MAX HUNTSMAN | Sec. 3 Harassment | Ethnicity | N |
| MAX HUNTSMAN | Sec. 3 Harassment | Race | N |
| MAX HUNTSMAN | Sec. 3 Harassment | Religion | N |
| MAX HUNTSMAN | Sec. 5 Inappropriate Conduct Towards Others | Ethnicity | N |
| MAX HUNTSMAN | Sec. 5 Inappropriate Conduct Towards Others | Race | N |
| MAX HUNTSMAN | Sec. 1 Discrimination | Race | N |

**Designation definitions**

**"A" designation.** CISU has concluded that **facts alleged present a potential violation** of the County Policy Of Equity (CPOE), which could warrant discipline (written warning, suspension, or discharge) and therefore further investigation by the County Equity Investigations Unit (CEIU) is recommended. (Reasonable good faith belief standard).

**"B" designation.** CISU has concluded that although the situation may involve, or appear to involve, an equity issue, **the situation does not rise to the level of a potential violation** of the CPOE, which could warrant discipline (written warning, suspension, or discharge). (Reasonable good faith belief standard).

**"C" designation.** CISU has concluded that **the facts alleged, even if taken as true, are not jurisdictional** to the CPOE. (Reasonable good faith belief standard).

**"N" designation.** CISU has concluded that the facts alleged, even if taken as true, are unrelated to County employment or otherwise non-jurisdictional to the CPOE. (Reasonable good faith belief standard).

**"E" designation.** Indicates that the initial intake investigation reveals that a discrimination, harassment, and/or retaliation complaint was received by the County from an external agency, such as the California Department of Fair Employment and Housing (DFEH), and/or from the Federal Equal Employment Opportunity Commission (EEOC) and will now be assessed internally at the County for appropriate handling/designation. (Reasonable good faith belief standard).

**Administrative Process Disclaimer:** The analysis contained herein, including the terminology used, is the result of an administrative process and initial investigation under the County Policy of Equity.

CISU Assessment Form

March 21, 2022

CONFIDENTIAL    COLA002403

The standards of proof and rules governing administrative investigatory and disciplinary processes are different from those that govern court proceedings. No legal conclusions can or should be drawn from this administrative analysis or the terminology contained therein and such would not be appropriate for consideration in any legal proceeding or court of law.

**Confidentiality Notice and Disclaimer:** This document may contain confidential and privileged information and is solely for the use of the person(s) or entity to whom it is intended. Any unauthorized review, use, disclosure, or distribution is prohibited.

| Assessed by CISU Investigator:  Nairi Gevorki |
|---|

| Reviewed by CEOP Panelist: Angela Reddock-Wright |
|---|

| Second Opinion Name: |
|---|

| CISU Investigation Complete Date: March 21, 2022 |
|---|

CONFIDENTIAL                                                                     COLA002404

EXHIBIT 8

## CISU ASSESSMENT FORM

| | Final Overall Designation |
|---|---|
| ICMS Number(s): 2022-112209 | ☐ "A" |
| Date CISU Received: March 8, 2022 | ☐ "B" |
| Sworn Personnel: None | ☐ "C" |
| Approximate Statute Date: N/A | ■ "N" |
| | ☐ "E" |

**Reporting Party(ies)**

Esther Lim, e662896, BOARD OF SUPERVISORS, Justice Deputy

**Complainant(s):**

ESTHER LIM, e662896, BOARD OF SUPERVISORS, SUPERVISOR'S DEPUTY III, UNCLASSIFIED

**Involved Party(ies):**

ALEJANDRO VILLANUEVA, e246296, SHERIFF, SHERIFF/UNCLASSIFIED

**Persons Interviewed**

**Assessment**

CP Lim (Female/Asian; DOB 7/30/1981; 40 years of age) alleges that IP Villanueva (Male/Hispanic or Latino; DOB 02/25/1963/59 years of age) has discriminated against and harassed CP based on age, sex, and race, and retaliated against CP. CP also alleges IP has engaged in "third-party harassment." CP provided four examples of the IP's alleged conduct. CP contends that in a "Facebook Live" appearance on 7/28/2021 IP Villanueva stated, "I don't think the public realizes, when [the Board of Supervisors] write these motions, these are written by their Justice Deputies, who are some 20-something, woke individuals, who are basically putting in words what doesn't pass legal muster at all." CP contends that while the statement was made generally about all Justice Deputies it was directed more specifically at CP because the motion IP Villanueva referenced was one CP drafted or helped draft.

CP alleges that in another "Facebook Live" on 10/6/2021 IP Villanueva referred to Justice Deputies as "flunkies." CP alleged that in a town hall on 2/16/2022 the IP stated, "All the Supervisors have 25-year-old justice deputies who are right out of college and writing all their motions." CP alleged, "This is another example of Sheriff Villanueva discriminating against me based on age." Lastly, CP alleged that in a 3/2/2022 "Facebook Live" appearance the IP stated there are "[n]o male justice deputy staff" and that "The people they hire are all 20 something fresh out of college. Don't have a lot of senior people. Woke flunkies straight out of college. First job. That's who writes the nonsense board orders." CP asserts CP has "sincere concerns" for CP's safety and that of CP's "peers."

IP Villanueva is the Los Angeles County Sheriff. The Sheriff's Department has its own equity process by which it internally addresses such complaints. Therefore, the facts alleged, even if taken as true, are unrelated to County employment or are otherwise non-jurisdictional under the County Policy of Equity. The County Intake Specialist Unit recommends an "N" designation for ICMS No. 2022-112209 and that the Sheriff's Department consider conducting an independent inquiry into the matter.

Page 1

**EXHIBIT**

**2**

CISU Assessment Form

March 21, 2022

**Designation**

Based on the information contained in the Report Notification Form(s) and any data indicated on this intake assessment form and/or additional information, it has been determined that this complaint is designated as follows:

**Involved Party**     ALEJANDRO VILLANUEVA, e246296, SHERIFF

Overall Designation: **N**

| CP | Charge | Protected Basis | Designation |
|---|---|---|---|
| ESTHER LIM | Sec. 6 Retaliation | None Alleged | N |
| ESTHER LIM | Sec. 3 Harassment | Gender | N |
| ESTHER LIM | Sec. 1 Discrimination | Age (40+) | N |
| ESTHER LIM | Sec. 5 Inappropriate Conduct Towards Others | Race | N |
| ESTHER LIM | Sec. 4 Third - Person Harassment | Age (40+) | N |
| ESTHER LIM | Sec. 1 Discrimination | Gender | N |
| ESTHER LIM | Sec. 3 Harassment | Race | N |
| ESTHER LIM | Sec. 3 Harassment | Age (40+) | N |
| ESTHER LIM | Sec. 1 Discrimination | Race | N |
| ESTHER LIM | Sec. 5 Inappropriate Conduct Towards Others | Gender | N |
| ESTHER LIM | Sec. 5 Inappropriate Conduct Towards Others | Age (40+) | N |

**Designation definitions**

**"A" designation.** CISU has concluded that **facts alleged present a potential violation** of the County Policy Of Equity (CPOE), which could warrant discipline (written warning, suspension, or discharge) and therefore further investigation by the County Equity Investigations Unit (CEIU) is recommended. (Reasonable good faith belief standard).

**"B" designation.** CISU has concluded that although the situation may involve, or appear to involve, an equity issue, **the  situation does not rise to the level of a potential violation** of the CPOE, which could warrant discipline (written warning, suspension, or discharge). (Reasonable good faith belief standard).

**"C" designation.** CISU has concluded that **the facts alleged, even if taken as true, are not jurisdictional** to the CPOE. (Reasonable good faith belief standard).

**"N" designation.** CISU has concluded that the facts alleged, even if taken as true, are unrelated to County employment or otherwise non-jurisdictional to the CPOE. (Reasonable good faith belief standard).

CONFIDENTIAL                                                                                    COLA002400

**"E" designation.** Indicates that the initial intake investigation reveals that a discrimination, harassment, and/or retaliation complaint was received by the County from an external agency, such as the California Department of Fair Employment and Housing (DFEH), and/or from the Federal Equal Employment Opportunity Commission (EEOC) and will now be assessed internally at the County for appropriate handling/designation. (Reasonable good faith belief standard).

**Administrative Process Disclaimer:** The analysis contained herein, including the terminology used, is the result of an administrative process and initial investigation under the County Policy of Equity. The standards of proof and rules governing administrative investigatory and disciplinary processes are different from those that govern court proceedings. No legal conclusions can or should be drawn from this administrative analysis or the terminology contained therein and such would not be appropriate for consideration in any legal proceeding or court of law.

**Confidentiality Notice and Disclaimer:** This document may contain confidential and privileged information and is solely for the use of the person(s) or entity to whom it is intended. Any unauthorized review, use, disclosure, or distribution is prohibited.

| |
|---|
| Assessed by CISU Investigator:  Nairi Gevorki |

| |
|---|
| Reviewed by CEOP Panelist: Angela Reddock-Wright |

| |
|---|
| Second Opinion Name: |

| |
|---|
| CISU Investigation Complete Date: March 21, 2022 |

CISU Assessment  Form

March 21, 2022

CONFIDENTIAL

COLA002401

# EXHIBIT 9

| From: | Alex DiBona |
| To: | Jason H. Tokoro; Steven Williamson |
| Subject: | RE: Villanueva v. COLA Deposition Notices: Meet and Confer |
| Date: | Tuesday, February 4, 2025 9:05:00 PM |
| Attachments: | image001.png |

Jason, please allow this email to serve as a response.

It is very standard practice to confirm any agreement in writing and there is nothing in writing confirming what you say I said on either of these calls. Plaintiff did not forfeit or waive any right to discovery on these calls. What I said was merely that 30(b)(6) witnesses may obviate the need for certain depositions. This is all I said.

In any event, you have not agreed to a 30(b)(6) witness or topics regarding the same (Plaintiff appreciates the confirmation of the Deposition of Max Huntsman). Also, "Sheriff Villanueva speaking at a Board meeting is not a communication between him and the Board" is not a position that we believe will be countenanced by the Court. Plaintiff is certainly willing to continue to meet and confer regarding 30(b)(6) topics, but Plaintiff is understanding you to mean you will not produce any such witness. Please let me know if this is inaccurate.

I would be happy to further discuss this on our call tomorrow.

---

**From:** Jason H. Tokoro <jtokoro@Millerbarondess.com>
**Sent:** Monday, February 3, 2025 1:56 PM
**To:** Alex DiBona <adibona@shegerianlaw.com>; Steven Williamson <swilliamson@millerbarondess.com>
**Subject:** RE: Villanueva v. COLA Deposition Notices: Meet and Confer

Alex – See below responses in RED.

**Jason H. Tokoro**

M I L L E R  |  B A R O N D E S S LLP

2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5226
Fax: 310-552-8400
jtokoro@millerbarondess.com
www.millerbarondess.com
Biography

♻ Please consider the environment – do you really need to print this email?

**From:** Alex DiBona <adibona@shegerianlaw.com>
**Sent:** Monday, January 27, 2025 10:51 PM
**To:** Steven Williamson <swilliamson@millerbarondess.com>

**Cc:** Jason H. Tokoro <jtokoro@Millerbarondess.com>
**Subject:** RE: Villanueva v. COLA Deposition Notices: Meet and Confer

Counsel, I hope this email finds you well. I am writing to address several pressing matters concerning discovery and depositions in this case.

**Deposition Scheduling**

As you are aware, Plaintiff has had to unilaterally notice depositions due to the lack of confirmed dates from your side. While we understand you are in the process of seeking dates, as of the date of this email, none have been provided. Depositions must commence within the next two weeks, and Plaintiff cannot delay further.

Therefore, unless you either (1) confirm the depositions will go forward as noticed or (2) provide alternative dates for these depositions by [specific date, e.g., end of this week], Plaintiff will have no choice but to file a motion to compel later this week.

This is false.  Your continued attempts to create a false record about these depositions is not going to work.  I also find it concerning that this is now the second time you have changed course after having a conversation with us.  The first time we spoke, you agreed that you would not need to depose the Board, CEOP, or Sheriff Luna, as long as the County produced 30(b)(6) witnesses for the relevant topics.  Shortly after that call, you served us with deposition notices for the Board, CEOP, and Sheriff Luna.  We have a second call with you during which we said those depositions (again) were not proper, and you again agreed you would not need them if we made the 30(b)(6) witnesses available.  In fact, you said you only served them out of an abundance of caution because we had not yet agreed to the 30(b)(6) topics.  Steve was on both calls, has notes from both of them, and agrees with my recollection.

It is also false that you had to unilaterally notice any of these depositions due to lack of confirmed dates from our side.  As you know, we proposed coming to agreement on a schedule for all depositions, that worked for all parties.  Rather than have that call, you unilaterally noticed the depositions.  That is not how it works, and won't be taken well by the magistrate judge if and when we have to litigate these issues.

Notwithstanding, we continue to work on confirming the deponents and deposition dates.  For example, we are figuring out who the relevant witness or witnesses will be for the CEOP.  Likewise, we are looking into who will testify on behalf of the Department for the "Do Not Rehire" process.  We hope to get back to you later this week on both.

**Apex Doctrine Does Not Apply**

Additionally, Plaintiff rejects any assertion that members of the Board of Supervisors or the current Sheriff qualify as "apex" witnesses. The Board of Supervisors upheld the decision to place Plaintiff on the "Do Not Hire" list, and these individuals are directly involved as percipient witnesses to the issues raised in Plaintiff's complaint. These are not apex witnesses, and the apex doctrine simply does not apply to these circumstances.

We disagree for the reasons we discussed during out last call.  In addition, and I as confirmed for you last week, the Board had no involvement in the "Do Not Rehire" notation being placed on former Sheriff Villanueva's file.  Nor did Sheriff Luna.  Your client knows this as he was Sheriff of LASD.

I also want to clear another thing up – the "Do Not Rehire" notation on a file is ***not*** a list.  It is merely a notation on a person's personnel file.  It is also not a "death sentence" as you have characterized it.  The "Do Not Rehire" does not automatically prevent someone from being hire by a County entity.  It is simply a notation on the file and the County entity can do as it chooses with the person.

**Discovery Issues**

As will be outlined in Plaintiff's discovery responses, there were numerous direct communications between Plaintiff and the Board of Supervisors regarding the protected activity alleged in the complaint. Plaintiff was given three minutes to speak during Board of Supervisors meetings, held via Zoom during the pandemic, where he raised issues related to ballot measures, vaccine mandates, and Fulgent. Plaintiff was given three minutes to speak at Board of Supervisor meetings, the Board is more than capable of discussing these meetings as they are a core function of their duties.

There are also letters between the Board of Supervisors' counsel and Plaintiff discussing Fulgent. These communications explicitly state that counsel was not representing Plaintiff, and thus, they cannot be and are not privileged.

Based on this, Defendant can and should produce a Person Most Knowledgeable regarding Plaintiff's protected activity with the Board of Supervisors. Plaintiff is willing to meet and confer further on this issue.

We disagree for the reasons we discussed during our last call.  Sheriff Villanueva speaking at a Board meeting is not a communication between him and the Board.  In addition, to the extent he had made public statements at Board meetings, he is capable of testifying to those.  I will also point out that Board meetings are recorded and available to the public.  Any testimony given at them is undisputed.  That being said, if you want to point us to the hearings at which Sheriff Villanueva spoke, we are happy to take a look.

As for the purported letters between the Board's counsel and Sheriff Villanueva discussing Fulgent, feel free to pass those along and we can take a look.  As I am sure you are well aware, simply because Sheriff Villanueva receive a letter from "counsel" – which I assume is County Counsel – it does not mean the Board was involved.

Please respond promptly to address the deposition scheduling and provide your position on the matters raised above.

**Alex DiBona** | Associate Attorney

# Shegerian & Associates

11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
adibona@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

**From:** Steven Williamson <swilliamson@millerbarondess.com>
**Sent:** Monday, January 27, 2025 3:26 PM
**To:** Alex DiBona <adibona@shegerianlaw.com>
**Cc:** Jason H. Tokoro <jtokoro@Millerbarondess.com>
**Subject:** RE: Villanueva v. COLA Deposition Notices

Hi Alex,

Following up again on the request for dates for Plaintiff's deposition, as well as Jason's e-mail requesting dates when he is available for an IME.

Please let us know by close of business tomorrow.

Thanks,
Steve

**Steven Williamson**
M I L L E R | B A R O N D E S S LLP
2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5253
Fax: 310-552-8400
Mobile: 732-589-8187
swilliamson@millerbarondess.com

[www.millerbarondess.com](http://www.millerbarondess.com)
[Biography](http://www.millerbarondess.com)

 Please consider the environment – do you really need to print this email?

**From:** Steven Williamson
**Sent:** Friday, January 24, 2025 3:35 PM
**To:** 'Alex DiBona' <[adibona@shegerianlaw.com](mailto:adibona@shegerianlaw.com)>
**Cc:** Jason H. Tokoro <[jtokoro@millerbarondess.com](mailto:jtokoro@millerbarondess.com)>
**Subject:** Villanueva v. COLA Deposition Notices

Hi Alex,

Circling back to our January 17, 2025 conversation, we don't believe the cumulative requests for production appended to the deposition notices are appropriate, and object to them for that reason alone. We intend to serve objections to those RFP's in line with the 30 days provided by the Federal Rules. And we reserve the right to lodge any additional objections or file motions related to those notices.

We're still looking at deposition dates for those witnesses who are not apex and who we will produce. We'll keep you in the loop. In the meantime, per our prior request, has your client provided dates on which he is available for his deposition?

Thanks, and have a good weekend.

- Steve

**Steven Williamson**

M I L L E R  |  B A R O N D E S S LLP

2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5253
Fax: 310-552-8400
Mobile: 732-589-8187
[swilliamson@millerbarondess.com](mailto:swilliamson@millerbarondess.com)
[www.millerbarondess.com](http://www.millerbarondess.com)
[Biography](http://www.millerbarondess.com)

 Please consider the environment – do you really need to print this email?

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

EXHIBIT 10

| | |
|---|---|
| **From:** | Alex DiBona |
| **To:** | Steven Williamson |
| **Cc:** | Jason H. Tokoro |
| **Subject:** | RE: Meet and Confer Regarding Text Messages (Villanueva v COLA) |
| **Date:** | Wednesday, March 12, 2025 11:40:43 AM |
| **Attachments:** | image256543.png |

Steven, upon further review, our office used software to pull the text message from Plaintiff's phone, apparently the software was running an older version and for whatever reason, did not pull the text message accurately (it could have been the lack of an update or a settings issue), nonetheless, , I myself have ensured we have updated our software and settings and our office is taking steps to pull the text exchange from Plaintiff's phone and can confirm no texts have been altered or deleted and they remain on Plaintiff's phone. Plaintiff will be producing the text exchange from his phone to your office shortly.

## Alex DiBona | Trial Attorney



320 N Larchmont Boulevard | Los Angeles, CA 90004
Office: (310) 860-0770 | Facsimile: (310) 860-0771
adibona@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

**From:** Steven Williamson <swilliamson@millerbarondess.com>
**Sent:** Tuesday, March 11, 2025 3:28 PM
**To:** Alex DiBona <adibona@shegerianlaw.com>
**Cc:** Jason H. Tokoro <jtokoro@Millerbarondess.com>
**Subject:** Meet and Confer Regarding Text Messages

Alex,

This e-mail memorializes our meet and confer regarding the altered text messages that Plaintiff produced in this case.

Plaintiff provided us with the attached document on the evening prior to Gil Carrillo's deposition. *See* AV009876. From the face of the document, it was immediately clear to us that there were "gaps" in the messages, both in time and content. (For example, Mr. Carrillo responds "Oh no thank you for having trust in me" despite nothing having been said to him.)

At the deposition, Mr. Carrillo provided the full conversation between himself and Plaintiff, and it is clear that information was altered, omitted, or deleted before the texts were provided to us. *See attached*.

At our meet and confer, you stated you did not know how this occurred.  We expressed our concern that someone, we do not know who, has either improperly collected or altered these messages.  Or, more troublingly, that certain parts of conversations have been selectively deleted.

You stated you would look into it and get back to us; you said one possibility was that the software your firm used may have omitted certain things.  We advised that we want to avoid this situation in the future.

Please provide us with an explanation for this issue, and please confirm your firm has taken steps to ensure that this does not happen again.  **Please produce the full text message conversation from Plaintiff's phone, in the manner that matches the above conversation provided to us by Mr. Carrillo,  so we can confirm that Plaintiff did not delete any texts.**

Please let us know if you have any questions.

Thanks,
Steve

**Steven Williamson**
M I L L E R  |  B A R O N D E S S LLP
2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5253
Fax: 310-552-8400
Mobile: 732-589-8187
swilliamson@millerbarondess.com
www.millerbarondess.com
Biography

 Please consider the environment – do you really need to print this email?

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

EXHIBIT 11

| | |
|---|---|
| **From:** | Steven Williamson |
| **To:** | Alex DiBona |
| **Cc:** | Jason H. Tokoro |
| **Subject:** | Villanueva v. COLA--More Missing Text Messages |
| **Date:** | Friday, March 28, 2025 4:06:15 PM |
| **Attachments:** | RE Meet and Confer Regarding Text Messages (Villanueva v COLA).msg |
| | Ex. 1 AV010764-AV010767.pdf |
| | Ex. 4 AV001764-1767.pdf |

Alex,

As you'll recall, at Gil Carrillo's March 11, 2025 deposition, we discovered that Plaintiff produced incomplete text messages where certain texts from Plaintiff were omitted, and the conversation was cut off after only several weeks.  On a break, Mr. Carrillo kindly provided us with the full exchange from his phone, and we compared the two strings side by side.  Had Mr. Carrillo not done so, we would have had no idea that we were not receiving complete information.

Following that comparison, I asked you on the record why Plaintiff's texts were altered or otherwise incomplete.  You refused to answer on the record.  After the deposition, off the record, you informed Jason and myself that you did not know how this disparity occurred, but that you suspected there may be some issue with the software your firm used.  That conversation was memorialized in the attached e-mail exchange.

Following that conversation, you wrote that "the software was running an older version and for whatever reason, did not pull the text message accurately" but that "I myself have ensured we have updated our software and settings and our office is taking steps to pull the text exchange from Plaintiff's phone and can confirm no texts have been altered or deleted."

We hoped this would be the end of the matter.

Recently, your office produced text messages related to Maria Lopez.  *See* Ex. 1.  Two things were immediately noticeable from these texts.  First, a watermark at the bottom right of each page indicated that we received only Pages 9–12 out of 12.  It does not explain what happened to the other eight pages.  Second, and more glaringly, the texts provided were ***only*** from Ms. Lopez.  None of Mr. Villanueva's texts were captured.

At the deposition today, both Ms. Lopez and I were confused as to why this had occurred.  She was adamant that Mr. Villanueva always responded to her texts.  Suddenly, during the deposition, your office produced a new version of the texts (*see* Ex. 4) that contained the full conversation.

There is obviously a problem here but, given that we are not in possession of Mr. Villanueva's phone, we have limited visibility.  Either there is another "software" issue (which there should not be, given your personal attestation that the issue was fixed), or there was a decision made not to release the full conversation.  Or perhaps it is something else.

Please explain to us how this latest issue occurred.

Also, please let us know when we will be receiving the texts between Mr. Villanueva and Vivian Villanueva. We need a ***complete***, ***unaltered*** set prior to her deposition. Please also provide us dates for her deposition, per our prior two requests.

Thanks.

**Steven Williamson**

M I L L E R  │  B A R O N D E S S LLP
2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5253
Fax: 310-552-8400
Mobile: 732-589-8187
swilliamson@millerbarondess.com
www.millerbarondess.com
Biography

Please consider the environment – do you really need to print this email?

# EXHIBIT 12

| | |
|---|---|
| **From:** | Alex DiBona |
| **To:** | Jason H. Tokoro |
| **Cc:** | Steven Williamson |
| **Subject:** | RE: Villanueva Consent Forms |
| **Date:** | Wednesday, February 26, 2025 9:46:00 AM |
| **Attachments:** | image001.png |

Jason, agree only on we can meet and confer on Friday. Thank you.

---

**From:** Jason H. Tokoro <jtokoro@Millerbarondess.com>
**Sent:** Wednesday, February 26, 2025 9:44 AM
**To:** Alex DiBona <adibona@shegerianlaw.com>
**Cc:** Steven Williamson <swilliamson@millerbarondess.com>
**Subject:** RE: Villanueva Consent Forms

Alex – We are not willing to agree to your proposal for the reasons I have stated. Your client has put his mental and physical health at issue in this case by making the claims he has. We are entitled to conduct discovery into those claims, including but not limited to what (if anything) he told his treating physicians about his condition. For example, whether he told his general treating physician about his alleged stress, sleeplessness, etc.

In addition, your client has alleged that he wants to come back to work for the Los Angeles County Sheriff's Department. As you and your client know, the Department requires its personnel to be "fit for duty." We are entitled to conduct discovery to test your client's fitness for duty.

We don't want to delay getting this in front of the Magistrate Judge. To that end, we would like to meet and confer on Friday, when you will already be in our office for Plaintiff's deposition. We can do it during the lunch break or after the deposition ends. See you Friday.

**Jason H. Tokoro**

M I L L E R  |  B A R O N D E S S LLP

2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5226
Fax: 310-552-8400
jtokoro@millerbarondess.com
www.millerbarondess.com
Biography

---

🌳 Please consider the environment – do you really need to print this email?

**From:** Alex DiBona <adibona@shegerianlaw.com>
**Sent:** Wednesday, February 26, 2025 12:23 AM
**To:** Jason H. Tokoro <jtokoro@Millerbarondess.com>

**Cc:** Steven Williamson <swilliamson@millerbarondess.com>
**Subject:** RE: Villanueva Consent Forms

Counsel, as a further way of meeting and conferring, if you limit the subpoenas to the issues in the complaint, namely emotional distress/mental health treatment (we can include high blood pressure) and agree any responsive records are produced under the protective order, we would not object to the County discovering those records. Plaintiff is happy to meet and confer including in person if necessary on Tuesday. Plaintiff is happy to meet and confer further on the categories of medical records you are seeking.

Alex DiBona | Trial Attorney

## Shegerian & Associates

320 N Larchmont Boulevard | Los Angeles, CA 90004
Office: (310) 860-0770 | Facsimile: (310) 860-0771
adibona@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

**From:** Jason H. Tokoro <jtokoro@Millerbarondess.com>
**Sent:** Friday, February 21, 2025 4:55 PM
**To:** Alex DiBona <adibona@shegerianlaw.com>
**Cc:** Steven Williamson <swilliamson@millerbarondess.com>
**Subject:** RE: Villanueva Consent Forms
**Importance:** High

Alex – We are not willing to agree to the proposal below. We are entitled to discover your client's medical records. He has placed his physical and mental wellbeing at issue in this case by seeking, in his own words, "at least $25,000,000" in non-economic damages. We are confident that the Court will agree that we are entitled to these records. They are plainly discoverable.

Your client claims to be suffering from "shock, disbelief, embarrassment, distress, hurt, dejection, depression, stress, diminished confidence, anxiety, anger, fear, isolation, insomnia, fatigue, rejection, bleakness, lack of joy, grief, emotional blocking, disappointment, sadness, despair, isolation, numbness, and insomnia." We are entitled to discover whether or not he expressed any of these things to his treating physicians at any time. If he did, we are entitled to know when and how often he raised them. If he did not, we are entitled to present that to the jury.

Your client also claims to have received treatment for high blood pressure from Dr. WahBah.

That is something we are entitled to explore with Dr. WahBah and your client, including what other stressors he has in his life.

There is also no basis for your privacy objections set forth below. There is a protective order in this case. We are happy to treat these medical records as "confidential" pursuant to that protective order. No further protection is needed. There is also certainly no basis to withhold documents and log them. And any claim of attorney-client privilege over communications with Mr. Villanueva's doctors is baseless.

We again request that you send us the signed consent forms ASAP. In the alternative, we will agree to forego this discovery if your client withdraws his emotional distress claims/damages. If you are not willing to agree to either of these, please let us know when you are available to meet and confer in person next week Monday or Tuesday about our intended motion to compel.

**Jason H. Tokoro**

M I L L E R  |  B A R O N D E S S LLP

2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5226
Fax: 310-552-8400
jtokoro@millerbarondess.com
www.millerbarondess.com
Biography

🌿 Please consider the environment – do you really need to print this email?

**From:** Alex DiBona <adibona@shegerianlaw.com>
**Sent:** Friday, February 21, 2025 4:40 PM
**To:** Jason H. Tokoro <jtokoro@Millerbarondess.com>
**Cc:** Steven Williamson <swilliamson@millerbarondess.com>
**Subject:** RE: Villanueva Consent Forms

Counsel, Plaintiff is not inclined to sign such authorization and plans on objecting to your subpoenas. Plaintiff has already indicated he sought no mental health treatment from these providers and therefore the information is irrelevant and protected by right of privacy and Plaintiff has not waived his right to privacy under these circumstances. However, to avoid the necessity of filing a motion to quash, Plaintiff is willing to allow the production under a first look agreement under the following terms and conditions:

Plaintiff proposes a "first look" agreement as follows:

     1) the records would be sent by Defendants' deposition officer, to Counsel of Record for Plaintiff;

2) the deposition officer would bate stamp the records so there would be no dispute over what was produced or how many pages;

3) Plaintiff's counsel would provide the records to counsel for Defendants within 10 calendar days of receiving them with a privilege or privacy log, if applicable; and

4) The Parties could meet and confer if there were any disputes regarding the privilege or privacy log.

This would ensure Plaintiff's privacy is protected while enabling Defendants to conduct discovery.

Please let me know if this is acceptable. For the avoidance of doubt, Plaintiff agrees to produce any treatment for mental health from these providers, which again, is not believed to exist.

Alex DiBona | Associate Attorney

## Shegerian & Associates

11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
adibona@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

**From:** Jason H. Tokoro <jtokoro@Millerbarondess.com>
**Sent:** Friday, February 21, 2025 12:58 PM
**To:** Alex DiBona <adibona@shegerianlaw.com>
**Cc:** Steven Williamson <swilliamson@millerbarondess.com>
**Subject:** Villanueva Consent Forms
**Importance:** High

Alex – Please have your client sign and return the attached consent forms for his treating physicians.  As you already saw, we served them with document subpoenas for production on March 10.  We need these signed ASAP.  Thanks.

**Jason H. Tokoro**

MILLER | BARONDESS LLP
2121 Avenue of the Stars, 26th Floor

Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5226
Fax: 310-552-8400
jtokoro@millerbarondess.com
www.millerbarondess.com
Biography

 Please consider the environment – do you really need to print this email?

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any
attachments unless you recognize the sender, verified the email address and know the content is safe.

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any
attachments unless you recognize the sender, verified the email address and know the content is safe.

EXHIBIT 13

| | |
|---|---|
| **From:** | Jason H. Tokoro |
| **To:** | Alex DiBona |
| **Cc:** | Steven Williamson; Brian Neach |
| **Subject:** | RE: Activity in Case 2:24-cv-04979-SVW-JC Alex Villanueva v. County of Los Angeles et al Motion in Limine to Exclude |
| **Date:** | Tuesday, April 29, 2025 3:34:24 PM |
| **Attachments:** | image001.png |

That is not how the meet and confer went.  That is exactly why I always have Steven or Brian on meet and confers with your office.  This is not the first time you have tried to misrepresent our conversations.  We will oppose your motion and will seek sanctions for having to do so.


**Jason H. Tokoro**

M I L L E R │ B A R O N D E S S LLP

2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5226
Fax: 310-552-8400
jtokoro@millerbarondess.com
www.millerbarondess.com
Biography

♻ Please consider the environment – do you really need to print this email?

**From:** Alex DiBona <adibona@shegerianlaw.com>
**Sent:** Tuesday, April 29, 2025 3:33 PM
**To:** Jason H. Tokoro <jtokoro@Millerbarondess.com>
**Cc:** Steven Williamson <swilliamson@millerbarondess.com>; Brian Neach <bneach@millerbarondess.com>
**Subject:** RE: Activity in Case 2:24-cv-04979-SVW-JC Alex Villanueva v. County of Los Angeles et al Motion in Limine to Exclude


Jason, our meet and confer on this had two aspects, 1) the reports by the OIG produced in discovery, which you agreed to exclude and we stipulated as to that 2) references to so called deputy gangs more broadly, you did not stipulate to that and our stipulation does not reflect that, if you are changing your position and wish to stipulate, that is of course acceptable and we will withdraw our motion if we can agree on the form of the stipulation, otherwise, the motion was entirely proper.


Alex DiBona | Trial Attorney

# Shegerian & Associates

320 N Larchmont Boulevard | Los Angeles, CA 90004
Office: (310) 860-0770 | Facsimile: (310) 860-0771
adibona@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any

action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

**From:** Jason H. Tokoro <jtokoro@Millerbarondess.com>
**Sent:** Tuesday, April 29, 2025 12:08 PM
**To:** Alex DiBona <adibona@shegerianlaw.com>
**Cc:** Steven Williamson <swilliamson@millerbarondess.com>; Brian Neach <bneach@millerbarondess.com>
**Subject:** RE: Activity in Case 2:24-cv-04979-SVW-JC Alex Villanueva v. County of Los Angeles et al Motion in Limine to Exclude
**Importance:** High

Alex – Following up on this since I have not received a response from you.  We expect you to file a notice of withdrawal today.  We stipulated to the relief you requested during the meet and confer.  You agreed to the stipulation.  You filed the stipulation.  If you don't take care of this, we will oppose your motion and seek sanctions.

**Jason H. Tokoro**

M I L L E R  |  B A R O N D E S S LLP
2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5226
Fax: 310-552-8400
jtokoro@millerbarondess.com
www.millerbarondess.com
Biography

🌿 Please consider the environment – do you really need to print this email?

**From:** Jason H. Tokoro
**Sent:** Monday, April 28, 2025 5:12 PM
**To:** Alex DiBona <adibona@shegerianlaw.com>
**Cc:** Steven Williamson <swilliamson@millerbarondess.com>; Brian Neach <bneach@millerbarondess.com>
**Subject:** FW: Activity in Case 2:24-cv-04979-SVW-JC Alex Villanueva v. County of Los Angeles et al Motion in Limine to Exclude
**Importance:** High

Alex – We stipulated to the request you made regarding deputy gangs during the meet and confer (see attached).  Please confirm that you will file a notice of withdrawal of your motion.

**Jason H. Tokoro**
M I L L E R  |  B A R O N D E S S LLP
2121 Avenue of the Stars, 26th Floor

Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-5226
Fax: 310-552-8400
jtokoro@millerbarondess.com
www.millerbarondess.com
Biography

🚶 Please consider the environment – do you really need to print this email?

**From:** cacd_ecfmail@cacd.uscourts.gov <cacd_ecfmail@cacd.uscourts.gov>
**Sent:** Monday, April 28, 2025 5:03 PM
**To:** ecfnef@cacd.uscourts.gov
**Subject:** Activity in Case 2:24-cv-04979-SVW-JC Alex Villanueva v. County of Los Angeles et al Motion in Limine to Exclude

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered by DiBona, Alex on 4/28/2025 at 5:03 PM PDT and filed on 4/28/2025

**Case Name:**       Alex Villanueva v. County of Los Angeles et al
**Case Number:**    2:24-cv-04979-SVW-JC
**Filer:**               Alex Villanueva
**Document Number:** 97

**Docket Text:**
**NOTICE OF MOTION AND MOTION IN LIMINE (4) to Exclude EVIDENCE, INNUENDO, OR ARGUMENT REFERENCING DEPUTY GANGS; MEMORANDUM OF POINTS AND AUTHORITIES filed by Plaintiff Alex Villanueva. Motion set for**

**hearing on 5/26/2025 at 01:30 PM before Magistrate Judge Jacqueline Chooljian. (Attachments: # (1) Declaration, # (2) Proposed Order)(DiBona, Alex)**

**2:24-cv-04979-SVW-JC Notice has been electronically mailed to:**

Alex Karl DiBona     adibona@shegerianlaw.com, alex.dibona@gmail.com

Carney R Shegerian     cshegerian@shegerianlaw.com, aescalante@shegerianlaw.com, dgarcia@shegerianlaw.com, edossantos@shegerianlaw.com, mlevy@shegerianlaw.com, ngilanians@shegerianlaw.com, NTaleb@shegerianlaw.com, rmurillo@shegerianlaw.com, service@shegerianlaw.com, tcole@shegerianlaw.com

Jason H. Tokoro     jtokoro@millerbarondess.com, aalamango@millerbarondess.com, briding@millerbarondess.com

John Michael David     jdavid@shegerianlaw.com

Mahru Madjidi     mmadjidi@shegerianlaw.com

Steven G Williamson     swilliamson@millerbarondess.com

Yesenia Cardoza     ycardoza@shegerianlaw.com

**2:24-cv-04979-SVW-JC Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\MIL 4 - DEPUTY GANGS (VILLANUEVA).pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/28/2025] [FileNumber=40006005-0
] [5954130b0d16870aaa55f813dc813b0c23c5230ff571a34d94f1649dac3ea6256f4
44d2ab462bc63d0df9c479389f4631dd08e4bf4420a3ffc25ad4d0f924f16]]
**Document description:**Declaration
**Original filename:**C:\fakepath\DECLARATION ATTORNEY MIL VILLANUEVA).pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/28/2025] [FileNumber=40006005-1
] [c56a11fe89b6c69ecc70bfbcd459192dac615ed4efad46877b047cc04f7e71659e3
2d09d885d9d805476a0b454d33f032a2fe3b0cd80438ed06f77eccf3856fb]]

**Document description:**Proposed Order

**Original filename:**C:\fakepath\Proposed Order.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=4/28/2025] [FileNumber=40006005-2
] [b27577d4a50924cf1e87c31a8d6dbf758884bafef7ca7495cf3e1fa6db107f5d72c
d3afac1ee140a0a0374062883ba1809d6b1b1e65d17418983f5dbe167a7a4]]

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

# EXHIBIT 14

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
Alex DiBona, Esq., State Bar No. 265744
ADiBona@shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number:      (310) 860 0770
Facsimile Number:      (310) 860 0771

Attorneys for Plaintiff,
ALEX VILLANUEVA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALEX VILLANUEVA,<br><br>        Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No.:  2:24  cv 04979 SVW (JC)<br><br>**The Honorable Stephen V. Wilson**<br><br>**PLAINTIFF ALEX VILLANUEVA'S DISCLOSURE OF EXPERTS PURSUANT TO F.R.C.P. 26(a) (2)**<br><br>Trial:   June 3, 2025<br>Time:   9:00 a.m.<br>Ctrm.:   10A<br><br>Action Filed:  June 13, 2024 |

TO ALL PARTIES AND THE HONORABLE COURT:

PLEASE TAKE NOTICE that plaintiff, Alex Villanueva, discloses his list of expert witnesses expected to be called during the trial of the above case, including the following, pursuant to F.R.C.P. 26(a) (2):

(1)  Sandra White, Formuzis, Hunt, & Lanning Inc., 1851 East First Street #1160, Santa Ana, California 92705, (714) 542-8853 (retained expert).  The full opinions of this expert will be included in her written report. This expert will testify under Federal Rules of Evidence 702, 703, and 705 about the financial impact of defendant's actions on plaintiff, including Plaintiff's lost earnings, with future losses reduced to present value. This opinion will be based on the review of records, including government sources, recruiting documents and appropriate data. This expert has agreed to testify at trial and will be sufficiently familiar with the pending action to submit to meaningful oral depositions concerning the testimony she is expected to give at trial, including any opinion and its basis. Ms. White will also offer opinions on any expert defendant retains and opinions such expert offers with regards to the same expertise area. Ms. White's consulting, deposition, and trial testimony fee is $575.00 per hour. Attached hereto as **Exhibit 1** is a true and correct copy of this expert's Rule 26 Disclosure;

(2)  Dr. Jessica Rowe, Dr. Jess' Mind Care Center, 750 Oak Avenue Parkway Suite #160, Folsom, CA 95630, (916) 500-4054 (retained expert). The full opinions of Dr. Rowe will be included in her written report. She is expected to offer opinions under Federal Rules of Evidence 702, 703, and 705, relating to the psychological impact of defendants' actions on plaintiff. She will testify as to whether Plaintiff has experienced emotional distress as a result of Plaintiff's actions, the cause of the emotional distress, the prognosis, and treatment. The opinions will be based on the evaluation of Plaintiff, appropriate records review and her experience and education. Dr. Rowe will also offer opinions on any expert defendant retains and opinions such expert offers with regards to the same expertise area. Dr. Rowe has agreed to testify at trial and will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the testimony that

she is expected to give at trial, including any opinion and its basis. Her consulting fee is $750.00 per hour. Her deposition fee is $900.00 per hour. Her trial testimony fees are $4,750.00 per half-day and $8,500.00 per full day of trial testimony. Attached hereto as **Exhibit 2** is a true and correct copy of this expert's Rule 26 Disclosure;

(3)   Dr. Rebecca Udell, 1112 Montana Ave Suite C #853, Santa Monica, CA 90403, (310) 402-6385 (retained expert). The full opinions of Dr. Udell will be included in her written report. She is expected to offer opinions under Federal Rules of Evidence 702, 703, and 705, relating to the psychological impact of defendants' actions on plaintiff. She will testify as to whether Plaintiff has experienced emotional distress as a result of Plaintiff's actions, the cause of the emotional distress, the prognosis, and treatment.  The opinions will be based on an evaluation of Plaintiff and appropriate records reviewed and her experience and education. Dr. Udell will also offer opinions on any expert defendant retains and opinions such experts offer with regards to the same expertise area. Dr. Udell has agreed to testify at trial and will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the testimony that she is expected to give at trial, including any opinion and its basis. Her consulting fee is $200.00 per hour. Her deposition and trial testimony fee is $400.00 per hour. Attached hereto as **Exhibit 3** is a true and correct copy of this expert's Rule 26 Disclosure;

(4)   Dr. Nigel Kennedy, 116 N Robertson Blvd #908, Los Angeles, CA, 90048, (929) 505-0504 (retained expert). The full opinions of Dr. Kennedy will be included in his written report. He is expected to offer opinions under Federal Rules of Evidence 702, 703, and 705, relating to the psychological impact of defendants' actions on plaintiff. He will testify to whether Plaintiff has experienced emotional distress as a result of Plaintiff's actions, the cause of the emotional distress, the prognosis, and treatment. The opinions will be based on the evaluation of Plaintiff, appropriate records review, and his experience and education. Dr. Kennedy has agreed to testify at trial and will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the testimony that he is expected to give at trial, including any opinion and its basis. Dr. Kennedy will

also offer opinions on any expert defendant retains and opinions such expert offers with regards to the same expertise area.  His consulting fee is $750.00 per hour. His deposition and trial testimony fee is $1,100.00 per hour. Attached hereto as **Exhibit 4** is a true and correct copy of this expert's Rule 26 Disclosure;

(5)  Any other non-retained treating doctor or other health care provider not yet discovered by counsel;

(6)  Any other expert witness disclosed by defendants; *and*

(7)  Any rebuttal expert.


Dated:  March 21, 2025                SHEGERIAN & ASSOCIATES, INC.


By:  _____
     Carney R. Shegerian, Esq.

     Attorney for Plaintiff,
     ALEX VILLANUEVA

# Exhibit 1

# FORMUZIS HUNT & LANNING INC

## ECONOMIC CONSULTANTS

March 20, 2025

Carney Shegerian, Esq.
Shegerian & Associates, Inc.
145 S. Spring Street, Suite 400
Los Angeles, CA 90012

**Re: Alex Villanueva v. County of Los Angeles**

Dear Mr. Shegerian,

This report is written to comply with Federal Rules of Civil Procedure Rule 26. I hereby certify that this report is a complete and accurate statement of my opinions, and the basis and reasons for them, to which I will testify under oath.

I will testify regarding the calculations in Exhibit "A" detailing the plaintiff's economic loss.

Exhibit "B" cites the sources reviewed in forming my opinions.

Exhibit "C" is my curriculum vita and qualifications.

Exhibit "D" lists other cases in which I have testified as an expert within the past four years.

The report attached as Exhibit A is subject to change given additional information.

My fee for testimony is $575.00 per hour.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

If you should have any questions, please contact our office.

Sincerely,

Sandra White
For the Firm of
Formuzis, Hunt & Lanning, Inc.

SW:rd
Enclosures

Peter Formuzis . Tamorah Hunt . Timothy Lanning . Sandra White . Justin Klinkenberg
Robert Donald . Alex Wong . Erika Hashimoto · Charmaine Lansangan · Paige Bodine

WHITE 000001

**EXHIBIT "A"**

WHITE 000002

# FORMUZIS HUNT & LANNING INC

ECONOMIC CONSULTANTS

ECONOMIC LOSS REPORT

## ALEX VILLANUEVA

MARCH 20, 2025

Peter Formuzis · Tamorah Hunt · Timothy Lanning · Sandra White · Justin Klinkenberg
Robert Donald · Alexander Wong · Erika Hashimoto · Charmaine Labuzon · Paige Bodine · Miles Gabelich

1851 E. First Street, Suite 1160, Santa Ana, CA 92705 • FHLeconomics.com • 714-542-8853 • Fax 714-836-6910

PRELIMINARY REPORT - SUBJECT TO CHANGE                3/20/2025

**FORMUZIS, HUNT & LANNING, INC.**
SUMMARY OF THE ANALYSIS
ECONOMIC LOSSES SUSTAINED BY
**ALEX VILLANUEVA**

<u>**PRESENT VALUE**</u>

*OPTION A: AVERAGE POLICE CHIEF*

**I. LOSS OF PROJECTED EARNINGS**

    **A. PAST LOSS**    ( 05/05/2024 - 06/30/2025 )

       1. PROJECTED EARNINGS

          A. WAGES/SALARY        $369,021

          B. HEALTH BENEFITS       23,456

                           $392,477

    **B. FUTURE LOSS**    ( 07/01/2025 - 02/28/2038 )

| | OPTION 1: RETIRE AT AGE 67 ON 02/28/2030 | OPTION 2: RETIRE AT AGE 72 PM 02/28/2035 | OPTION 3: RETIRE AT AGE 75 ON 02/28/2038 |
|---|---|---|---|
| 1. PROJECTED EARNINGS | | | |
| A. WAGES/SALARY | $1,453,301 | $2,937,316 | $3,792,924 |
| B. HEALTH BENEFITS | 92,405 | 186,763 | 241,165 |
| | $1,545,706 | $3,124,079 | $4,034,089 |
| **C. TOTAL EARNINGS LOSS (PAST AND FUTURE)** | $1,938,183 | $3,516,556 | $4,426,566 |

**II. STATUTORY INTEREST**    $14,774

| **III. TOTAL ECONOMIC LOSS (PAST AND FUTURE)** | $1,952,957 | $3,531,330 | $4,441,340 |
|---|---|---|---|

WHITE 000004

**FORMUZIS, HUNT & LANNING, INC.**
SUMMARY OF THE ANALYSIS
ECONOMIC LOSSES SUSTAINED BY
**ALEX VILLANUEVA**

PAGE 2

**PRESENT VALUE**

*OPTION B: MTA CHIEF OF POLICE*

**I. LOSS OF PROJECTED EARNINGS**

    **A. PAST LOSS**      ( 05/05/2024 - 06/30/2025 )

      1. PROJECTED EARNINGS

        A. WAGES/SALARY        $376,955

        B. HEALTH BENEFITS      23,456

                      $400,411

    **B. FUTURE LOSS**    ( 07/01/2025 - 02/28/2038 )

| | OPTION 1: RETIRE AT AGE 67 ON 02/28/2030 | OPTION 2: RETIRE AT AGE 72 PM 02/28/2035 | OPTION 3: RETIRE AT AGE 75 ON 02/28/2038 |
|---|---|---|---|
| 1. PROJECTED EARNINGS | | | |
|   A. WAGES/SALARY | $1,670,465 | $3,376,231 | $4,359,691 |
|   B. HEALTH BENEFITS | 92,405 | 186,763 | 241,165 |
| | $1,762,870 | $3,562,994 | $4,600,856 |
| **C. TOTAL EARNINGS LOSS (PAST AND FUTURE)** | $2,163,281 | $3,963,405 | $5,001,267 |

**II. STATUTORY INTEREST**      $14,798

**III. TOTAL ECONOMIC LOSS (PAST AND FUTURE)**

| $2,178,079 | $3,978,203 | $5,016,065 |
|---|---|---|

WHITE 000005

**FORMUZIS, HUNT & LANNING, INC.**
SUMMARY OF THE ANALYSIS
ECONOMIC LOSSES SUSTAINED BY
**ALEX VILLANUEVA**

PAGE 3

| | | | |
|---|---|---|---|
| **PRESENT VALUE START DATE** | | | 07/01/2025 |
| DATE OF BIRTH | | | 02/25/1963 |
| DATE OF LOSS ONSET | | | 05/04/2024 |
| AGE AT DATE OF LOSS ONSET | 61.2 | YEARS | |
| CURRENT AGE | 62.3 | YEARS | |
| OPTION 1: PROJECTED RETIREMENT AGE | 67.0 [1] | YEARS IN | 02/28/2030 |
| REMAINING YEARS TO RETIREMENT | 4.7 | YEARS | |
| OPTION 2: PROJECTED RETIREMENT AGE | 72.0 [1] | YEARS IN | 02/28/2035 |
| REMAINING YEARS TO RETIREMENT | 9.7 | YEARS | |
| OPTION 3: PROJECTED RETIREMENT AGE | 75.0 [1] | YEARS IN | 02/28/2038 |
| REMAINING YEARS TO RETIREMENT | 12.7 | YEARS | |

FOOTNOTE:
[1] PER COUNSEL.

PRELIMINARY REPORT - SUBJECT TO CHANGE

3/20/2025

WHITE 000006

**ALEX VILLANUEVA**
**PROJECTED EARNINGS**                                                                PAGE 4

IN JANUARY 2024, WHILE RUNNING FOR COUNTY SUPERVISOR, MR. VILLANUEVA LEARNED
THROUGH A LOS ANGELES TIMES ARTICLE THAT HE HAD BEEN PLACED ON THE COUNTY'S "DO
NOT REHIRE" LIST. IT WAS ASSUMED THAT THIS PRECLUDED HIM FROM THE ~117,000 COUNTY
JOBS AND EFFECTIVELY PREVENTED HIS HIRING FOR ANY LAW ENFORCEMENT POSITION.

USING INFORMATION PROVIDED BY THE CALIFORNIA STATE CONTROLLER'S GOVERNMENT
COMPENSATION IN CALIFORNIA WEBSITE, BEGINNING 60 DAYS AFTER HE LOST THE PRIMARY
ELECTION FOR COUNTY SUPERVISOR, MR. VILLANUEVA'S LOSS OF EARNINGS WAS CALCULATED
USING THE AVERAGE EARNINGS FOR POLICE CHIEFS OF THE 47 CITIES IN CALIFORNIA WITH
POPULATIONS OVER 100,000 WHO ONLY HAD ONE POLICE CHIEF IN 2023.

BEGINNING MAY 1, 2025 A SECOND OPTION WAS CALCULATED USING THE MID-POINT SALARY FOR
THE CHIEF OF POLICE AND EMERGENCY MANAGEMENT FOR THE LOS ANGELES COUNTY
METROPOLITAN TRANSPORTATION AUTHORITY.

*OPTION A: AVERAGE POLICE CHIEF*

**1. PROJECTED PAST EARNINGS**

| TIME PERIOD<br>2023 | ANNUAL<br>PERCENTAGE<br>INCREASE [1] | ANNUAL<br>EARNINGS<br>$309,300 | NUMBER OF<br>MONTHS | TOTAL<br>EARNINGS |
|---|---|---|---|---|
| 05/04/2024 - 06/30/2025 | 3.0% | $318,579 | 13.9 | $369,021 |
| | | | 13.9 | $369,021 |

**2. PRESENT VALUE OF THE PROJECTED FUTURE EARNINGS [1]**

NOMINAL GROWTH RATE:      3.00% INITIAL 10 YEARS
NOMINAL DISCOUNT RATE:   4.00% INITIAL 10 YEARS
NET DISCOUNT RATE:         1.00% THEREAFTER
NUMBER OF MONTHS:          56  OPTION 1
                                       116  OPTION 2
                                       152  OPTION 3

| TIME PERIOD | ANNUAL<br>EARNINGS | MONTHLY<br>EARNINGS |
|---|---|---|
| 07/01/2025 - 02/28/2030 | $318,579 | $26,548 |
| 03/01/2030 - 02/28/2035 | $318,579 | $26,548 |
| 03/01/2035 - 02/28/2038 | $318,579 | $26,548 |

OPTION 1: PRESENT VALUE OF RETIREMENT AT AGE 67.0 ON  02/28/2030  :  $1,453,301

OPTION 2: PRESENT VALUE OF RETIREMENT AT AGE 72.0 ON  02/28/2035  :  $2,937,316

OPTION 3: PRESENT VALUE OF RETIREMENT AT AGE 75.0 ON  02/28/2038  :  $3,792,924

FOOTNOTE:
[1] THE U.S. BUREAU OF LABOR STATISTICS' INDEX OF HOURLY COMPENSATION. INTEREST RATES ON U.S. TREASURY SECURITIES REPORTED BY THE
TREASURY DEPARTMENT AND THE CONGRESSIONAL BUDGET OFFICE SEMI-ANNUAL REPORT ON THE BUDGET AND ECONOMIC OUTLOOK.

PRELIMINARY REPORT - SUBJECT TO CHANGE                                        3/20/2025

WHITE 000007

ALEX VILLANUEVA
PROJECTED EARNINGS (CONTINUED)

PAGE 5

*OPTION B: MTA CHIEF OF POLICE*

**1. PROJECTED PAST EARNINGS**

| TIME PERIOD | ANNUAL PERCENTAGE INCREASE [1] | ANNUAL EARNINGS | NUMBER OF MONTHS | TOTAL EARNINGS |
|---|---|---|---|---|
| 2023 | | $309,300 | | |
| 05/04/2024 - 04/30/2025 | 3.0% | $318,579 | 11.9 | $315,924 |
| 05/01/2025 - 06/30/2025 | | $366,184 | 2.0 | 61,031 |
| | | | 13.9 | $376,955 |

**2. PRESENT VALUE OF THE PROJECTED FUTURE EARNINGS [1]**

| | | |
|---|---|---|
| NOMINAL GROWTH RATE: | 3.00% | INITIAL 10 YEARS |
| NOMINAL DISCOUNT RATE: | 4.00% | INITIAL 10 YEARS |
| NET DISCOUNT RATE: | 1.00% | THEREAFTER |
| NUMBER OF MONTHS: | 56 | OPTION 1 |
| | 116 | OPTION 2 |
| | 152 | OPTION 3 |

| TIME PERIOD | ANNUAL EARNINGS | MONTHLY EARNINGS |
|---|---|---|
| 07/01/2025 - 02/28/2030 | $366,184 | $30,515 |
| 03/01/2030 - 02/28/2035 | $366,184 | $30,515 |
| 03/01/2035 - 02/28/2038 | $366,184 | $30,515 |

OPTION 1: PRESENT VALUE OF RETIREMENT AT AGE 67.0 ON  02/28/2030  $1,670,465

OPTION 2: PRESENT VALUE OF RETIREMENT AT AGE 72.0 ON  02/28/2035  :  $3,376,231

OPTION 3: PRESENT VALUE OF RETIREMENT AT AGE 75.0 ON  02/28/2038  $4,359,691

FOOTNOTE

[1] THE U.S. BUREAU OF LABOR STATISTICS' INDEX OF HOURLY COMPENSATION, INTEREST RATES ON U.S. TREASURY SECURITIES REPORTED BY THE
TREASURY DEPARTMENT AND THE CONGRESSIONAL BUDGET OFFICE SEMI-ANNUAL REPORT ON THE BUDGET AND ECONOMIC OUTLOOK.

PRELIMINARY REPORT - SUBJECT TO CHANGE

3/20/2025

WHITE 000008

**ALEX VILLANUEVA**
**PROJECTED HEALTH BENEFITS**

PAGE 6

USING INFORMATION PROVIDED BY THE CALIFORNIA STATE CONTROLLER'S GOVERNMENT COMPENSATION IN CALIFORNIA WEBSITE, MR. VILLANUEVA'S HEALTH BENEFITS WERE CALCULATED USING THE AVERAGE CONTRIBUTIONS TO MEDICAL, DENTAL AND VISION BENEFITS FOR POLICE CHIEFS OF THE 47 CITIES IN CALIFORNIA WITH POPULATIONS OVER 100,000 WHO ONLY HAD ONE POLICE CHIEF IN 2023. THIS FIGURE WAS ADJUSTED IN 2024 BY THE CHANGE IN THE AVERAGE EMPLOYER CONTRIBUTIONS TO EMPLOYEE HEALTH BENEFITS.

**1. PAST HEALTH BENEFIT**

| TIME PERIOD | ANNUAL PERCENTAGE INCREASE [1] | ANNUAL BENEFIT | MONTHLY BENEFIT | NUMBER OF MONTHS | TOTAL BENEFIT |
|---|---|---|---|---|---|
| 2023 | | $18,272 | | | |
| 05/04/2024 - 06/30/2025 | 10.8% | $20,250 | $1,688 | 13.9 | $23,456 |
| | | | | 13.9 | $23,456 |

**2. PRESENT VALUE OF THE FUTURE HEALTH BENEFIT [2]**

NOMINAL GROWTH RATE:        3.00% INITIAL 10 YEARS
NOMINAL DISCOUNT RATE:      4.00% INITIAL 10 YEARS
NET DISCOUNT RATE:          1.00% THEREAFTER
NUMBER OF MONTHS:             56 OPTION 1
                            116 OPTION 2
                            152 OPTION 3

| TIME PERIOD | ANNUAL BENEFIT | MONTHLY BENEFIT |
|---|---|---|
| 07/01/2025 - 02/28/2030 | $20,250 | $1,688 |
| 03/01/2030 - 02/28/2035 | $20,250 | $1,688 |
| 03/01/2035 - 02/28/2038 | $20,250 | $1,688 |

OPTION 1: PRESENT VALUE OF RETIREMENT AT AGE 67.0 ON 02/28/2030 : $92,405

OPTION 2: PRESENT VALUE OF RETIREMENT AT AGE 72.0 ON 02/28/2035 : $186,763

OPTION 3: PRESENT VALUE OF RETIREMENT AT AGE 75.0 ON 02/28/2038 : $241,165

FOOTNOTES:
[1] THE KAISER FAMILY FOUNDATION. EMPLOYER BENEFITS 2024 ANNUAL SURVEY
[2] THE U S BUREAU OF LABOR STATISTICS' INDEX OF HOURLY COMPENSATION, INTEREST RATES ON U S TREASURY SECURITIES REPORTED BY THE TREASURY DEPARTMENT AND THE CONGRESSIONAL BUDGET OFFICE SEMI-ANNUAL REPORT ON THE BUDGET AND ECONOMIC OUTLOOK.

**ALEX VILLANUEVA**
**STATUTORY INTEREST CALCULATION (PROJECTED)**                                    PAGE 7

STATUTORY INTEREST OF 7.0 PERCENT SIMPLE WAS CALCULATED BELOW ON THE PAST
PROJECTED EARNINGS.

*OPTION A: AVERAGE POLICE CHIEF*

| MONTH ENDING | PROJECTED EARNINGS | HEALTH BENEFITS | MONTHLY AMOUNT | NUMBER OF MONTHS | SIMPLE INTEREST AT 7.0% |
|---|---|---|---|---|---|
| 05/31/2024 | $23,893 | $1,519 | $25,412 | 13 | $1,927 |
| 06/30/2024 | $26,548 | $1,688 | $28,236 | 12 | $1,977 |
| 07/31/2024 | $26,548 | $1,688 | $28,236 | 11 | $1,812 |
| 08/31/2024 | $26,548 | $1,688 | $28,236 | 10 | $1,647 |
| 09/30/2024 | $26,548 | $1,688 | $28,236 | 9 | $1,482 |
| 10/31/2024 | $26,548 | $1,688 | $28,236 | 8 | $1,318 |
| 11/30/2024 | $26,548 | $1,688 | $28,236 | 7 | $1,153 |
| 12/31/2024 | $26,548 | $1,688 | $28,236 | 6 | $988 |
| 01/31/2025 | $26,548 | $1,688 | $28,236 | 5 | $824 |
| 02/28/2025 | $26,548 | $1,688 | $28,236 | 4 | $659 |
| 03/31/2025 | $26,548 | $1,688 | $28,236 | 3 | $494 |
| 04/30/2025 | $26,548 | $1,688 | $28,236 | 2 | $329 |
| 05/31/2025 | $26,548 | $1,688 | $28,236 | 1 | $165 |
| 06/30/2025 | $26,548 | $1,688 | $28,236 | 0 | $0 |
| | **$369,021** | **$23,456** | **$392,477** | | **$14,774** |

*OPTION B: MTA CHIEF OF POLICE*

| MONTH ENDING | PROJECTED EARNINGS | HEALTH BENEFITS | MONTHLY AMOUNT | NUMBER OF MONTHS | SIMPLE INTEREST AT 7.0% |
|---|---|---|---|---|---|
| 05/31/2024 | $23,893 | $1,519 | $25,413 | 13 | $1,927 |
| 06/30/2024 | $26,548 | $1,688 | $28,236 | 12 | $1,977 |
| 07/31/2024 | $26,548 | $1,688 | $28,236 | 11 | $1,812 |
| 08/31/2024 | $26,548 | $1,688 | $28,236 | 10 | $1,647 |
| 09/30/2024 | $26,548 | $1,688 | $28,236 | 9 | $1,482 |
| 10/31/2024 | $26,548 | $1,688 | $28,236 | 8 | $1,318 |
| 11/30/2024 | $26,548 | $1,688 | $28,236 | 7 | $1,153 |
| 12/31/2024 | $26,548 | $1,688 | $28,236 | 6 | $988 |
| 01/31/2025 | $26,548 | $1,688 | $28,236 | 5 | $824 |
| 02/28/2025 | $26,548 | $1,688 | $28,236 | 4 | $659 |
| 03/31/2025 | $26,548 | $1,688 | $28,236 | 3 | $494 |
| 04/30/2025 | $26,548 | $1,688 | $28,236 | 2 | $329 |
| 05/31/2025 | $30,515 | $1,688 | $32,203 | 1 | $188 |
| 06/30/2025 | $30,515 | $1,688 | $32,203 | 0 | $0 |
| | **$376,955** | **$23,463** | **$400,418** | | **$14,798** |

WHITE 000010

**ALEX VILLANUEVA**
**TAX CONSEQUENCE**

PAGE 8

DUE TO THE PROGRESSIVE NATURE OF INCOME TAXES, THERE IS TYPICALLY AN ADVERSE TAX
CONSEQUENCE TO RECEIVING A LUMP-SUM AWARD FOR SEVERAL YEARS OF EARNINGS IN ONE
CALENDAR YEAR. NO CALCULATION OF THIS POTENTIAL ECONOMIC DAMAGE HAS BEEN MADE AT
THIS TIME.

WHITE 000011

**EXHIBIT "B"**

WHITE 000012

**EXHIBIT "B"**

**SOURCES AND SUPPORTING DOCUMENTS**

1. LOS ANGELES COUNTY WEBSITE: https://lacounty.gov/by-the-numbers/

2. CALIFORNIA STATE CONTROLLER'S GOVERNMENT COMPENSATION IN CALIFORNIA WEBSITE: https://publicpay.ca.gov/

3. PUBLIC SECTOR SEARCH & CONSULTING, LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, CHIEF OF POLICE & EMERGENCY MANAGEMENT.

4. HISTORICAL INTEREST RATES, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM.

5. CURRENT INTEREST RATES ON U.S. TREASURY BONDS AND NOTES BY MATURITY PER THE U.S. TREASURY DEPARTMENT.

6. CONGRESS OF THE UNITED STATES, CONGRESSIONAL BUDGET OFFICE, "THE BUDGET AND ECONOMIC OUTLOOK: 2025-2035."

7. U.S. DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, HOURLY COMPENSATION INDEX AND CONSUMER PRICE INDEX.

8. KAISER FAMILY FOUNDATION, EMPLOYER HEALTH BENEFITS, 2024 ANNUAL SURVEY.

WHITE 000013

**EXHIBIT "C"**

WHITE 000014

# FORMUZIS HUNT & LANNING INC
## ECONOMIC CONSULTANTS

### SANDRA WHITE

### EMPLOYMENT

Managing Senior Economist, Formuzis, Hunt and Lanning, August 2022 – Present

Senior Associate Economist, Formuzis, Hunt and Lanning, July 2012 – August 2022

Research/ Associate Economist, Formuzis, Pickersgill and Hunt, January 1998 – June 2012

Research Assistant, Formuzis, Pickersgill and Hunt, June 1997 – December 1997

### EDUCATION

B.A., Economics: California State University, Fullerton, 1998

M.B.A., Finance: California State University, Fullerton, 2021

### HONORS

Beta Gamma Sigma, California State University, Fullerton, 2018

### PROFESSIONAL ASSOCIATIONS

National Association of Forensic Economists

Western Economic Association

### FORENSIC ECONOMIC PRESENTATIONS

"Calculating Economic Damages," Economics 490, California State University, Fullerton, 2018

"Calculation of Economic Damages," Economics 490, California State University, Fullerton, 2019

"Working with an Economist," American Association of Nurse Life Care Planners Conference, March 2020

# EXHIBIT "D"

WHITE 000016

## SANDRA WHITE

### 2025

| DATE | EVENT | CASE | CASE # | ATTORNEY | LOCATION | DEPT |
|---|---|---|---|---|---|---|
| 01/29/25 | DEPOSITION | HUGYETZ V. EQUINOX HOLDINGS, INC. | 22STCV26384 | SHEGERIAN, CARNEY | VIRTUAL | |
| 02/04/25 | DEPOSITION | QUESADA, RAMON V. MARTEN TRANSPORT | 2:23-CV00311-DAD-KJN | SHEGERIAN, CARNEY | VIRTUAL | |
| 02/28/25 | DEPOSITION | DI BARI, DANIELLE V. WOODLINE PARTNERS | CGC-23-608127 | SHEGERIAN, CARNEY | VIRTUAL | |
| 03/11/25 | DEPOSITION | BARROSO, PATRICIA V. DIGNITY HEALTH; ET AL. | 56-2020-00544090-CU-WT-VTA | SHEGERIAN, CARNEY | VIRTUAL | |
| 03/17/25 | DEPOSITION | DELGADO, ERLINDA V. PETCO ANIMAL SUPPLIES, ET AL. | 23STCV09207 | SHEGERIAN, CARNEY | VIRTUAL | |
| 03/19/25 | DEPOSITION | LINSKEY, MARK V. REGENTS OF THE UNIVERSITY OF CALIFORNIA | 30-2020-01147285-CU-OE-CJC | QUIGLEY, MARK | VIRTUAL | |

WHITE 000017

# SANDRA WHITE
## 2024

| DATE | EVENT | CASE | CASE # | ATTORNEY | LOCATION | DEPT |
|------|-------|------|--------|----------|----------|------|
| 02/14/24 | DEPOSITION | KHOURY, MARIA V. HALPIN, ET AL. | 19CIV03994 | LEONARDO, MARK | VIRTUAL | |
| 02/26/24 | DEPOSITION | PARRISH, SEQUOIA V. GEI | RG19007369 | SHEGERIAN, CARNEY | VIRTUAL | |
| 03/04/24 | DEPOSITION | PINTER-BROWN, LAUREN (M.D.) V. REGENTS OF THE UNIVERSITY O | BC624838 | SHEGERIAN, CARNEY | VIRTUAL | |
| 03/20/24 | DEPOSITION | SERAFIN, JONATHAN V. THE REGENTS OF THE UNIVERSITY OF CALI | 19STCV23159 | COLLINS, WILL | VIRTUAL | |
| 04/08/24 | TESTIMONY | PINTER-BROWN, LAUREN (M.D.) V. REGENTS OF THE UNIVERSITY O | BC624838 | SHEGERIAN, CARNEY | LOS ANGELES | 72 |
| 04/16/24 | DEPOSITION | RISK, ANDREW V. UNITED AIRLINES | 22STCV37268 | SHEGERIAN, CARNEY | IRVINE | |
| 04/17/24 | DEPOSITION | SAKELLIS V. CEDARS SINAI MEDICAL CENTER, ET AL. | BC653918 | SHEGERIAN, CARNEY | VIRTUAL | |
| 04/30/24 | DEPOSITION | TRINITY, FIONA V. LIFE INSURANCE COMPANY OF NORTH AMERICA, | 20STCV10051 | SHEGERIAN, CARNEY | VIRTUAL | |
| 05/02/24 | DEPOSITION | SHAATH, NADA V. LAUSD | 21STCV22706 | KEARNS, TIMOTHY | VIRTUAL | |
| 05/08/24 | TESTIMONY | SCIPIONE, PABLO V. KINKISHARYO | MC027686 | PARRIS, KHAIL | LOS ANGELES | 4 |
| 06/25/24 | DEPOSITION | FISHER, LYNETTE V. GRANITE ROCK COMPANY | 22CV399529 | DANOFF, JESSE | VIRTUAL | |
| 07/17/24 | DEPOSITION | VALENTINES, ADRIANA V. DEDICATION AND EVERLASTING LOVE TO | 21STCV01322 | NALBANDYAN, JACOB | VIRTUAL | |
| 07/22/24 | DEPOSITION | TESLER, SHARON V. UNITED AIRLINES | 22-CIV-05205 | SHEGERIAN, CARNEY | VIRTUAL | |
| 08/13/24 | DEPOSITION | X.M., A MINOR V. GONGCO FOODS | CVRI2304396 | RUDORFER, DAVID | VIRTUAL | |
| 08/26/24 | TESTIMONY | FELD, DANIEL V. ROMY FRANK, SOULSTICE, INC., ET AL. | 37-2020-00024406-CU-PO-CTL | MORRIS, SHAWN | SAN DIEGO | C-64 |
| 09/13/24 | TESTIMONY | SHAATH, NADA V. LAUSD | 21STCV22706 | KEARNS, TIMOTHY | LOS ANGELES | 47 |
| 09/18/24 | TESTIMONY | X.M., A MINOR V. GONGCO FOODS | CVRI2304396 | RUDORFER, DAVID | VIRTUAL | |
| 12/10/24 | DEPOSITION | LOO, MILDRED & FRED V. COSTCO WHOLESALE CORP. | 24-CIV-02119 | ROSE, VALERIE | VIRTUAL | |
| 12/16/24 | DEPOSITION | RAYMUNDO-LAZARO, ERNESTO V. AUTOZONE OPERATIONS | A-23-870727-C | RAVIPUDI, RAHUL | VIRTUAL | |

WHITE 000018

# SANDRA WHITE

## 2023

| DATE | EVENT | CASE | CASE # | ATTORNEY | LOCATION | DEPT |
|------|-------|------|--------|----------|----------|------|
| 01/06/23 | DEPOSITION | LOPEZ ESPARZA, VICTOR V. GREYHOUND LINES | 19STCV42769 | JOY, MATTHEW | VIRTUAL | |
| 01/17/23 | DEPOSITION | SLAUGHTER, BRYSON V. KAISER | ARB16960 | DENOVE, JOHN | VIRTUAL | |
| 01/23/23 | ARBITRATION | SLAUGHTER, BRYSON V. KAISER | ARB16960 | DENOVE, JOHN | VIRTUAL | |
| 03/16/23 | DEPOSITION | STEINHAUSER, MARSHA V. HICKERSON | BC710849 | CARASSO, KIM | VIRTUAL | |
| 04/28/23 | TESTIMONY | STEINHAUSER, MARSHA V. HICKERSON | BC710849 | CARASSO, KIM | TORRANCE | |
| 05/25/23 | DEPOSITION | CONTRERAS, PRESCILIANO V. KELLY PIPE CO., LLC, ET AL. | 21STCV17933 | SHEGERIAN, CARNEY | VIRTUAL | |
| 05/26/23 | DEPOSITION | FITZPATRICK, LIDA V. BARSTOW TOWING, INC., ET AL. | CIVSB2029064 | TELLER, JONATHAN COREY | VIRTUAL | |
| 06/15/23 | TESTIMONY | CONTRERAS, PRESCILIANO V. KELLY PIPE CO., LLC, ET AL. | 21STCV17933 | SHEGERIAN, CARNEY | LOS ANGELES | |
| 05/16/23 | DEPOSITION | GAMBOA, DAVID | CVMV2200078 | KIMES, SHAPLEIGH | VIRTUAL | |
| 06/26/23 | ARBITRATION | GAMBOA, DAVID | CVMV2200078 | KIMES, SHAPLEIGH | SANTA ANA | |
| 08/04/23 | DEPOSITION | FELD, DANIEL V. ROMY FRANK, SOULSTICE, INC., ET AL. | 37-2020-0002440&-CU-PO-CTL | MORRIS, SHAWN | VIRTUAL | |
| 08/08/23 | DEPOSITION | CORTEZ, SANDRA V. OMNI HOTELS & RESORTS, ET AL. | 20STCV20883 | SHEGERIAN, CARNEY | VIRTUAL | |
| 09/08/23 | DEPOSITION | CORTEZ, SANDRA V. OMNI HOTELS & RESORTS, ET AL. | 20STCV20883 | SHEGERIAN, CARNEY | VIRTUAL | |
| 10/23/23 | ARBITRATION | CORTEZ, SANDRA V. OMNI HOTELS & RESORTS, ET AL. | 20STCV20883 | SHEGERIAN, CARNEY | LOS ANGELES | |
| 10/25/23 | DEPOSITION | ARNOLD, KEVIN LATRICE V. GENARO FRANK DUARTE; LAZER SPOT | RIC2001799 | TELLER, JONATHAN COREY | VIRTUAL | |
| 11/02/23 | DEPOSITION | MARIACA, JOSE AND MONIQUE CRUZ V. BNSF RAILWAY COMPANY; | 21STCV09377 | KATNIK, KURT | VIRTUAL | |

WHITE 000019

**SANDRA WHITE**

**2022**

| DATE | EVENT | CASE | CASE # | ATTORNEY | LOCATION | DEPT |
|------|-------|------|--------|----------|----------|------|
| 08/03/22 | DEPOSITION | VIVANCO V. ABM INDUSTRY GROUP | BC706752 | RUTTENBERG, KENNETH | VIRTUAL | |
| 12/19/22 | DEPOSITION | MIRZA, GAYNETH V. TRADER VIC'S, ET AL. | 22CV006445 | ROSE, VALERIE N. | VIRTUAL | |

WHITE 000020

# Exhibit 2



**Dr. Jessica Rowe, Psy.D.**
**Dr. Jess' Mind Care Center**
Ph: 916.500.4054 / Fax: 916.260.5837
License # PSY 30803
www.drjessmindcarecenter.com

_____

## Rule 26 Report

<u>**March 18, 2025**</u>

**Re:** Alex Villanueva v. COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT, LOS ANGELES COUNTY BOARD OF SUPERVISORS, COUNTY EQUITY OVERSIGHT PANEL, LOS ANGELES COUNTY OFFICE OF INSPECTOR GENERAL, CONSTANCE KOMOROSKI, MERCEDES CRUZ, ROBERTA YANG, LAURA LECRIVAIN, SERGIO V. ESCOBEDO, RON KOPPERUD, ROBERT G. LUNA, MAX-GUSTAF HUNTSMAN, ESTHER LIM, and DOES 1 to 100, inclusive.

Mr. Villanueva was administered a thorough structured clinical interview and examination to determine if he experienced emotional distress/psychiatric illnesses from LA County events and mistreatment, and if major life areas were negatively impacted.

Note* A psychiatric illness is a combination and constellation of symptoms that tend to be ongoing after a particular stressor occurs. For example, depression that is ongoing and that keeps occurring over a long period positions a person to be at high risk for future mental illnesses.

The examinee was told the evaluation was not confidential.

**Examiner Relevant Experience and Qualifications:**

The examiner is a licensed California clinical psychologist. She attended a university accredited by the American Psychological Association (APA). Attending an APA accredited institution is the gold standard in the field of psychology (John F. Kennedy University).

Dr. Rowe has been treating patients and conducting psych evaluations from approximately 2010 to the present time, while working for the state of California, for counties in California, in private practice, and in clinics and hospital settings. Experience includes treating: trauma victims, first responders, medical staff, individuals who have experienced sexual assaults, as well as sex offenders, those with traumatic brain injuries, and individuals with severe mental disorders, and psychosis. Individuals with depression, mood disorders, anxiety disorders, trauma-related disorders, and post-traumatic stress disorder are also treated by the examiner.

ROWE 000001

Villaneuva, A.: DR. ROWE\March 2025

2

Post-graduation in 2016, the examiner worked in a California state prison as a clinician for over two years, treating a variety of severe mental and personality disorders seen in the inmate population. She was licensed while working at Mule Creek State Prison. Shortly after licensure the examiner began a private practice.

The examiner is contracted with various worker's compensation medical provider networks, conducting mental health treatment and psychological/neuropsychological evaluations for individuals who have filed a worker's compensation claim. She assists employers and worker's compensation insurance companies by treating injured workers with the goal of returning to work as soon as possible.

The examiner often treats those who have been harassed, experienced work distress, been mistreated, been sexually abused, terminated, have endured wage discrimination, and those individuals who have been slandered. She is consistently assessing the impact of traumatization and mental disorders caused by work conditions, creating treatment plans, and determining proper diagnoses. She also assists those with chronic pain from work related injuries by conducting pain management treatment mechanisms.

She is a member of the American Psychological Association, the California Psychological Association, and the American Psychology Law Society. The Examiner abides by guidelines set forth by these organizations when conducting treatment, testimony, and consultation.

The examiner assisted in the development of the first multidisciplinary program for the Native American Health Center, aiding the Native American population in the Bay Area obtain wholistic health care. The examiner presented her research about the development of an anti-bullying curriculum designed for the needs of diverse youth to help decrease suicidal ideation, depression, and suicide attempts. She also designed material to train teachers of adolescent age groups how to appropriately intervene in and decrease bullying, thereby decreasing suicidal ideation.

She conducted research with the City of San Francisco to determine the most effective evidenced-based practice and quality assurance for their community mental health treatment program. The goal was to find the best methods to reduce length of time in treatment as well as the most effective way to impact mental health conditions.

The examiner often conducts disability evaluations for military veterans on behalf of the Department of Veterans Affairs.

The examiner performs as a litigation consultant and provides expert testimony as well as forensic psychological evaluations for attorneys in California. She assists attorneys with their cases by reviewing documentation of treating doctors and therapists and using appropriate evaluative methods to provide accurate forensic results and quality reports.

The examiner has assisted in several employment litigation cases. Not only does she conduct forensic and psych evaluations, but she also conducts treatment with attorney clients who have endured defamation, wrongful termination, harassment, wage discrimination, retaliation and/or other work stress and issues. She consults with attorneys to ensure psychological evaluations conducted by other

Villaneuva, A.: DR. ROWE\March 2025

3

psychologists are completed properly and in an ethical manner.

**Claims:**
1.RETALIATION IN VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. § 1983); (2)
DEFAMATION, LIBEL, AND SLANDER; (3) COERCED SELF-DEFAMATION; (4)
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; (5) NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS.

**Material Reviewed:**

1. Medical Records:

   AV010241-AV010304

2. Plaintiff Depo Transcript:

   Alex Villanueva - 02-28-2025

3. Pleadings:

   COMPLAINT--FAC (A VILLANUEVA)

**Processes:**

A. Structured clinical interview/psychological examination. This helps confirm or deny the
   examinee's alleged complaints.
B. Observation/tracking emotions during the evaluation. Example- what made the person sad,
   agitated, uncomfortable, etc.?
C. Determining if there is evidence for a psychiatric illness.
D. Determining when serious symptoms began.
E. Is there causation? What life events caused psychiatric illnesses, if applicable.
F. Review of all available records.

**<u>Alleged Deleterious Work Events:</u>**

The examinee confirmed the following occurred:

"Villanueva was honored to serve as Sheriff of Los Angeles County.  His tenure was driven by a
desire to ensure Los Angeles County is a safer place to live.  As a law enforcement officer, Villanueva
complied with all laws to which he was subject and was tasked with enforcing.  As a person of Puerto
Rican descent, Villanueva has upheld and enforced laws against discrimination and harassment
throughout his law enforcement career, including his service as the elected Sheriff of Los Angeles
County. Defendants in this lawsuit did not try to compete in the "marketplace of ideas"; instead, the
County of Los Angeles retaliated against Villanueva for his First Amendment activities and defamed
him with near surgical precision to inflict maximum damage to his reputation, run for elected office,
and future employment prospects. Villanueva is proud of his record as Sheriff of Los Angeles County.
Under his leadership, the Department implemented the policy and practice of wearing body cameras
for the first time.  Villanueva refused to cooperate with Immigration and Customs Enforcement

Villanueva, A.: DR. ROWE\March 2025

4

("ICE") and prevented ICE from operating in Los Angeles County jails.  He fulfilled his campaign promise to remove ICE from Los Angeles jails and became the first Los Angeles Sheriff to reject "SCAAP"1 funding, thereby preventing millions of dollars from being used to facilitate federal deportations directly from jails.  Additionally, Villanueva launched "Operation Homebound," in which the Sheriff's Department assisted in bringing vaccinations to vulnerable populations, including adults with disabilities, in Los Angeles County. Villanueva engaged in protected First Amendment activities as an elected official, frequently speaking out on critical issues and opposing measures that he believed would undermine public safety and law enforcement.  This First Amendment activity brought him into direct conflict with the Board of Supervisors and led to the Board's retaliation against and defamation of him. Ballot Measure A:  Villanueva publicly opposed this measure, which for the first time would allow the Los Angeles County Board of Supervisors to remove an elected Sheriff. Villanueva publicly condemned the measure, stating that it would "allow corrupt Board members to intimidate sheriffs from carrying out their duties to investigate crime," and further declared that the Board's actions would be found "unconstitutional." Ballot Measure R:  Villanueva publicly opposed Measure R, which granted unprecedented subpoena powers to a civilian oversight panel. He stated, Since the Board of Supervisors has already spent over million dollars suing itself and their own sheriff, Measure R will open the floodgates for many more ill-advised lawsuits designed to seek documents that are not legally available for public release.  This is simply weaponizing oversight as a way to politically bash the LASD. The Board of Supervisors, the Inspector General, and the Civilian Oversight Commission would better serve the community by working collaboratively with the Sheriff's Department, not against us, as we work tirelessly for a safer Los Angeles County." Ballot Measure J:  Villanueva criticized Measure J, which proposed reallocating funding ostensibly for social justice purposes, arguing that it was, in effect, an effort to defund law enforcement.  While Villanueva publicly stated his support for funding mental health and substance abuse programs, he emphasized that the proposal was "actually out to defund law enforcement." During the pandemic, Villanueva was a vocal opponent of vaccine mandates, expressing concern over the impact such mandates would have on the already understaffed Sheriff's Department.  Villanueva stated, "I have 1,600 potential people that have 28 years or more of service.  They could just walk away and not lose a penny and not even look back, and that is a huge threat to the department which is already severely understaffed."  He further explained, "To replace a veteran thirty-year expert in whatever capacity—for example, homicide investigator, those are decades it takes to replace somebody like that, and you cannot quantify the impact that it has on public safety.  I guarantee you, homicides will go up. A lot of things will go up, and response times are going to get longer and longer."  Villanueva also noted, "I've received support from members across the political spectrum, except for one group—the woke left who somehow has embraced this idea like it's another cultural war to fight." Villanueva also raised significant concerns about a no-bid contract awarded to Fulgent, a company tasked with running the County's COVID-19 testing and registration program.  On the basis of information provided by the FBI, Villanueva publicly asserted that Fulgent could potentially send genetic data to China, highlighting the security risks posed by such agreements. Villanueva's vocal opposition to these measures and his criticism of the Board of Supervisors' actions reflect his dedication to his role as Sheriff and his commitment to protecting the rights and safety of Los Angeles County residents. The Board of Supervisors was well aware of Villanueva's protected speech above.  Villanueva repeated the statements to the Board directly in meetings, both public and private.  Further, the Board of Supervisors informed Villanueva directly that they were aware of his public statements on the ballot measure, the vaccine mandate, and the Fulgent controversy.-Villanueva's opposition to the Board of

Folsom, CA  95630
(916) 500-4054

Dr. Jessica Rowe, PSYD

Villanueva, A.: DR. ROWE\March 2025

5

Supervisors' actions led to retaliatory measures designed to harm his reputation and political prospects. The unprecedented decision by the Board to place Villanueva on a "Do Not Hire" list was retaliatory, given that no similar action had been taken against other public officials with more serious allegations or convictions, including former Los Angeles County Assessor John Noguez, former Council Member Mark Ridley Thomas, and former Sheriff Lee Baca. Noguez, Thomas, and Baca were all charged with and/or convicted of felonies, but this did not warrant a "Do Not Hire" label on any of them. Further, the County opened eleven (11) separate investigations of Sheriff Villanueva after he was no longer Sheriff. The County used these investigations to try to get Villanueva decertified as a law enforcement officer in California and to remove his concealed carry permit. This was unprecedented because the general practice is that investigations are not opened on officials after they no longer occupy those positions. Villanueva was placed on the County's "Do Not Hire" list, ostensibly for harassment and discrimination against defendants Ester Lim and Max Huntsman. This action was undertaken with actual malice. Defendant County of Los Angeles's own investigation in 2022 determined that Villanueva had not discriminated against or harassed Huntsman or Lim. Without any explanation, defendant County of Los Angeles did a 180-degree turn and rubber-stamped the statement that the accusations were founded. This was done purely to retaliate against political speech that the County did not like and to hurt Villanueva's political prospects.-Villaneuva did not harass defendant Huntsman or defendant Lim, and the County of Los Angeles, as well as Huntsman and Lim themselves, knew this.-This lawsuit is Villanueva's attempt to clear his name, vindicate his reputation, and be made whole for the emotional distress defendants' actions have caused him. Defendants' acts of retaliation, prohibited under the First Amendment, are placing Villanueva on the "Do Not Hire" list and then publicly revealing this fact. Defendants' defamation of Villanueva consists of the statements that he committed harassment and discrimination. These statements were made by Huntsman and Lim internally with malice and republished by the County of Los Angeles to the Los Angeles Times. Finally, Villanueva himself was forced to republish the statements in order to defend himself against the accusations. The statements against Villanueva were made with actual malice for a number of reasons. Max-Gustaf Huntsman himself admitted that "he could be incorrect" that Villanueva was harassing him on the basis of ethnicity. This is an admission that defendant Huntsman either knew that the statements were false when he made them or seriously doubted their veracity. Further, calling someone by his or her given name simply cannot, as a matter of law, be harassment. As is explained further below, defendant Huntsman used the name Max-Gustaf Huntsman on his own office plaque, and the County of Los Angeles's own employee database referred to him by that name; this further underscores the fact that defendant Huntsman and the County of Los Angeles knew that any allegation of discrimination and harassment was false. Ester Lim's accusations of harassment and discrimination were also made with actual malice. Defendant Lim did not produce one shred of evidence that Alex Villanueva targeted her because of her race or ethnicity or protected class. Instead, defendant Lim stated that her work product was that of someone in her 20s and otherwise did not appreciate her work product. People in their 20s are not a protected class, and, in any event, this is a statement that reflects Villanueva's opinion of the quality of the work product, which opinion is not harassment or discrimination as a matter of law. Defendant Lim knew at the time these statements were made that race or ethnicity or protected class was not a factor. Instead, defendant Lim weaponized a charge of harassment and discrimination, and defendant County of Los Angeles adopted it wholesale to retaliate against a political opponent. Finally, the County of Los Angeles acted with actual malice in saying that Villanueva had committed harassment and discrimination because its own initial investigation in 2022 determined the accusations to be unfounded. This shows that the County

Villaneuva, A.: DR. ROWE\March 2025

6

either knew they were false or, at a minimum, had serious doubts about their validity. Defendant Los
Angeles County placed Villanueva on the "Do Not Hire" list in an impermissible act of First
Amendment retaliation.  Defendant, literally to add insult to injury, defamed Villanueva by telling the
Los Angeles Times that Villanueva committed harassment and discrimination.  These statements were
made with actual malice because Defendants knew they were untrue when they were made or, at a
minimum, entertained serious doubts about their falsity.  The timing of the Los Angeles Times story
was designed to cause maximum damage to Villanueva's reputation and to cause maximum emotional
damage.  The placement on the "Do Not Hire" list severely affects, limits, and otherwise precludes
Villanueva's employment opportunities in the County government, as well as directly and indirectly
detrimentally affecting Villanueva's employment prospects across the board, and damaged
Villanueva's reputation. Plaintiff brings this action against defendants for economic, non-economic,
and compensatory damages, pre-judgment interest (Memphis Community School District v. Stachura,
477 U.S. 299 (1986)), attorneys' fees subject to 42 U.S.C. section 1988(b) and Government Code
section 800, and injunctive relief.  Specifically, Villanueva requests that this Court order that the
placement of Villanueva on the "Do Not Hire" list be undone and have it declared to have been an act
of impermissible retaliation.  Villanueva also seeks, at a minimum, nominal damages for defendants'
violation of his constitutional rights and such other relief as this Court deems appropriate. Villanueva
has standing to bring this lawsuit because he seeks to restore his reputation, pursue future employment
opportunities, and redress the harm caused by defendants' retaliatory actions.  Villanueva has a
genuine desire to become employed again with the Los Angeles Sheriff's Department as a consultant.
Additionally, he wishes to be considered for employment as a Justice Deputy by the present or future
Sheriff and to apply for the Chief of Police position should the Community Safety Police Department
be established.  However, Villanueva's placement on the County's "Do Not Hire" list precludes these
opportunities, rendering any application for employment futile. The "Do Not Hire" designation
directly affects Villanueva's ability to secure employment in Los Angeles County government and
related positions, effectively blocking him from pursuing these roles.  The County's decision to place
Villanueva on this list without precedent for similarly situated public officials underscores its
retaliatory nature and lack of legal basis. Villanueva's standing is further grounded in the actual
controversy between him and defendants over whether his constitutional rights were violated.  He
seeks injunctive relief to rescind his placement on the "Do Not Hire" list, which relief this Court is
empowered to grant.  Villanueva has also suffered significant emotional distress as a result of
defendants' actions and seeks legal damages to compensate for this harm.  At a minimum, Villanueva
is entitled to nominal damages for the violation of his constitutional rights, underscoring his right to
bring this suit and seek appropriate judicial redress."

**Repercussions of Alleged Events:**

1. Lost a sense of accomplishment and pride
2. Less joy in life
3. Lost purpose
4. Loss of direction in life
5. Simple tasks have become hard
6. Less fulfilled
7. He second guesses the simple things or decisions
8. Feels less competent

Villaneuva, A.: DR. ROWE\March 2025

7

9.  Doubts his value
10. Doubt his abilities
11. Feels inferior
12. Fearful around others
13. Scared in certain situations that remind him of events
14. Trouble trusting others
15. Increase in headaches, they occur weekly
16.  Increase in blood pressure and resting heart rate
17. He feels flawed and damaged now
18. He eats poorly at times because he does not care
19. His wife says he has lost patience; he is inattentive, quick to anger, and disinterested in daily activities
20. Ongoing feelings of depression and feeling downtrodden
21. Ongoing feelings of anxiety that lead to physical discomfort and symptomology
22. He is tired more quickly and easily
23. He has energy for what he must do, but lacks energy for other things
24. He takes more naps now because he has trouble sleeping or he feels exhausted
25. He is more sensitive to critique or others' comments
26. He feels others often see that there is something wrong with him and that he is flawed
27. He struggles to clean or do other ADLs because he lacks energy
28. He feels at a loss for how to help himself
29. Feeling very disturbed and traumatized
30. He gets angry or irritated with others quickly, which leads to guilt
31. He gets nervous around others or in crowds
32. He scans places for the presence of persons who could hurt him or his family
33. When someone is behind him, he often turns around to see who's there
34. Certain triggers remind him of the disturbing events that he experienced at the County
35. He feels that something bad could happen easily
36. He begins to feel anxious or disturbed when he sees bad guys strutting in public, continuing bad behaviors
37. He snaps at others easily
38. He says mean things when he does not mean to
39. It can be difficult finishing projects or goals because he does not have the motivation
40. I can be hard to talk to family and friends, run errands, clean, take a shower because he is too exhausted or is not motivated
41. He is in a state of consistent state of hypervigilance
42. He feels the only time he can really relax is by himself
43. He feels he will have a foreshortened future because of the egregious work events he experienced
44. He feels having a normal life won't occur
45. Particular triggers upset him because they remind him of what happened at work - seeing derogatory comments on social media and in the news based on the false narrative of the board of supervisors
46. He avoids places because he thinks something bad could happen there or he could be in danger
47. He often scans rooms because he is vigilant to his surroundings

Villaneuva, A.: DR. ROWE\March 2025

8

48. Projects can pile up because he just does not have the motivation anymore
49. He is less active now and does much more sitting and laying down
50. He feels that he is not good enough now
51. His view of the world and others has changed for the negative
52. He tends to see the negative in others or situation
53. He has more road rage or is very impatient with others
54. He does not read or play guitar because he no longer has the desire since the events
55. He struggles to see the positive in others
56. He only enjoys socializing with a small circle of friends
57. He rarely feels happy or content
58. He gets bored or uninterested even when there are plenty of things to do
59. He is more forgetful, and it can take him a while to figure out who/what is being discussed in a group setting because he is thinking about how he was mistreated and undermined
60. He experiences interrupted sleep, worrying about county corruption and the impact on his family
61. He has increased body pain and tension, especially in his shoulders
62. He has trouble stopping thoughts about the egregious work events
63. He has felt quite downtrodden
64. He is more emotional and experiences anxiety. He has trouble breathing, his heart races, he feels he is being shot with adrenaline, he feels a sense of despair, and feels that several people are trying to harm him and his family
65. He feels a surge of panic and gets a bitter taste in his mouth
66. He is fearful regarding what the County and those that dislike him will do next
67. He endures more acid in his stomach related to work stress and repercussions
68. He consistently checks his security cameras, and he looks for people who drive into his driveway and in the back area of his home
69. He said, "there is concern about the Board. If they are willing to lie what else are they willing to do to me and my family."
70. For protection, he carries a firearm when he travels or is out. He is scared because of the lies the Board and County have spread. The public believes what they hear, and he feels something bad could happen
71. He said, "the LA government weaponized and dehumanized me and made me into a monster to control the office of sheriff."
72. He rates anxiety as severe
73. He rates difficulty controlling worry as severe
74. He rates feeling restless or on edge as severe
75. He is very easily fatigued, has trouble concentrating, he is quite irritable, and experiences worrying too much and trouble relaxing
76. He experiences muscle tension in relation to constant worry and anxiety
77. He rated feeling downtrodden and loss of pleasure as severe.
78. He stress eats, eating carbs and sugars and he rates this as severe
79. He rates sleep problems as severe
80. Loses track of conversation because he is worrying.
81. He becomes aloof and stops paying attention and he gets spacey, and it is hard to stay present. His wife will stomp on his foot and say, "pay attention!"

Villaneuva, A.: DR. ROWE\March 2025

9

82. He feels a sense of worthlessness. He said, "they have invalidated who I am."
83. He feels bad about himself since the County has participated in alleged egregious acts
84. He and his wife are on a fixed income since he was forced to lose his career
85. Losing his career has been devastating. He spent so much of his life trying to become sheriff and lead the County in a positive manner. Losing this has been horrible for the examinee
86. His wife has endured panic attacks because of his career loss and the county smearing his reputation, placing him and his family in danger. For example, it was said that he is part of a gang
87. He has not worked since Dec. 2022, and this has been incredibly difficult
88. He is the first sheriff to be sued by people who were promoted (Jennifer S., Vanessa C., Angela W., Lina P.). He is the first in county history.  The County and/or Board recruited people to sue the examinee on purpose
89. Bad and incorrect information in LA Time's articles about Mr. Villanueva has led to ongoing concern, fear, and has destroyed his reputation as an ethical individual. This has placed him in danger, but has also placed his wife in danger

**Mrs. Villanueva's Interview Results:**

Mrs. Villanueva indicated that she has observed the following regarding her husband since losing a long-term career and enduring slander: She said crying right away, "he is less tolerant of others, and he drifts away and is not present. He stops listening. He is out of it. He gets really upset when he reads something about the City, the fires, and other things. He gets flustered and upset. He is not as patient. The only thing that ever affected his mood was if he was really hungry, but this has been bad. He cannot stand bullies. He is not that monster that people portrayed him to be. He would take off his shirt for anyone and stand shoulder to shoulder. To see the attacks on him, forcing me to testify, his name dragged through the mud, and the things they have done to him...he is a really good man. He was called a gangster by a community person. It has been terrible. The man has done what it right to his own detriment."

Mrs. Villanueva also noted that the County has tried to decertify him from POST around seventeen times. She said she believes they use law number 1721 to try and accomplish the latter. Trying to decertify him means they have accused him of malicious conduct so he cannot be a peace officer in the state of CA ever again, and so that he cannot be rehired.  She said, for example, he was accused of inappropriate use of force when he was not even in the field.

His wife also said, "he gets very emotional when things are discussed. I have been under stress. I get bad headaches, stomach pain, I binge eat, and at times I feel unsafe. My guard goes up when I see people in public recognize him and if he is asked if he was the sheriff.  I hear people say "he is such a nice guy, he does not seem like what they say on TV."

She noted her husband as more angry, and she must tell him to calm down. She said, "I have to discuss it with him. You know he learned he was not hirable through the LA times and not before. It is so sad." She said that her husband would help people who need it and that he does not discriminate. She has seen him cry and at other times he tries to hold in his tears. She awakes in the middle of the night to him awake and covering his face with his hand. She asks him what is wrong because he looks

Villanueva, A.: DR. ROWE\March 2025

10

pensive and upset. She said, "we had no idea the powerful force we would be against. The day he was sworn in he was told by Janice Hahn, "just remember who manages your budget." We were so naïve and had no idea that people were so unethical. I had no idea the political corruption was so bad."

**Results of the Interview with Mr. Villanueva's Son, Jerod:**

Jerod indicated the following since his father lost his career and was slandered: "He dedicated his whole life to this and at the expense of family. He used to be enthusiastic about making change. His life was about the department and how it has been taken away is disheartening, nor is it right or fair. His purpose has been wasted. I am asked a lot if he will run again or if he is coming back. I am told almost daily that people feel bad for him and that it is not fair. I have seen him sad and angry. He needs purpose. I have seen him cry around family. He has been frustrated and I can tell it affects him. This job was everything to him."

Mr. Villaneuva's sons' career has been affected by the slander. He said, "I have been called a predisposed peace of shit. The LA times wrote articles about me. My wife works for the department too. Supervisors told her not to change her last name so she does not alert anyone to who she is. She has been told it could impact her and have negative consequences. I have also been called The Prince, a piece of shit, and brass baby." Him and his wife are genuinely thinking about leaving the department to get a fresh start. He said the agency is not the best place to be right now.

Jerod has witnessed his stepmom being affected by what has happened to Mr. Villanueva. Jerod said, "she has sacrificed a great deal. I have seen her depressed and crying several times. It has affected her life considerably. The department was also her life. She retired early to support him because his job was 24/7. It was taken away after he worked so hard to get where he was and to do right by others."

**Other Life Circumstances:**

-medical issues. He was diagnosed with cancer. It required surgical procedure. He is in remission. He also had about three knee surgeries. There was a great deal of improvement regarding knee issues from the surgeries.
-his father died in 2015. He feels he has grieved his death.
-as a deputy he remembers the death of children who died in a car accident. He noted this as a memory that comes up sometimes. He was also involved in taking a family to view and identify their family remains. This is another memory that comes up at times. He does not meet criteria for PTSD based on these memories and experiences.
-he grew up poor in Puerto Rico. This taught him to work extremely hard in his life and to keep pushing forward to accomplish his goals.

Based on an extensive and comprehensive examination of the examinee, other life circumstances other than County events, did not cause psychiatric illnesses.

**Clinical Exam Observations:**

Dr. Jessica Rowe, PSYD

Folsom, CA 95630
(916) 500-4054

ROWE 000010

Villanueva, A.: DR. ROWE\March 2025

11

During our meeting Mr. Villanueva was cooperative and alert. He appeared groomed. He was tired and downtrodden. Affect was blunted indicative of depression. Eye contact was fair. He exhibited upset when discussing work events. He had trouble expressing emotion during the exam. He exhibited satisfactory conversational skills. Hallucinations and delusions were not present. He denied suicidal ideation and homicidal ideation. Insight and judgment were adequate. Speech was generally fluid.

**Summary:**

A constellation of symptoms developed during the harmful work events, and work events were the 'precipitating' stressor and cause (the stressor that causes significant mental or physical issues to commence or exacerbate symptoms). Stress escalated to actual disorders.

Based on the evidence, the work events alone caused development of symptoms of depression and anxiety as well as difficulty adjusting and acclimating under stress.

The examinee's symptoms have not fully remitted, even though he has been separated from the employer for some time. Because he is still reactive to reminders and still experiences psychological concerns and sequelae, his mental health has deteriorated. In addition, his wife's mental health has deteriorated since having to deal with the County's behaviors and seeing her husband in pain on a consistent basis since the deleterious work events.

He also developed headaches, an increase in acid reflux, high blood pressure, and muscle tension related to the actions of the defendants and the loss of a 30 plus year career.

Evidence shows that work events intensely disturbed Mr. Villanueva, which led to psychiatric illnesses of adjustment disorder with mixed anxiety and depressed mood.

The examinee developed a significant course of psychiatric problems and symptoms, not just stress, when he began experiencing disturbing actions while working for the previous employer.

In developing opinions, the examiner considered the various facts of the case, records, evidence, and that the examinee experienced disturbing work events. He was forced to continuously deal with what is called "peer victimization," which is a deliberate attempt to inflict emotional harm to someone perceived as less powerful (NCTSN, 2021). When work memories occur or the subject is brought up or he is reminded, he gets upset, obsesses about what happened, becomes reactive, and it is a huge challenge to remain collected and calm.

Diagnoses:

Evidence, when corroborated with the *Diagnostic Statistical Manual-5-Text Revision* (DSM-5-TR), criteria for psychiatric illnesses, confirms remarkable symptoms; symptom corroboration with the DSM-5-TR is _required_ to make diagnoses.

Mr. Villanueva meets criteria for adjustment disorder with mixed anxiety and depressed mood (F43.23). The illness has caused impairment in major life areas, especially with his ability to find

Villaneuva, A.: DR. ROWE\March 2025

12

work, the relationship with his wife, he lost several colleagues and friendships and no longer has mega health care benefits. He and his wife are on a fixed income.

Rule Outs or Ins:

The examinee was asked about stressors in his life that he could remember.

The examiner addressed other life circumstances. There are no other circumstances that have caused such psychiatric issues leading to mental illnesses.
Malingering:

An evaluation in litigation also requires consideration of alternate causes of the examinee's psychiatric condition, such as malingering.

Malingering is defined as the intentional production of <u>false or grossly</u> exaggerated physical or psychological symptoms to obtain external incentives.

One could qualify for malingering by the standards of the DSM-5-TR if there is a combination of the following:

a. Medical-legal context of presentation. For example, the individual self-refers while litigation or criminal charges are pending, or if one is referred to obtain an evaluation for litigation.
b. Marked discrepancy between the individual's claimed stress or disability and the objective findings and observations.
c. Lack of cooperation during the diagnostic evaluation and in complying with the prescribed treatment regimen.
d. The presence of antisocial personality disorder.

The examinee was referred to a forensic evaluation for litigation purposes, however, he meets NO other criteria. Thus, malingering is ruled out. There must be a combination of the above criteria for malingering to be present.

There were no indications of falsifying information, overreporting, or intentionally trying to manipulate the outcome in his favor. He also does not meet criteria for a personality disorder as clearly defined by the clinical exam. Individuals with personality disorders often jump from job to job, go through extreme highs and lows, are in and out of relationships, use people for gain, and can have continuous legal problems (such as arrests) etc. These individuals also have enduring patterns of inner experience and behavior that affect perception and interpretation. These disorders substantially affect the perception of self, others, events, interpersonal functioning, and decrease impulse control. These patterns are generally pervasive across interpersonal and social situations and lead to clinically significant impairment. The pattern is generally recognizable by adolescence or early adulthood and is not expected to change significantly over time. The presence of a personality disorder can impact and exacerbate other mental health diagnosis, symptoms, and conditions. Having a personality disorder can trigger a mood disorder but the reverse cannot occur as the foundation of personality is established in childhood.

Villaneuva, A.: DR. ROWE\March 2025

13

The examinee does not meet criteria for a psychotic disorder (one who is severely disturbed by delusions and hallucinations). The clinical exam would indicate if he was psychotic.

Treatment Recommendations and Prognosis :

Based on the findings of the exam, and from today onward, provisions should be made for him to receive at least 175 sessions of psychological treatment. Provisions should be made for him to get psychiatry services to obtain medications if symptoms worsen over time. These recommendations do not include all doctor visits and medications for worsening physical problems (example, shoulder pain, high blood pressure, acid reflux, etc) caused by defendant's actions.

Cognitive behavioral therapy is the preferred method as this modality is an evidence-based practice that has been well researched for treating symptoms of depression and high anxiety. He could utilize CBT to help process what happened to him while working for the employer, to reduce anxiety and sadness, to improve self-confidence, and help him address any thoughts or behaviors that are leading to increased symptomology.

Regarding prognosis, the Diagnostic Statistical Manual 5 psychologists use to diagnose, treat, and rule out disorders, notes there is no guarantee the examinee will fully recover from mental illness, especially when there is a constellation of persistent symptoms and more than one diagnosis. It is harder to overcome mental illness when the pain and symptomology is consistent over several years, as it has been for the examinee. Because he has multiple symptoms his illnesses could be more resistant to treatment. Brain functioning can be altered when exposed to events that lead to tremendous stress, causing one to be unable to fully recover (Boyle et al., Brain, Behavior, and Immunity, 2020, 83).

Research from Have et al., 2021 (Depress & Anx), determined that over 30% of those with anxiety issues did not heal or fully recover after 3 years. A longer duration of symptoms stems from older age, poor physical functioning, and/or emotional problems. The examinee has emotional problems at present according to the evidence, is older in age, struggles with sleep often, and has a diagnosis of medical conditions making him more vulnerable to severe illness.

Additional research has found that people who are in remission from anxiety disorders are still at risk in the future. It was found that 15% of people developed an anxiety disorder after 6 years in remission. There was recurrence of anxiety disorders at 10 years post remission (about 11%), at 20 years post remission (over 16%), and at 30 years post remission (about 21%). Predictors of recurring anxiety is experiencing symptoms of depression (Scholten et al., 2023, Psychol Med, 4).

In addition to the above, when opining about an examinee's condition it is very important to determine when symptoms began to dramatically increase over the course of one's life as well as the symptoms' trajectory to establish the course of symptomology. The available data and evidence indicate that the examinee's serious mental problems leading to actual diagnosable and psychiatric illnesses did not occur until after he was forced to allegedly deal with slander, retaliation, and the like.

Dr. Jessica Rowe, PSYD

Folsom, CA 95630
(916) 500-4054

ROWE 000013

Villaneuva, A.: DR. ROWE\March 2025

14

The examinee's mental problems and symptoms are aligned with job loss research and are what we would expect to see from such circumstances after being forced to give up a highly valued career that made up a substantial amount of Mr. Villanueva's identity as a human being. The course of his symptoms, in order to meet psychiatric illness status, must be persistent and ongoing and impact a major life area or more than one. He also meets these criteria.

Evidence indicates he experienced mental pain, resulting in emotional repercussions. As a result of working conditions being harmful and intolerable, the evidence shows that the examinee was mentally harmed.

The harm that the examinee endured is more than remote and trivial. His mental and physical health, according to evidence, has been jeopardized and impaired. The research indicates that it is common that individuals who experience such treatment in the workplace and job loss can develop longstanding mental and health issues.

With a reasonable degree of probability, the examinee has experienced mental harm from defendant's actions that developed into a psychiatric illness. The actions of the defendants caused a psychiatric illness to develop.

The Examiner completed this evaluation and testing. Any conclusions in this report may be altered if new material becomes available. I will review any additional records and or deposition testimony.

**As a precaution, the examinee should not be shown this report.**

If testimony is needed, please contact our office.

I declare under penalty of lying under oath that the information contained in this report that have been forwarded, and their attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated that I have received from others, or due to typographical error. As to the information obtained from others, I declare under penalty of lying under oath that the information referenced herein accurately represents the data provided to me to the best of my interpretation and, except as noted, that I believe it to be true. I declare under penalty for lying under oath that there has been no violation of the provision of the California Labor Code 139.3 and/or the laws and regulations governing the professional practice of Psychology.

**Sincerely,**

3/19/25

**Jessica M. Rowe, PsyD.**

Dr. Jessica Rowe, PSYD

Folsom, CA 95630
(916) 500-4054

ROWE 000014

Villaneuva, A.: DR. ROWE\March 2025

15

**Licensed Clinical Psychologist**
**CA License # PSY30803**
**Dr. Jess Rowe's Mind Care Ctr**

Villaneuva, A.: DR. ROWE\March 2025

16

## *APPENDIX*

Research evidence showing the deleterious effects of psychiatric illnesses and job loss:

## JOB LOSS

Research evidences that individuals who suffer with mental problems are more at risk of employment termination. Individual's impact of mental struggles affects an individual's ability to maintain employment (Nelson, Kim, Jo Me Hea Pol Eco, 2011).

Research denoted that those who feel there was injustice involved with job loss, subsequently they experienced greater emotional distress than those who were not (Walster et al. 1978; Sprecher, 1986).

Evidence indicates that employment can improve an individual's well-being, but that job loss has a detrimental effect (Nelson, Kim, Jo Me Hea Pol Eco, 2011).

Research by Karsten Paul, PhD, and Klaus Moser, PhD, both in the department of organizational and social psychology at the Friedrich-Alexander University of Erlangen-Nürnberg in Germany, found that across 87 longitudinal studies, unemployed people were more distressed; less satisfied with their lives, marriages and families; and more likely to report psychological problems than the employed (*Journal of Vocational Behavior*, Vol. 74, No. 3, 2009).

People who lose their jobs have higher symptoms of depression and greater risk of conditions than those with consistent work (Catalan, Dooley, 1983; Gallo, Bradley, Siegel, and Kasl, 2000).

Financial threat is defined as fearful-anxiety, uncertainty regarding one's current and future financial situation. Termination can lead to financial threat. Financial threat is positively associated with depression, anxiety, mood disturbances, burnout, and suicidal ideation (Fiksenbaum et al., 2017, Jo Beh Ex Eco).

There is a relationship between economic hardship and psychological well-being (Tamayo-Fonseca et al., 2018, Int Jo Env Res Pub Hea; Cuellar, Sharfstein, Huskamp, 2020, Psy Ser). Research found that in six different countries financial loss is related to symptoms of depression (Witteveen, Velthorst, 2020). Several studies have found that in the US and South Africa, that there is a direct link between unemployment and higher symptoms of mental health problems, anxiety, and depression (Ganson et al., 2021, McDowell et al., 2021).

## DEPRESSION EFFECTS

In the cerebrospinal fluid of depressed patients, GABA (GABA calms the brain and helps decrease excitability related to anxiety, stress, and fear) levels have been repeatedly reported to be lowered (Sanacora, 2010). There is decreased density of specific GABA neurons in prefrontal and occipital cortical regions of people with depression (Maciag et al., 2010; Rajkowska et al., 2007) and magnetic resonance spectroscopy studies have showed a decrease in GABA in occipital and anterior cingulate areas (Cowen, 2015; Sanacora et al., 1999).

Villaneuva, A.: DR. ROWE\March 2025

17

Depression negatively affects quality of life, outstanding job potential, educational, professional, or academic success, sleep and eating behaviors and health (Gilmour & Patten, 2007, Hea Rep).

Depression can increase behavioral repetition of trauma experiences, and decline in social and occupational functioning (Van der Kolk, 2000, Dia Clin Neur).

Likely irreversible hippocampus shrinkage occurs in recurrent depression (Sheline Yl., Sanghavi M., Mintun MA., Gado MH).  Depression duration predicts hippocampal volume loss in medically healthy women with recurrent major depression (*Jo Neurosci.* 1999;19).

Serious depression represents significant changes such as decreased self-esteem, loss of interest and pleasure in things once enjoyed, reduced energy, motivation difficulty, and pain without clear cause (Patten et al., 2009, CANMAT). The above symptoms are based on dysfunctional neural networks and affect the plasticity (properly function or recover after strain or injury) of the brain (Trifu et al., 2020, Jo Morp Embry).

Functional problems in the prefrontal cortex because of depression, leads to ruminating, impaired sex drive and functioning, and leads to irrational thoughts (Kupfer, Frank, and Phillips, Lanc, 2012).

CT scans show enlarged ventricles (because of atrophy of brain tissue) and global cortical atrophy is caused by serious depression. Prefrontal volume abnormalities occur with serious depression (Meisteremst et al., 2017, Plo On). The above changes can lead to behavioral deficits.

The limbic system, which helps people process emotions, is also impacted by depression. Depression leads to hyperactivity in the limbic system (Trifu et al., 2020, Jo Morp Embry).

**ANXIETY EFFECTS**

fMRI imaging and scans shows that anxiety and stress-related disorders are whole brain conditions, implicating several brain areas (Duval, Liberzon, 2015, Ther Cli Ri Man).

Presentation of threatening words in fMRI studies, activate the left frontal cortex and left cingulate when a person has an anxiety disorder (Maddock, Buonocore, Kile, Neurore, 2003).

Symptoms of anxiety disorders can be detrimental to the emotional processing center in the brain. The brain's limbic system, comprised of the hippocampus, amygdala, hypothalamus and thalamus, is responsible for the majority of emotional processing. An anxiety disorder leads to heightened activity in these areas (Northwestern University, 2024).

"Anxiety disorders are associated with alterations in fear neurocircuitry…in the amygdala which respond to threat are exaggerated, and regulation of these processes by the prefrontal cortex (PFC) and hippocampus is impaired. Chronic stress exposure similarly alters fear neurocircuitry by enhancing amygdala functioning while causing structural degeneration in the prefrontal cortex and hippocampus

Villaneuva, A.: DR. ROWE\March 2025

18

thereby inhibiting prefrontal cortex/hippocampus control over the stress response'' (Mah, Fiocco, & Szabuniewicz, 2016, Curr Opi Psych).

Mood and anxiety disorders are characterized by a variety of neuroendocrine, neurotransmitter, and neuroanatomical disruptions (Martin et al., 2009, Psy Clin Nor Amer).

Single-photon emission computed tomography (SPECT) identified lower metabolism in the left inferior parietal lobe and overall decreased bilateral cerebral blood flow (CBF) in patients who had PD as compared with control subjects, and this decrease corresponded with symptom severity (Lee, Hwang, & Kim, Jo Psy Resp, 2006).

## SLANDER EFFECTS

Slander creates bias in the community so that the victim is perceived as negative regardless of the true facts. The slandered victim must constantly move within a hostile environment, which can cause a great deal of emotional and psychological damage. One develops knots of negative emotion and thoughts of oneself. Depression, anxiety, self-destruction, and internalization of abuse from the abuser occurs. Slander often leads to destructive self-criticism, and low self-esteem that leads to serious mental health problems, somatization of emotional pain, suicidal ideation or attempts, and feeling that one is unable to protect themselves (so helpless and hopeless can develop)  (Petric, 2019).

Emotional issues can develop into serious psychological symptoms that are diagnosable (Shiraev & Makhovskaya, 2019, Tra Psy Imp of Char Att on Tar).

The psychological developments that result from character attacks include a range of negative emotional reactions or emotional states (which are usually long-term and persistent, such as a depressed mood). Emotional problems from the attacks influence an individual's mood and his or her immediate decisions. The attacks affect the individual's reputation, meaningful relationships, and quality of life (Shiraev & Makhovskaya, 2019, Tra Psy Imp of Char Att on Tar).

Character attacks can be a contributing factor to mental disorders, a cluster of persistent symptoms associated with significant distress, one can be unable to cope with major life stressors, and attacks can exacerbate preexisting conditions. This is connected to rumors, innuendo, slander, or other forms of direct and indirect attacks. Disorders that can develop are persistent depressed mood, anxiety problems, irritability, sleep problems, and feelings of helplessness etc.(American Psychological Association, 2021).

Villaneuva, A.: DR. ROWE\March 2025

19

**Dr. Jessica Rowe's Case List:**

MEGAN YAWS, Plaintiff, v. COUNTY OF PLACER; PLACER COUNTY SHERIFF'S DEPARTMENT, a government entity employer; and DOES 1-25, inclusive, Defendants. Case No. S-CV-0042328

MARIA OLGA TAHARA, Plaintiff, v. SUTTER COUNTY, SUTTER COUNTY SHERIFF'S DEPARTMENT, a government entity employer, and DOES 1-25, inclusive, Defendants. Case No. CVCS19-0000737

ANTHONY MORRIS, Plaintiff, v. CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, a California Agency; and DOES 1-25, inclusive, Defendants. Case No. 34-2018-00244680

HOSSEIN KHATAMI, Plaintiff, v. ROSEVILLE JOINT UNION HIGH SCHOOL DISTRICT; JENNIFER LEIGHTON, an individual; JEFF EVANS, an individual; and DOES 1-25, inclusive, Defendants. Case No.: S CV 0044602

LINDSEY FAUCETTE, Plaintiff, vs. PACIFIC CENTRAL COAST HEALTH CENTERS, a California Corporation; DIGITY HEALTH, a California Corporation; WILLARD CHUNG, M.D. an individual; and DOES -25, inclusive, Defendants. Case No. 21CV01555

Ricky Hendricks, Claimant, vs. Landsea Holdings Corporation, A Delaware Corporation; Sherry Nunziata, an individual; and/or DOES 1-25, inclusive, Respondents. REFERENCE NO.: 1130009204

Dusty Stahl vs. Robert C. Klotz et al. Case No. 2: 19-cv-00496-KJM-CKD

JENNIFER RYDALL, an individual, Plaintiff, vs. RICHARD QUARESMA, an individual; SARAH QUARESMA, an individual; and DOES 1 through 10. Defendants. Case No. STK-CV-UCR-2021-0005768

ANDREA PICART, an individual, Plaintiff, vs. HORRIGAN COLE ENTERPRISES, INC., a California corporation, dba Cole Vocational Services, NATIONAL MENTOR HEALTHCARE, LLC, a Delaware limited liability company, and DOES 1 through 20, inclusive, Defendants. Case No.: RG21090479

BRENNA JORDAN, an individual, Plaintiff, vs. CHA HOLLYWOOD MEDICAL CENTER, L.P., a Delaware Corporation; CHA HEALTH SYSTEMS, INC., a California Corporation; and DOES 1-50, inclusive, Defendant. Case No. 21STCV42895

KRISTEEN KLAAS, Plaintiff, v. ALAMEDA HEALTH SYSTEM, and DOES 1 through 50, inclusive, Defendants. CASE NO. RG19010536

KRISTY WRIGHT, Plaintiff, v. SUTTER VALLEY HOSPITALS dba MEMORIAL MEDICAL CENTER; RAYMOND OVRAHIM, an individual; and DOES 1 through 50, inclusive, Defendants. CASE NO.: CV-18-002049

Villaneuva, A.: DR. ROWE\March 2025

20

ANDREW ANDERSON & DAVID J. MOORE, Plaintiff, v. CITY OF FONTANA and DOES 1-100, inclusive, Defendants. Case No. CIVDS1610471

Stuart James, Plaintiff, v. Sutter Health: and DOES 1 through 50, inclusive, Defendants. Case No.: 34-2019-00260686

LOURDES DEL RIO VALDES, an individual, Plaintiff, v. MEDIMPACT HEALTHCARE SYSTEMS, INC.; a California Corporation; VERONA L. MACDONELL, an individual; and DOES 1-50, inclusive, Defendant. Case No. 37-2020-00045266-CU-WT-CTL

DANITA DALEY, DNP, MBA, RN, HACP, Plaintiff, v. HENRY MAYO NEWHALL MEMORIAL HOSPITAL; and DOES 1-50, inclusive, Defendants. Case No. 18STCV08791

MELANIE HEAD, an individual, Plaintiff, v. LAKESIDE UNION SCHOOL DISTRICT; and DOES 1 through 50, inclusive, Defendants. Case No. 37-2018-00028618-CU-WT-CTL

BRENDA BRIDGEFORD, an individual, Plaintiff, v. CITY OF CORONADO, a municipal corporation; and DOES 1 to 10, inclusive, Defendants. Case No.: 37-2018-00051939-CU-WT-CTL

CYNDI BAILEY, Plaintiff, v. SUTTER VALLEY HOSPITALS dba MEMORIAL MEDICAL CENTER; RAYMOND OVRAHIM, an individual; and DOES 1 through 50, inclusive, Defendants. Case No. 2026940

JESS HERRERA, an individual, SUSAN HERRERA, an individual; Plaintiffs, vs. B & S PLASTICS, INC., a California corporation doing business as WATERWAY PLASTICS; AQUA IMAGE POOL CARE AND CONSULTING, corporate form unknown; BOBBY RAUCH, an individual, doing business as AQUA IMAGE POOL CARE AND CONSULTING; and DOES 1 through 100, inclusive, Defendants. Case No. STK-CV-UPI-2020-0004342

SHASHI NARAYAN, Plaintiff, v. DIGNITY COMMUNITY CARE, dba METHODIST HOSPITAL OF SACRAMENTO, a California Corporation; and DOES 1-10, inclusive, Defendants. Case No. 34-2020-00279250

PATRICIA TOSCANO, Plaintiff, v. THE CITY OF OAKLAND, FRANK KNIGHT, and DOES 1-10, inclusive, Defendants. Case No. RG21094864

EMMA GONZALEZ, Plaintiff, vs. HEALTHCARE SERVICES GROUP, INC.; AND DOES 1 THROUGH 50, INCLUSIVE, Defendants. Case No. 2:23-CV-07060-FMO-MAA

STEVE SANSON, Plaintiff, v. AEROJET ROCKETDYNE, INC., STEVE HILL, and DOES 1 through 50, inclusive, Defendants. Case No.: 34-2015-00175120

LATONYA BANKETT, Plaintiff, v. CALIFORNIA FRANCHISE TAX BOARD, Defendants. Case No. 34-2018-00241074-CU-OE-GDS

CASSANDRA VIGNIERI, Plaintiff, vs. MINTED, LLC, VINEET GUPTA, CARLY SMITH, and DOES 1 to 100, inclusive, Defendants. Case No. CGC-22-600181

Villaneuva, A.: DR. ROWE\March 2025

21

BRITTANY JACKSON, Plaintiff, vs. CAST & CREW PAYROLL, LLC; CAST & CREW
ENTERTAINMENT SERVICES, LLC; DONNA DEANGELIS; and DOES 1 to 100, inclusive,
Defendants. Case No.: 21STCV43573

MARCUS WEBSTER, an individual, Plaintiff, vs. THE REGENTS OF THE UNIVERSITY OF
CALIFORNIA, a public corporation; SASHA YOUNG, an individual; JASMINE BRIONES, an
individual; SCOTT KARAS, an individual; BRENDA QUIROGA, an individual; and DOES 1-5-,
inclusive, Defendants. CASE NO. 22STCV30740

TRACY TAYLOR, Plaintiff, vs. PBK ARCHITECTS, INC, a Texas Corporation; GARY J. GERY,
an individual, DC CAPITAL PARTNERS, a Virginia Limited Partnership, and Does 1-20,
Defendants. Case No: 34-2022-00313977

# Exhibit 3

| | |
|---|---|
| **Client:** | Alex Villanueva |
| **Provider:** | Dr. Rebecca Udell |
| **Provider License:** | LMFT #53808 |

**Diagnosis:** F43.23 - Adjustment disorder with mixed anxiety and depressed mood

# Biopsychosocial Assessment

### 1. Presenting Problem:

The patient is a 62-year-old Hispanic cis-gender heterosexual male. The patient is being assessed on behalf of Shegerian and Associates. The patient was appropriately dressed and well-groomed. The patient's affect was subdued and slightly guarded, as evidenced by folded arms, which he eventually sat with hands folded. The patient spoke with normal prosody and tone. The patient appeared dysthymic, as evidenced by his shoulders turned in, sadness in his face as evidenced by a forlorn look, and lack of positive affect (no smile, soft voice at times, and furrowed brow). The patient reports feelings of dismay, stress, isolation, difficulty sleeping, "running thoughts, I can't shut down my mind," and longing for "comfort food." The patient reported feelings of anger, hopelessness, and, at times, fear for his life due to death threats. The patient reports that his work in law enforcement has always been rewarding. However, stress began in 2019 after winning the election as LA County Sherrif and progressed as he experienced a personal attack on his integrity and character. The patient reported when he was sworn in, Jannis Hahn (LA Board of Supervisors member) stated, "Don't forget who writes the checks." The patient reported a smear campaign by the Board of Supervisors began almost instantly. The patient reports he made several positive changes to the department, including pivoting a 100 million deficit into a 74 million surplus. The patient reports that Sherrifs' felt supported, and many who had left the department or retired returned to work under his command. The patient reported that his nickname in the department in the early years was "Fletcha" meaning Arrow in Spanish, implying he was a straight arrow and he worked diligently to reform the department. The patient reported that he "always spoke the truth to those in power," and overnight, he became the "Bad guy" for wanting to make changes. The patient stated the stress, not of the job but the attacks on his reputation and his advocating for those under his command, intensified. The patient reported anxiety, stress, worry, and humiliation as the work he loved became a "war room" with the Board of Supervisors and other entities.

### 2. Signs and Symptoms (DSM-V-TR based) resulting in impairment(s):

**(Include current examples for treatment planning, e.g., social, occupational, affective, cognitive, physical)**

The patient reported levels of anxiety, stress, rumination, "running thoughts, can't shut down mind, reliving what happened." intermittent sleeping, "anger, irritability, isolating" from others. "I don't cry; we learn to compartmentalize." Stress concerning the ability for future employment in public policy. The patient revealed feelings of "humiliation" while in office and reports feelings of humiliation have continued due to the attack on his integrity and name. The patient experienced emotional abuse, specifically, an attack on integrity, insults as evidenced in an attack on his reputation, and threats to his life and his career by media and public persons and entities.

### 3. History of Presenting Problem

**(Events, precipitating factors, or incidents leading to need for services):**

The patient reports 40 years of public service and receiving much satisfaction from his work. He revealed that his line of work requires that "We (law enforcement) provide service above self and integrity." The patient reports the incidents that led to his symptoms began the day he took office and was attacked by different entities. In a telephonic conversation on 3/20/25 with Mrs. Villanueva, a former deputy for 25 years herself, she described her husband as a "tough and resilient guy" however, "he has been bullied and beaten down so much. She further stated, "Public Service has been his whole life and career." She further described him as sad, preoccupied with thoughts, and serious. She further confirmed his report of insomnia, often seeing him wide awake with his hand over his face, preoccupied with thought more often than not.

#### Frequency/duration/severity/cycling of symptoms

The patient reports symptoms of humiliation, anxiety, irritability, worry, and having his integrity questioned and attacked, which began immediately after the election. The patient reports feelings of dismay, discouragement, and disbelief that a political system could be so corrupt. The patient reports increased rumination of thoughts, irritability, isolation, "a pariah" anger, intermittent sleep, anxious eating, and "seeking comfort food." Mrs. Villanueva confirmed symptoms and his "seeking of comfort food to quell anxiety.

#### Was there a clear time when Sx worsened?

Created on Mar 19, 2025 at 9:36 pm. Last updated on Mar 21, 2025 at 1:04 pm.
Locked and Signed by Rebecca Udell on Mar 21, 2025 at 1:04 pm.

Page 1 of 3

UDELL 000001

Client:    Alex Villanueva

The patient reports symptoms worsened when the Board of Supervisors instituted a "Do not Rehire" blocking his ability to work in law enforcement and public policy. In a telephonic conversation with Mr. Villanueva's son, Deputy JJ Villanueva, on 3/20/25. Deputy Villanueva described his father as tough and resilient. However, he saw a change in his behavior after taking office. Deputy Villanueva revealed his father had been beaten down so much by the attacks on his integrity and character by media and members of the Board of Supervisors he became quiet and serious. Deputy JJ Villanueva reported, "My dad had a sense of humor, he was funny, and he is serious now. "His whole life has been public service; he is passionate about making a difference, and I see him now as a man without a sense of purpose."

**Family mental health history:**

The patient reports a cousin was diagnosed with Schizophrenia approximately during his late teens. No reported mental health issues in the immediate family of origin.

**4. Current Family and Significant Relationships**

Strengths/support: Patient reports his "wife and a few close friends are my support and my believe in God."

Stressors/problems: The family has been defamed, his reputation shattered by mistruths and 'smear campaign." Wife current struggling with gastro intestinal issues related to stress.

Recent changes: None reported

Changes desired: " I want my name cleared and I want the Do Not Rehire removed." "I want my family name and my family to feel whole again."

Comment on family circumstances: "This has affected my family and especially my wife, she is having her own health issues from the stress and anxiety."

**5. Childhood/Adolescent History**

**(Developmental milestones, past behavioral concerns, environment, abuse, school, social, mental**

**health)**

The patient was born in Chicago, then the family moved to New York and finally moved to Puerto Rico when he was four years old. He reports, "We were a poor family, but we got by. The patient attended 2 years of college before joining the US Air Force in 1983.

**6. Social Relationships**

Strengths/support: Patient reports small group of close friends. Patient reports he has isolated from many.

Stressors/problems: Patient was often invited to speak at events or his alma mater; however opportunities and connections ceased after defmation in media and by public servents began.

Recent changes: Patient reports he has taught as an adjunct professor in the past, often asked to speak publicy, attend Gala fundraisers, and those opportunities have ceased.

Changes desired: "I want the Do Not Rehire removed, I want my name cleared;"

**7. Cultural/Ethnic**

Strengths/support: Patient identifies with the his Puerto Rican hertiage, and a people that faced many colonisers. Like his heritage, "I am reslilant, survivor."

Stressors/problems: N/A

Beliefs/practices to incorporate into therapy: N/A Assessment only

**8. Spiritual/Religious**

Strengths/support: Patient reports a belief in God and finds his religious belief to be a source of personal support.

Stressors/problems: N/A

Beliefs/practices to incorporate into therapy: Assessment only

Recent changes: None reported

Changes desired: N/A

**9. Legal**

UDELL 000002

**Client:**   Alex Villanueva

History: Patient reports only other personal legal matter was a tenant/landlord dispute.

Status/impact/stressors: none reported

### 10. Education

Strengths: Patient is a veteren of the Air Force, he attended the University of LaVerne obtained a PhD in Public Adminstration.

Weaknesses: "I'm too trusting."

### 11. Employment/Vocational

Strengths/support: Patient has aproximately 40 years in the public service.

Stressors/problems: Current "Do not Rehire" order in place. attack of integrity and character.

### 12. Military

Current impact: Patient entered the Air Force in 1983.

### 13. Leisure/Recreational

Strengths/support: Walking with his wife and dog. Using gym equipment at home.

### 14. Physical Health

Summary of health: No medications reported at this time. After election, he had knee replacement surgery. Minor allergies, treated for Melanoma in the past and continues surveillance with Dr.

Physical factors affecting mental condition: None reported

### 15. Chemical Use History

Summary of use: None reported

Patient's perception of problem: N/A

### 16. Counseling/Prior Treatment History

Summary of prior treatment: None reported

Benefits of previous treatment: N/A

Setbacks of previous treatment: N/A

**Provider**

*Rebecca Udell*

Signed by Rebecca Udell
PhD, LMFT, CSAT
March 21, 2025 at 1:04 pm
IP address: 75.84.223.50

Created on Mar 19, 2025 at 9:36 pm. Last updated on Mar 21, 2025 at 1:04 pm.
Locked and Signed by Rebecca Udell on Mar 21, 2025 at 1:04 pm.

Page 3 of 3

UDELL 000003

# Rebecca M. Udell, PhD, LMFT

1112 Montana Ave Suite C #853 Santa Monica, CA 90403

310-402-6385 | udellrebecca@yahoo.com

## Experience

■ Private Practice, Santa Monica, CA, <u>Consulting, Supervision, Psychotherapist</u>
July 2013 – Present

Working from a Psychodynamic paradigm, providing Individual, Young Adult, and
Couples therapy.  My work with couples includes pre-marital, and marital counseling,
helping couples gain resourceful communication skills, insight and the confluence of
family of origin in the current relationship. I work with same sex and heterosexual couples
for the purpose of engaging the couple in healthful dialogue to target self-defeating and
relationship sabotaging behaviors, to enrich their marital satisfaction.  I draw from
attachment theory and object relations.  I Provide consultation and supervision services,
and currently oversee the internships of 3 AMFT interns.

■ The Haven at College at USC, Los Angeles, CA, <u>Clinical Director</u>
June 2017 – May 2020

Collaborated with executive leadership to meet financial goals, Forecast staffing needs
based on census and academic calendar and excute the mission of the company to provide
excellant addiction and dual diagnosis treatment.  Designed and developed the SUD Harm
Reduction and Mental Health Curiculum tailored to the collegiate population.  Trained and
supervised MFT interns and MSW interns meeting the  best practices and standards of BBS
and academic requirements of Master's degree programs.  As  leader of the Clinical staff,
directed the weekly Clinical staff meetings, to encourage, support and lead staff in best
clinical practices. Procured continuing education and training to keep staff abreast of
company policy, HIPPA requirements, crisis intervention, and various therapeutic
modalities.  Provided Clinical outreach to educate various university leaders on the stigma
of addiction and sustance use and abuse on college campuses.

■ CAST Centers, Los Angeles, CA, <u>Director of Clinical Services</u>
May 2015 – May 2017

Initially hired as the Manager of Clinical Services executing psychological assessments,
client treatment plans and assignment of staff and independent contractors to provide a
milieu of Intensive Out Patient therapies.  Completed all assessments and provided
diagnosis in accordance with DSMV and ICD-10 codes. In addition, facilitated two weekly
group therapy sessions that included off site programming. Maintained a client load of 10
clients and provided CBT, Narrative, and Trauma Resilience Therapy in the treatment of
dual diagnosis, addiction, and PTSD. Assisted clients to improve communication and
relational dynamics through psycho-education, family therapy, and or couple therapy.
Designed and developed a relapse prevention plan, and Crisis intervention plan for

families, listing various resources for families following completion of treatment. Promoted to Director of Clinical Services in January 2017.  Daily interaction with the Executive Director to improve outpatient treatment programs, services, and maintains organizational goals and objectives.  Available for 24- hour communication with Transitional living staff in order to maintain highest level of care for clients living at the Transitional living apartments.  Facilitated weekly staff meetings with staff from IOP, Transitional living, Administration and Executive director to maintain company JCAHO Accreditation standards, communicate treatment goals and client treatment protocols. With the execution of ROI's, communicated with Physicians, Psychiatrist, and former treatment providers to provide client with the utmost quality of care. Lastly, as the representative of the company, attended organizational, and community functions to promote the CAST brand.

- Loyola Marymount University Counseling Center, Los Angeles, CA, <u>Clinical Therapist</u> August 2015 –May 2016

Responsible for administering psychological assessments for students seeking psychotherapy, addiction treatment, and crisis intervention.  Provided individual and couple therapy when requested, and maintained a base of 35 clients per week. Initiated treatment plans for all clients, and worked cohesively with staff to provide quality psychological care and crisis intervention.  Engaged with professors and coaches when necessary to meet the needs of students and student athletes.

- Pepperdine University Counseling Center, Malibu, CA, <u>Clinical Therapist</u> March 2014 – May 2016

Employed as a part-time clinician in the treatment of university undergraduate and graduate students.  As a Clinician, implemented a short-term Cognitive Behavioral Approach for the of treatment students seeking therapy.  Responsible for psycho-social assessments, developed treatment plans and interacted with parents, and various academic departments to support students during times of crisis, mental illness, addiction, stress, and trauma.  Worked collaboratively with staff and Director to provide students with clinical services and crisis intervention. When necessary communicated with staff psychiatrist to ensure best practices and quality of care.

- Vista Del Mar Child and Family Services, Los Angeles, CA, <u>MAT Assessor</u> July 2012-March 2014

Working in conjunction with the Department of Child and Family Services and the Department of Mental Health, as a MAT Assessor (Multi-disciplinary Assessment Team) providing crisis intervention when necessary to help stabilize family and children, as well as conduct psychological diagnostic assessments from infancy to 18 years of age.  Meeting face to face with children often in crisis after recent trauma requiring the ability to connect,

provide safety, and empathy while completing the DMH diagnostic assessment. The position requires the ability to utilize knowledge and intuition to assess the current situation, to facilitate expression of feelings, concerning traumatic events. The position requires prompt completion of diagnosis, and mental health assessments in order to provide mental resources, educational resources and medical recourses. Communicating with parents, family members, foster parents, teachers, counselors, physicians, ER social workers, and law enforcement to determine the most appropriate mental health treatment, medical resources and educational resources available. Completion of 13 page DMH ICARE infant assessment report, or the DMH 9-child adolescent report and the 11 page DCFS summary of findings report which must within 45 days and presented to the DCFS MAT coordinator, CSW, Public Health nurse, foster caregivers, and family members. After completion of the summary of findings meeting, the finalized copy of the SOF report is presented to the family court judge for review and disposition. The position required extensive travel, excellent communication skills, and diplomacy working with government agencies, foster family agencies, families, and children.

- The One 80 Treatment Center, Beverly Hills, CA Group Facilitator/Therapist Intern

Collaboration with the One80 Center began as an off-site therapist for patients in various stages of recovery. Working closely with the Clinical director, Psychiatrists, sober Companions, and Case managers to provide a web of emotional and therapeutic support for patients. Duties required excellent communication, with staff while maintaining confidentiality for high profile patients. As patients became mentally and physically stronger in their sobriety, patients left the treatment center and remain as private practice patients. In January, 2012, given the opportunity to organize and facilitate the Emotional Recovery Group. As the facilitator of this group, duties include preparing and facilitating a weekly process and Psycho-educational program on anxiety and depression for dual diagnosis patients. Utilizing a psychodynamic and dialectical model, patients are given the opportunity to explore their anxiety and depression in a group setting and incorporate healthy coping strategies.

- The Maple Counseling Center, Beverly Hills, CA, Intern
May 2007- June 2010

Selected as a trainee at the Esteemed Maple Counseling Center under the clinical direction of Dr. Harold Young. Training commenced in the Intake and assessment program in addition to the treatment of clients at the center. During the second year of training successfully maintained a client load of 15 clients, whilst teaching Peer Counseling at Beverly Hills high school to Junior and Senior students. In addition to maintaining a client load at the center, and teaching at the high school, successfully facilitated weekly group therapy sessions at Moreno Continuation School in the BHUSD.

UDELL 000006

## Education

**LAISPS,** Brentwood, CA                                    October 2022 - June 2023

Accepted into the advanced training program in Psychoanalytic Psychotherapy.  A 9 –month intensive training program with various LAIPS faculty members focusing on the relevance of transference, counter-transference and dream analysis.


**Pacifica Graduate Institute**, Santa Barbara, CA                September 2008 – May 2015

Successful completion of all required coursework in the PhD Depth Psychology program, with PhD awarded in May 2015.  Dr. Allan Bishop as Dissertation Chair, and Dr. Don Marcus M.D., external reader.

**Antioch University**, Los Angeles, CA                September 2006 - June 2008

Successful completion of the Master of Arts program in Clinical Psychology, with a Master of Arts in Psychology conferred in 2008.

**California State University Los Angeles**, Los Angeles, CA        September 1988 -
MA program Industrial Psychology.

**University of Southern California**, Los Angeles, CA        September 1985 - June 1987

Awarded The Ojai Valley Mexican-American Educational Scholarship award, and the Retired Teachers Association of Ventura County scholarship award and conferred with a Bachelor of Arts degree in Psychology.

- ■  **Continuing Education certifications**:

CSAT Certification through the International Institute of Trauma and Addiction Therapy (IITAP) Sex Addiction Therapist.
ICARE 0-5 Assessment and interventions.
Trauma based interventions for children and adolescents.
Borderline Adolescents and the Use of Mentalization-Based Therapy.
RISE:  A project of the L.A. Gay & Lesbian Center educating clinicians on strategies to facilitate a safe and meaningful environment to discuss sex, gender and sexuality.
Trauma and Development: Bessel Van Der Kolk M.D.

**Activities, trainings, memberships, volunteer work**

Volunteer Clinical Supervisor, The Maple Counseling Center, Beverly Hills, Ca.

Trained for two years in the <u>Psycho-neurobiological approach to couples therapy</u> under the direction of Dr. Stan Tatkin.

 Case Consultation group member with Dr. Marion Solomon with emphasis on early childhood attachment and the psychotherapeutic relationship.

A member of CAMFT, and GPALA, NAMI, IITAP

A member of LA Leggers marathon training group since 1993.

Pro Bono work:  For the past 10 years facilitating a support group for divorced and separated Catholics at the Good Shepherd Catholic Church, Beverly Hills, Ca.  In addition, assistance with pre-marital counseling for couples who schedule their nuptials at Good Shepherd Parish.

References:

Dr. Roberta Rinaldi LMFT.

Victoria Curea LMFT, Training Analyst at LAISPS, Adjunct Professor Antioch University.

Father Edward Benioff Pastor, Good Shepherd Catholic Church, Beverly Hills, CA.

Dr. Jessica Herzog PsyD. Former Psychology Intern Supervisor.



Rebecca M. Udell, PhD LMFT #53808
12401 Wilshire Blvd Suite 300
Los Angeles, CA 90025

03/21/25

Shegerian and Associates
Attn: Iris Michaelson

Re: Alex Villanueva
Assessment

Ms. Michaelson,

I am writing this letter to confirm that I have provided expert testimony in the legal matter of Barroso vs Dignity Health, case #202000544090CUWT. This is the first and only time I have provided expert testimony.

In addition to completing a Biopsychosocial assessment for Mr. Villanueva, I also reviewed the Complaint, medical records, and the Deposition of Mr. Villanueva.

Should you require additional information, please feel free to contact me.

Thank you,

*Dr. Rebecca M. Udell*

Rebecca M. Udell
Ph.D., LMFT, CSAT

CC: sent via email.

UDELL 000009

# Exhibit 4

**Expert Witness Report**

Villanueva v County of LA

March 20th 2025

Shegerian & Associates

6205 Lusk Blvd
Suite 200
San Diego, CA
92121



Dr. Nigel Kennedy MB BS, PhD

Kennedy Psychiatric PC

Email: nigel.kennedy@kennedypsychiatric.com

Web: https://kennedypsychiatric.com

Office: (929) 505-0504

Fax: (929) 299-1651

*CONFIDENTIAL*
*The information in this report is intended solely for the individual or entity to which it is addressed and may be privileged, confidential and/or protected by law.*

Villanueva v LA County                Expert Witness Report                Dr. Nigel Kennedy

**Expert Witness Report**

**Date:** 3/20/2025

**Re: Villanueva v County of LA**

**Prepared by:**

Nigel Kennedy, MB BS, PhD

116 N Robertson Blvd, #908
Los Angeles, CA 90048
Phone: 929-505-0504
Fax: 929-299-1651

## I. Introduction

I, Dr. Nigel Kennedy, am a board-certified psychiatrist with ten years of experience in the field. I am board certified by the American Board of Psychiatry and Neurology (ABPN) in Psychiatry. I am licensed to practice medicine in New York and California. Prior to starting my private practice in 2022, I served as the Unit Chief for Unit 7S at the Mount Sinai Hospital in New York, NY. I remain on faculty at the Icahn School of Medicine at Mount Sinai as Assistant Professor in Psychiatry. I previously served as an inpatient psychiatrist for the New York Office of Mental Health at Rockland Psychiatric Center, Orangeburg, NY. My qualifications include a Bachelor of Medicine and Bachelor of Surgery (MBBS) from St George's, University of London, a Doctorate in Philosophy (Ph.D.) in Neurogenetics from Imperial College London. I also hold a Master's degree (M.Sc.) in Neuroscience and a Bachelor's degree (B.Sc.) in Biochemistry, both from the University of Manchester. I completed my residency training at the Icahn School of Medicine at Mount Sinai in New York where I served as Chief Resident for Research. I also received the Resident of the Year award from the James J Peters VA Medical Center in New York. My research work has been published in journals and peer reviewed textbooks on topics pertaining to psychiatry and clinical neuroscience.

KENNEDY 000002

Villanueva v LA County                  Expert Witness Report                    Dr. Nigel Kennedy

During my time as a state psychiatrist and as an inpatient psychiatrist at Mount Sinai, I have testified in numerous cases regarding petitions for release and treatment over objection. In my private practice I have served as a consulting expert witness in legal cases.

A copy of my current curriculum vitae is attached to this report as Appendix A.

I have been retained as an expert witness by Shegerian & Associates to provide an evaluation of Alex Villanueva for emotional distress.

My rate of compensation is $750 per hour for all preparation work and $1100 per hour for deposition and testifying in court.

## II. Methodology

The psychiatric evaluation was conducted on 3/20/2025.  The methodology included:

- A comprehensive clinical interview with Alex Villanueva over Zoom lasting approximately 1 ½ hours.
- Review of records:
    - Medical records from the office of Dr. Mary Wahbah MD
    - Plaintiff deposition 02-28-25
- Collateral interview with Vivian Villanueva over Zoom.
- Collateral interview with JJ Villanueva by telephone.

## III. Statement of Non-Confidentiality

Mr. Villanueva was informed today's independent medical examination (IME) was to evaluate conditions pertinent to the claim in question, and to answer the client's questions in a report; hence information provided would not be confidential. He was further informed the IME would not

Villanueva v LA County                Expert Witness Report                Dr. Nigel Kennedy

constitute a comprehensive medical examination, provide advice or treatment, substitute for evaluation and treatment by his own physician(s), or establish a patient-physician relationship.


## IV. Background Information

Alejandro (Alex) Villanueva is a 62yo male, domiciled with wife, a former Sheriff, no past psychiatric history, past medical history of melanoma, R total knee replacement, esophagitis, hyperlipidemia,  allergies to penicillin and erythromycin derivatives.

Born in Chicago, Alex and his family moved to Rochester, NY when he was small and lived there until he was 9. The family moved to Puerto Rico and Alex stayed there until college. He initially attended University of Puerto Rico, Miami West Campus for 2 years prior to joining the air force in 1983. During this period, he was stationed in San Bernadino, Nellis and Pope bases but was not deployed overseas and was not in an active combat zone. Alex has three brothers and two sisters. Hs eldest brother lives in Atlanta and works for the US Center for Disease Control & Prevention (CDC). His elder sister is a retired teacher in Florida. His older brother is a retired Commander in Coast Guard in Puerto Rico. His younger brother is CMO for tech firm in Taiwan.

Alex has one son who currently serves as deputy Sheriff. Alex's Mother died in 1989 and his Father died in 2015.

Alex attended San Bernadino Valley College, Cal Poly Pomona, Excelsior and Cal. State Northridge. He was awarded his Bachelors in Liberal Studies from Excelsior University, his Masters from Cal State Northridge and Doctorate in Public Administration from University of La Verne.

Alex joined the Los Angeles County Sheriff's department in 1986 as a deputy trainee. He was activated by the National Guard to Fort Sill, OK, training in the artillery, and returned in October 1990. In February 1991 he was assigned to East LA patrol station. In 1997 he was assigned as a staff instructor at the academy until December 2000.  After being promoted to Sergeant he was transferred to Lennox Station. In 2004 he transferred to Carson station and then on to Community College Bureau. He returned to the Advanced Officer Training Unit in February 2007 and

Villanueva v LA County                  Expert Witness Report                    Dr. Nigel Kennedy

remained there until being promoted to Lieutenant in 2011 and transferring to Century Regional Detention Facility (CRDF), where he remained until May 2013. He then transferred to Pico Rivera where he remined until retirement. Subsequently, Alex Villanueva was elected Sheriff in November 2018, taking office in December of that year.


## V. Psychiatric Interview

Alex Villanueva remained calm throughout the interview.  He describes having to "be on alert" when he is in public, citing a history of direct threats to himself and his family. He also describes being recognized and secretly filmed by strangers when he is in public places. He maintains a calm demeanor when describing these events. He denies feeling compelled to avoid public spaces or social situations and remains willing to talk to members of the public.

Through the course of the interview, Alex's reality testing remains intact. He describes situations with examples and evidence which is easily corroborated by others.  He expresses frustration at "the narrative" of articles written about him in the press, the LA Times in particular, which he feels do not evenly represent him.  However, he at no point demonstrates paranoid ideation or delusional thought.

He states that the worst stressors he has endured have been death threats made to himself and his family. He also describes an incident in which his name and home address were written on a banner placed across the freeway.

He denies any past history of depressive episodes. He reports that at the present time he sometimes feels 'low", but he denies anergia, amotivation or anhedonia, suggestive of major depressive disorder, and he denies that these feelings have ever impeded his social or occupational functioning. It is possible that he minimizes these symptoms on interview.

Alex reports appropriate levels of worry about specific circumstances and reacts appropriately to potential dangers. He denies any history of panic attacks.

KENNEDY 000005

Alex describes a history of poor quality sleep over the past 3 years, characterized by waking in the night unable to return to sleep due to ruminative thought. This is corroborated by his wife who notes that often when she wakes in the night, she observes her husband to be lying awake, "thinking about things". These symptoms are chronic but appear to have worsened in the past 3 years.

He describes exercising several times per week, either in the gym or at home. Frequently walks the dog. Reports a varied, healthy diet. Reports occasional, rare alcohol use. Denies any other substance use.

Gives a history of being exposed to traumatic experiences through the line of duty. Denies any intrusive thoughts. Denies any dissociative symptoms.

No safety concerns were elicited in the session. Alex denied suicidal and homicidal ideation at the time of interview and denied any history of deliberate self harm.

## VI. Collateral History

### A. Collateral History from Vivian Villanueva

Mrs. Vivian Villanueva describes her husband, Alex, as experiencing visible signs of stress over the last "2-3years", impacting his sleep making him visibly sad. She reports that reading articles written about him in the press and comments on social media is a specific trigger for him.

She describes that in these situations her husband will appear "very quiet". She describes her husband to be "very insightful" and he does not demonstrate emotional outbursts or anger and she finds him to "show a lot of strength and resilience" despite the emotional toll these events have taken on him. Observing Alex in his private moments, she describes him as "hurting inside right now" and describes his personality as "more subdued" than at his baseline. Mrs. Villanueva stated she has never had safety concerns about her husband being a danger to himself or others. She has not found him to be paranoid. She reports that he has been vigilant to potential threats and describes an incident in which an individual was arrested after making threats of violence towards her and

Villanueva v LA County                Expert Witness Report                Dr. Nigel Kennedy

her grandchildren.  Mrs. Villanueva reports that she herself has developed migraines and stomach issues since the election in response to these events.

### B. Collateral History from JJ Villanueva

JJ stated that his Father, Alex, had "dedicated his whole life to his career" and was always "trying to help people and improve things".  JJ described Alex as "a very stoic individual".

JJ reported a change in his Father's demeanor over the past few years, describing him as "quiet" and this being different to his usual happy, funny personality at baseline. He reports his father to appear resilient outwardly, continuing to fulfil his responsibilities but is aware of the emotional distress he is experiencing.  JJ cites the events surrounding the Do Not Rehire order as a trigger for these changes. "His credibility goes a long way and that has been taken away from him."

JJ denied any safety concerns. Stated that his father continues to cope by working hard for the health and wellbeing of the officers previously under him. He stated "in law enforcement, the best attribute you can have is to be calm. Does that mean he is happy? No."

## VII. Past Psychiatric History

Alex Villanueva has no past history of psychiatric illness. He has no history of inpatient or outpatient treatment. He has no history of taking psychiatric medications.

## VIII. Clinical Findings

### A. Mental Status Examination:

- **Appearance:** Adult male, appears stated age, casually dressed, well groomed

Villanueva v LA County                    Expert Witness Report                    Dr. Nigel Kennedy

- **Behavior:** Comfortable at rest. Attentive. Fully engaged with interview. Polite and well related.
- **Speech:** Spontaneous, fluent, coherent speech. Tone and volume appropriate to setting. Gives appropriate responses to questions. Normal prosody.
- **Mood and Affect:** "I'm OK". Reactive. Slightly dysphoric.
- **Thought Process and Content:** Logical and linear. No paranoid ideation or delusions elicited during interview
- **Cognition:** Grossly intact. Alert and oriented.
- **Insight and Judgment:** Intact.

### B. Diagnosis

Based on a reasonable degree of medical certainty from the available information and clinical evaluation, Alex Villanueva meets criteria for an Adjustment Disorder with Mixed Anxiety and Depressed Mood (F43.32), as defined by the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, Text Revision (DSM-5-TR).

### IX. Opinion

It is my opinion that Alex Villanueva has experienced low mood and anxiety symptoms. It is my opinion that these symptoms are a direct response to psychosocial stressors and that the distress he is experiencing is disproportional to the stressors encountered.

The DSM-5-TR defines an adjustment disorder as:

"A. The development of emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within 3 months of the onset of the stressor(s).
B. These symptoms or behaviors are clinically significant, as evidenced by one or both of the following:
    1. Marked distress that is out of proportion to the severity or intensity of the stressor, taking into account the external context and the cultural factors that might influence symptom severity and presentation.
    2. Significant impairment in social, occupational, or other important areas of functioning.

KENNEDY 000008

Villanueva v LA County                    Expert Witness Report                    Dr. Nigel Kennedy

C. The stress-related disturbance does not meet the criteria for another mental disorder and is not merely an exacerbation of a preexisting mental disorder.

D. The symptoms do not represent normal bereavement and are not better explained by prolonged grief disorder."

Alex describes ruminative thought, sleep disturbance, feelings of sadness which are triggered specifically by events related to this case, notably articles written about him in the media and the public response to such articles on social media and in the community. Alex has received credible death threats which have led to arrests. Experiencing feelings of sadness and worry in these circumstances would be expected. However, as observed by his wife and son, Alex has marked distress due to excessive ruminative worry and persistent low mood, beyond that which would be expected in these circumstances. Alex has maintained his social and occupational functioning despite these stressors. He has no preexisting mental illness and these symptoms are not due to normal bereavement.

Alex expressed his motivation to continue to serve the public in some capacity and that being placed on a "Do Not Rehire" list has prevented this. He remains highly motivated to return to work and expresses concern that being unable to work is impacting his overall wellbeing. He stated "I'm too young to retire. If you don't work, you start to decay".

Irrespective of future prospects, Alex feels embarrassment about the Do Not Hire order and feels that this has been placed unjustly in a way that disparages his past forty years of public service. The order is public knowledge which has led to Alex being the subject of abuse, in person and online, damaging his relationship with his community. He expresses concern that there may also be retaliation against his wife and son from within the department in future. These worries are symptomatic of his condition and the external stressors are a perpetuating factor.

Alex has developed constructive coping strategies through exercise and has used his strong relationship with friends and family as an important source of support. These coping strategies have allowed him to maintain his natural resilience to stress. Despite being exposed to significant stressors through the course of his work, he did not develop symptoms of emotional distress until 3 years ago.

KENNEDY 000009

Villanueva v LA County                Expert Witness Report                Dr. Nigel Kennedy

## X. Limitations

This report is based on the information provided at the time of the evaluation. My opinion is subject to change if additional relevant information becomes available.

## XI. Conclusion

In conclusion, based on a reasonable degree of medical certainty from the available information and clinical evaluation, Alex Villanueva meets criteria for an Adjustment Disorder with Mixed Anxiety and Depressed Mood (F43.32), as defined by the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, Text Revision (DSM-5-TR).

I am available for further consultation or to provide testimony as needed.

## IX. Signature

Dr. Nigel Kennedy MB BS, PhD

Psychiatrist

KENNEDY 000010

APPENDIX A: CURRICULUM VITAE

Curriculum Vitae: March 2025

# Nigel Iain KENNEDY
## MBBS, PhD (DIC), MSc, BSc (Hons)

## **PERSONAL INFORMATION**

| | |
|---|---|
| Work address: | 116 N Robertson Blvd, #908, Los Angeles, CA, 90048 |
| Telephone: | Office:    929-505-0504 |
| | Cell:    929-434-0724 |
| Email: | nigel.kennedy@kennedypsychiatric.com |
| | nigel.kennedy@mountsinai.org |

## **EDUCATION & PROFESSIONAL APPOINTMENTS**

### **Education**

Sep 2005 – Jun 2009    **Bachelor of Medicine, Bachelor of Surgery (MB BS)**

St George's, University of London,

Cranmer Terrace, London, United Kingdom, SW17 0RE

Oct 2001 – Apr 2006    **Doctor of Philosophy (Ph. D) – Neurogenetics**

Imperial College London

University of London, London, United Kingdom, SW7 2AZ

Sep 2000 – Feb 2002    **Master of Science (M. Sc) – Neuroscience**

University of Manchester

Oxford Road, Manchester, United Kingdom, M13 9PL

Sep 1995 – Jun 1999    **Bachelor of Science (B. Sc Hons) Biochemistry**

University of Manchester

Oxford Road, Manchester M13 9PL

### **Training**

Jul 2014 – Jul 2018    **Residency Training in Psychiatry: Physician-Scientist Track**

Department of Psychiatry, Icahn School of Medicine at Mount Sinai

1. Gustave L. Levy Place, New York, NY 10029

KENNEDY 000011

| | |
|---|---|
| Aug 2012 – Aug 2013 | **Neurosurgery – Specialist Training Registrar Level 1** |
| | NHS England South West Deanery |
| | Frenchay Hospital, Bristol, United Kingdom, BS16 1LE |
| Aug 2010 – Aug 2011 | **Foundation Training Year 2 (FY2) Doctor** |
| | Central Middlesex Hospital, |
| | London, United Kingdom, NW10 7NS |
| Aug 2009 – Aug 2010 | **Foundation Training Year 1 (FY1) Doctor** |
| | West Middlesex University Hospital, |
| | London, United Kingdom, TW7 6AF |

## Academic Appointments

| | |
|---|---|
| May 2019 – Present | **Assistant Professor in Psychiatry** |
| | Department of Psychiatry |
| | Icahn School of Medicine at Mount Sinai |
| July 2018 – May 2019 | **Instructor in Psychiatry** |
| | Vagelos College of Physicians and Surgeons |
| | Columbia University in the City of New York |

## Clinical Appointments

| | |
|---|---|
| July 2022 – Present | **Psychiatrist in Private Practice** |
| | Kennedy Psychiatric PC |
| | 116 N. Robertson Blvd, #908, Los Angeles, CA, 90048 |
| May 2019 – July 2022 | **Unit Chief Psychiatrist, Mount Sinai Medical Center** |
| | Klingenstein Clinical Center, 1450 Madison Avenue, New York, NY |
| July 2018 – May 2019 | **Psychiatrist – Special Communications Unit** |
| | New York State Office of Mental Health, Rockland Psychiatric Center, |
| | 140 Old Orangeburg Road, Orangeburg NY, 10962 |

## Administrative Appointments

| | |
|---|---|
| May 2019 – Jul 2022 | **Unit Chief Psychiatrist, Mount Sinai Medical Center** |
| | Klingenstein Clinical Center, 1450 Madison Avenue, New York, NY |

As unit chief I coordinated day to day running of the unit, which involved the management of clinical staff across multiple disciplines. I acted as the primary interface between unit staff and senior medical and nursing leadership within the Mount Sinai Hospital. I held responsibilities for ensuring the unit remained in compliance with standards laid out by Joint Commission, OMH and other regulatory bodies and worked

KENNEDY 000012

with psychiatry leadership and risk management on specific issues affecting patients and staff. In addition, I held responsibilities for the teaching and training of medical students, residents, fellows and psychology interns, coordinating their rotations with respective schools and supervisors.

July 2017 – July 2018    **Chief Resident for Research**

Department of Psychiatry, Icahn School of Medicine at Mount Sinai

1 Gustave L. Levy Place, New York, NY 10029

As research chief, I held responsibilities for teaching and mentorship of junior research track residents, helping to identify research projects and potential supervisors. I also worked directly with the program directors in recruitment of newly qualified physician-scientists to the research and clinical tracks of the residency program.

## LICENSURE

2022 - present    **California State Medical License**

2018 - present    **New York State Medical License**

2018 - present    **DEA Registration (NY & CA)**

2009 - present    **General Medical Council of the United Kingdom**

## BOARD CERTIFICATION

2018    **Diplomate of the American Board of Neurology and Psychiatry (ABPN)**

## HONORS & AWARDS

Feb 2015    **James J. Peters VA Physician of the Year Awards - Resident Award**

James J. Peters VA Medical Center,

130 West Kingsbridge Road, Bronx, NY 10468

## TEACHING

**Didactic Teaching**

2019 – Present    **Neurotransmitters in Psychiatry.**

Icahn School of Medicine at Mount Sinai. 3 class course for PGY-2 Psychiatry residents

2019 – Present    **Bipolar Disorder: Diagnosis and Treatment.**

Icahn School of Medicine at Mount Sinai. 3 class course for PGY-2 Psychiatry residents

2015 – 2018    **Clinical interpretation of a Network meta-analysis: Comparative Safety and Efficacy of Antipsychotic Medication**

Icahn School of Medicine at Mount Sinai. 3 class course for PGY-2 Psychiatry residents

KENNEDY 000013

| 2017 | **Neuroimaging for the Study of Auditory Hallucinations** |
|---|---|
| | Icahn School of Medicine at Mount Sinai. Graduate school teaching for Neuroscience MS students |
| 2015 – 2018 | **Neuromodulation: A clinician's guide to Transcranial Direct Current Stimulation (tDCS) and Transcranial magnetic Stimulation (TMS)** |
| | Icahn School of Medicine at Mount Sinai. Graduate school teaching for Neuroscience MS students |
| 2016 - 2018 | **Critical appraisal of scientific literature** |
| | Icahn School of Medicine at Mount Sinai. Didactic teaching for PGY-2 Psychiatry residents |
| 2017 | **Treating Voices: Auditory Verbal Hallucinations** |
| | Icahn School of Medicine at Mount Sinai. Didactic teaching for PGY-3 Psychiatry residents |
| 2013 | **Intracerebral Bleeding: Differential Diagnosis and Management** |
| | Frenchay Hospital, UK. Teaching seminar for PGY 1 & 2 physicians |
| 2013 | **The Neurological Examination** |
| | Frenchay Hospital, UK. Teaching seminar for MS3 students |

## Educational Meetings

| 2014 | **tDCS for the Treatment of Auditory Hallucinations** |
|---|---|
| | Icahn School of Medicine at Mount Sinai, Department of Psychiatry, Chairman's Journal Club Presentation |
| 2013 | **The Human Connectome in the Anatomy of Brain Disorders** |
| | Icahn School of Medicine at Mount Sinai, Department of Psychiatry, Chairman's Journal Club Presentation |

## Supervision

| 2018 – 2022 | **Psychiatric Nurse Practitioner Supervision** |
|---|---|
| | Icahn School of Medicine at Mount Sinai, Department of Psychiatry |
| | Weekly teaching and daily supervision for Psychiatric Nurse Practitioners providing inpatient care. |
| 2019 – 2022 | **Medical Student Supervisor** |
| | Icahn School of Medicine at Mount Sinai, Department of Psychiatry |
| | Daily supervision and tuition for medical students from Mount Sinai. Appraisal of student presentations. Assessment of learning. Completion of end of rotation student evaluations. |
| 2018 – 2019 | **Medical Student Supervisor** |
| | Columbia University/Rockland Psychiatric Center |
| | Daily supervision and tuition for medical students from Columbia. Appraisal of student presentations. Assessment of learning. Completion of end of rotation student evaluations. |

## SERVICE

### Department Service

| | |
|---|---|
| 2017 – 2018, 2019 – 2022 | **Educational Executive Committee** |
| | Department of Psychiatry, Icahn School of Medicine at Mount Sinai |
| 2019 – 2022 | **Interviewer** |
| | Department of Psychiatry, Icahn School of Medicine at Mount Sinai |
| | Interviews and evaluations for medical students applying to the residency program at Mount Sinai. |
| 2017 – 2018 | **Co-Director - Chairman's Journal Club** |
| | Department of Psychiatry, Icahn School of Medicine at Mount Sinai |
| 2017 - 2018 | **Chief Resident for Research** |
| | Department of Psychiatry, Icahn School of Medicine at Mount Sinai |
| 2017 - 2018 | **Telemedicine Supervision & Outreach Consulting for a Psychiatry Service in Liberia.** |
| | Department of Psychiatry, Icahn School of Medicine at Mount Sinai |
| | A Global Mental Health Outreach Project. Email and videoconference supervision for mental health providers at a clinic in Liberia. |
| 2006 – 2009 | **Problem Based Learning/Cased Based Learning Tutor** |
| | St George's, University of London. London, United Kingdom, SW17 0RE |
| | Preceptor/Faciliator for problem-based learning groups for MS1-3 |

### Professional Society Memberships

| | |
|---|---|
| 2014 - Present | American Psychiatric Association |
| 2016 - Present | American Medical Association |
| 2021 – Present | New York Academy of Sciences |

## RESEARCH & SCHOLARSHIP

### Manuscript Review

| | |
|---|---|
| 2021 | British Journal of Psychiatry Advances |
| 2020 | Journal of Emergency Medicine, Trauma and Acute Care. |
| 2019 | Schizophrenia Research |

KENNEDY 000015

**Major Areas of Research Interest**

1. Neuromodulation for the treatment of psychiatric illness
2. Schizophrenia: Pathogenesis and Clinical Treatment

**Thesis**

2005    Ph. D (DIC)    Trinucleotide Repeat Expansions in the Pathogenesis of Schizophrenia

Imperial College, University of London

**Invited Lectures**

Sep 2021    **Invited Speaker, Clinical Services Panel. Symposium for Mental Health Equity.**

Morehouse School of Medicine, Kennedy-Satcher Center for Mental Health, Satcher Health Leadership Institute, Atlanta, GA

May 2018    **Seeing Voices – Transcranial Direct Current Stimulation for the Study of Auditory Hallucinations. Invited Grand Rounds.**

Department of Psychiatry. Icahn School of Medicine at Mount Sinai. New York, NY, 10029

**Presentations**

Kennedy NI, Lee WH (2016) Identification of Brain Regions Implicated in Auditory Hallucinations as Potential Targets for Neuromodulation. Poster. *6th Annual Translational and Molecular Imaging Institute (TMII) Symposium*. Icahn School of Medicine at Mount Sinai, New York, NY

Kennedy NI, Borkowski J (2010) Patient CP: Rapid Progression of Steven Johnson Syndrome. *Morbidity & Mortality Meeting: Department of Intensive Care.* Central Middlesex Hospital, London, NW10 7NS

Kennedy NI, Smith P (2007) The Role of Catechol-O-methyl Transferase (COMT) in the Pathogenesis of Schizophrenia: A Meta-analysis of Association Studies. Poster. *St. George's Undergraduate Research Day.* St George's, University of London

Kennedy NI, Morris AG. (2004) A Novel RecA-based Method for the Capture and Cloning of Large Trinucleotide Repeat Expansions. Data from Two Populations of Schizophrenia Patients. *Imperial College Young Scientist Day*. Imperial College, University of London

KENNEDY 000016

## Publications

Kennedy NI (2023) Neurosurgical interventions for psychiatric illness – an underutilised option in treatment? BRJPsych Advances pp. 1 – 3. doi.org/10.1192/bja.2023.4

Kennedy NI, Lee WH, Frangou S (2018) Efficacy of non-invasive brain stimulation on the symptom dimensions of schizophrenia: A meta-analysis of randomized controlled trials. Eur Psychiatry 49: 69-77. doi: 10.1016/j.eurpsy.2017.12.025

Lee WH, Frangou S, Bikson, M, Kennedy NI (2017) A Computational Assessment of Target Engagement in the Treatment of Auditory Hallucinations with Transcranial Direct Current Stimulation. Front. Psychiatry. 2018. Feb 22; 9: 48. doi 10.3389/fpsyt.2018.00048

Kennedy NI, Kopell B, Goodman WK (2017) Deep Brain Stimulation for Intractable Obsessive Compulsive Disorder.  Obsessive Compulsive Disorder: Phenomenology, Pathophysiology and Treatment. C. Pittenger (ed.) Oxford University Press. ISBN 978-0-19-022816-3

Lapidus K, Kennedy NI, Goodman WK, Kellner CH (2016) Non-Psychopharmacological Somatic Treatments. Mount Sinai Expert Guides: Psychiatry. Wiley & Sons Ltd. ISBN 978-1-118-65428-6

Nicholas AR, Scott MJ, Kennedy NI, Jones MN. (2000) Effect of grafted polyethylene glycol (PEG) on the size, encapsulation efficiency and permeability of vesicles. Biochim Biophys Acta 1463(1): 167-78

KENNEDY 000017

Dr. Nigel Kennedy Case List:


No trial or deposition testimony.

**VILLANUEVA v. COUNTY OF LOS ANGELES, et al.**        USDC CASE NO.: 2:24 cv 04979 SVW (JC)

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 6205 Lusk Boulevard, Suite 200, San Diego, CA 92121.

On March 21, 2025, I served the foregoing document, described as **"PLAINTIFF ALEX VILLANUEVA'S DISCLOSURE OF EXPERTS PURSUANT TO F.R.C.P. 26(a) (2),"** on all interested parties in this action by placing true copies thereof in sealed envelopes, addressed as follows:

**Louis R. Miller (State Bar No. 54141)**
**smiller@millerbarondess.com**
**Jason H. Tokoro (State Bar No. 252345)**
**jtokoro@millerbarondess.com**
**Steven G. Williamson (State Bar No. 343842)**
**swilliamson@millerbarondess.com**
**MILLER BARONDESS, LLP**
**2121 Avenue of the Stars, Suite 2600**
**Los Angeles, California 90067**

☒    **(BY ELECTRONIC MAIL)** I sent such document via electronic mail to the email addresses(s) noted above.

☒    **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare, under penalty of perjury under the laws of the United States of America, that the above is true and correct.

Executed on March 21, 2025, at Los Angeles, California.

Iris Michelsen

<u>VILLANUEVA v. COUNTY OF LOS ANGELES, et al.   USDC Case No. 2:24-cv 04979 SVW (JC)</u>

## PROOF OF SERVICE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

I am an employee in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 11520 San Vicente Boulevard, Los Angeles California 90049.

On June 9, 2025, I served the foregoing document, described as **"DECLARATION OF ALEX DiBONA, ESQ., IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES,"** on all interested parties in this action addressed as follows:

**Louis R. Miller, Esq.**
**smiller@millerbarondess.com**
**Jason H. Tokoro, Esq.**
**jtokoro@millerbarondess.com**
**Steven G. Williamson, Esq.**
**swilliamson@millerbarondess.com**
**MILLER BARONDESS, LLP**
**2121 Avenue of the Stars, Suite 2600**
**Los Angeles, California 90067**

☐　　**(BY MAIL)** As follows:

☒　　**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☒　　**(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 9, 2025, at Los Angeles, California.

_Amelia Sanchez_
Amelia Sanchez